# No. 15-3999

# In the
# United States Court of Appeals
## for the Sixth Circuit

ABERRY COAL, INCORPORATED; ARROWPOINT CAPITAL INC. C/O UNDERWRITERS SAFETY & CLAIMS,

*Petitioners,*

v.

JOSEPH FLEMING; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,

*Respondents.*

Appeal from the Benefits Review Board, No. 14-0329 BLA.

## APPENDIX OF PETITIONERS

JOHN R. SIGMOND
NATHANIEL DALE MOORE
PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA 24203
Phone: 423-793-4804
Fax: 423-793-4844
jsigmond@pennstuart.com
nmoore@pennstuart.com

*Attorneys for Petitioners Aberry Coal, Inc. and Arrowpoint Capital Inc.*



# TABLE OF CONTENTS

Benefits Review Board Decision and Order, Jul. 31, 2015 .................... A001

Petition for Review, Sep. 16, 2015 .......................................... A020

Transcript of Hearing before Administrative Law Judge,
Oct. 16, 2012.................................................................. A044

    Claimant's Hearing Exhibits 1 through 5 ...................................... A082

    Employer's Hearing Exhibits 1 through 11 .................................. A157

    Director's Hearing Exhibits 1 through 33 .................................... A317

Employer's Closing Argument, Jan. 7, 2013 ........................................ A683

Administrative Law Judge's Decision and Order,
Jan. 24, 2013 ................................................................. A706

Employer's Brief in Support of Its Petition for Review, Apr. 8, 2013.... A716

Benefits Review Board Decision and Order,
Dec. 17, 2013 ................................................................. A742

Employer's Comments on Remand, May 8, 2014................................. A750

Administrative Law Judge's Decision and Order on Remand,
May 19, 2014 ................................................................. A780

Employer's Notice of Appeal, Jun. 11, 2014........................................ A788

Employer's Petition for Review, Aug. 12, 2014.................................... A791

Employer's Brief in Support of Its Petition for Review,
Aug. 12, 2014 ................................................................. A793

Response Brief, Oct. 9, 2014 ................................................... A823

Employer's Letter Reply Brief, Oct. 15,2014........................................ A845

i

## INDEX OF TESTIMONY

Testimony of Joseph Fleming, Oct. 16, 2012, Hearing Before
    Administrative Law Judge Solomon .................................. A052-A075

**U.S. Department of Labor**          Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601



BRB No. 14-0329 BLA

**NOT PUBLISHED**

JOSEPH FLEMING     )
           )
  Claimant-Respondent   )
           )
  v.          )
           ) DATE ISSUED: <u>JUL 3 1 2015</u>
ABERRY COAL, INCORPORATED )
           )
  Employer-Petitioner    )
           )
DIRECTOR, OFFICE OF WORKERS' )
COMPENSATION PROGRAMS, UNITED )
STATES DEPARTMENT OF LABOR )
           )
  Party-in-Interest     ) DECISION and ORDER

Appeal of the Decision and Order on Remand - Award of Benefits of Daniel F. Solomon, Administrative Law Judge, United States Department of Labor.

Joseph E. Wolfe and Brad A. Austin (Wolfe Williams Rutherford & Reynolds), Norton, Virginia, for claimant.

Nate D. Moore (Penn, Stuart & Eskridge), Bristol, Virginia, for employer.

Dominique Sinesi (M. Patricia Smith, Solicitor of Labor; Rae Ellen James, Associate Solicitor; Michael J. Rutledge, Counsel for Administrative Litigation and Legal Advice), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: HALL, Chief Administrative Appeals Judge, BOGGS and BUZZARD, Administrative Appeals Judges.

HALL, Chief Administrative Appeals Judge:

Employer appeals the Decision and Order on Remand - Award of Benefits (2012-BLA-05241) of Administrative Law Judge Daniel F. Solomon rendered on a subsequent

claim[1] filed pursuant to the provisions of the Black Lung Benefits Act, 30 U.S.C. §§901-944 (2012) (the Act). This case is before the Board for the second time. In his original Decision and Order, the administrative law judge credited claimant with at least fifteen years of underground coal mine employment and accepted employer's concession that claimant is totally disabled from a respiratory impairment pursuant to 20 C.F.R. §718.204(b). The administrative law judge therefore found that claimant was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis at amended Section 411(c)(4) of the Act, 30 U.S.C. §921(c)(4), as implemented by 20 C.F.R. §718.305. Further, the administrative law judge found that the presumption was not rebutted. Accordingly, the administrative law judge awarded benefits.

In response to employer's appeal, the Board affirmed the administrative law judge's findings that claimant's coal mine employment was underground and that claimant is totally disabled from a respiratory impairment at 20 C.F.R. §718.204(b). *Fleming v. Aberry Coal, Inc.*, BRB No. 13-0237 BLA, slip op. at 2 n.4 (Dec. 17, 2013)(unpub.). The Board also held that claimant established a change in an applicable condition of entitlement pursuant to 20 C.F.R. §725.309. *Fleming*, BRB No. 13-0237 BLA, slip op. at 2 n.4. However, the Board vacated the administrative law judge's findings that claimant established at least fifteen years in underground coal mine employment and was entitled to invocation of the rebuttable presumption at amended Section 411(c)(4), and remanded the case for further consideration of the evidence.[2] *Fleming*, BRB No. 13-0237 BLA, slip op. at 5.

The Board determined that the administrative law judge failed to adequately explain the method he used to compute the length of claimant's coal mine employment. Specifically, the Board noted that it could be discerned that the administrative law judge credited the district director's determination that claimant had 9.25 years of coal mine employment because it was consistent with claimant's Social Security Administration (SSA) earnings records and "the product of a reasonable method of computation." *Fleming*, BRB No. 13-0237 BLA, slip op. at 4. However, the Board stated that "the

---

[1] Claimant filed his first claim in November 1994. Director's Exhibit 1. It was finally denied by the district director in May 1995, because claimant failed to establish any of the elements of entitlement. *Id.* Claimant filed this pending claim in July 2010. Director's Exhibit 3.

[2] Employer also challenged the administrative law judge's finding that it failed to establish rebuttal of the presumption of total disability due to pneumoconiosis at amended Section 411(c)(4). Because the Board vacated the administrative law judge's finding that claimant invoked the amended Section 411(c)(4) presumption, the Board declined to address employer's arguments regarding rebuttal of the presumption. *Fleming v. Aberry Coal Co.*, BRB No. 13-0237 BLA, slip op. at 6 (Dec. 17, 2013)(unpub.).

2

method by which the administrative law judge derived at least an additional five years of coal mine employment from claimant's hearing testimony ... [was] not apparent." *Id.* Consequently, the Board stated that it could not determine "whether the method the administrative law judge used [was] a reasonable one." *Fleming*, BRB No. 13-0237 BLA, slip op. at 5. The Board also noted that the administrative law judge failed to explain how he resolved the conflict between his determination that claimant is not a "good historian" and his crediting of claimant's testimony. *Fleming*, BRB No. 13-0237 BLA, slip op. at 5. The Board additionally noted that the administrative law judge failed to "address the significance of claimant's statement that he could not identify which employer failed to withhold Social Security taxes." *Id.* Further, the Board noted that the administrative law judge did not resolve conflicts in the evidence regarding the years in which claimant engaged in coal mine employment. *Id.* The Board stated that "the administrative law judge accounted for the periods of unemployment to which claimant testified, but did not consider the fact that claimant's [SSA earnings records] reflect that [claimant] was also unemployed in 1986 and had no coal mine employment in 1987." *Id.* The Board therefore determined that the administrative law judge's decision did not comply with the Administrative Procedure Act (APA). *Id.* Hence, the Board instructed the administrative law judge, on remand, to consider all the relevant evidence of record in ascertaining the dates and length of claimant's underground coal mine employment, including, but not limited to, claimant's testimony, the employment history forms submitted in both claims,[3] and claimant's SSA earnings records. *Fleming*, BRB No. 13-0237 BLA, slip op. at 5-6.

The Board also instructed the administrative law judge that he may total the partial periods of claimant's employment or divide claimant's yearly income from work he performed as a miner by the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics (BLS),[4] in accordance with 20 C.F.R. §725.101(a)(32)(iii), if the evidence failed to establish the beginning and ending dates of claimant's coal mine employment or if any of claimant's work lasted less than a calendar year. *Fleming*, BRB No. 13-0237 BLA, slip op. at 6. The Board also instructed the administrative law judge that he may reinstate his finding that claimant is entitled to invocation of the rebuttable presumption at amended Section 411(c)(4) and further

_____

[3] The Board acknowledged employer's allegation that there is a conflict between the evidence in claimant's first claim and his subsequent claim regarding the ending date of his coal mine employment. *Fleming*, BRB No. 13-0237 BLA, slip op. at 6 n.7.

[4] The Board rejected employer's allegation that the administrative law judge is required to either apply the formula provided by the regulation at 20 C.F.R. §725.101(a)(32)(iii), or explain why he did not apply it, because the administrative law judge's use of this formula is discretionary. *Fleming*, BRB No. 13-0237 BLA, slip op. at 6 n.8.

3

reinstate the award of benefits, if on remand he found that claimant established fifteen years of qualifying coal mine employment. *Id.* Conversely, the Board instructed the administrative law judge that he must consider whether claimant established entitlement to benefits pursuant to 20 C.F.R. Part 718, without the benefit of the rebuttable presumption at amended Section 411(c)(4), if he found that claimant was unable to establish fifteen years of qualifying coal mine employment. *Id.*

~~On remand, the administrative law judge again determined that claimant~~ established over fifteen years of underground coal mine employment. Accordingly, the administrative law judge again awarded benefits.

On appeal, employer challenges the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment. Employer also contends that the administrative law judge erred in previously finding that it failed to establish rebuttal of the presumption of total disability due to pneumoconiosis at amended Section 411(c)(4). Claimant responds, urging affirmance of the administrative law judge's award of benefits. The Director, Office of Workers' Compensation Programs, has filed a letter, declining to file a substantive brief in this appeal, but noting that the administrative law judge may take official notice of documents regarding the credibility of Dr. Wheeler's x-ray readings,[5] if the Board vacates the administrative law judge's award of benefits and remands the case for further consideration.[6]

The Board's scope of review is defined by statute. The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law.[7] 33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman and Grylls Associates, Inc.*, 380 U.S. 359 (1965).

---

[5] In support of his argument, the Director identifies several documents "pertaining to the credibility of Dr. Wheeler's x-ray readings" including BLBA Bulletin 14-09, issued June 2, 2014, which instructs District Directors to not credit Dr. Wheeler's negative readings for pneumoconiosis in the absence of persuasive evidence rehabilitating his readings.

[6] Employer has filed a brief in reply to claimant's response brief, reiterating its prior contentions regarding the administrative law judge's length of coal mine employment finding.

[7] The record reflects that claimant's coal mine employment was in Kentucky. Director's Exhibits 1, 4, 7. Accordingly, this case arises within the jurisdiction of the United States Court of Appeals for the Sixth Circuit. *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989)(en banc).

4

In order to establish entitlement to benefits in a living miner's claim filed pursuant to 20 C.F.R. Part 718, claimant must establish that he suffers from pneumoconiosis, that the pneumoconiosis arose out of his coal mine employment, that he has a totally disabling respiratory or pulmonary impairment, and that his total disability is due to pneumoconiosis. 30 U.S.C. §901; 20 C.F.R. §§718.3, 718.202, 718.203, 718.204. Failure to establish any one of these elements precludes entitlement. *Anderson v. Valley Camp of Utah, Inc.*, 12 BLR 1-111 (1989).

In 2010, Congress enacted amendments to the Act, which apply to claims filed after January 1, 2005 that were pending on or after March 23, 2010. Relevant to this living miner's claim, Congress reinstated Section 411(c)(4) of the Act, which provides a rebuttable presumption that a miner is totally disabled due to pneumoconiosis in cases where fifteen or more years of underground coal mine employment, or coal mine employment in conditions substantially similar to those in an underground mine, and a totally disabling respiratory impairment are established. 30 U.S.C. §921(c)(4); 20 C.F.R. §718.305.

Initially, we will address employer's contention that the administrative law judge erred in finding that claimant established over fifteen years of qualifying coal mine employment. In determining the length of claimant's coal mine employment, the administrative law judge considered claimant's applications for benefits, his testimony at the hearing, and the SSA earnings records submitted with this claim. The administrative law judge noted that claimant testified that he worked in the coal mines from 1970 until about August or September of 1991.[8] Decision and Order on Remand at 2. The administrative law judge also noted that the SSA earnings records showed that claimant's

---

[8] In addressing employer's assertions regarding the ending date of claimant's coal mine employment, the administrative law judge noted that claimant indicated on the prior 1994 claim form that he stopped working in April of 1991. Decision and Order on Remand at 4. The administrative law judge also noted that claimant subsequently testified at the October 16, 2012 hearing that he stopped working in the coal mines in August or September of 1991. *Id.*; Hearing Tr. at 15. In considering the discrepancy in the evidence regarding the ending date of claimant's coal mine employment, the administrative law judge explained that "[c]laimant was not confronted with it at hearing." Decision and Order on Remand at 4. Moreover, the administrative law judge found that "it is not crucial to a credibility determination as more importantly, that evidence is twenty years old and I note that with time, memory may recede." *Id.* at 4-5. The administrative law judge therefore rejected employer's argument that "[c]laimant's memory and testimony is too vague, and [found] that to a reasonable degree of probability, he is to be believed." *Id.* at 5.

coal mine employment began in 1970 and ended in 1991.[9]  *Id.*  Additionally, after noting that "[t]he period in question covers more than a twenty year period," the administrative law judge noted that claimant acknowledged that he did not work for about a year due to an injury, that he did not work during "a few other periods on account of his back injury," and that he spent one year working in construction in Florida.  *Id.*; Hearing Tr. at 15-18.  The administrative law judge nevertheless determined that "[t]he records do not substantiate that [claimant] was out of work for as long as six years due to compensation related injuries."  Decision and Order on Remand at 5.  Hence, the administrative law judge found that claimant established a total of over fifteen years in underground coal mine employment.

Employer asserts that the administrative law judge failed to adequately explain how he computed the length of claimant's coal mine employment.  We disagree.  Since the Act fails to provide any specific guidelines for the computation of time spent in coal mine employment, the Board will uphold the administrative law judge's determination if it is based on a reasonable method and supported by substantial evidence in the record considered as a whole.  *See Vickery v. Director, OWCP*, 8 BLR 1-430 (1986); *Smith v. National Mines Corp.*, 7 BLR 1-803 (1985); *Miller v. Director, OWCP*, 7 BLR 1-693 (1983); *Maggard v. Director, OWCP*, 6 BLR 1-285 (1983).  In this case, the administrative law judge considered claimant's testimony that the SSA earnings records did not substantiate all of his coal mine employment because "some of his employers did not generate Social Security records."[10]  Decision and Order on Remand at 5.  After

_____

[9]  As noted by the administrative law judge in his prior decision, "the [district director] arrived at the 9.25 figure by comparing claimant's earnings to the average yearly earnings of coal miners listed in Exhibit 610, based on 125 days of exposure, or less than half the number of work days in a year."  Decision and Order at 4.  The administrative law judge also noted that "[e]mployer argues that the provision from §725.493(b) equating 125 days to a full year applies only to calculations identifying the responsible operator."  *Id.*  In considering this case on remand, the administrative law judge found that the Department of Labor's (DOL) method of determining length of coal mine employment is reasonable.  Nevertheless, the administrative law judge relied on claimant's testimony from the hearing.  The administrative law judge stated, "I listened to the testimony, and I had an opportunity to observe the [c]laimant and I found that he is credible, and the DOL did not take his allegations into consideration."  Decision and Order on Remand at 5.  Hence, while the administrative law judge accepted the district director's length of coal mine employment determination based on the record, he found that "the [c]laimant is credible that he actually worked more than that."  *Id.* at 6.

[10]  It is the administrative law judge's function to weigh the evidence, draw appropriate inferences, and determine credibility.  *See Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 21 BLR 2-23 (4th Cir. 1997); *Newport News Shipbldg. & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988).

noting claimant's assertion that "even if he 'is not a good historian' his testimony may still be credible," the administrative law judge determined that claimant's testimony was neither conflicting, nor inaccurate. *Id.* at 4. The administrative law judge further determined that "[c]laimant may have struggled to remember how much money he earned at a job he worked over forty years ago, but this does not discredit his testimony if he remembers how long he worked at a particular coal mine site." *Id.* Additionally, the administrative law judge determined that "[i]t is reasonable to expect that [claimant] also worked for periods 'under the table,' as alleged, early in his career, in the 1970's." *Id.* at 5; Hearing Tr. at 17, 23. Because the administrative law judge acted within his discretion in crediting claimant's testimony that "he worked more than [fifteen] years in mining," Decision and Order on Remand at 5; *see Mabe v. Bishop Coal Co.*, 9 BLR 1-67 (1986); *Sisak v. Helen Mining Co.*, 7 BLR 1-178, 1-181 (1984), we reject employer's assertion that the administrative law judge failed to adequately explain how he computed the length of claimant's coal mine employment. Moreover, because it is supported by substantial evidence, we affirm the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment.

Furthermore, in view of our affirmance of the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment, we also affirm the administrative law judge's determination to reinstate his prior finding that claimant was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis at amended Section 411(c)(4).

Next, we address employer's contention that the administrative law judge erred in previously finding that it failed to establish rebuttal of the presumption of total disability due to pneumoconiosis at amended Section 411(c)(4).[11] Employer asserts that the administrative law judge erred in previously finding that it did not establish the absence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1). In his prior Decision and Order, the administrative law judge noted that "[t]he evidence consists of 9 readings of four x-rays [dated January 14, 2011,[12] April 20, 2011, January 16, 2012 and March 28, 2012]," that five of the readings were positive for pneumoconiosis and that four of the readings were negative. Decision and Order at 6. Dr. Baker, a B reader, and Dr. Alexander, a dually-qualified B reader and Board-certified radiologist, read the January 14, 2011 x-ray

---

[11] Once the presumption of total disability due to pneumoconiosis is invoked at amended Section 411(c)(4), the burden shifts to employer to rebut the presumption by showing that the miner does not have pneumoconiosis, or that no part of his disability was caused by pneumoconiosis. 30 U.S.C. §921(c)(4), as implemented by 20 C.F.R. §718.305(d)(1)(i), (ii).

[12] Dr. Barrett, a dually-qualified B reader and Board-certified radiologist, read the January 14, 2011 x-ray for quality only. Director's Exhibit 12.

7

as positive for pneumoconiosis, Director's Exhibits 12, 14, while Dr. Wheeler, a dually-qualified radiologist, read this x-ray as negative, Director's Exhibit 16. Further, Dr. Alexander read the April 20, 2011 x-ray as positive for pneumoconiosis, Claimant's Exhibit 1, while Dr. Scott, who is also a dually-qualified radiologist, read this x-ray as negative, Employer's Exhibit 10. Additionally, Dr. DePonte, a dually-qualified radiologist, read the January 16, 2012 x-ray as positive for pneumoconiosis, Claimant's Exhibit 3, while Dr. Scott read this x-ray as negative, Employer's Exhibit 6. Lastly, Dr. Alexander read the March 28, 2012 x-ray as positive for pneumoconiosis, Claimant's Exhibit 5, while Dr. Scott read this x-ray as negative, Employer's Exhibit 9. After noting that Dr. Baker was the only physician who was not a dually-qualified radiologist, the administrative law judge determined that the readings of the dually-qualified radiologists were in equipoise. Then the administrative law judge gave less weight to Dr. Scott's reading of the March 28, 2012[13] x-ray because he found that it was equivocal. Conversely, the administrative law judge gave dispositive weight to Dr. Alexander's positive reading of the March 28, 2012 x-ray based on recency. The administrative law judge therefore found that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1).

Employer argues that the administrative law judge should have accorded dispositive weight to the negative x-ray readings of Drs. Wheeler and Scott because of their superior credentials. In considering the credentials of the radiologists, the administrative law judge acknowledged that, in addition to being dually-qualified as B readers and Board-certified radiologists, Drs. Wheeler and Scott have "teaching experience at Johns Hopkins Medical School." Decision and Order at 7. Nevertheless, the administrative law judge did not give dispositive weight to the negative readings of Drs. Wheeler and Scott on this basis. While an administrative law judge may accord greater weight to x-ray readings provided by physicians who are professors of radiology, as well as dually-qualified radiologists, he is not required to do so. *See Melnick v. Consolidation Coal Co.*, 16 BLR 1-31 (1991)(en banc). Thus, we reject employer's assertion that the administrative law judge should have accorded dispositive weight to the negative readings of Drs. Wheeler and Scott because they are professors of radiology in addition to being dually-qualified radiologists.

Employer also argues that the administrative law judge erred in discounting Dr. Scott's negative reading of the March 28, 2012 x-ray. Specifically, employer asserts that the administrative law judge applied a greater degree of scrutiny to Dr. Scott's negative reading than he applied to Dr. Alexander's positive reading of the same x-ray. We

---

[13] The administrative law judge's characterization that the most recent x-ray read by Dr. Scott was taken on September 19, 2012 appears to be a typographical error. Decision and Order at 7. The record indicates that the March 28, 2012 x-ray was read by Dr. Scott on September 19, 2012. Employer's Exhibit 9.

8

disagree. An administrative law judge must determine whether a reading is positive, by showing a 1/0 or greater profusion of the opacities, or negative. 20 C.F.R. §§718.102, 718.202(a). Further, an administrative law judge may consider a doctor's narrative explanation on an ILO form when an x-ray interpretation is *negative* for pneumoconiosis. *See* 20 C.F.R. §718.202(a)(1); *Cranor v. Peabody Coal Co.*, 22 BLR 1-1, 1-5 (1999). In this case, the administrative law judge permissibly found that Dr. Scott's reading of the March 28, 2012 x-ray was equivocal, based on the doctor's comment that there is a possibility of cancer and emphysema, despite the administrative law judge's finding that "[t]here is no record of cancer." Decision and Order at 7; *see U.S. Steel Mining Co. v. Director, OWCP [Jarrell]*, 187 F.3d 384, 21 BLR 2-639 (4th Cir. 1999); *Justice v. Island Creek Coal Co.*, 11 BLR 1-91 (1988); *Campbell v. Director, OWCP*, 11 BLR 1-16 (1987). Thus, we reject employer's assertion that the administrative law judge erred in discounting Dr. Scott's reading of the March 28, 2012 x-ray.

Employer additionally argues that the administrative law judge erred in failing to weigh the x-ray readings submitted in the prior claim. We disagree. An administrative law judge may find that the most recent medical evidence more accurately reflects a miner's condition. *See Roberts v. West Virginia C.W.P. Fund*, 74 F.3d 1233, 20 BLR 2-67 (4th Cir. 1996); *Cooley v. Island Creek Coal Co.*, 845 F.2d 622, 11 BLR 2-147 (6th Cir. 1988); *Parsons v. Wolf Creek Collieries*, 23 BLR 1-29 (2004) (en banc); *Workman v. E. Associated Coal Corp.*, 23 BLR 1-22 (2004) (en banc). In this case, the record contains five readings of two x-rays, dated November 15, 1994 and February 23, 1995, that were submitted with the first claim, Director's Exhibit 1, and nine readings of four x-rays, dated January 14, 2011, April 20, 2011, January 16, 2012 and March 28, 2012, that were submitted with the subsequent claim, Director's Exhibits 12, 14, 16; Claimant's Exhibits 1, 3, 5; Employer's Exhibits 6, 9, 10. As discussed, *supra*, however, the administrative law judge reasonably focused on the newly submitted x-ray readings. *See Parsons*, 23 BLR at 1-35; *Workman*, 23 BLR at 1-27; Decision and Order at 6. Thus, we reject employer's assertion that the administrative law judge erred in failing to weigh the older x-ray readings submitted in the prior claim. Because the administrative law judge properly accorded dispositive weight to Dr. Alexander's positive reading of the March 28, 2012 x-ray based on recency, *see Adkins v. Director, OWCP*, 958 F.2d 49, 16 BLR 2-61 (4th Cir. 1992); *see also Thorn v. Itmann Coal Co.*, 3 F.3d 713, 18 BLR 2-16 (4th Cir. 1993), we affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1).[14]

---

[14] Employer argues that the administrative law judge previously erred in considering Dr. Wheeler's March 20, 2012 digital x-ray. Contrary to employer's assertion, in his prior decision, the administrative law judge permissibly found that "Dr. Wheeler did not emphysema and tuberculosis with question marks." Decision and Order at 7 n.5; *see U.S. Steel Mining Co. v. Director, OWCP [Jarrell]*, 187 F.3d 384, 21 BLR 2-639 (4th Cir. 1999); *Justice v. Island Creek Coal Co.*, 11 BLR 1-91 (1988); *Campbell v. Director, OWCP*, 11 BLR 1-16 (1987). Thus, we reject employer's assertion

9

Further, employer asserts that the administrative law judge erred in previously finding that it did not establish the absence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(2). Employer argues that "[the administrative law judge] mechanically and improperly [applied] the later evidence rule by refusing to consider Dr. Caffrey's 2005 biopsy report without further explanation. Contrary to employer's assertion, to the extent that the administrative law judge considered the evidence as it relates to claimant's condition as of the time of the hearing (as opposed to the date of onset), the administrative law judge permissibly accorded "little weight" to Dr. Caffrey's 2005 biopsy report because he found it to be "old." Decision and Order at 7; *see Parsons*, 23 BLR at 1-35; *Workman*, 23 BLR at 1-27. Thus, we affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(2).

Employer also asserts that the administrative law judge erred in previously finding that it did not establish the absence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(4). Specifically, employer argues that the administrative law judge erred in discounting the opinions of Drs. Rosenberg and Dahhan. Contrary to employer's assertion, the administrative law judge permissibly found that the opinions of Drs. Rosenberg and Dahhan were flawed because the doctors relied on negative chest x-ray readings, which were contrary to the administrative law judge's finding that the x-ray evidence established the existence of clinical pneumoconiosis. *See Jordan*, 876 F.2d at 1460, 12 BLR at 2-374-75; *Taylor v. Ala. By-Products Corp.*, 862 F.2d 1529, 1531 n.1, 12 BLR 2-110, 2-112 n.1 (11th Cir. 1989); Decision and Order at 7. Thus, we affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(4).[15]

that the administrative law judge previously erred in considering Dr. Wheeler's March 20, 2012 digital x-ray. However, the administrative law judge further stated that "digital x-rays are deemed 'other' evidence under the rules and as I have already ruled for [c]laimant on the x-ray evidence, I choose not to do so with respect to 'other' evidence." Decision and Order at 7 n.5. In view of our disposition of the issue of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1), (2) and (4), we need not address the administrative law judge's determination not to render a finding that claimant's digital x-ray reading established the existence of clinical pneumoconiosis. *See Larioni v. Director, OWCP*, 6 BLR 1-1276 (1984).

[15] Employer also asserts that "[the administrative law judge] erred in failing to consider whether the evidence ruled out legal pneumoconiosis." Employer's Brief at 25. In light of our decision to affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a), we need not address employer's assertion regarding the issue of legal pneumoconiosis. *See Larioni*, 6 BLR at 1-1278.

10

Employer also asserts that the administrative law judge erred in previously finding that it failed to carry its burden of proving that pneumoconiosis did not contribute to claimant's total disability. The administrative law judge stated that "the burden is on the [e]mployer to rule out [p]neumoconiosis as a cause for total disability." Decision and Order at 8. After noting that employer relied on the opinions of Drs. Rosenberg and Dahhan, the administrative law judge permissibly discounted the disability causation opinions of Drs. Rosenberg and Dahhan because the doctors opined that claimant does not suffer from clinical or legal pneumoconiosis, contrary to his finding on this issue. *See Skukan v. Consolidation Coal Co.*, 993 F.2d 1228, 1233, 17 BLR 2-97, 2-104 (6th Cir. 1993), *vac'd sub nom., Consolidation Coal Co. v. Skukan*, 512 U.S. 1231 (1994), *rev'd on other grounds, Skukan v. Consolidated Coal Co.*, 46 F.3d 15, 19 BLR 2-44 (6th Cir. 1995); *Trujillo v. Kaiser Steel Corp.*, 8 BLR 1-472 (1986). Thus, we reject employer's assertion that the administrative law judge erred in previously finding that employer failed to carry its burden of proving that pneumoconiosis did not contribute to claimant's total disability. Because it is supported by substantial evidence, we affirm the administrative law judge's prior finding that employer failed to establish that no part of claimant's pulmonary or respiratory total disability was caused by pneumoconiosis. *See* 20 C.F.R. §718.305(d)(1)(ii); *Minich v. Keystone Coal Mining Corp.*,     BLR    , BRB No. 13-0544 BLA (Apr. 21, 2015)(Boggs, J., concurring and dissenting).

We, therefore, affirm the administrative law judge's determination to reinstate his prior finding that employer failed to establish rebuttal of the presumption at amended Section 411(c)(4).

We now address claimant's counsel's fee petition filed in connection with services performed before the Board from February 18, 2013 to December 28, 2013 in the prior appeal, BRB No. 13-0237 BLA. Claimant's counsel has filed a complete, itemized statement requesting a fee for services performed before the Board, pursuant to 20 C.F.R. §802.203. Claimant's counsel requests a total fee of $3,743.75 for 2.75 hours of legal services at an hourly rate of $300.00, 11.75 hours of legal services at an hourly rate of $225.00, and 2.75 hours of legal services at an hourly rate of $100.00.

Employer has filed an objection to claimant's counsel's fee petition. Specifically, employer contends that claimant's counsel's fee petition is premature. Alternatively, employer contends that claimant's counsel charges for work that is clerical in nature and duplicative. Further, employer contends that claimant's counsel's use of quarter-hour billing for routine tasks is excessive. Claimant's counsel has not filed a response to employer's objections.

We reject employer's contention that claimant's counsel's fee petition is premature. 20 C.F.R. §802.203(c). We also reject employer's contention that the time charged by claimant's counsel for entries on May 9, 2013 and June 11, 2013 related to certified letters to the Board is excessive and should be reduced from 0.5 hour to 0.2

11

hour. Claimant's counsel's practice of billing in one-quarter hour increments is reasonable. 20 C.F.R. §802.203(d)(3). However, we agree with employer that entries listed on March 4, 2013, April 8, 2013, June 18, 2013 and December 28, 2013 as taking telephone calls from client wishing to discuss the case with someone is a clerical duty for which separate billing is not permissible. *Whitaker v. Director, OWCP*, 9 BLR 1-216 (1986). Further, we agree with employer that entries listed on March 1, 2013, March 27, 2013 and April 18, 2013 for reviewing the file are duplicative of services performed on February 18, 2013, March 6, 2013 and April 9, 2013. Therefore, we disallow 1.75 hours claimed for these services at the hourly rate of $100.00. We find that the remaining time is reasonable and commensurate with the necessary services performed in defending claimant's award of benefits.

Therefore, we approve a total fee of $3,568.75 for 2.75 hours of legal services at an hourly rate of $300.00, 11.75 hours of legal services at an hourly rate of $225.00, and 1.00 hour of legal services at an hourly rate of $100.00 rendered in defense of this claim. The fee is to be paid directly to claimant's counsel by employer.[16] 33 U.S.C. §928, as incorporated by 30 U.S.C. §932(a); 20 C.F.R. §802.203; *see Clark v. Director, OWCP*, 9 BLR 1-211 (1986).

Accordingly, the administrative law judge's Decision and Order on Remand - Award of Benefits is affirmed.

SO ORDERED.

BETTY JEAN HALL, Chief
Administrative Appeals Judge

I concur.

GREG J. BUZZARD
Administrative Appeals Judge

BOGGS, Administrative Appeals Judge, dissenting:

---

[16] This fee award is neither enforceable nor payable until such time as an award of benefits is final. *See* 33 U.S.C. §928; *Wells v. Int'l Great Lakes Shipping Co.*, 693 F.2d 663, 15 BRBS 47 (CRT)(7th Cir. 1982); *Spinner v. Safeway Stores, Inc.*, 18 BRBS 155 (1986).

12

A012

BOGGS, Administrative Appeals Judge, dissenting:

I respectfully dissent from the majority's decision to affirm the administrative law judge's award of benefits. I would vacate the award of benefits and remand the case for further consideration. Specifically, I would vacate the administrative law judge's finding that claimant has over 15 years in underground coal mine employment. As employer asserts, the administrative law judge failed to adequately explain how he computed the length of claimant's coal mine employment. *Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162, 1-165 (1989). The administrative law judge found that claimant's testimony that the Social Security Administration (SSA) earnings records did not substantiate all of his coal mine employment was credible. Decision and Order on Remand at 5. However, the administrative law judge did not explain how he resolved the discrepancies in claimant's testimony with the SSA earnings records regarding the location and duration of some of claimant's coal mine jobs. *Wojtowicz*, 12 BLR at 1-165. Although the administrative law judge credited claimant with five full years of coal mine employment from 1970 to 1974, claimant's testimony and his SSA earnings records show that he also worked in non-coal mine employment during this time period.[17] Specifically, the SSA earnings

---

[17] During the hearing, claimant responded to the following questions from claimant's counsel regarding the length of his coal mine employment:

Q. You said you started working in the mines since '71, you think?
A. Yes.
Q. Okay. That would be Archer and Club Coal Company maybe?
A. That could have been. I just don't remember exactly.
Q. Actually, it looks like there's some employment for Highpoint Coal Company in 1970?
A. Yeah, I think that was probably the first one.

******

Q. In 1970. It shows some earnings of $72.00. How long did you work for Peem Coal Company in 1970?
A. I know I was there close to a year.
Q. Just so we're clear on this, it also shows some work for Clark Super 100 in Clarksburg, Tennessee in 1970?
A. It could have been. I couldn't say for sure with my life.
Q. Okay, there's also a little bit of work in Biloxi, Mississippi.
A. I do remember that.
Q. In 1970.
A. Yes. Yes, I do remember that.

13

A013

records show that claimant worked in 1970 for Broad Water Beach Hotel in Biloxi, Mississippi, and for Clark Super 100 in Cookeville, Tennessee. Director's Exhibit 7 at 4-5. Likewise, claimant provided testimony that between 1970 and 1974 he worked in construction for a year in Florida. Hearing Tr. at 17-18, 24-25, 27-28. Moreover, the SSA earnings records show that claimant worked in Florida in the third quarter of 1972 and the second quarter of 1973. Consequently, both claimant's testimony and the SSA earnings records indicate that claimant worked in Florida for a year between 1972 and 1973. While the administrative law judge accepted claimant's testimony that he worked for a total of five years in coal mine employment during the period from 1970 to 1974, Decision and Order on Remand at 3, he did not adequately explain how he resolved the discrepancy between claimant's testimony that claimant worked five years of coal mine employment during the period from 1970 to 1974 with claimant's testimony, as supported by the SSA earnings records, that he worked in construction in Florida for one year during the same period of time. In addition, the administrative law judge did not make a determination regarding the specific starting and ending dates for various employers, or reconcile employment time periods in instances where the dates are

Hearing Tr. at 17, 24-25.

Claimant also responded to the following questions from employer's counsel regarding the length of his coal mine employment:

> Q. Okay. There were several companies that you mentioned around the year 1971 which you said you worked for more than a year or a year for the company?
> A. Yeah.
> Q. Okay. Is it possible that you're mistaken with regard to the length of the employment with some of these companies?
> A. It very well could be.
> Q. Okay and the reason I'm asking you is you indicated that you felt like you worked for more than a year for Highpoint Coal and also for Archer and Club Coal.
> A. Yeah.
> Q. But both of those companies show employment in 1971.
> A. Yeah.
> Q. Okay, then there's also employment with Peem Corporation in 1971.
> A. I had these wrote down and I worked real hard. I'm not the sharpest tool in the shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could, but not having any documentation, there was no way I could tell you 100 percent [for] sure about any of them.

Hearing Tr. at 32-33.

14

A014

overlapping, or explain how he calculated partial years of employment. *Wojtowicz*, 12 BLR at 1-165. Rather, based on claimant's testimony that claimant worked "close to a year," "almost a year," "about a year, maybe longer," "at least one year," and "one year," the administrative law judge determined that claimant worked a total of five years in coal mine employment from 1970 to 1974. Decision and Order on Remand at 2-3. In so doing, the administrative law judge failed to adequately explain how he resolved the conflicts in all the relevant evidence regarding the length of claimant's coal mine employment from 1970 to 1974. *Wojtowicz*, 12 BLR at 1-165. Further, I would hold that the administrative law judge failed to adequately explain his preference for claimant's testimony in 2012 over a form claimant completed many years closer in time to the work performed by him,[18] given the administrative law judge's observation that "with time, memory may recede." Decision and Order on Remand at 5; *see Wojtowicz*, 12 BLR at 1-165. In view of the foregoing, I would hold that the administrative law judge's finding that claimant established over fifteen years in coal mine employment was not based on a reasonable method of computation and is not in compliance with the Administrative Procedure Act (APA).[19] I would therefore vacate the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment and again remand the case for further consideration of all the relevant evidence in accordance with the APA. On remand, I would instruct the administrative law judge to render a specific length of coal mine employment finding, based on a reasonable method of computation.

Further, because I would vacate the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment, I would also vacate the administrative law judge's determination that claimant was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis at amended Section 411(c)(4). I would instruct the administrative law judge that he may reinstate his finding that claimant is entitled to invocation of the rebuttable presumption

---

[18] As noted by the administrative law judge, although claimant indicated on a 1994 claim form that he stopped working in April of 1991, he subsequently testified at the October 16, 2012 hearing that he stopped working in the coal mines in August or September of 1991. Decision and Order on Remand at 4; Hearing Tr. at 15. The administrative law judge inexplicably determined that the discrepancy in claimant's 1994 claim form and his 2012 hearing testimony regarding when claimant stopped working in the coal mines "is not crucial to a credibility determination." Decision and Order on Remand at 4-5.

[19] The Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a), requires that an administrative law judge independently evaluate the evidence and provide an explanation for his findings of fact and conclusions of law. *Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162, 1-165 (1989).

15

A015

of total disability due to pneumoconiosis at amended Section 411(c)(4) if he again finds that claimant establishes fifteen years of qualifying coal mine employment.

Additionally, I would instruct the administrative law judge to reconsider whether employer has established rebuttal of the presumption at amended Section 411(c)(4), as employer's assertions that the administrative law judge previously erred in finding that employer failed to disprove the existence of clinical pneumoconiosis have merit. After initially concluding that the readings of the dually-qualified radiologists were in equipoise, the administrative law judge stated:

> However, a review of the opinions shows that in the most recent x-ray, [dated March 28, 2012, EX 9, Dr. Scott rated the film quality as a 2, due to scapular overlay and also noted a 1.5 cm nodule and possible cancer and emphysema. There is no record of cancer. Emphysema may evidence legal pneumoconiosis. I find that this is an equivocal reading and attribute less weight to it.

Decision and Order at 7. While an administrative law judge may consider a doctor's narrative explanation on an ILO form when an x-ray interpretation is negative for pneumoconiosis, *see* 20 C.F.R. §718.202(a)(1); *Cranor v. Peabody Coal Co.*, 22 BLR 1-1, 1-5 (1999), the interpretation of medical data is for the medical experts. *Marcum v. Director OWCP*, 11 BLR 1-23 (1987). To the extent the administrative law judge discounted Dr. Scott's negative x-ray reading because he found the doctor's comment, that there is a possibility of emphysema, suggests that claimant may have legal pneumoconiosis, the administrative law judge erroneously substituted his opinion for that of the physician. *Marcum*, 11 BLR at 1-24. In addition, as employer argues, I would hold that the administrative law judge erred in failing to consider the negative readings of the x-rays dated November 15, 1994 and February 23, 1995. *McCune v. Central Appalachian Coal Co.*, 6 BLR 1-966, 1-988 (1984); Director's Exhibit 1. Therefore, I would vacate the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1).[20]

---

[20] Employer further argues that the administrative law judge previously erred in weighing Dr. Wheeler's March 20, 2012 digital x-ray. In his prior decision, the administrative law judge noted that "[b]oth of the parties submitted readings of a [March 20, 2012] digital image" and that "[t]he readings oppose each other." Decision and Order at 7 n.5. After noting claimant's position that Dr. Wheeler's interpretation of the March 20, 2012 digital x-ray should be discounted, the administrative law judge stated, "digital x-rays are deemed 'other' evidence under the rules and as I have already ruled for [c]laimant on the x-ray evidence, I choose not to do so with respect to 'other' evidence." Decision and Order at 7 n.5. Digital x-rays constitute other medical evidence, and the admissibility of digital x-rays is governed by 20 C.F.R. §718.107. *Webber v. Peabody Coal Co.*, 23 BLR 1-123, 1-135 (2006)(en banc)(Boggs, J., concurring), *aff'd on recon.*,

16

Further, because I would vacate the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1), I would also vacate the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(4). Moreover, as employer asserts, I would hold that the administrative law judge erred in failing to consider whether it established rebuttal of the presumption at amended Section 411(c)(4) by proving the absence of legal pneumoconiosis. Consequently, I would instruct the administrative law judge, on remand, to consider whether employer has rebutted the presumed existence of both clinical and legal pneumoconiosis, if reached. *See generally Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 533, 21 BLR 2-323, 2-335 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441, 21 BLR 2-269, 2-275-76 (4th Cir. 1997). I would also instruct the administrative law judge to set forth his findings on remand in detail, including the underlying rationale, as required by the APA. *See Wojtowicz*, 12 BLR at 1-165.

Finally, because I would vacate the administrative law judge's prior finding that employer failed to disprove the existence of pneumoconiosis at 20 C.F.R. §718.202(a), I would also vacate the administrative law judge's prior finding that employer failed to prove that claimant's pulmonary or respiratory impairment did not arise out of, or in connection with, coal mine employment. I would therefore instruct the administrative law judge to consider whether employer is able to rebut the presumed fact of total disability due to pneumoconiosis, if reached. *See* 20 C.F.R. §718.305(d)(1)(ii).

I agree with the majority in all other respects.

*Judith S. Boggs*

_____
JUDITH S. BOGGS
Administrative Appeals Judge

_____
24 BLR 1-1, 1-7-8 (2007)(en banc). Pursuant to 20 C.F.R. §718.107(b), the administrative law judge was required to determine, on a case-by-case basis, whether the proponent of the digital x-ray evidence has established that it is medically acceptable and relevant to entitlement. *Webber*, 23 BLR at 1-133. Because the administrative law judge did not adequately explain how he weighed the conflicting digital x-ray interpretations, *Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162, 1-165 (1989), I would hold that the administrative law judge's finding at 20 C.F.R. §718.107 does not comply with the requirements of the Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a). Thus, I would instruct the administrative law judge to reconsider the digital x-ray evidence thereunder.

17

# CERTIFICATE OF SERVICE

2014-0329-BLA Joseph Fleming v. Aberry Coal, Inc., Director, Office of Workers' Compensation Programs (Case No. 12-BLA-5241)

I certify that the parties below were served this day.

_07/31/2015_
(DATE)

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Alexander Franklin Smith
Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Washington , DC 20001
--*Electronic*

Michael Chance
District Director
U.S. Department of Labor
Suite C-3516, NDOL
Washington, DC 20210

Joseph Fleming
1226 Zirkle Road
Dandridge, TN 37725
--*Certified*

Rae Ellen James, Esq.
Associate Solicitor, U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
--*Electronic*

Nate D. Moore, Esq.
Penn, Stuart & Eskridge
P.O. Box 2009
Bristol, VA 24203
--*Certified*

Hon. Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW Suite 400-N
Washington, DC 20001

Joseph E. Wolfe, Esq.
Wolfe Williams & Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA 24273
--*Certified*

A018

## NOTICE OF APPEAL RIGHTS

A Decision of the Benefits Review Board shall become final sixty (60) days after its issuance unless a written petition for review is filed with the appropriate United States Court of Appeals <u>prior</u> to the expiration of the sixty (60) day period, or unless a timely request for reconsideration is filed with the Board. 33 U.S.C. Section 921; 30 U.S.C. Section 932(a); 20 C.F.R. Sections 802.406, 802.407. Therefore, you are advised that you may SEEK RECONSIDERATION OF, OR APPEAL, a final decision of the Board within the time limits set forth below. THE TIME LIMITS CANNOT BE EXTENDED, AND YOU MUST SUBMIT YOUR REQUEST TO THE PROPER PLACE WITHIN THE TIME PROVIDED.

If you seek RECONSIDERATION by this Board (that is, if you want the Board to reconsider its decision), you must submit to the Board a written Motion for Reconsideration within <u>30 DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION.</u> Your motion should identify any error you find in the Board's opinion and state the reasons you believe warrant further consideration of your case. If you file a timely motion for reconsideration, you will have sixty (60) days from issuance of the Board's decision on reconsideration to file an appeal with a Court of Appeals, as set forth below.

Alternatively, if you wish to APPEAL to a United States Court of Appeals, you must insure that a petition for review is received by <u>THE APPROPRIATE COURT (NOT THIS BOARD WITHIN SIXTY (60) DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION.</u> The petition for review should contain the case number and the date of the Board's decision. The petition should be sent to the Court of Appeals which covers the state in which the employee's injury occurred. In a black lung claim, any state in which the miner had coal mine employment may be considered the state in which the injury occurred (i.e., for a black lung appeal, you may file in any Court of Appeals covering any state in which you <u>worked</u> as a miner). Listed on the back of this page are the twelve Courts of Appeals and the states they cover. You should identify the court covering the state of injury (including all states of mine employment for black lung claims) and file your petition with that court. If you have question about your case, call the Clerk of the court at the number shown on the bottom of this page. If you appeal directly to the Court of Appeals you may not later get reconsideration by the Board. However, if you seek Board reconsideration you may later appeal the Board's ruling on reconsideration to the Court of Appeals.

IF YOU HAVE ANY QUESTIONS ABOUT THE PROCEDURES TO BE FOLLOWED IN YOUR CASE, CALL THE OFFICE OF THE CLERK OF THE BOARD, (202) 693-6300.

RECEIVED

SEP 1 6 2015

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CINCINNATI, OHIO

ABERRY COAL, INC.                    )
P.O. Box 426                         )
Pound, VA  24279                     )
                                     )
            Employer,                )
                                     )
ARROWPOINT CAPITAL,                  )
c/o UNDERWRITERS SAFETY & CLAIMS     )
P.O. Box 23640                       )
Louisville, KY  40223                )
                                     )
            Insurer,                 )
                                     )
            Petitioners,             )
                                     )
v.                                   )      OWCP No.: XXX-XX-0560
                                     )      ALJ Case No.:  2012-BLA-05241
                                     )      BRB No.:  2014-0329-BLA
JOSEPH FLEMING,                      )
1226 Zirkle Road                     )
Dandridge, TN  37725                 )
                                     )
            Respondent,              )
                                     )
and                                  )
                                     )
DIRECTOR, OFFICE OF WORKERS'         )
COMPENSATION PROGRAMS,               )
UNITED STATES DEPARTMENT OF          )
LABOR,                               )
200 Constitution Avenue, NW          )
Suite C-3520, NDOL                   )
Washington, D.C. 20210               )
                                     )
            Respondent/Party-in-Interest  )
                                     )

Bristol: 556068-1

A020

-2-

## EMPLOYER'S PETITION FOR REVIEW

ABERRY COAL, INC. and Arrowpoint Capital, c/o Underwriters Safety & Claims, hereby petition the Court of Appeals for review of the Decision and Order of the Benefits Review Board entered on July 31, 2015. A copy of the Board's decision is attached. Petitioners ask the Court of Appeals to reverse or vacate and remand the Benefits Review Board's decision awarding benefits to the respondent.

Respectfully submitted,

ABERRY COAL, INC.

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA 24203
Phone: 423-793-4803
Fax: 423-793-4843
jsigmond@pennstuart.com

By: _____
     John R. Sigmond, Esq.
     TN State Bar # 24702

Bristol: 556068-1

-3-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been mailed to Joseph E.

Wolfe, Esq., Wolfe, Williams, Rutherford & Reynolds, P. O. Box 625, Norton, Virginia, 24273-

0625, Douglas N. White, Esq., U. S. Department of Labor, Office of Associate Regional

Solicitor, 201 12ᵗʰ Street South – Suite 500, Arlington, Virginia, 22202-5450, and Rae Ellen

Frank James, Esq., Associate Solicitor of Labor, U.S. Department of Labor, Suite N 2605,

NDOL, 200 Constitution Avenue NW, Washington, D.C. 20210, on this ___15___ day of

September, 2015.

JOHN R. SIGMOND

A022

**U.S. Department of Labor**        Benefits Review Board
                                    P.O. Box 37601
                                    Washington, DC 20013-7601



BRB No. 14-0329 BLA

JOSEPH FLEMING                        )      **NOT PUBLISHED**
                                      )
        Claimant-Respondent           )
                                      )
    v.                                )
                                      )
ABERRY COAL, INCORPORATED             )    DATE ISSUED: **JUL 3 1 2015**
                                      )
        Employer-Petitioner           )
                                      )
DIRECTOR, OFFICE OF WORKERS'          )
COMPENSATION PROGRAMS, UNITED         )
STATES DEPARTMENT OF LABOR            )
                                      )
        Party-in-Interest             )    DECISION and ORDER

Appeal of the Decision and Order on Remand - Award of Benefits of Daniel F. Solomon, Administrative Law Judge, United States Department of Labor.

Joseph E. Wolfe and Brad A. Austin (Wolfe Williams Rutherford & Reynolds), Norton, Virginia, for claimant.

Nate D. Moore (Penn, Stuart & Eskridge), Bristol, Virginia, for employer.

Dominique Sinesi (M. Patricia Smith, Solicitor of Labor; Rae Ellen James, Associate Solicitor; Michael J. Rutledge, Counsel for Administrative Litigation and Legal Advice), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: HALL, Chief Administrative Appeals Judge, BOGGS and BUZZARD, Administrative Appeals Judges.

HALL, Chief Administrative Appeals Judge:

Employer appeals the Decision and Order on Remand - Award of Benefits (2012-BLA-05241) of Administrative Law Judge Daniel F. Solomon rendered on a subsequent

Copied by PS&E

claim[1] filed pursuant to the provisions of the Black Lung Benefits Act, 30 U.S.C. §§901-944 (2012) (the Act). This case is before the Board for the second time. In his original Decision and Order, the administrative law judge credited claimant with at least fifteen years of underground coal mine employment and accepted employer's concession that claimant is totally disabled from a respiratory impairment pursuant to 20 C.F.R. §718.204(b). The administrative law judge therefore found that claimant was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis at amended Section 411(c)(4) of the Act, 30 U.S.C. §921(c)(4), as implemented by 20 C.F.R. §718.305. Further, the administrative law judge found that the presumption was not rebutted. Accordingly, the administrative law judge awarded benefits.

In response to employer's appeal, the Board affirmed the administrative law judge's findings that claimant's coal mine employment was underground and that claimant is totally disabled from a respiratory impairment at 20 C.F.R. §718.204(b). *Fleming v. Aberry Coal, Inc.*, BRB No. 13-0237 BLA, slip op. at 2 n.4 (Dec. 17, 2013)(unpub.). The Board also held that claimant established a change in an applicable condition of entitlement pursuant to 20 C.F.R. §725.309. *Fleming*, BRB No. 13-0237 BLA, slip op. at 2 n.4. However, the Board vacated the administrative law judge's findings that claimant established at least fifteen years in underground coal mine employment and was entitled to invocation of the rebuttable presumption at amended Section 411(c)(4), and remanded the case for further consideration of the evidence.[2] *Fleming*, BRB No. 13-0237 BLA, slip op. at 5.

The Board determined that the administrative law judge failed to adequately explain the method he used to compute the length of claimant's coal mine employment. Specifically, the Board noted that it could be discerned that the administrative law judge credited the district director's determination that claimant had 9.25 years of coal mine employment because it was consistent with claimant's Social Security Administration (SSA) earnings records and "the product of a reasonable method of computation." *Fleming*, BRB No. 13-0237 BLA, slip op. at 4. However, the Board stated that "the

---

[1] Claimant filed his first claim in November 1994. Director's Exhibit 1. It was finally denied by the district director in May 1995, because claimant failed to establish any of the elements of entitlement. *Id.* Claimant filed this pending claim in July 2010. Director's Exhibit 3.

[2] Employer also challenged the administrative law judge's finding that it failed to establish rebuttal of the presumption of total disability due to pneumoconiosis at amended Section 411(c)(4). Because the Board vacated the administrative law judge's finding that claimant invoked the amended Section 411(c)(4) presumption, the Board declined to address employer's arguments regarding rebuttal of the presumption. *Fleming v. Aberry Coal Co.*, BRB No. 13-0237 BLA, slip op. at 6 (Dec. 17, 2013)(unpub.).

2

A024

method by which the administrative law judge derived at least an additional five years of coal mine employment from claimant's hearing testimony … [was] not apparent." *Id.* Consequently, the Board stated that it could not determine "whether the method the administrative law judge used [was] a reasonable one." *Fleming*, BRB No. 13-0237 BLA, slip op. at 5. The Board also noted that the administrative law judge failed to explain how he resolved the conflict between his determination that claimant is not a "good historian" and his crediting of claimant's testimony. *Fleming*, BRB No. 13-0237 BLA, slip op. at 5. The Board additionally noted that the administrative law judge failed to "address the significance of claimant's statement that he could not identify which employer failed to withhold Social Security taxes." *Id.* Further, the Board noted that the administrative law judge did not resolve conflicts in the evidence regarding the years in which claimant engaged in coal mine employment. *Id.* The Board stated that "the administrative law judge accounted for the periods of unemployment to which claimant testified, but did not consider the fact that claimant's [SSA earnings records] reflect that [claimant] was also unemployed in 1986 and had no coal mine employment in 1987." *Id.* The Board therefore determined that the administrative law judge's decision did not comply with the Administrative Procedure Act (APA). *Id.* Hence, the Board instructed the administrative law judge, on remand, to consider all the relevant evidence of record in ascertaining the dates and length of claimant's underground coal mine employment, including, but not limited to, claimant's testimony, the employment history forms submitted in both claims,[3] and claimant's SSA earnings records. *Fleming*, BRB No. 13-0237 BLA, slip op. at 5-6.

The Board also instructed the administrative law judge that he may total the partial periods of claimant's employment or divide claimant's yearly income from work he performed as a miner by the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics (BLS),[4] in accordance with 20 C.F.R. §725.101(a)(32)(iii), if the evidence failed to establish the beginning and ending dates of claimant's coal mine employment or if any of claimant's work lasted less than a calendar year. *Fleming*, BRB No. 13-0237 BLA, slip op. at 6. The Board also instructed the administrative law judge that he may reinstate his finding that claimant is entitled to invocation of the rebuttable presumption at amended Section 411(c)(4) and further

---

[3] The Board acknowledged employer's allegation that there is a conflict between the evidence in claimant's first claim and his subsequent claim regarding the ending date of his coal mine employment. *Fleming*, BRB No. 13-0237 BLA, slip op. at 6 n.7.

[4] The Board rejected employer's allegation that the administrative law judge is required to either apply the formula provided by the regulation at 20 C.F.R. §725.101(a)(32)(iii), or explain why he did not apply it, because the administrative law judge's use of this formula is discretionary. *Fleming*, BRB No. 13-0237 BLA, slip op. at 6 n.8.

3

reinstate the award of benefits, if on remand he found that claimant established fifteen years of qualifying coal mine employment. *Id.* Conversely, the Board instructed the administrative law judge that he must consider whether claimant established entitlement to benefits pursuant to 20 C.F.R. Part 718, without the benefit of the rebuttable presumption at amended Section 411(c)(4), if he found that claimant was unable to establish fifteen years of qualifying coal mine employment. *Id.*

On remand, the administrative law judge again determined that claimant established over fifteen years of underground coal mine employment. Accordingly, the administrative law judge again awarded benefits.

On appeal, employer challenges the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment. Employer also contends that the administrative law judge erred in previously finding that it failed to establish rebuttal of the presumption of total disability due to pneumoconiosis at amended Section 411(c)(4). Claimant responds, urging affirmance of the administrative law judge's award of benefits. The Director, Office of Workers' Compensation Programs, has filed a letter, declining to file a substantive brief in this appeal, but noting that the administrative law judge may take official notice of documents regarding the credibility of Dr. Wheeler's x-ray readings,[5] if the Board vacates the administrative law judge's award of benefits and remands the case for further consideration.[6]

The Board's scope of review is defined by statute. The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law.[7] 33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman and Grylls Associates, Inc.*, 380 U.S. 359 (1965).

---

[5] In support of his argument, the Director identifies several documents "pertaining to the credibility of Dr. Wheeler's x-ray readings" including BLBA Bulletin 14-09, issued June 2, 2014, which instructs District Directors to not credit Dr. Wheeler's negative readings for pneumoconiosis in the absence of persuasive evidence rehabilitating his readings.

[6] Employer has filed a brief in reply to claimant's response brief, reiterating its prior contentions regarding the administrative law judge's length of coal mine employment finding.

[7] The record reflects that claimant's coal mine employment was in Kentucky. Director's Exhibits 1, 4, 7. Accordingly, this case arises within the jurisdiction of the United States Court of Appeals for the Sixth Circuit. *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989)(en banc).

4

In order to establish entitlement to benefits in a living miner's claim filed pursuant to 20 C.F.R. Part 718, claimant must establish that he suffers from pneumoconiosis, that the pneumoconiosis arose out of his coal mine employment, that he has a totally disabling respiratory or pulmonary impairment, and that his total disability is due to pneumoconiosis. 30 U.S.C. §901; 20 C.F.R. §§718.3, 718.202, 718.203, 718.204. Failure to establish any one of these elements precludes entitlement. *Anderson v. Valley Camp of Utah, Inc.*, 12 BLR 1-111 (1989).

In 2010, Congress enacted amendments to the Act, which apply to claims filed after January 1, 2005 that were pending on or after March 23, 2010. Relevant to this living miner's claim, Congress reinstated Section 411(c)(4) of the Act, which provides a rebuttable presumption that a miner is totally disabled due to pneumoconiosis in cases where fifteen or more years of underground coal mine employment, or coal mine employment in conditions substantially similar to those in an underground mine, and a totally disabling respiratory impairment are established. 30 U.S.C. §921(c)(4); 20 C.F.R. §718.305.

Initially, we will address employer's contention that the administrative law judge erred in finding that claimant established over fifteen years of qualifying coal mine employment. In determining the length of claimant's coal mine employment, the administrative law judge considered claimant's applications for benefits, his testimony at the hearing, and the SSA earnings records submitted with this claim. The administrative law judge noted that claimant testified that he worked in the coal mines from 1970 until about August or September of 1991.[8] Decision and Order on Remand at 2. The administrative law judge also noted that the SSA earnings records showed that claimant's

---

[8] In addressing employer's assertions regarding the ending date of claimant's coal mine employment, the administrative law judge noted that claimant indicated on the prior 1994 claim form that he stopped working in April of 1991. Decision and Order on Remand at 4. The administrative law judge also noted that claimant subsequently testified at the October 16, 2012 hearing that he stopped working in the coal mines in August or September of 1991. *Id.*; Hearing Tr. at 15. In considering the discrepancy in the evidence regarding the ending date of claimant's coal mine employment, the administrative law judge explained that "[c]laimant was not confronted with it at hearing." Decision and Order on Remand at 4. Moreover, the administrative law judge found that "it is not crucial to a credibility determination as more importantly, that evidence is twenty years old and I note that with time, memory may recede." *Id.* at 4-5. The administrative law judge therefore rejected employer's argument that "[c]laimant's memory and testimony is too vague, and [found] that to a reasonable degree of probability, he is to be believed." *Id.* at 5.

5

coal mine employment began in 1970 and ended in 1991.[9]  *Id.*  Additionally, after noting that "[t]he period in question covers more than a twenty year period," the administrative law judge noted that claimant acknowledged that he did not work for about a year due to an injury, that he did not work during "a few other periods on account of his back injury," and that he spent one year working in construction in Florida. *Id.*; Hearing Tr. at 15-18. The administrative law judge nevertheless determined that "[t]he records do not substantiate that [claimant] was out of work for as long as six years due to compensation related injuries." Decision and Order on Remand at 5.  Hence, the administrative law judge found that claimant established a total of over fifteen years in underground coal mine employment.

Employer asserts that the administrative law judge failed to adequately explain how he computed the length of claimant's coal mine employment. We disagree. Since the Act fails to provide any specific guidelines for the computation of time spent in coal mine employment, the Board will uphold the administrative law judge's determination if it is based on a reasonable method and supported by substantial evidence in the record considered as a whole. *See Vickery v. Director, OWCP,* 8 BLR 1-430 (1986); *Smith v. National Mines Corp.,* 7 BLR 1-803 (1985); *Miller v. Director, OWCP,* 7 BLR 1-693 (1983); *Maggard v. Director, OWCP,* 6 BLR 1-285 (1983).  In this case, the administrative law judge considered claimant's testimony that the SSA earnings records did not substantiate all of his coal mine employment because "some of his employers did not generate Social Security records."[10] Decision and Order on Remand at 5.  After

---

[9] As noted by the administrative law judge in his prior decision, "the [district director] arrived at the 9.25 figure by comparing claimant's earnings to the average yearly earnings of coal miners listed in Exhibit 610, based on 125 days of exposure, or less than half the number of work days in a year." Decision and Order at 4.  The administrative law judge also noted that "[e]mployer argues that the provision from §725.493(b) equating 125-days to a full year applies only to calculations identifying the responsible operator." *Id.*  In considering this case on remand, the administrative law judge found that the Department of Labor's (DOL) method of determining length of coal mine employment is reasonable.  Nevertheless, the administrative law judge relied on claimant's testimony from the hearing. The administrative law judge stated, "I listened to the testimony, and I had an opportunity to observe the [c]laimant and I found that he is credible, and the DOL did not take his allegations into consideration." Decision and Order on Remand at 5.  Hence, while the administrative law judge accepted the district director's length of coal mine employment determination based on the record, he found that "the [c]laimant is credible that he actually worked more than that." *Id.* at 6.

[10] It is the administrative law judge's function to weigh the evidence, draw appropriate inferences, and determine credibility. *See Underwood v. Elkay Mining, Inc.,* 105 F.3d 946, 21 BLR 2-23 (4th Cir. 1997); *Newport News Shipbldg. & Dry Dock Co. v. Tann,* 841 F.2d 540, 543 (4th Cir. 1988).

6

noting claimant's assertion that "even if he 'is not a good historian' his testimony may still be credible," the administrative law judge determined that claimant's testimony was neither conflicting, nor inaccurate. *Id.* at 4. The administrative law judge further determined that "[c]laimant may have struggled to remember how much money he earned at a job he worked over forty years ago, but this does not discredit his testimony if he remembers how long he worked at a particular coal mine site." *Id.* Additionally, the administrative law judge determined that "[i]t is reasonable to expect that [claimant] also worked for periods 'under the table,' as alleged, early in his career, in the 1970's." *Id.* at 5; Hearing Tr. at 17, 23. Because the administrative law judge acted within his discretion in crediting claimant's testimony that "he worked more than [fifteen] years in mining," Decision and Order on Remand at 5; *see Mabe v. Bishop Coal Co.,* 9 BLR 1-67 (1986); *Sisak v. Helen Mining Co.,* 7 BLR 1-178, 1-181 (1984), we reject employer's assertion that the administrative law judge failed to adequately explain how he computed the length of claimant's coal mine employment. Moreover, because it is supported by substantial evidence, we affirm the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment.

Furthermore, in view of our affirmance of the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment, we also affirm the administrative law judge's determination to reinstate his prior finding that claimant was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis at amended Section 411(c)(4).

Next, we address employer's contention that the administrative law judge erred in previously finding that it failed to establish rebuttal of the presumption of total disability due to pneumoconiosis at amended Section 411(c)(4).[11] Employer asserts that the administrative law judge erred in previously finding that it did not establish the absence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1). In his prior Decision and Order, the administrative law judge noted that "[t]he evidence consists of 9 readings of four x-rays [dated January 14, 2011,[12] April 20, 2011, January 16, 2012 and March 28, 2012]," that five of the readings were positive for pneumoconiosis and that four of the readings were negative. Decision and Order at 6. Dr. Baker, a B reader, and Dr. Alexander, a dually-qualified B reader and Board-certified radiologist, read the January 14, 2011 x-ray

---

[11] Once the presumption of total disability due to pneumoconiosis is invoked at amended Section 411(c)(4), the burden shifts to employer to rebut the presumption by showing that the miner does not have pneumoconiosis, or that no part of his disability was caused by pneumoconiosis. 30 U.S.C. §921(c)(4), as implemented by 20 C.F.R. §718.305(d)(1)(i), (ii).

[12] Dr. Barrett, a dually-qualified B reader and Board-certified radiologist, read the January 14, 2011 x-ray for quality only. Director's Exhibit 12.

7

as positive for pneumoconiosis, Director's Exhibits 12, 14, while Dr. Wheeler, a dually-qualified radiologist, read this x-ray as negative, Director's Exhibit 16. Further, Dr. Alexander read the April 20, 2011 x-ray as positive for pneumoconiosis, Claimant's Exhibit 1, while Dr. Scott, who is also a dually-qualified radiologist, read this x-ray as negative, Employer's Exhibit 10. Additionally, Dr. DePonte, a dually-qualified radiologist, read the January 16, 2012 x-ray as positive for pneumoconiosis, Claimant's Exhibit 3, while Dr. Scott read this x-ray as negative, Employer's Exhibit 6. Lastly, Dr. Alexander read the March 28, 2012 x-ray as positive for pneumoconiosis, Claimant's Exhibit 5, while Dr. Scott read this x-ray as negative, Employer's Exhibit 9. After noting that Dr. Baker was the only physician who was not a dually-qualified radiologist, the administrative law judge determined that the readings of the dually-qualified radiologists were in equipoise. Then the administrative law judge gave less weight to Dr. Scott's reading of the March 28, 2012[13] x-ray because he found that it was equivocal. Conversely, the administrative law judge gave dispositive weight to Dr. Alexander's positive reading of the March 28, 2012 x-ray based on recency. The administrative law judge therefore found that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1).

Employer argues that the administrative law judge should have accorded dispositive weight to the negative x-ray readings of Drs. Wheeler and Scott because of their superior credentials. In considering the credentials of the radiologists, the administrative law judge acknowledged that, in addition to being dually-qualified as B readers and Board-certified radiologists, Drs. Wheeler and Scott have "teaching experience at Johns Hopkins Medical School." Decision and Order at 7. Nevertheless, the administrative law judge did not give dispositive weight to the negative readings of Drs. Wheeler and Scott on this basis. While an administrative law judge may accord greater weight to x-ray readings provided by physicians who are professors of radiology, as well as dually-qualified radiologists, he is not required to do so. *See Melnick v. Consolidation Coal Co.*, 16 BLR 1-31 (1991)(en banc). Thus, we reject employer's assertion that the administrative law judge should have accorded dispositive weight to the negative readings of Drs. Wheeler and Scott because they are professors of radiology in addition to being dually-qualified radiologists.

Employer also argues that the administrative law judge erred in discounting Dr. Scott's negative reading of the March 28, 2012 x-ray. Specifically, employer asserts that the administrative law judge applied a greater degree of scrutiny to Dr. Scott's negative reading than he applied to Dr. Alexander's positive reading of the same x-ray. We

---

[13] The administrative law judge's characterization that the most recent x-ray read by Dr. Scott was taken on September 19, 2012 appears to be a typographical error. Decision and Order at 7. The record indicates that the March 28, 2012 x-ray was read by Dr. Scott on September 19, 2012. Employer's Exhibit 9.

8

disagree. An administrative law judge must determine whether a reading is positive, by showing a 1/0 or greater profusion of the opacities, or negative. 20 C.F.R. §§718.102, 718.202(a). Further, an administrative law judge may consider a doctor's narrative explanation on an ILO form when an x-ray interpretation is *negative* for pneumoconiosis. *See* 20 C.F.R. §718.202(a)(1); *Cranor v. Peabody Coal Co.*, 22 BLR 1-1, 1-5 (1999). In this case, the administrative law judge permissibly found that Dr. Scott's reading of the March 28, 2012 x-ray was equivocal, based on the doctor's comment that there is a possibility of cancer and emphysema, despite the administrative law judge's finding that "[t]here is no record of cancer." Decision and Order at 7; *see U.S. Steel Mining Co. v. Director, OWCP [Jarrell]*, 187 F.3d 384, 21 BLR 2-639 (4th Cir. 1999); *Justice v. Island Creek Coal Co.*, 11 BLR 1-91 (1988); *Campbell v. Director, OWCP*, 11 BLR 1-16 (1987). Thus, we reject employer's assertion that the administrative law judge erred in discounting Dr. Scott's reading of the March 28, 2012 x-ray.

Employer additionally argues that the administrative law judge erred in failing to weigh the x-ray readings submitted in the prior claim. We disagree. An administrative law judge may find that the most recent medical evidence more accurately reflects a miner's condition. *See Roberts v. West Virginia C.W.P. Fund*, 74 F.3d 1233, 20 BLR 2-67 (4th Cir. 1996); *Cooley v. Island Creek Coal Co.*, 845 F.2d 622, 11 BLR 2-147 (6th Cir. 1988); *Parsons v. Wolf Creek Collieries*, 23 BLR 1-29 (2004) (en banc); *Workman v. E. Associated Coal Corp.*, 23 BLR 1-22 (2004) (en banc). In this case, the record contains five readings of two x-rays, dated November 15, 1994 and February 23, 1995, that were submitted with the first claim, Director's Exhibit 1, and nine readings of four x-rays, dated January 14, 2011, April 20, 2011, January 16, 2012 and March 28, 2012, that were submitted with the subsequent claim, Director's Exhibits 12, 14, 16; Claimant's Exhibits 1, 3, 5; Employer's Exhibits 6, 9, 10. As discussed, *supra*, however, the administrative law judge reasonably focused on the newly submitted x-ray readings. *See Parsons*, 23 BLR at 1-35; *Workman*, 23 BLR at 1-27; Decision and Order at 6. Thus, we reject employer's assertion that the administrative law judge erred in failing to weigh the older x-ray readings submitted in the prior claim. Because the administrative law judge properly accorded dispositive weight to Dr. Alexander's positive reading of the March 28, 2012 x-ray based on recency, *see Adkins v. Director, OWCP*, 958 F.2d 49, 16 BLR 2-61 (4th Cir. 1992); *see also Thorn v. Itmann Coal Co.*, 3 F.3d 713, 18 BLR 2-16 (4th Cir. 1993), we affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1).[14]

---

[14] Employer argues that the administrative law judge previously erred in considering Dr. Wheeler's March 20, 2012 digital x-ray. Contrary to employer's assertion, in his prior decision, the administrative law judge permissibly found that "Dr. Wheeler did note emphysema and tuberculosis with question marks." Decision and Order at 7 n.5; *see U.S. Steel Mining Co. v. Director, OWCP [Jarrell]*, 187 F.3d 384, 21 BLR 2-639 (4th Cir. 1999); *Justice v. Island Creek Coal Co.*, 11 BLR 1-91 (1988); *Campbell v. Director, OWCP*, 11 BLR 1-16 (1987). Thus, we reject employer's assertion

9

Further, employer asserts that the administrative law judge erred in previously finding that it did not establish the absence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(2). Employer argues that "[the administrative law judge] mechanically and improperly [applied] the later evidence rule by refusing to consider Dr. Caffrey's 2005 biopsy report without further explanation. Contrary to employer's assertion, to the extent that the administrative law judge considered the evidence as it relates to claimant's condition as of the time of the hearing (as opposed to the date of onset), the administrative law judge permissibly accorded "little weight" to Dr. Caffrey's 2005 biopsy report because he found it to be "old." Decision and Order at 7; *see Parsons*, 23 BLR at 1-35; *Workman*, 23 BLR at 1-27. Thus, we affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(2).

Employer also asserts that the administrative law judge erred in previously finding that it did not establish the absence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(4). Specifically, employer argues that the administrative law judge erred in discounting the opinions of Drs. Rosenberg and Dahhan. Contrary to employer's assertion, the administrative law judge permissibly found that the opinions of Drs. Rosenberg and Dahhan were flawed because the doctors relied on negative chest x-ray readings, which were contrary to the administrative law judge's finding that the x-ray evidence established the existence of clinical pneumoconiosis. *See Jordan*, 876 F.2d at 1460, 12 BLR at 2-374-75; *Taylor v. Ala. By-Products Corp.*, 862 F.2d 1529, 1531 n.1, 12 BLR 2-110, 2-112 n.1 (11th Cir. 1989); Decision and Order at 7. Thus, we affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(4).[15]

---

that the administrative law judge previously erred in considering Dr. Wheeler's March 20, 2012 digital x-ray. However, the administrative law judge further stated that "digital x-rays are deemed 'other' evidence under the rules and as I have already ruled for [c]laimant on the x-ray evidence, I choose not to do so with respect to 'other' evidence." Decision and Order at 7 n.5. In view of our disposition of the issue of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1), (2) and (4), we need not address the administrative law judge's determination not to render a finding that claimant's digital x-ray reading established the existence of clinical pneumoconiosis. *See Larioni v. Director, OWCP*, 6 BLR 1-1276 (1984).

[15] Employer also asserts that "[the administrative law judge] erred in failing to consider whether the evidence ruled out legal pneumoconiosis." Employer's Brief at 25. In light of our decision to affirm the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a), we need not address employer's assertion regarding the issue of legal pneumoconiosis. *See Larioni*, 6 BLR at 1-1278.

10

A032

Employer also asserts that the administrative law judge erred in previously finding that it failed to carry its burden of proving that pneumoconiosis did not contribute to claimant's total disability. The administrative law judge stated that "the burden is on the [e]mployer to rule out [p]neumoconiosis as a cause for total disability." Decision and Order at 8. After noting that employer relied on the opinions of Drs. Rosenberg and Dahhan, the administrative law judge permissibly discounted the disability causation opinions of Drs. Rosenberg and Dahhan because the doctors opined that claimant does not suffer from clinical or legal pneumoconiosis, contrary to his finding on this issue. *See Skukan v. Consolidation Coal Co.*, 993 F.2d 1228, 1233, 17 BLR 2-97, 2-104 (6th Cir. 1993), *vac'd sub nom.*, *Consolidation Coal Co. v. Skukan*, 512 U.S. 1231 (1994), *rev'd on other grounds*, *Skukan v. Consolidated Coal Co.*, 46 F.3d 15, 19 BLR 2-44 (6th Cir. 1995); *Trujillo v. Kaiser Steel Corp.*, 8 BLR 1-472 (1986). Thus, we reject employer's assertion that the administrative law judge erred in previously finding that employer failed to carry its burden of proving that pneumoconiosis did not contribute to claimant's total disability. Because it is supported by substantial evidence, we affirm the administrative law judge's prior finding that employer failed to establish that no part of claimant's pulmonary or respiratory total disability was caused by pneumoconiosis. *See* 20 C.F.R. §718.305(d)(1)(ii); *Minich v. Keystone Coal Mining Corp.*,   BLR   , BRB No. 13-0544 BLA (Apr. 21, 2015)(Boggs, J., concurring and dissenting).

We, therefore, affirm the administrative law judge's determination to reinstate his prior finding that employer failed to establish rebuttal of the presumption at amended Section 411(c)(4).

We now address claimant's counsel's fee petition filed in connection with services performed before the Board from February 18, 2013 to December 28, 2013 in the prior appeal, BRB No. 13-0237 BLA. Claimant's counsel has filed a complete, itemized statement requesting a fee for services performed before the Board, pursuant to 20 C.F.R. §802.203. Claimant's counsel requests a total fee of $3,743.75 for 2.75 hours of legal services at an hourly rate of $300.00, 11.75 hours of legal services at an hourly rate of $225.00, and 2.75 hours of legal services at an hourly rate of $100.00.

Employer has filed an objection to claimant's counsel's fee petition. Specifically, employer contends that claimant's counsel's fee petition is premature. Alternatively, employer contends that claimant's counsel charges for work that is clerical in nature and duplicative. Further, employer contends that claimant's counsel's use of quarter-hour billing for routine tasks is excessive. Claimant's counsel has not filed a response to employer's objections.

We reject employer's contention that claimant's counsel's fee petition is premature. 20 C.F.R. §802.203(c). We also reject employer's contention that the time charged by claimant's counsel for entries on May 9, 2013 and June 11, 2013 related to certified letters to the Board is excessive and should be reduced from 0.5 hour to 0.2

11

A033

hour. Claimant's counsel's practice of billing in one-quarter hour increments is reasonable. 20 C.F.R. §802.203(d)(3). However, we agree with employer that entries listed on March 4, 2013, April 8, 2013, June 18, 2013 and December 28, 2013 as taking telephone calls from client wishing to discuss the case with someone is a clerical duty for which separate billing is not permissible. *Whitaker v. Director, OWCP*, 9 BLR 1-216 (1986). Further, we agree with employer that entries listed on March 1, 2013, March 27, 2013 and April 18, 2013 for reviewing the file are duplicative of services performed on February 18, 2013, March 6, 2013 and April 9, 2013. Therefore, we disallow 1.75 hours claimed for these services at the hourly rate of $100.00. We find that the remaining time is reasonable and commensurate with the necessary services performed in defending claimant's award of benefits.

Therefore, we approve a total fee of $3,568.75 for 2.75 hours of legal services at an hourly rate of $300.00, 11.75 hours of legal services at an hourly rate of $225.00, and 1.00 hour of legal services at an hourly rate of $100.00 rendered in defense of this claim. The fee is to be paid directly to claimant's counsel by employer.[16] 33 U.S.C. §928, as incorporated by 30 U.S.C. §932(a); 20 C.F.R. §802.203; *see Clark v. Director, OWCP*, 9 BLR 1-211 (1986).

Accordingly, the administrative law judge's Decision and Order on Remand - Award of Benefits is affirmed.

SO ORDERED.

BETTY JEAN HALL, Chief
Administrative Appeals Judge

I concur.

GREG J. BUZZARD
Administrative Appeals Judge

BOGGS, Administrative Appeals Judge, dissenting:

---

[16] This fee award is neither enforceable nor payable until such time as an award of benefits is final. *See* 33 U.S.C. §928; *Wells v. Int'l Great Lakes Shipping Co.*, 693 F.2d 663, 15 BRBS 47 (CRT)(7th Cir. 1982); *Spinner v. Safeway Stores, Inc.*, 18 BRBS 155 (1986).

12

A034

BOGGS, Administrative Appeals Judge, dissenting:

I respectfully dissent from the majority's decision to affirm the administrative law judge's award of benefits. I would vacate the award of benefits and remand the case for further consideration. Specifically, I would vacate the administrative law judge's finding that claimant has over 15 years in underground coal mine employment. As employer asserts, the administrative law judge failed to adequately explain how he computed the length of claimant's coal mine employment. *Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162, 1-165 (1989). The administrative law judge found that claimant's testimony that the Social Security Administration (SSA) earnings records did not substantiate all of his coal mine employment was credible. Decision and Order on Remand at 5. However, the administrative law judge did not explain how he resolved the discrepancies in claimant's testimony with the SSA earnings records regarding the location and duration of some of claimant's coal mine jobs. *Wojtowicz*, 12 BLR at 1-165. Although the administrative law judge credited claimant with five full years of coal mine employment from 1970 to 1974, claimant's testimony and his SSA earnings records show that he also worked in non-coal mine employment during this time period.[17] Specifically, the SSA earnings

---

[17] During the hearing, claimant responded to the following questions from claimant's counsel regarding the length of his coal mine employment:

Q. You said you started working in the mines since '71, you think?
A. Yes.
Q. Okay. That would be Archer and Club Coal Company maybe?
A. That could have been. I just don't remember exactly.
Q. Actually, it looks like there's some employment for Highpoint Coal Company in 1970?
A. Yeah, I think that was probably the first one.

****** 

Q. In 1970. It shows some earnings of $72.00. How long did you work for Peem Coal Company in 1970?
A. I know I was there close to a year.
Q. Just so we're clear on this, it also shows some work for Clark Super 100 in Clarksburg, Tennessee in 1970?
A. It could have been. I couldn't say for sure with my life.
Q. Okay, there's also a little bit of work in Biloxi, Mississippi.
A. I do remember that.
Q. In 1970.
A. Yes. Yes, I do remember that.

13

records show that claimant worked in 1970 for Broad Water Beach Hotel in Biloxi, Mississippi, and for Clark Super 100 in Cookeville, Tennessee. Director's Exhibit 7 at 4-5. Likewise, claimant provided testimony that between 1970 and 1974 he worked in construction for a year in Florida. Hearing Tr. at 17-18, 24-25, 27-28. Moreover, the SSA earnings records show that claimant worked in Florida in the third quarter of 1972 and the second quarter of 1973. Consequently, both claimant's testimony and the SSA earnings records indicate that claimant worked in Florida for a year between 1972 and 1973. While the administrative law judge accepted claimant's testimony that he worked for a total of five years in coal mine employment during the period from 1970 to 1974, Decision and Order on Remand at 3, he did not adequately explain how he resolved the discrepancy between claimant's testimony that claimant worked five years of coal mine employment during the period from 1970 to 1974 with claimant's testimony, as supported by the SSA earnings records, that he worked in construction in Florida for one year during the same period of time. In addition, the administrative law judge did not make a determination regarding the specific starting and ending dates for various employers, or reconcile employment time periods in instances where the dates are

---

Hearing Tr. at 17, 24-25.

Claimant also responded to the following questions from employer's counsel regarding the length of his coal mine employment:

> Q. Okay. There were several companies that you mentioned around the year 1971 which you said you worked for more than a year or a year for the company?
> A. Yeah.
> Q. Okay. Is it possible that you're mistaken with regard to the length of the employment with some of these companies?
> A. It very well could be.
> Q. Okay and the reason I'm asking you is you indicated that you felt like you worked for more than a year for Highpoint Coal and also for Archer and Club Coal.
> A. Yeah.
> Q. But both of those companies show employment in 1971.
> A. Yeah.
> Q. Okay, then there's also employment with Peem Corporation in 1971.
> A. I had these wrote down and I worked real hard. I'm not the sharpest tool in the shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could, but not having any documentation, there was no way I could tell you 100 percent [for] sure about any of them.

Hearing Tr. at 32-33.

14

A036

overlapping, or explain how he calculated partial years of employment. *Wojtowicz*, 12 BLR at 1-165. Rather, based on claimant's testimony that claimant worked "close to a year," "almost a year," "about a year, maybe longer," "at least one year," and "one year," the administrative law judge determined that claimant worked a total of five years in coal mine employment from 1970 to 1974. Decision and Order on Remand at 2-3. In so doing, the administrative law judge failed to adequately explain how he resolved the conflicts in all the relevant evidence regarding the length of claimant's coal mine employment from 1970 to 1974. *Wojtowicz*, 12 BLR at 1-165. Further, I would hold that the administrative law judge failed to adequately explain his preference for claimant's testimony in 2012 over a form claimant completed many years closer in time to the work performed by him,[18] given the administrative law judge's observation that "with time, memory may recede." Decision and Order on Remand at 5; *see Wojtowicz*, 12 BLR at 1-165. In view of the foregoing, I would hold that the administrative law judge's finding that claimant established over fifteen years in coal mine employment was not based on a reasonable method of computation and is not in compliance with the Administrative Procedure Act (APA).[19] I would therefore vacate the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment and again remand the case for further consideration of all the relevant evidence in accordance with the APA. On remand, I would instruct the administrative law judge to render a specific length of coal mine employment finding, based on a reasonable method of computation.

Further, because I would vacate the administrative law judge's finding that claimant established over fifteen years of qualifying coal mine employment, I would also vacate the administrative law judge's determination that claimant was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis at amended Section 411(c)(4). I would instruct the administrative law judge that he may reinstate his finding that claimant is entitled to invocation of the rebuttable presumption

---

[18] As noted by the administrative law judge, although claimant indicated on a 1994 claim form that he stopped working in April of 1991, he subsequently testified at the October 16, 2012 hearing that he stopped working in the coal mines in August or September of 1991. Decision and Order on Remand at 4; Hearing Tr. at 15. The administrative law judge inexplicably determined that the discrepancy in claimant's 1994 claim form and his 2012 hearing testimony regarding when claimant stopped working in the coal mines "is not crucial to a credibility determination." Decision and Order on Remand at 4-5.

[19] The Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a), requires that an administrative law judge independently evaluate the evidence and provide an explanation for his findings of fact and conclusions of law. *Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162, 1-165 (1989).

15

of total disability due to pneumoconiosis at amended Section 411(c)(4) if he again finds that claimant establishes fifteen years of qualifying coal mine employment.

Additionally, I would instruct the administrative law judge to reconsider whether employer has established rebuttal of the presumption at amended Section 411(c)(4), as employer's assertions that the administrative law judge previously erred in finding that employer failed to disprove the existence of clinical pneumoconiosis have merit. After initially concluding that the readings of the dually-qualified radiologists were in equipoise, the administrative law judge stated:

> However, a review of the opinions shows that in the most recent x-ray, [dated March 28, 2012], EX 9, Dr. Scott rated the film quality as a 2, due to scapular overlay and also noted a 1.5 cm nodule and possible cancer and emphysema. There is no record of cancer. Emphysema may evidence legal pneumoconiosis. I find that this is an equivocal reading and attribute less weight to it.

Decision and Order at 7. While an administrative law judge may consider a doctor's narrative explanation on an ILO form when an x-ray interpretation is negative for pneumoconiosis, *see* 20 C.F.R. §718.202(a)(1); *Cranor v. Peabody Coal Co.*, 22 BLR 1-1, 1-5 (1999), the interpretation of medical data is for the medical experts. *Marcum v. Director OWCP*, 11 BLR 1-23 (1987). To the extent the administrative law judge discounted Dr. Scott's negative x-ray reading because he found the doctor's comment, that there is a possibility of emphysema, suggests that claimant may have legal pneumoconiosis, the administrative law judge erroneously substituted his opinion for that of the physician. *Marcum*, 11 BLR at 1-24. In addition, as employer argues, I would hold that the administrative law judge erred in failing to consider the negative readings of the x-rays dated November 15, 1994 and February 23, 1995. *McCune v. Central Appalachian Coal Co.*, 6 BLR 1-966, 1-988 (1984); Director's Exhibit 1. Therefore, I would vacate the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1).[20]

---

[20] Employer further argues that the administrative law judge previously erred in weighing Dr. Wheeler's March 20, 2012 digital x-ray. In his prior decision, the administrative law judge noted that "[b]oth of the parties submitted readings of a [March 20, 2012] digital image" and that "[t]he readings oppose each other." Decision and Order at 7 n.5. After noting claimant's position that Dr. Wheeler's interpretation of the March 20, 2012 digital x-ray should be discounted, the administrative law judge stated, "digital x-rays are deemed 'other' evidence under the rules and as I have already ruled for [c]laimant on the x-ray evidence, I choose not to do so with respect to 'other' evidence." Decision and Order at 7 n.5. Digital x-rays constitute other medical evidence, and the admissibility of digital x-rays is governed by 20 C.F.R. §718.107. *Webber v. Peabody Coal Co.*, 23 BLR 1-123, 1-135 (2006)(en banc)(Boggs, J., concurring), *aff'd on recon.,*

16

Further, because I would vacate the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(1), I would also vacate the administrative law judge's prior finding that employer failed to disprove the existence of clinical pneumoconiosis at 20 C.F.R. §718.202(a)(4). Moreover, as employer asserts, I would hold that the administrative law judge erred in failing to consider whether it established rebuttal of the presumption at amended Section 411(c)(4) by proving the absence of legal pneumoconiosis. Consequently, I would instruct the administrative law judge, on remand, to consider whether employer has rebutted the presumed existence of both clinical and legal pneumoconiosis, if reached. *See generally Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 533, 21 BLR 2-323, 2-335 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441, 21 BLR 2-269, 2-275-76 (4th Cir. 1997). I would also instruct the administrative law judge to set forth his findings on remand in detail, including the underlying rationale, as required by the APA. *See Wojtowicz*, 12 BLR at 1-165.

Finally, because I would vacate the administrative law judge's prior finding that employer failed to disprove the existence of pneumoconiosis at 20 C.F.R. §718.202(a), I would also vacate the administrative law judge's prior finding that employer failed to prove that claimant's pulmonary or respiratory impairment did not arise out of, or in connection with, coal mine employment. I would therefore instruct the administrative law judge to consider whether employer is able to rebut the presumed fact of total disability due to pneumoconiosis, if reached. *See* 20 C.F.R. §718.305(d)(1)(ii).

I agree with the majority in all other respects.

*Judith S. Boggs*

JUDITH S. BOGGS
Administrative Appeals Judge

---

24 BLR 1-1, 1-7-8 (2007)(en banc). Pursuant to 20 C.F.R. §718.107(b), the administrative law judge was required to determine, on a case-by-case basis, whether the proponent of the digital x-ray evidence has established that it is medically acceptable and relevant to entitlement. *Webber*, 23 BLR at 1-133. Because the administrative law judge did not adequately explain how he weighed the conflicting digital x-ray interpretations, *Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162, 1-165 (1989), I would hold that the administrative law judge's finding at 20 C.F.R. §718.107 does not comply with the requirements of the Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a). Thus, I would instruct the administrative law judge to reconsider the digital x-ray evidence thereunder.

17

A039

## CERTIFICATE OF SERVICE

2014-0329-BLA Joseph Fleming v. Aberry Coal, Inc., Director, Office of Workers' Compensation Programs
(Case No. 12-BLA-5241)

I certify that the parties below were served this day.

_____07/31/2015_____
(DATE)

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Alexander  Franklin   Smith
Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Washington , DC 20001
--*Electronic*

Joseph Fleming
1226 Zirkle Road
Dandridge, TN 37725
--*Certified*

Nate D. Moore, Esq.
Penn, Stuart & Eskridge
P.O. Box 2009
Bristol, VA 24203
--*Certified*

Hon. Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW Suite 400-N
Washington, DC 20001

Joseph E. Wolfe, Esq.
Wolfe Williams & Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA 24273
--*Certified*

Michael Chance
District Director
U.S. Department of Labor
Suite C-3516, NDOL
Washington, DC 20210

Rae Ellen James, Esq.
Associate Solicitor, U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
--*Electronic*

## NOTICE OF APPEAL RIGHTS

A Decision of the Benefits Review Board shall become final sixty (60) days after its issuance unless a written petition for review is filed with the appropriate United States Court of Appeals prior to the expiration of the sixty (60) day period, or unless a timely request for reconsideration is filed with the Board. 33 U.S.C. Section 921; 30 U.S.C. Section 932(a); 20 C.F.R. Sections 802.406, 802.407. Therefore, you are advised that you may SEEK RECONSIDERATION OF, OR APPEAL, a final decision of the Board within the time limits set forth below. THE TIME LIMITS CANNOT BE EXTENDED, AND YOU MUST SUBMIT YOUR REQUEST TO THE PROPER PLACE WITHIN THE TIME PROVIDED.

If you seek RECONSIDERATION by this Board (that is, if you want the Board to reconsider its decision), you must submit to the Board a written Motion for Reconsideration within 30 DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION. Your motion should identify any error you find in the Board's opinion and state the reasons you believe warrant further consideration of your case. If you file a timely motion for reconsideration, you will have sixty (60) days from issuance of the Board's decision on reconsideration to file an appeal with a Court of Appeals, as set forth below.

Alternatively, if you wish to APPEAL to a United States Court of Appeals, you must insure that a petition for review is received by THE APPROPRIATE COURT (NOT THIS BOARD WITHIN SIXTY (60) DAYS OF THE DATE STAMPED ON THE FRONT OF THIS DECISION. The petition for review should contain the case number and the date of the Board's decision. The petition should be sent to the Court of Appeals which covers the state in which the employee's injury occurred. In a black lung claim, any state in which the miner had coal mine employment may be considered the state in which the injury occurred (i.e., for a black lung appeal, you may file in any Court of Appeals covering any state in which you worked as a miner). Listed on the back of this page are the twelve Courts of Appeals and the states they cover. You should identify the court covering the state of injury (including all states of mine employment for black lung claims) and file your petition with that court. If you have question about your case, call the Clerk of the court at the number shown on the bottom of this page. If you appeal directly to the Court of Appeals you may not later get reconsideration by the Board. However, if you seek Board reconsideration you may later appeal the Board's ruling on reconsideration to the Court of Appeals.

IF YOU HAVE ANY QUESTIONS ABOUT THE PROCEDURES TO BE FOLLOWED IN YOUR CASE, CALL THE OFFICE OF THE CLERK OF THE BOARD, (202) 693-6300.

-3-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been mailed to Joseph E. Wolfe, Esq., Wolfe, Williams, Rutherford & Reynolds, P. O. Box 625, Norton, Virginia, 24273-0625, Douglas N. White, Esq., U. S. Department of Labor, Office of Associate Regional Solicitor, 201 12th Street South – Suite 500, Arlington, Virginia, 22202-5450, and Rae Ellen Frank James, Esq., Associate Solicitor of Labor, U.S. Department of Labor, Suite N 2605, NDOL, 200 Constitution Avenue  NW, Washington, D.C. 20210, on this ___15___ day of September, 2015.

JOHN R. SIGMOND

Bristol: 556068-1

A042

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING III
WADE W. MASSIE II, III
WILLIAM M. MOFFET III
MARK L. ESPOSITO III
TIMOTHY W. GRESHAM
H. ASHBY DICKERSON
BYRUM L. GEISLER III
RICHARD E. LADD, JR. III
W. BRADFORD STALLARD
RAMESH MURTHY III
MARK E. FRYE III
LISA M. FRISINA
ANDREW M. HANSON III
JOHN A. MARTIN III
TIMOTHY K. LOWE I, III, •
JESSE F. NARRON
CAMERON S. BELL III

KARI LOU FRANK
JOHN R. SIGMOND III
PATRICIA C. ARRIGHI
WENDY E. WARREN
WESLEY B. BOGGS I, III
RICHARD E. LADD, SR. OF COUNSEL III, •
ELIZABETH R. WALTERS OF COUNSEL III
WILLIAM S. KENDRICK OF COUNSEL I, •
HOLLY N. MANCL III, IV, V
JOHN S. HONEYCUTT III
SETH M. LAND
P. DANIELLE STONE
NATHANIEL D. MOORE III
JONAS A. CALLIS
ALEXIS I. SNYDER III, VI
M. SHAUN LUNDY II, III, VII
MATTHEW J. MOYNIHAN
MICHELLE THOMAS CASTLE I, II
CATHERINE A. KARCZMARCZYK III, •

# PENN STUART
### Since 1890
## ATTORNEYS AT LAW

**RECEIVED**

**SEP 16 2015**

**DEBORAH S. HUNT, Clerk**

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia,
Bristol, Tennessee and Prestonsburg, Kentucky

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN; VI PA; VII NC

E-Mail:   jsigmond@pennstuart.com        Direct Dial:  (423) 793-4803        Direct Fax:  (423) 793-4843

September 15, 2015

**VIA OVERNIGHT DELIVERY**
Deborah S. Hunt, Clerk
Office of the Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, OH 45202-3988

> RE:   Aberry Coal, Inc. and Arrowpoint Capital c/o Underwriters Safety & Claims
> v. Joseph Fleming and Director, OWCP
> BRB No.: 2014-0329-BLA
> PS&E File No.:   40-756

Dear Ms. Hunt:

Please find enclosed the original and three copies of Aberry Coal, Inc.'s Petition for Review and a check in the amount of $505.00 as the filing fee for this appeal.   We have mailed copies to the parties as set out in the certificate of service.

Sincerely,
PENN, STUART & ESKRIDGE

John R. Sigmond

JRS/lld/Enclosure
cc:   Joseph E. Wolfe, Esq. (w/enc.)
Douglas N. White, Esq. (w/enc.)
Rae Ellen Frank-James, Esq. (w/enc.)
Ms. Teia Buell (81062144, w/enc.)

Bristol: 556183-1

**A043**

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

In the Matter of:

JOSEPH FLEMING,                    )
                                   )
    Claimant,                      )
v.                                 )    Case No.   2012-BLA-05241
                                   )
ABERRY COAL, INC.,                 )
                                   )
    Employer,                      )
                                   )
and                                )
                                   )
DIRECTOR, OFFICE OF WORKERS'       )
COMPENSATION PROGRAMS,             )
                                   )
    Party-in-Interest.             )


Division III
City – County Building
400 Main Street
Knoxville, Tennessee

Tuesday,
October 16, 2012


    The above entitled matter came on for hearing

pursuant to notice, at 2:28 p.m.


        BEFORE:    HONORABLE DANIEL SOLOMON
                    Administrative Law Judge


**Bayley Reporting, Inc.**
**(727)585-0600**

I N D E X

| CLAIMANT'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Joseph Fleming | 11 | 21,22 | 24 | 31 |

| EMPLOYER'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| None | | | | |

E X H I B I T S

| EXHIBIT | IDENTIFIED | IN EVIDENCE | WITHDRAWN |
|---|---|---|---|
| CLAIMANT'S | | | |
| 1 through 5 | 6 | 8 | |
| EMPLOYER'S | | | |
| 1 through 11 | 33 | 35 | |
| DIRECTOR'S | | | |
| 1 through 33 | 5 | 6 | |
| ALJ'S | | | |
| None | | | |

**Bayley Reporting, Inc.**
**(727) 585-0600**

4

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | October 16, 2012                    2:28 P.M. |

3          JUDGE SOLOMON:    I'm Daniel Solomon.  I'm an

4  administrative law judge with the United States Department

5  of Labor.  My address is 800 K Street Northwest, Fourth

6  Floor, Washington, D.C.  The Zip Code is 20001-8002.  The

7  telephone number is 202-693-7500.  My email address is

8  solomon.daniel@dol.gov.

9          This case involves Joseph Fleming versus Aberry

10  Coal, Inc.  Is that how they pronounce it, Mr. Sigmond?

11          MR. SIGMOND:    Yes, Your Honor.

12          JUDGE SOLOMON:    And Director, Office of Workers'

13  Compensation Programs.  The case number is 2012-BLA-05241.

14  This is a case brought under the Black Lung Benefits Reform

15  Act which is actually Section 422(A) of the Federal Coal

16  Mine Health and Safety Act of 1977 as amended.  Would the

17  parties please identify themselves for the record?

18          MR. DELPH:    Thank you, Your Honor.  My name is

19  Andrew Delph.  I'm with the law firm of Wolfe, Williams,

20  Rutherford and Reynolds.  Our address is 470 Park Avenue,

21  Post Office Box 625, Norton, Virginia 24273.  Our phone

22  number is area code 276-679-0777 and I'm here representing

23  Mr. Fleming.

24          MR. SIGMOND:    Your Honor, I'm John Sigmond.  I'm

25  with Penn Stuart.  Our address is P.O. Box 2009, Bristol,

1    Virginia 24203.  My telephone number is 423-793-4803 and

2    we're here on behalf of Aberry Coal and Arrowpoint Capital.

3              MS. SONNER:    For the Director, Office of

4    Workers' Compensation Programs, I'm Donna E. Sonner, U.S.

5    Department of Labor, Office of the Solicitor.  Address is

6    618 Church Street, Suite 230, Nashville, Tennessee 37219.

7    Telephone number is 615-781-5330, Extension 235.

8              JUDGE SOLOMON:    Hang onto that microphone, Ms.

9    Sonner.  Do you want to enter the Director's Exhibits?

10             MS. SONNER:    Yes, Your Honor.  I would like to

11   enter Director's Exhibits 1 through 33.

12                             (Whereupon, the documents referred

13                             to were marked for identification

14                             as Director's Exhibits 1 through

15                             33.)

16             JUDGE SOLOMON:    Okay.  Mr. Delph, do you have

17   objection to any of the exhibits?

18             MR. DELPH:    No, Your Honor.

19             JUDGE SOLOMON:    Mr. Sigmond?

20             MR. SIGMOND:    No, Your Honor.

21             JUDGE SOLOMON:    I will admit DX-1 through DX-33

22   into evidence.

23   //

24   //

25   //

1           (Whereupon, the documents marked
2           for identification as Director's
3           Exhibits 1 through 33 were admitted
4           into evidence.)
5     JUDGE SOLOMON:    Mr. Delph, do you want to make
6  an opening?
7     MR. DELPH:    I would waive opening, Your Honor.
8     JUDGE SOLOMON:    Do you have any evidence?
9     MR. DELPH:    Yes, Your Honor.  I have a packet
10  which includes five Claimant's Exhibits.
11          (Whereupon, the documents referred
12          to were marked for identification
13          as Claimant's Exhibits 1 through
14          5.)
15     MR. DELPH:    Claimant's 1 is a chest x-ray
16  interpretation by Dr. Michael Alexander of a film dated 4-
17  20-11.
18     Claimant's 2 is the curriculum vitae of Dr.
19  Alexander.
20     Claimant's 3 is a report of an independent medical
21  evaluation by Dr. Gallai, that's G-A-L-L-A-I, which includes
22  a chest x-ray interpretation by Dr. DePonte.  The date of
23  that examination is January 16, 2012.  That also includes
24  the curriculum vitae of Dr. Gallai.
25     Claimant's 4 is the curriculum vitae of Dr.

1    DePonte.

2           Claimant's 5 is a report of an independent medical

3    evaluation by Dr. Splan, S-P-L-A-N, which also includes a

4    chest x-ray interpretation by Dr. Alexander that's dated 3-

5    28-12 and that also includes the curriculum vitae of Dr.

6    Splan.  I would note for the record that the cover sheet on

7    our packet has the exhibits numbered correctly.  On the

8    evidence summary for some reason, Claimant's 4 is written in

9    the chest x-ray evidence where it should be Claimant's 5 and

10   I've corrected it by hand on the ---

11           JUDGE SOLOMON:    Okay, sure.

12           MR. DELPH:    If I might?

13           JUDGE SOLOMON:    You want to pass that forward?

14           (Mr. Delph takes documents to Judge)

15           JUDGE SOLOMON:    Mr. Sigmond, did you have a

16   chance to look at the exhibits?

17           MR. SIGMOND:    I have, Your Honor, and I have no

18   objections to CX-1 through 5.

19           MR. DELPH:    As an additional ---

20           JUDGE SOLOMON:    Ms. Sonner, do you have any

21   objection?

22           MS. SONNER:    No, Your Honor.

23           JUDGE SOLOMON:    Okay.

24           MR. DELPH:    As an additional thing, Your Honor,

25   we've been trying to get a re-reading of a film that the

1    Employer is relying on.  It's a digital film dated March 20,

2    2012.  We first requested that from the Department of Labor

3    on April 23, 2012, followed up on April 30, 2012.  On May

4    the 7th, the Department of Labor said the film was "in the

5    process of being forwarded".  May the 14th, got a call from

6    the Department of Labor that said did we know it was digital

7    and that they would send it.  On the 18th of May, we got a

8    letter from the Department of Labor that said the film is

9    sent.  We haven't heard anything from then until September

10    4th when we contacted the Department of Labor and they said

11    they didn't know where the film was.  We don't have the

12    reading in hand.  We paid the doctor to do it and basically

13    are trying to locate the film.  I would like some post-

14    hearing time to see if we can't locate that.

15         JUDGE SOLOMON:   Okay, first off, I'm going to

16    admit CX-1 through CX-5.

17                    (Whereupon, the documents marked

18                    for identification as Claimant's

19                    Exhibits 1 through 5 were admitted

20                    into evidence.)

21         JUDGE SOLOMON:   With respect to the digital x-

22    ray, let me just say this, okay?  The reason they're digital

23    is they can be replicated.  So, it very well could be that

24    Mr. Sigmond would have an exact copy and really, the

25    authenticity of a digital document is not as important as

**Bayley Reporting, Inc.**
**(727) 585-0600**

1    the authenticity would be, let's say, of a negative x-ray.

2    So, it could very well be that you could get that pretty

3    easily and I'll just leave the record open.  You've given me

4    a whole litany of attempts to get that.  So, I'll leave the

5    record open with respect to that.

6         Now, I have to advise everybody that there are

7    rules now on digital x-rays that were effective at the end

8    of the month.  I think I got the email about two weeks ago

9    that they were effective.  So, when we brief this case, I

10   want everybody to address that.  If it becomes an issue,

11   there may be a resolution within the new rules.  Of course,

12   no court has looked at these yet.  Historically, the issue

13   has always been the authenticity of the documents.  So, if

14   you can show that they're regularly used and if you can show

15   that they are done in a normal course of medical practice,

16   then you probably can get them in as "other evidence".  To

17   be quite honest with you, I still don't know whether they're

18   going to be used as x-ray evidence or other evidence.

19   Depending on the circuit that you're in, it could very well

20   be that that's more important than it is in another circuit.

21   It's certainly more important in the Fourth Circuit than it

22   would be in the Sixth Circuit.

23        MR. DELPH:    Your Honor, if I might ask?  You said

24   the first of which month?

25        JUDGE SOLOMON:    October.

1          MR. DELPH:    October, okay.

2          JUDGE SOLOMON:    This is October 16th.  It was

3    probably about two weeks ago.

4          MR. DELPH:    Okay.

5          JUDGE SOLOMON:    I remember I was out on the road

6    then and I opened them up and that's the extent of it.  I

7    can't repeat exactly what they said.  Okay, so you'll put

8    your client on the stand?

9          MR. DELPH:    Yes, Your Honor.

10          JUDGE SOLOMON:    Okay.  Do you want to come

11    forward, Mr. Fleming?

12          MR. FLEMING:    Yes, sir.

13          JUDGE SOLOMON:    Have a seat.  Raise your hand.

14    Whereupon,

15                    JOSEPH FLEMING

16    having been first duly sworn, was called as a witness

17    herein, and was examined and testified as follows:

18          WITNESS:    Yes, sir, I do.

19          JUDGE SOLOMON:    Put your hand down, please.

20    State your name.

21          WITNESS:    Joseph Fleming.

22          JUDGE SOLOMON:    Where do you live?

23          WITNESS:    I live at 1226 Circle Road, Dandridge,

24    Tennessee.

25          JUDGE SOLOMON:    What's the Zip Code there?

**Bayley Reporting, Inc.**
**(727) 585-0600**

1          WITNESS:     37725.

2          JUDGE SOLOMON:     What do you do for a living?

3          WITNESS:     I am disabled.

4          JUDGE SOLOMON:     Disabled from?

5          WITNESS:     Coal mining.

6          JUDGE SOLOMON:     Okay.  Mr. Delph is going to have

7     some questions for you.  Mr. Sigmond will probably have some

8     questions and it's possible that Ms. Sonner will have some

9     questions for you also.

10          WITNESS:     Okay.

11          JUDGE SOLOMON:     Go ahead.

12          MR. DELPH:     Thank you, Your Honor.

13                         **DIRECT EXAMINATION**

14     BY MR. DELPH:

15     Q    How long did you work in the mining industry?

16     A    Actually about 18 years underground.

17     Q    Okay.  What all did you do in the mines?

18     A    I did just about everything from shoveling ribs to

19     the last few years, I ran a continuous miner for Mr. Aberry

20     Coal Company.

21     Q    The last place that you worked, what state was it

22     in?

23     A    Kentucky.

24     Q    Okay.  I'm about to forget something.  I'm going

25     to go back up and catch it.

```
 1      A    Okay.

 2      Q    Are you married?

 3      A    Yes, I am.

 4      Q    Do you and your wife still live together?

 5      A    Absolutely.

 6      Q    How long have you all been married?

 7      A    Forty-eight years.

 8      Q    Congratulations.

 9      A    Thank you.

10      Q    What's her name?

11      A    Arlene Fleming.

12      Q    Okay.  Do you have any other dependents?

13      A    Not at home, no.

14      Q    Okay.

15      A    I don't have any dependents.

16      Q    Okay.

17           (Reporter moves mic closer to Witness)

18      BY MR. DELPH:

19      Q    Back to the coal mining.

20      A    Yes.

21      Q    The last year that you worked, you say you were

22 running the continuous miner?

23      A    Yes, sir.

24      Q    Physically, what did you have to do to run the

25 miner?
```

**Bayley Reporting, Inc.**
**(727) 585-0600**

A054

1    A    Well, I actually moved the miner from place to

2    place to cut the coal, to extract the coal and load the

3    buggies which was all done mechanically.  Had a conveyor on

4    the tail of the continuous miner, got arms out in front,

5    ripper head and it just cut the coal down.  As I cut it

6    down, it loaded it on to the conveyor and it loaded it out

7    into the cars.

8    Q    That's a good description of what the miner did.

9    What I want to know is what you did.

10    A    Well, I ran that.  I ran that piece of equipment

11    and I was required from time to time to handle the cables

12    that went with it and I had a helper on the machine that

13    helped me do that when I was backing in and out and so forth

14    and so on.

15    Q    Okay.  When you were operating the miner itself,

16    was it remote controlled?

17    A    Sometimes it was.  It depended on the job we were

18    doing.  If we were recovering what you call pulling pillars

19    in the mines is a term we used, then sometimes I would at

20    that time be required to use a remote control, yes.

21    Q    When you were not using remote control, how were

22    you doing it?

23    A    I sat on the deck of the miner on the machine.

24    Q    Okay.  You talked about moving cables.  Was there

25    water on the machine as well?

1      A      Yes, there was.

2      Q      Did you move the cables and the water hoses

3   simultaneously?

4      A      Yes.

5      Q      You got a rough idea of what that would weigh?

6      A      Those cables were pretty heavy.  I wouldn't have

7   any idea as far as guessing the weight on them.

8      Q      Well, let me ask you.

9      A      It took two men to move them.  From time to time,

10   we'd have to hang them because the shuttle cars ran under

11   them and they were pretty heavy.

12      Q      Let me ask you this way.  Have you ever handled a

13   rock dust bag?

14      A      Oh, yeah.

15      Q      How much does a rock dust bag weigh?

16      A      I think about 60 pounds.

17      Q      How did the cable compare to a rock dust bag?

18      A      Oh, it was a lot heavier.

19      Q      Okay.  How often did you have to move the cable in

20   a day?

21      A      Oh, several times.  I wouldn't recall exactly how

22   many, but several times.

23      Q      Okay and that was something you did on a daily

24   basis?

25      A      Yes.

1      Q    Okay.  You said you worked about 18 years in the

2    mines and I believe the Department of Labor just found a

3    little over nine years.

4      A    Yes, sir.

5      Q    Why the discrepancy?

6      A    I don't know unless somebody wasn't turning in my

7    wages.

8      Q    When did you start working in the mines?

9      A    The first time I worked was in 1970.

10     Q    And when was the last time you worked?

11     A    The best I can remember, it was in August or

12    September of '91.

13     Q    Okay.  Did you work at anything besides coal

14    during that time?

15     A    No.

16     Q    Did you work pretty regular?

17     A    Well, I was out of work a couple of times.  I had

18    hurt my back and was out on compensation and the last I

19    worked for Mr. Aberry, I had injured my back then and I was

20    in the hospital then in '91.  I had back surgery and I

21    wasn't gable to go back to work.  So, I signed up for Social

22    Security, but I was awarded my Social Security on my

23    breathing instead of the back injury.  That's the way it

24    read.  I mean, I don't know why, but that's ---

25     Q    Okay.  As far as you working, you said you injured

1    your back a few times.

2        A    (Affirmative response)

3        Q    How much time did you miss all together on that,

4    do you think?

5        A    Well, I can remember, one time I was out of work

6    probably a year or so.

7        Q    Okay.  How many times do you think you were off?

8    You said one time you were off for about a year, but what

9    about ---

10        A    Yeah, well, when I got hurt when I was working for

11    Aberry, I never did go back to work.  Then I had two

12    ruptures.  I was out of work then.  I don't remember how

13    long I was out for sure, but I had two rupture repairs

14    during that time too.

15        Q    Okay.  So, at least a couple of times you were off

16    for an extended period of time on account of your back ---

17        A    Yes.

18        Q    -- before you finally quit?

19        A    Yes.

20        Q    Or finally stopped, I guess.

21        A    Yes.

22        Q    Okay.  What about strikes, did you have any long

23    strikes?

24        A    No.

25        Q    Okay.  Have you seen your Social Security earnings

1    report?

2         A    Yes, I have.

3         Q    You said you started working in the mines since

4    '71, you think?

5         A    Yes.

6         Q    Okay.  That would be Archer and Club Coal Company

7    maybe?

8         A    That could have been.  I just don't remember

9    exactly.

10        Q    Actually, it looks like there's some employment

11   for Highpoint Coal Company in 1970?

12        A    Yeah, I think that was probably the first one.

13        Q    Okay.  It looks like you didn't make much money

14   then.  It looks like $53.00.

15        A    No, not much at all.

16        Q    Okay.  You mentioned that you might have worked

17   for some companies that didn't pay any Social Security in.

18   Any idea about when and who those would have been?

19        A    No, I would have to get into that record and look

20   at it real close and I haven't done so.

21        Q    Okay.  I notice there's a little bit of work for

22   some places in Florida.

23        A    Yeah.

24        Q    Did you move to Florida for a while?

25        A    Yeah, I moved down there for a year.  I worked on

A059

1    construction for a year.

2        Q    Okay.

3        A    General Development Corporation.

4        Q    All right.  I think I'll move on to something

5    else.

6        A    Okay.

7        Q    Are you on oxygen?

8        A    Yes, I am.

9        Q    Are you wearing it right now?

10        A    Yes.

11        Q    Who prescribes that?

12        A    The first time I was prescribed oxygen was by, I

13    think, my family doctor, Dr. Kenneth Hill.

14        Q    How long has that been?

15        A    I'm going to say in 2004.

16        Q    Okay.  Are you on it 24/7?

17        A    No, no, as needed.

18        Q    Okay.

19        A    I'm having a pretty rough time breathing here the

20    last couple of days.  We've taken advantage of the cool

21    nights and left the windows open at home and I think I

22    ingested a whole lot of pollen and so forth.

23        Q    Okay.  How much are you on?

24        A    I use it at night, every night and then from time

25    to time through the day.  If I'm having trouble breathing,

1   I'll use it.  I'm not on it 24/7.

2        Q    I understand, but do you know what the number is?

3        A    Oh, two liters.

4        Q    Okay.  Are you getting any other kind of treatment

5   for your breathing?

6        A    Yes, I take two to three Albuterol treatments a

7   day, nebulizer.  I use Spiriva once a day and I used Advair

8   twice a day and I have a rescue inhaler that I use when

9   needed.

10       Q    Okay.

11       A    I carry it with me if I have breathing problems

12  that I can use.

13       Q    Have you been treated for anything else?

14       A    In 2005, I had a lung collapse.  My left lung and

15  I had part of the lung removed here at U.T. Hospital

16  actually, but no.

17       Q    Why did they remove part of your lung?

18       A    They had trouble getting my lung reinflated and

19  actually, I was in the hospital at Hamblen Healthcare in

20  Morristown and they couldn't get my lung to reinflate.  So,

21  they sent me over here for surgery to do that.  They took

22  part of it off, part of the lobe.

23       Q    Were they suspicious of cancer or anything like

24  that?

25       A    No.

1   Q   So, basically just lung reduction surgery to ---

2   A   Right.

3   Q   Okay.  Do you smoke?

4   A   No.

5   Q   Have you ever smoked?

6   A   Yes.

7   Q   When did you start?

8   A   I was about 25 years old probably, best I can

9   remember.

10  Q   When did you quit?

11  A   Well, I quit after about ten years for a few years

12  and then I started back and then I quit again in 2005 when

13  my lung collapsed.  I had an ongoing battle with fighting

14  that urge to smoke and finally I just did it.

15  Q   When you were smoking, how much were you smoking?

16  A   I would smoke anywhere from a half a pack to a

17  pack a day.

18  Q   Did you ever smoke anymore than that?

19  A   No.

20  Q   Is there anything you want to tell the judge that

21  I have not asked you about?

22  A   No, not really.

23      MR. DELPH:   Okay, I'll pass the witness, Your

24  Honor.

25      JUDGE SOLOMON:   Mr. Sigmond?

1                           **CROSS EXAMINATION**

2       BY MR. SIGMOND:

3           Q    Mr. Fleming, with regard to when you quit smoking,

4    are you sure that you quit in 2005 when you had your lung

5    collapse or did you smoke for a period of time after that?

6           A    Well, I quit then and I would smoke a cigarette or

7    two every now and then, but I'm being totally honest.  I

8    would smoke a cigarette or two and then I would quit.  I

9    said, "I can't do that".  Actually, I'd smoke four or five

10   cigarettes and this went on for a couple of years.

11          Q    Okay, after the lung collapsed?

12          A    Yes.

13          Q    Okay and you indicated that when you were smoking

14   during that period, you averaged between a half pack and a

15   pack per day?

16          A    Yeah.

17          Q    Okay.  Now, were there time periods when you did

18   smoke more than a pack a day for extended periods?

19          A    Not that I can ever recall, no.

20          Q    Okay.

21          A    I actually quit.  Actually, I'm being honest with

22   you, I quit smoking several times in the 90's, but I'd

23   always start back.

24          Q    Okay.

25          A    I'm being honest with you.

**Bayley Reporting, Inc.**
**(727) 585-0600**

1    Q    Okay and can you remember treating at the

2    emergency room at Whitesburg Appalachian Regional Healthcare

3    in 1998?

4    A    '98?  I probably --- in '98?  No, I really can't.

5    Q    Okay.  It said that the chief complaint at that

6    time was smothering.  In any event, the reason I'm asking

7    about this one particular visit and we have it designated as

8    Employer's Exhibit 4, but it has down "smokes two packs per

9    day" at that time.  Could you have smoked two packs per day

10   at that time?

11   A    No, never.

12   Q    You never smoked two packs a day?

13   A    Never, never.

14       MR. SIGMOND:    Your Honor, I don't have any

15   further questions.

16       JUDGE SOLOMON:    Ms. Sonner, do you have any

17   questions?

18       MS. SONNER:    Just one question.

19                    **CROSS EXAMINATION**

20   BY MS. SONNER:

21   Q    The last coal mine employment you had was with

22   Aberry?  Is that correct?

23   A    Yes, ma'am, it was.

24   Q    And you worked there for more than a year?

25   A    Yes.

A064

1        MS. SONNER:   No further questions.

2        JUDGE SOLOMON:   Mr. Delph, do you have any

3   redirect?

4        MR. DELPH:   I'll rest, Your Honor.

5        JUDGE SOLOMON:   Okay, I think I better ask.  Was

6   all of your work underground?

7        WITNESS:   Yes, sir.

8        JUDGE SOLOMON:   And you're saying that the

9   reason that the Social Security records don't reflect it is

10   that some of your Employers failed to pay the Social

11   Security?

12        WITNESS:   That's what it must be.  I'd have to

13   ---

14        JUDGE SOLOMON:   Which Employers?

15        WITNESS:   I'm not sure, sir.  I've been quite

16   sick and I haven't had a chance to really get into that.

17   I've been ---

18        JUDGE SOLOMON:   This is your chance.

19        WITNESS:   Pardon me?

20        JUDGE SOLOMON:   This is your chance.

21        WITNESS:   Yes, sir.

22        JUDGE SOLOMON:   It's now or never.

23        WITNESS:   Yeah.  I don't know which ones.  I

24   would have to look in my record and check it out.

25        JUDGE SOLOMON:   Want to show him the record?

1          MR. SIGMOND:    Sure.

2          MR. DELPH:    Can he come back here?

3          JUDGE SOLOMON:    No, you'll take it.  Do you have

4    it with you?

5          MR. SIGMOND:    Yes.

6          (Mr. Delph takes documents to Witness)

7          JUDGE SOLOMON:    Look it over to yourself, tell

8    me when you're done.  Let's go off the record.

9          (Off the record at 2:55 p.m.)

10          (On the record at 3:02 p.m.)

11          JUDGE SOLOMON:    Okay, we're back on the record.

12    Based on the questions that I asked, Mr. Delph, do you have

13    any more questions?

14          MR. DELPH:    I do, Your Honor.

15                    **REDIRECT EXAMINATION**

16    BY MR. DELPH:

17          Q    I'd like to go through yours just a little, find a

18    starting point here.  I guess for the record, I'm

19    questioning Mr. Fleming about his employment history.  Mr.

20    Fleming, do you remember working for a Peem Coal Company, P-

21    E-E-M?

22          A    Yes, I do.

23          Q    In 1970.  It shows earnings of $72.00.  How long

24    did you work for Peem Coal Company in 1970?

25          A    I know I was there close to a year.

1    Q    Just so we're clear on this, it also shows some

2    work for Clark Super 100 in Clarksburg, Tennessee in 1970?

3    A    It could have been.  I couldn't say for sure with

4    my life.

5    Q    Okay, there's also a little bit of work in Biloxi,

6    Mississippi.

7    A    I do remember that.

8    Q    In 1970.

9    A    Yes.  Yes, I do remember that.

10    Q    And some work in San Francisco, California in

11    1970?

12    A    No.

13    Q    Do you remember that?

14    A    I've been in San Francisco, but it wasn't to work.

15    Q    Okay.

16    A    I was shipping out to go overseas.

17    Q    Okay.  When did you go overseas?

18    A    In 1962, '63, actually.

19    Q    Okay.  How about Highpoint Coal Company in 1971?

20    Do you remember working for them?

21    A    I do.

22    Q    They're showing $57.00.  How long did you work

23    there?

24    A    I worked there almost a year.

25    Q    It's also showing some employment in '71 for

1    Archer and Club Coal Company.  It looks like $200.00.

2        A    I worked there for about a year, maybe longer.

3        Q    That was in 1971 as well?

4        A    Yes.

5        Q    How about T.O.M. Corporation in Ann Arbor,

6    Michigan?  Do you remember working there?

7        A    I do, yes.

8        Q    Was that in Ann Arbor?

9        A    No, that was the home office of the company.  That

10   was the parent firm of the coal company I worked for which

11   was called Eastern Kentucky Coal Company.

12       Q    Okay.

13       A    Not to be confused with the East Kentucky Coal

14   Company.

15       Q    Okay.

16       A    Southeast Coal, I mean, I'm sorry.

17       Q    Okay.  How about Brownley Ketterson, Incorporated

18   in Knoxville in '72?  Was that coal related?

19       A    In '72?

20       Q    It looks like ---

21       A    Yes.

22       Q    -- you made $12.50 for them.

23       A    I don't know what the deal was there.  I didn't

24   make a lot of money for sure, did I?

25       Q    Was that coal related?

**Bayley Reporting, Inc.**
**(727) 585-0600**

A068

1      A    Yes.

2      Q    What was it?

3      A    I just don't recall for sure.

4      Q    Okay.  I believe the Miami and the Fort Pierce,

5 you said you were in Florida for that?

6      A    Yes.

7      Q    And Vero Beach, it looks like?

8      A    Yes.

9      Q    What about the Boise Cascade Corporation in 1972?

10 Any idea?  Boise, Idaho?

11     A    No, I've never been to Boise, Idaho either, never.

12     Q    All right.  What about A and E Coal Company in

13 Jackhorn, Kentucky?

14     A    Yeah.

15     Q    Now, they're showing again $60.00 of work for them

16 in '73.

17     A    I worked longer than that.  It was about six

18 months or so.

19     Q    Okay and Governor Elkhorn's coal company in

20 Pikeville?

21     A    Yes.

22     Q    Also in 1973?

23     A    (Affirmative response)

24     Q    Do you remember working there?

25     A    Yes.

1    Q    Again, that's $339.00.

2    A    Right.

3    Q    Does that sound about right?

4    A    Yes, it does.

5    Q    Okay and Scotia Coal Company, it looks like you

6 worked for them for a few years.

7    A    (Affirmative response)

8    Q    Then Scotia Employees Association, what is that?

9    A    Scotia Employees Association is a union.

10    Q    Okay.

11    A    That is a union itself.

12    Q    So, you were a union rep or something there for

13 the $40.00 and the $356.00?

14    A    (Affirmative response)

15    Q    Elkhorn Jellico Coal Company in 1978, it looks

16 like you made $1,255 there and again it looks like several

17 coal companies in 1978.  Were you out of work much in '78?

18 When did you have your back problems?

19    A    It was in '91.

20    Q    Okay.

21    A    I also had in '91 and also in '82 or '83, '82, I

22 think.

23    Q    Okay.  Anncoal Mining Corporation in Whitesburg.

24 I'm sorry, let me back up.  Johnson and Sons Coal Company in

25 Virgie, they're showing $60.00 in 1968.  Did you just work a

1    little bit for them?

2        A    Yeah, but I worked more than that.

3        Q    Okay.  It looks like in '79, there's a couple of

4    different Ann Coal Mining and Action Energies.  Are those

5    both coal companies?

6        A    Yes.

7        Q    Looks like between them, you made about $5,000.

8        A    (Affirmative response)

9        Q    Does that sound about right?

10       A    Yeah.

11       Q    What about Paramount in 1980?

12       A    That looks about right.

13       Q    Okay.  Sullivan Brothers in 1980?

14       A    (Affirmative response)

15       Q    $965.00, does that sound about right for them?

16       A    Yes, it does.

17       Q    Okay.  There's a gap here from 1980 to 1985.  What

18   was going on then?

19       A    That's the period I was off for my back.  I was

20   off for my back then.

21       Q    Okay.  It looks like in '85, Everidge and Neece

22   Coal Company?  It looks like you made a little over $3,000?

23       A    (Affirmative response)

24       Q    Did you work all year for them?

25       A    Yeah.

A071

1        Q    What about Uniforce Services, New Hyde Park, New

2    York?  What's that about?

3        A    That was ---

4        Q    It looks like there's two.

5        A    Yeah, that was, I'm pretty sure, that was a place

6    that I worked that was a part-time, it was an employer that

7    was part-time workers.

8        Q    Okay.  Did that have anything to do with coal

9    mining?

10        A    No, no, it didn't.

11        Q    All right.  It looks like Wampler Brothers Coal

12    Company in Lebanon.

13        A    (Affirmative response)

14        Q    In '88, it looks like you worked a reasonable time

15    there?

16        A    Yes, I did.

17        Q    In '88 and '89.

18        A    Then should be Aberry.

19        Q    And then Aberry?

20        A    Yes.

21        Q    '89, '90 and '91?

22        A    Correct.

23        Q    Okay.  Does that pretty well sum up your working

24    history?

25        A    That's it.

**Bayley Reporting, Inc.**
**(727) 585-0600**

A072

1          MR. DELPH:   Okay, I'll let it go at that.

2          JUDGE SOLOMON:    Okay.  Mr. Sigmond, do you have

3     any questions?

4                      **RECROSS EXAMINATION**

5     BY MR. SIGMOND:

6          Q    Mr. Fleming, do you have any documentation of your

7     dates of employment from before 1980?

8          A    No, I don't have any documentation of any of this

9     because in 1998, I had a house fire that burned.  It was a

10    total loss.  Everything we had, a total loss.  There was

11    nothing left.

12         Q    Okay and I'm looking at Director's Exhibit 4 now

13    and can you remember someone from the Department of Labor

14    calling you and asking you about your coal mine employment

15    about which companies were coal mine related or not and the

16    date of this form I'm looking at is November 1, 2010?

17         A    I do.

18         Q    Okay and it appears and I may be wrong about this,

19    it appears to be the signature of somebody named Jennifer

20    Jackson.

21         A    Yes.

22         Q    Okay and it's got down several companies that you

23    had identified as being coal mine related.

24         A    Right.

25         Q    Okay.  So, did you discuss that information with

1    her about how long you worked for each company at that time?

2       A    I don't remember the exact content of our

3    conversation, but I do remember talking to her.

4       Q    Okay.  There were --- I'm sorry, bear with me just

5    a second.  I'm flipping through my notes here.

6       A    Sure.

7       Q    Okay.  There were several companies that you

8    mentioned around the year 1971 which you said you worked for

9    more than a year or a year for the company?

10      A    Yeah.

11      Q    Okay.  Is it possible that you're mistaken with

12   regard to the length of the employment with some of these

13   companies?

14      A    It very well could be.

15      Q    Okay and the reason I'm asking is you indicated

16   that you felt like you worked for more than a year for

17   Highpoint Coal and also for Archer and Club Coal.

18      A    Yeah.

19      Q    But both of those companies show employment in

20   1971.

21      A    Yeah.

22      Q    Okay, then there's also employment with Peem

23   Corporation in 1971.

24      A    I had these wrote down and I worked real hard.

25   I'm not the sharpest tool in the shed as the old saying

1   goes, but I worked real hard to get these as accurate as I

2   possibly could, but not having any documentation, there was

3   no way I could tell you 100 percent sure about any of them.

4        MR. SIGMOND:   Okay.  Your Honor, that's all the

5   questions I have.

6        JUDGE SOLOMON:   Ms. Sonner?

7        MS. SONNER:   I have nothing further, Your Honor.

8        JUDGE SOLOMON:   Okay, thank you very much, Mr.

9   Fleming.  You can go back and have a seat next to Mr. Delph.

10  Mr. Delph, do you have anything else?

11       MR. DELPH:   No, Your Honor.

12       JUDGE SOLOMON:   Mr. Sigmond, do you want to make

13  an opening?

14       MR. SIGMOND:   No, Your Honor, we'll waive.

15       JUDGE SOLOMON:   Do you have any exhibits?

16       MR. SIGMOND:   We do, Your Honor.  Your Honor, we

17  have 11 exhibits.  Would you like me to read those for the

18  record?

19                      (Whereupon, the documents referred

20                      to were marked for identification

21                      as Employer's Exhibits 1 through

22                      11.)

23       JUDGE SOLOMON:   Yes, please.

24       MR. SIGMOND:   Employer's Exhibit 1 is Dr.

25  Rosenberg's IME report and that includes his report, his

**Bayley Reporting, Inc.**
**(727) 585-0600**

A075

1    testing and Dr. Wheeler's reading of the March 20, 2012

2    digital chest x-ray.  We submitted that also as other

3    evidence in the case.

4           Employer's Exhibit 2 is a consultation report by

5    Dr. Usenski at Morristown Hamblem Hospital.  It's dated June

6    18, 2005.

7           Employer's Exhibit 3 is a chest x-ray report by

8    Dr. Knight dated December 3, 2010.

9           Employer's Exhibit 4 is an ER report from

10   Whitesburg Appalachian Regional Hospital dated February 11,

11   1998.

12          Employer's Exhibit 5 is an arterial blood gas

13   study from Baptist Hospital dated June 15, 2005.

14          Employer's Exhibit 6 is Dr. Scott's reading of the

15   January 16, 2012 chest x-ray.

16          Employer's Exhibit 7 is Dr. Long's review of the

17   March 28, 2012 pulmonary function study.

18          Employer's Exhibit 8 is Dr. Caffrey's biopsy

19   report.

20          Employer's Exhibit 9 is Dr. Scott's reading of the

21   March 28, 2012 chest x-ray.

22          Employer's Exhibit 10 is Dr. Scott's reading of

23   the April 20, 2011 chest x-ray and Employer's Exhibit 11 is

24   a supplemental report from Dr. Dahhan.

25          JUDGE SOLOMON:    Okay.  You want to pass those

1    forward, please?

2              (Mr. Sigmond takes documents to Judge)

3              JUDGE SOLOMON:    Thank you.  Mr. Delph, EX-1

4    through EX-11?

5              MR. DELPH:    Your Honor, I don't have any

6    objections with the understanding that we are being allowed

7    post-hearing time to get the digital film re-read.

8              JUDGE SOLOMON:    Okay.  So, I'm leaving the

9    record open for 30 days, but I admit EX-1 through EX-11.

10                        (Whereupon, the documents marked

11                         for identification as Employer's

12                         Exhibits 1 through 11 were admitted

13                         into evidence.)

14             JUDGE SOLOMON:    Ms. Sonner, I'm sorry, I didn't

15   give you a chance to respond.

16             MS. SONNER:    No objection, Your Honor.

17             JUDGE SOLOMON:    Okay, thank you.  Do you have

18   anything else?

19             MR. SIGMOND:    No exhibits, Your Honor.

20             JUDGE SOLOMON:    Okay, do you rest?

21             MR. SIGMOND:    We do.

22             JUDGE SOLOMON:    Okay.  Let's talk about some of

23   the issues here.  I direct your attention to DX-30.

24             Length of employment, we know the Department of

25   Labor found less than 10 years and we heard his testimony

A077

1    and all I can say is sometimes I believe the Claimant.  I've

2    had lots of cases where claimants worked for shoddy

3    operations, worked under the table.  On the other hand, it's

4    up to the Claimant to prove that.  So, I assume I'm going to

5    hear about that in the brief.

6          The allegation is that he worked more than 18

7    years and almost all of that was underground.  So, like I

8    say, I'll wait until the brief to finally make a

9    determination.  The Employer is contesting pneumoconiosis.

10   What about total disability?

11         MR. SIGMOND:    We're not, Your Honor.

12         JUDGE SOLOMON:    Okay.  So, I'm going to mark

13   that as withdrawn.  Dependency?

14         MR. SIGMOND:    We can agree to one dependent,

15   Your Honor.

16         JUDGE SOLOMON:    Okay and that's withdrawn.

17   Responsible operator?

18         MR. SIGMOND:    We're withdrawing that issue, Your

19   Honor.

20         JUDGE SOLOMON:    Okay.  Subsequent claims?

21         MR. SIGMOND:    We're continuing to contest that,

22   Your Honor.

23         JUDGE SOLOMON:    Right.  Let's see.

24   Modification, how did this get to be a modification?

25         MR. SIGMOND:    I think it's a typo, Your Honor.

A078

1          JUDGE SOLOMON:    Okay and the other issues that

2    are listed are outside my jurisdiction.   I assume they are

3    there for appellate purposes only?

4          MR. SIGMOND:    That's correct, Your Honor, but

5    just for the record, we need to note that we're contesting

6    causal relationship and causation.

7          JUDGE SOLOMON:    Yes, well, they're hand in

8    glove.

9          Okay, so I am leaving the record open and at that

10   time, you'll have the transcript.   So, I expect briefs in

11   this case --- I've been using December 17th.   Is that okay

12   for simultaneous briefs?

13         MR. DELPH:    Longer is always better, Your Honor.

14    It's around Christmas too.

15         JUDGE SOLOMON:    Okay, I'm going to have like a

16   zillion briefs due on something like January 3rd, but I'll

17   do it, let's make it January 11th.   I don't have my

18   calendar. Let's make it January 7th, simultaneous briefs,

19   January 7th.

20         MR. DELPH:    Thank you, Your Honor.

21         JUDGE SOLOMON:    So, one more time.   This is

22   important.   That business about digital x-rays.   There is

23   new ruling on that and, of course, I want to hear all about

24   the issue on coal mine employment.

25         Okay, so if there's nothing else, it's 3:21 and

38

1    the hearing is closed.

2              MR. DELPH:     Thank you, Your Honor.

3              [Whereupon, the hearing was concluded at 3:21

4    p.m.]

5    //

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

A080

39

1              C E R T I F I C A T E

2    Case Name:      Joseph Fleming

3    Case Number:    2012-BLA-05241

4    Date:           October 16, 2012

5    Location:       Knoxville, Tennessee

6          This is to certify that the attached proceedings

7    before the United States Department of Labor, Office of

8    Administrative Law Judges, were held according to the record

9    and that this is the original, complete, true and accurate

10   transcript that has been compared to the reporting or

11   recording accomplished at the hearing.

12

13

14   _____              _____

15   Bayley Reporting, Inc.                       Date

16   Official Federal Reporters

17   Building 1, Suite 14

18   12945 Seminole Boulevard

19   Seminole, FL  33778

20

21

22

23

24

25

A081

# Claimant's Exhibits

## Joseph Fleming
v.
## Aberry Coal, Inc.

## Case No.: 2012-BLA-05241
## OWCP No.: xxx-xx-0560
## PS&E File No.: 40-756

### *PS&E copy*

Bristol: 354972-1

# WOLFE WILLIAMS RUTHERFORD & REYNOLDS
## ATTORNEYS AND COUNSELORS AT LAW

JOEY G. ARNOLD[1]
DAVID S. BARY[2]
BOBBY S. BELCHER, JR.
W. ANDREW DELPH, JR.
TONY M. HUTCHINSON
[1]*Member of TN and NC Bar*
[2]*Member of WV and VA Bar*

470 PARK AVENUE • P.O. BOX 625 • NORTON, VIRGINIA 24273
TELEPHONE (276) 679-0777 • FAX (276) 679-5919
*www.wwrrlawfirm.com*

*All Attorneys Licensed in Virginia*
*Except as Noted*
December 13, 2012

JASON T. MARSHALL[3]
P. HEITH REYNOLDS[4]
ROGER W. RUTHERFORD
VERNON M. WILLIAMS
JOSEPH E. WOLFE
[3]*Member of TN Bar*
[4]*Member of KY and VA Bar*

Honorable Judge Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

**RE: Joseph Fleming v. Aberry Coal, Inc., and Director, OWCP**
**Case No: 2012-BLA-05241, OFN: 92123**

Dear Judge Solomon,

Please find enclosed Claimant's Motion to File Out of Time along with the following evidence Claimant wishes to submit in support of his claim:

- **Claimant's Exhibit 6:** The rebuttal reading of the film dated March 28, 2012 by Dr. Kathleen A. DePonte along with her curriculum vitae.

By copy of this correspondence, I am forwarding the same to Counsel for the Responsible Operator.

With best regards, I am,

Sincerely yours,
WOLFE WILLIAMS RUTHERFORD & REYNOLDS

JOSEPH E. WOLFE

JEW/nar
CC:
Ms. Theresa A. Ball, Esq.
U.S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, TN 37219-2456

Mr. John R. Sigmond, Esq.
PENN STUART
P.O. Box 2009
Bristol, VA 24203

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES
800 K STREET, NW, SUITE 400-N
WASHINGTON, DISTRICT OF COLUMBIA 20001-8002

JOSEPH FLEMING,
    CLAIMANT

       v.                                       2012-BLA-05241

ABERRY COAL INC.,
    EMPLOYER

And

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS.
    PARTY-IN-INTEREST

## MOTION TO FILE OUT OF TIME

    Comes now Claimant, by and through Counsel and respectfully requests this Court to allow Claimant to submit post-hearing evidence out of time in the above captioned claim. Unfortunately, due to a clerical error, Counsel for Claimant did not properly calendar the deadline for the post-hearing submission for the rebuttal reading of the film dated the 28th of March, 2012. Counsel for the Responsible Operator was contacted and expressed no objection to this request.

    Therefore, Claimant respectfully requests permission to submit post-hearing evidence out of time in the above captioned claim.

                        Respectfully submitted,
                        Joseph Fleming
                        BY COUNSEL

_____
JOSEPH E. WOLFE
WOLFE WILLIAMS RUTHERFORD & REYNOLDS
P.O. Box 625
Norton, VA  24273
(276) 679-0777
(276) 679-5919 – Fax
*Counsel for Claimant*

WOLFE WILLIAMS RUTHERFORD & REYNOLDS
ATTORNEYS AT LAW
P. O. Box 625
Norton, Virginia 24273
(276) 679-0777

A084

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify I have this 13th day of December, 2012 faxed and/or mailed a true and correct copy of the foregoing Motion to File Out of Time to the following parties:

Honorable Judge Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

Ms. Theresa A. Ball, Esq.
U.S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, TN 37219-2456

Mr. John R. Sigmond, Esq.
PENN STUART
P.O. Box 2009
Bristol, VA 24203

JOSEPH E. WOLFE

2

A085

# WOLFE WILLIAMS RUTHERFORD & REYNOLDS
## ATTORNEYS AND COUNSELORS AT LAW

JOEY G. ARNOLD[1]
DAVID S. BARY[2]
BOBBY S. BELCHER, JR.
W. ANDREW DELPH, JR.
TONY M. HUTCHINSON
[1]*Member of TN and NC Bar*
[2]*Member of WV and VA Bar*

470 PARK AVENUE ▪ P.O. BOX 625 ▪ NORTON, VIRGINIA 24273
TELEPHONE (276) 679-0777 ▪ FAX (276) 679-5919
*www.wwrrlawfirm.com*

*All Attorneys Licensed in Virginia*
*Except as Noted*
September 24, 2012

JASON T. MARSHALL[3]
P. HEITH REYNOLDS[4]
ROGER W. RUTHERFORD
VERNON M. WILLIAMS
JOSEPH E. WOLFE
[3]*Member of TN Bar*
[4]*Member of KY and VA Bar*

Honorable Judge Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

**20 Day Evidence Summary**

**RE: Joseph Fleming v. Aberry Coal, Inc., and Director, OWCP**
**Case No: 2012-BLA-05241, OFN: 92123**

Dear Judge Solomon,

      Pursuant to your Notice of Hearing dated the 14th of August, 2012, please find enclosed a copy of Claimant's evidence summary in the above captioned claim. My records indicate that all evidence has been exchanged; however, my office will be happy to provide additional copies to any party who requests them.

      By copy of this correspondence, I am forwarding the same to Counsel for the Responsible Operator.

      With best regards, I am,

Sincerely yours,
WOLFE WILLIAMS RUTHERFORD & REYNOLDS

JOSEPH E. WOLFE

JEW/nar
CC:
Mr. Douglas N. White, Esq.
U.S. Department of Labor
Office of the Solicitor
1100 Wilson Blvd., 22nd Floor-W
Arlington, VA 22209

Mr. Joseph W. Bowman, Esq.
STREET LAW FIRM
P.O. Box 2100
Grundy, VA 24614-2100

# WOLFE WILLIAMS RUTHERFORD & REYNOLDS
## ATTORNEYS AND COUNSELORS AT LAW

JOEY G. ARNOLD[1]
DAVID S. BARY[2]
BOBBY S. BELCHER, JR.
W. ANDREW DELPH, JR.
TONY M. HUTCHINSON
[1]*Member of TN and NC Bar*
['Member of WV and VA Bar*

470 PARK AVENUE • P.O. BOX 625 • NORTON, VIRGINIA 24273
TELEPHONE (276) 679-0777 • FAX (276) 679-5919
*www.wwrrlawfirm.com*

*All Attorneys Licensed in Virginia*
*Except as Noted*
September 4, 2012

JASON T. MARSHALL[3]
P. HEITH REYNOLDS[4]
ROGER W. RUTHERFORD
VERNON M. WILLIAMS
JOSEPH E. WOLFE
[3]*Member of TN Bar*
[4]*Member of KY and VA Bar*

Honorable Judge Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

**RE: Joseph Fleming v. Aberry Coal, Inc., and Director, OWCP**
**Case No: 2012-BLA-05241, OFN: 92123**

Dear Judge Solomon,

Out of an abundance of caution, I am exchanging the following with Counsel for the Responsible Operator:

- **Claimant's Exhibit 1:** The rebuttal reading of the film dated April 20, 2011 by Dr. Michael S. Alexander.
- **Claimant's Exhibit 2:** The curriculum vitae of Dr. Michael S. Alexander.
- **Claimant's Exhibit 3:** The medical report of Dr. James B. Gallai January 19, 2012 along with his curriculum vitae.
- **Claimant's Exhibit 4:** The curriculum vitae of Dr. Kathleen A. DePonte.
- **Claimant's Exhibit 5:** The medical report of Dr. Thomas P. Splan dated March 28, 2012 along with his curriculum vitae.

By copy of this correspondence, I am forwarding the same to Counsel for the Responsible Operator.

With best regards, I am,

Sincerely yours,
WOLFE WILLIAMS RUTHERFORD & REYNOLDS

JOSEPH E. WOLFE

JEW/nar
CC:

Ms. Theresa A. Ball, Esq.
Mr. Michael F. Blair, Esq.

# UNITED STATES DEPARTMENT OF LABOR
# OFFICE OF ADMINISTRATIVE LAW JUDGES



## BLACK LUNG BENEFITS ACT
## EVIDENCE SUMMARY FORM

| Case Name: | Joseph Fleming v. Aberry Coal, Inc., and Director, OWCP |
|---|---|
| Case No.: | 2012-BLA-05241 |

Evidence submitted in support of position of:  [X] Claimant   [ ] Employer   [ ] Director (check one)

| Signature of Submitter: | Address of Submitter: | | |
|---|---|---|---|
| s/ | 470 Park Avenue<br>P.O. Box 625<br>Norton, VA 24273 | | |
| ^Signature of Representative, Attorney, or Party | | | |
| Joseph E. Wolfe, Esq. | | | |
| ^Printed Name of Representative, Attorney, or Party | Phone: (276) 679-0777 | Fax: | (276) 679-5919 |

| Date of this submission: | September 24, 2012 |
|---|---|

## Claimant reserves the right to amend

Honorable Judge Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

Ms. Theresa A. Ball, Esq.
U.S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, TN 37219-2456

Mr. Michael F. Blair, Esq.
PENN STUART
P.O. Box 2009
Bristol, VA 24203

## I.    Chest x-ray evidence

### A.    Initial evidence.  A party may submit no more than two chest x-ray *interpretations* in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | B-Reader (B)/ Board Cert. (BCR) | Date of X-ray study | Date of Reading | Film Quality | Reading |
|---|---|---|---|---|---|---|
| CX-03 | DePonte | B/BCR | 01/16/12 | 01/19/12 | 2 | s/s, 4z, 1/0 |
| CX-04 | Alexander | B/BCR | 03/28/12 | 04/05/12 | 2 | p/t, 4z, 1/0 |

OWCP Evaluation.  The Department is required to provide the miner with a chest x-ray study as part of the complete pulmonary evaluation.  20 C.F.R. § 725.406(a) (2001).

| DX-12 | Baker | B | 01/14/11 | 01/14/11 | 1 | t/t, 4z, 1/1 |
|---|---|---|---|---|---|---|
| DX-12 | Barrett | B/BCR | 01/14/11 | 01/25/11 | 1 | Quality Only |

### B.    Rehabilitative evidence is permitted ONLY if opposing party has presented a rereading which "tends to undermine" a specific x-ray exhibit set forth above.  In such a case, the proponent of the x-ray exhibit "shall be entitled to submit an additional statement from the physician who originally interpreted the chest x-ray." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  | . |

For use by the Director only.  The Director may submit rehabilitative evidence if any party submits evidence which "tends to undermine" the findings of the Department-sponsored chest x-ray study.

|  | . |  |  |  |
|---|---|---|---|---|

### C.    Rebuttal evidence.  A party may offer no more than one physician's interpretation of each chest x-ray *study* submitted by opposing party.  20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

## RESERVE THE RIGHT TO AMEND

| Exhibit No. | Physician | B-Reader (B)/ Board Cert. (BCR) | Date of X-ray study | Date of Reading | Film Quality | Reading |
|---|---|---|---|---|---|---|
| CX-01 | Alexander | B/BCR | 04/20/11 (Dahhan) | 09/25/11 | 1 | p/p, 5z, 1/0 |
|  |  |  | TBA |  |  |  |

For rebuttal of Department-sponsored chest x-ray study only.

| DX-14 | Alexander | B/BCR | 01/14/11 (Baker) | 03/06/11 | 1 | p/p, 6z, 1/0 |
|---|---|---|---|---|---|---|

## II.   Pulmonary function studies

A.   **Initial evidence.** A party may submit the results of no more than two pulmonary function studies in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of study | Tracings present? | Flow-volume loop? | Broncho-dilator? | FEV1 | FVC/MVV | Coop. and Comp. Noted? |
|---|---|---|---|---|---|---|---|---|
| CX-03 | Gallal | 01/16/12 | Y | Y | Y | 0.70 0.76 | 2.08 2.13 | Y |
| CX-05 | Splan | 03/28/12 | Y | Y | Y | 0.75 0.74 | 2.18 2.00 | Y |

**OWCP Evaluation.** The Department is required to provide the miner with a pulmonary function study as part of the complete pulmonary evaluation. 20 C.F.R. § 725.406(a) (2001).

| Exhibit No. | Physician | Date of study | Tracings present? | Flow-volume loop? | Broncho-dilator? | FEV1 | FVC/MVV | Coop. and Comp. Noted? |
|---|---|---|---|---|---|---|---|---|
| DX-12 | Baker | 01/14/11 | Y | Y | N | 0.67 | 3.17 | Y |

B.   **Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a specific pulmonary function study exhibit set forth above. In such a case, the proponent of the pulmonary function study exhibit "shall be entitled to submit an additional statement from the physician who . . . administered the objective testing." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**For use by the Director only.** The Director may submit rehabilitative evidence if any party submits evidence which "tends to undermine" the findings of the Department-sponsored pulmonary function study.

| | | | | |
|---|---|---|---|---|
|  |  |  |  |  |

C.   **Rebuttal evidence.** A party may offer no more than one physician's assessment of each pulmonary function study offered by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**For rebuttal of Department-sponsored pulmonary function study only.**

| | | | | |
|---|---|---|---|---|
|  |  |  |  |  |

A090

III.   **Blood gas studies**

A.   **Initial evidence.**   A party may submit the results of no more than two blood gas studies in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Study | Altitude | Resting (R) Exercise (E) | PCO2 | PO2 | Comments |
|---|---|---|---|---|---|---|---|
| CX-03 | Gallal | 01/16/12 | 0-2999 | R | 39.9 | 57.4 | |
| CX-05 | Splan | 03/28/12 | 0-2999 | R | 43.2 | 48.6 | |

**OWCP Evaluation.**   The Department may provide the miner with a blood gas study as part of the complete pulmonary evaluation. 20 C.F.R. § 725.406(a) (2001).

| Exhibit No. | Physician | Date of Study | Altitude | Resting (R) Exercise (E) | PCO2 | PO2 | Comments |
|---|---|---|---|---|---|---|---|
| DX-12 | Baker | 01/14/11 | 0-2999 | R | 44 | 69 | |

B.   **Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a specific blood gas study set forth above. In such a case, the proponent of the blood gas study exhibit "shall be entitled to submit an additional statement from the physician who . . . administered the objective testing." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |

**For use by the Director only.**   The Director may submit rehabilitative evidence if any party submits evidence which "trends to undermine" the findings of the Department-sponsored blood gas study.

| | | | | |
|---|---|---|---|---|
| | | | | |

C.   **Rebuttal evidence.**   A party may offer no more than one physician's assessment of each blood gas study offered by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |

For rebuttal of Department-sponsored blood gas study only.

| | | | | |
|---|---|---|---|---|
| | | | | |

## IV.    Medical reports

The parties are notified that "medical reports" may only be based on medical evidence which is admissible consistent with the evidentiary limitations at 20 C.F.R. § 725.414(a)(2)(i), (3)(i), and (c) (2001).  20 C.F.R. §§725.414(a)(2)(i) and 725.457(d) (2001).  Medical reports are defined in the regulations as:

> A physician's written assessment of the miner's respiratory or pulmonary condition.  A medical report may be prepared by the physician who examined the miner and/or reviewed the available admissible evidence.  A physician's written assessment of a single objective test, such as a chest X-ray or a pulmonary function test, shall not be considered a medical report for purposes of this section.

20 C.F.R. § 725.414(a)(1) (2001).

A.    **Initial evidence.**  A party may submit no more than two medical reports in support of its position.
20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Medical Report | Comments |
|---|---|---|---|
| CX-03 | Gallai | 01/19/12 | Clinical and legal pneumoconiosis. [Claimant] is completely impaired from his prior position.  He does not have the pulmonary capacity to perform it. |
| CX-05 | Splan | 03/28/12 | Clinical and legal pneumoconiosis. The impairment related to [Claimant's] pulmonary status is thought to be very severe and based upon his impairment [Claimant] could not return to the mines. |

**OWCP Evaluation.**  The Department is required to provide the miner with a complete pulmonary evaluation.
20 C.F.R. § 725.406(a) (2001).

| | | | |
|---|---|---|---|
| DX-12 | Baker | 01/17/11 | Clinical and legal pneumoconiosis. [Claimant's] pulmonary function studies meet federal guidelines for disability with his FEV1 and FEV1/FVC ratio meeting those values.  On this basis, [Claimant] would not have the respiratory capacity to perform the work of a coal miner or comparable work in a dust free environment. |
| DX-13 | Baker | 01/28/11 (Clarification) | The presence of 10 years of coal mine employment is not a magic number in that with 9 years and 11 months, one would not have pneumoconiosis but at 10 years and one month, one would have pneumoconiosis.   In a susceptible individual, 9 1/4 years of coal mine employment could be sufficient in a susceptible individual. |

B.    **Rehabilitative evidence** is permitted ONLY if opposing party has presented "rebuttal evidence" which "tends to undermine" the conclusion of a physician who prepared one of the above-listed medical reports.  It is noted that the "rebuttal evidence" may consist of "no more than one physician's interpretation of each chest X-ray, pulmonary function test, blood gas study, autopsy or biopsy" submitted by the opposing party.  In such a case, the proponent is entitled to submit an "additional statement" from the physician who prepared the medical report explaining his or her conclusion in light of the rebuttal evidence.
20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|

A092

|  |  |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |
|  |  |  |  |  |

**For use by the Director only. The Director may submit rehabilitative evidence if any party submits evidence which "trends to undermine" the findings of the Department-sponsored medical opinion.**

|  |  |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |

## V.    Autopsy evidence

**A.**    Initial evidence, . A party may submit no more than one autopsy report in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Autopsy Report | Comments |
|---|---|---|---|
|  |  |  |  |

**B.**    Rehabilitative evidence is permitted ONLY if opposing party has presented evidence which "tends to undermine" the autopsy report. In such a case, the proponent of the report shall be entitled to submit an "additional statement" from the physician who prepared the autopsy report explaining his or her conclusions in light of the rebuttal evidence. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

**C.**    Rebuttal evidence. A party may offer no more than one physician's interpretation of the opposing party's autopsy report. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Report Dated: | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

## VI.    Biopsy evidence

**A.**    Initial evidence. A party may submit no more than one report of each *biopsy* in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Biopsy Report | Comments |
|---|---|---|---|
|  |  |  |  |

**B.**    Rehabilitative evidence is permitted ONLY if opposing party has presented evidence which "tends to undermine" a particular biopsy report. In such a case, the proponent of the report shall be entitled to submit an "additional statement" from the physician who prepared the biopsy report explaining his or her conclusions in light of the rebuttal evidence. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

**C.**    Rebuttal evidence. A party may offer no more than one physician's interpretation of each biopsy report submitted by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Report Dated: | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

VII.    "Other medical evidence" under § 718.107

    A.    **Initial evidence.** A party may submit "other medical evidence" under § 718.107, such as CT-scans, and "[t]the party submitting the test or procedure . . . bears the burden to demonstrate that the test or procedure is medically acceptable and relevant to establishing or refuting a claimant's entitlement to benefits." 20 C.F.R. § 718.107(b) (2001).

| Exhibit No. | Physician | Type of Record | Date of Activity | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

    B.    **Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a specific test or study set forth above. In such a case, the proponent of the study or test "shall be entitled to submit an additional statement from the physician who . . . administrated the objective testing." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

    C.    **Rebuttal evidence.** A party may offer no more than one physician's assessment of each test or study offered by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

IX.    Hospitalization records and treatment notes

The amended regulations provide that, notwithstanding the evidentiary limitations contained in 20 C.F.R. § 725.414(a)(2) and (a)(3), "any record of a miner's hospitalization for a respiratory or pulmonary or related disease may be received into evidence." 20 C.F.R. § 725.414(a)(4) (2001).

| Exhibit No. | Beginning and Ending Dates of Hospitalization/ Treatment | Name of Hospital/Physician | Nature of Treatment |
|---|---|---|---|
| DX-14 | 02/26/08-12/23/10 | Pulmonary Associates of Morristown | Treatment Records |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| | | |
|---|---|---|
| DX-12 | Curriculum Vitae | Dr. Baker |
| DX-14 | Curriculum Vitae | Dr. Alexander |
| CX-02 | Curriculum Vitae | Dr. Alexander |
| CX-03 | Curriculum Vitae | Dr. Gallai |
| CX-04 | Curriculum Vitae | Dr. DePonte |
| CX-05 | Curriculum Vitae | Dr. Splan |

# CX-01

# Michael S. Alexander, M.D.

## Diagnostic Radiology and Nuclear Medicine

Board Certified, Diagnostic Radiology
Board Certified, Nuclear Medicine
Certified Pneumoconiosis B Reader

699 Perkins Road, SE
Valdese, NC 28690
Phone: 828-879-2180
Fax: 828-879-1240

| | |
|---|---|
| **Patient:** | **Joseph Fleming** |
| **SSN:** | **XXX-XX-0560** |
| **Exam:** | **PA Chest, 04/20/11** |
| **Interpretation:** | **09/25/11** |

RECEIVED
SEP 3 0 2011
WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS

### Pneumoconiosis Chest Film Interpretation

The film quality is 1 (two PA chest x-rays). The lungs demonstrate mild hyperinflation, with moderate emphysematous changes in the upper zones. There is some linear parenchymal scarring in the medial left upper zone. Small primarily round opacities are present bilaterally, consistent with pneumoconiosis, category p/p, 1/0. No areas of coalescence or large opacities are present. No chest wall pleural thickening or pleural calcifications are present. The costophrenic angles and diaphragms are clear. Mild atherosclerotic change is present in the aorta, otherwise the cardiomediastinal structures and distribution of the pulmonary vasculature are normal. The bones are intact.

**IMPRESSION:**
- **Coal Worker's Pneumoconiosis, category p/p, 1/0, bu, em.**

*Michael S Alexander, MD*

Michael S. Alexander, MD

MSA/em                                                                Ref. J. Wolfe

Roentgenographic Interpretation

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



OMB No. 1215-0090
Expires: 02-28-95

NOTE: This report is authorized by law. (30 U.S.C., 901 et. seq.) The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-ray | 1B. Miner's Social Security Number | 1C. Film Quality (if not Grade 1, Give Reason) |
|---|---|---|---|

1. Miner's Name (Print): JOSEPH FLEMING

1A. Date of X-ray: 04 / 20 / 11  MO. DAY YR.

1B. Miner's Social Security Number: 0 6 5 6 0

1C. Film Quality: 1 2 3 U/R

1D. Is Film Completely Negative?  YES ☐ Proceed to Section 5   NO ☒ Complete Section 2A

2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?  YES ☒ Complete 2B and 2C   NO ☐ Proceed to Section 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY / SECONDARY: p/p q/p r/p, p/q q/q r/q, p/r q/r r/r

b. ZONES

c. PROFUSION: 0/- 0/0 0/1, 1/0 1/1 1/2, 2/1 2/2 2/3, 3/2 3/3 3/+

**2C. LARGE OPACITIES**
SIZE: ☒ A B C  Proceed to Section 3

3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?  YES ☐ Complete 3B, 3C and 3D   NO ☒ Proceed to Section 4

3B. PLEURAL THICKENING
a. Diaphragm (check)   SITE: O R L
b. Costophrenic Angle   SITE: O R L

3C. PLEURAL THICKENING ...Chest Wall

3D. PLEURAL CALCIFICATION
a. Diaphragm ..........
b. Wall ..........
c. Other Sites ..........

4A. ANY OTHER ABNORMALITIES?  YES ☒ Complete 4B and 4C   NO ☐ Proceed to Section 5

4B. OTHER SYMBOLS (OBLIGATORY)

4C. OTHER COMMENTS: *Moderate emphysematous changes in both upper zones. mild aortic psvd*

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?  Yes ☒   Proceed to Section 5

5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION: *Dr DAHHAN – US DOL X-ray.*

Was film taken by a registered radiographer/radiographic technologist? ☐ Yes   ☐ No

5B. Physician Interpreting Film (Print Name): *MICHAEL S ALEXANDER MD*
Are you Board-certified Radiologist? ☒ Yes ☐ No   Board-eligible radiologist? ☐ Yes ☐ No   B-reader? ☒ Yes ☐ No

5C. I certify that this film has been interpreted in accordance with the instructions provided on Form CM-964a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that any signature stands to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE: *Michael S Alexander MD*   DATE OF READING: 09/25/11 (Mo., Day, Yr.)

A098

# CX-02


# Michael S. Alexander, MD

## Curriculum Vitae

### Biographical Data:

| | |
|---|---|
| **Name:** | Michael Shepard Alexander, MD |
| **Date of Birth:** | July 27, 1952 |
| **Birthplace:** | New York, New York |
| **Citizenship:** | USA |
| **Marital Status:** | Married, one child |
| **Address:** | 699 Perkins Road, SE<br>Valdese, NC 28690-9409 |
| **Telephones:** | Home: 828-879-2880   Office: 828-879-1140   Fax: 828-879-1240 |

### Educational Background:

| | | |
|---|---|---|
| Secondary School: | Sep '66 – Jun '70 | The Taft School<br>Watertown, CT |
| College: | Sep '70 – May '74 | Columbia College<br>New York, NY |
| Medical School: | Feb '75 – Jun '78 | New York Medical College<br>Valhalla, NY |
| Residency: | Jul '78 – Jun '82 | Diagnostic Radiology<br>University of California, Irvine<br>Orange, CA |
| Fellowship: | Oct '83 – Sep '84 | Nuclear Medicine, Computed Tomography & Ultrasound<br>University of North Carolina<br>Chapel Hill, NC |
| Fellowship: | Jul '87 – Jul '88 | Nuclear Medicine and Radiation Health Sciences<br>The Johns Hopkins Hospital<br>Baltimore, MD |
| Fellowship: | Jun '87 – Jun '88 | Environmental Health Sciences<br>The Johns Hopkins University<br>School of Hygiene and Public Health<br>Baltimore, MD |

Case: 15-3999   Document: 15   Filed: 02/24/2016   Page: 104

Page 2
Michael S. Alexander, MD

**Degrees, Diplomas, Certifications:**

1974    Bachelor of Arts, Columbia College

1978    Doctor of Medicine, New York Medical College

1979    National Board of Medical Examiners

1982    Board Certification:  Diagnostic Radiology
        The American Board of Radiology

1986    Board Certification:  Special Competence in Nuclear Radiology
        The American Board of Radiology

1988    Board Certification:  Nuclear Medicine, Diagnostic and Therapeutic
        The American Board of Nuclear Medicine

1988    Certificate:  Post Doctoral Fellowship in Environmental Health Sciences
        The Johns Hopkins University, School of Hygiene and Public Health

1992    Certificate:  Pneumoconiosis B Reader
        U. S. Department of Health and Human Services
        Centers for Disease Control and Prevention
        National Institute for Occupational Safety and Health
        Appalachian Laboratory for Occupational Safety and Health
        (by Examination on 12/06/91, in Morgantown, WV)

1996    Certificate:  Pneumoconiosis B Reader
        U.S. Department of Health and Human Services
        Centers for Disease Control and Prevention
        National Institute for Occupational Safety and Health
        Appalachian Laboratory for Occupational Safety and Health
        (by Recertification Examination on 11/06/95, in Morgantown, WV)

2000    Certificate:  Pneumoconiosis B Reader
        U.S. Department of Health and Human Services
        Centers for Disease Control and Prevention
        National Institute for Occupational Safety and Health
        Appalachian Laboratory for Occupational Safety and Health
        (by Recertification Examination on 11/08/99, in Morgantown, WV)

2004    Certificate:  Pneumoconiosis B Reader
        U.S. Department of Health and Human Services
        Centers for Disease Control and Prevention
        National Institute for Occupational Safety and Health
        Appalachian Laboratory for Occupational Safety and Health
        (by Recertification Examination on 11/10/03, in Morgantown, WV)

2008    Certificate:  Pneumoconiosis B Reader
        U.S. Department of Health and Human Services
        Centers for Disease Control and Prevention
        National Institute for Occupational Safety and Health
        Appalachian Laboratory for Occupational Safety and Health
        (by Recertification Examination on 11/05/07, in Morgantown, WV)

2012          Certificate: Pneumoconiosis B Reader
              U.S. Department of Health and Human Services
              Centers for Disease Control and Prevention
              National Institute for Occupational Safety and Health
              Appalachian Laboratory for Occupational Safety and Health
              (by Recertification Examination on 11/07/11, in Morgantown, WV)

**Medical Licensure:**

| California | No. G42013 | Issued 06/23/80 |
| North Carolina | No. 28453 | Issued 10/20/84 |
| Maryland | No. D35603 | Issued 08/11/87 |
| West Virginia | No. 16456 | Issued 05/06/91 |
| Virginia | No. 0101051899 | Issued 12/30/94 |

**Professional Background:**

July 2001 – Present:        Independent Contractor

June '99 – June 2001        Mecklenburg Radiology Associates, P. A.
                            Presbyterian Hospitals and Imaging Centers
                            PO Box 221249
                            Charlotte, NC 28222-1249

March '95 – May '99         Independent Contractor

July '91 – February '95     Staff Radiologist
                            Bluefield Regional Medical Center          Princeton Community Hospital
                            500 Cherry Street            and           Twelfth Street
                            Bluefield, WV 24701                        Princeton, WV 24740

July '90 – June '91         Staff Radiologist
                            Piedmont Medical Imaging, PC
                            Grace Hospital
                            Morganton, NC 28655

October '88 – June '90      Assistant Professor of Radiology and Nuclear Medicine
                            The University of Maryland Medical System
                            Department of Diagnostic Radiology
                            22 South Greene Street
                            Baltimore, MD 21201

July '87 – August '88       Fellowship in Nuclear Medicine, Radiation Health Sciences, &
                            Environmental Health Sciences
                            The Johns Hopkins Hospital & School of Hygiene and Public Health
                            600 N. Wolfe Street
                            Baltimore, MD 21205

| | |
|---|---|
| November '86 – May '87 | Diagnostic Radiologist<br>Chatham County Hospital<br>Siler City, NC |
| January – October '86 | Diagnostic Radiologist<br>Kron Medical Associates<br>Chapel Hill, NC |
| September – December '85 | Staff Radiologist & Lecturer in Nuclear Medicine<br>Uppsala University Medical College<br>Department of Diagnostic Radiology<br>Akademiska Hospital<br>S-751 85 Uppsala, Sweden |

Jan '85 – May '85    Nuclear Medicine Physician Consultant
Cardiovascular Nuclear Medicine – Clinical Laboratory

| | |
|---|---|
| Employer: | International Atomic Energy Agency<br>United Nations<br>Vienna, Austria |
| Location: | Liaquat Medical College<br>Pakistan Atomic Energy Agency Commission<br>Jamshoro, Pakistan |

| | |
|---|---|
| Oct '84 – Dec '84 | Diagnostic Radiologist – Kron Medical Associates<br>Chapel Hill, NC |
| Oct '83 – Sep '84 | Fellowship in Nuclear Medicine, Computed Tomography & Ultrasound<br>The University of North Carolina<br>Chapel Hill, NC |
| Sep '73 – May '74 | Research Assistant<br>Immunology and Tissue Transplantation - Department of Surgery<br>St. Luke's Hospital<br>New York, NY |

## Publications:

| | |
|---|---|
| Clinical Nuclear Medicine 1992 Sept;<br>17(9): 736-7 | "Normal Uptake in a Gravid Uterus on Tc-99m<br>DTPA Imaging" by D. Griffith, M.S. Alexander,<br>R. Gelman & E. Kotlyarov. |
| Gastrointestinal Radiology 1991 Summer;<br>16(3): 201-4 | "The Use of Radionuclide Imaging in the<br>Evaluation of Suspected Biliary Damage During<br>Laparoscopic Cholecystectomy" by R. Gelman,<br>M.S. Alexander, K. A. Zuker & R. W. Bailey. |

| | |
|---|---|
| Clinical Nuclear Medicine 1991 July; 16(7): 517-9 | "Visualization of a Recanalized Umbilical Vein on Hepatobiliary Imaging with CT Correlation" by M. S. Alexander, R. A. Blake & R. Gelman. |
| J Nuclear Medicine Technology 1991 June: 19(2): 87-9 | "Extraosseous Metastases Masquerading as Urine Contamination on Bone Scans" by R. Gelman, M.S. Alexander, & R. T. P. Sorandes. |

**Presentations:**

| | |
|---|---|
| The National Coalition of Black Lung and Respiratory Disease Clinics Annual Conference Gatlinburg, TN October 1-4, 2002 | "The Chest X-ray Appearance of Coal Worker's Pneumoconiosis: Understanding the ILO Form Pictorially" |
| Washington and Lee University School of Law - Legal Practice Clinic Lexington, VA November 9, 1999 | "The Radiographic Aspects of Pneumoconiosis; Case Examples Illustrating the ILO Classification System" |
| Washington and Lee University School of Law - Legal Practice Clinic Lexington, VA November 3, 1997 | "The Radiographic Aspects of Pneumoconiosis" |
| III International Cardiology Conference Hyderabad, Pakistan February 16-18, 1985 | Lecture series & clinical workshop in Cardiovascular Nuclear Medicine |
| Association of University Radiologists Annual Meeting Newport Beach, California May 7-10, 1984 | "Assessment of Recoverable Renal Function: Comparison of Two Radiopharmaceuticals" by J. R. Perry, M. S. Alexander, E. V. Stabb and W. H. McCartney, University of North Carolina, Chapel Hill, NC |

**Hospital and Professional Appointments:**

| | |
|---|---|
| Chairman, Radiation Safety Committee Princeton Community Hospital | 1993, 1994 |
| Alternate Delegate, West Virginia State Medical Association Mercer County Medical Society | 1993, 1994 |
| Council to the West Virginia State Medical Association Mercer County Medical Society | 1994 |



CDC

## U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
### Public Health Service

Centers for Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

## Michael Shepard Alexander, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from 2/1/2012 until 1/31/2015

_Michael W. Edelman, MD_
DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, MORGANTOWN

# CX-03

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| | | | |
|---|---|---|---|
| Name: Fleming, Joseph | | MR Number: 194022 | |
| DOB: 09/11/1945 | | Admit Date: 01/16/2012 | |
| Account Number: 11039168 | | Room: | |
| Pt Status: OA | | Hosp Svc Code: | |
| MD ID: 62569 | | Document ID: 2138620 | |

**Black Lung Evaluation**

**ADMITTING PHYSICIAN:**

**DATE OF SERVICE:** 01/16/2012

His personal physician is Dr. Ernesto Mejia, Morristown, Tennessee 37521, phone is #423/587-0741.

Mr. Fleming's last coal mine employment was with Aubery Coal. He worked as a continuous miner from 1988 to 1991. Prior to that, he worked for Rampier Brothers Coal, he ran a shuttle car and was a roof bolter from 1985 to 1988. He worked at Kinser Brothers Coal, he ran the scoop and also a roof bolter. Total coal mine employment was 18 years.

He had no other employment with toxic inhalant hazard exposure.

**FAMILY HISTORY:** There is no family history of high blood pressure, heart disease, tuberculosis, diabetes, cancer, asthma, allergies, emphysema or stroke.

**PERSONAL HISTORY:** This patient has had a chronic a.m. cough productive of two to three tablespoons of sputum daily most days of the week, all months of the year for two years. He has a history of arthritis.

He was hospitalized in 2011 for exacerbation of COPD, in 2005 for pneumothorax where he had a chest tube and then a thoracoscopic resection in 1988 for pneumonia, in 1991 for back surgery where he had a laminectomy.

**SOCIAL HISTORY:** The patient smoked from age 25 to 35 a half a pack a day for a total of 10 pack years. He then restarted smoking at age 45 to 60 for 15 years, a half a pack a day for seven and a half pack years for a total of 12 and a half pack years. He does not drink.

**PRESENT ILLNESS:** Sputum, cough as above. He has had progressive dyspnea for the past 10 years, currently he can walk 30 or 40 feet on the level or one half flight of stairs. He occasionally has ankle edema. There is no history of hemoptysis, chest pain, orthopnea or paroxysmal nocturnal dyspnea.

**MEDICATIONS:** Prednisone 5 mg every other day, albuterol 2.5 mg three times a day, Advair 250/50 two times a day, Spiriva daily and oxygen during the day as needed and all the time at night.

On examination, he is 69.5 inches tall, he weighs 170 pounds, pulse rate is 78, O2 sat is 89-93 on room

**Black Lung Evaluation**
**Page 1 of 3**

NCH FLEMING, JOSEPH, Nee (11103916H CHH 1/14/2012 Speciality Clinic Notes 1/14/2012)

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| | |
|---|---|
| Name: Fleming, Joseph | MR Number: 194028 |
| DOB: 09/11/1945 | Admit Date: 01/16/2012 |
| Account Number: 11038166 | Room: |
| Pt. Status: OA | Hosp Svc Code: |
| MD ID: 62558 | Document ID: 2138820 |

air after resting, blood pressure is 121/78 right arm and 126/81 left arm. He is well-nourished, well-developed, looks his stated age. Alert, oriented x3 in no acute distress. His affect is appropriate. He is cooperative.
EXTREMITIES: There is trace edema.
CHEST: There is decreased expansion, hyper-resonant to percussion. Very decreased breath sounds. No wheezes, rhonchi or rales.
HEART: PMI is not obtainable. S1 is normal. S2 is normal. There is no S3, 4, murmurs or rubs. Nose. Membranes are moist. There is no obstruction.
THROAT: No erythema or exudates.
NECK: JVD is flat. There is no lymphadenopathy.
MUSCULOSKELETAL: There is a surgical scar in the lumbar region.
ABDOMEN: is flat. Bowel sounds are present. There is no hepatosplenomegaly, guarding, rigidity or tenderness.

All diagnostic testing was done January 16, 2012. The chest x-ray interpreted by Dr. Kathleen DeFonte, a board certified radiologist and a NIOSH certified B reader reveals small opacities, middle, lower lung fields with a 1/0 perfusion consistent with clinical pneumoconiosis. In addition, there is definite emphysema and and calcified nonpneumocytic opacities.

PULMONARY FUNCTION: The forced vital capacity is 2.08, 50% of predicted. The forced expiratory volume in one second is 0.70, 21% of predicted. The ratio is 34%. There is a 2% improvement in the FVC and an 8% improvement in the FEV-1 with bronchodilators. The lung volumes show an increased total lung capacity of 117% and an increased residual volume of 193%. The diffusing capacity is 53% compatible with loss of alveolar capillary lung units as seen in emphysema, interstitial lung disease and/or pulmonary vascular disease.

My interpretation is very severe obstructive lung disease without bronchodilator response. The MVV is 35 or 27% of predicted, a very decreased MVV. There is evidence of hyperinflation with a total lung capacity of 117 and air trapping with a residual volume of 193 and a decreased diffusing capacity as described.

Arterial blood gases reveal a pH of 7.41, a PCO2 of 39.9, and a PO2 of 57.4. My interpretation is essentially normal acid base balance, severe hypoxia. The a-a gradient is increased for age.

Electrocardiogram is sinus rhythm and borderline right axis deviation.

CARDIOPULMONARY DIAGNOSIS:

1. Clinical pneumoconiosis per NIOSH B-reader with small opacities all lung zones with 1/0 perfusion and definite emphysema.
2. Legal pneumoconiosis with severe obstructive lung disease as evidenced by FVC of 2.08 and

**Black Lung Evaluation**
**Page 2 of 3**

A108

MCH FLEMING, JOSEPH, Tom (11659169 CDG 1/16/2012 Specialty Clinic Notes 1/16/2012

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| Name: Fleming, Joseph | MR Number: 194028 |
|---|---|
| DOB: 09/11/1945 | Admit Date: 01/16/2012 |
| Account Number: 11659169 | Room: |
| Pt. Status: OA | Hosp Svc. Code: |
| MD ID: 62559 | Document ID: 2138820 |

FEV-1 of 0.70, 21% of predicted and a ratio of 34%. In addition, the MVV is reduced to 27% of predicted. There is emphysema by chest xray. Chronic bronchitis with a classic a.m. cough and severe hypoxia with a PO2 of 57 on room air.

**ETIOLOGY OF CARDIOPULMONARY DIAGNOSIS:**

1. The clinical pneumoconiosis is secondary to coal dust exposure. The patient has 18 years of high concentration of coal dust exposure with no other occupational exposure.

2. Legal pneumoconiosis with severe obstructive lung disease, chronic bronchitis and emphysema; is also secondary to coal dust exposure. The patient again has 18 years of high concentration of coal dust that remains significant enough to cause his clinical pneumoconiosis. Although it is impossible to apportion the exact underlying contribution of the smoking and the coal dust exposure to his legal pneumoconiosis the 12 and a half pack years in my opinion did not play any substantial part of his lung disease.

The patient is completely impaired from his prior occupation. He does not have the pulmonary capacity to perform it. No referrals were made.


James B Gallal, M.D.


cc: James B Gallal, M.D.

D: 01/19/2012 09:07
T: 01/19/2012 16:11
JBG/sw


Signed by JAMES B GALLAI, MD on 20-Jan-2012 18:32:27 -08:00

**Slash Lung Evaluation**
**Page 3 of 3**

nohlejg 1/31/2012 18:15:14 AM -08:00 Page 3 of 3

A109

# PATIENT REPORT

ARTERIAL BLOOD GAS REPORT
NORTON COMMUNITY HOSPITAL
100 15TH STREET NW
NORTON, VIRGINIA 24273

| Last Name: | | Patient ID | Date | Time |
|---|---|---|---|---|
| **FLEMING** | | **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** | **1/16/12** | **13:19** |

| First Name: | | Sex: | Date of Birth: |
|---|---|---|---|
| **JOSEPH** | | **Male** | **3/11/45** |

| Location: | Physician Name: |
|---|---|
| OF | GALLAS |

| Date Drawn: | Time Drawn: | Type: | Operator ID |
|---|---|---|---|
| 1/16/12 | 13:15 | Blood | Debbie Dotson |

| Source: | Temp: | $F_iO_2$ | Flow | Mode: | Resp/# | CPAP | PEEP | Vt |
|---|---|---|---|---|---|---|---|---|
| Arterial | | 21.0 | | | | | | |

| Draw Site: | Allen's Test: | O2 Device | FG |
|---|---|---|---|
| RA | POS | NONE | |

**BLOOD GAS 37.0°C**

| Parameter | Value | Units | Reference Range |
|---|---|---|---|
| pH | 7.414 | | 7.350 – 7.450 |
| $pCO_2$ | 38.0 | mmHg | 35.0 – 45.0 |
| $pO_2$ | 57.4 ↓ | mmHg | 80.0 – 100.0 |
| B/P | | | |
| $HCO_3^-$ act | 25.0 | mmol/L | 22.0 – 26.0 |
| BEvt | 0.5 | mmol/L | -3.0 – 3.0 |
| $tCO_2$ | 26.2 | mmol/L | 24.0 – 30.0 |

**OXYGENATION PARAMETERS**

| Parameter | Value | Units | Reference Range |
|---|---|---|---|
| tHb | 18.8 | g/dL | 12.0 – 16.0 |
| $sO_2$ | 91.2 ↓ | % | 92.0 – 98.0 |
| $O_2$Hb | 89.8 ↓ | % | 94.0 – 97.0 |
| COHb | 1.7 ↑ | % | 0.5 – 1.5 |
| MetHb | 0.3 | % | 0.0 – 1.5 |
| HHb | 8.8 ↑ | % | 0.0 – 5.0 |

**BLOOD GAS**

| Parameter | Value | Units | Reference Range |
|---|---|---|---|
| pH(T) | | | |
| $pCO_2$(T) | | | |
| $pO_2$(T) | | | |

**OXYGEN STATUS**

| Parameter | Value | Units | Reference Range |
|---|---|---|---|
| ctO_2(a) | 20.2 | mL/dL | 15.0 – 23.0 |
| $pO_2$(A)(T) | | | |
| AaDO_2 | | | |
| a/A | | | |

**HISTORICAL DATA**

| Date | Time | pH | $pCO_2$ | $pO_2$ | Temp | $F_iO_2$ | Flow |
|---|---|---|---|---|---|---|---|
| 1/16/12 | 13:19 | 7.414 | 38.0 | 57.4 ↓ | | 21.0 | |

**LEGEND**
↑ Value above reference range.   ↑↑ Value above critical range.   — ↑↑ Above reporting range
↓ Value below reference range.   ↓↓ Value below critical range.   — ↓↓ Below reporting range

Signature _____



**Norton Community Hospital**
100 15th Street N.W.
Norton, VA 24273

Date: 01/16/12
Id: XXX-XX-0560
Name: FLEMING, JOSEPH
Physician:
Technician: Debra Dotson R.R.T.

Height(in): 69.5
Armspan(in): 0
Dyspnea Rest: Yes
Persistent: Yes
Cigarettes: Yes

Race: Caucasian
Weight(lb): 170
Dyspnea Exercise: Yes
Smoker: Yes
Cigars: No

Gender: Male
Age: 66   Birth Date: 09/11/45
Cough: Yes
How Long(ph/yrs): 20
Temp: 20

## PULMONARY FUNCTION ANALYSIS

### Spirometry   (BTPS)

| Spirometry | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 4.19 | 2.06 | 60 | 2.13 | 51 | 2 |
| FEV1 | Liters | 3.33 | 0.70 | 21 | 0.76 | 23 | 8 |
| FEV1/FVC | % | 79 | 34 | 43 | 35 | 45 | 2 |
| FEF25-75% | L/sec | 3.34 | 0.23 | 6 | 0.23 | 6 | 2 |
| FEF25% | L/sec | 7.57 | 0.46 | 6 | 0.57 | 8 | 19 |
| FEF50% | L/sec | 4.16 | 0.27 | 7 | 0.31 | 7 | 13 |
| FEF75% | L/sec | 1.46 | 0.24 | 16 | 0.23 | 16 | -4 |
| PEF | L/sec | 8.20 | 2.98 | 36 | 3.20 | 39 | 10 |
| MVV | L/min | 131 | 36 | 27 | 38 | 27 | 3 |

### Lung Volumes

| Lung Volumes | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| TLC | Liters | 6.46 | 7.56 | 117 | | | |
| VC | Liters | 4.19 | 2.87 | 69 | | | |
| IC | Liters | 3.01 | 1.20 | 40 | | | |
| FRC PL | Liters | 3.73 | 6.38 | 171 | | | |
| ERV | Liters | | 1.67 | | | | |
| RV | Liters | 2.44 | 4.71 | 193 | | | |
| RV/TLC | % | 39 | 62 | 156 | | | |
| Vtg | Liters | | 7.04 | | | | |
| Vtg f | BPM | | 45 | | | | |

### Diffusion

| Diffusing Capacity | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| DLCO | mL/mmHg/min | 21.2 | 11.3 | 53 | | | |
| DL Adj | mL/mmHg/min | 21.2 | 11.3 | 53 | | | |
| DLCO/VA | mL/mHg/min/L | 3.48 | 2.43 | 70 | | | |
| DL/VA Adj | mL/mHg/min/L | 3.99 | 2.43 | 62 | | | |
| VA | Liters | | 4.65 | | | | |

## Comments

Patient put forth good effort, cooperation and understanding . Pt. was given 4 puffs
albuterol inhaler then repeat study was performed.

**Norton Community Hospital**
*100 15th Street N.W.*
*Norton, VA 24273*

Date: 01/16/12
Id: XXX-XX-0560
Name: FLEMING, JOSEPH
Physician:
Technician: Debra Dotson R.R.T.



PRE____   POST____

Pre

Post

( ) = OUTSIDE 95% CONFIDENCE INTERVAL      Norm Set: Knudson (1983)        Version: IVS-0101-21-1A

### Norton Community Hospital
### 100 15th Street N.W.
### Norton, VA 24273
## SPIROMETRY REPORT

Name: FLEMING, JOSEPH
Gender: Male
Age: 65    Race: Caucasian
Height(in): 68.5    Weight(lb): 170
Diagnosis:

Id: XXX-XX-0000
Date: 01/16/12
Temp: 20    PBar: 711
Physician:
Technician: Debra Dotson R.R.T.



**Best Data**

| Spirometry | | Ref. | Pre. | % Ref. | Post | % Ref. | %Chg. |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 4.19 | 2.05 | 50 | 2.13 | 51 | 2 |
| FEV1 | Liters | 3.33 | 0.70 | 21 | 0.76 | 23 | 8 |
| FEV1/FVC | % | 79 | 34 | 43 | 36 | 46 | 6 |
| FEV3 | Liters | 3.85 | 1.30 | 34 | 1.34 | 35 | 3 |
| FEF25-75% | L/sec | 3.34 | 0.28 | 8 | 0.30 | 9 | 2 |
| PEF | L/sec | 8.29 | 2.89 | 35 | 3.20 | 38 | 10 |

**All Trials**

| Spirometry | Pre. | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| FVC | Liters | 1.98 | 2.05 | 2.05 | 2.05 | | | | |
| FEV1 | Liters | 0.66 | 0.68 | 0.70 | 0.67 | | | | |
| FEV1/FVC | % | 34 | 35 | 34 | 34 | | | | |
| FEV3 | Liters | 1.22 | 1.28 | 1.38 | 1.27 | | | | |
| FEF25-75% | L/sec | 0.27 | 0.28 | 0.28 | 0.29 | | | | |
| PEF | L/sec | 2.89 | 2.98 | 2.89 | 2.91 | | | | |

| Spirometry | Post. | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| FVC | Liters | 1.98 | 2.04 | 2.13 | 2.13 | | | | |
| FEV1 | Liters | 0.60 | 0.68 | 0.76 | 0.74 | | | | |
| FEV1/FVC | % | 30 | 33 | 36 | 36 | | | | |
| FEV3 | Liters | 1.23 | 1.28 | 1.34 | 1.33 | | | | |
| FEF25-75% | L/sec | 0.30 | 0.31 | 0.30 | 0.31 | | | | |
| PEF | L/sec | 2.79 | 3.20 | 3.19 | 2.98 | | | | |

### Norton Community Hospital
### 100 15th Street N.W.
### Norton, VA 24273
## SPIROMETRY REPORT

Name: FLEMING, JOSEPH
Gender: Male
Age: 66
Height(in): 69.5    Weight(lb): 170
Diagnosis:

Id: XXX-XX-6599
Date: 01/16/12
Temp: 20        PBar: 711
Physician:
Technician: Debra Dotson R.R.T.

Race: Caucasian



# Norton Community Hospital
100 15th Street N.W.
Norton, VA 24273

**FLEMING, JOSEPH**
**SSN: XXX-XX-0560**
Date of Test 01/16/12
Physician:
Technician: Debra Dotson, R.R.T.

DOB: 09/11/45:                                    Age: 66
Standing Height without shoes (in): 69.6(cm): 177
Weight(lbs): 170   (kg): 77.3
Gender: Male    Race: Caucasian

This Form was designed to meet the documentation requirements for Social Security Disability Determination.
Spirometry Reference Knudson (1983)                    Tabular Data and Spirometric Tracing are reported in BTPS conditions.

|       |        | Ref:  | Pre-Meas. | Pre-% Ref: | Post-Meas. | Post-% Ref | Post-% Chg. |
|-------|--------|-------|-----------|------------|------------|------------|-------------|
| FVC   | Liters | 4.19  | 2.09      | 50         | 2.13       | 51         | 2           |
| FEV1  | Liters | 3.33  | 0.76      | 21         | 0.78       | 23         | 5           |
| FEV1/FVC% |    | 79    | 36        | 43         | 36         | 45         | 0           |
| FET100% | Sec. |       | 9.78      |            | 9.89       |            | 1           |



**Volume Scale 10 mm per Liter.**
Time base is 20 mm per second.    The Marked FEV 1 was calculated using the "Backward Extrapolation to Time Zero" Method.
Patient put forth good effort, cooperation  and understanding .  Pt was given 4 puffs albuterol inhaler then repeat study was
performed.

Pulmonary Function Testing was performed using  SensorMedics Vmax System.
Device Type: Mass Flow Sensor with digital Integration of Flow to Volume.

**Calibration Data: (See Calibration Tracing Attached)**
Calibration Date: 01/16/12
Cal Syringe Reference Volume  3.00
Calibration Results: 3.00

Software Version: V6-0101-21-1A

**Norton Community Hospital**
100 15th Street N.W.

━━━━━━━━━ **Calibration Report** ━━━━━━━━━

Flow Cal Date: 01/19/12                    Technician: Debra Dotson R.R.T.    Filter: 711

**References:**      — 1 —      — 2 —      — 3 —      — 4 —      Mean (2.91 - 3.09)
                      3.00        2.99        3.08        3.00        3.04        3.03



**Volume**

**Time**

Mass Flow Sensor Flow Calibration
☐ 3 liters in 6 seconds
☐ 3 liters in 3 seconds
☐ 3 liters per second

**Pulmonary Function Testing performed on a SensorMedics Vmax System.**

A116

Roentgenographic Interpretation

**U.S. Department of Labor**

Joseph Fleming

Bilateral
regular overlay

Kathleen A. DePonte, MD

1-19-12





# CURRICULUM VITAE

**James S. Gallai, M.D.**
2441 E 2860ᵗʰ Road
Marseilles, Illinois 61341
Home Phone Number: (815)357-8030
Business Phone Number: (708)220-7273
E-Mail: jgallai6@gmail.com

## PERSONAL HISTORY:

Birthplace:        Chicago, Illinois
Citizenship:       U.S.A.

## EDUCATIONAL HISTORY:

1970 – 1974        Chicago Medical School
                   Degree: M.D.

1968 – 1970        University of Illinois Chicago
                   Degree: B.A. Merit Honor/Psychology

1967 – 1968        Loyola University, Rome, Italy

1966 – 1967        Loyola University, Chicago

## POSTGRADUATE TRAINING:

1974 – 1975        Internship in Straight Medicine
                   Hines V.A. Hospital
                   Program Director: A. Littman, M.D.

1975 – 1977        Residency in Internal Medicine
                   Michael Reese Hospital
                   Program Director: L. Sherwood, M.D.

1977 – 1979        Fellowship in Pulmonary Medicine
                   Hines V.A. Hospital
                   Program Director: John Sharp, M.D.

1993               Advanced Curriculum/Health Care Exec. Physicians
                   Northwestern University Kellogg Graduate School
                   Of Business

## BOARD CERTIFICATIONS:

1989 – 1999        Critical Care Medicine (Board eligibility continues)
1988               Pulmonary Disease
1979               Internal Medicine
2/2010             ACLS

James S. Gellai, M.D./Curriculum Vitae
Page 2

TEACHING POSITIONS:

| | |
|---|---|
| 1990 – Present | Clinical Assistant Professor of Medicine<br>University of Illinois Chicago<br>(non-compensated position) |
| 1991 – 1994 | Intensive Care, Pulmonary Disease<br>Teaching/Attending<br>Ravenswood Hospital<br>(non-compensated position) |
| 1989 – 1993 | Section Chief Pulmonary Disease<br>Ravenswood Hospital<br>(non-compensated position) |

LOCUMS TENEMS EXPERIENCE:

| | |
|---|---|
| 10/10 – 11/10 | VAMC – Fargo<br>Fargo, North Dakota<br>Pulmonary Medicine |
| 03/10 – 04/10 | Meritcare<br>Fargo, North Dakota<br>Pulmonary Medicine |
| 02/10 – 02/10 | Passavant Hospital<br>Jacksonville, Illinois<br>Internal Medicine, including Pulmonary/Crit Care |
| 12/09 – 01/10 | St. Mary's Hospital and<br>Riverside Hospital, Kankakee, Illinois<br>Pulmonary/Critical Care Medicine |
| 11/09 – 12/09 | Illini Hospital, Silvis, Illinois<br>Pulmonary/Critical Care Medicine |
| 07/09 – 08/09 | Marshfield Clinic/Weston Center<br>Pulmonary/Critical Care Medicine |
| 11/08 – Current | Rockford Memorial Hospital,<br>Rockford Health Physicians<br>Pulmonary Medicine |
| 12/05 – 06/06 | Preves Clinic, Green Bay, Wisconsin<br>Pulmonary Medicine |

PROFESSIONAL EXPERIENCE:

| | |
|---|---|
| 2006 – Current | Private Practice, Morris, Illinois<br>Pulmonary Medicine |

James B. Gallai, M.D./Curriculum Vitae
Page 3

| | |
|---|---|
| 1997 – 2005 | Suburban Cook County Tuberculosis Sanitarium District Executive Vice President of Field Operations |
| 2001 – 2003 | Private Practice, Morris, Illinois Internal Medicine and Pulmonary Medicine |
| 1997 – 2000 | Employed Physician, Morris Hospital Internal Medicine and Pulmonary Medicine |
| 1981 – 1997 | Suburban Cook County Tuberculosis Sanitarium District Clinical Director |
| 1979 – 1997 | Private Practice, Chicago, Illinois Pulmonary Medicine |
| 6/79 – 9/79 | Chicago Park District Acting Medical Director, Responsible for employee health, Water safety,etc. |

APPOINTMENTS:

| | |
|---|---|
| 1981 – 1987 | Belmont Hospital Medical Director/Respiratory Therapy Unit |
| 1984 – 1986 | Ravenswood Hospital Acting Chairman/Department of Medicine |
| 1985 – 1993 | Ravenswood Hospital Medical Director/Intensive Care Unit |
| 1984 – 1986 | Ravenswood Hospital/Acting Program Director Internal Medicine Residency |
| 1987 – 1994 | Ravenswood Hospital Program Director/Internal Medicine Residency |
| 1987 – 1994 | Ravenswood Hospital Chairman/Department of Medicine |
| 1990 – 1994 | President, Livezey Society Membership of area Medical Chairmen & Program Directors |
| 1999 – 2005 | Tuberculosis Research Consortium |

MEMBERSHIPS:

American Thoracic Society
European Respiratory Society

James B. Gallat, M.D./Curriculum Vitae
Page 4

**Hospital Appointments**

| | |
|---|---|
| 10/10 – Current | VAMC Fargo, Fargo, North Dakota |
| 03/10 – Current | Meritcare Hospital, Fargo, North Dakota |
| 02/10 – Current | Passevant Hospital, Jacksonville, Illinois |
| 12/09 – 01/10 | Provena St. Mary's Hospital, Kankakee, Illinois |
| 12/09 – 01/10 | Riverside Medical Center, Kankakee, Illinois |
| 11/09 – Current | Illini Hospital, Silvis, Illinois |
| 07/09 – Current | St Clares Hospital, Weston, Wisconsin |
| 11/08 – 12/10 | Rockford Memorial Hospital, Rockford, Illinois |
| 2008 – Current | Morris Hospital, Morris, Illinois |
| 2005 – 2008 | St. Vincent Hospital, Green Bay, Wisconsin<br>St. Mary Hospital, Green Bay, Wisconsin |
| 1997 – 2004 | Morris Hospital, Morris, Illinois |

**LICENSURE:**    Illinois No. 36-51227
Wisconsin No. 48835-020
North Dakota No. 11494

**SELECTED PUBLICATIONS:**

- "The effect of Theophylline on the work of breathing on the lung in severe COPD". J.W. Janna, J.R. Saver, J.V. Selena, J.B. Gallat, S S. Drug and J.T. Sharp, American Review of Respiratory Disease, April 1980
- "Tuberculosis, Tuberculin Reactivity and Delayed Cutaneous Hypersensitivity in Nursing Home Residents", Morton G. Crocker, Ellen G. Smith, James B. Gallat, Margaret Ilsenman and Konrad E. Nelson. Journal of Gerontology: Medical Sciences, 1988, Vol., No. 4, M97-100
- "TB – An Overview of Treatment". James B. Gallat, M.D. Chicago Medicine, 1994, Vol 97 No. 4
- "A Prospective, Randomized, Double-Blind Study of the Tolerability of Rifapentine 600, 900 and 1200 mg Plus Isoniazid in the Continuation Phase of Tuberculosis Treatment". Constance Padhucki, M.D. and James B. Gallat, M.D., American Journal of Respiratory and Critical Care Medicine, June 1, 2002

# CX-04

## CURRICULUM VITAE

| | |
|---|---|
| **NAME:** | Kathleen Ann DePonte, M.D. |
| **SOCIAL SECURITY NUMBER:** | 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 |

RECEIVED
FEB 2 3 2004
WOLFE WILLIAMS & RUTHERFORD

**ADDRESS:**

| | |
|---|---|
| Residence: | P.O. Box 408 |
| | Norton, Virginia 24273 |
| | (276) 679-7708 |
| Business: | P. O. Box 408 |
| | Norton, Virginia 24273 |
| | (276) 679-2729 |

**PERSONAL INFORMATION:**

| | |
|---|---|
| Birthplace: | Methuen, MA |
| Birth Date: | February 04, 1954 |
| Citizenship: | USA |
| Marital Status: | Married |
| Spouse's Name: | William Carl Witt, Jr. |

**EDUCATION:**

| | |
|---|---|
| University of Virginia | 1972-1976 |
| Charlottesville, VA | |
| B. A. Biology | |
| Hahnemann Medical College | 1976-1980 |
| and Hospital | |
| Philadelphia, PA | |
| M.D. | |

**POST DOCTORAL TRAINING:**

| | | |
|---|---|---|
| Intern: | Internal Medicine | 1980-1981 |
| | North Carolina Baptist Hospital | |
| | Winston-Salem, N.C. | |
| Resident: | Diagnostic Radiology | 1981-1985 |
| | North Carolina Baptist Hospital | |
| | Winston-Salem, N.C. | |

CURRICULUM VITAE
Kathleen Ann DePonte, M.D.
Page 2

| | | |
|---|---|---|
| **PROFESSIONAL LICENSURE:** | North Carolina | #25573 |
| | Virginia | #35177 |
| | Kentucky | #28258 |
| | Tennessee | #35510 |

**SPECIALITY CERTIFICATION:**   American Board of Radiology   June 1984
Diagnostic Radiology

**EMPLOYMENT:**   Private Practice   1985-Present
Diagnostic Imaging Associates, P.C.

**PROFESSIONAL MEMBERSHIPS:**

American College of
   Radiology   1985 to present

Radiological Society of
   North America   1982 to present

**HONORS AND AWARDS:**   Magna Cum Laude   1976
University of Virginia

Distinction in Medicine   1980
Hahnemann Medical College
   and Hospital

AOA Honor Medical Society
Phi Beta Kappa
Echols Scholar
Miller Biology Scholar
Intermediate Honors

**PUBLICATIONS:**

DePonte KA, Sumner TE. Case of the Month: Splenic Candidiasis.
JUM 1983; 2:R52 & R55.

Gelfand DW, Sowers JC, DePonte KA, et al. Anaphylactic and
allergic reactions associated with double-contrast examinations: Is
glucagon or barium suspension the allergen. AJR 1985; 144:405.

CURRICULUM VITAE
Kathleen Ann DePonte, M.D.
Page 3

Wilson WG, DePonte KA, McIlhenny, et al. Arachnoid cysts in a brother and sister. J Medical Genetics 1988, Vol. 25, No. 10; 714-715.

PRESENTATIONS:

Gelfand DW, Sowers JC, DePonte KA, et al. Anaphylactic and allergic reactions associated with double-contrast examinations: Is glucagon or barium suspension the allergen. Presented at the Society of Gastrointestinal Radiologists meeting, October 1984.



## U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
### Public Health Service

Centers For Disease Control And Prevention
National Institute For Occupational Safety And Health
Appalachian Laboratory For Occupational Safety And Health

THIS IS TO CERTIFY THAT

# Kathleen Ann DePonte, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

## B READER

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

THIS CERTIFICATION WILL REMAIN IN EFFECT 07/01/2006 UNTIL 06/30/2009.

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES ALOSH / NIOSH

CDC



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
Public Health Service

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

**Kathleen Ann Deponte, M.D.**

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

B READER

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from 7/1/2008 until 6/30/2013

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

# CX-05

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| Name: Fleming, Joseph | MR Number: 194029 |
|---|---|
| DOB: 09/11/1945 | Admit Date: 03/28/2012 |
| Account Number: 11055625 | Room: |
| Pt. Status: OA | Hosp Svc. Code: |
| MD ID: 63029 | Document ID: 2196898 |

**Black Lung Evaluation**

ADMITTING PHYSICIAN:

DATE OF SERVICE: 03/28/2012

The patient is a 66-year-old white miner, who comes in for a black lung evaluation. He worked in the mines from 1973 until 1992 when he came out as a result of health problems. He has been short of breath for approximately 20 years. He has been on oxygen for the past seven years. He admits to a chronic a.m. cough with wheezing and sputum production producing two to four teaspoons of yellow cloudy sputum daily. He has occasional episodes of nonanginal type chest pain. He gets short of breath walking approximately 50 feet. He avoids stairs.

WORK HISTORY: Is as follows; He began working in the mines in 1973 as mentioned. He came out in 1992. He worked for Avery Mining in Thornton, Kentucky. He came out as a result of medical problems. He also worked underground in various labor contexts, running a continuous miner, scoop, a roof bolter, etc. He had a great deal of exposure to aerosolized coal dust and rock dust over the years. Did not wear any form of protective masks over his upper airway. He hauled and shoveled coal, carrying tools, dragging lines on his hands and knees in the cave, climbing ladders, carrying loads of coal of 25-50 pounds, carrying tools at about 25 pounds.

SMOKING HISTORY: Is as follows; He began smoking cigarettes at the age of 21 in 1966. He stopped in 2005. He smoked normally about a half pack of cigarettes a day.

MEDICATIONS OF USE: Include;
Advair 250/50 one puff twice a day.
Albuterol HFA two puffs four times a day as needed.
Spiriva 18 mcg daily.
Lasix 40 mg every other day.
Prednisone 5 mg every other day.
02 at 2 liters a minute.

His physician is Dr. Mejia in Morristown, Tennessee.

He has no allergies either seasonal or to drugs.

He does not use drugs or does not use alcohol excessively.

SYSTEM REVIEW: His weight has been stable over the past several months. He has had no fevers. HEENT: No problems with his vision, visual field cuts, tinnitus, difficulty with pain in his face or post nasal drip.

**Black Lung Evaluation**
**Page 1 of 4**

A131

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| Name: Fleming, Joseph | MR Number: 194029 |
|---|---|
| DOB: 09/11/1945 | Admit Date: 03/28/2012 |
| Account Number: 11055625 | Room: |
| Pt. Status: OA | Hosp Svc. Code: |
| MD ID: 63029 | Document ID: 2196896 |

RESPIRATORY: Has been mentioned above.
CARDIOVASCULAR: No chest pain, orthopnea, paroxysmal nocturnal dyspnea but some pedal edema.
GI: No dysphagia, hematemesis or melena.
GU: No urologic abnormalities.
ENDOCRINOLOGIC: No history of diabetes, hypo or hyperthyroidism.
HEMATOLOGIC: No coagulopathy or thromboembolic phenomenon.
ORTHOPEDIC: He has a history of DJD involving his low back, hip and knees bilaterally.
SKIN: No history of easy bruisability or pruritus.
NEUROLOGIC: No seizure, tremors, changes in mental status, etc.

PAST MEDICAL HISTORY: He has a history of chronic bronchitis, COPD, emphysema, cor pulmonale, DJD and ASCVD characterized by remote anterior myocardial infarction.

HOSPITALIZATIONS: Include;

1. For an acute myocardial infarction in 1989. He has had surgery on several occasions.
2. He has bilateral inguinal herniorrhaphies in 1998 and 2007.
3. A lumbar laminectomy in 1992.
4. A spontaneous pneumothorax on the left in 2005. He was treated with chest tube insertion and subsequent pleurodyesis.

FAMILY HISTORY: His father died of acute myocardial infarction at the age of 85. Mother died of acute myocardial infarction at the age of 84. He had seven brothers, three of whom died as a result of trauma. He has five sisters one of whom has dementia and the other which has diabetes. He has five children of his own all of whom are alive and well.

PHYSICAL EXAMINATION: When I saw him, he was a pleasant 70 inch, white male, his weight was 170, blood pressure right arm was 129/66, left arm was 103/74, 02 sat on room air was 87% on 02 liters of nasal 02 was 95%, pulse was 67 and regular, respiratory rate was 18, temperature was 96.9.
HEENT: Unremarkable. Pharynx was clear.
NECK: Supple. He had no carotid bruits, no enlargement of his thyroid gland, no enlargement of his cervical nodes. Trachea was midline.
CHEST: Revealed good airway movement bilaterally. He had a markedly prolongation of his expiratory phase with occasional wheeze bilaterally.
CARDIAC EXAMINATION: Revealed the PMI to be in the fifth intercostal space on the midclavicular line. S1 and S2 was normal. He had no S3, S4 or murmur.
ABDOMEN: Soft. He had no palpable organs or masses.
EXTREMITIES: Revealed trace to +1 pedal edema bilaterally. He had good pulses all around. He had no varicosities. He was not clubbed.

DIAGNOSTIC TESTS: Includes a chest x-ray the B-reading of which was read by Dr Michael Alexander

**Black Lung Evaluation**
**Page 2 of 4**

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| Name: Fleming, Joseph | MR Number: 194029 |
|---|---|
| DOB: 09/11/1945 | Admit Date: 03/28/2012 |
| Account Number: 11055625 | Room: |
| Pt. Status: OA | Hosp Svc. Code: |
| MD ID: 63029 | Document ID: 2196896 |

with small opacities in both middle and lower lung zones with 1/0 profusion,definite emphysema and bulla.. Pulmonary function tests were done which showed very severe obstructive airways disease with airtrapping and moderately severe emphysema with FEV1 22% of predicted, FEV1./FVC ratio 34%, MVV 25% of predicted pre bronchodilator testing, FEV1 22% of predicted , FEV1/FVC ratio 37%, MVV 25% of predicted post bronchodilator testing.,DLCO 60% of predicted.. Arterial blood gases were done which showed chronic c02 retention and severe hypoxemia on room air at rest with PO2 48.6 mmHg and PCO2 43.2 mmHg. The patient was not exercised because of his blood gases. An EKG was done which showed normal sinus rhythm and an old anterior myocardial infarction.

CONCLUSIONS AND DIAGNOSES:

1. Chronic bronchitis.
2. COPD.
3. Emphysema.
4. Cor pulmonale. These diagnoses were based upon the patient's history of breathlessness, sputum production, wheezing and collaborated by his x-ray and blood gases and pulmonary function tests.
5. CWP

ETIOLOGY OF HIS CARDIOPULMONARY DIAGNOSES: Is thought to be the inhalation of coal dust and tobacco smoke. The impairment related to his pulmonary status is thought to be very severe and based upon his impairment he could not return to the mines. The extent at which the diagnosis contributed to his impairment is related primarily to his COPD ,CWP and emphysema. Clinical diagnosis of pneumonoconiosis is present based upon chest x-ray findings of Dr. Alexander a NIOSH certified-B reader these findings are small opacities in middle/lower lung zones with 1/0 profusion,definite emphysema.. Statutory diagnosis of pneumonoconiosis is present based upon confirmed work time, exposure to coal dust symptoms and findings on physical examination, spirometry and arterial blood gas reports these findings are very severe obstructive airways disease on pulmonary function test and PO2 48.6 mmHg and PCO2 43.2 mmHg on arterial blood gas on room air.

NON CARDIOPULMONARY DIAGNOSES: Include;

1. ASCVD, characterized by an old anterior myocardial infarction.
2. DJD.

REFERRAL: There is no further testing or referrals made in this particular individual.

Thomas P Splan, M.D.

**Black Lung Evaluation**
**Page 3 of 4**

A133

**Norton Community Hospital**
**100 Fifteenth Street NW**
**Norton, VA 24273**

| Name: Fleming, Joseph | MR Number: 194029 |
|---|---|
| DOB: 09/11/1945 | Admit Date: 03/28/2012 |
| Account Number: 11055625 | Room: |
| Pt. Status: OA | Hosp Svc. Code: |
| MD ID: 63029 | Document ID: 2196896 |

cc: Thomas P Splan, M.D.

D: 03/28/2012 14:59
T: 03/29/2012 08:18
TPS/dkh

Signed by THOMAS P SPLAN, MD on  22-Apr-2012 18:23:16 -04:00

**Black Lung Evaluation**
**Page 4 of 4**

lanebs 4/23/2012 7:28:42 AM -04:00 Page 4 of 4

A134



**Norton Community Hospital**
*100 15th Street N.W.*
*Norton, VA 24273*

Date: 03/28/12
Id: XXX-XX-0560
Name: FLEMING, JOSEPH
Physician: Splan
Technician: Sullivan Horne R.R.T

Height(in): 69.5          Race: Caucasian          Gender: Male
Armspan(in):  0          Weight(lb): 170          Age: 66    Birth Date: 09/11/45
Dyspnea Rest: No        Dyspnea Exercise: No    Cough: No
Persistent: No          Smoker: No              How Long(pk/yrs):
Cigarettes: No          Cigars: No              Temp: 20

### *PULMONARY FUNCTION ANALYSIS*

## Spirometry    (BTPS)

| | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| Spirometry | | | | | | | |
| FVC | Liters | 4.19 | 2.18 | 52 | 2.00 | 48 | -8 |
| FEV1 | Liters | 3.33 | 0.75 | 22 | 0.74 | 22 | -1 |
| FEV1/FVC | % | 79 | 34 | 43 | 37 | 47 | 8 |
| FEF25-75% | L/sec | 3.34 | 0.27 | 8 | 0.29 | 9 | 11 |
| FEF25% | L/sec | 7.57 | 0.52 | 7 | 0.61 | 8 | 18 |
| FEF50% | L/sec | 4.15 | 0.28 | 7 | 0.29 | 7 | 5 |
| FEF75% | L/sec | 1.49 | 0.18 | 12 | 0.23 | 16 | 31 |
| PEF | L/sec | 8.29 | 2.67 | 32 | 2.75 | 33 | 3 |
| MVV | L/min | 131 | 33 | 25 | 33 | 25 | 0 |

## Lung Volumes

| | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| Lung Volumes | | | | | | | |
| TLC | Liters | 6.45 | 6.75 | 105 | | | |
| VC | Liters | 4.19 | 3.00 | 72 | | | |
| IC | Liters | 3.01 | 1.58 | 53 | | | |
| FRC PL | Liters | 3.73 | 5.17 | 139 | | | |
| ERV | Liters | | 1.42 | | | | |
| RV | Liters | 2.44 | 3.75 | 154 | | | |
| RV/TLC | % | 39 | 56 | 141 | | | |
| Vtg | Liters | | 5.86 | | | | |
| Vtg f | BPM | | 65 | | | | |

## Diffusion

| | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| Diffusing Capacity | | | | | | | |
| DLCO | mL/mmHg/min | 21.2 | 12.7 | 60 | | | |
| DL Adj | mL/mmHg/min | 21.2 | 12.7 | 60 | | | |
| DLCO/VA | mL/mHg/min/L | 3.46 | 3.06 | 88 | | | |
| DL/VA Adj | mL/mHg/min/L | 3.93 | 3.06 | 78 | | | |
| VA | Liters | | 4.14 | | | | |

## Comments

Patient put forth good effort, cooperation  and understanding . Pt. was given 4 puffs
albuterol inhaler then repeat study was performed.



**Norton Community Hospital**
100 15th Street N.W.
Norton, VA 24273

Date: 03/28/12
Id: XXX-XX-0560
Name: FLEMING, JOSEPH
Physician: Splan
Technician: Sullivan Horne R.R.T



( ) = OUTSIDE 95% CONFIDENCE INTERVAL     Norm Set: Knudson (1983)          Version: IVS-0101-21-1A

**Norton Community Hospital**
*100 15th Street N.W.*
*Norton, VA 24273*
**SPIROMETRY REPORT**

**Name: FLEMING, JOSEPH**
**Gender:** Male
**Age:** 66          **Race:** Caucasian
**Height(in):** 69.5     **Weight(lb):** 170
**Diagnosis:**

**Id: XXX-XX-0560**
**Date:** 03/28/12
**Temp:** 20          **PBar:** 708
**Physician:** Splan
**Technician:** Sullivan Home R.R.T

| Best Data Spirometry | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 4.19 | 2.18 | 52 | 2.00 | 48 | -8 |
| FEV1 | Liters | 3.33 | 0.75 | 22 | 0.74 | 22 | -1 |
| FEV1/FVC | % | 79 | 34 | 43 | 37 | 47 | 8 |
| FEV3 | Liters | 3.83 | 1.29 | 34 | 1.30 | 34 | 0 |
| FEF25-75% | L/sec | 3.34 | 0.27 | 8 | 0.29 | 9 | 11 |
| PEF | L/sec | 8.29 | 2.67 | 32 | 2.75 | 33 | 3 |



| All Trials Pre Spirometry | | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| FVC | Liters | 2.10 | 2.16 | 2.02 | 2.18 | | | | |
| FEV1 | Liters | 0.75 | 0.73 | 0.74 | 0.74 | | | | |
| FEV1/FVC | % | 36 | 34 | 37 | 34 | | | | |
| FEV3 | Liters | 1.31 | 1.32 | 1.31 | 1.29 | | | | |
| FEF25-75% | L/sec | 0.28 | 0.28 | 0.29 | 0.27 | | | | |
| PEF | L/sec | 2.36 | 2.51 | 2.54 | 2.67 | | | | |

| Post Spirometry | | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| FVC | Liters | 1.84 | 1.92 | 1.97 | 2.00 | | | | |
| FEV1 | Liters | 0.69 | 0.71 | 0.69 | 0.74 | | | | |
| FEV1/FVC | % | 38 | 37 | 35 | 37 | | | | |
| FEV3 | Liters | 1.23 | 1.26 | 1.18 | 1.30 | | | | |
| FEF25-75% | L/sec | 0.28 | 0.28 | 0.25 | 0.29 | | | | |
| PEF | L/sec | 2.36 | 2.71 | 2.75 | 2.44 | | | | |

**Norton Community Hospital**
**100 15th Street N.W.**
**Norton, VA 24273**
### SPIROMETRY REPORT

**Name: FLEMING, JOSEPH**
Gender: Male
Age: 66          Race: Caucasian
Height(in): 69.5   Weight(lb): 170
Diagnosis:

Id: XXX-XX-0560
Date: 03/28/12
Temp: 20          PBar: 708
Physician: Splan
Technician: Sullivan Home R.R.T



## Norton Community Hospital
100 15th Street N.W.
Norton, VA 24273

**FLEMING, JOSEPH**
**SSN: XXX-XX-0560**
Date of Test: 03/28/12
Physician: Span
Technician: Sullivan Home R.R.T

DOB: 09/11/45                    Age: 66
Standing Height without shoes (in): 69 (cm): 177
Weight(lb): 170    (kg): 77.3
Gender: Male    Race: Caucasian

This Form was designed to meet the documentation requirements for Social Security Disability Determination.
Spirometry Reference: Knudson (1983)                    Tabular Data and Spirometric Tracing are reported in BTPS conditions.

|  |  | Ref | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 4.19 | 2.18 | 52 | 2.00 | 48 | -8 |
| FEV1 | Liters | 3.33 | 0.75 | 22 | 0.74 | 22 | -1 |
| FEV1/FVC% |  | 79 | 34 | 43 | 37 | 47 | 8 |
| FET100% Sec |  |  | 8.00 |  | 6.98 |  | -13 |



Volume Scale 10 mm per Liter.
Time base is 20 mm per second.    The Marked FEV 1 was calculated using the "Backward Extrapolation to Time Zero" Method.
Patient put forth good effort, cooperation  and understanding . Pt. was given 4 puffs albuterol inhaler then repeat study was
performed.

Pulmonary Function Testing was performed using  SensorMedics Vmax System.
Device Type: Mass Flow Sensor with digital integration of Flow to Volume.

Calibration Data: (See Calibration Tracing Attached)
Calibration Date: 03/28/12
Cal Syringe Reference Volume:  3.00
Calibration Results: 3.01

## Norton Community Hospital
### 100 15th Street N.W.

—————— **Calibration Report** ——————

Flow Cal Date: 03/28/12                                 Technician: Sullivan Home R.R.T   PBar: 708

| Reference: | — 1 — | — 2 — | — 3 — | — 4 — | Mean (2.91 - 3.09) |
|---|---|---|---|---|---|
| 3.00 | 3.01 | 3.01 | 3.01 | 3.00 | 3.01 |



**Mass Flow Sensor: Flow Calibration**
[ ]  3 liters in 6 seconds.
[ ]  3 liters in 3 seconds.
[ ]  3 liters per second.

**Pulmonary Function Testing performed on a SensorMedics Vmax System.**

# PATIENT REPORT

*Restim* (handwritten)

**ARTERIAL BLOOD GAS REPORT**
NORTON COMMUNITY HOSPITAL
100 15TH STREET NW
NORTON, VIRGINIA 24273

| | | | |
|---|---|---|---|
| **Last Name** | **Patient ID** | **Date** | **Time** |
| **FLEMING** | **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** | **3/28/12** | **13:05** |

| | | |
|---|---|---|
| **First Name** | **Sex** | **Date of Birth** |
| JOSEPH | Male | 9/11/1945 |

| | |
|---|---|
| **Location** | **Physician Name** |
| OP | SPLAN |

| **Date Drawn** | **Time Drawn** | **Type** | **Operator ID** |
|---|---|---|---|
| 3/28/12 | 13:00 | Blood | S. Horne |

| **Source** | **Temp** | **F$_I$O$_2$** | **Flow** | **Mode** | **RespRt** | **CPAP** | **PEEP** | **Vt** |
|---|---|---|---|---|---|---|---|---|
| Arterial | | 21.0 | | | | | | |

| **Draw Site** | **Allen's Test** | **O2 Device** | **PS** |
|---|---|---|---|
| R RADIAL | + | ROOM AIR | |

**BLOOD GAS 37.0°C**

| Parameter | Value | | Units | Reference Range |
|---|---|---|---|---|
| pH | 7.422 | | | 7.350 - 7.450 |
| pCO$_2$ | 43.2 | | mmHg | 35.0 - 45.0 |
| pO$_2$ | 48.6 | ↓↓ | mmHg | 80.0 - 100.0 |
| BP | | | | - |
| HCO$_3^-$act | 27.5 | ↑ | mmol/L | 20.0 - 26.0 |
| BEvt | 2.6 | | mmol/L | -3.0 - 3.0 |
| tCO$_2$ | 28.8 | | mmol/L | 24.0 - 30.0 |

**OXYGENATION PARAMETERS**

| Parameter | Value | | Units | Reference Range |
|---|---|---|---|---|
| tHb | 16.6 | | g/dL | 12.0 - 18.0 |
| sO$_2$ | 87.6 | ↓ | % | 92.0 - 98.5 |
| O$_2$Hb | 86.2 | ↓ | % | 94.0 - 97.0 |
| COHb | 1.3 | | % | 0.5 - 1.5 |
| MetHb | 0.3 | | % | 0.0 - 1.5 |
| HHb | 12.2 | ↑ | % | 0.0 - 5.0 |

**BLOOD GAS**

| Parameter | Value | Units | Reference Range |
|---|---|---|---|
| pH(T) | | | - |
| pCO$_2$(T) | | | - |
| pO$_2$(T) | | | - |

**OXYGEN STATUS**

| Parameter | Value | Units | Reference Range |
|---|---|---|---|
| ctO$_2$(a) | 20.0 | mL/dL | 15.0 - 23.0 |
| pO$_2$(A)(T) | | | - |
| AaDO$_2$ | | | - |
| a/A | | | - |

*3-28-12  1307* (handwritten)
*Given to Dr Splan* (handwritten)
*Sullie Home RRT* (handwritten)

**HISTORICAL DATA**

| Date | Time | pH | pCO$_2$ | pO$_2$ | | Temp | F$_I$O$_2$ | Flow |
|---|---|---|---|---|---|---|---|---|
| 3/28/12 | 13:05 | 7.422 | 43.2 | 48.6 | ↓↓ | | 21.0 | |
| 1/16/12 | 13:19 | 7.414 | 39.9 | 57.4 | ↓ | | 21.0 | |

**LEGEND**

| | | |
|---|---|---|
| ↑ Value above reference range | ↑↑ Value above action range | —— ↑↑ Above reporting range |
| ↓ Value below reference range | ↓↓ Value below action range | —— ↓↓ Below reporting range |

Signature:_____

**Roentgenographic Interpretation**

**U.S. Department of Labor**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



OMB No. 1240-0022
Expires: 08-31-2011

NOTE: This report is authorized by law (30 U.S.C., 901 et. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-ray | 1B. Miner's Social Security Number | 1C. Film Quality (if not Grade 1, Give Reason) |
|---|---|---|---|
| Joseph Fleming | Mo. 03  Day 24  Yr. 12 | 4 0 4 6 0 5 6 0 | 1 [X] 2 3 U/R   Scapula overlay |

**1D. Is Film Completely Negative?**  YES [ ] Proceed to Section 5   NO [X] Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?**  YES [ ] Complete 2B and 2C   NO [X] Proceed to Section 3

**2B. Small Opacities Consistent With Pneumoconiosis**

a. SHAPE/SIZE — PRIMARY / SECONDARY / b. ZONES

c. PROFUSION
| | | |
|---|---|---|
| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. Large Opacities Consistent with Pneumoconiosis**   SIZE [ ] A [X] B [ ] C   Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES [ ] Complete Sections 3B, 3C   NO [X] Proceed to Section 4A

**3B. PLEURAL PLAQUES** (site, calcification, extent, and width)

**3C. COSTOPHRENIC ANGLE OBLITERATION**  [R] [L] Proceed to Section 3D   NO [ ] Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (site, calcification, extent, and width)

**4A. ANY OTHER ABNORMALITIES?**  YES [X] Complete 4B and 4C   NO [ ] Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

**REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION** [OD]   Date Personal Physician notified? Mo ___ Day ___ Yr ___

**4C. OTHER COMMENTS:** _Ill-defined density in LUZ level of anterior 3rd rib._ _? scarring. Recommend follow-up_

**SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?**  Yes [ ] No [X]   Proceed to Section 5

**5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:** Norton Community Hospital
DOL Medical Provider Number (if applicable): ___
Was film taken by a registered radiographer/radiographic technologist? [ ] Yes [ ] No   State ___
Name ___   Registration No. ___

**5B. Physician Interpreting Film (Print Name):** MICHAEL B. ALEXANDER, MD
Are you: Board-certified Radiologist? [X] Yes [ ] No.   Board-eligible radiologist? [ ] Yes [ ] No.   B-reader? [X] Yes [ ] No.

**5C.** I certify that this film has been interpreted in accordance with the instructions provided on Form CM-933b and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and I am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE: _Michael Alexander MD_   DATE OF READING 04-05-12 (Mo. Day. Yr.)

**Public Burden Statement**
We estimate that it will take an average of 5 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U.S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THE COMPLETED FORMS TO THIS OFFICE
NOTE: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Form CM-933
Rev. June 2008

A142

**NORTON COMMUNITY HOSPITAL**
**ELECTROCARDIOGRAPHIC RECORD**

M000194029  V00011055625
FLEMING,JOSEPH    CARDP
09/11/45  66Y  M  NCH
ATT SPLAN,T
U  03/28/12  BOF.JKS
03/27/12

0011055625

| Requested Date: | Requested Time: | Date Completed: | Time Comp |
|---|---|---|---|
| | | 3-28-12 | 2: |

Remarks:

404 - 60 - 0560

| ☐ Routine | ☐ STAT | ☐ Daily ___ of ___ | 7005 ☐ Electrocardiograph (EKG) | 7021 ☐ Profess |
|---|---|---|---|---|

| Diagnosis: | | Age: | Height: |
|---|---|---|---|
| | | Sex: | Weight: |

**TO BE COMPLETED BY INTERPRETER**

| Atrial Rate: | Ventricular Rate: | P-R Interval: | QRS: | QT: | Axis Deviation (QRS) | Rhythm: |
|---|---|---|---|---|---|---|

Interpretation:

NSR
Od Ant MI

Signature

NCH-RT-029-Rev.9/18/04-bps





# KCS PULMONARY, P.C.

### Thomas P. Splan, M.D., F.C.C.P.
*Pulmonary Diseases · Critical Care · Internal Medicine*

| | |
|---|---|
| **Birthplace:** | Dearborn, Michigan    U.S.A. |
| **Personal:** | Married: Nancy Splan<br>Children: three |
| **Military Service:** | United States Navy<br>1969-1977 |
| | National Naval Medical Center<br>Bethesda, MD<br>July 1970-1974 |
| | National regional Medical Center<br>Long Beach, CA<br>July 1974- 1977 |
| | Honorable discharge 1977 |
| **Education:** | Allen Park High School<br>Allen Park, MI<br>Graduated, 1962 |
| | Wayne State University<br>Detroit, MI<br>Bachelor of Science in Chemistry, 1968 |
| | Wayne State University<br>Detroit, MI<br>Doctorate of Medicine, 1970 |
| **Internship:** | National Naval Medical Center<br>July 1970 - June 1971 |
| **Residency:** | National Naval Medical Center<br>Internal Medicine<br>July 1971 - June 1974 |
| **Fellowship:** | University Of California at Irvine<br>Irvine, CA<br>Pulmonary Disease and Critical Care Medicine<br>July 1977 - June 1978 |
| | George Washington University<br>Washington, DC<br>Pulmonary Disease and Critical Care Medicine<br>July 1978 - June 1979 |

11747 Jefferson Avenue, Suite 3-H · P.O. Box 120605 · Newport News, Virginia 23606
Phone 757-591-0011 · Fax 757-599-6551 · kcspulmonary@verizon.net

| Board Certifications: | 1976  Internal Medicine |
| | 1980  Pulmonary Disease |
| | 1991  Critical Care Medicine |
| | to recently: November 2011 |

Professional Societies:
American College of Physicians
American College of Chest Physicians
American Thoracic Society
Society of Critical Care Medicine
Medical Society of Virginia

Professional Licensure:
| Michigan | 1970 | inactive |
| Maryland | 1971 | inactive |
| District of Columbia | 1971 | inactive |
| California | 1975 | inactive |
| Virginia | 1979 - present, active |

Certifications:
| BLS | October, | 2010 |
| ACLS | May, | 2011 |

Positions Held:

National Regional Medical Center
Long Beach, California
  *Director, Cardiopulmonary Department
    July 1974 - June 1977
  *Director, Medical Intensive Care Unit
    July 1974 - June 1977

KCS Pulmonary, PC
11747 Jefferson Ave. Suite 3-H
Newport News, VA 23606
  *Physician, private practice specializing in pulmonary
disease, critical care and internal medicine
    July 1979 - present

Mary Immaculate Hospital
Newport News, Virginia

  *Director Cardiopulmonary
    1981 -1993
  *Chief, Internal Medicine
    1988 -1990
  *Director, Intensive Care Unit
    1988 -1993


Hampton Roads Specialty Hospital
Hampton, Virginia

  *Chief Medical Officer
    2009 - present

A146

| | |
|---|---|
| **Hospital Affiliations:** | **Mary Immaculate Hospital**<br>2 Bernardine Dr<br>Newport News, VA 23602<br>July 1980 - present |
| | **Riverside Regional Medical Center**<br>500 J. Clyde Morris Blvd.<br>Newport News, VA 23601<br>July 1979 - present |
| | **Sentara Hampton General Hospital**<br>3120 Victoria Blvd.<br>Hampton, VA 23669<br>September 1979 - December 1995 |
| | **Sentara Careplex Hospital**<br>3000 Coliseum Dr<br>Hampton, VA 23666<br>September 2009 - January 2011 |
| | **Hampton Roads Specialty Hospital**<br>245 Chesapeake Avenue<br>Newport News, VA 23607<br>August 2009 - present |
| | **KCS Pulmonary, PC**<br>11747 Jefferson Ave, Suite 3-H<br>Newport News, VA 23606<br>July 1979 - present |

**Procedures Performed:**

Bronchoscopy, fiberoptic
Transbronchial lung biopsy
Bronchial alveolar lavage
Conscious sedation
Thoracentesis
Pleural Biopsy
Central line placement
Arterial line placement
Lumbar puncture
Intubation, oral
Chest tube placement, emergency
Ventilation management
Pulmonary function interpretation

**Continuing Education:**

Pulmonary Medicine Review, Washington DC 1986
Hyperalimentation Techniques, Boston, MA 1988
Critical Care Medicine Review, Washington DC 1991
Critical Care Medicine Review, San Antonio, TX 1995
Mechanical Ventilation, Baltimore, MD 1996
Critical Care Medicine Review, Chicago, IL 2007
Critical care Medicine Review, Chicago, IL 2010
Critical Care Ultrasound, Chicago, IL 2010
Mechanical Ventilation, Prone Position, Chicago, IL 2010
E & M Audit, Newport News, VA 2011

05/11/2011  16:53    7575996551    KCS PULMONARY PC    PAGE  05/05



# Weatherby.
## L o c u m s
## CLINICAL CAPABILITIES

### Critical Care Medicine

Please list any limitations or comments you may have on a separate sheet.

| IDENTIFYING INFORMATION | Last Name | First name | Middle name | Previous Surname |
|---|---|---|---|---|
| | Splan | Thomas | Paul | — |
| | | | Date of Birth 9-24-44 | |

| CERTIFICATIONS | ☒ BLS expires 16-12 | ☐ ACLS expires 5-13 | ☐ ATLS expires: | ☐ ABLS expires: | ☐ PALS expires: |
|---|---|---|---|---|---|

| POPULATIONS WORKED WITH | ☒ Adults | ☐ Pediatrics | ☐ Trauma |
|---|---|---|---|

| AREAS OF INTEREST | ☒ Critical care medicine | ☐ Hospitalist |
|---|---|---|

**SCOPE OF PRACTICE**

Please be aware that this form constitutes your application to be credentialed for specific areas and procedures while on assignments through Weatherby Locums.

The Credentialing Committee may not consider for approval clinical capabilities where a box is not checked, or where indicated, a number is not provided.

**Please check the box indicating which clinical capabilities you are able to perform, and where indicated, list the approximate number performed within the last 24 months.**

Practice setting:

☒ Critical Care – Diagnosis and management or stabilization for transfer/transport of patients with:
- ☒ Medical conditions, including cardiac arrest/failure, respiratory arrest/failure, sepsis, metabolic disorders, renal failure, OD/poisoning, drowning, etc.
- ☒ Surgical conditions, including pre- and post-operative management of general surgical, vascular, orthopedic, neurosurgical and cardiovascular/thoracic patients
- ☐ Traumatic injuries, including blunt or penetrating injuries of the head, chest, abdomen, etc., spinal cord injuries, soft tissue injuries (including the eye), fractures, dislocations, etc.
- ☐ Thermal injuries, including burns, electrocution, and hypo/hyperthermia

Procedures:

- ☒ Ventilation management*
  - ☒ Invasive (ETT/NT/Tracheostomy)
  - ☒ Non-invasive (BIPAP/CPAP)
- ☐ Chest tube insertion
- ☒ Bronchoscopy #  As needed  2/week
  - ☒ w/Bronchial alveolar lavage (BAL)
- ☒ Evaluation and management of acute volume/BP issues
  - Insertion of: ☒ Central line
    - ☒ Arterial line
    - ☐ PA catheter  #
    - ☐ Intra-aortic balloon pump (IABP)  #
- ☐ Temporary pacemaker  #
- ☐ ICP evaluation and management  #
- ☐ Dialysis catheter placement  #
- ☒ Diagnostic/therapeutic taps (# to include those specified below)  #
  - ☒ Lumbar puncture
  - ☒ Paracentesis
  - ☒ Thoracentesis
- ☐ Insertion/management of Sengstaken/Blakemore tube  #

*DEFINITION: Ventilation management – Establishing and maintaining an airway; various modes of ventilation

| OTHER AREAS OF INTEREST* | ☒ Primary Care (IM/FP) | ☐ Anesthesiology | ☒ Surgical specialties | (*Additional credentialing required. Please contact your recruiter.) |
|---|---|---|---|---|

In a clinical emergency, it is expected that a practitioner will render whatever care they deem necessary to save life, organ, or limb in accordance with sound professional practices.

I affirm that all information given on this page is true and accurate.      Initials _____   Date 5/11/11

© CHG Management, Inc. 2009
Revised 2009
:N APP 306

A148

### KCS PULMONARY P.C.
### THOMAS P. SPLAN M.D. F.C.C.P.
11747 JEFFERSON AV, SUITE 3H
P.O. BOX 120605
NEWPORT NEWS, VA. 23612
PHONE: (757)591-0011
FAX:    (757)599-6551

## FACSIMILE COVER SHEET

DATE: _5-11-2011_

TO: _Zachary Brigante @_   FAX #: _1-866-608-0521_

ATTN: _Wenther Locus_

FROM: _Thomas Splan MD_   TOTAL PAGES: _5_

SUBJECT: _Updated CV & Clinical Capabilities_

MEMO:

** The information transmitted with this facsimile cover sheet is CONFIDENTIAL and LEGALLY PRIVILEGED and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are notified that any dissemination, distribution or copying of all or any portion of this transmission is strictly prohibited. If you have received this facsimile in error, or if it did not fully transmit or is difficult to read, PLEASE CALL (757)591-0011.

# CX-06

# B READING INTERPRETATION

| PATIENT NAME: Fleming, Joseph | FACILITY: Norton Community Hospital |
|---|---|
| DATE OF RADIOGRAPH: 3/28/12 | PATIENT I.D. # XXX-XX-0560 |

## 1. FILM QUALITY

[1] [X]2 [U/R]

If not Grade 1, mark all boxes that apply

- [ ] Overexposed (dark)
- [ ] Underexposed (light)
- [ ] Artifacts
- [X] Improper position
- [ ] Poor contrast
- [ ] Poor processing
- [ ] Underinflation
- [ ] Mottle
- [ ] Other (please specify)

Bilateral scapular overlay

## 2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMONCONIOSIS?

YES [X] Complete Sections 2B and 2C   NO [ ] Proceed to Section 3A

## 2B. SMALL OPACITIES

### a. SHAPE/SIZE

PRIMARY: [p] [X q] [r]   [t u (bottom row)]

SECONDARY: [p] [s] [r] [q] [u]

### B. ZONES

| | R | L |
|---|---|---|
| UPPER | | |
| MIDDLE | X | X |
| LOWER | X | X |

### c. PROFUSION

| 0/- | 0/0 | 0/1 |
| [X]1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

## 2C. LARGE OPACITIES

SIZE [X]A [ ]B [ ]C   PROCEED to SECTION 3A

## 3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMONCONIOSIS?

YES [ ] Complete Sections 3B and 3C   NO [X] Proceed to Section 4A

## 3B. PLEURAL PLAQUES (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall combined for in profile and face on) Up to 1/4 on lateral chest wall = 1 1/4 to 1/2 on lateral chest wall = 2 > 1/2 lateral chest wall = 3 | Width (in profile only) (3 mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10. mm = c |
|---|---|---|---|---|
| In profile | O R L | O R L | | |
| Face on | O R L | O R L | | |
| Diaphragm | O R L | O R L | O R L | O L |
| Other site(s) | | | 1 2 3 | a b c   a b c |

## 3C. COSTOPHRENIC ANLGE OBLITERATION

[ ]R [ ]L Proceed to Section 3D   NO [X] Proceed to Section 4A

## 3D. DIFFUSE PLEURAL THICKENING (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall combined for in profile and face on) Up to 1/4 on lateral chest wall = 1 1/4 to 1/2 on lateral chest wall = 2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3 mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm = c |
|---|---|---|---|---|
| Face on | O R L | O R L | | |
| In profile | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

## 4A. ANY OTHER ABNORMALITIES

YES [X] Complete Sections 4B, 4C, 4D, 4E   NO [ ] Proceed to Section 5

## 4B. OTHER SYMBOLS (OBLIGATORY)

[aa] [at] [ax] [bu] [ca] [X cn] [co] [cp] [cv] [di] [ef] [X es] [fr] [hi] [ho] [id] [ih] [kl] [me] [pa] [pb] [pi] [px] [ra] [rp] [tb]

[OD] If other diseases or significant abnormalities, findings must be recorded. (section 4D)

Date Physician or Worker notified?

## 4C. Should worker see personal physician because of findings in section 4d?

YES [ ]   NO [ ]

| MONTH | DAY | YEAR |
|---|---|---|
| | | |

## 4D. OTHER COMMENTS:

| | |
|---|---|

Certified B Reader's Signature: _KDePon_ (signature)   Date of Reading: 12-9-12

Kathleen A. DePonte, M.D., Board Certified Radiologist
NIOSH Certified B Reader

A151

## CURRICULUM VITAE

**NAME:**  Kathleen Ann DePonte, M.D.

**SOCIAL SECURITY NUMBER:**  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

RECEIVED
FEB 2 3 2004
WOLFE WILLIAMS & RUTHERFORD

**ADDRESS:**

    Residence:  P.O. Box 408
Norton, Virginia 24273
(276) 679-7708

    Business:  P. O. Box 408
Norton, Virginia 24273
(276) 679-2729

**PERSONAL INFORMATION:**

    Birthplace:  Methuen, MA
    Birth Date:  February 04, 1954

    Citizenship:  USA

    Marital Status:  Married

    Spouse's Name:  William Carl Witt, Jr.

**EDUCATION:**

| | | |
|---|---|---|
| University of Virginia Charlottesville, VA B. A. Biology | 1972-1976 |
| Hahnemann Medical College and Hospital Philadelphia, PA M.D. | 1976-1980 |

**POST DOCTORAL TRAINING:**

| | | |
|---|---|---|
| Intern: | Internal Medicine North Carolina Baptist Hospital Winston-Salem, N.C. | 1980-1981 |
| Resident: | Diagnostic Radiology North Carolina Baptist Hospital Winston-Salem, N.C. | 1981-1985 |

CURRICULUM VITAE
Kathleen Ann DePonte, M.D.
Page 2

| | | |
|---|---|---|
| **PROFESSIONAL LICENSURE:** | North Carolina | #25573 |
| | Virginia | #35177 |
| | Kentucky | #28258 |
| | Tennessee | #35510 |
| **SPECIALITY CERTIFICATION:** | American Board of Radiology | June 1984 |
| | Diagnostic Radiology | |
| **EMPLOYMENT:** | Private Practice | 1985-Present |
| | Diagnostic Imaging Associates, P.C. | |

**PROFESSIONAL MEMBERSHIPS:**

| | | |
|---|---|---|
| | American College of | |
| | Radiology | 1985 to present |
| | Radiological Society of | |
| | North America | 1982 to present |
| **HONORS AND AWARDS:** | Magna Cum Laude | 1976 |
| | University of Virginia | |
| | Distinction in Medicine | 1980 |
| | Hahnemann Medical College | |
| | and Hospital | |
| | AOA Honor Medical Society | |
| | Phi Beta Kappa | |
| | Echols Scholar | |
| | Miller Biology Scholar | |
| | Intermediate Honors | |

**PUBLICATIONS:**

DePonte KA, Sumner TE. Case of the Month: Splenic Candidiasis.
JUM 1983; 2:R52 & R55.

Gelfand DW, Sowers JC, DePonte KA, et al. Anaphylactic and
allergic reactions associated with double-contrast examinations: Is
glucagon or barium suspension the allergen. AJR 1985; 144:405.

CURRICULUM VITAE
Kathleen Ann DePonte, M.D.
Page 3


Wilson WG, DePonte KA, McIlhenny, et al. Arachnoid cysts in a
brother and sister. J Medical Genetics 1988, Vol. 25,
No. 10; 714-715.

PRESENTATIONS:    Gelfand DW, Sowers JC, DePonte KA, et al. Anaphylactic and
allergic reactions associated with double-contrast examinations: Is
glucagon or barium suspension the allergen. Presented at the
Society of Gastrointestinal Radiologists meeting, October 1984.



# U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
### Public Health Service

Centers For Disease Control And Prevention
National Institute For Occupational Safety And Health
Appalachian Laboratory For Occupational Safety And Health

THIS IS TO CERTIFY THAT

## Kathleen Ann DePonte, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

## B READER

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

THIS CERTIFICATION WILL REMAIN IN EFFECT 07/01/2005 UNTIL 06/30/2009.

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES ALOSH / NIOSH

CDC

A155



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
Public Health Service

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

**Kathleen Ann Deponte, M.D.**

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

B READER

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

The Certification will remain in effect from 7/1/2009 until 6/30/2013

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH



# Employer's Hearing Packet

## Joseph Fleming
v.
## Aberry Coal, Inc.

## Case No.: 2012-BLA-05241
## OWCP No.: xxx-xx-0560
## PS&E File No.: 40-756

## *PS&E copy*

Bristol: 354972-1

A157



Geo. E. Penn (1895-1931)
Wm. A. Stuart (1922-1976)
G.R.C. Stuart (1952-1991)

Wm. W. Eskridge
Stephen M. Hodges
W. Challen Walling [II, III]
Wade W. Massie [II, III]
Michael F. Blair [III]
William M. Moffet [III]
Mark L. Esposito [III]
Timothy W. Gresham [III]
H. Ashby Dickerson
Byrum L. Geisler [III]
Richard E. Ladd, Jr. [III]
W. Bradford Stallard
Ramesh Murthy [III]
Mark E. Frye [III]
Lisa Frisina Clement
Andrew M. Hanson [III]
John A. Martin [III]
Timothy K. Lowe [I, III, •]

John B. Hemmings (Retired)

Jesse F. Narron
Cameron S. Bell [III]
Kari Lou Frank
John R. Sigmond [III]
Patricia C. Arrighi of counsel
Richard E. Ladd, Sr. of counsel •
Elizabeth R. Walters of counsel [III]
Bruce E. Gibson of counsel [III]
Wendy E. Warren
J. Randall Brooks, Jr. [I, II, III]
Joseph S. Hall
Wesley B. Boggs [I, III]
Holly N. Mancl [III, IV, V]
John S. Honeycutt [III]
Seth M. Land

# PENNSTUART

### Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
[I] KY; [II] WV; [III] TN; [IV] IL; [V] MN

**E-Mail: jsigmond@pennstuart.com**          **Direct Dial: (423) 793-4803**          **Direct Fax: (423) 793-4843**

October 16, 2012

## HAND-DELIVERED AT HEARING

Honorable Daniel F. Solomon
Office of Administrative Law Judges
800 K Street, NW, Suite 400 North
Washington, DC 20001-8002

> RE:    Joseph Fleming v. Aberry Coal, Inc.
>         OWCP No.: XXX-XX-0560
>         Case No.: 2012-BLA-05241
>         Carrier Claim No.: 81062144
>         PS&E File No.: 40-756

Dear Judge Solomon:

On September 26, 2012, we submitted Employer's Exhibit 11 which included a supplemental report by Dr. A. Dahhan dated September 21, 2012 and Dr. Dahhan's curriculum vitae which totaled 7 pages. This letter is to advise we have revised EX 11 in the hearing packets the parties are receiving today to include pages 8 through 31 which are 3 articles referenced by Dr. Dahhan which he supplied to us with the original report received in the mail after submission of this exhibit on September 26, 2012.

We are relying on the following Employer's Exhibits at the hearing today:

EX 1    Report by Dr. David Rosenberg dated April 16, 2012 regarding IME on March 22, 2012, pulmonary function study, arterial blood gas study, EKG and labs dated March 20, 2012 (testing was performed March 20, 2012 but physical examination was performed March 22, 2012), and Dr. Paul Wheeler's review of March 20, 2012 chest x-ray on March 26, 2012, along with Dr. Wheeler and Dr. Rosenberg's curriculum vitaes;

Bristol: 353000-1

EX 2    June 18, 2005 consultation report by Dr. Uszenski at Morristown Hamblen Hospital;

EX 3    December 3, 2010 chest x-ray report by Dr. Knight at Morristown Hamblen Hospital;

EX 4    February 11, 1998 ER report from Whitesburg Appalachian Regional Hospital;

EX 5    June 15, 2005 arterial blood gas study from Baptist Hospital of Cocke County;

EX 6    Review of January 16, 2012 chest x-ray on May 16, 2012 by Dr. Scott, along with Dr. Scotts' curriculum vitae;

EX 7    Review of March 28, 2012 pulmonary function study by Dr. Sarah Long on September 7, 2012, along with Dr. Long's curriculum vitae;

EX 8    Report by Dr. P. Raphael Caffrey dated September 19, 2012 regarding review of June 24, 2005 biopsy slides, along with Dr. Caffrey's curriculum vitae;

EX 9    Review of March 28, 2012 chest x-ray on September 19, 2012 by Dr. William W. Scott, Jr.;

EX 10   Review of April 20, 2011 chest x-ray on August 24, 2011 by Dr. Scott; and

EX 11   Supplemental Report by Dr. A. Dahhan on September 21, 2012, along with Dr. Dahhan's curriculum vitae.

By copy of this letter, I am mailing only the addition to Employer's Exhibit 11 to the Solicitor.

Sincerely yours,
PENN, STUART & ESKRIDGE

John R. Sigmond

JRS/jnm
Enclosures
cc:    Associate Regional Solicitor – Nashville, TN (Certified Mail/RRR, w/enc.)
       Robert Gonder (w/ enc)
       Joseph Wolfe, Esquire (w/ enc)

Bristol: 353000-1

A159

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING III
WADE W. MASSIE II, III
MICHAEL F. BLAIR III
WILLIAM M. MOFFET III
MARK L. ESPOSITO III
TIMOTHY W. GRESHAM III
H. ASHBY DICKERSON
BYRUM L. GEISLER III
RICHARD E. LADD, JR. III
W. BRADFORD STALLARD
RAMESH MURTHY III
MARK E. FRYE III
LISA FRISINA CLEMENT
ANDREW M. HANSON III
JOHN A. MARTIN
TIMOTHY K. LOWE I, III, •

# PENNSTUART

### Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN

JOHN B. HEMMINGS (RETIRED)

JESSE F. NARRON
CAMERON S. BELL III
KARI LOU FRANK
JOHN R. SIGMOND III
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL III, •
ELIZABETH R. WALTERS OF COUNSEL III
BRUCE E. GIBSON OF COUNSEL III
WENDY E. WARREN
J. RANDALL BROOKS, JR. I, II, III
JOSEPH S. HALL
WESLEY B. BOGGS I, III
HOLLY N. MANCL III, IV, V
JOHN S. HONEYCUTT III
SETH M. LAND

E-Mail: jsigmond@pennstuart.com      Direct Dial: (423) 793-4803      Direct Fax: (423) 793-4843

September 26, 2012

**CERTIFIED – RETURN RECEIPT REQUESTED**
Honorable Daniel F. Solomon
Office of Administrative Law Judges
800 K Street, NW, Suite 400 North
Washington, DC 20001-8002

      RE:    Joseph Fleming v. Aberry Coal, Inc.
             OWCP No.: XXX-XX-0560
             Case No.: 2012-BLA-05241
             Carrier Claim No.: 81062144
             PS&E File No.: 40-756

Dear Judge Solomon:

      This firm will be representing Aberry Coal, Inc. as insured by Security Insurance Company of Hartford c/o Arrowpoint Capital in the above captioned claim which is scheduled for hearing before you on Tuesday, October 16, 2012, in Knoxville, Tennessee. In this regard, enclosed please find the Pre-Hearing Report and Employer's Black Lung Benefits Act Evidence Summary Form listing the employer's evidence.

      Pursuant to your August 14, 2012 Notice of Hearing, copies of the exhibits will be provided to you at the hearing. The exhibits are as follows:

      EX 1    Report by Dr. David Rosenberg dated April 16, 2012 regarding IME on March 22, 2012, pulmonary function study, arterial blood gas study, EKG and labs dated March 20, 2012 (testing was performed March 20, 2012 but physical examination was performed March 22, 2012), and Dr. Paul Wheeler's review of March 20, 2012 chest x-ray on March 26, 2012, along with Dr. Wheeler and Dr. Rosenberg's curriculum vitaes;

EX 2   June 18, 2005 consultation report by Dr. Uszenski at Morristown Hamblen Hospital;

EX 3   December 3, 2010 chest x-ray report by Dr. Knight at Morristown Hamblen Hospital;

EX 4   February 11, 1998 ER report from Whitesburg Appalachian Regional Hospital;

EX 5   June 15, 2005 arterial blood gas study from Baptist Hospital of Cocke County;

EX 6   Review of January 16, 2012 chest x-ray on May 16, 2012 by Dr. Scott, along with Dr. Scotts' curriculum vitae;

EX 7   Review of March 28, 2012 pulmonary function study by Dr. Sarah Long on September 7, 2012, along with Dr. Long's curriculum vitae;

EX 8   Report by Dr. P. Raphael Caffrey dated September 19, 2012 regarding review of June 24, 2005 biopsy slides, along with Dr. Caffrey's curriculum vitae;

EX 9   Review of March 28, 2012 chest x-ray on September 19, 2012 by Dr. William W. Scott, Jr.;

EX 10  Review of April 20, 2011 chest x-ray on August 24, 2011 by Dr. Scott; and

EX 11  Supplemental Report by Dr. A. Dahhan on September 21, 2012, along with Dr. Dahhan's curriculum vitae.

By copy of this letter, copies of the Employer's Black Lung Benefits Act Evidence Summary Form, pre-hearing report, and Employer's Exhibits 1 through 11 are being forwarded to all parties of interest.

Sincerely yours,
PENN, STUART & ESKRIDGE

John R. Sigmond

JRS/jnm
Enclosures
cc:     Associate Regional Solicitor – Nashville, TN (Certified Mail/RRR, w/enc.)
       Robert Gonder (w/ enc)
       Joseph Wolfe, Esquire (w/ enc)

Bristol: 353000-1



# UNITED STATES DEPARTMENT OF LABOR OFFICE OF ADMINISTRATIVE LAW JUDGES



## BLACK  LUNG  BENEFITS  ACT
## EVIDENCE  SUMMARY  FORM

| Case Name: | Joseph Fleming v. Aberry Coal, Inc. |
|---|---|
| Case No.: | 2012-BLA-05241 |

Evidence submitted in support of position of:  ☐ Claimant  **X** Employer  ☐ Director (check one)

| Signature of submitter: | Address of Submitter: |
|---|---|
| s/ | Penn Stuart |
| ^ Signature of Representative, Attorney, or Party | P.O. Box 2009 |
| John R. Sigmond | Bristol, VA  24203 |
|  | (Physical: 804 Anderson Street, Bristol, TN  37620) |
| ^ Printed Name of Representative, Attorney, or Party | Phone: 423-793-4803 | Fax: 423-793-4843 |

Date of this submission: September 26, 2012

Bristol: 352780-1

A162

**I.        Chest x-ray evidence**

      **A.        Initial evidence.**  A party may submit no more than two chest x-ray *interpretations* in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | B-Reader (BY Board Cert. (BCR) | Date of X-ray study | Date of Reading | Film Quality | Reading |
|---|---|---|---|---|---|---|
| EX 10 | Scott | BCR/B | 4/20/11 | 8/24/11 | 3 | Negative |
|  |  |  |  |  |  |  |

        **OWCP Evaluation.** The Department is required to provide the miner with a chest x-ray study as part of the complete pulmonary evaluation. 20 C. F. R. § 725.406(a) (2001).

| DX 12 | Baker | B | 1/14/11 | 1/14/11 | 1 | t/t 1/1 |
|---|---|---|---|---|---|---|

      **B.        Rehabilitative evidence** is permitted ONLY if opposing party has presented a rereading which "tends to undermine" a specific x-ray exhibit set forth above. In such a case, the proponent of the x-ray exhibit "shall be entitled to submit an additional statement from the physician who originally interpreted the chest X-ray." 20 C.F.R. § 725.414(a)(2)(H) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

        **For use by the Director only.** The Director may submit rehabilitative evidence if any party submits evidence which "tends to undermine" the findings of the Department-sponsored chest x-ray study.

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

      **C.        Rebuttal evidence.** A party may offer no more than one physician's interpretation of *each chest x-ray study* submitted by opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | B-Reader <BY Board Cert. (BCR) | Date of X-ray study | Date of Reading | Film Quality | Reading |
|---|---|---|---|---|---|---|
| EX 6 | Scott | BCR/B | 1/16/12 | 5/16/12 | 2 | negative |
| EX 9 | Scott | BCR/B | 3/28/12 | 9/19/2012 | 2 | negative |

        For rebuttal of Department-sponsored chest x-ray study only.

| DX 16 | Wheeler | BCR/B | 1/14/11 | 4/6/11 | 2 | Negative |
|---|---|---|---|---|---|---|

Bristol: 352780-1



II.   **Pulmonary function studies**

A.   **Initial evidence.** A party may submit the results of no more than two pulmonary function studies in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of study | Tracings present? | Flow-volume loop? | Broncho-dilator? | FEV1 | FVC/MW | Coop, and Comp. Noted? |
|---|---|---|---|---|---|---|---|---|
| DX 15 | Dahhan | 4/20/11 | Yes | Yes | Yes | Pre: .87 Post: .86 | Pre: 2.63 Post: 2.35 | |
| EX 1 | Rosenberg | 3/20/12 | Yes | Yes | Yes | Pre: .68 Post: .85 | Pre: 2.48 Post: 2.76 | great |

**OWCP Evaluation.** The Department is required to provide the miner with a pulmonary function study as part of the complete pulmonary evaluation. 20 C.F.R. § 725.406(a)(2001).

| DX 12 | Baker | 1/14/11 | yes | yes | no | .67 | 3.17 | good |
|---|---|---|---|---|---|---|---|---|

B.   **Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a specific pulmonary function study exhibit set forth above. In such a case, the proponent of the pulmonary function study exhibit "shall be entitled to submit an additional statement from the physician who ... administered the objective testing." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |

**For use by the Director only.** The Director may submit rehabilitative evidence if any party submits evidence which "tends to undermine" the findings of the Department-sponsored pulmonary function study.

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

C.   **Rebuttal evidence.** A party may offer no more than one physician's assessment of each pulmonary function study offered by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
| EX 7 | Long | 9/7/12 review of 3/28/12 study | CX 5 | Not valid. Study would not be useful in evaluation of a respiratory impairment. |
| | | | | |

For rebuttal of Department-sponsored pulmonary function study only.

| DX 16 | Long | 2/26/11 | DX 12 | Review of 1/14/11 PFT: not valid per Federal Black Lung Regulations due to less than optimal effort in performing the study; study would not be useful in evaluation of respiratory impairment. |
|---|---|---|---|---|

A164



**III.    Blood gas studies**

**A.    Initial evidence**

A party may submit the results of no more than two blood gas studies in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Study | Altitude | Resting(R) Exercise(E) | PC02 | P02 | Comments |
|---|---|---|---|---|---|---|---|
| DX 15 | Dahhan | 4/20/11 | | | 42.4 | 75.6 | |
| EX 1 | Rosenberg | 3/20/12 | 0-2,999 | | (R) 40.3 (E) 44.4 | (R) 65.4 (E) 56.7 | |

**OWCP Evaluation.** The Department may provide the miner with a blood gas study as part of the complete pulmonary evaluation. 20 C.F.R. § 725.406(a) (2001).

| DX 12 | Baker | 1/14/11 | 0-2,999 | | (R) 44 | (R) 69 | |
|---|---|---|---|---|---|---|---|

**B.    Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a specific blood gas study set forth above. In such a case, the proponent of the blood gas study exhibit "shall be entitled to submit an additional statement from the physician who... administered the objective testing." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |

**For use by the Director only.** The Director may submit rehabilitative evidence if any party submits evidence which "tends to undermine" the findings of the Department-sponsored blood gas study.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

**C.    Rebuttal evidence.** A party may offer no more than one physician's assessment of each blood gas study offered by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |

For rebuttal of Department-sponsored blood gas study only.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

Bristol: 352780-1

 

IV.    **Medical reports**

The parties are notified that "medical reports" may only be based on medical evidence which is admissible consistent with the evidentiary limitations at 20 C.F.R. § 725.414(a)(2)(i), (3)(i), and (c) (2001). 20 C.F.R. §§ 725.414(a)(2)(i) and 725.457(d) (2001). Medical reports are defined in the regulations as;

> A physician's written assessment of the miner's respiratory or pulmonary condition. A medical report may be prepared by the physician who examined the miner and/or reviewed the available admissible evidence. A physician's written assessment of a single objective test, such as a chest X-ray or a pulmonary function test, shall not be considered a medical report for purposes of this section.

20 C.F.R. § 725.414(a)(1) (2001).

A.    **Initial evidence.** A party may submit no more than two medical reports in support of its position. 20 C.F.R, § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Medical Report | Comments |
|---|---|---|---|
| DX 15 | Dahhan | 4/22/11 report of 4/20/11 exam | IME report: no evidence of CWP; 39 pack years smoking history, quitting at age 60 (around 2006); ECG normal; spirometry showed severe obstructive ventilatory defect; cxr showed hyperinflated lungs consistent with emphysema; no abnormalities consistent with pneumoconiosis; no radiological findings of cwp; pneumothorax requiring resection of part of left lung; claimant's pulmonary disability resulted from severe obstructive ventilatory defect caused by lengthy smoking habit and contributed to by his previous left pneumothorax requiring resection of part of left lung |
| EX 11 | Dahhan | 9/21/12 | Supplemental report: insufficient objective findings to justify diagnosis of medical CWP; has severe obstructive airways disease; does not retain the respiratory capacity to return to previous coal mining employment; discrepancy in smoking history; has advanced emphysema with bulli formation as confirmed by the development of spontaneous pneumothorax of left chest requiring surgical intervention with placement of chest tube; severe pulmonary disability has not resulted from inhalation of coal dust or CWP; entire pulmonary disability is obstructive in nature with no restrictive component to it ruling out any contribution of interstitial lung disease that can be caused by coal dust exposure; I find no evidence of pulmonary function impairment or disability caused by, related to, contributed to, or aggravated by inhalation of coal dust, hence, no evidence of legal CWP. |

| EX 1 | Rosenberg | 4/16/12 report of 3/22/12 exam | IME report: (testing 3/20/12) on oxygen at night and during day as needed; collapsed left lung because of pneumothorax; smoked ½ PPD age 25 -59, quitting for 10 yr period in between; EKG question of old MI; nonspecific nodular scarring in left lung; COPD; does not have clinical CWP; has severe airflow obstruction which would be considered disabling; he cannot perform his previous coal mining employment; restriction not present despite reduced FVC; FVC reduced due to air trapping; marked reduction of diffusing capacity measurements consistent with diffuse emphysema; this type of emphysema relates to smoking and not coal mine dust exposure; had a marked bronchodilator response; does not have clinical or legal CWP; while he is disabled from a pulmonary perspective this does not relate to past coal mine dust exposure and presence of CWP; current CXR reveals some nodularity and should be compared to prior studies to assure stability |

Bristol: 352780-1



**OWCP Evaluation.** The Department is required to provide the miner with a complete pulmonary evaluation. 20 C.F.R. § 725.406(a) (2001).

| | | | |
|---|---|---|---|
| DX 12 | Baker | 1/14/11 | DOL IME report: smoked from age 25-60; smoked 1/2 to 1 PPD; CWP based on coal mining employment; COPD with severe obstructive defect based on coal mining employment and cigarette smoking; moderate resting arterial hypoxemia based on coal mining employment and cigarette smoking; chronic bronchitis based on coal mining employment and cigarette smoking; chest pain with exertion due to possible arteriosclerotic heart disease; totally impaired; chronic lung disease due to coal mining employment, based on presence of clinical & legal CWP. |
| DX 13 | Baker | 1/28/11 | Supplemental Report: claimant does have cwp, at least category 1/1; I feel his severe COPD has more likely been caused by long history of cigarette smoking, though there is some contribution from coal dust exposure; claimant alleged 22 years coal mining employment; it is thought at least 10 years is needed to establish relationship between coal dust exposure and presence of CWP; only 9.25 years of employment was proven; patient does have significant degree of obstructive airway disease as well as significant smoking history with severe obstructive defect on PFT. |

B.    **Rehabilitative evidence** is permitted ONLY if opposing party has presented "rebuttal evidence" which "tends to undermine" the conclusion of a physician who prepared one of the above-listed medical reports. It is noted that "rebuttal evidence" may consist of "no more than one physician's interpretation of each chest X-ray, pulmonary function test, blood gas study, autopsy or biopsy" submitted by the opposing party. In such a case, the proponent is entitled to submit an "additional statement" from the physician who prepared the medical report explaining his or her conclusion in light of the rebuttal evidence. 20 C.F.R. § 725.414(a)(2)(H) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
| | | | | |
| | | | | |

**For use by the Director only.** The Director may submit rehabilitative evidence if any party submits evidence which "tends to undermine" the findings of the Department-sponsored medical opinion.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

**V.    Autopsy evidence**

    **A.    Initial evidence.** A party may submit no more than one autopsy report in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Autopsy Report | Comments |
|---|---|---|---|
|  |  |  |  |

    **B.    Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" the autopsy report. In such a case, the proponent of the report shall be entitled to submit an "additional statement" from the physician who prepared the autopsy report explaining his or her conclusions in light of the rebuttal evidence. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

    **C.    Rebuttal evidence.** A party may offer no more than one physician's interpretation of the opposing party's autopsy report. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Report Dated: | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

**VI.    Biopsy evidence**

    **A.    Initial evidence.** A party may submit no more than one report of *each biopsy* in support of its position. 20 C.F.R. § 725.414(a)(2)(i) and (3)(i) (2001).

| Exhibit No. | Physician | Date of Biopsy Report | Comments |
|---|---|---|---|
| EX 8 | Caffrey | 6/24/05 | 9/19/12 report regarding review of 6/24/05 biopsy: operative note says patient has a long history of tobacco abuse; there is evidence of anthracotic pigment but the anthracotic pigment does not stimulate the production of reticulin, therefore, the lesions of CWP are not present; lesion of CWP is not identified on these slides; the degree of emphysema which is prominent coincides w/ the fact that the alveoli are filled with macrophages containing a dusty brown pigment which is consistent with what is called smoker's macrophages; these findings are consistent with the history recorded on the operative note that the pt abused tobacco; conclusion: the mild amount of anthracotic pigment in this wedge resection of lung would not have caused the patient any discernible pulmonary disability and certainly was insufficient to have caused or contributed to any impairment |

    **B.    Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a particular biopsy report. In such a case, the proponent of the report shall be entitled to submit an "additional statement" from the physician who prepared the biopsy report explaining his or her conclusions in light of the rebuttal evidence. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

Bristol: 352780-1

A169

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

**C.**    **Rebuttal evidence.** A party may offer no more than one physician's interpretation of each biopsy report submitted by the opposing party. 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Report Dated: | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

Bristol: 352780-1



## VII.   "Other medical evidence" under § 718.107

**A.**   **Initial evidence.** A party may submit "other medical evidence" under §718.107, such as CT-scans, and "[t]he party submitting the test or procedure ... bears the burden to demonstrate that the test or procedure is medically acceptable and relevant to establishing or refuting a claimant's entitlement to benefits." 20 C.F.R. § 718.107(b) (2001).

| Exhibit No. | Physician | Type of Record | Date of Activity | Comments |
|---|---|---|---|---|
| EX 1 | Wheeler | Digital x-ray review | 3/20/12 study reviewed on 3/26/12 | Negative; mass compatible with inflammatory disease; masses in lateral left mid and upper lng are not large opacities of CWP because they are peripheral and there is no symmetrical small nodular infiltrates in central mid and upper lungs |

**Rehabilitative evidence** is permitted ONLY if opposing party has presented evidence which "tends to undermine" a specific test or study set forth above. In such a case, the proponent of the study or test "shall be entitled to submit an additional statement from the physician who... administered the objective testing." 20 C.F.R. § 725.414(a)(2)(ii) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rehabilitation of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

**Rebuttal evidence.** A party may offer no more than one physician's assessment of each test or study offered by the opposing party. 20 C.F.R. § 725.414(a)(2)(H) and (3)(ii) (2001).

| Exhibit No. | Physician | Date of Report | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
|  |  |  |  |  |

## VIII.   Hospitalization records and treatment notes

The amended regulations provide that, notwithstanding the evidentiary limitations contained at 20 C.F.R. § 725.414(a)(2) and (a)(3), "any record of a miner's hospitalization for a respiratory or pulmonary or related disease may be received into evidence." 20 C.F.R. § 725.414(a)(4) (2001).

| Exhibit No. | Beginning and Ending Dates of Hospitalization/ Treatment | Name of Hospital/Physician | Nature of Treatment |
|---|---|---|---|
| EX 2 | 6/18/05 | Morristown Hamblen Hospital / Dr. Uszenski | Consultation report: history of COPD; tobacco abuse; presented to hospital with spontaneous pneumothorax; EKG finding suggestive of old heart attach; has smoked ½ - 1 PPD for many years. |

Bristol: 352780-1

A171

| EX 3 | 12/3/10 | Morristown Hamblen Hospital / Dr. Knight | Chest x-ray: lungs clear; no effusions or infiltrates; no pneumothorax; emphysematous changes noted. |
|---|---|---|---|
| EX 4 | 2/11/98 | Whiteburg ARH | ER report: complaining of smothering; smokes 2 PPD; tightness through chest; decreased breath sounds; diagnosis: left side pneumonia, COPD |
| EX 5 | 6/15/05 | Baptist Hospital | ABG: above disability; COHB 2.6% |
| DX 15 | 3/31/95 | Pulmonary and Internal Medicine Associates / Dr. Anderson | Letter to Attorney Jones: residual volume was 189% of predicted which means that patient had panlobular and centrilobular emphysema which is type that occurs as consequence of cigarette smoking, therefore, emphysema is result of cigarette smoking and is not related to CWP or to having worked in coal mining employment; this can be stated with high degree of medical certainty |

Bristol: 352780-1

 

## PREHEARING REPORT

**JUDGE:**    Daniel F. Solomon

**CASE NAME:**    Joseph Fleming v. Aberry Coal, Inc.

**OWCP NUMBER:**    XXX-XX-0560

**BLA NUMBER:**    2012-BLA-05241

**DATE AND TIME OF HEARING:**    10/16/12 at 1:00 p.m.

**REPRESENTATIVE'S NAME:**    John R. Sigmond

**Address:**    Penn, Stuart & Eskridge
P.O. Box 2009
Bristol, VA   24203
(804 Anderson Street, Bristol, TN   37620)

**APPEARING FOR:**    Security Insurance Co. of Hartford c/o Arrowpoint Capital (Insurer)

**DATE(S) CLAIM(S) FILED:**    11/1/94 Application
8/16/10 Application

**INITIAL FINDING & DATE:**    5/1/95 DOL determination – denied
9/20/11 PDO award of benefits

**DATE OF BIRTH OF CLAIMANT:**    9/11/45

**YEARS OF COAL MINE EMPLOYMENT:**    According to DOL – 9.25 years
According to PSE – 5.3 years

**NAME OF DEPENDENTS AND BIRTHDATES:**    Arlene Bell Hunsucker Fleming
DOB: 3/3/48

**REGULATIONS APPLICABLE:**    718

**CONTESTED ISSUES:**
| | |
|---|---|
| 1. | **Timeliness** |
| 2. | **Miner** |
| 3. | **Post 1969 employment** |
| 4. | **Length of employment** |
| 5. | **Pneumoconiosis** |
| 6. | **Causal relationship** |
| 7. | **Total disability** |
| 9. | **Causation** |
| 10. | **Dependency** |
| 12. | **Responsible Operator** |
| 14. | **Subsequent Claims** |
| 15. | **Modification** |
| 18b. | **The designated Responsible Operator contest additional issues as listed in the letter dated 10/11/11.** |

**MEDICAL EVIDENCE:**    Summarized separately.   See attachment.

Abingdon: 828900-1

A173



**University Hospitals**
Medical Practices

April 16, 2012

**Corporate Health and
Executive Wellness**

Ahuja Medical Center
1000 Auburn Drive, Ste.110
Beachwood, OH 44122
216 285 4050 Phone
216 285 4044 Fax

Michael F. Blair
Penn, Stuart
Attorneys at Law
P.O. Box 2009
Bristol, VA 24203

RE:     JOSEPH FLEMING
        OWCP # XXX-XX-0560
        PS&E FILE # 40-756

Dear Mr. Blair:

The following correspondence is in reference to Joseph Fleming who was evaluated by myself on March 22, 2012. As you are aware, Mr. Fleming is a 66 year old gentleman formerly employed in the coal mines. The purpose of this evaluation and file review was to determine whether or not Mr. Fleming has coal workers' pneumoconiosis (CWP) and/or whether any respiratory or lung disease exists. In addition, if it is determined he has a respiratory-related condition, it should be opined whether or not it is related to or has been aggravated by coal dust exposure. Additionally, any respiratory impairment or disability should be outlined, and again, it should be stated if it is related to coal dust exposure. Finally, other nonrespiratory conditions should be discussed. In preparing this report, in addition to personally examining Mr. Fleming, I have reviewed the following with respect to him:

1.)    B readings of a chest X-ray dated November 15, 1994 by Drs. Wicker and Sargent;
2.)    B readings of a chest X-ray from February 23, 1995 by Drs. Spitz, Wiot and Broudy;
3.)    B reading of a chest X-ray from October 2, 2010 by Dr. DePonte;
4.)    X-ray interpretation of a film from December 3, 2010 by Dr. Knight;
5.)    B readings of a chest X-ray from January 14, 2011 by Drs. Baker, Barrett, Wheeler, Baker and Alexander;
6.)    B reading of a chest X-ray from April 20, 2011 by Drs. Dahhan and Alexander;
7.)    B reading of a chest X-ray from January 16, 2012 by Dr. DePonte;
8.)    Pulmonary function tests from November 15, 1994 (Dr. Wicker); February 23, 1995 (Dr. Broudy), April 25, 1995 (Dr. Wicker), June 27, 2008 (Dr. Meijia), August 24, 2009 (Dr. Meijia), August 11, 2010 (Dr. Meijia), January 14, 2011 (Dr. Baker), January 14, 2011 (Dr. Baker), April 20, 2011 (Dr. Dahhan), and January 16, 2012 (Dr. Gallai);

**EMPLOYER'S EXHIBITS** ___1___     **Page l of l8**

Michael F. Blair                                                            April 16, 2012
**RE:   JOSEPH FLEMING**

9.)    Quality evaluation of the pulmonary function tests from November 15, 1994 by Dr. Kraman;
10.)   Quality evaluation of the pulmonary function tests from February 23, 1995 by Dr. Burki;
11.)   Quality evaluation of the pulmonary function tests from April 25, 1995 by Dr. Burki;
12.)   Quality evaluation of the pulmonary function tests from January 14, 2011 by Dr. Michos;
13.)   Blood gas from November 15, 1994 (Dr. Wicker), June 15, 2005 (Baptist Hospital), January 14, 2011 (Dr. Baker), April 20, 2011 (Dr. Dahhan), January 16, 2012 (Dr. Gallai);
14.)   Evaluation of Dr. Anderson from May 14, 1991;
15.)   Evaluation of Dr. Wicker from November 15, 1994;
16.)   Evaluation of Dr. Broudy from February 23, 1995;
17.)   Evaluation of Dr. Uszenski from June 21, 2005;
18.)   Evaluation of Dr. Baker from January 14, 2011, as reported on January 28, 2011;
19.)   Evaluation of Dr. Dahhan from April 20, 2011;
20.)   Evaluation of Dr. Gallai from January 16, 2012;
21.)   Appalachian Regional Health Care records;
22.)   Records of Dr. Shantha;
23.)   Records of Dr. Meijia;
24.)   Current pulmonary function tests, chest X-ray as interpreted by Dr. Wheeler, EKG, arterial blood gas study and carboxyhemoglobin, nicotine and cotinine levels.

## X-RAYS

First, the chest X-ray from November 15, 1994 was interpreted by Dr. Wicker. He stated the film was 0/0 with minimally flattened diaphragms. Dr. Nicholas Sargent felt the X-ray was 0/0. The chest X-ray from February 23, 1995 was felt to be 0/0 by Drs. Spitz, Wiot and Broudy. Dr. Wiot thought that there was a suggestion of emphysema. The chest X-ray from October 2, 2010 was considered 0/0 by Dr. DePonte, with evidence of emphysema and increased lung volumes. The chest X-ray from December 3, 2010 was interpreted by Dr. Knight as revealing clear lung fields; mild flattening of the diaphragms with emphysema was reported. The chest X-ray from January 14, 2011 was interpreted by Dr. Baker as revealing t/t opacities in the mid and lower lung zones with a profusion of 1/1. Also, emphysema, granulomatous changes and bullae were said to be present. Dr. Barrett stated the film was quality 1, and Dr. Wheeler stated the film was 0/0, with a question of emphysema and hyperinflation. Dr. Alexander stated the film revealed p/p opacities in all lung zones with a profusion of 1/0, with the presence of emphysema. The chest X-ray from April 20, 2011 was considered 0/0 by Dr. Dahhan, with the presence of emphysema. Dr. Alexander felt this film revealed p/p opacities with a profusion of 1/0 in all lung zones, except the right upper lung zone; emphysema and bullae were said to be present. The chest X-ray from January 16, 2012 was read by Dr. DePonte as revealing emphysema with s/s opacities in the mid and lower lung zones with a profusion of 1/0; also, granulomatous changes were seen.

## PULMONARY FUNCTION TESTS

Pulmonary function tests from November 15, 1994 (Dr. Wicker) revealed a FVC of 4.34 liters (96% predicted), an $FEV_1$ of 2.22 liters (62% predicted) and an MVV of 78 liters/minute (55%

2

Michael F. Blair                                                                                       April 16, 2012
**RE:   JOSEPH FLEMING**

predicted).  After bronchodilators, the FVC was 4.04 liters (90% predicted) with an $FEV_1$ of 1.93 liters (54% predicted) and an MVV of 90 liters/minute (63% predicted).

Pulmonary function tests from February 23, 1995 (Dr. Broudy) revealed a FVC of 4.68 liters (97% predicted) with an $FEV_1$ of 1.97 liters (51% predicted) and an $FEV_1$% of 42%; the MVV was 77 liters/minute.

Pulmonary function tests from April 25, 1995 (Dr. Wicker) revealed a FVC of 4.44 liters (predicted 4.51 liters) with an $FEV_1$ of 2.02 liters (predicted 3.59 liters) and an MVV of 77 liters/minute (predicted 143 liters/minute).  After bronchodilators, the FVC was 4.57 liters with an $FEV_1$ of 1.92 liters and an MVV of 80 liters/minute.

Pulmonary function tests from June 27, 2008 (Dr. Meijia) revealed a FVC of 2.17 liters (52% predicted) with an $FEV_1$ of 0.81 liters (24% predicted) and an $FEV_1$% of 37%.  After bronchodilators, the FVC increased 8% to 2.35 liters (56% predicted), the $FEV_1$ increased 10% to 0.89 liters (26% predicted), and the $FEV_1$% was 38%.  The TLC was 120% predicted with an RV/TLC of 154% predicted.  The diffusing capacity was 18% predicted (corrected for lung volumes 17% predicted).

Pulmonary function tests from August 24, 2009 (Dr. Meijia) revealed a FVC of 2.20 liters (53% predicted) with an $FEV_1$ of 0.84 liters (25% predicted) and an $FEV_1$% of 38%; the MVV was 35 liters/minute (26% predicted).  After bronchodilators, the FVC was 2.08 liters (50% predicted) with an $FEV_1$ of 0.76 liters (23% predicted) and an $FEV_1$% of 36%.  The TLC was 136% predicted with an RV/TLC of 169% predicted.  The diffusing capacity was 28% predicted (corrected for lung volumes 32% predicted).

Pulmonary function tests from August 11, 2010 (Dr. Meijia) revealed a FVC of 1.83 liters (44% predicted) with an $FEV_1$ of 0.69 liters (21% predicted) and an $FEV_1$% of 37%; the MVV was 26 liters/minute (19% predicted).  After bronchodilators, the FVC was 2.01 liters (49% predicted) with an $FEV_1$ of 0.70 liters (21% predicted) and an $FEV_1$% of 35%.  The TLC was 111% predicted with an RV/TLC of 127% predicted.  The diffusing capacity was 32% predicted (corrected for lung volume 32% predicted).

Pulmonary function tests from January 14, 2011 (Dr. Baker) revealed a FVC of 3.17 liters (82% predicted) with an $FEV_1$ of 0.67 liters (22% predicted) and an $FEV_1$% of 21%.  The pulmonary function tests were felt to be acceptable by Dr. Michos.

Pulmonary function tests from April 20, 2011 (Dr. Dahhan) revealed a FVC of 2.63 liters (58% predicted), an $FEV_1$ of 0.87 liters (25% predicted) and an $FEV_1$% of 33%; the MVV was 38 liters/minute (32% predicted).  After bronchodilators, the FVC was 2.35 liters (51% predicted) with an $FEV_1$ of 0.86 liters (24% predicted) and an $FEV_1$% of 37%; the MVV was 37 liters/minute (31% predicted).  The RV was 159% predicted and the diffusing capacity was 37% predicted (corrected for lung volumes 55% predicted).  The TLC was 88% predicted and the diffusing capacity was said to 37% predicted (corrected for lung volumes 55% predicted).

Page 3 of 68

Michael F. Blair                                                                                          April 16, 2012
**RE:    JOSEPH FLEMING**

Pulmonary function tests from January 16, 2012 (Dr. Gallai) revealed a FVC of 2.8 liters (50% predicted) with an $FEV_1$ of 0.70 liters (21% predicted) and an $FEV_1$% of 34%; the MVV was 35 liters/minute (27% predicted). After bronchodilators, the FVC was 2.13 liters (51% predicted) with an $FEV_1$ of 0.76 liters (23% predicted) and an $FEV_1$% of 36%; the MVV was 36 liters/minute (27% predicted). The TLC was 117% predicted with an RV/TLC of 158% predicted. The diffusing capacity was 53% predicted (corrected for lung volumes 62% predicted).

It should be noted that the pulmonary function tests from November 15, 1994 were not felt to be acceptable by Dr. Kraman because of incomplete efforts. The pulmonary function tests from February 23, 1995were felt by Dr. Burki to be valid. The pulmonary function tests from April 25, 1995 were felt to be acceptable by Dr. Burki. The pulmonary function tests from January 14, 2011 were felt by Dr. Michos to be valid.

## BLOOD GASES
An arterial blood gas from November 15, 1994 (Dr. Wicker) with a barometric pressure of 746mmHg revealed a pH of 7.39, a $PCO_2$ of 44.3mmHg and a $PO_2$ of 67.9mmHg. A blood gas from June 15, 2005 (Baptist Hospital) revealed a pH of 7.41, a $PCO_2$ of 37.6mmHg and a $PO_2$ of 62.9mmHg; the carboxyhemoglobin level was 2.6%. A blood gas from January 14, 2011 (Dr. Baker) with a barometric pressure of 739mmHg revealed a pH of 7.44, a $PCO_2$ of 44mmHg and a $PO_2$ of 69mmHg. The blood from April 20, 2011 (Dr. Dahhan) revealed a pH of 7.40, a $PCO_2$ of 42mmHg and a $PO_2$ of 75.6mmHg; the carboxyhemoglobin level was 0.4%. A blood gas from January 16, 2012 (Dr. Gallai) revealed a pH of 7.41, a $PCO_2$ of 39.9mmHg and a $PO_2$ of 57mmHg; the carboxyhemoglobin level was 1.4%.

## EVALUATIONS
First, an evaluation of Dr. Anderson was performed on May 14, 1991, as summarized on March 31, 1995. Dr. Anderson felt one was medically capable of distinguishing between cigarette and coal mine dust exposure related disabilities. Dr. Anderson felt that Mr. Fleming's impairments and disability related to cigarette smoking. Also, it was noted that Mr. Fleming's residual volume (RV) was increased, and it was felt this indicated panlobular and centrilobular emphysema consequent to cigarette smoking. He was not felt to have legal CWP.

Dr. Wicker performed an evaluation on November 15, 1994. Mr. Fleming was said to have 20 years of coal mine employment, 18 years inside. He last worked in 1991 as an inside man, ran a miner, roof bolter and coal loader. He was said to have been a pack/day smoker dating back to 1973, and was currently smoking. Sputum production, wheezing, dyspnea and coughing were reported, and he had chest pains and edema. He was said to be on an NSAID, Tylox and Flexeril. Wheezing was heard on examination, and the various diagnostics were as outlined above. Dr. Wicker found no evidence of CWP. It was felt that impairments could not be determined because of the inability to comply with the testing protocol.

4

Page 4 of 68

Michael F. Blair                                                                    April 16, 2012
**RE:    JOSEPH FLEMING**

Next, the evaluation of Dr. Broudy from February 23, 1995 was reviewed. Mr. Fleming was said to be a smoker of a pack/day for 10 to 20 years, starting in his early 20s. He had quit for five to six years, and then resumed again. He had 22 years of coal mine employment, working underground as a roof bolter, continuous miner operator, etc. Back and orthopedic issues were outlined, and shortness of breath over several years was reported. He was said to have nerve damage in his neck, and also, he had cough and sputum production. Shortness of breath with exertion was outlined, and had a lot of wheezing. He occasionally would use an inhaler, and his medication included an NSAID, Tylox and Flexeril. On examination he had expiratory wheezes and marked delay. The various diagnostics were as outlined above, and he was felt to have chronic asthmatic bronchitis with moderately severe COPD. It was felt that his asthmatic bronchitis was secondary to cigarette smoking with a predisposition for asthma and bronchospasm. Also, he was not felt to have a coal mine dust related disorder.

Next, an evaluation of Dr. Uszenski was performed at Morristown Hamblen Hospital on June 21, 2005. Mr. Fleming was said to COPD and he presented with a spontaneous left-sided pneumothorax. He was noted to be smoking one and one-half packs of cigarettes/day for many years. Diminished breath sounds were heard on the right, and he was felt to have had a spontaneous pneumothorax with COPD, being an active smoker.

Next, the correspondence of Dr. Baker from January 28, 2011 regarding his evaluation from January 14, 2011 was reviewed. Overall, Mr. Fleming was felt to have 22 years of underground coal mine employment, working up until 1991. He was said to be a roof bolter, scoop operator, continuous miner operator, etc. Also, he was a smoker from ages 25 to 60, one-half to one pack of cigarettes/day. He had developed a spontaneous pneumothorax in the past, with attacks of wheezing and bronchitis for 17 to 18 years. Shortness of breath was outlined walking 30 to 50 yards. At the time of the evaluation, he was on prednisone, albuterol, Spiriva, Advair and oxygen. Wheezes were heard bilaterally, and the various diagnostics were as outlined above. He was felt to have CWP (category 1/1) with severe obstruction. Also, it was felt that coal mine dust exposure and smoking caused his impairments and disability. He was considered to have both clinical and legal CWP. In addition, it was noted that he had a long smoking history of 35 years (one-half to one pack of cigarettes/day), having quit five years before. It was felt that coal dust exposure and cigarette smoking could be synergistic or additive. Overall, Mr. Fleming was considered disabled from a pulmonary perspective.

Next, the evaluation of Dr. Dahhan from April 20, 2011 was reviewed. It was reported that Mr. Fleming had 16 years of coal mine employment working underground, operating a continuous miner, dozer, etc. He began smoking at age 21, averaging a pack/day for 39 years, quitting at age 60. He was on oxygen over the previous six years, and he also was on Proventil, Advair, Spiriva and prednisone 2.5mg/day. On examination he had reduced air entry with wheezes. The various diagnostics were as outlined above, and he was felt to have severe obstruction with hyperinflation and emphysema. He was not considered to have clinical CWP. His obstruction was considered related to his long smoking history, having had a past left-sided spontaneous pneumothorax.

Page 5 of 68

Michael F. Blair                                                                April 16, 2012
RE:    JOSEPH FLEMING

Next, the evaluation of Dr. Gallai from January 16, 2012 was reviewed. It was reported that Mr. Fleming had 18 years of coal mine employment up until 1991. He operated a scoop, was a roof bolter, etc. In addition, he had cough and sputum production, and in the past had a spontaneous pneumothorax. Pneumonia had occurred in the past, and he had smoked from ages 25 to 35, a half-pack/day for a total of 10 pack-years, and then he restarted at age 45 to age 60 for 15 years, a half-pack/day, for seven and one-half pack-years. He was said to have a total of 12-1/2 pack-years of smoking. Shortness of breath was outlined with minimal exertion, and he was on prednisone 5mg every other day, along with albuterol 2.5mg t.i.d., Advair 250/50, Spiriva and oxygen. He had decreased breath sounds with hyperresonance on examination, and the various diagnostics were as outlined above. He was felt to have both clinical and legal CWP, and from a pulmonary perspective was disabled from performing his previous coal mine employment.

## MEDICAL RECORDS AND REPORTS

Next, the emergency room records from Appalachian Regional Health Care were reviewed. On February 11, 1998, Mr. Fleming was noted to be smoking two packs/day. He presented with increasing chest symptoms, congestion and vomiting. Overall, he was felt to have a left lower lobe pneumonia and COPD, and was treated for such.

Dr. Shantha on February 26, 2008 outlined Mr. Fleming's respiratory symptoms of cough and congestion. He apparently had quit smoking for good and he had poor entry, but was clear. He was felt to have severe COPD with tobacco abuse. On June 29, 2008, Dr. Shantha again outlined severe COPD with tobacco abuse, and he was congratulated on smoking cessation.

Next, the records of Dr. Meijia dating back to November 7, 2008 were reviewed. Mr. Fleming was said to have COPD with reactive airways disease, with rhonchi and wheezes being heard on different examinations. He was treated with varying doses of medications for his COPD, including Spiriva, Advair, albuterol and corticosteroids. Also, intermittent courses of prednisone were provided. On August 6, 2010, it was suggested that he avoid nicotine, and was a candidate for lung transplantation.

At the time of **MY EVALUATION** Mr. Fleming reported that he was on oxygen at night, and he used oxygen during the day as needed. He was chronically on prednisone and would have flares of his lung problem, requiring increasing doses at times. His breathing problems had been in existence over the last 20 years, and were getting worse over the last seven to eight years. He had difficulty with activities of daily living. He coughed and brought up phlegm every day. Also, he wheezed on occasion. He slept on two to three pillows and would awaken at night with shortness of breath, without sleep apnea. He had no edema, and occasionally had nonspecific chest pain.

His **PAST MEDICAL HISTORY** was notable for no medicine allergies, and he currently was on oxygen, as outlined above, along with Spiriva, Advair 250/50 and albuterol via a nebulizer as needed. In addition, he was on prednisone 5mg every other day, and it would be increased as needed. Also, he occasionally took a water pill. In the past, he had had three hernia repairs, two on the left and one on the right, and he had a collapsed left lung because of a

6

Michael F. Blair                                                    April 16, 2012
**RE:    JOSEPH FLEMING**

pneumothorax. He was hospitalized around four months ago for his breathing. He reported the usual childhood illnesses, without a history of whooping cough, TB, asthma, pneumonia, sinus problems, a hiatal hernia, eczema, hayfever or nasal polyps.

His **FAMILY HISTORY** was notable in that both parents died in their 80s; his mother had kidney problems. One sibling died of a motor vehicle accident, and there was nobody with any respiratory problems.

His **SOCIAL HISTORY** was notable in that he was married and had been in the Army from 1962 to 1965, stationed in Korea. He began smoking around age 25 or so, a half-pack/day or less, he reported. There was a period of smoking cessation after around nine or 10 years, and he began smoking at age 45, quitting at age 59 (2004 or so). He never smoked a cigar or pipes, and he used exercise bands for strengthening. He was pretty much sedentary at home. He liked to watch sports.

His **WORK HISTORY** was notable for around 18-1/2 years of coal mine employment up until 1992. He came out of the mines when he hurt his back, and he had disability because of his lungs. His work was underground, and he mostly operated a continuous miner. In the last job he would have to lift up to 35 to 45 pounds. He stated the remote control box weight about that much, and he occasionally would have to help with the cables. Other than that, not much more manual labor was required than was outlined. He occasionally operated the miner on the deck and with a remote control, depending on where the coal was being mined. He stated that the coal was anywhere from 38 to 60 inches in height, with the last coal being 56 inches. The dustiest jobs that he held were operating the miner, and also, he operated a shuttle car and loader. Also, he did dead work, operated all of the equipment in the mines, and even shot coal.

His **REVIEW OF SYSTEMS** was pretty much as noted above, with ecchymosis of his hands.

On **PHYSICAL EXAMINATION** his blood pressure was 130/80 with a respiratory rate of 16 to 18 breaths/minute and unlabored, and he was wearing his oxygen; also, his heart rate was 80 beats/minute and regular. His head, ears, eyes, nose and throat revealed no use of accessory muscles. He had equal expansion of his chest with markedly diminished breath; the breath sounds were distant and he had some anterior wheezes. He had no murmurs, gallops or rubs, and his abdomen was benign, without masses or areas of tenderness. He had some ecchymosis of his hands. His **EKG** revealed evidence of poor R wave progression, with a question of an old anterior myocardial infarction. A **resting arterial blood gas** revealed a pH of 7.44, a $PCO_2$ of 40.3mmHg, a $PO_2$ of 65mmHg and a **carboxyhemoglobin level** of 3.8%. An **exercise blood gas** revealed a pH of 7.39, a $PCO_2$ of 44mmHg and a $PO_2$ of 56mmHg. The heart rate increased from 63 to 89 beats/minute with exercise. In addition, both his **nicotine** and **cotinine levels** were nondetectable. **Pulmonary function tests** revealed a FVC of 2.48 liters (58% predicted), an $FEV_1$ of 0.68 liters (20% predicted) and an $FEV_1$% of 28%; the MVV was 31 liters/minute (23% predicted). After bronchodilators, the FVC increased 12% to 2.76 liters (65% predicted), the $FEV_1$ increased 25% to 0.85 liters (25% predicted), and the $FEV_1$% was 31%; the MVV was 37 liters/minute (26% predicted). His TLC was 125% predicted with an RV/TLC of

7

Michael F. Blair                                                    April 16, 2012
**RE:   JOSEPH FLEMING**

71% (predicted 34%).  His diffusing capacity was 57% predicted (corrected for lung volumes 61% predicted).  Next, his **chest X-ray** was reviewed by Dr. Wheeler, and it revealed no micronodularity related to past coal mine dust exposure with the film being 0/0.  Some nodular scarring was seen in the left upper and left mid lung zone.  Also, there was a question of a pattern of COPD with hyperinflation being present.

In **SUMMARY** , Mr. Fleming is a 66 year old with shortness of breath and cough and sputum production.  He is being treated chronically with steroids and other medications for COPD.  He smoked regularly up until 2004, although there were some periods of cessation, and he had 18 years of coal mine employment up until 1992.  On examination he had decreased breath sounds, and his chest X-ray did not reveal micronodularity.  There was some nonspecific nodular scarring in the left lung.  His pulmonary function tests over time have demonstrated severe airflow obstruction with a marked decrease in the $FEV_1$ and $FEV_1$ / FVC ratio.  He has increased total lung capacity (TLC) measurements with air trapping with an RV/TLC of 201% predicted.  His diffusing capacity measurements are decreased.

**DISCUSSION**:        Based on a review of the above information, it can be appreciated that Mr. Fleming does not have micronodularity related to past coal mine dust exposure.  He has some nonspecific nodular scarring in the left lung, which probably is postinflammatory in nature.  His total lung capacity (TLC) is increased, which indicates he does not have restriction.  While his diffusing capacity measurements are decreased, this in the presence of severe obstruction relates to the presence of chronic obstructive pulmonary disease (COPD).  Also, his auscultatory findings are consistent with this diagnosis.  When all the above information is looked at in total, Mr. Fleming does not have the condition of clinical coal workers' pneumoconiosis (CWP).

From an impairment perspective, Mr. Fleming has severe airflow obstruction which would be considered disabling.  Clearly, he cannot perform his previous coal mine employment.

A remaining issue is what has caused Mr. Fleming's obstruction.  Coal mine dust exposure can cause significant and disabling airflow obstruction.  While it can do so, it does not do so always.  That means that when a former miner has obstruction, a doctor must assess both the tests and other evidence to determine whether the obstruction is related to coal dust, cigarette smoking, some other factor or all of the above.  The reason for this is that miners are also susceptible for developing disorders which affect the general public.

One way to distinguish between the effects of coal dust and cigarette smoking is to examine the $FEV_1$ / FVC ratio.  Epidemiological studies relied on by DOL  (Morgan; Soutar and Hurley; Attfield and Houdos) establish that while the $FEV_1$ decreases in relationship to coal mine dust exposure, the $FEV_1$ / FVC ratio generally is preserved.  In contrast, with smoking-related forms of COPD, the $FEV_1$ / FVC ratio is generally reduced (Huhti; Ashley; Balchum; Coates).  This distinction is not just another way of saying coal dust causes restriction and cigarette smoking causes obstruction. A preserved $FEV_1$ / FVC ratio does not just happen when there is restriction.  It happens when there is obstruction too.   In regards to this, one should appreciate that recently published investigations by both Iyler and Wan describe subjects among the general population

8

A181

Michael F. Blair                                                                                    April 16, 2012
**RE:    JOSEPH FLEMING**

having a proportional decrease in the FVC and $FEV_1$ such that the $FEV_1$ / FVC ratio was generally preserved. However, restriction was not present since their total lung capacity (TLC) measurements were normal. Both investigations go on to outline there are different causes for this functional pattern, including COPD. Hence, simply relying on a reduced $FEV_1$ / FVC ratio for defining the presence or absence of obstructive lung disease will miss a significant portion of individuals having airways disease. This has direct application to miners, as described above, where the general pattern of obstruction is such that the $FEV_1$ / FVC ratio is preserved. The reason for this is that as is illustrated in Figure 1, air trapping (the presence of which is based on an increased residual volume or RV, which increases the RV/TLC ratio) forces a reduction of the FVC. This reduction of the FVC in the setting of obstruction normalizes the $FEV_1$ / FVC ratio, resulting in a pattern of "pseudo-restriction". In this setting, obstruction is really present and its related air trapping has normalized the ratio. Furthermore, restriction is not really present despite the reduced FVC. The FVC is reduced because of the air trapping, and if the total lung capacity (TLC) was measured, under such circumstances, it would be either normal or increased. It should be remembered, as defined by the American Thoracic Society (1991), the presence of restriction or small lung size is defined by having a reduced TLC measurement. The relationships between $FEV_1$, FVC and the $FEV_1$ / FVC ratio or $FEV_1$%, in the settings of smoking-related obstruction, restriction and legal CWP or "pseudo-restriction", are illustrated in Figure 2.

Also relevant in this case is the issue of emphysema. While both coal dust and cigarette smoke can cause emphysema, there are ways to distinguish between them and their effects. Typically, emphysema related to cigarette smoking is more diffuse than emphysema due to coal dust. This is logical, since the characteristics of the inhaled agents are disparate. In order to appreciate this fact, as outlined by the Surgeon General (1989), over 4,000 different components are contained within cigarette smoke with an estimated $10^{10}$ particles/ml. In addition, it is estimated that $10^{15}$ free radicals exist in the gas phase of each puff of tobacco smoke with $10^{18}$ free radicals being present per each gram of tar (Tuder). Furthermore, the various particles contained within cigarette smoke are dispersed in a vapor phase, with the particles being a median diameter of between 0.18 to 0.34 microns (Bernstein). Also, the Surgeon General (1984) outlined that 30 to 40% of these predominantly submicron particles end up reaching alveolar structures. The contrasting differences between tobacco smoke and coal mine dust exposures are first illustrated by the characterization of particle size distribution within coal mine dust. In regards to this, Seixas determined that there was a bimodal distribution of particle diameter size within coal dust, centering around 17 microns and 5 microns. Additionally, in the Burkart investigation, the distribution of the particle diameters was assessed in relationship to different mining operations. Overall, it was found that the particle sizes were comparable to that observed by Seixas, with only an extremely small fraction being below 1 micron in diameter. Additionally, coal dust is composed of a heterogeneous  inorganic (nonliving) materials composed largely of carbon, hydrogen oxygen and nitrogen with rank being defined by the carbon content in relationship to other components (Parkes). These other components include various minerals, the amount of which decreases as the rank increases. The most common minerals include clays, quartz, pyrite and calcite, with trace metals also being present. In contrast, cigarette smoke is a combustion product of tobacco (an organic or living substance), which contains, as noted, thousands of

9

Michael F. Blair                                                     April 16, 2012
**RE:    JOSEPH FLEMING**

different components in both solid and gaseous phases, coupled with an abundance of free radicals. It should be noted the gases include toluene, benzene and phenol.

Based on the above information, the character of the components contained within coal dust and cigarette smoke are vastly different. As such, it follows that the disruption and alteration of tissue structures by these two agents within the lungs would be quite disparate. The larger coal dust particles would not have the same distribution pattern within the lungs as the submicron particles contained within cigarette smoke. Also, the abundance of free radicals contained within cigarette smoke ($10^{15}$ / puff), along with the abundance of associated submicron particles, readily explains why cigarette smoke penetrates more deeply into alveolar structures than coal dust. This deeper penetration causes an inflammatory response in a different location than coal dust, resulting in a diffuse pattern of emphysema formation, in contrast to a more localized form of emphysema induced by coal mine dust. Furthermore, the diffuse emphysematous process that characterizes that related to cigarette smoking is supported by an associated diffusing capacity (DLCO) reduction, which develops as the emphysema becomes more advanced. The presence of a DLCO reduction indicates there has been a diffuse destruction of the alveolar capillary bed. A decreased DLCO is characteristically seen in relationship to emphysema caused by cigarette smoking (Berend, Baldi, Klein). In contrast, with coal mine dust exposure, generally the diffusing capacity is preserved (Nemery; Morgan, 1972). This supports the fact that a diffuse emphysematous destruction of lung tissue is not characteristic of coal mine dust exposure. Furthermore, the diffuse emphysematous process related to cigarette smoking often is associated with large lung volumes (increased total lung capacity), coupled with air trapping (increased RV/TLC).

Specific to Mr. Fleming, one can appreciate that he has a severe reduction of his $FEV_1$ down to 20% predicted with a severe reduction of his $FEV_1$ / FVC ratio to 20% preserved ratio 70% or higher). As outlined above, this pattern of impairment is inconsistent with one related to past coal mine dust exposure and the presence of legal CWP. Furthermore, it should be appreciated that Dimich-Ward and Bates have outlined in research accepted by D.O.L., the characteristics of latent and progressive legal CWP. Similar to the works of Morgan, Soutar and Hurley, and Attfield and Houdos, they outlined that latent and progressive legal CWP is associated with a symmetrical reduction of the $FEV_1$ and FVC, such that the $FEV_1$ / FVC ratio is preserved. Obviously, this has not occurred with respect to Mr. Fleming. Over time, his $FEV_1$ has decreased in a disproportionate fashion to his FVC. Also, one should appreciate that Mr. Fleming has a marked reduction of his diffusing capacity measurements, consistent with the presence of diffuse emphysema. Again, this type of emphysema relates to smoking, and not past coal mine dust exposure. This is consistent with his marked air trapping (increased RV/TLC), which also is not consistent with the presence of legal CWP. Lastly, one should appreciate that he had a marked bronchodilator response. Mineral dust exposure causes airway scarring (Churg and Wright). This type of scarring would not be expected to be associated with a significant bronchodilator response as was displayed by Mr. Fleming. When all the above information is looked at in total, Mr. Fleming does not have the condition of legal CWP.

10

Page 10 of 28

A183

Michael F. Blair                                                                                April 16, 2012
**RE:    JOSEPH FLEMING**

At this point, an additional comment is in order in regards to the assertion that the additive effects of coal dust and smoking are equal. This conclusion is based on the works of Attfield and Houdos who stated that the $FEV_1$ loss occurring in association with coal dust exposure before 1969 is 5 to 9cc/year and after 1969 coal dust exposures of $2mg/m^3$ resulted in a loss of 2 to 3 cc/year. Attfield and Houdos go on report that the $FEV_1$ loss occurring in relationship to smoking one pack of cigarettes per day is 5cc/year. If one assumes this data is correct, cigarette smoking causes a 100% greater decrease in airflow in relationship to coal dust exposure occurring after 1969 (2-3cc/year vs. 5cc/year). Also, there is an additional support for a greater adverse effect of smoking compared to coal dust exposure as is applicable to the time frame after 1969. Let me explain why this is so.

Recently, Kohansal in the American Journal of Respiratory and Critical Care Medicine (which as noted above is published by the ATS) investigated the natural history of chronic airflow obstruction beginning in the early 1970s for a period of approximately 28 years, utilizing the Framingham offspring cohort. This investigation probably represents the most thoroughly studied population to date pertaining to the natural history of COPD. Kohansal determined that the annualized decline of $FEV_1$ for healthy "never" smoking males was 19.6cc/year. In contrast, the mean drop in $FEV_1$ for smokers was 38.2cc/year or 27.1 cc per pack-years of cigarettes smoked. Thus, the difference between the two groups namely smokers and nonsmoker of approximately 9cc/year, represents the annual fall in $FEV_1$ attributed to cigarette smoking alone. This figure exceeds by 80%, the 5cc/year reported by Attfield and Houdos, in regards to the annual $FEV_1$ loss caused by smoking. Thus, the loss of $FEV_1$ caused by smoking far exceeds that caused by coal mine dust exposure. Cigarette smoking is thus typically much more destructive demonstrating larger decrements than Attfield initially believed.

A further comment should be made why the research of Kohansal is more authoritative than the works of Attfield and Houdos, as applicable to the degree of obstruction (reduction in $FEV_1$) caused by smoking. First, while I accept the overall finding of Attfield and Houdos, their data was generated at one point in time. Namely, they studied coal miners from 1969-1971, during the first round of the National Study of Coal Workers' Pneumoconiosis (NSCWP). This data formed the basis of their conclusions as to how both coal dust and cigarette smoking adversely affects lung function. In contrast, Kohansal studied over 4000 individuals (Framingham offspring) over a period of 23 years. During this timeframe, the participants underwent periodic assessments every four years up until 1998. In total, seven examinations were performed. The data presented by Kohansal in his publication represents analysis of data collected from exam 1 (1971-1975), exam 2 (1979-1982), exam 5 (1991-1995), and exam 6 (1996-1997) of his investigation. As pointed out in the published report, these exams were selected because at those points in time spirometric measurements were conducted along with the collection of other relevant clinical information. The bottom line is that Attfield and Houdos studied their population from a "snap-shot" perspective, only at one point in time. In contrast, the Kohansal investigation represents a "feature film", collecting data at multiple points in time and then integrating the information gathered. The data in Kohansal's cohort study of the Framingham offspring represents the true "natural history" of COPD, defining how airflow decreases over time. Furthermore based on study design (snap shot vs. feature film), the conclusions drawn by

11

A184

Michael F. Blair                                                                April 16, 2012
**RE:     JOSEPH  FLEMING**

Kohansal compared to those of Attfield and Houdos, as relates to the natural history of COPD and how smoking adversely affects airflow are much more accurate.  Finally, it should be emphasized that the results of Kohansal pertaining to the magnitude of $FEV_1$ reduction caused by smoking is consistent with what others have published in the medical literature (Sherman, Tashkin, Fletcher, Xu).  Based on a review of the above information, the Kohansal conclusions pertaining to the magnitude of smoking's adverse effect on airflow are more accurate than that of Attfield and Houdos on this subject matter.  Kohansal, as well as the other above-referenced studies all establish that Attfield and Houdos significantly underestimated the impact of cigarette smoking vis a vis coal dust on lung function.  Kohansal undermines the idea that cigarette smoking and coal dust cause the same amount of decrement in lung function.  In fact, Kohansal goes on to show that cigarette smoking causes much more significant decrements than coal dust over time.

In  **CONCLUSION** , it can be stated with a reasonable degree of medical certainty that Mr. Fleming does not have clinical or legal CWP.  While he is disabled from a pulmonary perspective, this does not relate to past coal mine dust exposure and the presence of CWP. Because his current chest X-ray reveals some nodularity, it should be compared to previous studies to assure stability.  If you have any questions, please feel free to contact me.

Sincerely,

David M. Rosenberg, M.D., M.P.H.
Medical Director Corporate Health
University Hospitals
Cleveland, Ohio

DMR/tas

12

Michael F. Blair                                                              April 16, 2012
RE:    JOSEPH  FLEMING

## REFERENCES

American Thoracic Society.   Lung function testing:   Selection of reference values and interpretive strategies. Am. Rev. Respir. Dis. 144:1202-18, 1991.

Ashley, F et al. Pulmonary function: relation to aging, cigarette habit, and mortality. Ann. Intern. Med. 82: 739-45, 1975.

Attfield, MD and Houdos, TK.  Pulmonary Function of U.S. coal miners related to dust exposure estimates.  Am. Rev. Respir. Dis.  145:605-09, 1992.

Balchum, O. et al. A survey for chronic respiratory in an industrial city. Am. Rev. Respir. Dis. 86:675-85, 1962.

Baldi, S., et al.  Relationship between extent of pulmonary emphysema by high-resolution computed tomography and lung elastic recoil in patients with chronic obstructive pulmonary disease.  Am. J. Respir. Crit. care Med.  164:585-589, 2001.

Bates, DV et al.  "A Longitudinal Study of Pulmonary Function in coal Miners in Lorraine, France".  Am. J. Indus. Med.  31-32 , 1985.

Berend, N., et al.  Correlation between the function and structure of the lung in smokers.  Am. Rev. Respir. Dis.  119:695-705, 1979.

Bernstein, David M., A review of the influence of particle size, puff volume, and inhalation pattern on the deposition of cigarette smoke particles in the respiratory tract.  Inhalation Technology, 16:675-689, 2004.

Burkart, Joseph, E, et al.  Particle Size distributions in underground coal mines.  Am. Ind. Hyg. Assoc. J., 48:122-126, 1987.

Churg, A. and Wright, TJL.  Small airway lesions in patients exposed to non-asbestos mineral dust.  Human pathology.  14:688-93, 1983.

Coates, ES et al. Chronic respiratory disease in postal employees. JAMA 191: 161-66, 1965.

Dimich-Ward and Bates.  Reanalysis of a longitudinal study of pulmonary function in coal miners in Lorraine, France.  Am. J. Ind. Med. 25:613-23, 1994.

Fletcher C and Peto R. The natural history of chronic airflow obstruction. Br. Med J 25: 1645-8, 1977.

Huhti, E, et al. Chronic respiratory disease in rural men. An epidemiological survey at Hankasalmi, Finland. Ann. Clin. Res. 10: 87-94, 1978.

13

A186

Michael F. Blair                                                    April 16, 2012
**RE:    JOSEPH FLEMING**

Iyler, Vivek, N., et al.  The Nonspecific Pulmonary Function Test:  Longitudinal Follow-up and Outcomes.  Chest, 139:878-886, 2011.

Klein, JS, et al.  High-resolution CT diagnosis of emphysema in symptomatic patients with normal chest radiographs and isolated low diffusing capacity.  Radiology. 182:817-821, 1992.

Kohansal, R, et. al. The natural history of chronic airflow obstruction revisited, an analysis of the Framingham offspring cohort. Am. J. Respir. Crit. Care Med. 180: 3-10, 2009.

Morgan, WKC, et al.  Respiratory impairment in simple coal workers' pneumoconiosis.  J. Occup. Med.  14:839-844, 1972.

Morgan WKC, Handelsman L, Kibelstis, J et al, Ventilatory capacity and lung volumes of U.S. coal miners.  Arch. Environ. Health, 28:182-189; 1974.

Nemery B, et al.  Impairment of Ventilatory Function and Pulmonary Gas Exchange in Nonsmoking Coal Miners.  Lancet. 1427-29, (1987).

Parkes, W. Raymond. Occupational Lung Disorders, 3rd edition, Butterworth-Heinemann Ltd., 1994.

Rabe, KF, et al.  Global Strategy for the Diagnosis, Management, and Prevention of Chronic Obstructive Pulmonary Disease; GOLD Executive Summary.  Am. J. Respir. Crit. Care Med. 176:532-555, 2007.

Seixas, NS, et al.  Variability of particle size-specific fractions of personal coal mine dust exposure. Am. Ind. Hyg. Assoc. J., 56, 1995.

Sherman CB et. al. Longitudinal lung function decline in subjects with respiratory symptoms. Am. Rev. Respir. Dis. 146: 855-59, 1992.

Soutar, CH and Hurley JF.  Relation between dust exposure and lung function in miners and ex-miners.  Br. J. Ind. Med. 34:307-320, 1986.

Surgeon General.  "Summary of the Health Consequences of Smoking:  Chronic Obstructive Lung Disease", 1984.

Surgeon General.  "Reducing the Health Consequences of Smoking:  25 Years of Progress", 1989.

Tashkin, DP et al. The UCLA population studies of chronic obstructive respiratory disease VIII. Effects of smoking cessation on lung function: a prospective study of a free living population. Am. Rev. Respir. Dis. 130: 707-15, 1984.

Page 14 of 108

A187

Michael F. Blair                                                    April 16, 2012
**RE:    JOSEPH  FLEMING**

Tuder, Rubin, M., et al.   Cellular and molecular mechanisms of alveolar destruction in emphysema:  An evolutionary perspective.  Proc. Am. Thorac. Soc., 3:503-511, 2006.

Wan, Emily S, et al.  Clinical and Radiographic Predictors of GOLD-Unclassified Smokers in the COPD Gene Study.  Am. J. Respir. Crit. Care Med., 184:57-63, 2011.

Xu X. et. al. Smoking, changes in smoking habits and rate of decline in FEV1: new insight into gender differences. Eur. Respir J 2:811-16, 1994.

Page 15 of 68

A188

**JOSEPH  FLEMING**                                            **OWCP # XXX-XX-0560**
**PS&E FILE # 40-756**

| SOURCE | WICKER | | BROUDY | | WICKER | | BAPTIST | | MEIJIA | | MEIJIA | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 11-15-94 | | 02-23-95 | | 04-25-05 | | 01-15-05 | | 06-27-08 | | 08-24-09 | |
| CME (yrs) | 20 | | 22 | | | | | | | | | |
| Smoking (pck/yrs) | 21 | | 10-20 | | | | | | | | | |
| Examination | wheezes | | wheezes | | | | | | | | | |
| | B | A | B | A | B | A | B | A | B | A | B | A |
| FVC units/liters | 4.34 (96) | 4.04 (90) | 4.68 (97) | | 4.44 | 4.57 | | | 2.17 (52) | 2.35 (56) | 2.20 (53) | 2.08 (50) |
| FEV$_1$ liters | 2.22 (62) | 1.93 (54) | 1.97 (51) | | 2.02 | 1.92 | | | 0.81 (24) | 0.89 (26) | 0.84 (25) | 0.76 (23) |
| FEV$_1$ % | | | 42 | | 77 | 80 | | | 38 | 38 | 38 | 36 |
| MVV l/m | 78(55) | 90(63) | 77 | | | | | | | | 35(26) | |
| TLC liters | | | | | | | | | (120) | | (136) | |
| DLCO; DLCO/VA | | | | | | | | | (18); (17) | | (28); (32) | |
| RV/TLC % pred | | | | | | | | | (154) | | (169) | |
| | R | E | R | E | R | E | R | E | R | E | R | E |
| PH | 7.39 | | | | | | 7.41 | | | | | |
| PCO$_2$ mmHg | 44.3 | | | | | | 37.6 | | | | | |
| PO$_2$ mmHg | 67.9 | | | | | | 62.9 | | | | | |
| CO% | | | | | | | 2.6 | | | | | |
| O$_2$ MAX | | | | | | | | | | | | |
| VE (liters) | | | | | | | | | | | | |
| VD/VT | | | | | | | | | | | | |
| RQ | | | | | | | | | | | | |
| CAT scan | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Chest X-ray | | | | | | | | | | | | |
| Wicker | 0/0 | | | | | | | | | | | |
| Sargent | 0/0 | | | | | | | | | | | |
| Spitz | | | 0/0 | | | | | | | | | |
| Wiot | | | 0/0 | | | | | | | | | |
| Broudy | | | 0/0 | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

( ) = % predicted

Page 16 of 18

**JOSEPH  FLEMING** 

OWCP # XXX-XX-0560
PS&E FILE # 40-756

| SOURCE | MEIJIA | | | | | | BAKER | | DAHHAN | | GALLAI | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 08-11-10 | | 10-02-10 | | 12-03-10 | | 01-14-11 | | 04-20-11 | | 01-16-12 | |
| CME (yrs) | | | | | | | 22 | | 16 | | 18 | |
| Smoking (pck/yrs) | | | | | | | 17-35 | | 39 | | 10 | |
| Examination | | | | | | | wheezes | | dec.; wheezes | | decreased; hyperresonance | |
| | B | A | B | A | B | A | B | A | B | A | B | A |
| FVC units/liters | 1.83 (44) | 2.01 (49) | | | | | 3.17 (82) | | 2.63 (58) | 2.35 (51) | 2.80 (50) | 2.13 (51) |
| FEV$_1$ liters | 0.69 (21) | 0.70 (21) | | | | | 0.67 (22) | | 0.87 (25) | 0.86 (24) | 0.70 (21) | 0.76 (23) |
| FEV$_1$ % | 37 | 35 | | | | | 21 | | 33 | 37 | 34 | 36 |
| MVV l/m | 26(19) | | | | | | | | 38(32) | 37(31) | 35(27) | 36(27) |
| TLC liters | (111) | | | | | | | | (88) | | (117) | |
| DLCO; DLCO/VA | (32); (32) | | | | | | | | (37); (55) | | (53); (62) | |
| RV/TLC % pred | (127) | | | | | | | | | | (158) | |
| | R | E | R | E | R | E | R | E | R | E | R | E |
| PH | | | | | | | 7.44 | | 7.40 | | 7.41 | |
| PCO$_2$ mmHg | | | | | | | 44 | | 42 | | 39.9 | |
| PO$_2$ mmHg | | | | | | | 69 | | 75.6 | | 57 | |
| CO% | | | | | | | | | 0.4 | | 1.4 | |
| O$_2$ MAX | | | | | | | | | | | | |
| VE (liters) | | | | | | | | | | | | |
| VD/VT | | | | | | | | | | | | |
| RQ | | | | | | | | | | | | |
| CAT scan | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Chest X-ray | | | | | | | | | | | | |
| DePonte | | | 0/0 | | | | | | | | 1/0; s/s | |
| Knight | | | | | clear | | | | | | | |
| Baker | | | | | | | 1/1; t/t | | | | | |
| Barrett | | | | | | | quality 1 | | | | | |
| Wheeler | | | | | | | 0/0 | | | | | |
| Alexander | | | | | | | | | 1/0; p/p | | | |
| Dahhan | | | | | | | | | 0/0 | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

( ) = % predicted

Page 17 of 68

**JOSEPH FLEMING**  **OWCP # XXX-XX-0560**

**PS&E FILE # 40-756**

| SOURCE | ROSENBERG | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 03-22-12 | | | | | | | | | |
| CME (yrs) | 18-1/2 | | | | | | | | | |
| Smoking (pck/yrs) | 20+ | | | | | | | | | |
| Examination | dec.; wheezes | | | | | | | | | |
| | B | A | B | A | B | A | B | A | B | A |
| FVC units/liters | 2.48 (58) | 2.76 (65) | | | | | | | | |
| FEV$_1$ liters | 0.68 (20) | 0.85 (25) | | | | | | | | |
| FEV$_1$ % | 28 | 31 | | | | | | | | |
| MVV l/m | 31(23) | 37(26) | | | | | | | | |
| TLC liters | (125) | | | | | | | | | |
| DLCO; DLCO/VA | (57); (61) | | | | | | | | | |
| RV/TLC % pred | (201) | | | | | | | | | |
| | R | E | R | E | R | E | R | E | R | E |
| PH | 7.44 | 7.39 | | | | | | | | |
| PCO$_2$ mmHg | 40.3 | 44 | | | | | | | | |
| PO$_2$ mmHg | 65 | 56 | | | | | | | | |
| CO% | 3.4 | | | | | | | | | |
| O$_2$ MAX | | | | | | | | | | |
| VE (liters) | | | | | | | | | | |
| VD/VT | | | | | | | | | | |
| RQ | | | | | | | | | | |
| CAT scan | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Chest X-ray | | | | | | | | | | |
| Wheeler | 0/0 | | | | | | | | | |

( ) = % predicted

## FIGURE 1: air trapping and resultant decrease in FVC



Normal spirometry: note residual volume (RV)

Spirometry: where obstruction has re... in air trapping (inc... RV); this forces a ... reduction in the siz... the FVC

A192

# FIGURE 2: FEV1/FVC ratio

**Smoking related obstruction**: airflow reduction causes the FEV1 to decrease disproportionately to the FVC, reducing the ratio

$$\frac{FEV1 \Downarrow}{FVC} = FEV1\% \Downarrow \quad \text{(ratio decreas}$$

**Restriction**; symmetrical reduction of FEV1 and FVC; as such the ratio remains normal

$$\frac{FEV1 \Downarrow}{FVC \Downarrow} = FEV1\% \quad \text{(Ratio remain}$$

**Legal CWP or "pseudo-restriction"**: symmetrical reduction of FEV1 and FVC; airtrapping forces a decrease in the FVC, which normalizes the ratio in the setting of obstruction

$$\frac{FEV1 \Downarrow}{FVC \Downarrow} = FEV1\% \quad \text{(Ratio remain normal)}$$


**University Hospitals**
Medical Practices

**ARTERIAL BLOOD GAS INTERPRETATION**    **Corporate Health and
Executive Wellness**

DATE:                    3/20/12                          Ahuja Medical Center
                                                          1000 Auburn Drive, Ste.110
**NAME:**                **Joseph Fleming**               Beachwood, OH 44122
                                                          216 285 4050 Phone
**AGE:**                 **66**                           216 285 4044 Fax

**HEIGHT:**              **70 inches**

S.S. #:

SOURCE:                  Blount Memorial Hospital

SITE:                    radial single  stick; collect time:      run time:      ; sample was placed on ice prior to
                         run time.

BAROMETRIC PRESSURE: 746 mmHg (altitude 0-2999 feet)

EQUIPMENT TEMP:          37∘C; calibrated

TECHNICIAN:              c. cook

HEART RATE:              63 bpm

FIO2:                    21% at rest

PO$_2$:                  Decreased

PCO$_2$:                 Normal

PH:                      Normal

Carboxyhemoglobin:       Not Measured

IMPRESSION:              OXYGENATION:
                              Reduced with increased A-a gradient (V-Q mismatch)
                         ACID-BASE/VENTILATION:      Normal
                         [1]

                         _____
                         David M. Rosenberg, M.D., M.P.H.

--------

[1] ARTERIAL BLOOD GAS MACHINE WAS CALIBRATED BEFORE AND AFTER EACH
MEASUREMENT.

A194

 

Blount Memorial Hospital



| | Test record (BGEM Blood) | **Test date/time**<br>20-Mar-2012<br>12:47 |
|---|---|---|

## Identification
| | | | | | |
|---|---|---|---|---|---|
| Patient ID | 4166082 | ID2 | 4166082000781239 2744419 |
| Operator ID | 2965 | Operator name | M. McMillan RRT |

## Test information
| | | | | | |
|---|---|---|---|---|---|
| Sample type | Arterial | Test Status | OK | Site | Default |
| Card lot | 07-11321-00 | Card expiry date | 03-May-12 | Department | Default |
| Host | RTH520 | Host SN | 11091521400453 | Host version | 3.9.4 |
| Reader | Rdr520 | Reader SN | 00520 | Reader version | 2.2.5.7 |
| Ambient pressure | 745.1 mmHg | Hemodilution | No | Sensor config | 16.5 |
| Patient temperature | | Card barcode | 6015 | | |
| Error | | | | | |

## Documentation
| | | | |
|---|---|---|---|
| Critical action | | Ordering physician | |
| Critical notify | | Order date/time | |
| Read back | | Collected by | |
| Notify date/time | | Collection date/time | |
| Reject test | | | |
| LIS status | Pending | Patient location | |
| LIS submission message | Waiting for interface engine ... | | |
| Comments | at rest | | |

## Respiratory parameters
| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Allen's test | Positive | ET | | PEEP | | TR | |
| Delivery system | Room Air | FIO2 | 21 % | PIP | | VT | |
| Draw site | R Radial | IT | | PS | | | |
| Mode | | MAP | | RR | 19 | | |

## Measured results
| Analyte | Result | Reference range | Critical range | |
|---|---|---|---|---|
| pH | 7.446 | 7.350 - 7.450 | 7.200 - 7.600 | |
| pCO2 | 40.3 mmHg | 35.0 - 45.0 | 20.0 - 70.0 | |
| pO2 | 65.4 mmHg | 80.0 - 100.0 | 40.0 - 751.0 | Low |

## Calculated results
| Analyte | Result | Reference range | Critical range | |
|---|---|---|---|---|
| cHCO3- | 27.7 mmol/L | 21.0 - 28.0 | 0.0 - 86.0 | |
| cTCO2 | 29.0 mmol/L | 22.0 - 29.0 | 0.0 - 86.0 | |
| BE(ecf) | 3.7 mmol/L | -3.0 - 3.0 | -31.0 - 31.0 | High |
| cSO2 | 93.3 % | 96.0 - 97.0 | -1.0 - 101.0 | Low |

## Corrected results
| Analyte | Result | Reference range | Critical range |
|---|---|---|---|

Page 22 of 68

A195


**University Hospitals**
Medical Practices

<u>**ARTERIAL BLOOD GAS INTERPRETATION**</u>     **Corporate Health and
Executive Wellness**

DATE:               3/20/12

NAME:               **Joseph Fleming**               Ahuja Medical Center
                                                      1000 Auburn Drive, Ste.110
AGE:                **66**                            Beachwood, OH 44122
                                                      216 285 4050 Phone
HEIGHT:             **70 inches**                     216 285 4044 Fax

S.S. #:

SOURCE:             Blount Memorial Hospital

SITE:               radial single  stick; collect time:      run time:      ; sample was placed on ice prior to
                    run time.

BAROMETRIC PRESSURE: 746 mmHg (altitude 0-2999 feet)

EQUIPMENT TEMP:     37°C; calibrated

TECHNICIAN:         c. cook

HEART RATE:         85 bpm

FIO2:               21% with exercise

PO$_2$:             Decreased

PCO$_2$:            Normal

PH:                 Normal

Carboxyhemoglobin:  Not Measured

IMPRESSION:         OXYGENATION:
                         Reduced with increased A-a gradient (V-Q mismatch)
                    ACID-BASE/VENTILATION:      Normal
                    With exercise, hypoventilation and worsening hypoxia.[1]

                    _____
                    David M. Rosenberg, M.D., M.P.H.

_____
[1] ARTERIAL BLOOD GAS MACHINE WAS CALIBRATED BEFORE AND AFTER EACH
MEASUREMENT.

Page 23 of 68

A196

 

Blount Memorial Hospital



# Test record (BGEM Blood)

**Test date/time**
20-Mar-2012
14:42

## Identification

| | | | | |
|---|---|---|---|---|
| Patient ID | 4166082 | ID2 | 4166082000781239274427 | |
| Operator ID | 2613 | Operator name | C. Cook CRT | |

## Test information

| | | | | | |
|---|---|---|---|---|---|
| Sample type | Arterial | Test Status | OK | Site | Default |
| Card lot | 07-11321-00 | Card expiry date | 03-May-12 | Department | Default |
| Host | RTH520 | Host SN | 11091521400453 | Host version | 3.9.4 |
| Reader | Rdr520 | Reader SN | 00520 | Reader version | 2.2.5.7 |
| Ambient pressure | 745.4 mmHg | Hemodilution | No | Sensor config | 16.5 |
| Patient temperature | | Card barcode | 6015 | | |
| Error | | | | | |

## Documentation

| | | |
|---|---|---|
| Critical action | | Ordering physician |
| Critical notify | | Order date/time |
| Read back | | Collected by |
| Notify date/time | | Collection date/time |
| Reject test | | |
| LIS status | Sent | Patient location |
| LIS submission message | SUCCESS \| Patient Name: FLEMING, JOSEPH | |
| Comments | with exercise | |

## Respiratory parameters

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Allen's test | Positive | ET | | PEEP | | TR | |
| Delivery system | Room Air | FiO2 | 21 % | PIP | | VT | |
| Draw site | R Radial | IT | | PS | | | |
| Mode | | MAP | | RR | 26 | | |

## Measured results

| Analyte | Result | Reference range | Critical range | |
|---|---|---|---|---|
| pH | 7.397 | 7.350 - 7.450 | 7.200 - 7.600 | |
| pCO2 | 44.4 mmHg | 35.0 - 45.0 | 20.0 - 70.0 | |
| pO2 | 56.7 mmHg | 80.0 - 100.0 | 40.0 - 751.0 | Low |

## Calculated results

| Analyte | Result | Reference range | Critical range | |
|---|---|---|---|---|
| cHCO3- | 27.3 mmol/L | 21.0 - 28.0 | 0.0 - 86.0 | |
| cTCO2 | 28.7 mmol/L | 22.0 - 29.0 | 0.0 - 86.0 | |
| BE(ecf) | 2.5 mmol/L | -3.0 - 3.0 | -31.0 - 31.0 | |
| cSO2 | 88.8 % | 96.0 - 97.0 | -1.0 - 101.0 | Low |

## Corrected results

| Analyte | Result | Reference range | Critical range | |
|---|---|---|---|---|

**Page 24 of 68**

A197

FLEMING, JOSEPH                    ID: 000781239          ██ Mar 2012 ██ 11:18:03      BLOUNT MEMORIAL

66years                   Vent. rate      64 bpm        ████████████ rhythm
Male                      PR interval    158 ms         Septal infarct, age undetermined
                          QRS duration    86 ms         ██████████
Room: OP                  QT/QTc     356/367 ms
                          P-R-T axes   87  75  80

          Technician: SB

                                              Referred by: ROSENBERG                    Unconfirmed



ACCOUNT #: 4166082                    DOB: 9-11-45

150 Hz     25.0 mm/s     10.0 mm/mV                        4 by 2.5s + 1 rhythm 18        MAC55

A198

FLEMING, JOSEPH                        ID: 000781239              20-Mar-2012   11:18:03      BLOUNT MEMORIAL

66years                  Vent. rate        64 bpm         Normal sinus rhythm
Male                     PR interval      158 ms          Septal infarct, age undetermined
                         QRS duration      86 ms          Abnormal ECG
Room: OP                 QT/QTc        356/367 ms
                         P-R-T axes     87  75  80

Technician: SB

FLEMING, JOSEPH                          OP          R
AGREE WITH COMPUTER
JJI;ms 3-21-12

Referred by: ROSENBERG

ACCOUNT #: 4168082                    DOB: 9-11-45



150 Hz    25.0 mm/s    10.0 mm/mV         4 by 2.5s   1 rhythm ld            MAC55



**University Hospitals**
Medical Practices

**Corporate Health and
Executive Wellness**

Ahuja Medical Center
1000 Auburn Drive, Ste.110
Beachwood, OH 44122
216 285 4050 Phone
216 285 4044 Fax

<u>**PULMONARY FUNCTION INTERPRETATION**</u>

DATE:                        3/20/2012

**NAME:**                    **Joseph Fleming**

S.S. #:

SOURCE:                      Blount Memorial Hospital

Lung Volumes:                FVC - Moderately reduce, TLC - Increased, FRC - Increased, RV/TLC - Increased, RV -
Increased

Flows:                       $FEV_1$ - Severely reduced, $FEV_1$% - Reduced, $FEF_{25-75}$ - Severely reduced

DLCO:                        Moderately reduced

DLCO/VA:                     Moderately reduced

MVV:                         Severely reduced

IMPRESSION:                  Severe obstruction, no restriction.  Definite bronchodilator response.  The
                             diffusing capacity corrected for lung volumes is moderately reduced, indicating
                             there is some loss of the alveolar capillary bed.  Air trapping is present.

David M. Rosenberg, M.D., M.P.H.

A200



**Blount Memorial Hospital**
*Maryville, TN*

Date: 03/20/12
Account #:  404600560
Name: Fleming, Joseph
Physician: Dr Rosenberg
Technician: Mary McMillan,RRT
Medical Record #:  act 4166082 mr 7812:

Age: 66     Height(in): 70     Race: Caucasian     Gender: Male
Weight(lb): 172     Diagnosis: black lung     Medication: Albuterol, Advair Prednisone, Spiriva
Dyspnea Rest: Yes     Dyspnea Exercise: Yes     Cough: Yes     Productive (cc):
Persistent: Yes     Smoker: Yes     How Long(pk/yrs): 16     Stopped(yrs): 7     Temp: 23     PBar: 746
Cigarettes: Yes     Cigars: No     Occ Exposure:

## PULMONARY FUNCTION ANALYSIS

### Spirometry

| | | Ref | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 4.27 | 2.48 | 58 | 2.76 | 65 | 12 |
| FEV1 | Liters | 3.40 | 0.68 | 20 | 0.85 | 25 | 25 |
| FEV1/FVC | % | 79 | 28 | | 31 | | |
| FEF25-75% | L/sec | 3.39 | 0.24 | 7 | 0.28 | 8 | 20 |

### Lung Volumes

| | | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| TLC | Liters | 7.03 | 8.81 | 125 |
| RV | Liters | 2.37 | 6.29 | 265 |
| FRC N2 | Liters | 3.71 | 6.58 | 177 |
| VC | Liters | 4.27 | 2.52 | 59 |
| IC | Liters | 3.05 | 2.23 | 73 |
| ERV | Liters | 1.52 | 0.35 | 23 |
| RV/TLC | % | 34 | 71 | |

### Diffusion    Hb:

| | | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 21.5 | 12.2 | 57 |
| DL Adj | mL/mmHg/min | 21.5 | 12.2 | 57 |
| VA | Liters | 6.57 | 4.93 | 75 |
| DLCO/VA | mL/mHg/min/L | 4.06 | 2.47 | 61 |
| DL/VA Adj | mL/mHg/min/L | | 2.47 | |
| IVC | Liters | | 2.28 | |

### ABGs:

| | | |
|---|---|---|
| FIO2 | % | (7.35-7.45) |
| pH | | (35.00-45.00) |
| PCO2 | mmHg | (80.00-100.00) |
| PO2 | mmHg | (22.00-26.00) |
| HCO3 | meq/L | (-2.00-2.00) |
| BE | | (>95) |
| %HbO2 | % | |

## Comments:

**Spirometry data is ACCEPTABLE and REPRODUCIBLE. Patient gave great effort. Pt. room air oxygen saturation at rest= 96%, HR64, breathsound very diminished throughout with inspiratory crackles bases bilaterally and expiratory wheezes mainstem. Strong productive cough of thick clear to white sputum.**

Page 29 of 68

A201



### Blount Memorial Hospital
**Maryville, TN**

――――――――――――――― **Calibration Report** ―――――――――――――――

Flow Cal Date: 03/20/12                          Technician: Mary McMillan,RRT    PBar: 746

| Reference: | – 1 – | – 2 – | – 3 – | – 4 – | Mean | (2.91 - 3.09) |
|------------|-------|-------|-------|-------|------|---------------|
|            | 3.00  | 3.01  | 2.99  | 3.00  | 3.01 | 3.00          |



**Mass Flow Sensor: Flow Calibration**
- [ ] 3 liters in 6 seconds.
- [ ] 3 liters in 3 seconds.
- [ ] 3 liters per second.

**Pulmonary Function Testing performed on a SensorMedics Vmax System.**

| | Pre | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| **Diffusing Capacity** | | | | | | | | | |
| DLCO | mL/mmHg/min | 11.1 | 13.3 | | | | | | |
| DL Adj | mL/mmHg/min | 11.1 | 13.3 | | | | | | |
| DLCO/VA | mL/mmHg/min/L | 2.31 | 2.62 | | | | | | |
| DL/VA Adj | mL/mmHg/min/L | 2.31 | 2.62 | | | | | | |
| VA | Liters | 4.79 | 5.08 | | | | | | |
| IVC | Liters | 2.24 | 2.31 | | | | | | |
| BHT | Sec | 13.36 | 12.83 | | | | | | |

| | | Ref | Pre Meas | Pre % Ref |
|---|---|---|---|---|
| DLCO | mL/mmHg/min | 21.5 | 12.2 | 57 |
| DL Adj | mL/mmHg/min | 21.5 | 12.2 | 57 |
| DLCO/VA | mL/mmHg/min/L | 4.06 | 2.47 | 61 |
| DL/VA Adj | mL/mmHg/min/L | | 2.47 | |
| VA | Liters | 6.57 | 4.93 | 75 |
| IVC | Liters | | 2.28 | |
| BHT | Sec | | 13.09 | |

A202



## Blount Memorial Hospital
Maryville, TN

**Fleming, Joseph**
**SSN: 404600560**
Date of Test: 03/20/12
Physician: Dr Rosenberg
Technician: Mary McMillan,RRT

act 4166082 mr 781239
DOB: 09/11/45                                          Age: 66
Standing Height without shoes (in): 70  (cm): 178
Weight(lb): 172   (kg): 78.2
Gender: Male    Race: Caucasian

This Form was designed to meet the documentation requirements for Social Security Disability Determination.
**Spirometry Reference: BMH.KNUDSON(1983)**          **Tabular Data and Spirometric Tracing are reported in BTPS conditions**

|         |        | Ref  | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---------|--------|------|----------|-----------|-----------|------------|------------|
| FVC     | Liters | 4.27 | 2.48     | 58        | 2.76      | 65         | 12         |
| FEV1    | Liters | 3.40 | 0.68     | 20        | 0.85      | 25         | 25         |
| FEV1/FVC % |     | 79   | 28       |           | 31        |            |            |
| FET100% | Sec    |      | 10.48    |           | 9.95      |            | -5         |



Volume Scale 10 mm per Liter.
Time base is 20 mm per second.    The Marked FEV 1 was calculated using the "Backward Extropolation to Time Zero" Method.
Spirometry data is ACCEPTABLE and REPRODUCIBLE. Patient gave great effort. Pt. room air oxygen saturation at rest= 96%,
HR64, breathsound very diminished throughout with inspiratory crackles bases bilaterally and expiratory wheezes mainstem. Strong
productive cough of thick clear to white sputum.
Pulmonary Function Testing was performed using  SensorMedics Vmax System.
Device Type: Mass Flow Sensor with digital integration of Flow to Volume.

Calibration Data: (See Calibration Tracing Attached)
Calibration Date: 03/20/12
Cal Syringe Reference Volume: 3.00
Calibration Results: 3.00

Software Version: IVS-0101-20-5B

A203

| Name: | **Joseph Fleming** |
| Date of Birth: | 09/11/1945 (66yrs) |
| | Male, 178 cm, 78.0 kg |

EXERCISE TEST / Test Summary
Patient ID 404600560

**Test Information**

| Date/Time | 03/20/2012 - 1:41:55pm |
| Total Test Time | 4:25 min |
| Duration PRETEST | 0:11 min |
| Duration MANUAL | 4:14 min |
| Duration RECOVERY | 0:00 min |
| Artifact Time | 0 s |

**Medication:**

| Phase: | Time min | Load W | Revs rpm | HR /min | Sys/Dia mmHg | RPP 1/100 | V4* mm | V4* mV/s | V6* mm | V6* mV/s |
|---|---|---|---|---|---|---|---|---|---|---|
| PRETEST | | | | | | | | | | |
| | 0.5 | 10 | 0 | 63 | | | | | | |
| MANUAL | | | | | | | | | | |
| | 1.0 | 10 | 0 | 62 | | | | | | |
| | 1.5 | 10 | 0 | 63 | | | | | | |
| | 2.0 | 10 | 0 | 73 | | | | | | |
| | 2.5 | 10 | 0 | 55 | | | | | | |
| | 3.0 | 10 | 0 | 79 | | | | | | |
| | 3.5 | 5 | 0 | 85 | | | | | | |
| | 4.0 | 5 | 0 | 89 | | | | | | |

**Reason for Test**
Patient on stationary bike. O2
saturation dropped to 84%,
HR 127. Placed on N/C.

**Reasons for Termination**
Dyspnea
Chest discomfort
Target HR attained

**Comment:**

**Interpretation**
HR/RPP/PWC:
  HR at rest: 63 /min
  Max. HR: 89 /min
    (96 % of Target HR: 92 /min)
  Max. METS: 0.00
BP:
  BP at rest:
  Max. BP:
Arrhythmias:
  QRS: 0,
Significant ST Change:

Page 31 of 66

03/20/2012  1:41:55pm

Physician:

Technician:

A204

**Blount Memorial Hospital**
**Maryville,TN**


**Date: 03/20/12    act 4166082 mr 781239    Post**

**MVV — Fleming, Joseph - 404600560**



| | Ref | Best | % Ref | 1 | 2 | %Chg |
|---|---|---|---|---|---|---|
| MVV | 133 | 37 | 28 | 37 | 36 | 19 |
| f | | 80 | | 80 | 85 | 0 |
| MVV 6 | | 39 | | 39 | 35 | 26 |

A205

 

**Blount Memorial Hospital**
**Maryville, TN**

Date: 03/20/12    act 4166082 mr 781239    Post

**MVV — Fleming, Joseph - 404600560**



| | Ref | Best | % Ref | 1 | %Chg |
|---|---|---|---|---|---|
| MVV | 133 | 37 | 28 | 37 | 19 |
| f | | 60 | | 60 | 0 |
| MVV 6 | | 39 | | 39 | 26 |

Trial 1

**Blount Memorial Hospital**
**Maryville,TN**

 

**Date: 03/20/12    act 4166082 mr 781239    Post**

**Flow Volume Loop — Fleming, Joseph - 404600560**

| | Ref | Best | % Ref | 1 | 2 | 3 | %Chg |
|---|---|---|---|---|---|---|---|
| FVC | 4.27 | 2.76 | 65 | 2.76 | 2.33 | 2.24 | 12 |
| FEV1 | 3.46 | 0.85 | 25 | 0.81 | 0.85 | 0.82 | 25 |
| FEV1/FVC | 79 | 31 | | 29 | 37 | 37 | |
| FEF25-75% | 3.39 | 0.28 | 8 | 0.28 | 0.36 | 0.34 | 20 |
| PEF | 8.41 | 2.63 | 31 | 2.33 | 2.47 | 2.63 | 9 |

A207

**Blount Memorial Hospital** 
**Maryville,TN**

**Date: 03/20/12    act 4166082 mr 781239    Post**

**Flow Volume Loop — Fleming, Joseph - 404600560**



A208

**Blount Memorial Hospital**
**Maryville,TN**  

**Date: 03/20/12    act 4166082 mr 781239    Post**

**Flow Volume Loop — Fleming, Joseph - 404600560**



Page 36 of 108

A209

**Blount Memorial Hospital**
**Maryville,TN** 

Date: 03/20/12    act 4166082 mr 781239      Pre

**Single Breath DLCO — Fleming, Joseph - 404600560**



| | Ref | Best | % Ref | 1 | 2 |
|---|---|---|---|---|---|
| DLCO | 21.5 | 12.2 | 57 | 11.1 | 13.3 |
| DL Adj | 21.5 | 12.2 | 57 | 11.1 | 13.3 |
| IVC | | 2.28 | | 2.24 | 2.31 |
| VA | 6.57 | 4.93 | 75 | 4.79 | 5.08 |
| DL/VA Adj | | 2.47 | | 2.31 | 2.62 |

A210

**Blount Memorial Hospital**
**Maryville,TN**  

Date: 03/20/12    act 4166082 mr 781239    Pre

## Lung Volumes — Fleming, Joseph - 404600560

|        | Ref   | Best  | % Ref | 1     | 2     |
|--------|-------|-------|-------|-------|-------|
| TLC    | 7.03  | 8.81  | 125   | 8.67  | 8.77  |
| VC     | 4.27  | 2.52  | 59    | 2.52  | 2.38  |
| FRC N2 | 3.71  | 6.58  | 177   | 6.33  | 6.82  |
| ERV    | 1.62  | 0.35  | 23    | 0.28  | 0.43  |
| RV     | 2.37  | 6.29  | 266   | 6.05  | 6.39  |

Trial 2

N2:  1.4 %          FRC:  6.88 L

Wash Time:  5.0 Min

Vt vs Time

Vo time

CO2 vs Time

**Blount Memorial Hospital**  
**Maryville,TN**

Date: 03/20/12    act 4166082 mr 781239    Pre

**MVV — Fleming, Joseph - 404600560**

| | Ref | Best | % Ref | 1 | 2 |
|---|---|---|---|---|---|
| MVV | 133 | 31 | 23 | 31 | 30 |
| f | | 80 | | 80 | 75 |
| MVV 6 | | 31 | | 31 | 30 |



A212

**Blount Memorial Hospital**
**Maryville,TN**      

Date: 03/20/12    act 4166082 mr 781239    Pre

**MVV --- Fleming, Joseph - 404600560**



| | Ref | Best | % Ref | 1 |
|---|---|---|---|---|
| MVV | 133 | 31 | 23 | 31 |
| f | | 80 | | 80 |
| MVV 6 | | 31 | | 31 |

Page 40 of 68

**Blount Memorial Hospital**
**Maryville, TN** 

Date: 03/20/12   act 4166082 mr 781239   Pre

**Flow Volume Loop — Fleming, Joseph - 404600560**

| | Ref | Best | % Ref | 1 | 2 | 3 |
|---|---|---|---|---|---|---|
| FVC | 4.27 | 2.48 | 58 | 2.48 | 2.22 | 1.76 |
| FEV1 | 3.40 | 0.68 | 20 | 0.68 | 0.65 | 0.65 |
| FEV1/FVC | 79 | 28 | | 28 | 29 | 37 |
| FEF25-75% | 3.39 | 0.24 | 7 | 0.24 | 0.23 | 0.29 |
| PEF | 8.41 | 2.42 | 29 | 2.19 | 2.42 | 2.13 |



A214

**Blount Memorial Hospital**
**Maryville,TN**

**Date: 03/20/12    act 4166082 mr 781239    Pre**

**Flow Volume Loop — Fleming, Joseph - 404600560**



A215

**Blount Memorial Hospital** 
**Maryville,TN**

**Date: 03/20/12    act 4166082 mr 781239    Pre**

**Flow Volume Loop — Fleming, Joseph - 404600560**



**Blount Memorial Hospital**
**Maryville,TN** 

Date: 03/20/12    act 4166082 mr 781239      Pre

**Flow Volume Loop — Fleming, Joseph - 404600560**



A217

**Blount Memorial Hospital**
**Maryville,TN**



## Vmax Flow Volume Calibration



| | | Avg Corr | | | Stroke Volume | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Target | Fact | 1 | 2 | 3 | 4 | Mean | %Target |
| Inspire | 3.00 | 1.054 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 100 |
| Expire | 3.00 | 1.057 | 3.01 | 2.99 | 3.00 | 3.01 | 3.00 | 100 |

Date: 03/20/12    Pbar: 745 mmHg    Relative Humidity: 50 %
Calibration Time: 06:35    Temp: 22.6 C    — Vmax —



A218

**Blount Memorial Hospital**
**Maryville,TN**

Date: 03/19/12   mr 614521          Pre

**N2 Analyzer Calibration**



| Date: 03/20/12 | | —O2— | | Time: 06:37 | —CO2— | Vmax Mode |
|---|---|---|---|---|---|---|
| | Expected | Actual | Differ | Expected | Actual | Differ |
| Cal 1 | 16.0 | 16.0 | 0.0 | 4.00 | 4.01 | 0.01 |
| Cal 2 | 100.0 | 100.1 | 0.1 | 0.00 | 0.01 | 0.01 |
| Transit | < 1.00 | 0.731 | | < 1.00 | 0.586 | |
| Response | < 0.150 | 0.115 | | < 0.150 | 0.097 | |

A219

L A B C O R P – K N O X V I L L E  (CLIA 44D0690507)
1924 Alcoa Highway  (865) 305-9705
Knoxville, TN  37920

FLEMING JOSEPH              Acct #: 41538302      TV = 0        Printed: 21MAR12
SSN: 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                                                Time:   1724
(9130)8867960      66 YRS    MALE         DOB: 11SEP45          Page:    1
Dr. LABCORP COOP INTERFA          Order Dr. LABCORP COOP INTERFACE

*Rosenberg*

<< CARDIOPULMONARY >>

    SPECIMEN DATE      20MAR12
    COLLECTION TIME    1225 ___

                                                        REF RANGE  UNITS
                  -----------Blood Gases - Special Studies--------------------

Carboxyhgb                3.4 f                                      %
Oxyhemoglobin             65.8                                      %
Total Hgb                 16.0                                      g/dl
Carboxyhgb (03OCT07 -- Current)
The carboxyhemoglobin normals are distributed into three
sub-populations:
Suburban non-smokers <1.5% of this patient's Total Hgb
Smokers               1.5-5.0% of this patient's Total Hgb.
Heavy smoker          5.0-9.0% of this patient's Total Hgb.

ATTENDING PHYSICIAN:

PATIENT MAY HAVE BEEN
DISCHARGED BEFORE THIS
REPORT WAS SEEN BY YOU.

LABORATORY

KEY TO SYMBOLS ----
f = Footnote

    FLEMING JOSEPH           Acct #: 41538302      TV = 0        End of Chart

A220

**BLOUNT MEMORIAL HOSPITAL LABORATORIES**
Blount Memorial Hospital  865-977-5595
907 East Lamar Alexander Parkwy
Maryville, TN 37804
Printed: 03/27/2012 7:08AM

**ROBERT M. POTTER, M.D., DIRECTOR**
Blount Outpatient Laboratory  865-273-1600
2032 Chilhowee Medical Park
Maryville, TN 37804

**RESULT FORM**

| | |
|---|---|
| Patient: FLEMING , JOSEPH | Ordering Provider: ROSENBERG, DAVID |
| DOB: 09/11/1945    66y M | Ordered For: 03/20/2012 12:02PM |
| Phone: (865)397-9854 | Order ID: 3485-OH-12083 |
| Medical Record #000781239 | Location: OCCUPATIONAL HEALTH |
| Account #: 4166082 | Orbit ID: 000781239 |

NICOTINE AND METAB.                                      Blount Memorial Hospital SID: 6865711
Order Choice Status: Final                                       Collected: 03/20/2012 12:02PM
Resulted: 03/23/2012 6:02AM
Order Choice    Blount Memorial Accession ID: T26897
Comments:

| TEST | RESULT | REP RANGE | UNIT |
|---|---|---|---|
| NICOTINE | None Detected | | |

Unit: ng/mL
(NOTE)
Nicotine levels greater than 2.0 are indicative
of active
tobacco product use.

| | | | |
|---|---|---|---|
| COTININE | None Detected | | |

Unit: ng/mL
(NOTE)
Cotinine levels greater than 20.0 are indicative
of active
tobacco product use.

Pending Order Choice: None

Results sent to:    ROSENBERG, DAVID

Lab Report                                      Page 1 of 1                    FLEMING , JOSEPH, Order ID: 3485-OH-12083

A221



NAME: FLEMING, JOSEPH

**DEPT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**
National Institute for Occupational Safety and Health
Federal Mine Safety & Health Act 1977
**B-READING**

Coal Worker's Health Surveillance Program
NIOSH PO Box 4258
Morgantown, WV 26504

Date: Mar 20, 2012

ID# 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

DOB: 9/11/1945

**PENNSTUART**

**CHEST** (PA) **LAT  RAO  LAO  AP**

Film Agency: BLOUNT MEMORIAL HOSP.

| 1. FILM QUALITY | | Comments: U/R: NIOSH DOES NOT ALLOW CLASSIFICATIONS OF DIGITAL IMAGES / LEFT SCAPULA ON PERIPHERY LUNG |
|---|---|---|
| ☐ 1 ☐ 2 ☐ 3 ☒ 4 | ☐ Dark  ☒ Improper Position  ☐ Hypoinflation<br>☐ Light  ☐ Poor Contrast  ☐ Mottle<br>☐ Artifacts  ☐ Poor Processing | |

**2A. Any Parenchymal abnormalities consistent with Pneumoconiosis?**      YES ☐ goto 2B, 2C    NO ☐ goto 3A

**2B. Small Opacities**

a. Shape / Size

| Primary | | Secondary | |
|---|---|---|---|
| p | s | p | s |
| q | t | q | t |
| r | u | r | u |

b. Zones

| | R | L |
|---|---|---|
| Upper | | |
| Middle | | |
| Lower | | |

c. Profusion

| 0/_ | 0/0 | 0/1 |
|---|---|---|
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. Large Opacities**
Size  0  A  B  C

**4C.Mark all boxes that apply**
Airway Disorders
☐ Increased lung markings
☐ Hyperinflation
Bony Abnormalities
☐ Chest cage
☐ Fracture, healed (non-rib)
☐ Fracture, not healed (non-rib)
☐ Scoliosis
☐ Vertebral column
Abnormalities of the Diaphragm
☐ Eventration
☐ Hiatus hernia
Lung Abnormalities
☐ Azygos lobe
☐ Density
☐ Infiltrate
☐ Nodule, nodular lesion
Miscellaneous Abnormalities
☐ Cyst
☐ Foreign Body
☐ Surgery / sternal wires
Vascular Disorders
☐ Aorta, anomaly of
☐ Vascular abnormalikty

**3A. Any Pleural abnormalities consistent with Pneumoconiosis?**      YES ☐ goto 3B, 3C    NO ☐ goto 4A

**3B. Pleural Plaques**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on)<br>1=<½  2=¼-½  3=>½ | WIDTH (profile only)<br>(3mm minimum width)<br>a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | O R 1 2 3 | O L 1 2 3 |
| Face On | O R L | O R L | O R A B C | O L A B C |
| Diaphrahm | O R L | O R L | | |
| Other site(s) | O R L | O R L | | |

**3C. Costrophrenic Angle Obliteration**    R L  goto 3D      NO ☐ goto 4A

**3D. Diffuse Pleural Thickening**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on)<br>1=<½  2=¼-½  3=>½ | WIDTH (profile only)<br>(3mm minimum width)<br>a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | O R 1 2 3 | O L 1 2 3 |
| Face On | O R L | O R L | O R A B C | O L A B C |

**4A. ANY Other Abnormalities?**    YES ☑ goto 4B, 4C, 4D, 4E      NO ☐ goto

**4B Other Symbols (Obligatory)**

| aa | at | ax | bu | ca | cg | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | me | pa | pb | pi | px | ra | rp | od |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

☑ Report other diseases or significant abnormalities in section 4C/4D

**4D.** CHEST PA [ON CD]: ILL DEFINED 1CM RADIODENSITY COMPATIBLE WITH NODULE OR SCAR LATERAL LUL BETWEEN POSTEROLATERAL RIBS 5-6 AND APPROXIMATELY 1CM MASS OR SCAR LATERAL LEFT MID LUNG BETWEEN POSTEROLATERAL RIBS 7-8 COMPATIBLE WITH INFLAMMATORY DISEASE MORE LIKELY THAN METASTASES. CHECK CLINICALLY AND GET CT SCAN FOR BETTER EVALUATION.
MINIMAL HYPERINFLATION WITH POSSIBLE DECREASED UPPER LUNG MARKINGS COMPATIBLE WITH EMPHYSEMA / CHECK PULMONARY FUNCTIONS AND SMOKING HISTORY.
FOCAL ARTERIOSCLEROSIS AORTIC ARCH AND MINIMAL TORTUOSITY DESCENDING THORACIC AORTA.
MINIMAL MEDIASTINAL AND POSSIBLE INTRAABDOMINAL OBESITY. CHECK BODY MASS INDEX.
OTHERWISE NORMAL.
APPROXIMATE CTR: 12.2/32.1 EXCLUDING CARDIOPHRENIC ANGLE FAT PAD.

**C O M M E N T S**

NOTE: MASSES IN LATERAL LEFT MID AND UPPER LUNG ARE NOT LARGE OPACITIES OF CWP BECAUSE THEY ARE PERIPHERAL AND THERE ARE NO SYMMETRICAL SMALL NODULAR INFILTRATES IN CENTRAL MID AND UPPER LUNGS. ALSO NIOSH STILL DOES NOT ALLOW ILO CLASSIFICATION OF DIGITAL IMAGES BUT IT HAS BEGUN THE PROCESS OF

**4E. Should worker see personal physician for findings in section 4.?**    YES ☑  NO ☐      Date Notified:    /    /

**5.** ☐☐☐ ☐☐ ☐☐☐☐
Physician's Soc. Security #

Name:  Paul S. Wheeler, M.D.

Address:  Johns Hopkins Hospital, 600 N. Wolfe Street, Baltimore, MD 21287 USA

Film Reader's Initials

*Date of Reading*
Mar 26, 2012 18:10 hr

Page 49 of 68

A222

 

# JOHNS HOPKINS HOSPITAL
## DEPARTMENT OF RADIOLOGY - PNEUMOCONIOSIS SECTION - (410) 955-5423

| Company: | Filming Agency: |
|---|---|
| **PENNSTUART** | **BLOUNT MEMORIAL HOSP.** |

| Name: FLEMING, JOSEPH | DOB: Sep 11, 1945 | ID# 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 | Mar 20, 2012 |
|---|---|---|---|

**MAR 20, 2012 CHEST PA (ON CD):**
ILL DEFINED 1CM RADIODENSITY COMPATIBLE WITH NODULE OR SCAR LATERAL LUL BETWEEN
POSTEROLATERAL RIBS 5-6 AND APPROXIMATELY 1CM MASS OR SCAR LATERAL LEFT MID LUNG BETWEEN
POSTEROLATERAL RIBS 7-8 COMPATIBLE WITH INFLAMMATORY DISEASE MORE LIKELY THAN METASTASES.
CHECK CLINICALLY AND GET CT SCAN FOR BETTER EVALUATION.
MINIMAL HYPERINFLATION WITH POSSIBLE DECREASED UPPER LUNG MARKINGS COMPATIBLE WITH
EMPHYSEMA / CHECK PULMONARY FUNCTIONS AND SMOKING HISTORY.
FOCAL ARTERIOSCLEROSIS AORTIC ARCH AND MINIMAL TORTUOSITY DESCENDING THORACIC AORTA.
MINIMAL MEDIASTINAL AND POSSIBLE INTRAABDOMINAL OBESITY. CHECK BODY MASS INDEX.
OTHERWISE NORMAL.
APPROXIMATE CTR: 12.2/32.1 EXCLUDING CARDIOPHRENIC ANGLE FAT PAD

NOTE: MASSES IN LATERAL LEFT MID AND UPPER LUNG ARE NOT LARGE OPACITIES OF CWP BECAUSE THEY
ARE PERIPHERAL AND THERE ARE NO SYMMETRICAL SMALL NODULAR INFILTRATES IN CENTRAL MID AND
UPPER LUNGS. ALSO NIOSH STILL DOES NOT ALLOW ILO CLASSIFICATION OF DIGITAL IMAGES BUT IT HAS
BEGUN THE PROCESS OF ACCEPTING THEM PROBABLY LATER THIS YEAR
QUALITY: U/R: NIOSH DOES NOT ALLOW CLASSIFICATIONS OF DIGITAL IMAGES / LEFT SCAPULA ON
PERIPHERY LUNG
**Signed: Paul S. Wheeler, M.D.   03/26/2012 18:10**

---

**Report Printed on : Mar 26, 2012 at 6:10 PM**                                        **Page 1 of 1**

A223

# CURRICULUM VITAE

## DAVID M. ROSENBERG, M.D., M.P.H.

**BORN:**  October 5, 1948

**UNDERGRADUATE DEGREE:**  Ohio State University, 1970, B.S. in Biochemistry, Summa Cum Laude

**MEDICAL DEGREE:**  Case Western Reserve University, 1974.

**GRADUATE DEGREE:**  Masters of Public Health (MPH); Medical College of Wisconsin; 5/96

**INTERNSHIP:**  Internal Medicine, Duke University Medical Center, 1974-1975

**RESIDENCY:**  Internal Medicine, Duke University Medical Center, 1975-1976

**FURTHER TRAINING:**

1) Clinical Associate - National Heart, Lung & Blood Institute, 1976-1979 (including Pulmonary Fellowship)
2) Commencing August 1992: Master of Public Health; Medical College of Wisconsin; Academic Program in Occupational Medicine; courses completed include: Occupational Epidemiology, Biostatistics, Health Services Administration, Environmental Health, Occupational Medicine, Toxicology; Behavioral Science in Occupational Medicine; Clinical Prevention; Project in Occupational Medicine

**HONORS:**  Phi Beta Kappa; Alpha Omega Alpha

**PRESENT POSITION:**

Director of University Occupational Health Services, Chagrin Highlands
Director of Employee Health, University Hospitals Health Services
Private Practice; 3909 Orange Place, #2300, Orange Village, Ohio  44122

**PAST POSITIONS:**

Director of Employee Health, University Hospitals of Cleveland
Private Practice: Pulmonary Disease/Internal Medicine, 5850 Landerbrook Drive, Mayfield Heights, Ohio  44124
Director University Occupational Health Services at Landerbrook
Director Occupational Medicine, University Hospitals Health System
Director of the Medical Intensive Care Unit, Mt. Sinai Medical Center of Cleveland, 1979-1984
Director of Residency Training for the Department of Medicine, Mt. Sinai Medical Center of Cleveland, 1981-1984
Associate Director, Occupational Medicine/Pulmonary Services, Mt. Sinai Medical Center of Cleveland
Director of Employee/Occupational Health Services, BP of America, 1992-1995

**ACADEMIC APPOINTMENTS:**

Assistant Professor of Medicine, Case Western Reserve University School of Medicine, 1979-1985
Assistant Clinical Professor, Case Western Reserve University School of Medicine, 1985 to the present

**BOARD CERTIFICATION:**

Internal Medicine - 1977
Pulmonary Disease - 1980
Occupational Medicine - 1995

**Page 5 of 68**

OTHER CERTIFICATION:

Certified NIOSH B reader - 7/01/00 - 06/30/04

MEMBERSHIP:

American Thoracic Society, American College of Chest Physicians
American College of Occupational Medicine
American College of Physicians
American College of Occupational and Environmental Medicine

FELLOWSHIP:

American College of Physicians
American College of Chest Physicians

LICENSURE: Ohio

AWARDS: Mortimer Siegel Teaching Award - 1987
America's Top-Rated Physicians - 2000; Center for the Study of Services - Consumers' Checkbook
Town & Country Magazine; Top Physicians - 2000

CONSULTING POSITIONS/APPOINTMENTS:

Medical Advisor in Pulmonary Disease, Society Security Administration
Medical Specialist in Pulmonary Disease, Industrial Commission, State of Ohio
Clinical Investigator, Sandoz Research Institute
Member of Occupational Lung Disease Committee (ACOEM); 1997-2000

TEACHING RESPONSIBILITIES:

1.  Director of Residency Training in Internal Medicine, Mt. Sinai Medical Center, July 1981-1984

2.  Preceptor for Core Clerkship in Internal Medicine for third year medical students, CWRU, 3 months/year from 1979-1984

3.  Attending on Medical Intensive Care Unit, Mt. Sinai Medical Center, 6 months/year from 1979-1984

4.  Responsible for training pulmonary fellow rotating to Mt. Sinai from University Hospitals of Cleveland (12 months/year) 1979-1991; continued participation in training program directly at University Hospitals 1991-present

5.  Responsible for teaching medical students electing their fourth year pulmonary or MICU (Medical Intensive Care Unit) 4-5 months/year, 1979-1984

6.  Teaching of pulmonary physiology to respiratory therapists, 3 lectures/year, 1979-1984

7.  Noon conferences in pulmonary medicine 1/month for 6 sessions/year 1979-1989 at Mt. Sinai; 1-2/year 1985-1991

8.  Teaching of respiratory physiology to nurses on MICU, 5 hour course given in January 1981

9.  Continuing medical education course to attending staff (Mt. Sinai) on pulmonary diseases, 4 hours, May 1980

10. Lectures to CWRU medical students, Core Clerkship, Respiratory Physiology and Respiratory failure, 3 times/year since 1979; 1-2/year, 1984-1989

11. Continuing Medical Education course, attending staff (Mt. Sinai); pulmonary disease, May 1982

12. Lecture series - Respiratory Failure, MICU nurses, Mt. Sinai Medical Center, September-October 1983

Page 52 of 68

13.    Lecture Series:  Critical Care Medicine, Mt. Sinai Medical Center, June 1984

14.    Blood Born Pathogens in the Workplace, University Hospitals, June 1993; House staff and attending staff educational vide

INVITED LECTURES:

9/79  Interstitial Lung Disease - Grand Rounds, Mt. Sinai Medical Center

9/79  Interstitial Lung Disease - Grand Rounds, University Hospitals of Cleveland

11/79  Interstitial Lung Disease - Grand Rounds, Lakewood Hospital

12/79  Chronic Obstructive Lung Disease - Grand Rounds, Barberton Community Hospital

1/80  Pulmonary Stress Testing - Grand Rounds, Lakewood Hospital

2/80  Pulmonary Function Tests - Grand Rounds, Lorain Community Hospital

5/80  Mediscope:  Teaching Hospital - Mt. Sinai Medical Center

10/80  Sarcoidosis - Grand Rounds, Mt. Sinai Medical Center

11/80  Pre and Post-Op Care - Grand Rounds, Barberton Community Hospital

1/81  Mediscope:  Teaching Hospital - Jewish Community Center, Cleveland, Ohio

3/81  Interstitial Lung Disease - Grand Rounds, Fairview General Hospital

10/81  Exercise and Your Health - Grand Round, Mt. Sinai Medical Center

11/81  Exercise and Your Health - AZO Pharmaceutical Fraternity

5/82  Interstitial Lung Disease - Medicine Today

5/82  Intensive Care Unit - Mediscope:  Teaching Hospital

5/82  Exercise and Your Health  - Jewish Community Center, Cleveland, Ohio

6/82  Lecture Series - Pulmonary Medicine for the Internist, Mt. Sinai Medical Center

9/82  Pulmonary Stress Testing - Pulmonary Grand Rounds

11/82  Exercise and Your Health - Cuyahoga Community College

1/83  Respiratory Failure - Grand Rounds, Richmond Heights General Hospital

1/83  Spirometry - Grand Rounds, Richmond Heights General Hospital

4/83  Exercise Testing, Grand Rounds, University Hospitals

8/84  Exercise and Health - Beachwood Rotary

9/84  Pulmonary Vasculitis, Grand Rounds, Mt. Sinai Medical Center

1/85  Post-Operative Respiratory Care - Ohio School of Podiatric Medicine

1/86  Post-Operative Respiratory Care - Ohio School of Podiatric Medicine

Page 5 of 68

3/86  Thrombolytic Therapy for Thromboembolic Disease, Grand Rounds, Mt. Sinai Medical Center

4/87  Evaluation of Cough, Grand Rounds, Mt. Sinai Medical Center

4/87  Asbestos Symposium, Roanoke, Virginia
  1) Asbestos-Related Disorders
  2) Pulmonary Function Testing

9/87  Evaluation of Cough, Cleveland Allergy Society

11/87  Occupational Lung Disease, Self-Insurers of the State of Ohio

2/88  Asbestos Symposium, Columbus, Ohio
  1) Asbestos-Related Disorders
  2) Pulmonary Function Testing

4/88  "Low Level Asbestos Exposure", San Francisco, California
  1) Update on Mesothelioma
  2) Asbestosis and Lung cancer

11/88  Interstitial Lung Disease, Grand Rounds, Mt. Sinai Medical Center

3/89  CPC MetroHealth Medical Center: Pleural Effusion, Dyspnea, Chest Pain (Drs. Rosenberg, Kleinerman & Cohen)

4/89  Overview of Occupational Lung Disease: McDonald Caperton, Cleveland, Ohio

4/89  Symposium of Asbestos, Drs. Rosenberg, Kleinerman, Thompson, Baker & Hostetler

4/89  Pleural Effusion, Dyspnea Chest Pain: A CPC: Grand Rounds, Mt. Sinai Medical Center (Drs. Rosenberg, Kleinerman & Cohen)

12/89  Health Effects of Radon Gas/Passive Smoking: Grand Rounds, Mt. Sinai Medical Center of Cleveland

5/90  Pulmonary Disability Evaluation: Social Security Seminar, Cleveland, Ohio

6/91  Grand Rounds University Hospitals of Cleveland, Indoor Air Pollution

9/91  Pediatric Pulmonary Grand Rounds, University Hospitals of Cleveland, Effect of Indoor Air Pollution on Health

2/92  Medicine Today, University Hospitals of Cleveland, Comprehensive Update: Occupational Lung Disease

4/92  Occupational Pulmonary Disease, Ohio Association of Trial Lawyers, Columbus, Ohio

12/92  Preventive Health Issues 1992; Landerhaven; Small Business CEO's, Northeastern Ohio, Mr. Richard Eastburn, Director

8/93  Landerbrook Health Series: Asthma and the Young Athlete

8/96  Treatment of Asthma; Ohio Association of Physician Assistants

9/96  Asthma Carepath; University Primary Care Physicians

3/97  Seminars in Respiratory Disease: Mycobacteria Infection in Immunocompetent Hosts; Division of Pulmonary and Critical Care Medicine; University Hospitals of Cleveland

4/97  Fellows Conference: Division of Pulmonary and Critical Care Medicine; Occupational Lung Disease (Part I); University Hospitals of Cleveland

Page 5 of 68

5/97  Fellows Conference:  Division of Pulmonary and Critical Care Medicine; Occupational Lung Disease (Part II); University
      Hospitals of Cleveland

6/97  Interpretation of Pulmonary Function Tests; Norfolk & Southern Railway Seminar

2/98  Pulmonary Grand Rounds; University Hospitals of Cleveland: Latex Allergy

10/98 Asbestos Related Disorders; Lecture to Pulmonary Fellows; University Hospitals of Cleveland

6/00  Asthma update, Galaxo-Wellcome Seminar

10/00 House Staff, Department of Medicine Noon Conference, Occupational Lung Disease

11/00 Pulmonary Grand Rounds, University Hospitals of Cleveland, Silicosis

2/01  Pulmonary Case Conference, University Hospitals of Cleveland, Hypersensitivity Pneumonitis

PUBLICATIONS:

1.  Genuth, S.M.,Przbylski, R.J., Rosenberg, D.M.,Insulin Resistance in Genetically Obese Mice. Endocrinology 88: 1971, 1230

2.  Rosenberg, D.M.,et al. Acetaminophen & Hepatic Dysfunction in Infectious Mononucleosis:  S Med J 70: 1977, 660

3.  Rosenberg, D.M.,et al. Acetaminophen & Hepatic Dysfunction in Infectious Mononucleosis:  Ann Int Med 88, 1979 (Letter)

4.  Rosenberg, D.M.,et al. Chronic Airflow Obstruction in Fabry's Disease. Chest 74: 1978, 349 (Abstract)

5.  McDonald, J.M., Baum, B.J., Rosenberg, D.M.,et al. Destruction of a Major Extra-Cellular Glycoprotein (Fibronection).
    Lab Invest 40:  1979, 350

6.  Rosenberg, D.M.,et al. Pulmonary Manifestations of Common Variable Hypogammaglobulinemia.  Am Rev Resp Dis 199:
    1978, 163 (Abstract)

7.  Rosenberg, D.M.,et al. Functional Correlates of The Pulmonary Manifestations of Wegener's Granulomatosis. Am Rev Resp
    Dis 119:  1978, 1964

8.  Rosenberg, D.M.,et al. Chronic Airflow Obstruction in Fabry's Disease. Am J Med 68:  1980, 898

9.  Rosenberg, D.M.,et al. Functional Correlates of Lung Involvement in Wegener's Granulomatosis:  Use of Pulmonary Function
    Tests in Staging & Follow-up. Am J Med 69: 1980, 387

10. Rosenberg, D.M.,et al. Legionnaires' Disease:  Association With Severe Bronchospasm & Hypoventilation. Chest 82: 1982,
    382

11. Rosenberg, D.M., Inherited Forms of Interstitial Lung Disease, Clinics in Chest Med 3: 1982, 635

12. Rosenberg, D.M.,COPD Associated With Hypogammaglobulinemia.  Communications To the Editor, Chest 83:  1983, 290

13. Rosenberg, D.M.,Calcium Channel Blockers & The Treatment of COPD Editorial, J Resp Diseases, November 1988

14. Rosenberg, D.M., Pleural Fibrosis and Asbestosis, Letter to he Editor, J Appl Physiol, Sept. 1990

15. Rosenberg, D.M., Asbestos Related Disorders . . . A Realistic Perspective. Chest 111: 1997, 1424

16. Rosenberg, D.M., Book Review; Indoor Air Pollution and Health, Bardana and Montanaro; Chest, August, 1998

Page 55 of 68



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

# David Michael Rosenberg, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from **7/1/2008**  until  **6/30/2012**

David N Weissner, MD

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

Page 5 of 8

© DOES 746

A229

# CURRICULUM VITAE

Paul S. Wheeler, M.D.

## DEMOGRAPHIC INFORMATION

Current Appointments:    Associate Professor of Radiology
The Johns Hopkins Medical Institutions

Personal Data:    The Johns Hopkins Hospital – Radiology
410/955-5423
Fax: 410/955-5564
e-mail: pwheeler@jhmi.edu

### Education and Training:

B.A    1957    Harvard College
Cambridge, Massachusetts

M.D.    1961    Harvard Medical
Boston, Massachusetts

Internship    1961-1962    Cleveland Metropolitan General Hospital
Cleveland, Ohio

Radiology Residency    1963-1966    The Johns Hopkins Hospital
Baltimore, Maryland

Chief Resident/Radiology    1968-1969 – The Johns Hopkins Hospital
Baltimore, Maryland

### Professional Experience:

1968-1969  Instructor, Radiology
The Johns Hopkins Medical Institutions, Baltimore, Md

1969-1974    Assistant Professor, Radiology
The Johns Hopkins Medical Institutions, Baltimore, Md

1974-    Associate Professor, Radiology
The Johns Hopkins Medical Institutions, Baltimore, Md

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                                       2

## Professional Experience (Cont'd)

1970 -          Pneumoconiosis Interpretations for firms and government agencies.

1973 -          National Institute for Occupational Safety and Health - "B" Reader Proficiency
                Examination, July 1973 to present

                Relicensure "B" Reader Proficiency Examination  - Certificate remains in effect
                5/1/2005 – 4/30/2009

1974-1988       Director, Adult Outpatient Radiology Section

1981 -          Bethlehem Steel Corporation, Sparrows Point Plant, Baltimore, Maryland - Asbestosis -
                Silicosis Evaluation

1983 - 1985     The Medical Monitoring Program of the Maryland State Asbestos Safety and Health
                Program - Headed by Dr. Marshall Levine, University of Maryland Hospital, School of
                Medicine, Baltimore, Maryland  (Asbestos Evaluation) (528-3671)

1984 -          Social Security Administration Project - Headed by Dr. David Fouts (Radiologic
                Screening for Asbestos), Baltimore, Maryland

1984            Testimony before the United States Senate labor Subcommittee Hearing regarding
                Asbestos-related Litigations, April 24, Washington, D.C.

1986 -          Development of custom software for computer reporting with Dr. Samuel Raymond

Present         Director, Industrial Radiology – The Johns Hopkins Medical Institutions


## RESEARCH ACTIVITIES

### Publications:
#### Peer-reviewed articles

1.    Wheeler PS and Honda M: Enlargement of the foramina ovale by increased intracranial pressure.
      Neurology 15:785-786, August 1965.

2.    Margulies SI and Wheeler PS:  Development of an automated reporting system.  Proceedings of
      the Second Conference on Computer Applications in Radiology, pp 423-439, September 23-26,
      1970.

3.    Reymond RD, Wheeler, PS, Perovic M, and Block B:  The lucent cleft: A new radiographic sign of
      cervical disc injury or disease.  Clinical Radiology 23:188-192, 1972.

A231

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                                  3

## Peer-reviewed articles (Cont'd):

4.  Wheeler PS, Gitlin JN, Simborg DW, and Stiney J: The Johns Hopkins computer reporting system for diagnostic radiology.   Proceedings of the Third Conference on Computer Applications in Radiology, pp 30-43, September 12-15, 1972.

5.  Naidich DP, Bartelt D, Wheeler PS, and Stern WZ: Metallic mercury emboli.  Am J Roentgenol 117:886-891, April, 1973.

6.  Morgan RH, Donner MW, Gayler BW, Margulies SI, Rao PS, and Wheeler PS: Decision processes and observer error in the diagnosis of pneumoconiosis by chest roentgenography. Am J Roentgenol 117:757-765, April, 1973.

7.  Wheeler PS and Simborg DW: The Johns Hopkins radiology computer reporting system. (Siemens) Electromedica 2-3:10-108, 1975.

8.  Wheeler PS, Simborg DW, and Gitlin JN: The Johns Hopkins radiology reporting system. Radiology 119:315-319, May, 1976.

9.  Wheeler PS: Comprehensive reporting by computer - A more cost-effective method than dictation. Proceedings of the Fifth Conference on Computer Applications in Radiology, pp 51-62, June 9-11, 1977.

10. Simborg DW, Krajci EJ, Wheeler PS, Gitlin JN, and Goldstein NS:  Computer-Assisted radiology reporting: Quality of reports. Radiology 125:587-589, December 1977.

11. Wheeler PS and Gitlin JN: Computers in Radiology: A viewpoint of pitfalls and payoffs.. Proceeding of the Sixth Conference on Computer Applications in Radiology, pp 1-4, June 18-21, 1979.

12. Donner MW, Wheeler PS, Gayler BW, Saba GP, and Olden RA: The Johns Hopkins Hospital Radiology viewing area.  Applied Radiology 9:113-119, November-December, 1980.

13. Wheeler PS, Stitik FP, Hutchins GM, Klinefelter MD, and Siegelman SS: Diagnosis of Lipoid Pneumonia by Computed Tomography.  JAMA 245:65-66, January, 1981.

14. Donner MW, Saba GP, Wheeler, PS, and Gayler BW: Planning Guide for Radiologic Installations. Fascicle 7, Part 2 - Facilities for Display and Interpretation of Radiographs (Radiology Viewing Area). American College of Radiology, Committee on Department Planning Commission of Equipment - 1981.

15. Wheeler PS: Risk Prevention, Quality Assurance, and the Missed Diagnosis Conference. Radiology 145:227-228, October, 1982.

A232

Paul S. Wheeler, M.D.
Curriculum Vitae                                                      4

<u>Peer-reviewed articles (Cont'd):</u>

16. Wheeler PS, Pohlenz O, Hacker H, Freedman MT: The Missed Diagnosis as a Powerful Teaching Device.  Radiology Today 2. F.H.W. Heuck and M.W. Donner, Ed(s), Springer-Verlag Berlin, Heidelberg, 1983.

17. Wheeler PS: Learning from Mistakes in Radiologic Practice.  Diagnostic Imaging 5:50, 1983.

18. Wheeler PS: What Does This X-ray Show? Surgical Rounds 6:118, 1983.

19. Fishman EK, Pakter RL, Gayler BW, Wheeler PS, Siegelman SS: Jugular venous thrombosis: Diagnosis by computed tomography. J. Comput. Assist. Tomogr. 8(5):963-968, October, 1984.

20. Wheeler PS: Direct reporting by computer in radiology: A special application of a powerful general concept.  Software in Healthcare, August-September 1985.

21. Wheeler PS: Error Management and quality assurance.    Applied Radiology 15:#1, 41-45 January/February 1986.

22. Scott WW, Wheeler PS, Mitchell SE: Markers for Implanted Devices: Need for Standardization. AJR 146:387-390, February 1986.

23. Wheeler PS: Device Identification:Deficient Marking Systems. Editorial, AJR 146:418-419, February 1986.

24. Hruban RH, Meziane MA, Zerhouni EA, Wheeler PS, Dumler JS, Hutchins GM: Pathologic-Radiologic Correlation of Invasive Pulmonary Aspergillosis: The CT-Halo Sign. J. Comput. Assist. Tomogr. 11 (3):534-536, May/June 1987.

25. Hruban RH, Meziane MA, Zerhouni EA, Khouri NF, Fishman EK, Wheeler PS, Dumler JS, Hutchins GM: High-resolution computed tomography of fixed-inflated lungs: Pathology-radiologic correlation of centrilobular emphysema. American Review of Respiratory Disease. 136:935-940, 1987.

26. Yousem D, Traill TT, Wheeler PS, Fishman EK: Illustrative Cases in Pericardial Effusion Misdetection: Correlation of Echocardiography and CT.  Cardiovasc. Intervent Radiol 10:162-167, 1987.

27. Wheeler, PS: Feeding tubes that pierce the lung: A case study in risk prevention and quality assurance. Radiology (Editorial) 165:861, 1987.

28. Meziane MA, Hruban RH, Zerhouni ZA, Wheeler PS, Khouri NF, Fishman EK, Hutchins GM, Siegelman SS:  High Resolution CT of the Lung Parenchyma with Pathologic Correlation. Radiographics 8, #1:27-54, January 1988.

29. Sison RF, Hruban RH, Moore W, Wheeler PS, Hutchins GM: Pulmonary disease associated with pleural "asbestos" plaques. (Abstract) Laboratory Investigations, January 1988.

Page 2 of 68

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                                          5

## Peer-reviewed articles (Cont'd):

30. Harvey Textbook of Medicine ... Chapter 1.2 The Collection and Evaluation of Clinical Information. Johns R, Fortuin N, and Wheeler PS, In: The Principles and Practice of Medicine. Twenty-Second Edition, Harvey Am, Johns RJ, McKusick VA, Owens AH, and Ross RS (eds) Connecticut, Appleton Century Cross, 1988.

31. Ren H, Hruban RH, Kuhlman JE, Fishman EK, Wheeler PS, Zerhouni EA, and Hutchins GM: High resolution CT of rounded atelectasis: A radiologic pathologic correlation. J. Computed Assisted Tomogr. 12(6):1031-1034, 1988.

32. Sison RF, Hruban RH, Moore GW, Wheeler PS and Hutchins GM: Pulmonary disease associated with pleural asbestos plaques. CHEST, 95(4):831-835, April 1989.

33. Ren H, Hruban RH, Kuhlman JE, Fishman EF, Wheeler PS, Zerhouni EA, and Hutchins GM: High resolution computed tomography of inflation-fixed lungs: The Beaded-Septum Sign of Pulmonary Metastases. J. Comput Assist Tomogr., 13(3):411-416, May/June 1989.

34. Ren H, Kuhlman JE, Hruban RH, Fishman EK, Wheeler PS and Hutchins GM: CT of inflation-fixed lungs: Wedge-shaped density and vascular sign in the diagnosis of infarction. J. Comput Assist Tomogr. 14(1):82-86, January/February 1990.

35. Hruban RH, Ren H, Kuhlman JE, Fishman EK, Wheeler PS, Baumgartner WA, Reitz, BA and Hutchins GM: Inflation-Fixed Lungs: Pathologic-Radiologic (CT) Correlation of Lung Transplantation. J. Comput. Assist Tomogr.:14(3):329-335, May/June 1990.

36. Ren H, Kuhlman JE, Hruban RH, Fishman EK, Wheeler PS and Hutchins GM: CT-Pathology Correlation of Amiodarone Lung. J. Comput Assist Tomogr. 14(5):760-765, September-October 1990.

37. Reger RB, Cole WS, Sargent EN, and Wheeler PS: Cases of Alleged Asbestos-Related Disease: a Radiologic Re-Evaluation. J. Occupational Medicine 32(11):1088-1090, November 1990.

38. Ren H, Lee DR, Hruban RH, Kuhlman JE, Fishman EK, Wheeler PS, and Hutchins GM: Pleural plaques do not predict asbestosis: High-resolution computed tomography and pathology study. Modern Pathology 4,#2:201-209, 1991.

39. Wheeler PS, Raymond S: The Computer-based Cumulative Report: Improvement in Quality and Efficiency. Radiology 182:355-357, 1992.

40. Lee WA, Hruban RH, Kuhlman JE, Fishman EK, Wheeler PS and Hutchins GM: High resolution computed tomography of inflation-fixed lungs: Pathologic-Radiologic correlation of pulmonary lesions in patients with leukemia, lymphoma, or other hematopoietic proliferative disorders. Clinical Imaging 16:15-24, 1992.

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                        6

## Peer-reviewed articles (Cont'd):

41. Wheeler PS, Scott WW, Jr: Medical Devices and Their Radiologic Visibility. *In* Hunter TR, Bragg DC, editors: Radiologic Guide to Medical Devices and Foreign Bodies. 1994, Mosby-Year Book, Inc., St. Louis, Missouri.

42. Scott WW Jr, Beall DP, Wheeler PS: The retained intrapericardial sponge: Value of the lateral chest radiograph. AJR 171:595-597, 1998.

ABSTRACTS: Presented at United States and Canadian Academy of Pathology, March 1990.

1. High Resolution Computed Tomography of Inflation-Fixed Lungs: Pathologic-Radiologic Correlation of Lung Transplantation. R. H. Hruban, H. Ren, J.E. Kuhlman, E.K. Fishman, P.S. Wheeler, W. A. Baumgartner, B.A. Reitz, and G.M. Hutchins. Modern Pathology Vol. 3, 1990.

2. High Resolution Computed Tomography and Pathology Study of Pleural Plaques as a Predictor of Asbestosis. H. Ren, D.R. Lee, R.H. Hruban, J.E. Kuhlman, E.K. Fishman, P.S. Wheeler, and G.M. Hutchins. Modern Pathology Vol 3, 1990.

3. High Resolution Computed Tomography of Inflation-Fixed Lungs: A Wedge-shaped Density and Associated Vascular Sign in the Diagnosis of Pulmonary Infarction. H. Ren, J.E. Kuhlman, R.H. Hruban, E.K. Fishman, P.S. Wheeler, and G.M. Hutchins. Modern Pathology Vol 3, 1990.

## Extramural Sponsorship

1970-present        Pneumoconiosis Interpretations for firms and government agencies

## EDUCATIONAL ACTIVITIES
Teaching:
Residents at reading stations
Ongoing, Medical Students on Radiology Elective (4 hours per month)

Editorial Activities:
Advisory Committee – Continuing Medical Education, The Johns Hopkins Medical Institutions

## CLINICAL ACTIVITIES
### Certification:

1962   National Board of Medical Examiners
1965   Maryland State Board of Medical Examiners (#D10447
1968   American Board of Radiology (Written Examination)
1969   American Board of Radiology (Oral Examination)

Page 62 of 68

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                                          7

## Service Responsibilities

1966-1967    United States Army, General Medical Officer, 7th Special Force (airborne)

1967-1968    United States Army, General Medical Officer, 5th Special Force (airborne) Viet Nam


## ORGANIZATIONAL ACTIVITIES

### Institutional Appointments:

| | |
|---|---|
| 1970- | Pneumoconiosis Interpretations for firms and government agencies |
| 1970- | Organizing Error Management conference for departmental QA |
| 1973-1978 | Medical Records Committee – Appointed Chairman, Subcommittee on Abbreviations Medical Records Committee in 1975 (Developed updated list of abbreviations) |
| 1973- | Outpatient Service Committee |
| 1973-1979 | Utilization Review Committee |
| 1974-1988 | Director, Adult Outpatient Radiology Section |
| 1975-1990 | Risk Prevention/Incident Review Committee |
| 1980-1989 | Professional Advisory Group to Quality Assurance Department |
| 1983- | Editorial Board – Medical Grand Rounds & Clinical Conferences |
| 1984 | Committee for Development of Outpatient Brochure – Guide for the Patient. JHMI |
| 1984- | Chairmanship for the Subcommittee on Focused Review, Medical Care Evaluation Comm Committee, JHMI |
| 1986 | Subcommittee for Enteral Feeding Tubes. Develop policies for use and placement of Enteral feeding tubes. Develop policies for use and placement of enteral feeding tubes. Meyerhoff Center for Digestive Disease, JHH |
| 1993- | Consultant/Radiologist, The Baltimore City Eastern Chest Clinic – TB Cases |
| 2007 | AJR Manuscript and Book Reviewer |
| Present | Advisory Committee, Radiology Information Technology, John Hopkins Hospital |

### Professional Societies:

1987-1995    Member of the American College of Radiology Task Force on Pneumoconiosis

              Ongoing Member of the American College of Radiology

### Consultantships:

| | |
|---|---|
| 1970 | Veterans Administration Hospital, Baltimore, Maryland. |
| 1973 | Siemens Corporation for Computer Reporting and Training |
| 1975 | Trained Staff at the Huntington Avenue VA Hospital, Boston, Massachusetts |
| 1977 | Course Director: Computer Reporting in Radiology - The Johns Hopkins Hospital |
| 1977 | Visiting Professor - March 21 - 22 - Training on computer reporting at the University of New Mexico, Albuquerque, New Mexico |
| 1978 | Visiting Professor - August 29 - September 2 - Training on computer reporting at the Loma Linda VA, Loma Linda, California |
| 1979 | Walter Reed Army Hospital, Washington, D.C. |

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                                    8

## RECOGNITION

<u>Awards:</u>

1986        Meziane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri, NF, Fishman EK, Hutchins
            GM, Siegelman SS:  High Resolution CT of the Lung Parenchyma with Pathologic
            Correlation.  Presented at the 72nd Scientific Assembly and Annual Meeting of the
            Radiological Society of North America, Chicago, Illinois.  <u>Certificate of Merit Award</u>

1987        Meziane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri, NF, Fishman EK, Hutchins
            GM, Siegelman SS:  High Resolution CT of the Lung Parenchyma with Pathologic
            Correlation.  Presented at the Annual American Roetgen Ray Society Meeting (April)
            Miami, Fla.  <u>Gold Medal Award</u>

1997        Beall DP, Scott WW, Eng J, Hoffmann LV, Gayler BW, Siegelman SS, Wheeler PS,
            Khazan R, Bohlman ME:  Self Evaluation Radiographic Interpretation: Real-Time Internet-
            Based Receiver Operating Characteristic Analysis Using Computer-Based Data Entry.
            Presented at 83rd Scientific Assembly and Annual Meeting of The Radiological Society of
            North America, Chicago, November 1997.  <u>Certificate of Merit</u>

<u>Invited Talks:</u>

            <u>Computer Reporting</u> - Hopkins' and Siemens Units

1972            Rochester Symposium - Planning Radiologic Diagnostic Facilities
1973 (Oct)      ECHO Meeting (IBM users) Kansas City
1973 (Oct)      XIII International Congress of Radiology, Madrid, Spain Developed with Siemens the
                outline for modifying the original Johns Hopkins Radiology reporting system for a stand-
                alone microcomputer version
1973 (May)      Association of University Radiologists - 21st Annual Meeting, The University of British
                Columbia, Vancouver, Canada
1974 (June)     Second Rochester Symposium - Planning and Operation of Radiology Departments
1974 (June)     AER Symposium - Computers in Diagnostic Radiology, The Hague, Holland (Presentation
                on the Hopkins' system as well as moderate of one session on computer reporting)
1975            American Roentgen Ray Society, Atlanta, Georgia
1975 (Mar)      Fourth Conference -Proceedings of Computer Applications in Radiology, Las Vegas,
                Nevada - Same presentation given at the University of Keele, by Dr. Simborg on April 9,
                1975.
1975 (June)     AER (Third Congress of the European Association of Radiology) Edinburgh, Scotland -
                    Presentation as well as demonstration of computer reporting system
1975 (Oct)      Third Rochester Symposium
1976            ISPRAD II (2nd International Symposium on Planning of Radiologic Departments)
1977            XIV Congresso Internacional De Radiologia - Rio De Janeiro, Brasil
                    Presentation as well as demonstration
1978 (April)    Fourth Rochester Symposium

Page 4 of 68

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                              9

Invited Talks:  Computer Reporting

1978 (Aug)    Association of Radiologic Department Administrators - Las Vegas, Nevada
1979          International Symposium - Computers in Health Care, University of Witwatersrand,
              Johannesburg, South Africa Presentation as well as demonstration for the City Hospital

## Central Viewing Facility

1978          Fourth Rochester Symposium - Presented: Central Viewing Facility:
              An Efficient Film Control Method

## General Presentations

1977          American Roentgen Ray Society - Boston, Massachusetts,
              Presented: Cervical Disc Vacuum Cleft: A Useful Sign of Acute Injury
1983 (Nov)    Radiological Society of North America Computed Tomography of Large Silicotic
              Opacities - Chicago, Illinois
1984 (Feb)    Occupational Medicine Course, School of Hygiene, The Johns Hopkins Medical
              Institutions.  Presentation on Pneumoconiosis
1984 (Feb)    Maryland Radiological Technology Society - Baltimore City Hospital.  Presentation on
              Technical Problems
1984 (April)  Pulmonary Group, Pneumoconiosis Course, The Johns Hopkins Medical Institutions
              Presentation on Pneumoconiosis
1984 (April)  Radiologic Technologists (Senior and Junior Class), The Johns Hopkins Hospital
              Presentation on Technique
1984 (April)  Presentation at the United States Senate Labor Subcommittee Hearing - Washington,
              D.C.  Presentation:Asbestos-related Litigations: A Scientific Perspective and Solution
1984 (May)    Topics in Clinical Medicine, Philip A. Tumulty Course.  Presentation: Asbestosis: A
              Semantic Epidemic, The Johns Hopkins Medical Institutions
1984 (Nov)    Radiologic Society of North America, Washington, D.C. Presentation: Asbestos: The
              Role of Radiology in a Semantic Epidemic.
1984 (Nov)    Radiological Society of North America, Washington, D.C. Presentation:  Error
              Management: The Foundation of Meaningful Quality Assurance.
1985 (April)  187th Annual Meeting of the Medical and Chirurgical Faculty of the State of Maryland
              Presentation: Asbestosis: How Serious a Problem?
1987 (Mar)    Visiting Professor, Radiology Group of New Brunswick, New Jersey.  Presentation:
              Asbestosis - Senate Fact Finding.
1998 (April)  Annual Health Conference - Occidental Chemical Corporation  Presentation:  Quality -
              Anything Worth Doing…Is Worth Doing Well
2000 (Mar)    National Industrial Sand Association – Seminar – Occupational Health Program,
              Leesburg, VA.  Presentation: X-ray Interpretations for the Pneumoconioses.

2003-(July)   Annual Meeting for the Members of the Libby Medical Program, Montana. Presentation:
              Pneumoconiosis – Quality Assurance.

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                                          10

### General Presentations – Cont'd

2009 (April)     "Etiology of Pneumoconioses and their Detection in the Lung."
                 Health Effect of Indoor and Outdoor Air Pollution (4th term) Environmental Health Sciences
                 Johns Hopkins Bloomberg School of Public Health

### SCIENTIFIC EXHIBITS:

### A Functional Computer Reporting System for Radiology
1973        Radiological Society of North America, Chicago, Illinois


### The Johns Hopkins Radiology Computer Reporting System
1972        First Rochester Symposium
1973        XIII International Congress of Radiology, Madrid, Spain
1975        Radiological Society of North America, Chicago, Illinois

### Technical Exhibits and Demonstrations
1976-1978     Radiological Society of North America - Display of SIREP Reporting Capability

1986     Meziane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF, Fishman EK, Hutchins GM,
         Siegelman SS: High Resolution CT of the Lung Parenchyma with Pathologic Correlation.
         Presented at the 72nd Scientific Assembly and Annual Meeting of the Radiological Society of
         North America, Chicago, Illinois.  Certificate of Merit Award

1987     Meziane MA, Zerhouni EA, Dumler JS, Wheeler PS, Hutchins GM: Computerized Tomography of
         Fixed Lungs: Pathologic Radiologic Correlations.  Presented at the March Meeting of the National
         Association of Pathologists Scientific Assembly, Chicago, Illinois.

1987     Meziane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF, Fishman EK, Hutchins GM,
         Siegelman SS: High Resolution CT of the Lung Parenchyma with Pathologic Correlation.
         Presented at the Annual American Roentgen Ray Society Meeting (April) Miami, Florida.
         Gold Medal Award

1987     Meziane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF, Fishman EK, Hutchins GM,
         Siegelman SS: High Resolution CT of the Lung Parenchyma with Pathologic Correlation.
         Presented at the European Congress of Radiology (May 29 - June 5) Lisbon, Portugal.

1991     Wheeler PS, Raymond SR:  Computer-Based Cumulative Report:  A Quality and Efficiency
         Improvement.  Presented at 77th Scientific Assembly and Annual Meeting of The Radiological
         Society of North America (November 29 - December 6, 1991) Chicago, Illinois.

1994     Bluemke D, Eng J, Wheeler P:  The Radiology Reporting Workstation: A Hypertext
         Implementation.  Presented at 80th Scientific Assembly and Annual Meeting of The Radiological
         Society of North America (November 28 - December 2, 1994) Chicago, Illinois.

A239

**Paul S. Wheeler, M.D.**
**Curriculum Vitae**                                                                                 11

**Technical Exhibits and Demonstrations -- Cont'd**

1997   Beall DP, Scott WW, Eng J, Hoffmann LV, Gayler BW, Siegelman SS, Wheeler PS, Khazan R, Bohlman ME: Self Evaluation Radiographic Interpretation: Real-Time Internet-Based Receiver Operating Characteristic Analysis Using Computer-Based Data Entry. Presented at 83rd Scientific Assembly and Annual Meeting of The Radiological Society of North America, Chicago, November 1997. **Certificate of Merit**

*PSW/mes*
*Rev: 4/09*

Page 6 of 68



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

# Paul S. Wheeler, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from **5/1/2009** until **4/30/2013**

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

CDC
CENTERS FOR DISEASE CONTROL
AND PREVENTION

Page 28 of 18

A241



**MORRISTOWN HAMBLEN HOSPITAL**
908 West 4th North St.
Morristown, Tennessee
423-586-4231

PATIENT:   FLEMING, JOSEPH
DATE:       06/18/2005             LOCATION:  4S-406-A
MR#:        460288                                      ACCT:     953713
CONSULTING PHYSICIAN:       USZENSKI, RONALD T. M.D.
ATTENDING PHYSICIAN:        HTUN, THANE, M.D.


## HISTORY OF PRESENT ILLNESS:

This is a 59 year-old thin white gentleman with history of chronic obstructive pulmonary disease, tobacco use who presented to the hospital with spontaneous pneumothorax on the left side. I was asked to evaluate the patient. He has been experiencing chest pain for the last few days associated with an abnormal EKG. The EKG demonstrates progression of V1 to V4 suggestive of an old MI. Various electrocardiographic tracings demonstrate different poor R wave progression. I suspect a lot of it has to doe with a vertical shaped heart with chronic obstructive pulmonary disease or abnormal lead placement. The patient has no acute ST or T wave changes. The patient has a questionable history of a mild heart attack approximately 25 years ago. He has never had a workup. He had a stress test about 6-7 years ago which was unremarkable. Other than tobacco, he has no other significant risk factors. He has no recent trauma and the pneumothorax is probably spontaneous.


## PAST MEDICAL HISTORY:

Unremarkable for any new seizures, strokes, thyroid, peptic ulcer disease, gallbladder disease, hepatitis, renal disease, tuberculosis or cancer.


## PAST SURGICAL HISTORY:

Back surgery and two herniorrhaphies.


## FAMILY HISTORY:

He denies family history of hypertension, diabetes mellitus and states that his cholesterol profile was told to him by Dr. Hill, his primary care doctor, that it was normal.


## ALLERGIES:

NO KNOWN DRUG ALLERGIES.


## MEDICATIONS:

**CONSULTATION REPORT**
466100

EMPLOYER'S EXHIBITS____2____        Page _1_ of 3

**MORRISTOWN HAMBLEN HOSPITAL**
**Morristown, Tennessee**
423-586-4231

PATIENT NAME:FLEMING, JOSEPH
DATE:06/18/2005        MEDICAL RECORD #: 460288        ACCOUNT #: 953713

Medications at home are Advair, Percocet, prednisone, Robitussin p.r.n., Albuterol, Atrovent, Z-Pak.

## SOCIAL HISTORY:

Unremarkable for ETOH, but he smokes approximately 1-1/2 packs of cigarettes per day for many years.

## REVIEW OF SYSTEMS:

As above.

## PHYSICAL EXAMINATION:

VITAL SIGNS:  Blood pressure 128/70. He is afebrile.  Heart rate is 689 to 70 and regular, respirations 12 and non-labored.  He is 5 feet 9 inches tall, weight 135 pounds.  O2 Saturation on room air is 94%.
HEENT:  Normocephalic, atraumatic.  Pupils equal, round, reactive to light and accommodation. There is no conjunctivitis, or pallor. Ears, nose and throat are unremarkable.
NECK:  Unremarkable for jugular venous distention, carotid bruits, thyromegaly.
LUNGS: Demonstrate diminished breath on the right with rhonchi. Crackles at the base without any wheezing.
CARDIOVASCULAR:  Cardiac exam has a regular rate and rhythm. He has a normal S1 and S2. There is no S3, S4, rubs, heaves,  murmurs or clicks.  PMI is not palpated.  There is no reproducible chest pain on palpation of the chest wall.
ABDEOMEN: Soft and bowel sounds are normoactive. There is no hepatomegaly or splenomegaly noted.   The abdominal aorta is palpated but it is not enlarged.
EXTREMITIES:   The lower extremities are unremarkable for cyanosis or clubbing. The pulses are 2+ dorsalis pedis bilaterally.
NEUROLOGIC:  He is alert and oriented x3. No focal deficits are noted.

## LABORATORY:

The most recent labs demonstrate three sets of cardiac enzymes which are normal. He has an electrocardiogram as mentioned above. Chest x-ray demonstrates fully expanded left lung with compressed atelectasis at the base. The hemoglobin is 15 with white count of 10 and a slight shift to the left. Platelet count is 587,000. D-Dimer is normal.  PT and PTT are normal. Electrolytes are normal, bilirubin is mildly elevated.

## IMPRESSION:

CONSULTATION REPORT
466100

Page 2 of 3

A243



**MORRISTOWN HAMBLEN HOSPITAL**
**Morristown, Tennessee**
423-586-4231

PATIENT NAME:FLEMING, JOSEPH
DATE:06/18/2005          MEDICAL RECORD #:  460288          ACCOUNT #:  953713

1.       Chest pain symptoms.  I suspect the chest pain is musculoskeletal/pleuritis secondary to
the pneumothorax.   His enzymes are flat and his electrocardiogram has no acute ST T changes.
The form of progression most likely represents lead placement associated with pneumothorax
and a centrally vertically placed heart.    Obviously with his risk factors, we will need to rule out
ischemic heart disease.
2.       Spontaneous pneumothorax.
3.       Chronic obstructive pulmonary disease in an active tobacco user.

_____
Ronald T. Uszenski, M.D.

RTU:264
vs
DD:      06/21/2005 22:08:03
DT:      06/22/2005 09:22:15
REV:  0

cc:     Ronald T. Uszenski, M.D., <Dictator>
        Thane Htun, M.D., Attending Physician

**CONSULTATION REPORT**
466100

Page 3 of 3

A244

Report Viewer ●                        ●                                Page 1 of 2

powered by: AMICAS

---

| Name: FLEMING JOSEPH | MRN: 460288 | DOB: 1945-09-11 | Sex: M |
|---|---|---|---|
| Accession: 01174208 | Study Date & Time: 12/03/201014:07:38 | Description: CHEST ROUTINE PA LAT | |

```
Interpreter:      Knight, Steven (5003)
================= Begin of Report Content =================

908 West Fourth North Street
Morristown, TN  37814
423-522-4547
Name:  JOSEPH FLEMING
Gender:  Male
Date of Birth:  09/11/1945
MRN:  460288
Exam:   CHEST ROUTINE PA LAT
Accession:  01174208
Date of Exam:  12/03/2010
Location/Referring Physician:  Ernesto  Mejia, MD
Ordering and CC Physicians:

Clinical Indications:  Annual Exam
 CHEST ROUTINE PA LAT
Body of Report:
INDICATION:      COPD
FINDINGS:     PA and lateral views of chest compared to prior study from
8/24/2009.
Cardiac and mediastinal structures are unremarkable. Lungs are clear. No
effusions or infiltrates. No pneumothorax. Mild flattening of the hemidiaphragms
and emphysematous changes are again noted.
IMPRESSION: Stable exam.
Date and Time Dictated:  12/3/2010 2:43:00 PM
Date and Time Transcribed:
Transcriptionist:
Date and Time Signed:  12/3/2010 2:43:00 PM
Steven Knight
Board Certified Radiologist
Thank you for allowing us to participate in the care of your patient.
Page 1 of 1

================= End of Report Content  =================
```

**Other Reports for FLEMING JOSEPH (MRN: 460288)**

| Study Description | Accession Number | Report Date & Time | # of Reports |
|---|---|---|---|
| **CT ABD WITH CONTRAST** | 01107309 | 04/15/2010 11:58:00 | 1 |
| **CT ABDOMEN/PELV RENAL ST** | 01103499 | 03/24/2010 17:49:00 | 1 |
| **US ABDOMEN COMPLETE** | 01101612 | 03/19/2010 11:11:00 | 1 |
| **CHEST ROUTINE PA LAT** | 01045533 | 08/24/2009 15:17:00 | 1 |
| **CHEST ROUTINE PA LAT** | 00971370 | 11/07/2008 12:37:00 | 1 |

EMPLOYER'S EXHIBITS ___3___

Page _1_ of _1_

A245

PUPIL GAUGE (mm)
2 3 4 5 6 7 8 9

CENTIMETERS

Room # 1

**APPALACHIAN REGIONAL HEALTHCARE**
**EMERGENCY TREATMENT RECORD**

Date GM 7/1/98

Time of Arrival 0320

Triage
☐ 1
☐ 2
☐ Time: 0320

055202    011-01
FLEMING, DANNY JOSEPH
BOX 86
ASHLAND, KY 41825

addressograph    09/11/45  M
41825

telephone: 855-9266

| ARRIVED BY | MODE | ALLERGIES ☒ NKDA | AGE: 52 | CHIEF COMPLAINT |
|---|---|---|---|---|
| ☒ ambulance | ☐ ambulatory | | WT.: | Smothering |
| ☐ police | ☐ wheelchair | | | Hx: ☐ none ☐ Hypertension ☐ Psychiatric ☐ CVA |
| ☐ self | ☐ stretcher | | LMP: | ☐ Cardiac ☐ COPD ☐ Seizures ☐ Diabetic |
| ☐ relative/friend | ☐ carried | | | |

| PRE-HOSPITAL CARE | IMMUNIZATION STATUS | Current Medications/Dose/Frequency ☐ none | Last^Y |
|---|---|---|---|
| ☐ O₂ at ___L/min  ☐ spine board | ☐ n/a  ☐ up to date | Ansaid | |
| ☐ nc ☐ mask  ☐ I.V.  ☐ Neb. tx. | Last Tetanus: | Muscle relaxer | |
| ☐ splint: RA LA RL LL  ☐ Monitor ☐ Dressing | | Occ Tylox - none in 3 day | |
| ☐ C-collar: ☐ hard  ☐ soft | FAMILY PHYSICIAN | | |
| ☐ Airway: ☐ oral ☐ nasal ☐ ET tube | | took Nyquil & Thera-flu today | |
| ☐ Ambu ☐ Mast Trousers ☐ CPR | Tidal | + Y advil, librium | |
| other: | | | |

| TIME | NURSING TRIAGE NOTES | | VITAL SIGNS | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Time | T | P | R | B/P | SAO₂ |
| 0320 | Sick since Sunday night | | 0320 | 101 | 13 | 32 | 112/7 | 92 |
| | Smokes 2 PPD | | | | | | | |

Triage Nurse Signature: _J. Collins_

| TIME | NURSING ASSESSMENT          initial each entry |
|---|---|
| 0320 | do smothering tight thru chest, lightheaded |
| | Coughing. |
| | Vomiting last night but not tonight |
| | Congested cough, resp mod labored. |
| | Skin flushed, warm. Lungs ⬆ breath |
| | sounds, tight c̄ soft rhonchi |

Visual Acuity: OD ___/___  OS ___/___  OU ___/___

NURSES SIGNATURE: _J. Collins RN_

| TIME | GCS TOTAL | GLASGOW COMA SCALE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | A. EYE OPENING | POINTS | B. VERBAL RESPONSE | POINTS | C. MOTOR RESPONSE | POINTS |
| | | Spontaneous | 4 | Oriented | 5 | Obeys commands | 6 |
| | | To Voice | 3 | Confused | 4 | Purposeful movement (pain) | 5 |
| | | To Pain | 2 | Inappropriate words | 3 | Withdraws (pain) | 4 |
| | | None | 1 | Incomprehensible sounds | 2 | Flexion (pain) | 3 |
| | | | | None | 1 | Extension (pain) | 2 |
| GCS TOTAL: A+B+C | | | | | | | |

EMPLOYER'S EXHIBITS ___4___    Page 1 of 2

Date: 7/11/98

**PHYSICIAN ASSESSMENT** ☐ old chart

GR  C55202   011-01

FLEMING, DANNY JOSEPH
PO BOX 86
JACKHORN, KY 41825

addressograph

time seen:

CC: Chest congestion, fever

Soc Hx: Smoker 2 pks/day - cigarettes

0? chr ill, 52 yo w/m in ox

c/o congested cough & SOB

No cyanosis of lips or ox hemittos.

Ø ST, no obvious lungs, bilat.

Thought, no wheezes

Soft, flat abdom, no tenderness.

Family/Attending/Consulting Physician Called: DR Tidal

Time Notified:          Time of Arrival:

## X-RAY ORDERS (circle)

skull   IVP   chest (PA & LAT)   acute abd series   hip
cross table c-spine   chest (portable)   L-S spine   pelvis
portable c-spine   KUB   cerv. spine
other x-rays:

## LABORATORY ORDERS (circle)

(CBC)   (Chem 7)   CPK   EKG   BC   UA   urine C/S
PT   PTT   ABG   theophylline   amylase   strep screen
UCG   BHCG   dig level   cardiac enzymes
other lab

### TREATMENT/MEDICATION (time/dose/route/Tetanus Lot #/signature)/PRESCRIPTIONS

☐ O₂   ☐ Cardiac Monitoring   ☐ Pulse Oximeter   ☐ Foley   ☐ N/G Tube   ☐ Lavage

☐ Charcoal ____ gms.   ☐ Hep. Lock   ☐ IV:

Tylenol 1000 g po - 0330 Dr Allen

4 O₂ 2L

Updraft: Proventil 5cc & NS 3cc - 0335 Dr

Phenergan c̄ Codeine 15cc po - 0400 Dr

IV: D5 NS + KCl 10 mEq/L @ 100 cc/hr 0909 Dr

Admit to DR Tidal

work/school excuse given for ____ days

**Lab Results**

**X-Ray Results**

**EKG Results**

**DIAGNOSIS:** Ⓛ pneumonia, COPD

**FINAL DISPOSITION**
☐ Home
☑ Admit Rm #309
☐ Other:
☐ Referred to:
Via:

**CONDITION**
☐ Good  ☑ Fair  ☐ Serious
☐ Critical   ☐ Expired

**Discharge Instructions Given** ☑
Notified: _____ (name)
☐ Chaplain   ☐ Social Services
☐ Coroner   ☐ Police   ☐ Family
☐ Nursing Home   ☐ Personal Care Home

Valuables: ☐ N/A          Disposition

DISCHARGE DATE/TIME: 7/11 0600   PHYSICIAN SIGNATURE:

A247

FLEMING, JOSEPH
M000068098 09/11/1945    MED   59Y  M
GRAYSON, PATRICK C.    004694923-5166

PRINTED BY:            BAPTIST HOSPITAL COCKE CO
HL7                        LABORATORY REPORT
             JAMES H. VINSON, M.D., MEDICAL DIRECTOR

        PATIENT: FLEMING, JOSEPH          ROOM/BED: ER   ER  -03
        UNIT NO: 0046949235166    SEX: M       DOB: 09/11/1945

ORDER INSTRUCTIONS


PATIENT'S ADMIT DIAGNOSIS                      ORDERING PHYSICIAN
  COPD                                         GRAYSON, PATRICK C.

PROCEDURE PERFORMED:              PERF DATE/TIME      PRIORITY      REQ #
  ABGS                            06/15/05  05:25    STAT          2734860

  COLLECT DATE : 061505   COLLECT TIME : 0531
  ARTERIAL BLOOD GAS
       COPD
  FIO2/LITER FLOW              21.0
  COLLECTION SITE             RIGHT RADIAL ARTERY
  pH                          7.417          (7.35-7.45)     pH UNITS
  PCO2                        37.6           (35-45)         MMHG
  PO2                     L   62.9           (80.0-100.0)    MMHG
  BICARBONATE                 23.7           (22-26)         MEQ/L
  BASE EXCESS                 0.0                            (0-2.0)
  TOTAL CO2                   24.9           (23-27)         MMOL/L
  PERCENT O2 SATURATION   L   93.3           (97-100)        %
  ctHB                        16.3                           G/DL
  O2HB                    L   90.1           (95.0-100)      %
  COHB                        2.6
  MetHB                       0.8            (0.0-1.0)       %
  pO2(A-a)c               H   38.2           (<15)           MMHG

EMPLOYER'S EXHIBITS   5                Page  of

A248

NAME: FLEMING, JOSEPH

Date: Jan 16, 2012

ID# 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

DOB: 9/11/1945

**DEPT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**
National Institute for Occupational Safety and Health
Federal Mine Safety & Health Act 1977
**B-READING**

Coal Worker's Health Surveillance Program
NIOSH PO Box 4258
Morgantown, WV 26504

PENNSTUART

**CHEST** (PA) **LAT   RAO   LAO   AP**

Film Agency: NORTON COMMUNITY HOSPITAL

**1. FILM QUALITY**    ☐ Dark   ☒ Improper Position   ☐ Hypoinflation    Comments:   *scapulae over lung*
    [1 ☒ 3 u/r]    ☒ Light   ☐ Poor Contrast   ☐ Mottle
    ☐ Artifacts   ☐ Poor Processing

**2A. Any Parenchymal abnormalities consistent with Pneumoconiosis?**    YES ☐ goto 2B, 2C    NO ☒ goto 3A

**2B. Small Opacities**

| a. Shape / Size | | b. Zones | | | c. Profusion | | | | | 2C. Large Opacities |
|---|---|---|---|---|---|---|---|---|---|---|
| Primary | Secondary | | R | L | | | | | | Size [0  A  B  C] |
| p  s | p  s | Upper | | | 0/- 0/0 0/1 | | | | | |
| q  t | q  t | Middle | | | 1/0 1/1 1/2 | | | | | |
| r  u | r  u | Lower | | | 2/1 2/2 2/3 | | | | | |
| | | | | | 3/2 3/3 3/+ | | | | | |

**2C. Large Opacities**   Size [0  A  B  C]

**3A. Any Pleural abnormalities consistent with Pneumoconiosis?**    YES ☐ goto 3B, 3C    NO ☒ goto 4A

**3B. Pleural Plaques**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<½  2=¼-½  3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | 1=<½ 2=¼-½ 3=>½ | a=3-5 b=5-10 c=>10mm |
| Face On | O R L | O R L | O R  1 2 3    O L  1 2 3 | O R  A B C    O L  A B C |
| Diaphrahm | O R L | O R L | | |
| Other site(s) | O R L | O R L | | |

**3C. Costrophrenic Angle Obliteration**    [R] L  goto 3D    NO ☐ goto 4A

**3D. Diffuse Pleural Thickening**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<½  3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | O L  1 2 3 | O L  A B C |
| Face On | O R L | O R L | O R  1 2 3 | O R  A B C    O L  A B C |

**4A. ANY Other Abnormalities?**    YES ☒ goto 4B, 4C, 4D, 4E    NO ☐ goto

**4B Other Symbols (Obligatory)**

| ☒aa | at | ax | bu | ca | cg | cn | co | cp | cv | di | ef | ☒es | es | fr | hi | ho | id | ih | kl | me | pa | pb | pi | px | ra | rp | tb |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

[OD] Report other diseases or significant abnormalities in section 4C/4D

**4D. OTHER COMMENTS**

*Hyperinflation Lungs with decreased markings in upper lungs; changes compatible with emphysema. Minimal arteriosclerosis and tortuosity aorta.*

**4E. Should worker see personal physician for findings in section 4.?**    YES ☒   NO ☐    Date Notified:  /  /

**4C. Mark all boxes that apply**
Airway Disorders
☐ Increased lung markings
☐ Hyperinflation
Bony Abnormalities
☐ Chest cage
☐ Fracture, healed (non-rib)
☐ Fracture, not healed (non-rib)
☐ Scoliosis
☐ Vertebral column
Abnormalities of the Diaphragm
☐ Eventration
☐ Hiatus hernia
Lung Abnormalities
☐ Azygos lobe
☐ Density
☐ Infiltrate
☐ Nodule, nodular lesion
Miscellaneous Abnormalities
☐ Cyst
☐ Foreign Body
☐ Surgery / sternal wires
Vascular Disorders
☐ Aorta, anomaly of
☐ Vascular abnormalikty

**5.**    [☐☐☐] [☐☐] [☐☐☐☐]
    Physician's Soc. Security #

Name:  *William W. Scott, Jr., M.D.*

Address:  Johns Hopkins Hospital, 600 N. Wolfe Street, Baltimore, MD 21287 USA

Film Reader's Initials

*Date of Reading*
May 16, 2012 11:57 hr

EMPLOYER'S EXHIBITS  6        Page 1 of 20

## CURRICULUM VITAE

William Wallace Scott, Jr., M.D.
10 November 2009

### DEMOGRAPHIC INFORMATION

|  |  |
|---|---|
| Current Appointments: | Associate Professor of Radiology |
|  | The Johns Hopkins Medical Institutions |
| Personal Data: | The Johns Hopkins Hospital-Radiology |
|  | 410-955-6439 |
|  | FAX - 410-955-5564 |
|  | e-mail - wscott@jhmi.edu |

Education and Training:

| | | |
|---|---|---|
| B.A. | 1967 | Harvard University<br>Cambridge, Massachusetts |
| M.D. | 1971 | The Johns Hopkins University<br>School of Medicine<br>Baltimore, Maryland |
| Internship | | 1971 - 1972<br>Pathology, The Johns Hopkins Hospital<br>Baltimore, Maryland |
| Residency | | 1972 - 1975<br>Diagnostic Radiology<br>The Johns Hopkins Hospital<br>Baltimore, Maryland |

Professional Experience:

1975-1976 - Instructor: Radiology, The Johns Hopkins Hospital, Baltimore, Maryland

1976-1978 - Chief - Diagnostic Ultrasound Walter Reed Army Medical Center Washington, D.C.

1978-1984 - Assistant Professor of Radiology The Johns Hopkins Medical Institutions Baltimore, Maryland

Page 2 of 20

William W. Scott, Jr., M.D.
Curriculum Vitae

Professional Experience:     (Cont'd)

1984-Present - Associate Professor of Radiology
The Johns Hopkins Medical Institutions
Baltimore, Maryland

1986-2006 - Associate Professor of Orthopedic
Surgery, The Johns Hopkins Medical Institutions
Baltimore, Maryland

## RESEARCH ACTVITIES

Publications:
- **Peer-reviewed scientific articles**

1.    Scott WW Jr and Wade JC:  Nitrofurantoin in dog prostatic fluid after oral administration. Invest Urol, 1968.

2.    Barker LM, McPhillips JJ, Lawrence GD, Doty SB, Pallante SL, Bills CE, Scott WW Jr. and Howard JE:  (1) Properties of urinary derivatives which inhibit calcification; (2) Electron microscopic observations of inhibitors on crystal formation.  The Johns Hopkins Medical Journal 127:2-22, 1970.

3.    Scott WW Jr, Siegelman SS, Harrington DP, and White RI Jr:  Diagnosis and pathophysiology of paradoxical embolism.  Radiology 121:59-62, 1976.

4.    Scott WW Jr., Scott PP, and Sanders RC:  B-Scan ultrasound in the diagnosis of popliteal aneurysms.  Surgery 81(4):436-441, 1977  (Excerpted for Emergency Medicine).

5.    Scott WW Jr, Harrington DP, and Siegelman SS:  Functional abnormalities of mesenteric blood flow.  Gastrointest Radiol 1:367-374, 1977.

6.    Sanders RC, Scott WW Jr, Kuhn J, and Conrad MR:  The sonographic pattern of infantile polycystic kidney.  J Ultra and Med, 1978.

7.    Scott WW Jr, Sanders RC, and Siegelman SS:  Irregular fatty infiltration of the liver: Diagnostic dilemmas.  AJR 135:67-71, 1980.

8.    Scott WW Jr, Rosenshein NB, Sanders RC, and Siegelman SS:  The obstructed uterus. Radiology 141:767-770, 1981.

2

Page 3 of 20

William W. Scott, Jr., M.D.
Curriculum Vitae

- Peer-reviewed scientific articles (Cont'd)

9. Naidich DP, Khouri NF, Scott WW Jr, Wang KP, and Siegelman SS: Computed tomography of the pulmonary hila: 1. Normal anatomy. J. Comput Asst Tomog 5(4):459-467, 1981.

10. Zerhouni EA, Scott WW Jr, Baker RR, Wharam MD, and Siegelman SS: Invasive thymomas: Diagnosis and evaluation by computed tomography. J Comput Asst Tomogr 6(1):92-100, 1982.

11. Curtis DJ, Bentley L, Weihrer A, Scott WW Jr, Brahman SL, and Quillin RS: Computerized reporting: Its effect on a large teaching program. Military Medicine 148:248-251, 1983.

12. Scott WW Jr., Fishman EK, Lubbe WS: Open quiz case report 259. Skel Radiol 11:81, 1984.

13. Scott WW Jr, Fishman EK, Lubbe WS: Open Quiz Solution, Case Report 259. Skel Radiol 11:137-139, 1984.

14. Scatarige JC, Scott WW Jr, Donovan PJ, Siegelman SS, and Sanders RC: Fatty infiltration of the liver: Ultrasonographic and computed tomographic correlation. J. Ultrasound in Med 3:9-14, 1984.

15 Scott WW Jr, Fishman EK, and Siegelman SS: Anticoagulants and abdominal pain: The role of computed tomography. JAMA 252:2053-2056, 1984. Also in French edition 9:1026-1029, 1984; Italian edition, Chinese edition, and Southwest Asian edition. (Excerpted for Emergency Medicine).

16. Scott PP and Scott WW Jr: Isolated nodular pulmonary amyloidosis: Diagnosis by percutaneous needle aspiration biopsy. S Med J 78(4):467-471, 1985.

17. Khouri NF, Stitik FP, Erozan YS, Gupta PK, Kim WS, Scott WW Jr, Hamper U, Mann RB, Eggleston JC, and Baker RR: Transthoracic needle aspiration biopsy of benign and malignant lung lesions. AJR 144:281-288, 1985.

18. Scott WW Jr, Riley LH, and Dorfman HD: Focal lytic lesions associated with femoral stem loosening in total hip prostheses. AJR, 144:977-982, 1985.

19. Magid D, Fishman EK, Scott WW Jr, Brooker AF Jr., Arnold WP, Lennox DM and Siegelman SS: Femoral head avascular necrosis: CT assessment with multiplanar reconstruction. Radiology 157(3):751-756, 1985.

3

William W. Scott, Jr., M.D.
Curriculum Vitae

- **Peer-reviewed scientific articles (Cont'd)**

20.    Fishman EK, Magid D, Mandelbaum BR,Scott WW Jr, Weiss P, Hadfield R, Mudge B, Kopits SE, Brooker AF, Siegelman SS: Multiplanar (MPR) imaging of the hip. RadioGraphics 6(1):7-54, 1986. (Excerpted in Radiology Today)

21.    Scott WW Jr, Wheeler PS, Mitchell SE:  Markers for implanted devices: Need for standardization.  AJR 146:387-390, 1986.

22.    Yousem D, Scott WW Jr, Fishman EK, Watson AJ, Traill T, and Gimenez L: Saphenous vein graft aneurysms demonstrated by computed tomography.  J Comput Assist Tomogr 10(3)526-528, 1986.

23.    Siegelman SS, Khouri NF, Scott WW Jr, Leo FP, Hamper UM, Fishman EK, and Zerhouni EA:  Pulmonary hamartoma: CT findings.  Radiology 160:313-317, 1986.

24.    Kuhlman JE, Scott WW Jr, Fishman EK, Pyeritz RE, Siegelman SS:  Acetabularprotrusion in the Marfan syndrome.  Radiology 164:415-417, 1987.

25.    Fishman EK, Drebin B, Magid D, Scott WW Jr, Ney DR, Brooker AF Jr, Riley LH, St. Ville JA, Zerhouni EA, Siegelman SS:  Volumetric rendering techniques: Applications for three-dimensional imaging of the hip.  Radiology 163:737-738, 1987.

26.    Scott WW Jr, Fishman EK, and Magid D.  Acetabular fractures: Optimal imaging. Radiology 165:537-539, 1987.

27.    Greyson-Fleg RM, Scott WW Jr, Kuhajda FP, Magid D, Fishman EK:  Fibrosarcoma in a patient with scleroderma.  J Comp Tomogr 11:318-321, 1987.

28.    Yousem DM, Scott WW Jr, Fishman EK:  Case Report 440.  Skel Radiol 16:509-510, 1987.

29.    Kuhlman JE, Fishman EK, Magid D, Scott WW Jr, Brooker AF Jr, Siegelman SS:  Fracture nonunion: CT assessment with multiplanar reconstruction.  Radiology 167:483-488, 1988.

30.    Beck TJ, Ruff CV, Scott WW Jr, LaFrance ND, Rao GU:  Determination of Geometric Properties of the proximal femur from dual photon absorptiometric data.  Transactions of the 34th Annual Meeting of the Orthopaedic Research Society, Vol. 13, 1988.

31.    Kallman DA, Wigley FM, Scott WW Jr, Hochberg MC, Tobin JD:  New radiographic grading scales for osteoarthritis of the hand.  Arthr and Rheum 32:(12)1584-1591, 1989.

4

**Page 5 of 20**

A253

William W. Scott, Jr., M.D.
Curriculum Vitae

- **Peer-reviewed scientific articles (Cont'd)**

32. Yousem DM, Magid D, Scott WW Jr, Fishman EK: Treated invasive cervical carcinoma utility of computed tomography in distinguishing between skeletal metastases and radiation necrosis. Clin Imag 13:147-153, 1989.

33. Ricci C, Cova M, Kang YS, Yang A, Rahmouni A, Scott WW Jr, Zerhouni EA: Normal age-related patterns of cellular and fatty bone marrow distribution in the axial skeleton: MR imaging study. Radiology 177:83-88, 1990.

34. Scott WW Jr, Fishman EK, Kuhlman JE, Caskey CI, O'Brien JJ, Walia GS, Bayless TM: Computed tomography evaluation of the sacroiliac joints in Crohn disease: Radiologic/Clinical correlation. Skel Radiol 19:207-210, 1990.

35. Scott WW Jr and Fishman EK: Extramedullary hematopoiesis mimicking the appearance of carcinomatosis or peritoneal mesothelioma: Computed tomography demonstration. Gastrointest Radiol 15:82-83, 1990.

36. Beck TJ, Ruff CB, Warden KE, Scott WW Jr, Rao GU: Predicting femoral neck strength from bone mineral data: A structural approach. Invest Radiol 25(1):6-18, 1990.

37. Kallman DA, Wigley FM, Scott WW Jr, Hochberg MC, Tobin JD: The longitudinal course of hand osteoarthritis in the male population. Arthr and Rheum 33(9):1323-1332, 1990.

38. Cova M, Kang YS, Tsukamoto H, Jones LC, McVeigh E, Neff BL, Herold CJ, Scott WW Jr, Hungerford DS, Zerhouni EA: Bone marrow perfusion evaluated with Gadolinium-enhanced dynamic fast MR imaging in a dog model. Radiology 179:535-539, 1991.

39. Scott WW Jr, Kuhlman JE: Focal pulmonary lesions in patients with AIDS: Percutaneous transthoracic needle biopsy. Radiology 180:419-421, 1991.

40. Ruff CB, Scott WW Jr, and Liu AY-C: Articular and diaphyseal remodeling of the proximal femur with changes in body mass in adults. Am J Physical Anthropology 86:397-413, 1991.

41. Meltzer CC, Scott WW Jr, and McCarthy EF: Case Report 698. Skeletal Radiol 20:555-557, 1991.

42. Beck TJ, Ruff CB, Scott WW Jr, Plato CC, Tobin JD, Quan CA: Sex differences in geometry of the femoral neck with aging: A structural analysis of bone mineral data. Calcif Tissue Int 50:24-29, 1992.

5

A254

William W. Scott, Jr., M.D.
Curriculum Vitae

- **Peer-reviewed scientific articles (Cont'd)**

43. Meltzer CC, Fishman EK, Scott WW Jr: Tumoral calcinosis causing bone erosion in a renal dialysis patient. Clinical Imaging 16:49-51, 1992.

44. Scott WW Jr, Kuhlman JE: Phantom for use in lung biopsy training. Radiology 184:286-287, 1992.

45. Meltzer CC, Fishman EK, Scott WW Jr: Computed tomography appearance of bone metastases of leiomyosarcoma. Skeletal Radiol 21:445-447, 1992.

46. Ney DR, Fishman EK, Kawashima A, Robertson DD, Scott WW Jr: Comparison of helical and serial CT with regard to three-dimensional imaging of musculoskeletal anatomy. Radiology 185:865-869, 1992.

47. Fishman EK, Ney DR, Scott WW Jr, Robertson DD: The role of CT with multiplanar reconstruction. Applied Radiology, November 1992.

48. Malloy PC, Scott WWJr, and Hruban RH: Case Report 769 Fibrous dysplasia. Skeletal Radiol 22: 66-69, 1993.

49. Scott WW Jr, Rosenbaum JE, Ackerman SJ, Reichle RL, Magid D, Weller JC, Gitlin JN: Subtle orthopedic fractures: Teleradiology workstation versus film interpretation. Radiology 187:811-815, 1993.

50. Scott WW Jr, Lethbridge-Cejku M, Reichle R, Wigley FM, Tobin JD, Hochberg MC: Reliability of grading scales for individual radiographic features of osteoarthritis of the knee: The Baltimore Longitudinal Study of Aging Atlas of Knee Osteoarthritis. Investigative Radiology 28(6):497-501, 1993.

51. Urban BA, Fishman EK, Goldman SM, Scott WW Jr, Jones B, Humphrey RL, Hruban RH: CT evaluation of amyloidosis: Spectrum of disease. RadioGraphics 13:1295-1308, 1993.

52. Malloy PC, Scott WW R, and Hruban RH: Case Report 769. Skeletal Radiol 22:66-69, 1993.

53. Hochberg MC, Lethbridge-Cejku M, Scott WW Jr, Plato CC, Tobin JD: Obesity and osteoarthritis of the hands in women: Data from the Baltimore Longitudinal Study of Aging. Osteoarthritis and Cartilage 1:129-135, 1993.

54. Fishman EK, Ney DR, Kawashima A, Scott WW Jr, and Robertson DD: Effect of Image Display on the Quality of Multiplanar Reconstruction of Computed Tomography Data. Investigative Radiol 28:146-149, 1993.

6

**Page 7 of 20**

William W. Scott, Jr., M.D.
Curriculum Vitae

- **Peer-reviewed scientific articles (Cont'd)**

55.   Scott WW Jr, Hruban RH, Campbell JN and Fishman EK: Angioleiomyoma involving the sciatic nerve - CT demonstration. Case Report. Clinical Imaging 17:260-262, 1993.

56.   Bluemke DA, Fishman EK, Scott WW Jr: Skeletal complications of radiation therapy. RadioGraphics 14:111-121, 1994.

57.   Hochberg MC, Lethbridge-Cejku M, Scott WW Jr, Plato CC, Tobin JD: Appendicular bone mass and osteoarthritis of the hands in women: Data from the Baltimore Longitudinal Study of Aging: J Rheumatol 21(8):1532-1536, 1994.

58.   Hochberg MC, Lethbridge-Cejku M, Scott WW Jr, Reichle R, Plato CC, Tobin JD: Serum levels of insulin-like growth factor-1 in subjects with osteoarthritis of the knee: Data from the Baltimore Longitudinal Study of Aging. Arthritis Rheum. 37(8):1177-1180-1994.

59.   Lethbridge-Cejku M, Tobin JD, Scott WW Jr, Reichle R ,Plato CC, Hochberg MC: The relationship of age and gender to prevalence and pattern of radiographic changes of osteoarthritis of the knee: Data from the Baltimore Longitudinal Study of Aging. Aging Clin Exp Res 6(5):353-357, 1994.

60.   Pretorius ES, Scott WW Jr, Fishman EK: Acute trauma to the shoulder: Role of spiral computed tomographic imaging. Emergency Radiology 2(1):13-17, 1995.

61.   Scott WW, Bluemke DA, Mysko WK, Weller GER, Kelen GD, Reichle RL, Weller JC, Gitlin JN: Interpretation of emergency department radiographs by radiologists and emergency medicine physicians: Teleradiology workstation versus radiograph readings. Radiology 195:223-229, 1995.

62.   Ma LD,Frassica FJ, Scott WW Jr, Fishman EK, Zerhouni EA: Differentiation of benign and malignant musculoskeletal tumors: Potential pitfalls with MR imaging. RadioGraphics 15:349-366, 1995.

63.   Robertson DD, Sutherland CJ, Chan BW, Hodge JC, Scott WW Jr, Fishman EK: Depiction of pelvic fractures using 3D volumetric holography: Comparison of plain x-ray and CT. J Comput Assis Tomogr 19(6):967-974, 1995.

64.   Buckley JA, Scott WW Jr, Siegelman SS, Kuhlman JE, Urban BA, Bluemke DA, Fishman EA: Pulmonary nodules: Effect of increased data sampling on detection with spiral CT and confidence in diagnosis. Radiology 196:395-400, 1995.

7

Page 8 of 20

A256

William W. Scott, Jr., M.D.
Curriculum Vitae

- ### Peer-reviewed scientific articles (Cont'd)

65.  Beauchamp NJ, Scott WW Jr, Gottlieb LM, Fishman EK: CT evaluation of soft tissue and muscle infection and inflammation: a systematic compartmental approach. Skeletal Radiol 24:317-324, 1995.

66.  Hirsch R, Lethbridge-Cejku M, Scott WW Jr, Reichle R, Plato CC, Tobin J, Hochberg MC: Association of hand and knee osteoarthritis: evidence for a polyarticular disease subset. Annals Rheumatic Diseases 55:25-29, 1996.

67.  Noh MH, Scott WW Jr, Fishman EK: Imaging of pelvic trauma: The role of CT with multiplanar and three-dimensional reconstruction. J Southern Orthopaedic Association 5(2):111-125, 1996.

68.  Padhani AR and Scott WW Jr:Case Report:Phrenic artery injury--a rare complication of percutaneous needle lung biopsy. Brit J Radiol 69:356-358, 1996.

69.  Altman R, Brandt K, Hochberg M, et al: Design and conduct of clinical trials in patients with osteoarthritis research society. Osteoarthritis and Cartilage 4:217-243, 1996.

70.  Padhani AR, Scott WW Jr, Cheema M, Kearney D, Erozan YS: The value of immediate cytologic evaluation for needle aspiration biopsy. Invest Radiol 32(8):453-458, 1997.

71.  Wenz JF, Hauser DL, Scott WW Jr, Robertson DD, Tsapakos MJ, Kearney DK, Bluemke DA, Naiman DO, Brooker AF and Chao EYS: Observer variation in the detection of acetabular bone deficiencies. Skeletal Radiol 26:272-278, 1997.

72.  Beall DP, Scott WW Jr, Kuhlman JE, Hofmann LV, Moore RD Mundy LM: Utilization of computed tomography in patients hospitalized with community acquired pneumonia. Maryland Medical Journal 47(4):182-187, 1998.

73.  Beck TJ, Mourtada FA, Ruff CB, Scott WW Jr, Kao G: Experimental testing of a DEXA-Derived curved beam model of the proximal femur. J Orthop Res 16,#3:394-398, 1998.

74.  Hirsch R, Lethbridge-Cejuk M, Hanson R, Scott WW Jr, Reichle R, Plato CC, Tobin JD and Hochberg MC: Familial aggregation of osteoarthritis. Arthritis & Rheumatism 41,#7:1227-1232, 1998.

75.  Scott WW Jr, Beall DP, Wheeler PS: The retained intrapericardial sponge: Value of the lateral chest radiograph. AJR 171:595-597, 1998.

Page 9 of 20

A257

William W. Scott, Jr., M.D.
Curriculum Vitae

- **Peer-reviewed scientific articles (Cont'd)**

76. Hirsch R, Lin JP, Scott WW, Jr, Ma LD, Pillemer SR, Kastner DL, Jacobsson LTH, Bloch DA, Knowler WC, Bennett PH and Bale SJ: Rheumatoid arthritis in the Pima Indians. *Arthritis & Rheumatism* 41,#8: 1464-1469, 1998.

77. Lin J-P, Hirsch R., Jacobsson LTH, Scott WW, Ma LD, Pillemer SR, Knowler WC, Kastner DL, Bale SJ. Genealogy construction in a historically isolated population: Application to genetic studies of rheumatoid arthritis in the Pima Indian. *Genetics in Medicine* 1,#5:187-193, 1999.

78. Eng J, Mysko WK, Weller GER, Renard R, Gitlin JN, Bluemke DA, Magid D, Kelen GD, Scott, Jr. WW: Interpretation of Emergency Department radiographs: A comparison of emergency medicine physicians and radiologists, residents and faculty, and film and digital display. *AJR.*175;1233-1238:2000.

79. Black A; Tilmont EM, Ingram DK, Roth GS, Lane MA: A nonhuman primate model of age-related bone loss: Male and premenopausal female rhesus macaques. *Bone* 28(3);295-302:2001.

80. Civelek AC, Scott Jr WW, Urban BA, Lietman SA" Thigh splints in a young female soccer player. *Clinical Nuclear Medicine* 26(4);341-343:2001.

81. Gitlin JN, Scott WW, Bell K, Narayan A: Interpretation accuracy of a CCD film digitizer. Journal of Digital Imaging 15(Suppl 1);57-63:2002

82. Robertson DD, Beck TJ, Chan BW, Scott WW, Sharma GB and Maloney WJ: Torsional strength Estimates of Femoral diaphyses with Endosteal Lytic Lesions: Dual –Energy X-Ray Absorptiometry Study. J Orthop Res 25(10):1343-1350, 2007.

83. Scott, WW Jr, Beall DP, Eng J, Matthiesen CL, Prater, Enis J: Improved demonstration of cartilage narrowing in the knee joint using standing PA flexed radiographs. Okla State Med Assoc. 2007 Dec;100(12):469-72.

84. Harris ML, Darrah E, Lam GK, Bartlett SJ, Giles JT, Grant AV, Peisong G, Scott WW Jr, El-Gabalawy H, Casiola-Rosen L, Barnes KC, Bathon J and Rosen A. Association of Autoimmunity to Peptidyl Arginine Deiminase Type 4 with the Genotype and Disease    Severity in Rheumatoid Arthritis. Arthritis and Rheum 2008; 58; 1958-1967.

85. Shamir,L, Ling SM, Scott W, Hochberg MC, Delaney J, Eckley DM, Orlov N Ferrucci L and Goldberg IG. Early Detection of Osteoarthritis Using Computer-aided Radiography. iEEE Trans. BioMed. Eng 2009; 56: 407-415.

9

Page 10 of 20

A258

William W. Scott, Jr., M.D.
Curriculum Vitae

86      Shamir L, Ling SM, Scott W, Hochberg M Ferrucci L and Goldberg IG.  Early Detection
        of Radiographic Knee Osteoarthritis using Computer-aided Analysis. Osteoarthritis and
        Cartilage 2009

87      Giles JT, Moyese S, Post W, Petri M Blumenthal R, Lsam G, Gelber A, Detrano R, Scott
        WW Jr, Kronmal RA amd Bathon LM .  Coronary Arterial Calcification in Rheumatoid
Arthritis:  Comparison to the Multi-Ethnic Study of Atherosclerosis. Arthritis Research and          Therapy
2009, 11R36.

88      Metellus P,  Hsu W, Kharkar S,Kapoor S Scott,  W and Rigamonte, D.   Accuracy of
percutaneous placement of a ventriculoatrial shunt under ultrasonography guidance: a retrospective
review at a single institution.  J. Neurosurg 110:867-870, 2009.


- **Book Chapters**

1.      Scott WW Jr:  The intravenous pyelogram, mechanism, interpretation and ancillary studies.
        Practice of Medicine, Tice (Editor).  Harper P. Row, Hagerstown, MD, 1976.

2.      Scott WW Jr:  Case 1:  Young woman with a solid pancreatic mass.  Case 2: Cystic mass in
        porta hepatis.  (*In*) Contemp Iss Comput Tomogr, Siegelman SS (Editor), Churchill
        Livingstone, New York, 1:240-243, 1983.

3.      Scott WW Jr, Siegelman SS:  Pancreatic and peripancreatic cystic lesions other than
        pseudocysts.  (*In*) Contemp Iss Comput Tomogr, Siegelman SS (Editor), Churchill
        Livingstone, New York, 1:113-122, 1983.

4.      Scott WW Jr, Scott PP, and Siegelman SS:  Asbestos-related pleural disease.  (*In*) Contemp
        Iss Comput Tomogr, Siegelman SS (Editor), Churchill Livingstone, New York, 4:139-174,
        1984.

- **Book Chapters (Cont'd)**

5.      Siegelman SS, Scott WW Jr, Baker RR, and Fishman EK: CT of the Thymus.  (*In*)
        Contemp Iss Comput Tomogr, Siegelman SS (Editor), Churchill Livingstone, New York,
        4:233-272, 1984.

6.      Scott WW Jr and Fishman EK:  Soft tissue masses in computed tomography of the
        musculoskeletal system.  (*In*) Contemp Iss Comput Tomogr, Scott WW Jr, Magid D,
        Fishman EK (Editors), Churchill Livingstone, New York 8:1-27, 1987.

7.      Yousem DM and Scott WW Jr:  The foot and ankle in computed tomography of the

10

A259

William W. Scott, Jr., M.D.
Curriculum Vitae

musculoskeletal system. (*In*) Contemp Iss Comput Tomogr, Scott WW Jr, Magid D, Fishman EK (Editors), Churchill Livingstone, New York, 8:113-138, 1987.

8.   Rao GU, Scott WW Jr, and Beck TJ:  Measurement of bone mineral for early detection of osteoporosis in computed tomography of the musculoskeletal system. (*In*) Contemp Iss Comput Tomogr, Scott WW Jr, Magid D, Fishman EK (Editors), Churchill Livingstone, New York 8:155-169, 1987.

9.   Fishman EK, Magid D, Robertson DD, Drebin B and Scott WW Jr:  Advances in CT imaging of musculoskeletal pathology in computed tomography of the musculoskeletal system. (*In*) Contemp Iss Comput Tomogr, Scott WW Jr, Magid D, Fishman EK (Editors), Churchill Livingstone, New York 8:213-239, 1987.

10.  Scott WW Jr and Scott PP:  CT of the pleura in CT and MRI of the thorax.  (*In*) Contemp Iss Comput Tomogr, Zerhouni EA (Editor), Churchill Livingstone, New York, 11:125-153, 1990.

11.  Wheeler PS, Scott WW Jr: Medical devices and their radiologic visibility.  (*In*) Hunter TR, Bragg DC, editors: Radiologic Guide to Medical Devices and Foreign Bodies. 1994, Mosby-Year Book, Inc., St. Louis, Missouri.

12.  Scott WW Jr: "Evaluation of the Patient - Imaging Techniques", *Primer on the Rheumatic Diseases, 11th Edition,* Klippel JH (ED),  Atlanta,  Arthritis Foundation, *1997:* 106-115.

13.  Scott WW Jr:  "Evaluation of the Patient - Imaging Techniques ", *Primer on the Rheumatic Diseases, 12th Edition,* Klippel JH (ED), Atlanta,  Arthritis Foundation,2001, 146-156.

14.  *Scott, WW JR:* " Musculoskeletal Disease and Trauma", *Imaging Handbook for House Officers,* Silverman PM and Quint DJ (ED), New York, Wiley –Liss, 1997,1-41.

15.  Scott, WW Jr; "Musculoskeletal Radiography". The 5-Minute Orthopaedic Consult, 2nd   Edition,Frassica F J, Sponseller PD, Wilchens JH, Philadelphia, Lippincott Williams& Wilkins, 2007, 268-269.

16.  Fayad L, Scott WW Jr; "Evaluation of the Patient-Imaging Techniques", Primer on the Rheumatic Diseases, 13th Edition, Klippel JH (ED),          ,Springer, 2007.(Oct)

- **Books**

1.   Scott WW Jr and Scott PP: *Consultation in Diagnostic Imaging.* B.C. Decker, Toronto, 1985.

2.   Scott WW Jr and Scott PP: *Kompendium der bildgebenden Diagnostik.* Gustav Fishcher-

11

**Page 12 of 20**

A260

William W. Scott, Jr., M.D.
Curriculum Vitae

Verlag, Suttgart, 1989.

3.  Scott WW Jr, Fishman EK, Magid (editors): *Computed Tomography of the Musculoskeletal System*. (*In*) Contemp Iss Comput Tomogr, Churchill Livingstone, New York, 1987.

4.  Scott WW Jr, Scott PP and Trerotola SO: *Radiology of the Thoracic Skeleton*. B.C. Decker, Philadelphia/Hamilton, 1991.

- Other media

    Educational Slide Series
    Sanders RC, Scott WW Jr, Kuhn J, Conrad MR: *Diagnostic ultrasound in obstetrics and gynecology*. Part II Gynecology, Second Edition, Medcom, 1979.

Extramural Sponsorship
- Contracts

    1984-present   Pneumoconiosis reading for law firms and government agencies

    Reader of images for the Baltimore Longitudinal Study of Aging: now located at Harbor Hospital; PI Shari Ling, M.D.

    Reader of images for Rheumatoid arthritis study conducted by Joan Bathon, M.D., Rheumatology Bayview.

EDUCATIONAL ACTIVITIES

Teaching:
- Classroom instruction
    1978-1987      Director, Medial Student Education in Radiology

    Ongoing, Medical Student teaching 6 hours per month

- Clinical instruction
    Ongoing radiology and orthopaedic resident instruction during clinical duties

- CME instruction
    10/24-30/1991 Radiology Review at Fifth Annual Postgraduate Course
    Core Content of Emergency Medicine - A Comprehensive Review

Provided images for Challenger Corporation CD for Emergency Medicine

12

Page 13 of 20

A261

William W. Scott, Jr., M.D.
Curriculum Vitae

___ Tuesday morning conventional imaging review conferences.

___ Friday morning Rheumatology conference.

Teaching: (Cont'd)

- CME instruction (Cont'd)
  9/10-16/1993        Radiology Review at Seventh Annual Postgraduate Course Core
  Content of Emergency Medicine - A Comprehensive Review

  10/7-13/1994        Radiology Review of Eighth Annual Postgraduate Course
  Core Content of Emergency Medicine - A Comprehensive Review

  10/7-13/1995        Radiology Review of Ninth Annual Postgraduate Course
  Core Content of Emergency Medicine - A Comprehensive Review

  10/7-13/1996        Radiology Review of Tenth Annual Postgraduate Course
  Core Content of Emergency Medicine - A Comprehensive Review

Digital teaching file:  The "Five Foot Shelf "of conventional imaging: Completed, operational 2007

6 Quiz evaluation of practical diagnostic skills of residents (ability to detect disease on conventional images) prior to taking night call:  Operational 2009

Editorial Activities:
- Editorial Board Appointments

  1984 -1989                        Editorial Board, *Advances in Orthopaedic Surgery*

- Editorial Board Appointments
  1985-1994                        Abstracts for the (American and British editions) *Journal of Bone and Joint Surgery* for *Radiology*

  1986-1994                        Associate Editor, *Radiology* (Musculoskeletal)


CLINICAL ACTIVITIES:

Certification:

        1982-        National Boards, Pts. I, II, III)
                                13

Page 14 of 20

A262

William W. Scott, Jr., M.D.
Curriculum Vitae

| 1975 | Maryland State Board of Medical Examiners #D0017642 |
| --- | --- |
| 1975 | American Board of Radiology-Diagnostic Radiology |
| 1984-2008 | National Institute for Occupational Safety and Health - "B" Reader Proficiency Examination |

## Service Responsibilities:

| 1976 - 1978 | Major, United States Army Medical Corp. at TRIMIS, Washington, D.C. and Walter Reed Army Medical Center, Washington, D. C. |
| --- | --- |
| 1983-2006 | Director of Orthopaedic Radiology, The Johns Hopkins Hospital |

## ORGANIZATIONAL ACTIVITIES

| 1978-1979 | Consultant, Walter Reed Army Hospital, Washington, D.C. |
| --- | --- |
| 1982-1985 | Secretary, The Johns Hopkins Radiology Alumni Association |

## RECOGNITION

| 1967 | Magna Cum Laude - Harvard University |
| --- | --- |
| 1978 | Army Commendation Medal Washington, D. C. |
| 1983 | Elected Class Marshall by Medical School Class of 1983 The Johns Hopkins School of Medicine |
| 1999 | Award for Service to Residents |
| 2000 | Faculty Teaching Award |
| 2002 | Resident Service Faculty Member of the Year |

## INVITED TALKS

14

Page 15 of 20

William W. Scott, Jr., M.D.
Curriculum Vitae

## Lectures:

| 1975 | Radiological Society of North America - Diagnosis and Pathophysiology of Paradoxical Embolism, Chicago, Illinois |
| April 1984 | NIH Consensus Development Conference on Osteoporosis: Osteoporosis-related Fracture Syndromes |

## Lectures (Cont'd)

| 1986 | Radiological Society of North America - 3-D Evaluation of Acetabular Trauma, Chicago, Illinois |
| 1987 | Panel on 3D Imaging and Seminar the Adult Hip. 19th International Diagnostic Course in Davos |
| 1988 | Seminar the Adult Hip. 20th International Diagnostic Course in Davos |
| 1993 | Seminar on Hip, Pelvis-Sacrum and Sacroiliacal Joints. 25th International Diagnostic Course in Davos |
| 1993 | Participant, National Institute of Health Workshop: Digitized Radiographic Images: Challenges and Opportunities. |

## Exhibits

| 1980 | Case of the Day RSNA Meeting, Dallas, Texas |
| 1986 | Radiological Society of North America 3-D Evaluation of Acetabular Trauma |
| 1987 | American Academy of Orthopedic Surgeons 3-D Evaluation of Acetabular Trauma San Francisco, California |
| 1987 | American Roentgen Ray Society 3-D Evaluation of Acetabular Trauma |

15

Page 16 of 20

William W. Scott, Jr., M.D.
Curriculum Vitae

| 1987 | American Roentgen Ray Society |
|      | 3-D Evaluation of Acetabular Trauma |

1987       Radiological Society of North America
            Optimal Imaging of Acetabular Trauma

1988       American Academy of Orthopaedic Surgeons
            Optimal Imaging of Acetabular Trauma

**Exhibits (Cont'd)**

1988       American Roentgen Ray Society
            Optimal Imaging of Acetabular Trauma

1990       American Roentgen Ray Society
            Age and Sex Differences in the Geometry of the Femoral Neck:
            Going Beyond Bone Mineral Analysis - CERTIFICATE OF MERIT

1991       Radiological Society of North America
            Chest Biopsy Phantom:  Design and Construction

1992       American Roentgen Ray Society
            Using Dual X-ray Absorptiometry to Calculate Strength Reduction
            in Lytic Lesions in Cortical Bone - BRONZE MEDAL

1997       Radiological Society of North America
            Self Evaluation Radiographics Interpretation: Real-Time Internet-Based
            Receiver Operating Characteristic Analysis Using Computer-Based Data
            Entry - CERTIFICATE OF MERIT

2002       The Society for Computer Applications in Radiology
            19th Symposium for Computer Applications in Radiology
            Scientific Exhibit: "Interpretation Accuracy of a CCD Film Digitizer"
            THIRD PLACE

2009       Radiological Society of North America
            Gastric Emphysema:  Causes, Clinical Implications, and CT Findings.

INVITED REVIEWS

16

William W. Scott, Jr., M.D.
Curriculum Vitae

1.  Scott WW Jr:  The development of the cystoscope.  Invest Urol 6(6):657-661, 1969.

2.  Scott WW Jr:  Computed tomography in urologic diagnosis.  Infection Control and Urologic Care 5(4):26-30, 1980.

3.  Scott WW Jr, Donovan PJ, and Sanders RC:  The sonography of diffuse liver disease.  Sem in Ultra 2(3):219-225, 1981.

4.  Siegelman SS, Khouri NF, Scott WW Jr, Leo FP, and Zerhouni EA:  Computed tomography of the solitary pulmonary nodule.  Seminars in Roentgen 19:165-172, 1984.

5.  Jones BW, Barranco FT, Fishman EK and Scott, WW Jr.:  Imaging techniques in the diagnosis of tarsal coalitions.  Adv Ortho Surgery 8(4):264-269, 1985.

INVITED REVIEWS  (Cont'd)

6.  Scott PP, Scott WW Jr, and Siegelman SS:  Amyloidosis: An overview.  Sem Roentgen 21:103-112, 1986.

7.  Magid D, Fishman EK, Scott WW Jr, Brokker AF Jr, Riley LH Jr:  A systematic approach to the hip: Computed tomography with multiplanar reconstructions.  Comtep Ortho 13(6):15-23, 1986.

8.  Scott WW Jr, Magid D, Fishman EK, Riley LH Jr, Brooker AF Jr, and Johnson CA:  3-D evaluation of acetabular trauma.  Contemp Ortho 15(1):17-24, 1987.

9.  Scott WW Jr, Magid D, Fishman EK, Riley LH Jr, Brooker AF Jr, and Johnson CA:  Three-dimensional imaging of acetabular trauma.  J Ortho Trauma 1(3):227-232, 1987.

10.  Magid D, Fishman EK, Robertson DD, Brooker AF Jr, Scott WW Jr:  Assessing the postoperative hip: Computed tomography with multiplanar reconstruction.  Contemp Ortho 15(3):17-28, 1987.

11  Fishman EK, Magid D, Drebin B. Brooker AF Jr, Scott WW Jr, Riley LH Jr:  Advanced three-dimensional evaluation of acetabular trauma: Volumetric image processing.  J Trauma 29(2):214-218, 1989.

12.  Kuhlman JE, Fishman EK, Ney DR, Scott WW Jr, Magid D, Siegelman SS: Two-dimensional and three-dimensional evaluation of the painful shoulder.  Orthopaedic Rev. 18:1201-1208, 1989.

13.  Chen F and Scott WW Jr:  Arthrographic evidence of recurrent subluxation following total hip replacement.  Contemp Ortho 22(2):190-191, 1991.

14.  Scott WW Jr, Rosenbaum BA, Reichle RL and Gitlin JN:  Comparison of film and screen interpretations of subtle orthopaedic fractures. SCAR 92 Computer Applications to Assist Radiology.  Symposium Foundation:595-601, 1992.

17

Page 18 of 20

William W. Scott, Jr., M.D.
Curriculum Vitae

15. Fishman EK, Scott WW Jr, Ney DR: Evaluation of malignant skeletal tumors: The role of CT with multiplanar imaging. Contemporary Orthopaedics 27:538-542, 1993.

16. Contributor to NLM-NIH Digital Atlas of the Cervical Spine and Lumbar Spine, 2000.

18

Page 19 of 20

A267



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

# William Wallace Scott Jr., M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,

FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from **8/1/2008**  until  **7/31/2012**



DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH




Page 2 of 20

A268

Sarah B. Long, M.D.
2765 Bexley Park Road
Columbus, Ohio 43209
September 7, 2012

This is an evaluation of a pulmonary function study that was performed by Joseph Fleming, OWCP No.: XXX-XX-0506. This study was performed on March 28, 2012 at Norton Community Hospital. Dr. Splan supervised the study but did not sign the report. The technician is Sullivan Horne, RRT. The equipment is SensorMedics Vmax.

This pulmonary function study was performed both before and after bronchodilator. There are copies of four flow volume loops both before and after bronchodilator. These copies are so faint that for practical purposes they are invisible. Only a very small and very faint portion of each tracing can be seen. There is a copy of six superimposed spirometric tracings. These represent both before and after bronchodilator studies. The initial slope of all of the curves is moderately steep. This indicates adequate effort at the start of forced expiration. All of the curves were continued for at least 7 seconds. The spirometric tracings appear to be valid. There is a copy of one MVV tracing before bronchodilator and one after bronchodilator. These also are too faint to evaluate.

This pulmonary function study is not valid per Federal Black Lung Regulations because the copies of the flow volume loops are too faint to evaluate. Thus this study would not be useful in the evaluation of a respiratory impairment.

*Sarah B. Long, M.D.*

Sarah B. Long, M.D.

**EMPLOYER'S EXHIBITS** 7      Page 1 of 3

<u>CURRICULUM VITAE</u>

Name  Sarah Elizabeth Brackney Long

PERSONAL DATA

    Born December 5, 1926 at Sidney, Ohio

    Graduated from Wilbur Wright High School, Dayton, Ohio 1945

    Married John Frederick Long June 15, 1948

    Children: George Lynas, Helen Lucille (Corcoran), Harold Roy,

    Clara Alice (Lawrence), Nancy Carol.

PROFESSIONAL EDUCATION

    1945-1948  Ohio State University, Columbus, Ohio

             B.A. in Biological Sciences, with Distinction in
             Zoology

             Phi Beta Kappa-Honorary

    1948-1952  Ohio State University College of Medicine

             Columbus, Ohio- Doctor of Medicine

    1952-1953  Grant Hospital, Columbus, Ohio- Rotating Internship

    1966-1969  Mt Carmel Medical Center, Columbus, Ohio

             Internal Medicine Residency, with special emphasis

             in Pulmonary Medicine

    1968-1969  Chief Resident in Internal Medicine, Mt. Carmel

             Medical Center, Columbus, Ohio

             Board Eligible in Internal Medicine

A270

-2-  Sarah B. Long, M.D.

POSITIONS HELD

1970 to present- Medical Consultant, Ohio Bureau of Disabilty
                 Determination.  This included all of Medical Consultive
                 Services for Black Lung Program during the period
                 it was administered by Social Security.

1979 to present- Physician Advisor to Utilization Management and
                 Peer Review at Mt. Carmel East Hospital, Columbus, Ohio

1973-1983  School Physician, Bexley, Ohio City Schools

1972 to present- Lecturer for pulmonary and cardiac systems.
                 Ohio Bureau of Disability Determination

1973-1976  Private Practice of Pulmonary Medicine, including
           responsibility for interpertation of Pulmonary
           Function Studies and Arterial Blood Gas Studies
           in the Pulmonary Laboratory at Mt. Carmel Medical
           Center, Columbus, Ohio

1970-1973  Physician. Student Health Service, Ohio State
           University

1953-1966  General Medical Practice, plus a Leave of
           Absence during a period when my children were young.

MEMBERSHIP IN PROFESSIONAL ORGANIZATIONS

Franklin County, Ohio Academy of Medicine

Ohio State Medical Associan

Member of Active Stafff in the Department of Medicine.

Mt. Carmel Medical Center and Mt. Carmel East Hospital

Columbus, Ohio

**Page 3 of 3**

Sep 20 12 09:02a    Ray Caffery    8438155040    p.4

# P. Raphael Caffrey, M.D.
## Pathology Consultant

172 Good Hope Road
Berkeley Hall
Bluffton, SC 29909
Phone: 843-815-5040

### CONSULTATION REPORT

RE:  Joseph Fleming v. Aberry Coal, Inc.
OWCP No.: XXX-XX-0560
Carrier Claim No.: 81062144
PS&E File No.: 40-756

I am in receipt of the following from Penn Stuart, Attorneys at Law:

1.  A letter dated September 14, 2012 from John A. Martin, Esquire to Dr. P. Raphael Caffrey.

2.  A surgical pathology report from Dynacare Tennessee, Knoxville, TN on Joseph Fleming, pathology number *S05-10945*, dated 6/24/05. This report is one page in length.

3.  An operative report on Joseph Fleming from the University of Tennessee Memorial Hospital, Knoxville, TN, dated 6/24/2005, by Thomas Gaines, M.D. The procedure performed was bronchoscopy followed by left VATS with resection of apical bullae and mechanical and chemical pleurodiesis. This report is two pages in length.

4.  Four surgical pathology slides labeled *S05-10945*. Two of the slides are from Dynacare, TN. They are labeled *A1* and *A2* with a green label and the name *J Fleming*. The other two slides are labeled *A1* and *A2* and they are from LabCorp-TN. There is a brown label on these slides with the name *Joseph Fleming*.

**MICROSCOPIC EXAMINATION:**
According to the surgical pathology report, the patient had a 12.0 x 3.5 x 1.8 cm resection from his left upper lobe which was labeled bleb wedge. On the pathology report it says, "Representative sections are submitted as *A1-2.*" There is no microscopic description but a final diagnosis is present on the surgical pathology report.

Microscopic examination of the four slides shows essentially the same findings on all four slides. There is moderate to severe emphysema and acute passive congestion with petechial hemorrhages. On all of the slides the alveoli are filled with macrophages containing a dusty brown pigment. There is mild interstitial fibrosis with focal areas of mononuclear cell infiltrate. These slides also show a mild amount of anthracotic pigment, particularly around blood vessels, scattered about the four sections. The anthracotic pigment does not stimulate the production of reticulin or collagen. There are no findings of complicated coal workers' pneumoconiosis.

**FINAL DIAGNOSIS:**
Four surgical pathology slides labeled *S05-10945* from left upper lobe wedge biopsy:
A.  Moderate to severe emphysema.
B.  Mild interstitial fibrosis with chronic inflammation.
C.  Macrophages predominant containing dusty brown pigment consistent with smoker's macrophages.

---

Occupational Pathology - Management - Anatomic & Clinical Pathology

**EMPLOYER'S EXHIBITS** 8    **Page** 1 of 12

Consultation Report re:  Joseph Fleming
OWCP No.: xxx-xx-0560
PS&E File No.: 40-756

Page 2 of 2

---

D.      Mild amount of anthracotic pigment identified in sections of lung tissue.

**COMMENT**
**Work History**:  Not provided.

**Smoking History:**  The only smoking history that I see is on the operative note and it says, "The patient had a long history of tobacco abuse.".

**Medical History:**  The only medical history is on the operative note and it says, "The patient is a 59-year-old gentleman who presented with a spontaneous pneumothorax eight or nine days ago and was treated with a chest tube."

**OPINION:**
It is my opinion after reviewing these four surgical pathology slides that there is evidence of anthracotic pigment, but the anthracotic pigment does not stimulate the production of reticulin. Therefore, the lesions of coal workers' pneumoconiosis are not present.

The Standards for coal workers' pneumoconiosis published in the *Archives of Pathology & Laboratory Medicine*, July 1979, in a special issue entitled "Pathology Standards for Coal Workers' Pneumoconiosis" state that for the lesion of coal workers' pneumoconiosis to be present the anthracotic pigment (coal dust) must stimulate the production of reticulin and/or collagen and then frequently focal emphysema develops.  There is no indication that the mild amount of anthracotic pigment in these sections of lung tissue stimulated the production of reticulin or collagen therefore the lesion of coal workers' pneumoconiosis is not identified on these slides.  The wedge biopsy was said to be 12 cm which is a sizeable piece of lung tissue, and it was from the left upper lobe.  The lesions of coal workers' pneumoconiosis, when present, are most prominent in upper lobes.  The degree of emphysema which is prominent coincides with the fact that the alveoli are filled with macrophages containing a dusty brown pigment which is consistent with what is called smoker's macrophages. These findings are consistent with the history recorded on the operative note that the patient abused tobacco.

In conclusion, the mild amount of anthracotic pigment in this wedge resection of lung, in my opinion would not have caused the patient any discernible pulmonary disability and certainly was insufficient to have caused or contributed to any impairment.

The opinions I have made are made with a reasonable degree of medical certainty.

P. Raphael Caffrey, M.D.
September 19, 2012

PRC/ceh

A273



**EXHIBIT**

KS    1    2-15-01
DR Caffrey

# P. RAPHAEL CAFFREY, M.D.
**Pathology Consultant**

| | |
|---|---|
| P.O. Box 763 | 8735 Midnight Pass-B503 |
| Linville, NC 28646 | Sarasota, FL 34242 |
| Phone/Fax (828) 898-6774 | Phone/Fax (941) 349-3049 |

## CURRICULUM VITAE
## NOVEMBER 2000

**Born:** Springfield, Ohio - 1931

**Education:**　Catholic Central High School, Springfield, Ohio, 1949
St. Louis University, B.S., 1953
St. Louis University, M.D., 1957
Ohio State University Hospital, Intern 1957-1958
St. Louis University Hospital, Resident 1958-1961
University of Kentucky Medical Center, Fellow 1961-1962

**Certifications:**　Fellow, American Board of Anatomical Pathology, 1962
Fellow, American Board of Clinical Pathology, 1963
Diplomate, American Board of Pathology, January 1, 1998
(for a 10 year period)

**Military Service:**　Chief of Laboratory Service, U.S. Army Hospital, Fort Gordon, GA 1962-64
Professional Commendation and Citation for Meritorious Service

**Isotope Training:**
Medical qualification courses, Oak Ridge Institute of Nuclear Studies, January 1964
Isotope work at University Hospital, Augusta, Georgia, Menard Ihnen, M.D. 1963-64

**Medical and Scientific Societies:**
Fellow College of American Pathologists
Fellow American Society of Clinical Pathologists
International Academy of Pathology
Kentucky Medical Association
Kentucky Society of Pathologists
Fayette County Medical Society
American Society of Cytology
North Carolina Medical Society

**Kentucky Medical License # 13741**
**North Carolina Medical License # 15377**

Page 3 of 12

P. Raphael Caffrey, M.D.
Page Two

**Professional and Hospital Appointments:**

1. Chairman, Department of Pathology, Central Baptist Hospital, Lexington, KY 1967-1991
2. President, Pathology and Cytology Laboratories, Inc., Lexington, Kentucky 1967-1992
3. President, Chipps, Caffrey & Dubilier, P.S.C., Lexington, Kentucky 1967-June 1994
4. Consultant Pathologist:
    Central Baptist Hospital, Lexington, Kentucky, Emeritus
    Pikeville Methodist Hospital, Pikeville, KY
5. President, Kentucky Society of Pathologists 1971-72
6. Secretary-Treasurer, Central Baptist Hospital Medical Staff 1972-73
7. President-Elect, Central Baptist Hospital Medical Staff 1974
8. President, Central Baptist Hospital Medical Staff 1975
9. Board Member, Fayette County Medical Society Services 1974-1978
10. Delegate, College of American Pathologists from Kentucky, 1974-1988
11. President-Elect, Fayette County Medical Society, 1976
12. President, Fayette County Medical Society, 1977
13. Board of Trustees, American Pathology Foundation 1977-1979
14. President, Central Kentucky Blood Center 1978-1979
15. Member, Medical Advisory & Professional Education Committee of KY Cancer Commission
16. Chairman, Kentucky Medical Association Cancer Committee, 1984-1988
17. Member, American Management Association, 1981-1990
18. Member, AMA General Management II Council, 1983-1990
19. Chairman, Continuing Education Committee, Central Baptist Hospital, 1983-1988
20. Chairman, Cancer Committee, Central Baptist Hospital, 1989-1990
21. Board Member, Kentucky Peer Review (KPRO) 1984-1986
22. Board Member, Central Baptist Hospital Medical Staff Executive Committee, 1984-1991
23. American Medical Association Physician's Recognition Award, 1982, 1989-1993, 1995-1998.
24. Consultant, Laboratory Corporation of America, (Burlington, NC), 1995 - Present.
25. Consultant, Chipps, Caffrey & Dubilier, P.S.C., 1995, 1996, 1997, 1998, 1999
26. Consultant, Legal Firms Relating to Occupational Pneumoconiosis.

**Faculty Appointments:** Assistant Clinical Professor of Pathology, University of Kentucky School of Medicine, 1965-1994

A275

P. Raphael Caffrey, M.D.
Page Three


**Publications:**
1.  Clinical Toxicology in the Laboratory. Missouri Society Medical Technology 1971
2.  The Clinical and Pathological Aspects of Pleural Mesotheliomas. Surgery 49, 1961
3.  Ascorbic Acid Levels in the Post Mortem Aqueous Humor. "Their Use in the Estimation of Time of Death" J. Forensic Medicine, Vol. 9 (4) 150-155, 1962
4.  "Isolated Subcutaneous Pneumatic Nodules" Pediatrics, December 1964
5.  "Pulmonary Alveolar Microlithiasis Occurring in Premature Twins" Journal of Pediatrics, April 1965
6.  Clinical Evaluation of Blood Volume Determinations Using RISA-131. Kentucky Academy General Practice Journal, April 1966
7.  Blood Volumes-Relations to Blood Banking, Kentucky Society of Medical Technologists Bulletin, May 1966
8.  Dubilier, L.D., Caffrey, P.R. and Hyde, G.L.: Multifocal Gastric Heterotopia in a Malformation of the Colon, Presenting as a Megacolon. Am. J. Clinical Path. 51:646-653, May 1969
9.  Gibson, C., Caffrey, P.R.: Simultaneous Occurrence of Streptococcal Pharyngitis and Infectious Mononucleosis. Journal of Ky. Med. Assoc. Pg. 650, Oct. 1970

**Postgraduate Training:**
Internship (Rotating) Ohio State University Medical Center, Columbus, Ohio  1957-58
Fellowship in Pathology, St. Louis University, 1958-61
Instructor in Pathology, University of Kentucky Medical Center, 1961-62
Postgraduate Course in Exfoliative Cytology, Dr. Herbert Neiburgs, Mt. Sinai Hospital, New York, New York, December 1964
Postgraduate Course in "Electrophoresis and Immunoelectrophoresis," Dr. Leo Cawley, Wichita, Kansas, October 1965
Postgraduate Course in "Interpretation of Electrolyte and Acid-Base Imbalance, Harry F. Weisberg, M.D., March 1967
Postgraduate Course in "Fluid, Cervical and Endometrial Cytology," August 1968
Postgraduate Course in "Pulmonary Cytology," November 1968
Postgraduate Course in "Lipids and Lipoprotein Electrophoresis," September 1969
Internal Academy of Pathology, March 1970:
> 1.  Tumors and Dermatitis of Skin by Elson B. Helwig-AFIP
> 2.  Differential Diagnosis of Bone Tumors
>     Harlan J. Spjut, Lauren V. Ackerman

ASCP/CAP, September 1970, Atlanta, Georgia
> 1.  Morphologic Hemopathology, Dr. Gerald E. Byrne, Jr.. & Dr. William W. Sheehan.
> 2.  Basic Hospital Associated Infection, Dr. Raymond C. Bartlett

ASCP, Boston, MA, October 24-25, 1971, Self Assessment Program Examination:
> 1.  Surgical Pathology
> 2.  Clinical Chemistry Theory
> 3.  Cytology

ASCP, Boston, MA, October 26, 1971, Problem Crossmatch, Medical Aspects, by Paul J. Schmidt, M.D.


Page 5 of 12

P. Raphael Caffrey, M.D.
Page Four

**Postgraduate Training Continued:**

ASCP, Boston, MA, Oct. 24, 1971, Fluorescent Antibody Techniques, Dr. George P. Blundell

Training Seminar in Forensic Pathology, Memphis, TN, March 23-25, 1972, Dr. Russell Fisher, Chairman

CAP, Professional Administrative Development Program, Phase I, Part A, Boston, MA, October 21-23, 1971

CAP, Professional Administrative Development Program, Phase I, Part B, Chicago, IL, December 9-11, 1971

CAP, Professional Administrative Development Program, Phase III, Part A, Montreal, Canada, August 1972

CAP, Professional Administrative Development Program, Phase III, Part B, Traverse City, Michigan, September 1972

CAP/ASCP, October 1972, San Francisco, CA, Pathology in Gynecology & Obstetrics, Univ. of Colorado, Dept. of Pathology, Aspen, CO, Oct. 1973, 30 credit hours.

ASCP/CAP Spring Meeting, March 1-8, 1974, Los Angeles, California
1. House of Delegates Meeting, March 4-6, 1974
2. Mathematical & Statistical Methods in Nuclear Medicine, March 2, 1974, 7 Credit Hours
3. Paternity Testing, March 3, 1974, 3.5 Credit Hours
4. Radioimmunoassay & Competitive Protein Binding-Clinical, March 5, 1974, 7 Credit Hours

ASCP/CAP Fall Meeting, October 4-11, 1974, Washington, D.C., 14 Credit Hours
1. House of Delegates Meeting, October 7-9, 1974
2. Cure in Hodgkin's Disease, October 6, 1974
3. Modern Solutions to Common Endocrinologic Problems, October 7, 1974
4. Adverse Drug Reactions, October 8, 1974
5. Lymph Node Cytology, October 8, 1974,

ASCP/CAP Spring Meeting, February 22-28, 1975, Las Vegas, Nevada
1. House of Delegates Meeting, February 24-26, 1975
2. Diagnostic Neuropathology Seminar, February 23, 1975, 7.0 credit hours
3. Breast Cancer: Detection, Diagnosis & Therapy, Feb. 25, 1975, 5.5 Credit hours
4. Professional Self-Assessment Program in Cytology
5. Use of Programmable Calculators & Mini Computers in Clinical Laboratories, Wang Laboratories, February 27, 1975

ASCP/CAP Spring Meeting, March 19-24, 1976, Dallas, Texas
1. Ph, Blood Gas & Electrolyte Abnormalities II's, Interpretation & Application, Werner Fleischer, M.D. & Alfred Hartmann, M.D., 7.0 credit hours
2. Selection & Use of Antibiotics, Dr. Martin McHenry Dr. Thomas Gavan, 3.5 credit hours
3. Antimicrobial Susceptibility Testing by Broth Dilution, Dr. Benny Mertens, 3.5 credit hours
4. Clinical Anaerobic Bacteriology, Dr. Steve Allen, (CDC), V.R. Dowell, Ph.D., (CDC), Dr. James Smith, (I.U.), 7.0 credit hours

P. Raphael Caffrey, M.D.
Page Five

**Postgraduate Training Continued:**

5.  KSP Delegate, House of Delegates Meeting, Mar. 22-24, 1976, Pathology, Boston Univ. School of Medicine, Dr. Pablo Enriquez, Univ. of Miami, Dept. of Pathology & Dr. David Rosenthal, Peter Brent Brigham Hospital, Boston 7.0 credit hours

ASCP/CAP Fall Meeting, October 21-27, 1977, Las Vegas, Nevada

1.  Myeloproliferative Disease: A Unified Clinical & Pathological Approach, Dr. Richard Neiman.
2.  Pathology of the Placenta, Dr. Douglas Shanklin, (Chicago Lying-In Hospital) 3.5 credit hours
3.  Preleukemia, Drs. Robert Pierre & Clark Hoagland, Mayo Clinic, 3.5 credit hours
4.  Liver Biopsies II, Dr. Robert L. Peters, (University of Southern California School of Medicine) 7.0 credit hours
5.  The Importance of Estrogen Receptor Assay in Determining Therapy of Breast Cancer, Drs. Joseph Keffer, Gustavo Reynoso & Robert Nakamura, 3.5 credit hours
6.  Mammography & Specimen Radiography in Diagnosis of Breast Cancer, Dr. Peter Rosen, (Memorial Sloan-Kettering Cancer Center in NY), Dr. Ruth Snyder, (Memorial Sloan-Kettering Cancer Center in NY) 3.5 credit hours
7.  KSP Delegate - House of Delegates Meeting, October 24-26, 1977

ASCP/CAP Fall Meeting, September 14-22, 1978, St. Louis, Missouri

1.  Laboratory Diagnosis of the Hemolytic Anemias, Dr. Robert W. McKinna, (Univ. of Minnesota School of Medicine) Dr. Charles A. Horwitz, (Mt. Sinai Hospital, Minnesota) 3.5 credit hours
2.  Disseminated Intravascular Coagulation, Dr. Kirt Sheth, (Univ. of Oregon), Dr. Scott Goodnight, (Univ. of Oregon) 3.5 credit hours
3.  An Approach to the Diagnosis of Reactive & Less than Malignant Lesions in Lymph Nodes, Dr. Gerald E. Byrne, Univ. of Miami, Dr. William W. Sheehan, Univ. of Texas Southwestern Medical Center, Dallas, 3.5 credit hours
4.  The Use of Immunoelectrophoresis in the Differential Diagnosis of Plasma Cell Myeloma, Dr. Gerald M. Penn, Childrens Hospital, Columbus, Ohio,, 3.5 credit hours
5.  Decision Making in the Blood Bank, Dr. Herbert F. Polesky, (Minneapolis War Memorial Blood Bank), Dr, William V. Miller, (Missouri-Illinois, Regional Red Cross, St. Louis) 3.5 credit hours
6.  KSP Delegate - House of Delegates Meeting, September 18-20, 1978.

American College of Nuclear Physicians Meeting, February 28 - March 4, 1979, San Juan, Puerto Rico, 15 credit hours, Category I CME credits under Auspices of College of Medicine, University of South Florida, Tampa, Florida

Inspection & Accreditation Workshop, CAP, Indianapolis, IN, May 10, 1979, 5 credit hours

CAP Inspection and Accreditation, Inspector of S.S. Mary & Elizabeth Hospital, July 26, 1979, 15 credit hours.

Page 7 of 12

A278

P. Raphael Caffrey, M.D.
Page Six

**Postgraduate Training Continued:**

Dermatopathology Symposium, Mar. 1-4, 1980, San Juan, Puerto Rico, 21 credit hours, under auspices of Univ. of Puerto Rico School of Medicine & New York University School of Medicine

ASCP/CAP Fall Meeting, October 25-31, 1980, St. Louis, Missouri

1. Pathologic Interpretation of Endoscopic Biopsies of the Gastrointestinal Tract, Dr. Rodger C. Haggitt (Baptist Memorial Hospital, Memphis, TN) 3.5 credit hours
2. Laboratory Monitoring of Current Anticoagulant Therapy, Dr. Douglas A. Triplett, Ball Memorial Hospital, Muncie, Indiana, Dr. Bruce L. Evatt, (Center for Disease Control, Atlanta, Georgia) 3.5 credit hours
3. Lymph Node Biopsy Diagnosis for the Surgical Pathologist, Dr. Robert W. Astarita, Univ. of California, Dr. Adelbert D. Cramer, Univ. of South California Medical Center, Clive R. Taylor, M.D., Ph.D., Univ. of South California Medical Center, 3.5 credit hours

Great Medical Getaways, U.S. Virgin Islands, Feb. 5-11, 1982, Pathology of Breast Disease, 2 credit hours, Dr. Robert W. McDivitt, Jewish Hospital, St. Louis, MO)

ASCP/CAP Spring Meeting, March 13-19, 1982, New Orleans, LA.

1. Tumors/Tumor-Like Conditions Somatic Soft Tissue, 3.5 credit hours
2. Liver Biopsies - IV, 7.0 credit hours
3. Pathology of Lung Cancer, 3.5 credit hours
4. Diagnostic Problems in Leukemias, 3.5 credit hours
5. Irradiation/Chemotherapy Changes in Cytology, 3.5 credit hours

CAP Inspection and Accreditation Inspector of NKC, Inc. Laboratory, Louisville, KY, May 25, 1982, 7 credit hours.

CAP SNOMED Coding Seminar, St. Louis, MO, September 16-17, 1982, 9 credit hours.

Great Medical Getaways, U.S. Virgin Islands, Pathology of Breast Disease, 12 credit hrs., Dr. Robert W. McDivitt (Jewish Hospital, St. Louis, MO),Feb. 5-11, 1983

MRC Pneumoconiosis Unit, Llandough Hosp., Penarth, Glamorgan (England), Day of Instruction, May 18, 1983, Dr. J.C. Wagner, Chief Pathologist & Dr. V. Timbrell

ASCP/CAP Fall Meeting, Oct. 14-19, 1983, St. Louis, MO, House of Delegates, Oct. 17-19, 1983, Educational Seminars:

1. Surgical Pathology of the Diagnosis & Differential Diagnosis of Non-Hodgkins Lymphomas Involving Lymph Nodes, Dr. Robert J. Hartsock, Allegheny General Hospital.-Singer Research Institute, Pittsburgh, PA, 3.5 credit hours
2. Those Perplexing Hepatitis Tests & the New Vaccine, Dr. Daniel Niejadlik, (Middlesex Hospital, Middletown, Connecticut), 3.5 credit hours
3. Blood Transfusion in Patients Undergoing Open Heart Surgery, Dr. John D. Milam (St. Luke's Episcopal Hospital, Houston, TX, 3.5 credit hours
4. Pathology of Cancer & Infections of Current Epidemiologic Interest, Allen L. Paris, M.D., M.S., West Plains Memorial Hospital, West Plains, MO), 3.5 credit hours

P. Raphael Caffrey, M.D.
Page Seven

**Postgraduate Training Continued:**

5. Pathology of the Acquired Immune Deficiency Syndrome (AIDS), Dr. Russell K. Brynes, Emory Univ. School of Medicine, Atlanta, GA, Dr. Edwin P. Ewing, Jr., Centers for Disease Control, Atlanta, GA, Vijay V. Joshi, M.D., Ph.D., M.R.C., Path., College of Medicine & Dentistry of New Jersey, Newark, NJ, 3.5 credit hours

6. Immunoperoxidase Techniques: Diagnostic Applications in Human Tumors & Related Conditions, Dr. Mehrdad Nadji, Univ. of Miami School of Medicine, Miami, FL, Dr. Azorides R. Morales, Univ. of Miami School of Medicine, Miami, FL, 3.5 credit hours

7. Scientific Symposium: Acquired Immune Deficiency & Opportunistic Infections, Dr. Leona W. Ayers, (The Ohio State University, Columbus, Ohio) 3.0 credit hours

ASCP/CAP Spring Meeting, March 4-8, 1984, Las Vegas, Nevada

1. House of Delegates Meetings, March 5 and 7, 1984

2. Scientific Symposium: The Pathologist as Consultant in Cardiac Surgery, Dr. Hugh McAllister and Dr. John Milam (St. Luke's Episcopal Hospital, Houston, Texas) March 5, 1984, 3.5 credit hours

3. Cytologic Interpretation of Pulmonary Fine Needle Aspiration & Bronchial Brush Specimens, Dr. Thomas A. Bonfiglio (Univ. of Rochester) March 6, 1984, 3.5 credit hours

4. Intraoperative Cytology: An Adjunct to Frozen Sections, Dr. James Wilkerson (Univ. of Alabama) March 6, 1984, 3.5 credit hours

5. The Role of Fine Needle Aspiration Biopsy in an 800-Bed Community & Teaching Hospital, Dr. Robert E. Lee (Lutheran Medical Center, Park Ridge, IL) March 7, 1984, 3.5 credit hours

Special Pathology: Update, Dec. 5-7, 1984, 17.25 credit hours, Lillian & Henry Stratton, Hans Popper, Dept. of Pathology, Page & William Black, Post Graduate School of Medicine, Mt. Sinai School of Medicine (CUNY), Mt. Sinai Medical Center, NY, NY, Pulmonary Pathology, Hematopathology, Liver Pathology

Selected Practical Topics in Soft Tissue, Jan. 25-31, 1985, 12 credit hours, Sharon Weiss, M.D., Univ. of Alabama School of Medicine; International Association of Medical Specialists, St. John, U.S.Virgin Islands.

CAP Inspection and Accreditation, Inspector of Methodist Evangelical Hospital, Louisville, KY, October 22, 1985, 7 credit hours, Category I

Special Pathology Update, December 4-6, 1985, 20 credit hours, Lillian & Henry Stratton, Hans Popper, Dept. of Pathology, Page & William Black, Post Graduate School of Medicine, Mt. Sinai School of Medicine (CUNY), Mt. Sinai Medical Center, NY, NY, Hepatic Pathology, OB/GYN Pathology, Breast Pathology, Pediatric Pathology, New Techniques in Diagnostic Pathology

ASCP/CAP Fall Meeting, September 26-October 2, 1986, Orlando, FL, House of Delegates, KSP Representative, September 29-October 1, 1986, Educational Seminars: (All Category I credits)

1. Contemporary Autopsy Methods: Handling of High Risk Autopsies, September 28, 1986, 3 Credit Hours

A280

P. Raphael Caffrey, M.D.
Page Eight

**Postgraduate Training Continued:**

2. Wright's Stained Cytology of CSF/Body Fluids, Dr. Joanne Combleet (Standord), September 28, 1986, 3.5 Credit Hours

3. Histopathologic/Immunologic Approach to Potential Patient with AIDS/ARC, Paul Meyer (LA-USC) September 29, 1986, 3.5 Credit hours

4. Diagnostic Urine Cytology, George Farrow (Mayo Clinic) ASCP, October 1, 1986, 3.5 Credit Hours

5. Reading the Placenta: Practical Placental Diagnosis, Eugene Perrin (Wayne State), October 1, 1986, 3.5 Credit Hours

Current Concepts in Pulmonary Pathology, Harvard Medical School & Massachusetts General Hosp., Dr. Eugene J. Mark, Oct. 19-23, 1987, Boston, MA, 31 Credit Hrs.

Ninth Annual Comprehensive Fine Needle Biopsy Course, Sponsor: Univ. of California School of Medicine, San Francisco, CA, Co-Chairman, Dr. Theodore R. Miller & Dr. John S. Abele, Aug. 5-12, 1989, Kauai, HI, 25 CME Credit Hours.

Fourth Combined Skin Pathology Course, Sponsor: Univ. of Colorado School of Medicine, New Jersey Medical School and The Graduate Hospital, Philadelphia, PA, October 11-15, 1989, Denver, Colorado, 36 Credit Hours of Category I.

Capitalize on Education, Sponsor: CAP, Nov. 10-11, 1989, NY, NY, 8.5 Credit Hours.

Tenth Annual Fine Needle Biopsy Course, Sponsor: Univ. of California School of Medicine at San Francisco, August 5-11, 1990, Hamilton, Bermuda, 25 Credit Hours.

Practical Reviews in Pathology, Vol. 15 (Issues 10, 11, 12); Vol. 16 (Issues 1, 2, 3, 4, 5) by Correspondence, Albert Einstein College of Medicine, Bronx, N.Y., December 1990 - November 1991, 16 Credit Hours.

Update in Clinical Microbiology & Immunology, Sponsor: University of Utah, July 14-19, 1991, Jackson Hole, Wyoming, 23 AMA Credit Hours, Category I.

Clinical Pathology at the Crossroads, American Pathology Foundation, August 7-11, 1991, White Sulphur Springs, WV, 21 CME Category 1 Credit Hours.

Risk Prevention Skills by Correspondence, Sponsor: University of California at San Francisco, July 1, 1991 to June 30, 1992, 6 Credit Hours, Category I.

ASCP, Teleconference Series Workshop, Quality Improvement: Implications for Laboratory Medicine, June 18, 1992, 1 CME Credit.

Update in Clinical Microbiology and Immunology, Sponsor: University of Utah, July 12-18, 1992, Jackson Hole, Wyoming, 23 AMA Credit Hours, Category I.

12th Annual Comprehensive Fine Needle Biopsy Course, Sponsor: Univ. Of California, San Francisco School of Medicine, Aug. 9-15, 1992, Kohala Coast, HI, 27 Credit Hours.

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology by Correspondence, August 3, 1992, 2.5 CME Credit Hours, Category A-1.

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology by Correspondence, October 30, 1992, 2.5 CME Credit Hours, Category A-1.

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology by Correspondence December 30, 1992, 2.5 CME Credit Hours, Category A-1.

Practical Reviews in Pathology, Vol. 16 (Issues 8-12) & Vol. 17 (Issues 1, 2, 4, 5, 6, 7) by Correspondence, Sponsor: Albert Einstein College of Medicine, Bronx, NY, Dec. 1991- Nov. 1992, Vol. 16, (15 Credit Hours), Vol. 17 (18 Credit Hours).

P. Raphael Caffrey, M.D.
Page Nine

**Postgraduate Training Continued:**

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology, April 29, 1993, 2.5 CME Credit Hours Category 1 and A-1.

9th Annual Current Issues in Anatomic Pathology, San Francisco, California, May 27-29, 1993, 19.5 CME Credit Hours, Category 1.

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology, July 16, 1993, 2.5 CME Credit Hours, Category 1 and A1.

Practical Reviews in Pathology, Vol. 17 (Issues 8-12) & Vol. 18 (Issues 1-7) by correspondence, Sponsor: Albert Einstein College of Medicine, Bronx, NY, Dec. 1992-Nov. 1993, Vol. 17 (15 Credit Hours), Vol. 18 (21 Credit Hours).

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology, September 22, 1993, 2.5 CME Credit Hours, Category 1 and A1

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology, December 31, 1993, PAP-D, 2.5 CME Credit Hours, Category 1and A1.

CAP, Interlaboratory Comparison Program in Cervicovaginal Cytology, 1994 PAP-A, 2.5 CME Credit Hours.

Kentucky Cabinet for Human Resources, Course # 0995-729M, HIV and the AIDS Epidemic, April 22, 1994, 4.0 CME Credit Hours.

ASCP, Diagnostic Cytology of the Female Genital Tract, Charleston, SC, May 9-13, 1994, 29 CME Credit Hours.

12th Annual Summer Update in Clinical Microbiology and Immunology, Sponsor: Univ. Of Utah, July 10-15, 1994, Jackson Hole, Wyoming, 20 CME Credit Hours.

Alliant Health System, Accredited by Kentucky Medical Association, Leitchfield, Kentucky, Diabetic Foot Care, October 10, 1994, 1 CME Credit Hour, Category 1.

The Kentucky AIDS Education & Training Center, Dept. of Preventive Medicine & Environmental Health, University of Kentucky Medical Center, Lexington, KY, **Physician HIV Update, KY CHR Series # 0895-50-S**, Nov. 22, 1994, 2 CME Credit Hours.

Practical Reviews in Pathology, Vol. 18 (Issues 8-12), Vol. 19 (Issues 1-8) by correspondence, Sponsor: Albert Einstein College of Medicine, Bronx, NY, Dec. 1993-Nov. 1994, Vol. 18, 15 CME Credit Hours, Vol. 19, 24 CME Credit Hours.

Duke University Medical Center, 37th Annual Postgraduate Course, Morehead, July 10-14, 1995, 25 CME Credit Hours, AMA Category I.

Duke University Medical Center, Monograph "The Relationship of HSV to HIV," May 1, 1995 - June 30, 1996, 2 CME Credit Hours, Category I.

CAP, Contract & Practice Seminar: Pathologists Managing Managed Care, July 28-29, 1995, 14.5 CME Credit Hours, AMA Category I.

CAP, The Doctors' Company, Napa, CA, Risk Management Sourcebook Review, Oct. 10, 1995, by correspondence, 12 CME Credit Hours, Category 1.

Bowman School of Medicine, Wake Forest University, Breast Cancer: A Multidisciplinary Approach Program, November 2-5, 1995, 15 CME Credit Hours.

Practical Reviews in Pathology, Vol. 19 (Issues 9-12), Vol. 20 (Issues 1-8) by correspondence, Sponsor: Albert Einstein College of Medicine, Bronx, NY, Dec. 1994-Nov. 1995, Vol. 19, 12 CME Credit Hours, Vol. 20, 24 CME Credit Hours.

P. Raphael Caffrey, M.D.
Page Ten

**Postgraduate Training Continued:**

Duke University Medical Center, 38th Annual Postgraduate Course, Morehead, July 22-26, 1996, 25 CME Credit Hours, AMA Category I.

ASCP, Surgical Pathology of the Lung, Santa Fe, New Mexico, October 23-26, 1996, 26.5 CME Credit Hours, AMA Category I.

Albert Einstein College of Medicine, Bronx, NY, Practical Reviews in Pathology, December 1996-November 1997 by correspondence, 33 CME Credit Hours, Category I.

Emery University School of Medicine, "A Potpourri of Clinical Diseases for Primary Care Physicians and Specialists," Sea Island, Georgia, July 13-17, 1997, 10 CME Credit Hours, Category I.

University of Alabama School of Medicine, Asheville, North Carolina, 1st Annual Update in Diagnostic Pathology, November 7-9, 1997, 18 CME Credit Hours, Category I.

ASCP, Surgical Pathology of the GI Tract, Newport, Rhode Island, June 2-6, 1998, 28 CME Credit Hours.

Wake Forest University School of Medicine, Advanced Cardiac Life Support Workshop, October 24-25, 1998, 10 AMA Category 1 Credits, 1.0 C.E.U. Credit.

Albert Einstein College of Medicine, Bronx, NY, Practical Reviews in Pathology, December 1997 to November 1998 by correspondence, 33 CME Credit Hours, Category I

University of Alabama School of Medicine, Hilton Head, SC, 3rd Annual Update in Diagnostic Pathology, September 24-26, 1999, 16.5 CME Credit Hours

CME Resource, HIV/AIDS Kentucky Requirement for Physicians, 2 CME Credit Hours, Category I

University of Alabama School of Medicine, Pine Mountain, GA, 4th Annual Update in Diagnostic Pathology, November 2-5, 2000, 18 CME Credit Hours



NAME: FLEMING, JOSEPH
Date: Mar 28, 2012
ID# 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
DOB: 9/11/1945

**DEPT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**
National Institute for Occupational Safety and Health
Federal Mine Safety & Health Act 1977
**B-READING**

Coal Worker's Health Surveillance Program
NIOSH PO Box 4258
Morgantown, WV 26504

**PENNSTUART**

CHEST  (PA)  LAT  RAO  LAO  AP

Film Agency: NORTON COMMUNITY HOSPITAL

**1. FILM QUALITY**
1  2☒  3  u/r
☐ Dark  ☒ Improper Position  ☐ Hypoinflation
☒ Light  ☐ Poor Contrast  ☐ Mottle
☒ Artifacts  ☐ Poor Processing

Comments: *scapulae over lungs*

**2A. Any Parenchymal abnormalities consistent with Pneumoconiosis?**  YES ☐ goto 2B, 2C   NO ☒ goto 3A

**2B. Small Opacities**
a. Shape / Size
Primary: p s / q t / r u
Secondary: p s / q t / r u

b. Zones
| | R | L |
|---|---|---|
| Upper | | |
| Middle | | |
| Lower | | |

c. Profusion
0/- 0/0 0/1
1/0 1/1 1/2
2/1 2/2 2/3
3/2 3/3 3/4+

**2C. Large Opacities**
Size  0 A B C

**3A. Any Pleural abnormalities consistent with Pneumoconiosis?**  YES ☐ goto 3B, 3C   NO ☒ goto 4A

**3B. Pleural Plaques**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<¼ 2=¼-½ 3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | O R L | O R L |
| Face On | O R L | O R L | 1 2 3 | 1 2 3 |
| Diaphragm | O R L | O R L | O L | O L |
| Other site(s) | O R L | O R L | 1 2 3 | 1 2 3 |
| | | | A B C | A B C |

**3C. Costrophrenic Angle Obliteration**  R L  goto 3D   NO ☐ goto 4A

**3D. Diffuse Pleural Thickening**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<¼ 2=¼-½ 3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | O R | O L |
| Face On | O R L | O R L | 1 2 3 | 1 2 3 |
| | | | A B C | A B C |

**4A. ANY Other Abnormalities?**  YES ☒ goto 4B, 4C, 4D, 4E   NO ☐ goto

**4B Other Symbols (Obligatory)**
aa  at  ax  bu  ca  cg  cn  co  cp  cv  di  ef  em  es  fr  hi  ho  id  ih  kl  me  pa  pb  pi  px  ra  rp  tb
☒ Report other diseases or significant abnormalities in section 4C/4D

**4D.**  OTHER COMMENTS:
*Possible 1.5 cm nodule overlying left anterior 3rd rib - possible cancer. Advise CT. Hyperinflation lungs with decreased upper lung markings compatible with emphysema. Atherosclerosis aorta.*

**4C. Mark all boxes that apply**
Airway Disorders
☐ Increased lung markings
☐ Hyperinflation
Bony Abnormalities
☐ Chest cage
☐ Fracture, healed (non-rib)
☐ Fracture, not healed (non-rib)
☐ Scoliosis
☐ Vertebral column
Abnormalities of the Diaphragm
☐ Eventration
☐ Hiatus hernia
Lung Abnormalities
☐ Azygos lobe
☐ Density
☐ Infiltrate
☐ Nodule, nodular lesion
Miscellaneous Abnormalities
☐ Cyst
☐ Foreign Body
☐ Surgery / sternal wires
Vascular Disorders
☐ Aorta, anomaly of
☐ Vascular abnormalikty

**4E. Should worker see personal physician for findings in section 4.?**  YES ☒  NO ☐   Date Notified: /  /

**5.**
Physician's Soc. Security #  ☐☐☐ ☐☐ ☐☐☐☐
Name: *William W. Scott, Jr., M.D.*
Address: Johns Hopkins Hospital, 600 N. Wolfe Street, Baltimore, MD 21287 USA

Film Reader's Initials  *WWS*
Date of Reading  Sep 19, 2012 14:49 hr

**EMPLOYER'S EXHIBITS** 9   **Page** 1 **of** 1



NAME: FLEMING, JOSEPH

Date: Apr 20, 2011

ID# 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

DOB: 9/11/1945

**DEPT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**
National Institute for Occupational Safety and Health
Federal Mine Safety & Health Act 1977
**B-READING**

Coal Worker's Health Surveillance Program
NIOSH PO Box 4258
Morgantown, WV 26504

PENNSTUART

CHEST  (PA)  LAT   RAO   LAO   AP

UNKNOWN

**1. FILM QUALITY**

[ 1  2  ☒ u/r ]

☐ Dark    ☐ Improper Position   ☐ Hypoinflation
☒ Light   ☐ Poor Contrast   ☐ Mottle
☒ Artifacts  ☒ Poor Processing

Comments:

**2A. Any Parenchymal abnormalities consistent with Pneumoconiosis?**   YES ☐ goto 2B, 2C   NO ☒ goto 3A

**2B. Small Opacities**

a. Shape / Size

| Primary | | Secondary | |
|---|---|---|---|
| p | s | p | s |
| q | t | q | t |
| r | u | r | u |

b. Zones

| | R | L |
|---|---|---|
| Upper | | |
| Middle | | |
| Lower | | |

c. Profusion

| 0/_ | 0/0 | 0/1 |
|---|---|---|
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. Large Opacities**

Size [ 0  A  B  C ]

**2C.** Mark all boxes that apply
Airway Disorders
 ☐ Increased lung markings
 ☐ Hyperinflation
Bony Abnormalities
 ☐ Chest cage
 ☐ Fracture, healed (non-rib)
 ☐ Fracture, not healed (non-rib)
 ☐ Scoliosis
 ☐ Vertebral column
Abnormalities of the Diaphragm
 ☐ Eventration
 ☐ Hiatus hernia
Lung Abnormalities
 ☐ Azygos lobe
 ☐ Density
 ☐ Infiltrate
 ☐ Nodule, nodular lesion
Miscellaneous Abnormalities
 ☐ Cyst
 ☐ Foreign Body
 ☐ Surgery / sternal wires
Vascular Disorders
 ☐ Aorta, anomaly of
 ☐ Vascular abnormalikty

**3A. Any Pleural abnormalities consistent with Pneumoconiosis?**   YES ☐ goto 3B, 3C   NO ☒ goto 4A

**3B. Pleural Plaques**

| | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) | WIDTH (profile only) (3mm minimum width) |
|---|---|---|---|---|
| Chest Wall | | | 1=<¼  2=¼-½  3=>½ | a=3-5 b=5-10 c=>10mm |
| In Profile | O R L | O R L | | |
| Face On | O R L | O R L | | |
| Diaphrahm | O R L | O R L | O R 1 2 3   O L 1 2 3 | O R   O L   A B C   A B C |
| Other site(s) | O R L | O R L | | |

**3C. Costrophrenic Angle Obliteration**   R L  goto 3D        NO ☐ goto 4A

**3D. Diffuse Pleural Thickening**

| | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<¼  2=¼-½  3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| Chest Wall | | | | |
| In Profile | O R L | O R L | O R 1 2 3   O L 1 2 3 | O R   O L   A B C   A B C |
| Face On | O R L | O R L | | |

**4A. ANY Other Abnormalities?**   YES ☒ goto 4B, 4C, 4D, 4E        NO ☐ goto

**4B Other Symbols (Obligatory)**

[ ☒  at  ax  ☒  ca  cg  cn  co  cp  cv  di  ef  ☒  es  fr  hi  ho  id  ih  kl  me  pa  pb  pi  px  ra  rp  tb ]

[ OD ]  Report other diseases or significant abnormalities in section 4C/4D

**4D.**

*OTHER COMMENTS*

Hyperinflation lungs compatible with emphysema

Bullae upper lungs.

Arteriosclerosis aorta.

**4E. Should worker see personal physician for findings in section 4.?**   YES ☒   NO ☐      Date Notified:    /    /

**5.**

[ ☐ ☐ ☐ ] [ ☐ ☐ ] [ ☐ ☐ ☐ ☐ ]
Physician's Soc. Security #

Name: *William W. Scott, Jr., M.D.*

Address: Johns Hopkins Hospital, 600 N. Wolfe Street, Baltimore, MD 21287 USA

Film Reader's Initials

*W W S*

EMPLOYER'S EXHIBITS ___10___

*Date of Reading*

Aug 24, 2011 15:07 hr

Page __1__ of __1__

A285

*A. Dahhan, M.D., F.C.C.P.*
*120 Professional Lane*
*Suite 101*
*Harlan, KY 40831*

*606-573-1085*

September 21, 2012

Jennifer McCoy
PENNSTUART
Attorneys at Law
804 Anderson Street
Bristol, TN 37620

RE:  Joseph Fleming
SSN:  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

Dear Ms. McCoy,

I reviewed the records that you submitted to me regarding the above individual under the letterhead dated September 20, 2012.

Included was a chest x-ray dated 4/20/2011 read by Dr. William Scott on 8/24/2011 as 0/0 with bulli and emphysema.

A report by Dr. Gallai dated January 16, 2012 indicated that he examined the patient and reported a history of coal mining for a total of 18 years.  All of his mining employment was underground as a scoop, shuttle car, and roof bolter operator.  Dr. Gallai indicated that the patient smoked half a pack per day between the ages of 25 and 35 and resumed it at the age of 45 for a total of 15 years.  Mr. Fleming quit smoking at the age of 60.  He has a history of cough and shortness of breath.  Mr. Fleming was on Prednisone 5mg every other day, Proventil inhaler three times a day, Advair inhaler twice a day, Spiriva inhaler once a day, and oxygen during the night and as needed during the day.  On examination of the chest expansion was reduced and hyper resonancy to percussion was noted with decreased breath sounds.  No rhonchi, wheeze or rales were audible.  Arterial blood gases showed a pO2 of 57.4 and a pCO2 of 39.9 with a pH of 7.414.  No exercise study was done.  Spirometry showed an FVC of 2.08 liters or 50% and an FEV1 of .70 liters or 21% with no significant improvement after bronchodilators.  Diffusion capacity was 53%.  Chest x-ray was read by Dr. DePonte as s/s, 1/0 with emphysema.  The physician diagnosed clinical pneumoconiosis based on the x-ray reading and legal pneumoconiosis based on the obstructive airway findings.

Chest x-ray dated January 16, 2012 was read by Dr. Scott as 0/0 with emphysema.

**EMPLOYER'S EXHIBITS** ___11___       Page _1_ of _31_

Letter to Jennifer McCoy                    RE: Joseph Fleming
September 21, 2012                          Page No. 2

A report by Dr. Splan indicated he examined the patient on March 28, 2012 and reported a history of shortness of breath of 20 years duration. The patient had been on oxygen for the previous seven years. He was noted as having a history of chronic cough, sputum production and wheeze. Mr. Fleming worked in the mining industry between 1973 and 1992 operating various equipment including continuous miner, scoop, and roof bolter. He has a history of smoking that began in 1966 averaging a half a pack per day and ended in 2005. The patient's medication included Advair inhaler 250/50 twice a day, Proventil HFA as needed, Spiriva once a day, Lasix 40mg a day, Prednisone 5mg every other day, and oxygen 2 liters per minute. Hospitalization included acute myocardial infarction in 1989, surgery on several occasions, lumbar laminectomy in 1992, bilateral hernia repair in 1998 and 2007, and spontaneous pneumothorax on the left chest in 2005 requiring insertion of a chest tube and subsequent pleurodesis. Clinical examination of the chest showed good air movement bilaterally with marked prolongation of the expiratory phase and occasional wheeze bilaterally. Chest x-ray was read as s/t, 1/0 with emphysema by Dr. Michael Alexander. Arterial blood gases at rest showed a pO2 of 48.6 and a pCO2 of 43.2. No exercise study was done. Spirometry showed an FVC of 2.18 liters or 52% and an FEV1 of .75 liters or 22%. Diffusion capacity was 60%. EKG showed old anterior myocardial infarction.

A report by Dr. Rosenberg dated April 16, 2012 indicated he examined the patient on March 22, 2012. He found the patient to be 66 years old with a history of working in the mining industry for 18.5 years ending in 1992 after a back injury. He noted that the patient smoked half a pack per day that began at the age of 25 with a 10 year period of termination. Mr. Fleming finally quit at the age of 59. Dr. Rosenberg reported a history of cough, wheezing and shortness of breath. The patient's medication included Advair inhaler, Spiriva inhaler, Albuterol via nebulizer, and Prednisone 5mg daily. Examination of the chest showed markedly diminished breath sounds which were distant with some anterior wheeze. Carboxyhemoglobin level was 3.8%. Arterial blood gases at rest showed a pO2 of 65 and a pCO2 of 40.3. Exercise blood gases showed a pO2 of 56 and a pCO2 of 44. Spirometry showed an FVC of 2.48 liters or 58% and an FEV1 of .68 liters or 20%. After bronchodilators FVC was 2.76 liters or 65% and FEV1 was .85 liters or 25%. Chest x-ray was re-reviewed and read by Dr. Wheeler as 0/0 with emphysema.

Chest x-ray dated March 20, 2012 was read by Dr. Wheeler as 0/0 with emphysema.

A report by Dr. Caffrey dated 9/19/2012 indicated that he reviewed biopsy slides and various medical records. He described the sample as 12x3.5x1.8cm resection from the left upper lobe which labeled bleb wedge. He reviewed four slides and found moderate to severe emphysema with acute passive congestion and petechial hemorrhages. On all of the slides he noted the alveoli to be filled with a macrophage containing a dusty brown pigment with mild interstitial fibrosis and focal areas of mononuclear cell infiltrate. He stated that, in his opinion, after reviewing these four surgical pathology slides. There is evidence of anthracotic pigment which does not stimulate the production of reticulum, therefore, the lesions of coal workers' pneumoconiosis are not present.

**Page 2 of 31**

Letter to Jennifer McCoy                    RE: Joseph Fleming
September 21, 2012                           Page No. 3

In conclusion, based on my examination of this patient in 2011 and my review of his medical records as described above, within a reasonable degree of medical certainty, the following conclusions can be made:

1. Mr. Fleming has insufficient objective findings to justify diagnosis of medical pneumoconiosis.
   I know that some of the radiologists interpreted the chest x-ray as showing findings consistent with category 1/0 pneumoconiosis, however, the opacities described are not those typical for coal dust induced lung disease, i.e. rounded and regular which are represented by p, q, and r, rather, they were irregular and slim which are represented by s and t opacities that are not typical for coal dust induced lung disease presentation on chest x-ray.
   In addition, the gold standard for making the diagnosis of medical pneumoconiosis is the pathological examination of lung tissue when available and it so happens that in this case we do indeed have a generous piece of lung that was resected when the patient had his pneumothorax that required surgical intervention to correct it. Dr. Caffrey, an expert in the field of pathological manifestation of coal workers' pneumoconiosis, reviewed the slides and concluded that they revealed the presence of anthracotic pigment which simply indicates that they have been exposed to coal dust but does not indicate the reaction of the host lung to the presence of coal dust which is known for the diagnosis of coal workers' pneumoconiosis.

2. Mr. Fleming has severe obstructive airway disease.

3. From a respiratory standpoint Mr. Fleming does not retain the respiratory capacity to return to his previous coal mining work or job of comparable physical demand.

4. There appears to be a discrepancy in Mr. Fleming's smoking history. He reported to one physician that he terminated his habit of half a pack per day for about ten years along the line before resuming it. Other physicians did not report that history. At any rate, a susceptible smoker will have a significant loss in his FEV1 which is estimated to be up to 90cc per pack year.
   Mr. Fleming has advanced emphysema with bulli formation as confirmed by the development of spontaneous pneumothorax of the left chest requiring surgical intervention with a placement of a chest tube followed by pleurodesis suggesting that the leaky bleb was rather large and could not be contained by the simple placement of a chest tube rather required surgical intervention.

5. Mr. Fleming's severe pulmonary disability has not resulted from inhalation of coal dust or coal workers' pneumoconiosis.
   His entire pulmonary disability is obstructive in nature with no restrictive component to it ruling out any contribution of interstitial lung disease that can be caused by coal dust exposure.
   His airway obstruction is severe, disabling, and manifested with loss in the FEV1 of over 2000cc.

**Page 3 of 31**

Letter to Jennifer McCoy                    RE:  Joseph Fleming
September 21, 2012                           Page No. 4

    Coal dust exposure is reported by Dr. Attfield and associate and others in the literature to
    cause an obstructive impairment with loss in FEV1 that is estimated to be 5-9cc per year
    of coal dust exposure.  This is a trivial amount in Mr. Fleming's case considering the
    actual amount of loss in his FEV1 that caused his pulmonary impairment and disability.
    Coal dust exposure can cause the development of coal macules which are associated with
    an entity known as focal emphysema reported by a famous pathologist, Dr. Thurlbeck
    and associate, as simple dilatation of the alveolar duct adjacent to the coal macule and not
    associated with significant destruction of the alveolar structure and resulting loss in the
    ventilatory capacity and alteration in the blood gas exchange mechanisms.
    As the data indicates, Mr. Fleming has significant loss in his ventilatory capacity and
    significant alteration in his blood gas exchange mechanisms arguing against the
    emphysema that he suffers from being that of the focal in nature.

6.  Based on my overall review of Mr. Fleming's medical data, within a reasonable degree of
    medical certainty, I find no evidence of pulmonary impairment and/or disability caused
    by, related to, contributed to, or aggravated by inhalation of coal dust, hence, no evidence
    of legal pneumoconiosis.


If I can be of any further help, please contact me.


Best regards,


A. Dahhan, M.D., F.C.C.P.
AKD/jls
References:
David B. Coultas & Jonathan M. Samet, Clinical Epidemiology of Chronic Obstructive
Pulmonary Disease; Article: Cigarette Smoking, Page no. 109.
Michael Attfield & Thomas K. Hodus, Pulmonary Function of U.S. Coal Miners Related To
Dust Exposure Estimates: AM REV RESPIR DIS 1992; 145: 605-609
Thurlbeck, William. "Pathophysiology of Chronic Obstructive Pulmonary Disease". *Clinics in
Chest Medicine.* Vol. 11, No. 3 (1990). Pages 389-403


**Page 4 of 31**

# CURRICULUM VITAE

## ABDUL KADER DAHHAN, M.D., F.C.C.P.

| | |
|---|---|
| **BORN:** | Damascus, Syria (February 7, 1941) |
| **ADDRESS:** | 120 Professional Lane<br>Suite 101<br>Harlan, KY 40831 |
| **SPECIALTY:** | Internal Medicine - Pulmonary |
| **PRE-MEDICAL SCHOOL:** | Damascus University, Damascus, Syria<br>Graduated in 1957. Degree: P.C.B. |
| **MEDICAL SCHOOL:** | Damascus University, Damascus, Syria<br>(1957 to 1964) |
| **INTERNSHIP:** | Straight Medical, Kansas University<br>Medical Center, Kansas City, Kansas<br>July 1, 1965 to June 30, 1966. |
| **RESIDENCY:** | Internal Medicine, Lutheran Hospital<br>Cleveland, OH July 1, 1966 to<br>June 30, 1967.<br><br>Internal Medicine, Cleveland Clinic,<br>Cleveland, OH July 1, 1967 to<br>June 30, 1969. |
| **PULMONARY FELLOWSHIP:** | Cleveland Clinic, Cleveland, OH<br>July 1, 1969 to June 30, 1970.<br><br>University of Manitoba, Winnipeg,<br>Canada, July 1, 1970 to June 30. 1971 |

Page 5 of 31

PAGE TWO - CURRICULUM VITAE

EMPLOYMENT:                    Will Rogers Hospital, Saranac Lake,
                               New York, 1972 to 1974, Associate
                               Medical Director.

                               Daniel Boone Clinic, Harlan, KY
                               1974 to January 31, 1986, Depart-
                               ment Pulmonary Medicine.

                               Private Practice February 1986 to
                               Present.

BOARD CERTIFICATION:           American Board of Internal Medicine,
                               1975.

                               American Board of Pulmonary Medicine,
                               1982.

STATES LICENSED IN:            Kentucky, New York, Ohio, California

FELLOWSHIP:                    American College of Chest Physicians,
                               November 1985.

                               Certified B. Reader

MEMBERSHIP:                    American Thoracic Society
                               New York Academy of Science
                               American College of Chest Physicians
                               American Medical Association
                               Kentucky Medical Association
                               Harlan County Medical Society
                               Kentucky Thoracic Society
                               Kentucky Chapter A.C.C.P.

PRIVILEGES:                    Harlan Appalachian Regional Hospital,
                               Harlan, Kentucky.

Page (6 of 3)

PAGE THREE - CURRICULUM VITAE

PRIVILEGES:                    Paul B. Hall Medical Center,
                               Paintsville, Kentucky.

PUBLICATIONS:                  Drill Lung Biopsy
                               Journal of American Medical Assoc.
                               Page 904, Vol. 224, No. 6

                               F.M.G.
                               New England Journal of Medicine
                               Page 917, Vol. 291, No. 17

                               Pleural Thickening
                               Kentucky Medical Journal
                               January, 1975

                               Eosinophilic Pneumonia
                               Kentucky Medical Journal
                               July, 1981

PRESENTATIONS:                 Mesothelioma
                               Eighth Annual Symposium on Diseases
                               of the Chest, June 5, 1992.

                               Cryptococcal Infection of the Lung
                               Ninth Annual Symposium on Diseases
                               of the Chest, June 4, 1993.

                               Perineal Plastic Syndrome
                               Tenth Annual Symposium on Diseases
                               of the Chest, June 1994.

                               Diagnosis of Tuberculosis
                               Eleventh Annual Symposium on Diseases
                               of the Chest, May 6, 1995.

# ulmonary Function of U.S. Coal Miners Related to Dust Exposure Estimates[1,2]

MICHAEL D. ATTFIELD and THOMAS K. HODOUS

## Introduction

An obviously important aspect of the evaluation of exposure-response relationships in coal miners is the accurate estimate of coal mine dust exposure. British Pneumoconiosis Field Research (PFR) studies have benefited in this regard from a systemic longitudinal program of dust measurement underground. These studies have shown a clear relationship between dust exposure and pneumoconiosis (1–3), chronic bronchitis (4), and various parameters of ventilatory function (5–9).

In contrast, American prevalence studies from the National Study of Coal Workers' Pneumoconiosis (NSCWP) have not involved simultaneous collection of dust exposure measurements. Instead, years of underground coal mine employment and occupational information have been used as surrogate measures of dust exposures (10–12). For example, the trend toward higher dust levels as one moves from surface to transportation to haulage to face work was used by Kibelstis and coworkers (10), who demonstrated a reduction in FEV$_1$ among never-smoking face workers compared with never-smoking surface workers. Later, Morgan and colleagues (11) investigated the association between FEV$_1$ and years underground and found small average reductions in FEV$_1$ with increasing tenure in all regional groups. Subsequently, using measurements of flows in another group of miners, Hankinson and colleagues (12) demonstrated that airflow decreased with increasing years underground after allowing for age and other confounding factors among both never-smokers and current smokers.

Despite these findings, the American posure-response relationships have cked precision due to the absence of more refined dust estimate. For this reason British data have been used in the past for standard setting, although the validity of extrapolating British data to American coal miners has not been fully established. Recently, however, Attfield

and Morring (13) have developed job-specific cumulative dust exposure estimates for U.S. underground coal miners. These were based on previously published surveys (14) as well as compliance data of the Mine Safety and Health Administration (MSHA). The resulting dust exposure estimates were correlated with various indices of prevalence of coal workers pneumoconiosis (CWP), and clear relationships emerged (15). This report takes this new information on dust exposure and applies it to exposure-response models for FEV$_1$, FVC, and FEV$_1$/FVC.

## Methods

### Medical Data

The medical data analyzed here were drawn from the first round of the NSCWP, which took place from 1969 to 1971. These data were chosen over data from later rounds of the study because of the excellent participation at that round (91%) and because the miners, in general, had received much higher dust exposures before Round 1 than they have received since that time. A greater range of exposures facilitates the detection of exposure-response relationships. The analyses presented here are confined to a subset of 9,078 miners examined at Round 1, consisting of 7,139 white men aged 25 yr or older.

Information on ventilatory function, chest symptoms, age, height, and working and smoking history was collected during the medical surveys. In addition, posterior-anterior and lateral chest roentgenograms were taken. The FEV$_1$ and FVC values used in analysis were derived from the maximum of five forced expiratory maneuvers using a rolling

seal volume spirometer. The percentage of FEV$_1$/FVC ratio (FEV$_1$/FVC%) was obtained using the maximum FEV$_1$ and FVC maneuvers. Data for those miners who could not provide at least three acceptable blows were omitted. (For further details on the methods used see Morgan and colleagues [11].) Pack-years of smoking was estimated by multiplying the reported packs smoked per day by the reported duration of smoking in years.

### Cumulative Dust Exposures

Attfield and Morring (13) describe in detail how the cumulative dust exposure estimates used here were derived. Briefly, respirable dust concentrations from sampling undertaken between 1970 and 1972 by coal mine operators under regulations promulgated by MSHA were back-extrapolated to pre-1970 conditions using a ratio derived from measurements made at many of the NSCWP mines during an intensive survey by the Bureau of Mines (BOM) between 1967 and 1968 (14). The resulting concentrations were linked with miner-reported work histories to produce cumulative exposures. In order to obtain the estimated exposures in units of gram-hours per cubic meter (gh/m$^3$) a factor of 1,740 (hours per year)/1,000 (mg per g) was used. These exposure estimates were not adjusted for mine-to-mine variation, as it was felt that the

SUMMARY    This study of 7,139 U.S. coal miners used linear regression analysis to relate estimates of cumulative dust exposure to several pulmonary function variables measured during medical examinations undertaken between 1969 and 1971. The exposure data included newly derived cumulative dust exposure estimates for the period up to time of examination based on large data bases of underground airborne dust sampling measurements. Negative associations were found between measures of cumulative exposure and FEV$_1$, FVC, and the FEV$_1$/FVC ratio (p < 0.001). In general, the relationships were similar to those reported for British coal miners. Overall, the results demonstrate an adverse effect of coal mine dust exposure on pulmonary function that occurs even in the absence of radiographically detected pneumoconiosis.    AM REV RESPIR DIS 1992; 145:605-609

(Received in original form June 21, 1991 and in revised form September 13, 1991)

[1] From the Division of Respiratory Disease Studies, National Institute for Occupational Safety and Health, Morgantown, West Virginia.

[2] Correspondence and requests for reprints should be addressed to Michael D. Attfield, Division of Respiratory Disease Studies, NIOSH, 944 Chestnut Ridge Road, Morgantown, WV 26505.

A293

306

data on inter-mine variations in dust level were not sufficiently reliable.

In the process of developing dust exposure estimates, Attfield and Morring looked at variations in the basic computational strategy (including an attempt to adjust for mine effects). In order to investigate the sensitivity of the basic approach to these variations, the resulting alternative exposure estimates were correlated with ventilatory function. Comparison of the results with those from the basic approach is made in the Discussion.

### Regional Effects

Possible regional variations in ventilatory function were allowed for by including factorial terms (dummy variables) in the modeling. The regions were: anthracite (eastern Pennsylvania), central Pennsylvania, northern Appalachia (Ohio, northern West Virginia, western Pennsylvania), southern Appalachia (southern West Virginia, eastern Kentucky, western Virginia), Midwest (Illinois, western Kentucky), South (Alabama), and West (Colorado and Utah).

### Analysis

$FEV_1$ and FVC were expressed in milliliters for the purpose of analysis. The main modeling consisted of linear regressions of $FEV_1$, FVC, and $FEV_1/FVC\%$ against age, height, smoking status, pack-years of cigarette smoking, and estimated cumulative dust exposure, with and without regional effects, using the GLM procedure of the SAS system (SAS Institute, Cary, NC) (16). In order to inquire into any synergistic relationship between dust exposure and smoking, separate models were fit by smoking group, and an interaction term for pack-years and estimated dust exposure was added to the basic model.

Subsidiary analyses were undertaken on two subsets of the data. The first selection consisted of those miners who were apparently free of CWP at the time of examination based on consensus determinations (agreement between two of three independently obtained readings). The second subset analysis was undertaken on miners from the 17 mines in common to the BOM survey data and NSCWP.

Lastly, in order to be sure that the results from the preceding analyses were not artifacts arising from choice of predictor variables, other analyses were undertaken. These included alternative estimates of dust exposure and models using smoking group × age and smoking group × dust exposure interactions instead of pack-years and pack-years × dust exposure. The collinearity between the various time-related variables was also investigated.

### Results
#### Basic Statistics

Table 1 gives summary statistics for the variables used in the various analyses reported next. Of the total number of

### TABLE 1
SUMMARY STATISTICS FOR VARIABLES USED IN MODEL FITTING

| Variable | Mean | SD |
|---|---|---|
| No. of observations | 7,139 | |
| Age, yr | 45.8 | 10.4 |
| Height, inches | 69.2 | 2.6 |
| Years underground | 18.0 | 13.2 |
| Pack-years, smokers | 23.4 | 15.4 |
| Pack-years, exsmokers | 23.1 | 18.7 |
| Estimated cumulative dust exposure, gh/m³ | 116 | 77 |
| $FEV_1$, L | 3.48 | 0.76 |
| FVC, L | 3.76 | 0.85 |
| $FEV_1/FVC\%$ | 73.1 | 9.1 |

7,139 miners studied, 53% were smokers at the time of examination and 27% were exsmokers.

#### $FEV_1$ and Dust Exposure

The basic relationship between $FEV_1$ and estimated cumulative dust exposure is shown in figures 1 to 3 by age and smoking group. Effects of age and smoking are obvious. More importantly, an association with dust exposure is clearly noticeable among the never smokers and for the exsmokers. An association with dust exposure is also apparent in the current smokers, although it appears smaller in magnitude and less consistent.

Table 2 summarizes the coefficients and related information for the basic model. This model allowed for age, height, geographic region, smoking status, pack-years of smoking (zero for never smokers), and estimated cumulative dust exposure. It accounted for 47% of the total variability in the observed $FEV_1$ values. One year in age was associated with a decrement in $FEV_1$ of 31 ml, whereas the relationship with pack-years suggested a loss of about 5 ml for every pack-year of cigarette smoking. Statistically significant regional effects were seen, the principal differences being between the eastern and western mines. The coefficient for estimated cumulative dust exposure was −0.69 ml/gh/m³ (p < 0.0001).

The question as to whether there is a synergistic effect between smoking and dust exposure was explored by analyzing the data for each smoking group separately and by adding a pack-years/dust exposure interaction term to the overall model. The separate regressions indicated that the dust exposure relationship was *more* severe in never smokers and exsmokers (−0.73 and −1.0 ml/gh/m³, respectively) compared with current smokers (−0.44 ml/gh/m³). However, the overall model with the interaction term suggested that these differences



Fig. 1. $FEV_1$ versus age for three cumulative dust exposure groups (never smokers). Exposures groups (gh/m³): low, < 60; medium, 80 − < 160; high, ≥ 160.



Fig. 2. $FEV_1$ versus age for three cumulative dust exposure groups (exsmokers). Exposure groups (gh/m³): low, < 60; medium, 80 − < 160; high, ≥ 16.

A294

608                                                                                                                    ATTFIELD AND HODOUS

TABLE 3

REGRESSION COEFFICIENTS AND $t$ STATISTICS FOR FVC AND FEV$_1$/FVC% AGAINST AGE, HEIGHT, REGION, SMOKING, AND CUMULATIVE DUST EXPOSURE[*]

| Variable | FVC | | FEV$_1$/FVC% | |
|---|---|---|---|---|
| | ml | $t$ | % | $t$ |
| Constant, ml | −4,584 | | 106.8 | |
| Height, inches | 155 | 51.1‡ | −0.261 | −6.7‡ |
| Age, yr | −28 | −22.8‡ | −0.253 | −17.1‡ |
| Smoking status relative to never smokers | | | | |
| Exsmokers | 28 | 1.1 | −1.18 | −3.6† |
| Current smokers | −87 | −3.6† | −3.17 | −10.2‡ |
| Pack-years | −2.3 | −4.1‡ | −0.069 | −9.7‡ |
| Regional effects relative to the West | | ‡ | | † |
| Anthracite | −451 | | 1.73 | |
| Central Pennsylvania | −232 | | 0.31 | |
| Northern Appalachia | −366 | | 0.87 | |
| Southern Appalachia | −309 | | −0.03 | |
| South | −282 | | 0.09 | |
| Midwest | −342 | | 0.58 | |
| Estimated cumulative dust exposure, gh/m$^3$ | −0.49 | −3.4† | −0.008 | −4.1‡ |
| $R^2$ | 0.44 | | 0.18 | |
| Residual root mean square error | 0.64 | | 8.2 | |
| Residual df | 7,128 | | 7,126 | |

[*] Test that coefficients are different from zero.
† $p < 0.001$.
‡ $p < 0.0001$.

presented are based on the strategy felt to be most reliable. Other exposure estimates, developed using variations on the basic strategy (13), were correlated with ventilatory function in an attempt to assess the sensitivity of the results to variations in method. They gave rise to coefficients for dust exposure ranging between −0.51 to −0.62 ml/gh/m$^3$. Although these are a little smaller than the figure of −0.69 in table 1, they were still very unlikely to be due to chance ($p < 0.0001$).

Regional effects were included in the regression models in order to allow for systematic differences between geographic areas of the country. Results from British miners have indicated that such factors exist and should be taken into account (6). It is not known why systematic effects occur, but they could have been due to many factors, including climate, life-style, ethnicity, season of year, and technical reasons. However, one problem with allowing for regional effects is that geographic region is confounded with geologic variations in coal type. Hence, allowance for region may remove some of the effect rightly due to coal dust exposure. To determine the possible extent of this effect, the basic model was run omitting regional effects. When this was done, the dust exposure coefficient on FEV$_1$ rose from −0.69 to −0.80 ml/gh/m$^3$.

Dust concentrations for certain jobs at the coal mine face were greater than 6 mg/m$^3$ or greater on average before the 1969 Federal Coal Mine Safety and Health Act (14), implying a yearly exposure of about 10 gh/m$^3$. These exposures, taken in conjunction with the various estimates for dust exposures on FEV$_1$ noted previously, suggest a decrement of 5 to 9 ml/yr. Under the current 2 mg/m$^3$ federal dust limit, the predicted dust effect should obviously be about one-third of that (i.e., 2 to 3 ml/yr). In this respect, an exposure of 2 mg/m$^3$ over a 40-yr working life at the coal face would be associated with roughly a 100-ml loss in FEV$_1$.

If it is thought that a 5- to 9-ml decrement of FEV$_1$ per year is clinically insignificant, it must be remembered that the average decrement for smokers was only 5 ml per pack-year. This, in itself, is also a minor loss in lung function. However, it is well known that smoking can cause severe effects in some smokers. Hence, this small average loss among smokers conceals some severe long-term effects in a minority. Could it then be that the average decrement of 5 to 9 ml associated with dust exposure also hides some severe dust exposure effects? Further study is continuing on this topic. The existence of such an effect is suggested in the findings of Hurley and Soutar (7), who detected a subgroup of miners with severe dust-related losses in FEV$_1$.

Pack-years was used in the regression analyses in this report because its use has been stated to be more appropriate than employment of categorical terms for smoking adjustment (17). However, since some prefer the latter approach, an analysis was undertaken replacing pack-years with dummy variables for the three smoking groups, and variables representing their interaction with age. The results gave rise to a dust exposure coefficient of −0.65 ml/gh/m$^3$ ($p < 0.001$), very similar to that obtained in the model using pack-years. Addition of an interaction term representing systematic differences in dust exposure between the smoking groups to this model did not suggest that the exposure effect varied over the smoking groups ($p > 0.10$).

Because the interaction terms for smoking and dust exposure in the latter model and in that based on pack-years were not significantly different from zero, synergism between smoking and dust exposure was not evident in these data. Indeed, if anything, there was a suggestion that smokers might suffer less of an effect of dust exposure than did their never-smoking colleagues. It would be unwise to conclude from this that smoking might have a protective effect against dust exposure, however, because the observed effect could well have been due to selection caused by the departure from the industry of miners affected by their exposure to both tobacco smoke and dust.

In any study such as this, with several time-related variables, multicollinearity is a potential problem. Although collinearity does not lead to biased estimates of coefficients, their variability may be increased, with the result that estimates of the coefficients may be far from their true values in any particular analysis. However, the effects of multicollinearity can be offset by increasing the sample size, as variance is inversely proportional to numbers of observations. Because of the large sample size in this study, the problems associated with collinearity are somewhat mitigated. A study of collinearity in the data revealed that as the dust exposure coefficient declined toward zero, the age coefficient rose to smoking-adjusted values of −32 to −37 ml/yr, values much greater than those commonly encountered in prediction equations for FEV$_1$ (−23 to −29 ml/yr) (18–22). These large age-related declines seem less plausible than the alternative view that a real dust exposure effect exists.

Morgan (23) has argued that the effects of smoking and dust exposure are different, smoking leading to severe damage in a minority whereas dust exposure causes small losses in the majority. In an analysis relating to this topic, Attfield and Hodous (results presented at the 1989 American Thoracic Society conference) examined the distribution of FEV$_1$ values

A295

in smokers and never smokers but failed to find support for this hypothesis. Overall, it appeared that dust and smoking acted similarly on ventilatory function in causing a general shift of the $FEV_1$ distribution to lower values.

The estimates of $FEV_1$ decline on dust exposure given in this report are very similar to figures reported for British miners. Rogan and coworkers (5) detected a reduction in $FEV_1$ with cumulative dust exposure of $-0.6$ ml/gh/m³. Soutar and Hurley (6) obtained an estimate of the dust exposure effect of $-0.76$ ml/gh/m³ among a group of current and exminers. As in this study, they found that the effect of dust was not greater in current smokers. Furthermore, they also showed that the relationship between dust exposure and $FEV_1$ was similar in miners who did and did not have pneumoconiosis.

Soutar and Hurley (6) found that not only was $FEV_1$ related to cumulative dust exposure, but that a similar trend was also found for FVC. This observation had been reported earlier by Morgan and coworkers (11) using years of underground work. Because the current report is based on essentially the same set of data, it is not surprising that the same phenomenon appears in the present results. Morgan and coworkers, however, did not use dust exposure estimates, and hence the present results have not been reported previously. The current results confirm the trend of FVC with dust exposures seen in the British miners.

Morgan and colleagues reported that years underground had no effect on $FEV_1$/FVC%. The findings of this study do not support that statement, as a relationship with $FEV_1$/FVC% and estimated dust exposure was detected ($-0.008$%/gh/m³, $p < 0.0001$), although the size of the effect was clearly not large. Soutar and Hurley (6) also found a small coefficient for the ratio ($-0.005$%/gh/m³); in contrast to this study, the statistical sig-

nificance of their dust exposure coefficient was less than for the models involving $FEV_1$ and FVC.

In summary, this study has found clear exposure-response relationships between various pulmonary function parameters and estimated cumulative dust exposure in a large national cohort of U.S. underground coal miners. The results indicate that miners working in dusty conditions (6 mg/m³) could experience average effects not unlike those seen for smokers. The results were generally consistent with findings from a study of British underground coal miners.

*Acknowledgment*

The writers thank the many who have assisted in the collection and processing of data, those who have given other information or advice, and those who have reviewed the manuscript and supplied many useful comments and suggestions.

## References

1. Jacobsen M, Rae S, Walton WH, Rogan JM. The relation between pneumoconiosis and dust exposure in British coal mines. In: Walton WH, ed. Inhaled particles. III. Old Woking, Surrey, UK: Unwin Bros., 1971; 903-19.
2. McLintock JS, Rae S, Jacobsen M. The attack rate of progressive massive fibrosis in British coalminers. In: Walton WH, ed. Inhaled particles. III. Old Woking, Surrey, UK: Unwin Bros., 1971; 933-52.
3. Jacobsen M, Burns J, Attfield MD. Smoking and coal workers' simple pneumoconiosis. In: Walton WH, ed. Inhaled particles. IV. Oxford: Pergamon Press, 1977; 759-71.
4. Rae S, Walker DD, Attfield MD. Chronic bronchitis and dust exposure in British coal miners. In: Walton WH, ed. Inhaled particles. III. Old Woking, Surrey, UK: Unwin Bros., 1971; 883-96.
5. Rogan JM, Attfield MD, Jacobsen M, Rae S, Walker DD, Walton WH. Role of dust in the working environment in the development of chronic bronchitis in British coal miners. Br J Ind Med 1973; 30:217-26.
6. Soutar CA, Hurley JF. Relation between dust exposure and lung function in miners and ex-miners. Br J Ind Med 1986; 43:307-20.
7. Hurley JF, Soutar CA. Can exposure to coalmine dust cause a severe impairment of lung function. Br J Ind Med 1986; 43:150-7.
8. Love RG, Miller BG. Longitudinal study of lung function in coal miners. Thorax 1982; 37:193-7.
9. Marine WM, Gurr D, Jacobsen M. Clinically important respiratory effects of dust exposure and smoking in British coal miners. Am Rev Respir Dis 1988; 137:106-12.
10. Kibelstis JS, Morgan EJ, Reger R, Lapp NL, Seaton A, Morgan WKC. Prevalence of bronchitis and airways obstruction in American bituminous coal miners. Am Rev Respir Dis 1973; 108:886-93.
11. Morgan WKC, Handelsman L, Kibelstis J, Lapp NL, Reger R. Ventilatory capacity and lung volumes of US coal miners. Arch Environ Health 1974; 28:182-9.
12. Hankinson JL, Reger RB, Fairman RP, Lapp NL, Morgan WKC. Factors influencing expiratory flow rates in coal miners. In: Walton WH, ed. Inhaled particles. IV. Oxford: Pergamon Press, 1977; 735-55.
13. Attfield MD, Morring K. The derivation of dust exposures for U.S. coal miners working before 1970. Am Ind Hyg Assoc J (In Press).
14. Jacobson M. Respirable dust in bituminous coal mines in the U.S. In: Walton WH, ed. Inhaled particles. III. Old Woking, Surrey, UK: Unwin Bros., 1971; 745-55.
15. Attfield MD, Morring K. Some investigations into the relationship between coalworkers' pneumoconiosis and dust exposure in U.S. coal miners. Am Ind Hyg Assoc J (In Press).
16. SAS Institute Inc. SAS® User's Guide: Statistics, version 5 edition. Cary, NC: SAS Institute Inc., 1985; 433-506.
17. Morgan WKC. Letter to the editor. Thorax 1983; 38:878.
18. Crapo RO, Morris AH, Gardner RM. Reference spirometric values using techniques and equipment that meet ATS recommendations. Am Rev Respir Dis 1981; 123:659-64.
19. Knudsen RJ, Slatin RC, Lebowitz MD, Burrows B. The maximal expiratory flow-volume curve. Normal standards, variability, and effects of age. Am Rev Respir Dis 1976; 115:587-600.
20. Knudsen RL, Lebowitz MD, Holberg CJ, Burrows B. Changes in the normal maximal expiratory flow-volume curve with growth and aging. Am Rev Respir Dis 1983; 127:725-34.
21. Miller A, Thornton JC, Warshaw R, Bernstein J, Selikoff IJ, Teirstein AS. Mean and instantaneous expiratory flows, and $FEV_1$: prediction equations from a probability sample of Michigan, a large industrial state. Bull Eur Physiopathol Respir 1986; 22:589-97.
22. Morris JF, Koski A, Johnson LC. Spirometric standards for healthy nonsmoking adults. Am Rev Respir Dis 1971; 103:57-67.
23. Morgan WKC. On dust, disability, and death (editorial). Am Rev Respir Dis 1986; 134:639-41.

809

A296

Fig. 3. FEV$_1$ versus age for three cumulative dust exposure groups (current smokers). Exposure groups (gh/m³): low, <80; medium, 80 – <160; high, ≥ 160.

607

model to FEV$_1$/FVC% was not as good, the R² value being 0.17. Moreover, the regional effects were not so pronounced as for FEV$_1$ and FVC, although strong relationships were seen with age, height, pack-years, and cumulative dust exposure (p < 0.0001). No suggestion of an interaction effect between smoking and dust exposure was seen for FVC (p = 0.48) or the FEV$_1$/FVC% ratio (p = 0.57).

The basic model was also fit using FVC and FEV$_1$/FVC% to the two subsets of miners defined on the basis of absence of CWP and the BOM/NSCWP overlap. In the first case, relationships with dust exposure were still evident after the omission of all miners with X-ray appearances of CWP, the coefficients being almost unaltered in value. The same was true for the NSCWP subset, although as with FEV$_1$ the coefficients were slightly smaller in magnitude.

### Discussion

This report represents the first attempt at using data from the NSCWP to correlate pulmonary function with cumulative dust exposure estimates derived from actual mine airborne dust measurements. The various models of exposure show consistent declines in FEV$_1$, FVC, and FEV$_1$/FVC with increasing dust exposure.

The environmental data used to derive the cumulative dust exposures employed here have both positive and negative qualities. On the plus side, they are based on many hundreds, and often thousands, of observations. In addition, data were available for nearly all jobs worked by the miners in the study, and the sampling tended to be more intense where dust levels were higher. On the other hand, the dust samples were collected toward the end of the period to which they were applied in this analysis; lack of any published information on temporal changes in dust level for the period 1950 to 1970 makes it impossible to assess whether this back-extrapolation is completely valid. (It is felt that conditions remained fairly constant from about 1960 to 1970, but it is unclear whether dust levels were higher or lower before that time [unpublished communications].) One point favoring the validity of the exposure estimates is their correlation with prevalence of CWP (15).

In derivation of the dust exposure estimates used here it was not completely clear which of the many variations in approach was the most valid. The results

could easily have occurred by chance (p > 0.10). The results certainly did not indicate that the combined effect of smoking and dust exposure is *worse* than the additive effect of each.

In order to eliminate any effects due to CWP on the relationship between FEV$_1$ and dust exposure, the basic model was fit to the subset of miners who had no radiographic evidence of CWP at the time of examination (n = 4,913). The results revealed a dust exposure coefficient of −0.75 ml/gh/m³ (p < 0.001), which is essentially the same as the value previously obtained for all miners.

The last analysis of this series used the medical data for miners working at only those mines sampled in the BOM environmental survey (14). Because only 17 of the NSCWP mines were in common with those visited by the BOM industrial hygienists, it might be thought that the derived cumulative dust exposures should be applied only to those mines. The coefficient on dust exposure was found to be just under −0.65 ml/gh/m³ for this subset, and thus close to that for all miners shown earlier.

### FVC and FEV$_1$/FVC% and Dust Exposure

The basic model shown in table 2 was fit also to FVC and FEV$_1$/FVC% (table 3). The findings for FVC were very similar to those for FEV$_1$, with a dust exposure relationship being detected, albeit to a somewhat lesser extent (−0.49 ml/gh/m³, p < 0.001). The fit of the basic

TABLE 2

REGRESSION COEFFICIENTS AND t STATISTICS FOR FEV$_1$ AGAINST AGE, HEIGHT, REGION, SMOKING, AND CUMULATIVE DUST EXPOSURE*

| | Coefficient | |
|---|---|---|
| Variable | ml | t |
| Constant, ml | − 1,702 | |
| Height, inches | 100 | 38.2† |
| Age, yr | − 31 | − 31.4† |
| Smoking status relative to never smokers | | |
| Exsmokers | − 36 | − 10.0† |
| Current smokers | 208 | − 1.6 |
| Pack-years | − 5.0 | − 9.9† |
| Regional effects relative to the West | | † |
| Anthracite | − 242 | |
| Central Pennsylvania | − 168 | |
| Northern Appalachia | − 225 | |
| Southern Appalachia | − 224 | |
| South | − 204 | |
| Midwest | − 219 | |
| Estimated cumulative dust exposure, gh/m³ | − 0.69 | − 5.6† |
| R² | 0.47 | |
| Residual root mean square error | 0.55 | |
| Residual df | 7,126 | |

*Definition of abbreviation:* df = degrees of freedom.
* Test that coefficients are different from zero.
† p < 0.0001.



# 7

## Cigarette Smoking

DAVID B. COULTAS and JONATHAN M. SAMET

University of New Mexico School of Medicine
Albuquerque, New Mexico

Until the early 1900s, cigarette consumption was a relatively uncommon mode of tobacco consumption throughout the world, and chronic obstructive pulmonary disease (COPD) was also uncommon. By midcentury, increasing occurrence of chronic respiratory diseases had become evident through both clinical observation and review of trends of mortality (Stuart-Harris, 1954, 1968a,b). For example, in the United States in 1950, 3,157 deaths were attributed to "bronchitis unqualified," "chronic bronchitis," or "emphysema," codes compatible with clinically diagnosed COPD. Over the next 30 years, the number of deaths in categories related to COPD increased to 52,348. By 1964, the evidence was sufficiently compelling to support the conclusion by the Advisory Committee to the Surgeon General that "cigarette smoking is the most important of the causes of chronic bronchitis in the United States, and increases the risk of dying from chronic bronchitis and emphysema" (U.S. Dept. H.E.W., 1964). The 1964 report did not consider the evidence as sufficient for classifying the relationship between smoking and COPD as causal. However, reports published during the 1970s firmly linked reduced lung function and increased mortality from chronic bronchitis and emphysema with cigarette smoking. In

*109*

A298



at cigarette

om diverse
. animal ex-
al observa-
have shown
ystems and
utes to the
ette smoke
phological
hanisms in
n blood or
her human
utopsy fin-
ysiological
surveys of
equency in
ches to in-
th the goal
PD.
at cigarette
te smoking
esearch on
al risk fac-
vailable on
more, the
ccuracy of
r causality
by others
stablishing
ing a large
sality. The
ssociation,
gradient,
id analogy
h of these

) would re-
okers, and

follow-up of the two groups for the development of COPD. Because this experiment is neither ethical nor feasible, it has not been conducted. However, through epidemiological investigation, data can be obtained from the natural experiment offered by the decision of some persons to become smokers.

## II. Strength of Association

The strength of an association is measured by the relative frequency of disease occurrence or mortality in an exposed group, for example, smokers, compared to an unexposed group, for example, nonsmokers. In a cohort or follow-up study, the usual measures of association are incidence or mortality ratios; in cross-sectional and case-control studies, the odds ratio, the ratio of the odds of exposure in affected and unaffected subjects, is generally calculated (Rothman, 1986). A greater degree of association, as asssessed by these measures, strengthens the causal explanation for an association, although weaker associations may be as biologically plausible as stronger associations. Stronger associations, however, are less likely to result from uncontrolled bias (Hill, 1965). This section reviews studies of morbidity and mortality from COPD to document the strength of association between COPD and cigarette smoking.

With regard to morbidity, epidemiological criteria for COPD are generally based on level of $FEV_1$, often in combination with level of the $FEV_1$ to FVC ratio. Surprisingly few reports provide data on the prevalence of COPD in smokers and nonsmokers in population samples (U.S. Dept. H.H.S., 1984). However, the published studies document a strong association between cigarette smoking and the prevalence of reduced lung function on spirometry, indicative of COPD. For example, Knudson and co-workers (1976) found that among 2,735 subjects from Tucson, Arizona, ages 8–90 years of age, 8.3% of asymptomatic nonsmokers and 13.3% of asymptomatic smokers had a $FEV_1$ and/or $FEV_1/FVC$ in the lowest fifth percentile predicted for that population. In a sample of over 8,000 men and women, 18 years of age or older, from three southern California communities, Detels and co-workers (Detels et al., 1979; Rokaw et al. 1980) showed that the prevalence of a $FEV_1$ less than 75% predicted was nearly twice as great among current smokers compared to those who had never smoked. (Fig. 1). Using multiple logistic regression, Tager et al. (1978) found that lifetime cigarette consumption was the only significant predictor of a $FEV_1$ less than 65% predicted (odds ratio = 9.3) among 1,251 men and women from East Boston, Massachusetts. Age, respiratory symptoms, relation to a subject with chronic bronchitis or chronic airways obstruction, and current smoking were not important predictors. Other



*Cigarette Smoking* 113

Table 1  Mortality Ratios[a] for COPD in Smokers from Selected Populations

| Study Population | Emphysema | Bronchitis | Both |
|---|---|---|---|
| 34,000 male British physicians | | | 24.7 |
| 68,000 males from California in various occupations | 12.3 | | |
| 78,000 male Canadian veterans | 5.9 | 11.4 | |
| 440,500 males[b] | 45–64 yr | | |
| 552,700 females[b] | 6.6 | | |
| | 4.9 | | |
| 290,000 male U.S. veterans | 14.8 | 5.1 | 12.1 |

[a]Reference group is nonsmokers with a mortality ratio of one.
[b]From 25 states in the United States; age range 45–64 years.
*Source*: U.S. Dept. H.H.S., 1984.

compared to nonsmokers; the mortality ratios ranged from 10.5 to 38.0 among categories of gender and number of cigarettes smoked per day. Similar results were obtained by Hammond (1966) from the American Cancer Society 25-State Study that included over 1 million men and women. Among men and women 45–64 years of age, the mortality ratios for emphysema in smokers compared with nonsmokers were 6.6 and 4.9, respectively. The ratios were even higher in men over 64 years of age. Numerous other prospective studies have documented increased mortality ratios from COPD among smokers (Table 1) (U.S. Dept. H.H.S., 1984).

These and other data document a strong association between cigarette smoking and COPD. In nearly every population examined, smokers have substantially greater occurence of COPD than nonsmokers (U.S. Dept. H.H.S., 1984). In fact, the only other strong risk factor for COPD is alpha$_1$-antitrypsin deficiency.

## III.  Consistency of Association

To meet the criterion of consistency, a similar conclusion on the association between smoking and COPD must be reached from studies of different design among different populations. Numerous populations have been studied worldwide using different measures of COPD. Regardless of the outcome measure, prevalence or incidence of airflow obstruction, mortality, doctor-diagnosed COPD, mean level of $FEV_1$, or rate of decline of lung function, smokers have a greater frequency of abnormalities than

A300

*Coultas and Samet*                    *Cigarette*

nonsmokers (U.S. Dept. H.H.S., 1984). Lower levels of lung function
among smokers than nonsmokers were documented in over 45 reports
from cross-sectional and longitudinal investigations involving over 130,000
subjects summarized in the 1984 report of the U.S. Surgeon General (U.S.
Dept. H.H.S., 1984). Eight major prospective studies of about 2 million
subjects document marked increases in mortality from COPD in smokers
compared to nonsmokers (U.S. Dept. H.H.S., 1984).

## IV.   Temporal Relationship

This criterion implies that exposure to cigarette smoke must precede the
development of COPD. In the conceptual model that is commonly ac-
cepted for the development of COPD (Fig. 2), clinically evident disease
develops after sustained cigarette smoking has resulted in sufficient loss of
ventilatory function to produce impairment. Observations made on
children and adults document an appropriate temporal sequence between
smoking and the development of COPD. In nonsmokers without respir-
atory disease, ventilatory function begins to decline at approximately
25–35 years of age. The $FEV_1$ drops by about 25 ml annually in
nonsmokers (U.S. Dept. H.H.S., 1984). In cigarette smokers, the average
rate of loss of ventilatory function is much greater; some smokers may lose
100 ml or more annually (Fletcher et al., 1976; U.S. Dept. H.H.S., 1984).
However, not all cigarette smokers develop COPD, and it is the susceptible
minority with higher rates of decline who are at greatest risk for the
disease. Smoking during childhood could predispose to the development of
COPD if the level of lung function achieved during lung growth was reduced
by smoking.

   Data from several study designs, including longitudinal studies of lung
function during growth, studies of lung histopathological appearance in
younger and older smokers and nonsmokers, and longitudinal studies during
the period of lung function decline are consistent with an appropriate tem-
poral relationship between cigarette smoking and COPD. The results of
these three categories of investigation are reviewed in this section.

   During childhood and adolescence, cigarette smokers have a decreased
rate of lung growth and a lower mean level of lung function compared to
nonsmokers. To examine childhood risk factors for the development of
COPD, Tager et al. (1985) obtained questionnaire data and spirometry
measurements annually, from 1975 to 1982, on 669 subjects who were 5–19
years of age in 1975. For males and females the rates of growth of $FEV_1$ and
$FEF_{25-75}$ were lower for current smokers compared to those not smoking. A
mathematical model projected that on average, children who start smoking

Figure :
growth (
developr

at age 1
$FEF_{25-7}$
munitie
from 19
the stud
during
rates w
nonsmc
was sin
nonsmc
ed amc
childhc
the risl
data di

Chronic Obstructive Pulmonary Disease

0272–5231/90 $0.00 + .20

# Pathophysiology of Chronic Obstructive Pulmonary Disease

*William M. Thurlbeck, MB, FRCP(C)\**

## GENERAL CONSIDERATIONS

Airflow can be limited only by diminished driving pressure (the elastic recoil of the lung) or by narrowing of the airways. The first is thought to be brought about by emphysema, although we will make the case that the relationship between emphysema and loss of elastic recoil is not a close one. Airways are conveniently divided into bronchi (airways with cartilage in their walls and usually greater than 2 mm in diameter) and bronchioles (airways that only conduct air, have no cartilage in their walls, are usually less than 2 mm in diameter, and are often referred to as "small airways" or "peripheral airways"). Emphysema involves the structures distal to the bronchioles, the last of which is the terminal bronchiole. The tissue beyond the terminal bronchioles is formed by acini. The acinus is the unit gas exchanging structure of the lung, and its anatomy will be noted in the section on emphysema.

It used to be thought that two diseases, chronic bronchitis and emphysema, were the only two causes of chronic airflow obstruction (CAO), and that the two often occurred separately or that one or the other was often the dominant cause of airflow obstruction. It was also thought that they presented clinically in different ways. Bronchitis was thought to be associated with hypoxemic cor pulmonale (the blue bloater syndrome or type B chronic obstructive pulmonary disease), and emphysema was thought to be associated with relatively normal blood gases and pulmonary circulation, and with evidence of gross overinflation (the pink puffer syndrome or type A disease) (for review, see reference 65). This is now known to be an oversimplification, and an inaccurate one at that. The lesions associated with CAO are multiple (Table 1). It is important to realize that these lesions may occur together in varying combinations, and that each may be of varying severity. This has been most completely studied in the National Institutes of Health Intermittent Positive Pressure Breathing Trial (NIH IPPBT). The patients who came to autopsy had moderate to severe emphysema and moderate to severe CAO ($FEV_1$% predicted 11–57, mean 30.9). These patients had, as a group, most of the lesions shown in Table 1, but the interrelationships between them was very complex.[45]

It should also be noted that studies of structure-function correlations come mainly from three sources: patients with documented CAO who come to autopsy, lobes or lungs removed at surgery, and lungs obtained at autopsy that are subjected to functional studies. In the first group, the interval between pulmonary function and autopsy is often long, and the data usually retrospective. In the second group, the interval between physiologic assessment and examination of the specimen is short, and the data are prospective. However, nearly all of the patients have lung cancer, they usually have no more than mild CAO (otherwise surgery might well

*Professor of Pathology, University of British Columbia; Pathologist, British Columbia's Children's Hospital; and Consultant Pathologist, University Hospital, Vancouver, British Columbia, Canada

This work was supported by Canadian Medical Research Council Grant MA-9810.

A302

390                                    *William M. Thurlbeck*

Table 1.   *Lesions Associated with
Chronic Airflow Obstruction*

Bronchi
   Mucous gland enlargement
   Smooth muscle hyperplasia
   Cartilage atrophy
   Inflammation
   Airway thickening and lumenal encroachment
Bronchioles
   "Usual" chronic airflow obstruction
   Inflammation
   Bronchiolar narrowing
   Bronchiolar obliteration
   Fibrosis
   Muscle increase
   Goblet cell metaplasia
   Mucus plugging
   Bronchiolar tortuosity
   Loss of alveolar attachments
   Pigmentation
   Special forms of bronchiolitis
     Viral infections, toxic chemicals and gases, rheumatoid
     arthritis, diffuse panbronchiolitis, graft-vs-host dis-
     ease, heart/lung transplantation, follicular bronchitis/
     bronchiolitis, mineral dust–associated bronchiolitis,
     cryptogenic bronchiolitis
Acinus
   Respiratory bronchiolitis
   Emphysema
   Respiratory airspace enlargement

be contraindicated), and often single lobes are available, but this may not matter.[77,78] The last group obviates the time interval problem and provides lungs with a wide spectrum of abnormalities. However, it is difficult to extrapolate between physiologic tests on postmortem lungs and intact living humans, and clinical data are retrospective.

Case selection into groups with moderate and severe CAO compared to patients with mild CAO has possible consequences. Lesions that may be significantly related to mild airflow obstruction may not be significant in severe CAO. This, in fact, turns out to be the case and we will distinguish between these groups when structure-function correlations are analyzed. The final caution is that the terms "early" CAO (often referred to as "small airways disease") and "mild" CAO are not necessarily the same. The best example concerns the surgically derived lungs. These patients nearly all have mild CAO, but the average age is generally in the late 50s or early 60s.

The final concept is distribution of airflow resistance in the airways. Because the cross-sectional area of the lumen of daughter bronchioles is only slightly less than that of the parent and

there are two daughter bronchioles, there is a rapid increase in cross-sectional area as one proceeds distally in the bronchiolar tree. It used to be thought that airflow resistance in bronchioles formed about 20% of airflow resistance in the lung,[30] and thus 10% of total flow resistance (the upper airways and nose provide half the resistance to flow). It was thus thought that considerable disease could exist in the bronchioles with little change in total airway resistance. The standard example is that if half the bronchioles were obliterated, bronchiolar resistance would double, but total airflow resistance would increase only 10%. It also followed that the forced expiratory volume in one second ($FEV_1$), thought mainly to reflect total airway resistance, might be normal in the face of severe bronchiolar lesions. This led to the development of more sensitive tests of flow resistance in bronchioles. It is now thought that the contribution of bronchiolar resistance is considerably higher.[21,24,69]

## LESIONS OF BRONCHI

### Bronchial Mucous Gland Enlargement

Chronic bronchitis is a condition characterized by chronic excess secretion of mucus. Because mucus secretion cannot be measured, an empiric definition of chronic sputum production was adopted more than 30 years ago and is still widely used. *Chronic* is defined as 3 or more months in the year for 2 or more successive years. Most mucus is thought to be secreted by the subepithelial tracheobronchial mucous glands (certainly they constitute a great majority of the volume of mucus secreting cells; the other source of mucus is the goblet cells). Nearly all studies have shown an increase in size of the mucous glands and the commonest way of measuring it is the Reid index, or gland to bronchial wall thickness ratio. The distribution curve of the Reid index is unimodal, suggesting that the distribution of mucus secretion is the same. This is, of course, different in concept from the clinical definition, which divides the population sharply into two categories: health and disease.

The older literature indicated that mucous gland enlargement was poorly related to airflow obstruction with occasional exceptions when excellent, or contrarily no, correlations were reported. In the NIH IPPBT, no correlation was

found between airflow obstruction and the Reid index.[46] The same was true of the NIH Nocturnal Oxygen Therapy Trial (NOTT), using both the volume proportion (the proportion mucous glands form of the bronchial wall) of glands and the Reid index.[25] However, these patients had even more severe CAO. Mullen et al[42] also found no relationship between air flow obstruction and mucous gland enlargement in lungs removed at surgery.

## Smooth Muscle Hyperplasia

Although the status of smooth muscle has been controversial in the past—with some authors claiming that increased muscle was always present in chronic bronchitis, others that it was absent, or yet others that it occurred only in bronchitics with clear-cut episodes of wheezing—the presence of increased muscle in chronic bronchitis and CAO is now an incontrovertible phenomenon. It appears to be due to hyperplasia. An increase in the mean amount of muscle was observed in the NIH IPPBT[45] and in surgically resected lungs.[42] The meaning of muscle hyperplasia is not clear, however. Oberholzer et al[48] found a correlation between diminished $FEV_1$ and increased amounts of major airway muscle. Because an increased amount of muscle is a characteristic feature of asthma, an obvious hypothesis is that muscle hyperplasia in CAO represents increased airway reactivity. However, increased muscle was not related to bronchodilator response in the NIH IPPBT,[46] nor was it found to be related to methacholine sensitivity in surgically resected lungs.[42,43] Whether these were appropriate subjects in whom to study the relationship remains open to question. The NIH IPPBT excluded subjects with a diagnosis of asthma. The surgical series referred to contained no subjects with the diagnosis of asthma. Thus, at this time, it appears that increased muscle does occur in subjects with chronic bronchitis, but its function is unknown.

## Cartilage Atrophy

Cartilage atrophy has been described in emphysema and in association with mucous gland

enlargement. It has generally not been found when cartilage has been assessed in random transverse sections of airways, but it is easy to detect when airways are dissected free and cleared, the cartilage stained, and the entire airway examined. In random tissue sections of bronchi, cartilage was found to be increased in bronchi 4 mm or more in diameter in the surgically resected lungs referred to;[42] no alteration was found in NIH IPPBT. Thus, the existence of cartilage atrophy in CAO is equivocal and its meaning uncertain, but bronchial atrophy associated with expiratory collapse has been described in the older literature.[32,33]

## Inflammation

Evidence of inflammation in chronic bronchitis has not been consistently shown. Mullen et al[42] specifically assessed the question of inflammation and chronic productive cough in considerable detail. They found increased inflammation of the mucosa (presumably epithelium) in such patients. They could show no significant relationship between inflammation and mucous gland enlargement. Both this study and the NIH IPPBT[46] could show no relationship between inflammation and airway reactivity. The IPPBT also included an assessment of bronchial eosinophilia which was likewise not related to bronchodilator response.

## Bronchial Wall Thickening and Encroachment on Airway Lumen

This subject has surprisingly not been addressed adequately in chronic bronchitis, especially because thickening of the wall of major airways is likely to play a major role in increasing airflow obstruction.[41] In 1969, McKenzie et al[38] found that bronchial wall width internal to the cartilage/lumen diameter was almost doubled in patients with severe obstruction compared to patients without obstruction. Calculations from most series suggest that the increase in bronchial wall thickness due to mucous gland enlargement alone is slight.

Page 19 of 31

## BRONCHIOLITIS OR SMALL (PERIPHERAL) AIRWAY LESIONS; BRONCHIOLITIS IN PATIENTS WITH TYPICAL CHRONIC AIRWAY OBSTRUCTION

Bronchiolitis can occur under special circumstances, and these forms of bronchiolitis are listed in Table 1. Although the described bronchiolar lesions will be listed as separate entities, this should not obscure the fact that many of them may be sequelae to inflammation. For example, airway narrowing, airway obliteration, goblet cell metaplasia, intraluminal mucus, and increased or reduced bronchiolar muscle may be consequences of inflammation.

Assessment of the effects or association of bronchiolitis and CAO is difficult. As mentioned, there may be morphologic interrelationships, and just as importantly, the assessments of flow obstruction have varied, and the analyses have been done in complex ways. Considerable effort has gone into determining which test relates best to particular abnormalities. It is also true that although statistical differences and correlations have been shown, the differences are not great and the correlation is weak.

### Inflammation

The importance of bronchiolar inflammation as a cause of mild CAO was first surmised by Niewoehner et al[47] in 1974, and demonstrated by Cosio et al[14] in 1978. The question still remains whether the cause of obstruction is the inflammation itself or its consequences, but a good case can be made for a primary role of inflammation. The importance of bronchiolitis has been well substantiated by Wright and colleagues[74-76] using surgical lungs, although two of their studies showed no association with a diminished $FEV_1$[76] or other tests of airflow obstruction.[75] Berend and colleagues[7] found that inflammation best correlates the slope of phase III of the single breath nitrogen test and closing capacity. Petty and colleagues[54] found a relationship between increased closing capacity and increased slope of phase III of the single breath nitrogen test and inflammation. By contrast, although there was increased inflammation in both the NIH NOTT[22] and IPPBT,[45] bronchiolar inflammation had no correlation with clinical findings, blood gases, or a wide variety of pulmonary function tests in the IPPBT.[45] (These variables were not assessed in the NOTT.)

As indicated, it may be that a complication of inflammation causes CAO, but in some studies only inflammation has been found. The question is how inflammation causes airflow obstruction. Baile et al,[2] using an experimental model of acute inflammation, proposed that inflammatory exudate displaced the surface active layers of the bronchioles (see subsequent discussion of goblet cell metaplasia), rendering them mechanically unstable. Berend et al[7] developed an alternative hypothesis and produced data to support it. They compared a group of autopsy-derived lungs to a group of surgically derived lungs, and divided the cases on the basis of severity of inflammation. In all categories of inflammation, the internal bronchiolar diameters were smaller in the surgically resected lungs, suggesting persistence of muscle tone in them and its absence in autopsy lungs. In the surgical lungs, but not the autopsy lungs, the bronchiolar diameters decreased with increasing degrees of inflammation. They therefore suggested that inflammation resulted in release of mediators which might lead to constriction of the bronchioles either directly or reflexly.

### Bronchiolar Narrowing

Bronchiolar narrowing has been demonstrated in patients with CAO. The best correlate may be with an excess of very small bronchioles (smaller than 0.35 to 0.40 mm).[9,10,13,46] Of special interest is the relationship of excess narrowing of airways to right ventricular hypertrophy, hypoxemia, and hypercarbia.[9,10,53,46] Berend et al[6] showed a correlation between bronchiolar narrowing and diminished forced expiratory flow between 25% and 75% of the forced vital capacity ($FEF_{25-75}$) and closing volume and subsequently with diminished $FEV_1$.[7] Salmon et al[60] described an increase in slope of phase III and the postmortem equivalent of closing capacity, and Petty et al[51] described increased closing capacity, and diminished $FEV_1$ and $FEF_{25-75}$ in association with bronchiolar narrowing. Theoretically, bronchiolar narrowing should be more effective than bronchiolar obliteration in causing

increased flow resistance, which will increase to the 4th power of the degree of narrowing. For example, obliteration of half the bronchioles, as indicated previously, will double bronchiolar airflow resistance. Narrowing of the airways to half will increase bronchiolar resistance to the 4th power or $2^4$ (16) times. If the narrowing is irregularly distributed, one would anticipate ventilation/perfusion abnormalities with consequent hypoxemia and hypercarbia. In addition, irregularity and tortuosity will further increase flow resistance because the narrowest diameter becomes relevant (see subsequent discussion).

## Bronchiolar Obliteration

The older literature described bronchiolar obliteration based on subjective data, and paid more attention to bronchiolar obliteration as a cause of emphysema than as a cause of CAO. Matsuba and Thurlbeck[35] showed a small and inconstant loss of bronchioles in patients with severe emphysema and CAO. Both the NOTT and IPPBT[33,45] showed no loss of bronchioles. Bronchiolar obliteration is an integral part of bronchiectasis[56] and is probably related to the pathogenesis of the condition. Patients with severe widespread bronchiectasis have been included in series of patients with CAO,[12,65] but these cases should be regarded as a separate category. It is also true that localized bronchiectasis occurs in otherwise typical CAO in 12 to 27% of cases.[65]

A review of bronchiectasis is inappropriate in this section. Unilateral pulmonary transradiancy (Swyer-James or Macleod's syndrome) is associated with extensive but dominantly unilateral bronchiectasis, and is described in the section on panacinar emphysema.

## Fibrosis

Fibrosis was a significant part of the total pathology score (TPS), which was the sum of eight airway lesions, in the study by Cosio et al.[14] Wright et al[76] have shown fibrosis to be related to various abnormalities of tests of flow. Thickening of the walls of bronchioles less than 0.4 mm in diameter and of respiratory bronchioles has also been shown to be associated with mild

CAO;[72] this is presumably due to fibrosis. The NIH IPPBT showed that the patients as a whole had increased fibrous tissue in the bronchioles, but fibrosis was beneficial in terms of some clinical features and CAO.[46] These authors speculated that fibrosis might stabilize airways and diminish bronchiolar deformities.

## Muscle Increase

The increase in muscle is presumably due to hyperplasia. In the original Cosio series[14] there was an increase in muscle associated with airflow obstruction. This has been confirmed in studies of postmortem lungs,[54] showing an increase in closing capacity and slope of phase III. A subsequent study from the same laboratory[51] showed no effect of increased muscle, and a similar finding has been reported in surgically resected lungs.[34] Increased muscle was found in the patients in the IPPBT but was actually beneficial in terms of clinical findings and flow obstruction.[46] The suggested mechanism for this was once again stabilization of the shape of airways as in the case of fibrosis. The reason why muscle increases is uncertain. Muscle hyperplasia in asthma is thought to represent a response to repeated airway constriction. It may be that inflammatory mediators that cause bronchiolar constriction (see the previously mentioned hypothesis of Berend et al) result in a response similar to asthma. Muscle decreases in bronchioles with age.[46]

## Goblet Cell Metaplasia

Although not a significant factor in the original Cosio series,[14] goblet cell metaplasia has emerged as a significant cause of mild CAO in the St. Paul's Hospital series[76] and from Japan[34] but not in postmortem function studies.[51] It was an important cause of airflow obstruction in moderately severe CAO, and was especially significant in the group of patients with the least emphysema.[46] The mechanism of the obstruction is not certain. It may be due to mechanical obstruction by mucus, although there is no convincing evidence for mucus plugging in mild CAO (see next section). Another more interesting mechanism has been suggested. Morpho-

logically, bronchioles are lined by a surfactant layer similar to that seen in alveoli, and excised bronchioles behave as though they are lined by surfactant. The surfactant layer may be displaced by the mucus secreted by goblet cells, rendering them mechanically unstable, closing unduly easily and opening with difficulty.

## Mucus Plugging

Obstruction by mucus plugs has long been considered a cause of mild airflow obstruction and severe airflow obstruction.[65,67] Indeed, the illustration of goblet cell metaplasia in the original recognition of this condition by Karpick et al[25] showed a mucus plug in airways. Subsequent studies in surgically resected lungs have not shown mucus plugs to be significant in mild CAO.[14] No occlusion by mucus plugs or exudate was found in the NIH IPPBT in patients with moderate and severe CAO.[46] One study on lungs obtained at autopsy showed that intraluminal mucus was associated with an increase in slope of phase III,[34] and Scott[61] and Scott and Steiner[62] showed a probable relationship between lack of airway filling (presumably mostly due to mucus and exudate) on postmortem bronchography with clinical severity of CAO in general and development of right ventricular hypertrophy. In an undefined set of patients with emphysema, Linhartova and colleagues[28] showed increased amounts of exudate in bronchioles in emphysema. The role of intraluminal mucus must thus be regarded as controversial at this time. The source of the lungs may be very important. Matsuba and Thurlbeck[36] showed that intrabronchial fixation reduced the amount of mucus in the airways by a factor of 4, so that mucus plugging may be underestimated. Lungs obtained at postmortem probably come from patients who had decreased airway clearance because of the terminal illness. Lungs obtained at surgery come from patients who often have intensive respiratory therapy preoperatively, and receive preoperative medications designed to diminish mucus secretion.

## Tortuosity of Bronchioles

Linhartova et al[29,30] have emphasized that bronchioles may be irregular and tortuous in emphysema and that this is related to loss of alveolar attachments (see next section). Nagai et al[45,46] devised a "deformation index" that measured the extent that the bronchioles deviated from predicted random sections through cylinders. They found that patients in the NIH IPPBT were different from controls, and that the deformation index was well correlated to flow obstruction and clinical abnormalities. It was the most significant bronchiolar lesion. Two factors may be involved: (1) the irregularity of shape means that the mean diameter does not adequately reflect minimum bronchiolar diameter, and (2) minimum diameter is an important determinant of flow obstruction. Wilson et al[71] observed that focal areas of bronchiolar narrowing diminished more than the other airways on expiration (discussed further subsequently).

## Loss of Alveolar Attachments

Anderson and Foraker[1] observed that loss of alveolar attachments to bronchioles was associated with bronchiolar narrowing. Interest in loss of alveolar attachments has recently been revived. Saetta et al[57] demonstrated a correlation between diminished alveolar attachments and mild CAO. Petty and colleagues[53] showed a correlation between loss of elastic recoil and diminished alveolar attachments but not with postmortem flow obstruction. Wright et al[73] found decreased peribronchiolar attachments in smokers.

A number of points should be made. Loss of alveolar attachments is, almost by definition, emphysema. The measurements have all been made on fully inflated lungs, and if the airways narrow unduly on expiration, than their effect on airway narrowing and flow obstruction will be greatly underestimated. There have been several early advocates of expiratory airway collapse being a major determinant of airway obstruction on the basis of loss of radial traction.[65] However, Hogg et al[20] found no systematic difference between flow obstruction on inspiration and expiration when measured on excised human autopsy lungs. Some of these authors do not believe in the expiratory collapse theory; however, I do. It should be noted that their patients with severe CAO did not necessarily have severe emphysema and that many had

abundant airway secretions. Thus, although it seems clear that loss of attachments and emphysema are associated with tortuosity and narrowing of bronchioles, and these abnormalities are associated with CAO, their role in inspiration and expiration is uncertain.

## Pigmentation

Pigmentation of bronchioles was shown to be significantly increased in the NIH IPPBT patients and to be significantly related to CAO in these patients.[45,46] It is very difficult to find a reasonable cause-and-effect hypothesis for this phenomenon. We explained the relationship by noting that emphysema severity and pigmentation severity were closely related, and that emphysema was the most significant cause of flow obstruction. We suggested that pigmentation was an epiphenomenon.

## LESIONS WITHIN THE ACINUS

Emphysema is the most important lesion within the acinus, but respiratory bronchiolitis has been shown to be associated with mild CAO.[76] The acinus is the gas exchanging unit of the lung, and it consists of those structures distal to the last purely conducting airway, the terminal bronchiole. The acinus contains (in succession) respiratory bronchioles, alveolar ducts, and alveolar sacs (Fig. 1). Respiratory bronchioles are lined by both bronchiolar epithelium and alveoli, and they become progressively more alveolated proceeding distally. Alveolar ducts are lined by alveoli only, and in turn lead to the terminal structure, the alveolar sac.

## Respiratory Bronchiolitis

Wright et al[76] have shown that inflammation of the respiratory bronchioles, fibrosis, and decreased muscle are associated with mild CAO. The last two are probably a consequence of inflammation, as was surmised by Niewoehner et al[47] in 1974. This is a surprising finding because conventional wisdom holds that the total cross-sectional area is so large at the respiratory bronchiolar level that resistance to flow should be negligible. Indeed, this is the region in which gas is exchanged by diffusion rather than flow. If the abnormalities were limited to the single breath nitrogen test, one should perhaps make an argument for stratified rather than regional inhomogeneity. However, tests of expiratory flow were also abnormal. Myers et al[44] have described a group of cases in which patients with respiratory bronchiolitis had the radiologic appearance of infiltrative lung disease, and functionally some of them had a restrictive as well as an obstructive pattern. These patients were all under the age of 40 years and were very heavy smokers. These patients may represent the extreme end of the spectrum of patients described by Guerry-Force et al.[17] Diminished muscle may be a manifestation of respiratory bronchiolitis.

## Emphysema and Airspace Enlargement

**Definition of Emphysema.** *Emphysema* has long been defined as permanent, abnormal enlargement of any part of the gas exchanging structures of the lung, accompanied by destruction of respiratory tissue. *Destruction* was never



Figure 1. Component parts of the acinus. The acinus is the gas-exchanging unit of the lung and is the part of the lung distal to the terminal bronchiole (TB). It consists of respiratory bronchioles (RB), which have increasing numbers of alveoli in their walls (three orders RB1, RB2, and RB3 are shown), alveolar ducts (AD), and alveolar sacs (AS). (*Modified from* Thurlbeck WM: Chronic Airflow Obstruction in Lung Disease. Philadelphia, WB Saunders, 1976, p 15.)

A308



396                                    *William M. Thurlbeck*

defined until an NIH workshop[63] proposed defining it as "non-uniformity in the pattern of airspace enlargement so that the orderly appearance of the acinus and its components is disturbed and may be lost." It was also believed that airspace enlargement due to or associated with fibrosis, such as might occur in honeycomb (end stage) lung in usual interstitial pneumonia and other conditions should be excluded. Thus, the final definition is as follows: *Emphysema* is a condition of the lung characterized by permanent, abnormal enlargement of the airspaces, such that the orderly appearance of the acinus is altered and may be lost, and is not accompanied by obvious fibrosis.

The consequences of this new definition are not many, but it enables a more orderly approach to be made to the condition of *respiratory airspace enlargement*, defined as "an increase in airspace size as compared with the airspace of normal lungs" (Table 2). The various types of airspace enlargement are discussed in detail later.

At about the same time as the proceedings of the NIH workshop were published, the McGill group[58] described the "destructive index" (DI). These investigators questioned whether this might not be a better definition of emphysema or at least a more sensitive and objective one. The DI is measured using microscopic examination of slides and consists of three components: abnormal breaks in alveolar walls, "obvious emphysema," and fibrosis. Saetta et al[58] found that the DI might be abnormal when the size of airspaces was within the normal range. They also found that the DI was related to smoking and to abnormalities of pulmonary function

consistent with emphysema, loss of recoil, and airflow obstruction. However, in the hands of others,[37-60] the main component was "obvious emphysema." This is clearly a subjective measurement. Furthermore, the DI was not better related to abnormalities of pulmonary function than was the naked-eye examination of lungs.

### Classification of Airspace Enlargement

*Simple Airspace Enlargement.* Congenital lobar overinflation (emphysema) is seen most commonly in the neonatal period. A lobe or part of a lobe rapidly overinflates and compresses the remaining lung. It may be a life-threatening emergency requiring immediate intervention. It is probably due to a variety of causes, such as cartilage hypoplasia (probably the commonest), bronchial compression by vessels, and mucosal flap valves. Another association is polyalveolar lobe, in which alveoli are increased in number and may not be increased in size (and may even be diminished). The clinical features are the same as for the more usual varieties.[64] This form of airspace enlargement is congenital in that many cases appear at birth, but it is not familial.

The lung in Down's syndrome is interesting. The airspaces are increased in size, alveoli are decreased in number, and gas exchanging surface area is reduced whether or not the patients have congenital heart disease. Until approximately 6 months of age, gas exchanging surface complexity is normal, and only after this time does it become abnormal, suggesting that the main defect is inadequate postnatal alveolar multiplication.[13] This form of simple airspace enlargement is therefore genetic, but not congenital, in the sense that the lungs are apparently normal at birth. Its functional consequences are unknown.

*Acquired Simple Airspace Enlargement.* The classic example of acquired simple airspace enlargement is that which occurs following resection of lung tissue or atelectasis. The enlargement is inferred rather than observed, and this is because linear dimensions change to the cube root of change in lung volume. Thus, taking an extreme example, doubling of lung volume results in a linear increase of only 26%. This falls well within normal variation.

*The Aging Lung.* With age there is a well-documented series of morphologic changes in humans and animals.[11] These include an in-

Table 2.    *Respiratory Airspace Enlargement*

Simple airspace enlargement
   Congenital
      Congenital lobar overinflation
      Down's syndrome
   Acquired
      Secondary to loss of lung volume
   Associated with aging
Emphysema
   Proximal acinar emphysema
   Panacinar emphysema
   Distal emphysema
   Bullae
Airspace enlargement with fibrosis
   Irregular airspace enlargement
   Other
   Honeycomb (end-stage) lung

creased inter–alveolar wall distance due mainly to an increase in alveolar duct and sac diameter with diminished gas exchanging surface to volume ratio, loss of gas exchanging surface area, loss of alveolar wall tissue, probable increase in the size and/or number of Kohn's pores, and probable loss of alveoli. Whether or not this represents emphysema can be debated. However, the definition of respiratory airspace enlargement requires that this be an increase "as compared with the airspaces of normal lungs" (see previous discussion). Because the changes occur in virtually all lungs, the enlargement should be considered normal. However, there is some question as to exactly what "normal" is. The NIH BALB/cNNia strain of mice did not show the customary morphologic changes of age when the animals were raised under conditions free of infection and environmental contaminants.[26] Thus, the disturbed alterations in human and animal lungs may represent a response to the environment.

**Morphology of Emphysema.** Very little new information about the morphology of emphysema has been added over more than the past decade. Controversies still exist and these are unchanged. The topic will therefore be reviewed only briefly, and a detailed review exists.[65]

The definition of emphysema has been discussed in this article, but it is important to recognize that there are many forms of emphysema, probably with different pathogeneses and different clinical associations and effects. Emphysema is classified into three major categories, discussed subsequently.

*Proximal Acinar (Centriacinar) Emphysema.* This involves the respiratory bronchioles selectively or dominantly and has two different forms.

*Centrilobular Emphysema.* Centrilobular emphysema (CLE) is best regarded as cigarette related and inflammation induced. It is commonly associated with chronic bronchitis and is more frequent in males. It is the form of emphysema most commonly found in patients with clinical emphysema. It occurs more frequently and becomes most severe in the upper zones of the lung, and is associated with inflammation of the supplying bronchiole and narrowing of this airway in 60% of instances.

*Simple Pneumoconiosis.* This condition is best described in coal miners in whose lungs there are accumulations of large amounts of coal dust

around respiratory bronchioles. This is accompanied primarily by distention, as contrasted to CLE in which there is evident destruction of respiratory tissue even in mild examples. Another difference is that pigmentation is relatively slight in CLE and may even be absent. Simple pneumoconiosis is accompanied by relatively mild pulmonary functional abnormalities.

*Panlobular or Panacinar Emphysema.* In panlobular or panacinar emphysema PLE, the acinus is more or less uniformly involved. Identical lesions may be found under very different situations.

*Familial Emphysema.* This situation is associated with $\alpha_1$-antitrypsin or protease deficiency. The amount and type of $\alpha_1$-antitrypsin in the blood are determined by a pair of co-dominant alleles. Pi[z] (proteinase inhibitor associated with the ZZ or ZO allele) is associated with the early development of emphysema and should be suspected in any subject under the age of 40 years and in most subjects under the age of 50 years who have clinically evident emphysema. The emphysema that occurs is panacinar in type and is found dominantly, and is most severe, in the lower zones of the lungs.

*Association with Centrilobular Emphysema.* A common finding in patients with clinical emphysema is the association of upper zonal CLE and lower zonal PLE. Although this lesion is well recognized, there is a difference in interpretation. The clinical associations are the same as for CLE: cigarette smoking, chronic bronchitic males. One interpretation is that it represents lower zonal CLE that has progressed to PLE and, indeed, there are often areas in such cases where both lesions occur together. However, a simpler interpretation is that because the lower zonal lesion fits the description of PLE, it should be referred to as such, and it is inappropriate to speculate on its origin.

*Association with Bronchial and Bronchiolar Atresia.* The Swyer-James or Macleod's syndrome is also known as unilateral pulmonary transradiancy or unilateral emphysema. About one half of patients with the syndrome have a history of severe bronchopulmonary infection in childhood. The condition is usually discovered in young adult life because of an abnormal chest radiograph. The affected lung is excessively radiolucent; the opposite one has increased blood flow and thus increased markings, and it may be

398                    *William M. Thurlbeck*

regarded as the abnormal one. A comparison of respiratory/expiratory radiographs shows air trapping on the affected side and shift of the mediastinum to the opposite one. The condition is due to severe obliterative bronchitis and bronchiolitis, and this occurs in such a way that collapse of the lung distal to the obliteration does not occur, presumably because of collateral ventilation. The airways are dilated, and the condition has been referred to as "bronchiectasis without atelectasis." The more usual outcome of childhood bronchopulmonary infection and airway obliteration is parenchymal collapse and typical bronchiectasis. The syndrome occurs when the airway obliteration is dominantly unilateral. However, it is uncommon that the entire lung is affected, and parts of the opposite lung may also be affected. The air trapping is due to airway disease, and emphysema is probably irrelevant. Little information is available, but it appears that when emphysema is present, it is panacinar in type.

*Congenital Bronchial Atresia.* In this condition the subtended portion of the lung is overinflated. Most commonly, this is the apicoposterior segment of the left upper lobe. A particular feature is accumulation of mucus immediately distal to the atretic bronchus and this may appear radiologically as a mass lesion. The little definitive information that is available suggests that the emphysema is panacinar in type.

The latter two conditions raise the problem of the pathogenesis of emphysema. The currently fashionable proteolysis-antiproteolysis hypothesis requires considerable modification and imagination to explain the occurrence of PLE under these circumstances. One different explanation is that intra-alveolar pressure exceeds pulmonary capillary pressure resulting in ischemic atrophy of alveolar walls.

*Panacinar Emphysema Associated with Aging.* Even in nonsmokers, there is an increased frequency of PLE in the eighth decade and beyond. A relatively small proportion of subjects are affected, it occurs more frequently in male than in female subjects, it is asymptomatic, and it is found particularly along the pleural margins of the lower lobe. It is probably best regarded as an exaggeration of the usual aging process in the lung.

*Distal Acinar (Paraseptal) Emphysema.* In distal acinar emphysema, alveolar ducts and al-

veolar sacs are dominantly involved, and thus the distal part of the acinus is particularly affected and it is found deep to the pleura and adjacent to lobular septa. It is uncommon. Its classic association is with spontaneous pneumothorax of adults, but more commonly this is associated with nonspecific airspace enlargement with fibrosis and inflammation (see subsequent discussion).

*Bullae.* A *bulla* is an airspace in the lung more than 1 cm in diameter in the distended state. Bullae are classified into three types. Type I bullae occur subpleurally and are found in the absence of widespread emphysema. They have a narrow base and in inflated specimens protrude in a mushroom-like fashion from the external surface of the lung. Within the thorax they are depressed into the substance of the lung. Type II bullae are likewise subpleural but are associated with emphysema in the rest of the lung. Type III bullae are also associated with emphysema in the rest of the lung, but they are located within the lung rather than subpleurally.

Upper zonal bullae usually are much enlarged centrilobular emphysematous spaces. Radiologically evident bullae in the lower zones of the lung probably do not fulfill the definition of bullae. They usually consist of greatly attenuated lung tissue in panacinar emphysema, and the margins of the bullae as seen radiologically are lobular septa.

Type I bullae may be multiple and very large, and may compromise lung function by compression of the remaining normal lung. Surgery is curative. In general, types II and III bullae can be recognized clinically as exaggerations of evident emphysema as assessed radiologically or by pulmonary function tests. However, it may be at times quite difficult to distinguish type I from types II and III bullae, and it is probable that computed tomography will play an important role in this distinction.

*Airspace Enlargement and Fibrosis.* The various interstitial pneumonias may be associated with fibrosis, and usual interstitial pneumonia (fibrosing alveolitis) is the most common cause. The end stage of these interstitial processes is often referred to as honeycomb or end-stage lung. Cystic spaces 0.5 to 2 cm in diameter are seen on cut sections of the lung. They are in reality grossly dilated airways lined mostly by bronchiolar epithelium and they communicate

with more proximal airways. These spaces are separated from each other by dense, fibrous tissue. Some of these spaces may resemble emphysematous spaces when they are lined by alveolar epithelium. They are accompanied by obvious fibrosis and therefore not emphysema.

What used to be termed *irregular* or *paracicatricial* emphysema is no longer regarded as emphysema because irregular enlargement of the acinus is nearly always associated with scarring. Careful examination of lungs will disclose focal scarring in many lungs, and occasionally there may be multiple scars in a lung. Typical examples of multiple scars include silicosis, tuberculosis, and histoplasmosis. Airspace enlargement may then become extensive and there may be functional abnormalities resembling emphysema. However, the radiologic and clinical features are generally different from those of typical emphysema. Spontaneous pneumothorax in young adults may be a manifestation of paraseptal emphysema. Much more commonly, the lung shows nonspecific changes with airspace enlargement accompanied by fibrosis.[27,49]

**Clinical Correlations and Diagnosis of Emphysema.** Emphysema is the dominant factor in severe CAO.[40,46,70] As emphysema gets worse, the diagnosis of CAO becomes more frequent,[65] but almost one third of patients with severe emphysema at autopsy have not been recognized as having emphysema during life. It is probable that in a substantial proportion of cases, the disease which caused death obscured the pulmonary symptoms. Classification of emphysema is far less relevant than assessment of the severity of emphysema. In any event, classification is idiosyncratic even in expert hands when emphysema is severe. Emphysema has the best associations with abnormal pulmonary function tests and these include increased residual volume, functional residual capacity and total lung capacity, and diminished expiratory flow rates and diffusing capacity.[70] Of interest in this study was the observation that the single breath nitrogen test was *better* related to emphysema than to bronchiolar lesions.

Varying degrees of specificity and sensitivity have been claimed for the radiologic diagnosis of emphysema.[55] These studies, in general, had the fallacy that the radiologic diagnosis of emphysema was, in a sense, a nonquantitative one; that is, emphysema was either present or absent radiologically, whereas the morphologic assessment showed a continuous distribution. The idea of assessing radiologic severity of emphysema was first clearly introduced by Lohela et al[31] in 1984. They used four radiologic criteria and with an increasing number of these criteria being present, the radiologic severity increased. They found that there was an approximately 75% sensitivity, specificity, and accuracy when moderately severe radiologic emphysema was compared to a similar degree of emphysema in lung specimens. The advent of computed tomography (CT) made it possible to quantitate radiologic severity of emphysema.[8,19] CT scans have shown good correlations between radiology and pathology in emphysema. The definitive study is probably that of Miller et al[39] (this reference also reviews previous CT studies). These authors compared the CT slices to slices of lung specimens in exactly the same plane, whereas other studies compared CT slices to the overall assessment of emphysema in the lobe or lung. Miller et al[39] showed that 1.5-mm collimated slices correlated better than 10-mm slices. The correlation with both to the corresponding anatomic slices was good (r = +0.89). However, even on the 1.5-mm slices, mild but obvious and unequivocal emphysema was not recognized in a few specimens. Furthermore, the CT quantitation was always less than the pathologic quantitation. The interpretation was that CT scanning was highly specific but not completely sensitive.

As mentioned previously, emphysema is often thought to be very closely related to loss of recoil, and a convincing case for this was made by Greaves and Colebatch,[16] who fitted an exponential equation to the volume-pressure curve. The constant K of this equation, which describes the shape of the volume-pressure curve, was found to be closely related to the assessment of emphysema in postmortem lungs. Pare et al[50] found that K was the best indicator of emphysema in surgically derived lungs, but the correlation was weak (r = +0.33). Berend et al[5] found a poor correlation between emphysema and K, and the same was true in the NIH IPPBT.[70]

In general, the relationship between emphysema and loss of elastic recoil has been poor,[67] and this has led to the "doughnut and hole" hypothesis. This hypothesis suggests that loss of recoil is not associated with emphysema, but is related to subtle changes in the surrounding

A312

400                                                                                    *William M. Thurlbeck*

parenchyma. Evidence for this includes several observations. Centrilobular emphysematous spaces were found to be less compliant between approximately residual volume to total lung capacity, whereas the surrounding lung showed increased compliance. Several studies have shown loss of recoil and/or increase in lung volumes in lungs that have so little emphysema that it seems unlikely that emphysema could cause the changes. Perhaps the most convincing evidence was a study in autopsy lungs which showed that the lower lobes were less compliant than the upper lobes in emphysema-free lungs. However, when lobes were compared in which emphysema was worse in the upper lobes, the lower lobes lost more recoil and were more compliant than the upper lobes.[3,4] No convincing evidence of morphologic abnormalities in the surrounding parenchyma has been found. Saetta et al[57] and Petty et al[32] have observed a relationship between loss of alveolar attachments and loss of recoil. Cosio et al[18] have also described an increased number of holes in alveolar walls using scanning electron microscopy and associated abnormalities. However, these may in reality be emphysema. No particular association was noted between loss of elastic recoil and abnormal breaks in alveolar walls in the tissue surrounding emphysematous spaces in two studies.[37,59] Thus, while the "doughnut" hypothesis is still viable, it will require subtle analyses of the parenchyma surrounding emphysematous spaces and these may be biochemical or biophysical rather than morphologic.

Much effort has gone into trying to find the best test for recognizing emphysema, with the idea that one test might be extremely sensitive and specific. No such test has emerged, and although there are many correlates between emphysema and tests of pulmonary function, the correlates are not good, usually with correlation coefficients of about 0.4 to 0.6. The best correlation has usually been with diffusing capacity.[67] Correlations with total lung capacity (TLC) have generally been poor, but many of these studies have measured TLC using helium dilution. The correlation between TLC and emphysema was considerably better in a study in which TLC was measured plethysmographically.[70] Because radiologically determined TLC can be made with considerable accuracy, this suggests an additional role for radiology. We have repeatedly stressed the need for a combined approach to the diagnosis of emphysema. The clinical history is very important. A chronic smoker with chronic bronchitis who is in the sixth or seventh decade is likely to have emphysema. Any variation from this history diminishes the probability. The chest radiograph becomes important because inexpensive computerized digitizers make measurement of TLC from it easy and quick. (It thus becomes important that radiographs be taken at full inspiration. It may also be that subjective interpretation of the chest radiograph of overinflation may be just as good as digitizer measurements of TLC.) The single breath carbon monoxide estimate of diffusing capacity is likewise simple, quick, and inexpensive. If all these variables—clinical history, radiologic evidence of overinflation, and diffusing capacity—point in the same direction, the probability of emphysema is high and the estimate of its severity is good. The weaker the combination, the less likely is emphysema to be severe.

## SUMMARY

Chronic airflow obstruction (CAO) is a syndrome that is produced by a variety of lesions which may occur in bronchi (large airways), bronchioles (small airways), and lung parenchyma (gas exchanging lung). These lesions frequently occur together in various combinations because of a common etiologic agent, tobacco smoke. Occasionally, one lesion or another may play a dominant role.

The major disease of the large airways is chronic bronchitis, or chronic sputum production, and it is defined clinically. Its morphologic counterpart is mucous gland enlargement. Mucous gland enlargement is poorly related to CAO. Other lesions of the large airways—inflammation, smooth muscle hyperplasia, cartilage atrophy, and bronchial wall thickening—have also been described, but their functional consequences are uncertain.

Bronchiolar lesions are well recognized in CAO, but their relative importance may differ in patients with mild CAO, compared to patients with severe CAO. In mild CAO, inflammation is a very important lesion, and its probable consequences—narrowing, fibrosis, and goblet cell

A313

metaplasia—have all been found to be important. In severe CAO, inflammation and fibrosis do not appear to be important, but goblet cell metaplasia, bronchiolar tortuosity, and narrowing do.

Emphysema is a subset of airspace enlargement. Emphysema is defined anatomically and is the most important component of severe CAO. Several forms of emphysema can be recognized morphologically and may have specific clinical associations. However, in the usual patient with severe CAO, it is the severity, rather than the type, of emphysema, that is most significant. The diagnosis of emphysema depends on a combined approach. Significant factors include the clinical history (age, sex, smoking, chronic bronchitis, dyspnea), radiologic evidence of overinflation, and diminished diffusing capacity for carbon monoxide.

# REFERENCES

1. Anderson AE, Foraker AG: Relative dimensions of bronchioles and parenchymal spaces in lungs from normal subjects and emphysematous patients. Am J Med 32:218–226, 1962
2. Baile EM, Wright JL, Pare PD, Hogg JC: The effect of acute small airway inflammation on pulmonary function in the dog. Am Rev Respir Dis 126:298–301, 1982
3. Berend N, Skoog C, Thurlbeck WM: Lobar pressure-volume characteristics of excised human lungs. Thorax 36:290–295, 1981
4. Berend N, Skoog C, Thurlbeck WM: Exponential analysis of lobar pressure-volume characteristics. Thorax 36:452–455, 1981
5. Berend N, Thurlbeck WM: Exponential analysis of pressure-volume relationship in excised human lungs. J Appl Physiol 52:838–844, 1982
6. Berend N, Woolcock AJ, Marlin GE: Correlation between the function and structure of the lung in smokers. Am Rev Respir Dis 119:695–705, 1979
7. Berend N, Wright JL, Thurlbeck WM, et al: Small airways disease: Reproducibility of measurement and correlation with lung function. Chest 79:263–268, 1981
8. Bergin C, Muller N, Nichols DM, et al: The diagnosis of emphysema. A computed tomographic pathologic correlation. Am Rev Respir Dis 133:541–546, 1986
9. Bignon J, Andre-Bougeran J, Brouet G: Parenchymal, bronchiolar and bronchial measurements in centrilobular emphysema. Relation to weight of right ventricle. Thorax 25:556–567, 1970
10. Bignon J, Khoury F, Even F, et al: Morphometric study in chronic obstructive bronchopulmonary disease. Am Rev Respir Dis 99:669–695, 1969
11. Brody JS, Thurlbeck WM: Development, growth, and aging of the lung. *In* Macklem PT, Mead J (eds): Handbook of Physiology. Section 3. The Respiratory System. Volume III. Mechanics of Breathing, Part 1. Bethesda, American Physiologic Society, 1986, pp 335–386

12. Burrows B, Fletcher CM, Heard BE, et al: The emphysematous and bronchial types of chronic airways obstruction: A clinicopathological study of patients in London and Chicago. Lancet i:830–835, 1966
13. Cooney TP, Wentworth P, Thurlbeck WM: Diminished radial count is found only postnatally in Down's syndrome. Pediatr Pulmonol 5:204–209, 1988
14. Cosio MG, Ghezzo H, Hogg JC, et al: The relations between structural changes in small airways and pulmonary-function tests. N Engl J Med 298:1277–1281, 1978.
15. Cosio MG, Shiner RJ, Saetta M, et al: Alveolar fenestrae in smokers. Relationship with light microscopic and functional abnormalities. Am Rev Respir Dis 133:126–131, 1986
16. Greaves IA, Colebatch HJH: Elastic behaviour and structure of normal and emphysematous lungs postmortem. Am Rev Respir Dis 121:127–136, 1980
17. Guerry-Force ML, Muller NL, Wright JL, et al: A comparison of bronchiolitis obliterans with organizing pneumonia, usual interstitial pneumonia and small airways disease. Am Rev Respir Dis 135:705–712, 1987
18. Hale DA, Niewoehner DE, Cosio MG: Morphologic changes in the muscular pulmonary arteries: Relationship to cigarette smoking, airways disease and emphysema. Am Rev Respir Dis 122:273–278, 1980
19. Hayhurst MD, MacNee W, Flenley DL, et al: The diagnosis of pulmonary emphysema by computerized tomography. Lancet 2(8394):320–322, 1984
20. Hogg JC, Macklem PT, Thurlbeck WM: Site and nature of airway obstruction in chronic obstructive lung disease. N Engl J Med 278:1355–1360, 1968
21. Hoppin FG Jr, Green M, Morgan MS: The relationship of central and peripheral airway resistance to lung volume in dogs. J Appl Physiol 44:728–737, 1978
22. Jamal K, Cooney TP, Fleetham JA, Thurlbeck WM: Chronic bronchitis: Correlation of morphological findings to sputum production and flow rates. Am Rev Respir Dis 129:719–722, 1984
23. Jamal K, Fleetham JA, Thurlbeck WM: Cor pulmonale: Correlations with central airway lesions, peripheral airway lesions, emphysema and control of breathing. Am Rev Respir Dis, in press
24. Kappos AD, Rodarte JR, Lai-Fook SJ: Frequency dependence and partitioning of respiratory impedance in dogs. J Appl Physiol 61:621–629, 1981
25. Karpick RJ, Pratt PC, Asmundsson T, Kilburn KH: Pathological findings in respiratory failure. Ann Intern Med 72:189–197, 1970
26. Kawakami M, Paul JL, Thurlbeck WM: The effect of age on lung structure in male BALB/cNNia inbred mice. Am J Anat 120:1–21, 1984
27. Lichter I, Gwynne JF: Spontaneous pneumothorax in young subjects. Thorax 26:409–417, 1971
28. Linhartova A, Anderson AE, Foraker AG: Intraluminal exudates of non-respiratory bronchioles in pulmonary emphysema. Hum Pathol 2:333–336, 1971
29. Linhartova A, Anderson AE Jr, Foraker AG: Radial traction and bronchiolar obstruction in pulmonary emphysema. Arch Pathol 92:384–391, 1971
30. Linhartova A, Anderson AE, Foraker AG: Further observations on luminal deformity and stenosis of non-respiratory bronchioles in pulmonary emphysema. Thorax 32:53–59, 1977
31. Lohela P, Sutinen S, Pkk P, et al: Diagnosis of emphysema on chest radiographs. Fortsch R Roentgenstr 141:395–402, 1984
32. Maisel JC, Silvers GW, George MS, et al: The signifi-

402                                    *William M. Thurlbeck*

cance of bronchial atrophy. Am J Pathol 67:371–386, 1972

33. Maisel JC, Silvers GW, Mitchell RS, Petty TL: Bronchial atrophy and dynamic expiratory collapse. Am Rev Respir Dis 98:988–997, 1968

34. Matsuba K, Shirakusa T, Kuwano K, et al: Small airways disease in patients without chronic airflow limitation. Am Rev Respir Dis 136:1106–1111, 1987

35. Matsuba K, Thurlbeck WM: The number and dimensions of small airways in emphysematous lungs. Am J Pathol 67:265–275, 1972

36. Matsuba K, Thurlbeck WM: Disease of the small airways in chronic bronchitis. Am Rev Respir Dis 107:552–558, 1973

37. Matsuba K, Ikeda T, Nagai A, Thurlbeck W: The National Institutes of Health Intermittent Positive-Pressure Breathing Trial. Pathology studies. Am Rev Respir Dis 139:1439–1445, 1989

38. McKenzie HI, Glick M, Outhred KG: Chronic bronchitis in coal miners: Ante-mortem/post-mortem comparisons. Thorax 24:527–535, 1969

39. Miller RR, Müller NL, Vedal S, et al: Limitations of computed tomography in the assessment of emphysema. Am Rev Respir Dis 139:980–983, 1989

40. Mitchell RS, Stanford RE, Johnson JM, et al: The morphologic features of the bronchi, bronchioles and alveoli in chronic airway obstruction. Am Rev Respir Dis 114:137–145, 1976

41. Moreno RM, Hogg JC, Pare PD: Mechanics of airway narrowing. Am Rev Respir Dis 133:1171–1180, 1986

42. Mullen JBM, Wright JL, Wiggs BR, et al: Reassessment of inflammation of airways in chronic bronchitis. Br Med J 291:1235–1239, 1985

43. Mullen JBM, Wiggs BR, Wright JL, et al: Non-specific airway reactivity in smokers. Relationship to airway pathology and baseline lung function. Am Rev Respir Dis 133:120–125, 1986

44. Myers JL, Veal CF, Shin MS, Katzenstein A-L A: Respiratory bronchiolitis causing interstitial lung disease. Am Rev Respir Dis 135:880–884, 1987

45. Nagai A, West WW, Paul JL, Thurlbeck WM: The National Institutes of Health Intermittent Positive Pressure Breathing Trial: Pathology studies. I. Inter-relationship between morphologic lesions. Am Rev Respir Dis 132:937–945, 1985

46. Nagai A, West WW, Thurlbeck WM: The National Institutes of Health Intermittent Positive-Pressure Breathing Trial: Pathology studies II. Correlation between morphologic findings, clinical findings, and evidence of expiratory air-flow obstruction. Am Rev Respir Dis 132:946–953, 1985

47. Niewoehner DE, Kleinerman J, Rice DP: Pathologic changes in the peripheral airways of young cigarette smokers. N Engl J Med 291:755–758, 1974

48. Oberholzer M, Dalquen P, Rohr HP: Morphologic findings in central bronchi correlated to lung function data in obstructive airways disease. Path Res Pract 164:58–67, 1979

49. Ohata M, Suzuki H: Pathogenesis of spontaneous pneumothorax with special reference to the ultrastructure of emphysematous bullae. Chest 77:771–776, 1980

50. Pare PD, Brooks LA, Bates J, et al: Exponential analysis of the lung pressure-volume curve as a predictor of pulmonary emphysema. Am Rev Respir Dis 126:54–61, 1982

51. Petty TL, Silvers GW, Stanford RE: Small airway dimension and size distribution in human lungs with an increased closing capacity. Am Rev Respir Dis 125:535–539, 1982

52. Petty TL, Silvers GW, Stanford RE: Radial traction and small airways disease in excised human lungs. Am Rev Respir Dis 133:132–135, 1986

53. Petty TL, Silvers GW, Stanford RE: Mild emphysema is associated with reduced elastic recoil and increased lung size but not with airflow limitation. Am Rev Respir Dis 136:867–871, 1987

54. Petty TL, Silvers GW, Stanford RE, et al: Small airway pathology is related to increased closing capacity and abnormal slope of phase III in excised human lungs. Am Rev Respir Dis 121:449–456, 1980

55. Pratt PC: Role of conventional chest radiography in diagnosis and exclusion of emphysema. Am J Med 82:998–1006, 1987

56. Reid LMcA: Reduction in bronchial subdivision in bronchiectasis. Thorax 5:233–247, 1950

57. Saetta M, Ghezzo H, Kim WD, et al: Loss of alveolar attachments in smokers. A morphologic correlate of lung function impairment. Am Rev Respir Dis 132:894–900, 1985

58. Saetta M, Shiner RG, Angus GE, et al: Destructive index: A measurement of lung parenchymal destruction in smokers. Am Rev Respir Dis 131:764–769, 1985

59. Saito K, Cagle P, Berend N, Thurlbeck WM: The "destructive index" in nonemphysematous and emphysematous lungs. Am Rev Respir Dis 139:308–312, 1989

60. Salmon RB, Saidel GM, Inkley SR, Neiwoehner DE: Relationship of ventilation inhomogeneity to morphologic variables in excised human lungs. Am Rev Respir Dis 126:686–690, 1982

61. Scott KWM: A pathological study of the lungs and heart in fatal and non-fatal chronic airway obstruction. Thorax 31:70–79, 1976

62. Scott KWM, Steiner GM: Post mortem assessment of chronic airways obstruction by tantalum bronchography. Thorax 30:405–414, 1975

63. Snider GL, Kleinerman J, Thurlbeck WM, Bengali ZK: The definition of emphysema. Report of a National Heart, Lung and Blood Institute, Division of Lung Disease Workshop. Am Rev Respir Dis 132:182–185, 1985

64. Tapper T, Schuster S, McBride J, et al: Polyalveolar lobe: Anatomic and physiologic parameters and their relationship to congenital lobal emphysema. J Pediatr Surg 15:931–936, 1980

65. Thurlbeck WM: Chronic Airflow Obstruction in Lung Disease. Philadelphia, WB Saunders, 1976

66. Thurlbeck WM: Aspects of chronic airflow obstruction. Chest 72:341–349, 1977

67. Thurlbeck WM: Aspects of chronic airflow obstruction. Correlation of structure and function. In Petty TL (ed): Chronic Obstructive Lung Disease. Edition 2. New York, Marcel Dekker, 1985, pp 129–204

68. Thurlbeck WM, Henderson JA, Fraser RG, Bates DV: Chronic obstructive lung disease. A comparison between clinical, roentgenologic, functional and morphologic criteria in chronic bronchitis, emphysema, asthma and bronchiectasis. Medicine 49:81–145, 1970

69. Van Brabandt H, Cauberghs M, Verbeken E, et al: Partitioning of pulmonary impedance in excised human and canine lungs. Functional-structural relationship. J Appl Physiol 55:1733–1742, 1983

70. West WW, Nagai A, Hodgkin JE, Thurlbeck WM: The National Institute of Health Intermittent Positive Pressure Breathing Trial: Pathology studies. III. The diagnosis of emphysema. Am Rev Respir Dis 135:123–129, 1987

A315



71. Wilson AG, Massarella GR, Pride NB: Elastic properties of airways in human lungs post-mortem. Am Rev Respir Dis 110:716–729, 1974

72. Wright JL, Hobson J, Wiggs BR, et al: Effect of cigarette smoking on structure of the small airways. Lung 165:91–100, 1987

73. Wright JL, Hobson JE, Wiggs B, et al: Airway inflammation and peribronchial attachments in the lungs of nonsmokers, current and ex-smokers. Lung 166:277–286, 1988

74. Wright JL, Lawson LM, Pare PD, et al: Morphology of peripheral airways in current smokers and ex-smokers. Am Rev Respir Dis 127:474–477, 1983

75. Wright JL, Lawson L, Pare PD, et al: The structure and function of the pulmonary vasculature in mild chronic obstructive pulmonary disease. The effect of oxygen and exercise. Am Rev Respir Dis 128:702–707, 1983

76. Wright JL, Lawson L, Pare PD, et al: The detection of small airways disease. Am Rev Respir Dis 129:989–994, 1984

77. Wright JL, Wiggs BJ, Hogg JC: Airway disease in upper and lower lobes in lungs of patients with and without emphysema. Thorax 39:282–285, 1984

78. Wright JL, Wiggs BJ, Pare PD, Hogg JC: Ranking the severity of emphysema on whole lung slices. Concordance of upper lobe, lower lobe, and entire lung ranks. Am Rev Respir Dis 133:930–931, 1986

*Address reprint requests to:*
William M. Thurlbeck, MB
Department of Pathology
University of British Columbia
2211 Wesbrook Mall
Vancouver, British Columbia V6T 1W5
Canada

A316

Joseph Fleming v. Aberry Coal, Inc.
OWCP No.:  XXX-XX-0560
PS&E File No.:  40-756
Case No.:  2012-BLA-05241

## DIRECTOR'S EXHIBITS

| | | |
|---|---|---|
| 1.1 | 11/01/94 | Application: last CME 04/01/91; alleging 20 years CME; stopped working due to back injury |
| 1.2 | 11/01/94 | Employment History |
| 1.3 | 12/20/94 | Description of Coal Mine Work & Other Employment: mine operator, roof bolter |
| 1.4 | | SSER |
| 1.5 | 08/31/64 | Marriage Certificate:  Danny Joseph Fleming and Arlene Belle Hunsucker |
| 1.6 | 03/03/48 | Birth Certificate: Arlene Belle Hunsucker |
| 1.7 | 09/11/45 | Birth Certificate: Joseph Fleming |
| 1.8 | 11/15/94 | DOL Exam/Dr. Wicker: no evidence of pneumoconiosis; currently smoking 1 PPD, started smoking 1973 |
| 1.9 | 11/15/94 | DOL ABG: PCO2 44.3, PO2 67.9 |
| 1.10 | | DOL Note: PFT tracings/EKG graphs were not suitable for photocopying.  The original tracings/graphs are included in the formal record |
| 1.11 | | CV/Dr. Steve S. Kraman |
| 1.12 | 11/15/94 | DOL PFT: FEV1: 2.22, (Post) 1.93; FVC: 4.34, (Post) 4.04; age 49; height 68.75"; effort was at best fair and was not felt to be a valid representation of maximum voluntary vent capacity |

Bristol: 330368-1

| | | |
|---|---|---|
| 1.13 | 04/04/95 | PFT Review by Dr. Kraman: vents are not acceptable |
| 1.14 | 02/23/95 | PFT from Lexington Clinic/Dr. Broudy: FEV1: 3.87, FVC: 4.32; shows moderately severe obstructive airways disease; ABG shows moderate resting arterial hypoxemia with marked elevation of the COHB indicating continued exposure; age 49; height 68.5" |
| 1.15 | 04/28/95 | Review of 02/23/95 PFT by Dr. Burki: vents are acceptable |
| 1.16 | 11/15/94 | DOL X-ray read by Dr. Wicker: negative |
| 1.17 | | CV: Dr. E. Nichols Sargent |
| 1.18 | 12/07/94 | Quality reading of 11/15/94 DOL x-ray by Dr. Sargent |
| 1.19 | 05/18/95 | Reading of 02/23/95 DOL x-ray by Dr. Wiot: negative |
| 1.20 | 06/05/95 | Letter to DOL from L. Kitts enclosing medical evidence |
| 1.21 | 05/15/95 | Reading of 02/23/95 DOL x-ray from Dr. Spitz: negative |
| 1.22 | 06/06/95 | Letter to DOL from L. Kitts enclosing medical evidence |
| 1.23 | 05/01/95 | DOL Determination: denied; credited with 8+ years CME |
| 1.24 | 11/09/94 | Notice of Claim: Aberry Coal, Inc. and Security Insurance Co. of Hartford |
| 1.25.1 | 11/13/94 | Letter to DOL from Baird and Baird responding to Notice of Claim |
| 1.25.2 | 11/30/94 | Operator Response |
| 1.26 | 03/31/95 | Letter to Baird and Baird from Dr. William H. Anderson: referred to exam of 05/14/91 and answered smoking questions; emphysema as a |

| | | |
|---|---|---|
| | | result of his cigarette smoking and is not related to his CWP |
| 1.27 | 04/25/95 | DOL PFT/Dr. Wicker: FEV1: (Pre) 2.02, (Post) 1.92; FVC (Pre) 4.44, (Post) 4.57; age 49; height 68.75" |
| 1.28 | 05/20/95 | PFT Validation of 04/25/95 study by Dr. Burki: vents are acceptable |
| 1.29 | 02/23/95 | IME Report by Dr. Broudy: no CWP; chronic asthmatic bronchitis is due to cigarette smoking, because of the current level of obstructive airways disease does not retain respiratory capacity to perform CME; cause of impairment is cigarette smoking and asthma; has been a smoker of 1 PPD for 10-20 years, starting in his early 20s and quitting for 5-6 years before resuming once again; ABG revealed marked elevation of COHB indication continued exposure to smoke; believes disability is due to cigarette smoking |
| 1.30 | 02/23/95 | IME X-ray/Broudy: negative |
| 1.31.1 | 03/28/95 | Letter to DOL from Baird and Baird: enclosing deposition transcript |
| 1.31.2 | 01/06/95 | Transcript of Claimant's deposition: smoked 1 PPD for 24-25 years (Tr. 11); hardly ever smokes more than 1 PPD |
| 2 | 09/02/10 | Guide to Filing Black Lung Benefits |
| 3.1 | 07/19/10 (DOL lists file date as 8/16/10) | Application: alleging 18 years CME; last CME October 1991 |
| 3.2 | | Copy of claimant's and wife's Social Security cards |
| 3.3 | 07/19/10 | DOL form re State Workers' Compensation claim |
| 4.1 | 07/19/10 | Employment History |
| 4.2 | 11/02/10 | DOL memo to claim file: regarding CME |

Bristol: 330368-1

| | | history |
|---|---|---|
| 5 | 07/19/10 | Description of Coal Mine Work and Other Employment |
| 6 | | SSER |
| 7 | | SSER |
| 8 | 10/06/11 | Request for State or Federal Workers' Compensation information: claim |
| 9.1 | 08/31/64 | Marriage Certificate: Danny Joseph Fleming and Arlene Belle Hunsucker |
| 9.2 | 08/31/64 | Duplicate DX |
| 10 | 12/01/10 | Selection of an Examining Provider form |
| 11.1 | 11/03/10 | Letter to DOL from MVRMC enclosing x-ray dated 10/02/10 |
| 11.2 | 10/03/10 | Reading of MVRMC x-ray by Dr. DePonte: no pleural or parenchymal abnormalities indicative of CWP; COPD |
| 11.3 | | B-reader Certificate/DePonte |
| 12.1 | 01/14/11 | DOL exam report/Dr. Baker: CWP, COPD with severe obstructive defect; moderate resting arterial hypoxemia and a symptom complex of chronic bronchitis; long history of smoking 35 years at rate of 1/2 to 1 PPD, quit smoking 5 years ago; does not have respiratory capacity to do perform CME; totally impaired; started smoking at age 25, stopped smoking at age 60 |
| 12.2 | | CV/Dr. Glen R. Baker |
| 12.3 | 01/25/11 | Quality reading of 01/14/11 DOL x-ray by Dr. Barrett |
| 12.4 | | CV/Dr. Peter J. Barrett |
| 12.5 | 01/14/11 | DOL X-ray/Baker: 0/1, t/t |

| 12.6 | 01/14/11 | ABG: PCO2 44; PO2 69 |
| 12.7 | 01/14/11 | ECG: abnormal |
| 12.8 | 01/28/11 | PFT Validation of 01/14/11 DOL x-ray/Michos: vents are acceptable |
| 12.9 | 01/14/11 | DOL PFT: FEV1: 0.67, FVC: 3.17; age 65; height 68.25"; severe obstructive vent defect |
| 12.10 | | CV/Dr. John A. Michos |
| 13 | 01/28/11 | Supplemental report from Dr. Baker re report of DOL exam: feel that his 9-1/4 years of CME would be a significant degree of coal mine exposure to develop category 1/1 degree CWP; also feel there is probably more years of employment than is verified; it is my gut opinion that he does have CWP due to his CME; feel his severe COPD has more likely lead to his longer history of cigarette smoking, although there has been some contribution from his dust exposure as well |
| 14.1 | 03/25/11 | Letter to DOL from J. Wolfe: submitting evidence |
| 14.2 | 03/06/11 | Reading of 01/14/11 DOL x-ray by Dr. Alexander: 1/0, p/p |
| 14.3 | | CV/Dr. Alexander |
| 14.4 | 02/26/08 | OV/Dr. Shantha: apparently has quit smoking for good; on Chantix; lungs: reasonably clear, however, poor air entry, bilaterally; severe COPD; tobacco abuse, encouraged him to continue with cessation |
| 14.5 | 05/29/08 | OV/Dr. Shantha: apparently he quit smoking for good secondary to Chantix for three months, wants to continue it for a few more months; lungs: reasonably clear BS slightly diminished at both bases; severe COPD; tobacco abuse |

| | | |
|---|---|---|
| 14.6 | 06/27/08 | PFT: FEV1 (Pre) 0.81, (Post) 0.89; FVC (Pre) 2.17, (Post) 2.35; age 62; height 69"; very severe obstructive pulmonary disease with air trapping; marked decrease in diffusing capacity |
| 14.7 | 11/07/08 to 04/22/10 | OV/Dr. Mejia: history of severe COPD, reactive airways disease; 08/19/09: quit smoking about 6 months ago, feeling much better; 12/07/09: end stage COPD on oxygen supplementation |
| 14.8 | 08/24/09 | PFT: FEV1 (Pre) 0.84, (Post) 0.76; FVC (Pre) 2.20, (Post) 2.08; age 63; height 69"; very severe obstructive pulmonary disease with air trappings; marked decrease in diffusing capacity |
| 14.9 | 08/06/10 and 12/23/10 | OV/Dr. Mejia: very severe COPD with an FEV1 of only 25% predicted; lungs: poor air exchange, expiratory wheezes; COPD, end stage, home oxygen dependent at night; patient worked two years underground in the mines; has been diagnosed with stage 2 black lung |
| 14.10 | 08/11/10 | PFT: FEV1 (Pre) 0.69, (Post) 0.70; FVC (Pre) 1.83, (Post) 2.01; age 64; height 69"; very severe obstructive pulmonary disease with air trappings; marked decrease in diffusing capacity |
| 14.11 | | CV/Dr. Abdul K. Dahhan |
| 15.1 | 05/16/11 | PS&E letter to DOL: submitting evidence |
| 15.2 | 03/31/95 | Letter from Dr. William H. Anderson regarding exam of 05/14/91: emphysema is as result of his cigarette smoking and is not related to CWP or having been a coal miner |
| 15.3 | 04/22/11 | Report of 04/20/11 IME/Dahhan: no radiological finding consistent with CWP; has obstructive vent defect, does not retain physiologic capacity to return to previous |

Bristol: 330368-1

|  |  | CME; pulmonary impairment has not resulted from the inhalation of coal dust, but caused by his lengthy smoking habit; had pneumothorax requiring resection of part of the left lung which could result in some loss of his lung function in contributing to his overall pulmonary disability; 39 pack year smoking history started at age 21 smoking 1 PPD and quit at age 60; on oxygen |
| 15.4 | 04/20/11 | IME X-ray/Dahhan: negative |
| 15.5 | 04/20/11 | IME/PFT/Dahhan: FEV1 (Pre) 0.87, (Post) 0.86; FVC (Pre) 2.63, (Post) 2.35; age 56; height 69.5"; 177 cm |
| 15.6 | 04/20/11 | ABG/IME/Dahhan: PCO2: 42.4, PO2 75.6; exercise not performed due to SOB and fatigue |
| 15.7 | 04/20/11 | ECG |
| 16.1 | 06/15/11 | PS&E Letter to DOL: submitting medical evidence |
| 16.2 | 02/26/11 | PFT Validation of 01/14/11 PFT/Dr. Long: study is not valid |
| 16.3 | 04/06/11 | Reading of 01/14/11 DOL chest x-ray/Dr. Wheeler: negative |
| 16.4 | 07/16/09 | Commonwealth of Kentucky Board of Medical Licensure Agreed Order/Dr. Glen R. Baker |
| 16.5 |  | CV/Dr. Sarah Long |
| 16.6 |  | B-reader Certificate/Dr. Wheeler and CV |
| 17 | 07/19/10 | Representation form |
| 18.1 |  | Copies of Certified Mail Receipts |
| 18.2 | 09/02/10 | DOL letter to claimant: regarding potentially liable operator |
| 18.3 | 09/02/10 | Notice of Claim: Aberry Coal, Inc. and Security Insurance Co. of Hartford |

| | | |
|---|---|---|
| 19.1 | 09/16/10 | PS&E letter to DOL: submitting Operator Response |
| 19.2 | 09/16/10 | Operator Response |
| 20.1 | 11/29/10 | PS&E letter DOL: submitting supplement to Operator Response |
| 20.2 | 11/29/10 | Supplemental Response to Notice of Claim |
| 21.1 | | Copies of Certified Mail Receipts |
| 21.2 | 03/18/11 | Schedule |
| 22.1 | 04/04/11 | PS&E letter to DOL: submitting response to schedule |
| 22.2 | 04/04/11 | Response to Schedule |
| 22.3 | 04/04/11 | Form CM-2790 |
| 23.1 | 06/14/11 | Letter to DOL from J. Wolfe: requesting extension of time to submit rebuttal reading of 04/20/11 XR |
| 23.2 | 06/14/11 | Letter to PS&E from J. Wolfe: requesting XR dated 04/20/11 |
| 24 | 06/30/11 | DOL letter to J. Wolfe: granting request for extension of time |
| 25.1 | | Copies of Certified Mail receipts |
| 25.2 | 09/20/11 | DOL letter to Aberry Coal: enclosing PDO Award of Benefits |
| 25.3 | 09/20/11 | PDO Award of Benefits: credited with 9-1/4 CME from 1970 through 03/30/91; claim filed 08/16/10 |
| 25.4 | | Certificate of First Payment of Benefits |
| 26.1 | 10/11/11 | PS&E letter to DOL: enclosing Contested Issues and Special Answer |

Bristol: 330368-1

A324

| | | |
|---|---|---|
| 26.2 | 10/11/11 | Contested Issues |
| 26.3 | 10/11/11 | Special Answer |
| 27.1 | | Copies of Certified Mail Receipts |
| 27.2 | 10/21/11 | DOL letter to Aberry Coal: requesting payment of benefits |
| 27.3 | | Certificate of First Payment of Benefits |
| 28.1 | 11/04/11 | PS&E letter to DOL: appealing decision and requesting hearing before OALJ |
| 28.2 | 11/04/11 | Fax Cover Sheet |
| 28.3 | 11/04/11 | Duplicate DX (28.1) |
| 29.1 | | Copies of Certified Mail Receipts |
| 29.2 | 11/22/11 | DOL letter to claimant: advising claim is being referred to OALJ for hearing |
| 29.3 | | Benefits Calculation Worksheet |
| 30.1 | 12/07/11 | List of Contested Issues |
| 30.2 | 12/07/11 | DOL letter to claimant: advising case is now being referred to OALJ for hearing |
| 31 | | List of Director's Exhibits |
| 32 | | DOL Memo to File: date of filing of claim from which formal hearing is to be held is 08/16/10; claim dated 11/04/94 is administratively closed and not subject to adjudication |
| 33 | | Hearing Exhibit Cover Sheet |

# <u>Hearing Exhibit Cover Sheet</u>

# NEW

# REGULATIONS

# CLAIM

This claim was
processed under
the Regulations
that became
effective
01/19/2001

DIRECTOR EXHIBIT
NO. _23_ CONSISTING
OF _1_ PAGES

**U.S. DEPARTMENT OF LABOR**    **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY  40353-7847**



**Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax:  (859) 498-5787**

**MEMORANDUM TO FILE**


From:        Roger Belcher
             District Director


Subject:     Claim Transmitted for Formal Hearing


Miner:       Joseph Fleming


Claim No.:   XXX-XX-0560 LM C


The date of filing for the claim on which a formal hearing is to be held is:

**Claimant:  Joseph Fleming   Date of Filing:  08/16/2010**

Applicable regulations: 20 CFR 725, 20 CFR 718, as amended.

The claim dated November 4, 1994, included as Director's Exhibit 1, and is
administratively closed and not subject to adjudication.

DIRECTOR EXHIBIT
NO ___32___ CONSISTING
OF ___1___ PAGES

A327

LIST OF DIRECTOR'S EXHIBITS

Page  1  of  2                              Miner:   Joseph Fleming
                                           Claim No.:   XXX-XX-0560 LM C

| EXHIBIT NUMBER | DATE OF RECEIPT | DESCRIPTION OF EXHIBIT | NO. OF PAGES |
|---|---|---|---|
| 1 | 11/04/94 | Closed LM 1 Claim | 1 |
| 2 | 09/02/10 | Miner's Guide to Filing Black Lung Benefits | 2 |
| 3 | 08/16/10 | CM-911, Miner's Application | 6 |
| 4 | 08/16/10 | CM-911a, Employment History | 3 |
| 5 | 08/16/10 | CM-913, Description of CME & Other Employment | 4 |
| 6 | 09/01/10 | SSA Detailed Earnings Query | 4 |
| 7 | 10/25/10 | SSA Itemized Statement of Earnings | 10 |
| 8 | 10/07/11 | CM-905, State Workers' Compensation Information | 1 |
| 9 | 10/14/10 | Marriage Certificate | 2 |
| 10 | 12/06/10 | Selection of Examining Provider | 1 |
| 11 | 11/08/10 | Letter from Clmt's Attorney w/ Medical Evidence | 5 |
| 12 | 01/14/11 | DOL Medical Evaluation | 29 |
| 13 | 01/28/11 | Clarifying Medical Opinion by Dr. Baker | 2 |
| 14 | 03/28/11 | Letter from Clmt's Attorney w/ Medical Evidence | 22 |
| 15 | 05/18/11 | Letter from RO Attorney w/ Medical Evidence | 22 |
| 16 | 06/20/11 | Letter from RO Attorney w/ Medical Evidence | 23 |
| 17 | 08/16/11 | CM-1078, Authorization - Atty Representation | 1 |
| 18 | 09/02/10 | Notice of Claim | 9 |
| 19 | 09/20/10 | Operator Response | 3 |
| 20 | 12/01/10 | Supplement to Operator Response | 3 |

DIRECTOR EXHIBIT
NO. 31 CONSISTING
OF 2 PAGES

Miner:    Joseph Fleming
Claim No.:   XXX-XX-0560 LM C

| EXHIBIT NUMBER | DATE OF RECEIPT | DESCRIPTION OF EXHIBIT | NO. OF PAGES |
|---|---|---|---|
| 21 | 03/18/11 | Schedule for Submission of Additional Evidence | 18 |
| 22 | 04/06/11 | Operator Response to Schedule | 6 |
| 23 | 06/17/11 | Letter from Claimant's Atty - Request Extension | 3 |
| 24 | 06/30/11 | Letter to Claimant's Atty Granting Extension | 1 |
| 25 | 09/20/11 | Proposed Decision & Order - Award of Benefits | 22 |
| 26 | 10/17/11 | Contested Issues from RO | 5 |
| 27 | 10/21/11 | Initial Determination | 8 |
| 28 | 11/04/11 | Appeal/Request for Formal Hearing | 3 |
| 29 | 11/22/11 | Interim Pay Benefits | 10 |
| 30 | DEC 0 7 2011 | CM-1025 Package | 15 |
| 31 | ------ | List of Director's Exhibits | 2 |
| 32 | DEC 0 7 2011 | Memorandum to File | 1 |
| 33 | ------ | Hearings Exhibit Cover Sheet | 1 |
| | | | |
| | | | |

A329

**U.S. DEPARTMENT OF LABOR**    **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY  40353-7847**



**Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax:  (859) 498-5787**

Date:    DEC 0 7 2011
Claim No: XXX-XX-0560 LM C

BLA No:

TO:             Chief Administrative Law Judge
                United States Department of Labor
                800 K Street, NW; Suite 400 N
                Washington, DC  20001-8002

FROM:           District Director, <u>Roger Belcher</u>

CASE NAME:      Joseph Fleming and Director, OWCP vs. Aberry Coal, Inc.


This matter is referred for a formal hearing in accordance with Section 422(a) of the Federal Mine Safety and Health Act of 1977 (USC 932(a)) and the Regulations pertaining thereto (20 CFR 725.421, et seq.).  As provided in 20 CFR 725.463, the hearing will be confined to those issues contested by the Director or the Employer as indicated below by an "X."  The absence of an "X" indicates that the fact asserted is not contested.  Copies of all evidence contained in the administrative files have either previously been sent to the parties or are transmitted with this notice.

| | FACTS | Contested By DIR | EMP |
|---|---|---|---|
| 1. | Timeliness. The claim was timely filed. | | |
| 2. | **Miner.** The person upon whose death or disability the claim is based is a miner. | | |
| 3. | **Post 1969 Employment.** The miner worked as a miner after December 31, 1969. | | |
| 4. | **Length of Employment.** The miner alleged working at least 18 years in or around one or more coal mines.  The available evidence in file verifies approximately 9¼ years of coal mine employment. | | X |
| 5. | **Pneumoconiosis.** The miner has pneumoconiosis as defined by the Act and the regulations. | | X |

Form CM-1025
Rev Feb 1979

DIRECTOR EXHIBIT
NO 30-1 CONSISTING
OF 15 PAGES

| FACTS | | Contested by |
|---|---|---|
| | | DIR | EMP |

| | FACTS | DIR | EMP |
|---|---|---|---|
| 6. | **Causal Relationship.** The miner's pneumoconiosis arose out of coal mine employment. | | X |
| 7. | **Total Disability.** The miner is totally disabled. | | X |
| 8. | **Partial Disability.** The miner was partially disabled due to pneumoconiosis at the time of his or her death (ACT 411(c)(5) cases only). | | |
| 9. | **Causation.** The miner's disability is due to pneumoconiosis. | | X |
| 10. | **Dependency.** The claimant has 1 dependent, his spouse Arlene, for the purpose of augmentation. | | X |
| 11. | **Survivor.** The claimant is an eligible survivor of a miner. | | |
| 12. | **Responsible Operator.** The named employer is the Responsible Operator. | | X |
| 13. | **Insurance.** The named employer has secured the payment of benefits (Sec 423). | | |
| 14. | **Subsequent Claims.** The evidence establishes a material change in conditions per 20 CFR 725.309(c), (d). | | X |
| 15. | **Modification.** The evidence establishes a change in conditions and/or that a mistake was made in the determination of any fact in the prior denial per 20 CFR 725.310. | | X |
| 16. | **Fault.** The claimant is without fault in the creation of the overpayment. | | |
| 17. | **Waiver.** Denial of waiver is against equity and good conscience and/or would defeat the purpose of the Act. | | |
| 18. | **Other Issues.** <br><br> **(A) The miner's most recent period of cumulative employment of not less than one year was with the named Responsible Operator.** <br><br> **(B) The designated Responsible Operator contests additional issues as listed in the letter dated April 4, 2011, and October 11, 2011.** <br><br> **(C) The employer can, without cause, contest those issues previously stipulated to at the informal conference, as stated in the Memorandum of Conference.** | | X |

Certification of Payment by the Trust Fund    YES  **X**    NO  _____    Beginning date of entitlement  **08/01/2010**

Number of Augmentees  _____ 1 _____

Claims Examiner: _____    Date: **DEC 0 7 2011** _____

U. S. DEPARTMENT OF LABOR
OWCP/DCMWC

<u>LIST OF PARTIES</u>

Case Name:  Joseph Fleming and Director, OWCP v. Aberry Coal, Inc.

Case Number:  XXX-XX-0560 LM C

Claimant:  Joseph Fleming  Telephone: (865) 397-9654

Address:  1226 Zirkle Road; Dandridge, TN  37725

Counsel Name:  ATTN:  Joseph E. Wolfe

Wolfe, Williams, Rutherford & Reynolds  Telephone:  (276) 679-0777

Address:  PO Box 625  Norton, VA  24273

Employer #1:  Aberry Coal, Inc.  *(CERTIIFIED MAIL  UNCLAIMED)*

Address:  PO Box 426; Pound, VA  24279

Counsel Name:  ATTN:  Michael F. Blair

Pennstuart  Telephone: (423) 793-24203

Address:  PO Box 2009 Bristol, VA  24203

Carrier Name:  Security Insurance Company of Hartford

Address:  c/o Arrowpoint Capital  3600 Arco; Corporate Drive; Charlotte, NC  28273

OTHER PARTIES:

**U. S. Department of Labor**
**Office of the Solicitor**
**618 Church Street, Suite 230**
**Nashville, TN 37219-2456**

**U. S. Department of Labor**
**Hearing and Appeals Section**
**200 Constitution Avenue; Room C-3511**
**Washington, DC  20210**

CM-1025a

A332

**U.S. DEPARTMENT OF LABOR**    **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY   40353-7847**



**Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax:  (859) 498-5787**

MINER:  Joseph Fleming
CLAIM No.:  XXX-XX-0560 LM C

DEC 0 7 2011

Joseph Fleming
1226 Zirkle Road
Dandridge, TN  37725

Dear Mr. Fleming:

Your claim for benefits under the Black Lung Benefits Act is now being referred to the Office of Administrative Law Judges for a hearing.  The purpose of this hearing is to resolve the issues that have been contested concerning your entitlement to Black Lung benefits.

The Administrative Law Judge assigned to your claim will consider the contested issues identified in the enclosed memorandum.  The hearing will be confined to those issues, unless the Administrative Law Judge agrees to hear and resolve new issue(s).

All original evidence in your administrative file is being forwarded to the Office of Administrative Law Judges and will be placed into evidence at your hearing as exhibits of the Director, Office of Workers' Compensation Programs.

We have also enclosed copies of any evidence in your case which was not previously given to you.

The Administrative Law Judge assigned to your case will notify all parties of the date, time, and place of your hearing.  Further information concerning your hearing may be obtained from:

Office of Administrative Law Judges
U. S. Department of Labor
800 K Street NW; Suite 400 N
Washington, DC  20001-8002

TELEPHONE:  (202) 693-7300

Sincerely,

Roger Belcher
District Director

cc:  All parties listed on the enclosed List of Parties
Enclosure:  Copy of file to interested parties or their representatives

*NOTE:*    *All FUTURE CORRESPONDENCE SHOULD BE SUBMITTED DIRECTLY TO THE OFFICE OF ADMINISTRATIVE LAW JUDGES AND COPIES SHOULD BE SENT TO ALL INTERESTED PARTIES.*

30.2

A333

GEO. E. PENN (1895-1957)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

JOHN B. HEMMINGS (RETIRED)

# PENN STUART

### Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING II, III
WADE W. MASSIE II, III
MICHAEL F. BLAIR III
WILLIAM M. MOFFET III
MARK L. ESPOSITO III
TIMOTHY W. GRESHAM III
H. ASHBY DICKERSON
BYRUM L. GEISLER III
RICHARD E. LADD, JR. III
W. BRADFORD STALLARD
RAMESH MURTHY III
MARK E. FRYE III
LISA FRISINA CLEMENT
ANDREW M. HANSON III
JOHN A. MARTIN III
TIMOTHY K. LOWE I, III, •

JESSE F. NARRON
CAMERON S. BELL III
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL III, •
ELIZABETH R. WALTERS OF COUNSEL III
BRUCE E. GIBSON OF COUNSEL III
JOHN R. SIGMOND III
WENDY E. WARREN
J. RANDALL BROOKS, JR. I, II, III
JOSEPH S. HALL
WESLEY B. BOGGS I, III
HOLLY N. MANCL III, IV, V, •
JOHN S. HONEYCUTT III, •
JENNIFER S. ROSE

E-Mail: mblair@pennstuart.com        Direct Dial: (423) 793-4806        Direct Fax: (423) 793-4846

April 4, 2011

RECEIVED
APR 06 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Jennifer Jackson
U. S. Department of Labor
Office of Workers' Compensation
402 Campbell Way
Mt. Sterling, KY 40353

> Re:    Joseph Fleming v Aberry Coal, Inc.
>        OWCP No.: xxx-xx-0560
>        PS&E File No.: 40-756

Dear Ms. Jackson:

Enclosed please find the Employer's Response to Schedule for Submission of Additional Evidence. We will submit evidence in compliance with the deadline established in the regulations in the Schedule. If an extension is necessary, we will inform you.

Sincerely,
**PENN, STUART & ESKRIDGE**

Michael F. Blair

MFB/RAB:mrw
Enclosure
cc:   Robert Gonder (81062144, via e-mail)
      Joseph E. Wolfe, Esq. (Via Certified Mail – RRR)

Bristol: 302862-1

A334

**UNITED STATES DEPARTMENT OF LABOR**
**EMPLOYMENT STANDARDS ADMINISTRATION**
**OFFICE OF WORKERS' COMPENSATION PROGRAMS**
**DIVISION OF COAL MINE WORKERS' COMPENSATION**

RECEIVED

APR 0 6 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

| | | |
|---|---|---|
| JOSEPH FLEMING, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | OWCP No.: XXX-XX-0560 |
| | ) | |
| ABERRY COAL, INC., | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SECURITY INSURANCE CO. OF | ) | |
| HARTFORD C/O | ) | |
| ARROWPOINT CAPITAL, | ) | |
| | ) | |
| Insurer, | ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE TO SCHEDULE

Comes now, Security Insurance Company of Hartford c/o Arrowpoint Capital, ("Insurer"), and in response to the Schedule for Submission of Additional Evidence issued in this case by the Department of Labor ("DOL"), pursuant to 20 CFR § 725.410(a), states:

### GENERAL

1.    Insurer avers that the statutes and regulations under which this claim is being prosecuted are unconstitutionally discriminatory and arbitrary. All rights are reserved to assert such defenses in all future administrative or judicial proceedings in connection with such statutes and regulations.

Bristol: 302868-1

1

A335

2.    Insurer avers that the revised regulations promulgated on January 19, 2001 are invalid and arbitrary and capricious.    All rights are reserved to assert such defenses in all future administrative or judicial proceedings in connection with such regulations.

RECEIVED

APR 06 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

### ENTITLEMENT

3.    Insurer asserts that the claim was not timely filed.

4.    Insurer asserts that the claimant was not employed as a miner as defined by the Act and regulations.

5.    Insurer denies the number of years of coal mine employment alleged by the claimant and/or found by DOL.  Employer disagrees that the claimant has 15 or more years of coal mine employment.

6.    Insurer denies that the claimant has pneumoconiosis, medical or legal.

7.    Insurer denies that the pneumoconiosis arose out of coal mine dust exposure in coal mine employment.

8.    Insurer denies that the claimant is totally disabled by a respiratory or pulmonary impairment.

9.    Insurer avers that if the claimant is disabled, it is not due to pneumoconiosis, medical or legal, or any lung disease or respiratory or pulmonary impairment arising out of coal mine employment or due to exposure to coal mine dust, while employed in the coal mine industry.

10.    Insurer denies that the findings of the claimant's or DOL's medical examiners or physicians justify a conclusion that the claimant is totally disabled by a respiratory or pulmonary impairment arising out of coal mine employment.

2

Bristol: 302868-1

11.    Insurer denies that the claimant can be found eligible for benefits without considering the claimant's ability to perform comparable and gainful work.

12.    Insurer reserves its rights to have the claimant examined by physicians of its choosing at times deemed appropriate by Insurer.

13.    Insurer denies that the claimant has any eligible dependents.

RECEIVED

APR 0 6 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

## LIABILITY

14.    Insurer denies that Aberry Coal, Inc. is the responsible operator.

15.    Insurer denies that Aberry Coal, Inc. was the last operator to employ the miner for at least one year.

16.    Insurer denies that it is financially capable of paying benefits.

17.    Insurer denies that it owes the claimant any benefits hereunder.


Respectfully submitted

**ABERRY COAL, INC.**

By Counsel


PENN, STUART & ESKRIDGE
P.O. Box 2009
BRISTOL, VA 24203

By:

Michael F. Blair


Bristol: 302868-1



RECEIVED

APR 0 6 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing has been mailed to Jennifer

Jackson, U. S. DOL, 402 Campbell Way, Mt. Sterling, KY 40353 and Joseph E. Wolfe, Esquire, P.

O. Box 625, Norton, VA 24273, on this the 4th day of April, 2011.

Michael F. Blair

Bristol: 302868-1

A338

Case: 15-3999    Document: 15    Filed: 02/24/2016    Page: 342

**OPERATOR RESPONSE TO**
**SCHEDULE FOR SUBMISSION OF**
**ADDITIONAL EVIDENCE**

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office of Workers' Compensation
Division of Coal Mine Workers' Compensation

RECEIVED
APR 06 2011

OWCP NO 4405-0058
Mt. Sterling, KY
Expires: 10-31-07

| Miner's Name: Joseph Fleming | Claimant's Name: Joseph Fleming | Claim Number: xxx-xx-0560 | |
|---|---|---|---|
| Responsible Operator's Name: Aberry Coal, Inc. | Insurer's Name:  Security Ins. Co. of Hartford c/o Arrowpoint Capital | Policy No. | |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.).  Please check appropriate boxes below.  While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim.   You will also be deemed to have contested the claimant's entitlement to benefits.

**A. Liability**

The named responsible operator:

      Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.   See attached.

  X     Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2).  Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.**

**B. Claimant's Entitlement**

The named responsible operator

      Accepts the claimant's entitlement to benefits.

  X     Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement to benefits.

| Name & Address of Firm Penn, Stuart & Eskridge P.O. Box 2009 Bristol, VA 24203 | Signature | Date April 4, 2011 |
|---|---|---|
| | Michael F. Blair Title - Attorney | |

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue, N. W., Washington, D.C. 20210.  (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.) Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number.

Form CM-2790
Rev January 2001

Abingdon: 541116-1

A339

GEO. E. PENN (1895-1965)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

JOHN B. HEMMINGS (RETIRED)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING [III]
WADE W. MASSIE [II, III]
MICHAEL F. BLAIR [III]
WILLIAM M. MOFFET [III]
MARK L. ESPOSITO [III]
TIMOTHY W. GRESHAM [III]
H. ASHBY DICKERSON
BYRUM L. GEISLER [III]
RICHARD E. LADD, JR. [III]
W. BRADFORD STALLARD
RAMESH MURTHY [III]
MARK E. FRYE [III]
LISA FRISINA CLEMENT
ANDREW M. HANSON [III]
JOHN A. MARTIN [III]
TIMOTHY K. LOWE [I, III, ●]

JESSE F. NARRON
CAMERON S. BELL [III]
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL [III, ●]
ELIZABETH R. WALTERS OF COUNSEL [III]
BRUCE E. GIBSON OF COUNSEL [III]
TEMPLE W. CABELL OF COUNSEL
JOHN R. SIGMOND [III]
WENDY E. WARREN
J. RANDALL BROOKS, JR. [I, II, III]
JOSEPH S. HALL
WESLEY B. BOGGS [I, III]
HOLLY N. MANCL [III, IV, V]
JOHN S. HONEYCUTT [III]
SEAN J. MURPHY [VI]

# PENN STUART

### Since 1890

### ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with ●

Additional Bar Memberships:
[I] KY; [II] WV; [III] TN; [IV] IL; [V] MN; [VI] DC

E-Mail: mblair@pennstuart.com        Direct Dial: (423) 793-4806        Direct Fax: (423)-793-4846

October 11, 2011

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**
U. S. Department of Labor
ATTN: Ms. Jennifer Jackson
402 Campbell Way
Mt. Sterling, KY 40353

**RECEIVED**

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

     Re:    Joseph Fleming v Aberry Coal, Inc.
             OWCP No.: XXX-XX-0560
             PS&E File No.: 40-756

Dear Ms. Jackson:

    I am enclosing the Contested Issues Form and Special Answers on behalf of the above-noted defendant and request that they be filed. By copy of this letter, I am forwarding a copy of these documents to all parties involved.

            Yours truly,

            PENN, STUART & ESKRIDGE

            Michael F. Blair

MFB/DGR/sml
Enclosure
cc:    Joseph E. Wolfe, Esq. (Cert. Mail/RRR w/enc)
       Robert Gonder (81062144 w/enc)

A340

| CONTESTED ISSUES | U.S. Department of Labor |
|---|---|
| | Employment Standards Administration |
| | Division of Coal Mine Workers' Compensation |

This information is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et. Seq.) in order to prepare the statement of contested and uncontested issues required by 20 C.F.R. § 725.421(b)(7)

OMB No.
Expires:

| Miner's Name: | Claim Number: |
|---|---|
| Joseph Fleming | XXX-XX-0560 |

## Contested Issues Regarding the Eligibility of Claimant

The operator designated as the responsible operator in the proposed decision and order issued in this claim:

| Accepts | Denies | |
|---|---|---|
| ___ | X | The miner has/had pneumoconiosis. |
| ___ | X | The miner's pneumoconiosis was caused by his coal mine employment. |
| ___ | X | The miner suffers from a totally disabling respiratory impairment. |
| ___ | X | The miner's disability is due to pneumoconiosis. |
| ___ | N/A | The miner's death was due to pneumoconiosis. |
| ___ | None | The following dependents of the claimant are qualified: |

1.   Name

     Reason if Denied

2.   Name

     Reason if Denied

3.   Name

     Reason if Denied

## Other Issues

Refer to Response to Schedule dated April 4, 2011

| Signature | Title |
|---|---|
| *[signature]* | Attorney |

| Name and Address of Firm | Date |
|---|---|
| Michael F. Blair | October 11, 2011 |
| Penn, Stuart & Eskridge | |
| P.O. Box 2009 | |
| Bristol, VA   24203 | |

RECEIVED

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Bristol: 86451-1

A341

IN THE UNITED STATES DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

| | |
|---|---|
| JOSEPH FLEMING | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) FBLC No.: XXX-XX-0560 |
| | ) |
| ABERRY COAL, INC. | ) |
| | ) |
| | ) |
| Employer. | ) |
| | ) |
| SECURITY INSURANCE COMPANY | ) |
| OF HARTFORD C/O ARROWPOINT | ) |
| CAPITAL, | ) |
| | ) |
| Insurer. | ) |

## SPECIAL ANSWER

Comes now, Aberry Coal, Inc., employer, and as its Special Answer to a claim for benefits asserted herein, states the following:

I.

Defendant denies that this claim has been timely filed.

II.

Defendant avers that the statutes and regulations under which this claim is being prosecuted are unconstitutionally discriminatory and arbitrary. All rights are reserved to assert such defenses in all future administrative or judicial proceedings in connection with such statutes and regulations.

Bristol: 321338-1

RECEIVED

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

### III.

Defendant denies that the claimant has contracted the disease of coal workers' pneumoconiosis.

### IV.

Defendant denies that claimant is totally disabled from pneumoconiosis or a respiratory or pulmonary impairment arising out of coal mining employment within the meaning of the Federal Coal Mine Health & Safety Act of 1969, as amended, and regulations thereunder.

### V.

Defendant avers that if claimant is disabled, it is due to causes unrelated to exposure to coal or rock dust while employed in the coal mining industry.

### VI.

Defendant denies that the findings of claimant's medical examiners or physicians justify a conclusion that the claimant is totally disabled by a respiratory or pulmonary impairment arising out of coal mining employment.

### VII.

Defendant disputes the claimant's eligibility for benefits because of a failure to consider the claimant's ability to perform comparable and gainful work.

### VIII.

The employer reserves its rights to have the claimant examined by a physician of the employer's choosing at a time deemed appropriate by the employer.

### IX.

Defendant denies the number of years of coal mine employment alleged.

RECEIVED

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Bristol: 321338-1

X.

Defendant denies that it owes claimant any benefits hereunder.

ABERRY COAL, INC.

By counsel

PENN, STUART & ESKRIDGE
P.O. BOX 2009
BRISTOL, VA 24203

By: _____
       MICHAEL F. BLAIR
       Counsel for Employer

### CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing document on this 11th day of October, 2011, to Joseph E. Wolfe, Esq., P.O. Drawer 625, Norton, VA 24273-0625.

_____
       MICHAEL F. BLAIR

RECEIVED

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Bristol: 321338-1

A344

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOSEPH FLEMING
1226 ZIRKLE ROAD
DANDRIDGE, TN 37725

INTERIM PAY
ALL        0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee
B. Received by ( Printed Name )    C. Date of Delivery
Joe Flaming Wester

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)        7011 1570 0000 6132 3625

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN: JOSEPH E. WOLFE
WOLFE, WILLIAMS, RUTHERFORD
    & REYNOLDS
PO BOX 625
NORTON, VA 24273

INTERIM PAY
ALL        0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee
B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

NOV 28 2011

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)        7011 1570 0000 6132 3632

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

DIRECTOR EXHIBIT
NO _____29.1_____ CONSISTING
OF _____10_____ PAGES

A345



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

7011 1570 0000 6132 3648

Postage $

*SECURITY INSURANCE COMPANY*
*OF HARTFORD*
*C/O ARROWPOINT CAPITAL*
*3600 ARCO CORPORATE DRIVE*
*CHARLOTTE, NC 28273*

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006                    See Reverse for Instructions

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

7011 1570 0000 6132 3656

*ATTN: MICHAEL F. BLAIR*
*PENNSTUART*
*PO BOX 2009*
*BRISTOL, VA 24203*

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006                    See Reverse for Instructions

**U.S. DEPARTMENT OF LABOR**          **Office of Workers' Compensation**
                                       **Division of Coal Mine Workers' Compensation**
                                       **402 Campbell Way**
                                       **Mt. Sterling, KY  40353-7847**



**November 22, 2011**               **Phone:  (859) 497-8501 or 1-800-366-4628**
                                    **Telefax:  (859) 498-5787**

                                        MINER: Joseph Fleming
                                        CLAIM NO.: XXX-XX-0560 LM C

Joseph Fleming
1226 Zirkle Road
Dandridge, TN  37725

Dear Mr. Fleming:

This refers to your claim for Federal Black Lung Benefits.

The District Director has determined that Aberry Coal, Inc. is responsible for
payment of your Federal Black Lung Benefits.  However, the coal mine operator
disagreed with our decision and requested a formal hearing before an
Administrative Law Judge.  The operator has declined to make payment to you
until the issue is finally resolved.

For that reason, your payments will be made from the Black Lung Disability
Trust Fund until your claim is finally decided.  The 1981 Amendments to the
Black Lung Benefits Act requires that the Fund's payment of benefits, for
claims filed on or after January 1, 1982, be limited to those benefits accruing
from the date of the Initial Determination.  We have authorized payments to you
effective November 2011 at the rate of $938.30 per month, as well as payment
for the month since issuance of the Initial Determination, October 2011.  You
should begin to receive your first monthly check about December 15, 2011.

The U. S. Treasury Department recommends that your Federal Black Lung benefit
payments be sent by Direct Deposit, rather than by check, to your bank
account.  With Direct Deposit, your benefit payments cannot get lost or
stolen, since there is no paper check.  Your benefit payments are sent
electronically directly from the U.S. Treasury Department to your bank
account.

If you have a bank account, or wish to open one now so that you can sign-up
for Direct Deposit, please take the enclosed LETTER TO BANK to your bank.
This letter contains information your bank will need to enroll you in Direct
Deposit.  Your bank will help you to complete a DIRECT DEPOSIT SIGN-UP FORM
(Standard Form 1199A), or its equivalent, that the bank will then send to the
Department of Labor address on the letter.  After your direct deposit sign-up
form is received from your bank, it will take approximately 60 to 90 days to
process it.  During this period your payments will be sent by check until your
direct deposit account is established.

If you do not have an account with a bank, credit union or other financial
institution, or if you choose not to enroll in EFT at this time, your monthly
benefit payments will be sent to you by check.

A347

Miner:  Joseph Fleming
Claim No.:  XXX-XX-0560 LM C
Page:  2

If you have any questions, please contact me by telephone or write to me.  The
toll-free telephone number and the address at which I can be reached are listed
at the top of page one of this letter.

If the District Director's determination of entitlement is upheld in subsequent
appellate decisions, the operator will be required to pay you all benefits
accrued during the period August 2010 through September 2011 and to reimburse
the Trust Fund for all payments made after that time. (A worksheet outlining
the computation of payments is enclosed).

These interim benefits are temporary, pending a final decision on your claim.
If it is later determined by an Administrative Law Judge, the Benefits Review
Board or a U. S. Court of Appeals that you are not eligible to receive these
payments, an overpayment will exist and you may be responsible for repayment of
all money received from the Trust Fund.

All benefits payments, based upon this determination, are subject to offset by
any Federal or State Workers' Compensation benefits received because of a total
or partial disability due to pneumoconiosis.  Benefits are reduced by an amount
equal to the workers' compensation benefits received, but not below zero.  It
is your responsibility to immediately notify this office if you have received
Federal or State benefits, or as soon as you are advised that you have been
found entitled to any Federal or State benefits described above.  The receipt
of benefits from both sources for the same time period will result in an
overpayment which must be reimbursed to the Trust Fund.

It is your responsibility to notify this office of any change which might
affect the amount of your Federal Black Lung Benefits.  A LIST OF SUCH CHANGES
IS INCLUDED ON THE ATTACHMENT TO THIS LETTER.

The next administrative action on your claim will be a formal hearing before an
Administrative Law Judge.  You will be notified of the time and place of the
hearing by the Office of Administrative Law Judges in Washington, D.C.  The
hearing will be held within 100 miles of your home; it may, however, be several
months before the hearing is held.

Sincerely,

Jennifer J. Jackson
Claims Examiner

cc:  Wolfe, Williams, Rutherford & Reynolds
     Security Insurance Company of Hartford
     PennStuart

Enclosures:    Benefits Calculation Worksheet; Direct Express Info
               SF 1199A-Direct Deposit Sign Up Form

## *IMPORTANT NOTICE*

Anyone who receives a Black Lung Benefits check personally or on behalf of another person **IS RESPONSIBLE FOR REPORTING** various events that may affect the amount of benefit payment or continued eligibility. The following events must be reported:

**FEDERAL OR STATE WORKER'S COMPENSATION BENEFITS**

Report receipt of any worker's compensation benefits. Such reports should be made promptly, and **BEFORE** disposing of any state compensation benefits paid.

ALSO report any change in the amount of State or Federal Compensation benefit.

**WORK**

Report any work or return to work by the person named on the Federal Black Lung Check.

**MARRIAGE OR DIVORCE**

Report the marriage, divorce or remarriage of the person named on the check or any dependent of that person (wife, child, parent)

**DEATH**

The death of the person named on the check or any dependent (child, wife) should be immediately reported. Any check received after the death of the person named on the check should be returned immediately to the Treasury Department address shown on the check.

**CHILDREN**

Death or marriage of a child should be reported promptly.

When a child becomes age 18, entitlement ends unless the child is disabled or attends school full time. Promptly report the following:

A child becomes disabled – at any age
A disabled child's condition improves (for instance, begins to work)
A student leaves school
A student returns to school
A student completes four years of school after high school

Failure to report events promptly could result in an overpayment which would have to be repaid.

A349

*BENEFITS CALCULATION WORKSHEET*

**Miner:** <u>Joseph Fleming</u>                    **Claim No.:** <u>XXX-XX-0560 LM C</u>

| Dependent Name | Date of Birth | Relationship | Entitlement Start | End |
|---|---|---|---|---|
| Arlene | 03/03/1948 | Wife | 08/01/2010 | Continuing |

at the following rates:

| From | To | No. of Mos. | Monthly Rate | Offset | Net Amt | Total |
|---|---|---|---|---|---|---|
| 10/2011 | 10/2011 | 1 | $938.30 | $0.00 | | $938.30 |
| | | | | | **Total** | $938.30 |

**Continuing rate of monthly benefits: $938.30 effective:  November 2011 (check to be mailed around December 15, 2011.**

**REMARKS:**     **Please note that if the District Director's determination of entitlement is upheld in subsequent appellate decisions, the operator will be required to pay you all benefits accrued during the period of August 2010 through September 2011 in the amount of $13,136.20 and to reimburse the Trust Fund for all payments made after that time.**

A.3

### *How to Receive Your Monthly Benefits Faster and More Safely*

**The Department of the Treasury recommends that all recurring federal payments be made electronically. You will get your money faster, without the worry about lost or stolen checks. You now have two options for this:**

1. To have your benefits sent directly to your bank or other financial institution, please complete the enclosed **Direct Deposit Signup Form** and return it to our office.

2. If you do not have an account with a bank, credit union or other financial institution, you can elect to receive a Direct Express Card which you can use to receive cash or make purchases. Each month, we will increase the amount available on your card by the amount of your benefits. If you choose this method to receive your benefits, please complete the enclosed **Direct Express Signup Form** and return it to this office. We will process it right away, however you may continue to receive paper checks before you receive your card and the transfer goes into effect.

**In the near future, electronic deposit will become mandatory for most beneficiaries, so don't wait until the last minute to consider one of these options. You will be glad you did!**

A351

# DIRECT EXPRESS® SIGNUP FORM

You will receive your monthly benefits faster and more safely if you elect electronic deposit. If you wish to receive a Direct Express® Debit Mastercard® card for your Black Lung Benefits **please complete the form below and return it to this office in the enclosed envelope.** We will process it right away, however you may continue to receive one or two additional Black Lung Benefit paper checks before the transfer goes into effect.

Once that transfer is complete, you will begin receiving your payment safely, on time, every time, each month on your **Direct Express®** card.

Please call our office if you have any questions.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**Please sign me up for Direct Express® and send me a Direct Express® Debit MasterCard card. I understand I will receive paper checks for my Black Lung Benefits until I receive the Direct Express® card and the transfer goes into effect.**

Full Name as it appears on Black Lung benefit check (Please Print)

_____

Address    _____

_____

City _____    State _____    ZIP Code _____

Date of Birth    _____ (mm/dd/yyyy)

Claim Number    _____ **XXX-XX-0560 LM C** _____

Phone Number    _____

Email Address (optional)    _____

Signature _____    Date _____

---

**FOR OFFICE USE ONLY**

DOL: OFFICE _____ CLAIMS EXAMINER _____ PHONE NO. _____ DATE _____

DALLAS USTEPSC: AGENT _____ DE CID _____ DATE _____

A352

Standard Form 1199A
(Rev. June 1987)
Prescribed by Treasury Department
Treasury Dept. Cir. 1076

OMB No. 1510-0007


# DIRECT DEPOSIT SIGN-UP FORM

## DIRECTIONS

- To sign up for direct deposit, the payee is to read the back of this form and fill in the information requested in Sections 1 and 2. Then take or mail this form to the financial institution. The financial institution will verify the information in Sections 1 and 2, and will complete Section 3. The completed form will be returned to the Government agency identified below.

- A separate form must be completed for each type of payment to be sent by Direct Deposit.

- The claim number and type of payment are printed on Government checks. (See the sample check on the back of this form.) This information is also stated on beneficiary/annuitant award letters and other documents from the Government agency.

- Payees must keep the Government agency informed of any address changes in order to receive important information about benefits and to remain qualified for payments.

## SECTION 1 *(TO BE COMPLETED BY PAYEE)*

**A** NAME OF PAYEE *(last, first, middle initial*

    ADDRESS *(street, route, P.O. Box, APO/FPO)*

    CITY       STATE    ZIP CODE

    TELEPHONE NUMBER
    AREA CODE

**B** NAME OF PERSON(S) ENTITLED TO PAYMENT

**C** CLAIM OR PAYROLL ID NUMBER

    Prefix        Suffix

**D** TYPE OF DEPOSITOR ACCOUNT  ☐ CHECKING  ☐ SAVINGS

**E** DEPOSITOR ACCOUNT NUMBER

**F** TYPE OF PAYMENT *(Check only one)*
- ☐ Social Security
- ☐ Supplemental Security Income
- ☐ Railroad Retirement
- ☐ Civil Service Retirement (OPM)
- ☐ VA Compensation or Pension

- ☐ Fed Salary / Mil. Civilian Pay
- ☐ Mil. Active _____
- ☐ Mil. Retir _____
- ☐ Mil. Survivor _____
- ☐ Other _____
               *(specify)*

**G** THIS BOX FOR ALLOTMENT OF PAYMENT ONLY *(if applicable)*

| TYPE | AMOUNT |
|---|---|
| | |

### PAYROLL/JOINT PAYEE CERTIFICATION

I certify that I am entitled to the payment identified above, and that I have read and understood the back of this form. In signing this form I authorize my payment to be sent to the financial institution named below to be deposited to the designated account.

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |

### JOINT ACCOUNT HOLDERS' CERTIFICATION *(optional)*

I certify that I have read and understood the back of this form, including the SPECIAL NOTICE TO JOINT HOLDERS.

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |

## SECTION 2 *(TO BE COMPLETED BY PAYEE OR FINANCIAL INSTITUTION)*

| GOVERNMENT AGENCY NAME | GOVERNMENT AGENCY ADDRESS |
|---|---|
| U. S. Department of Labor<br>Office of Workers' Compensation<br>Division of Coal Mine Workers' Compensation | Owcp/Dcmwc<br>402 Campbell Way<br>Mt. Sterling, KY 40353-7847 |

## SECTION 3 *(TO BE COMPLETED BY FINANCIAL INSTITUTION)*

NAME AND ADDRESS OF FINANCIAL INSTITUTION

ROUTING NUMBER             CHECK DIGIT

DEPOSITOR ACCOUNT TITLE

### FINANCIAL INSTITUTION CERTIFICATION

I confirm the identity of the above-named payee(s) and the account number and title. As representative of the above-named institution, I certify that the financial institution agrees to receive and deposit the payment identified above in accordance with 31 CFR Parts 240, 209 and 210.

| PRINT OR TYPE REPRESENTATIVE'S NAME | SIGNATURE OF REPRESENTATIVE | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| | | | |

Financial institutions should refer to the GREEN BOOK for further instructions.

**THE FINANCIAL INSTITUTION SHOULD MAIL THE COMPLETED FORM TO THE GOVERNMENT AGENCY IDENTIFIED ABOVE.**

NSN 7540-01-058-0224

1199-207

A353

SF 1199 (Back)

---

**BURDEN ESTIMATE STATEMENT**

The estimated average burden associated with this collection of information is 10 minutes per respondent or record-keeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to the Financial Management Service, Facilities Management Division, Property & Supply Section, Room B-101, 3700 East-West Highway, Hyattsville, MD 20782 or the Office of Management and Budget, Paperwork Reduction Project (1510-0007), Washington, D.C. 20503.

---

**PLEASE READ THIS CAREFULLY**

All information on this form, including the individual claim number, is required under 31 USC 3322, 31 CFR 209 and/or 210. The information is confidential and is needed to prove entitlement to payments. The information will be used to process payment data from the Federal agency to the financial institution and/or its agent. Failure to provide the requested information may affect the processing of this form and may delay or prevent the receipt of payments through the Direct Deposit/Electronic Funds Transfer Program.

## INFORMATION FOUND ON CHECKS

Most of the information needed to complete boxes A, C, and F in Section 1 is printed on your government check:



Ⓐ Be sure that the payee's name is written exactly as it appears on the check. Be sure current address is shown.

Ⓒ Claim numbers and suffixes are printed here on checks beneath the date for the type of payment shown here. Check the Green Book for the location of prefixes and suffixes for other types of payments.

Ⓕ Type of payment is printed to the left of the amount.

## SPECIAL NOTICE TO JOINT ACCOUNT HOLDERS

Joint account holders should immediately advise both the Government agency and the financial institution of the death of a beneficiary. Funds deposited after the date of death or ineligibility, except for salary payments, are to be returned to the Government agency. The Government agency will then make a determination regarding survivor rights, calculate survivor benefit payments, if any, and begin payments.

## CANCELLATION

The agreement represented by this authorization remains in effect until canceled by the recipient by notice to the Federal agency or by the death or legal incapacity of the recipient. Upon cancellation by the recipient, the recipient should notify the receiving financial institution that he/she is doing so.

The agreement represented by this authorization may be cancelled by the financial institution by providing the recipient a written notice 30 days in advance of the cancellation date. The recipient must immediately advise the Federal agency if the authorization is cancelled by the financial institution. The financial institution cannot cancel the authorization by advice to the Government agency.

## CHANGING RECEIVING FINANCIAL INSTITUTIONS

The payee's Direct Deposit will continue to be received by the selected financial institution until the Government agency is notified by the payee that the payee wishes to change the financial institution receiving the Direct Deposit. To effect this change, the payee will complete the new SF 1199A at the newly selected financial institution. It is recommended that the payee maintain accounts at both financial institutions until the transition is complete, i.e. after the new financial institution receives the payee's Direct Deposit payment.

## FALSE STATEMENTS OR FRAUDULENT CLAIMS

Federal law provides a fine of not more than $10,000 or imprisonment for not more than five (5) years or both for presenting a false statement or making a fraudulent claim.

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

JOHN B. HEMMINGS (RETIRED)

# PENNSTUART
Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with °

Additional Bar Memberships:
¹ KY; ² WV; ³ TN; ⁴ IL; ⁵ MN; ⁶ DC

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING ³
WADE W. MASSIE ², ³
MICHAEL F. BLAIR ³
WILLIAM M. MOFFET ³
MARK L. ESPOSITO ³
TIMOTHY W. GRESHAM ³
H. ASHBY DICKERSON
BYRUM L. GEISLER ³
RICHARD E. LADD, JR. ³
W. BRADFORD STALLARD
RAMESH MURTHY ³
MARK E. FRYE ³
LISA FRISINA CLEMENT
ANDREW M. HANSON ³
JOHN A. MARTIN ³
TIMOTHY K. LOWE ¹, ³, °

JESSE F. NARRON
CAMERON S. BELL ³
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL, °
ELIZABETH R. WALTERS OF COUNSEL ³
BRUCE E. GIBSON OF COUNSEL ³
TEMPLE W. CABELL OF COUNSEL
JOHN R. SIGMOND ³
WENDY E. WARREN
J. RANDALL BROOKS, JR. ¹, ³, ³
JOSEPH S. HALL
WESLEY B. BOGGS ¹, ³
HOLLY N. MANCL ³, ⁴, ⁵
JOHN S. HONEYCUTT ³
SEAN J. MURPHY ⁶

E-Mail: mblair@pennstuart.com       Direct Dial: (423) 793-4806       Direct Fax: (423)-793-4846
November 4, 2011

**VIA FAX 859-498-5787 and REGULAR MAIL**
U. S. Department of Labor
ATTN: Ms. Jennifer Jackson
402 Campbell Way
Mt. Sterling, KY 40353

    Re:    Joseph Fleming v Aberry Coal, Inc.
            OWCP No.: XXX-XX-0560
            PS&E File No.: 40-756

Dear Ms. Jackson:

    I am in receipt of your correspondence to Aberry Coal in this matter requesting that payments be made. The employer has challenged the award of benefits and the matter will be referred to the Office of Administrative Law Judges for a formal hearing; accordingly, no payments will be made.

    Yours truly,

    PENN, STUART & ESKRIDGE

    *Michael F. Blair*

    Michael F. Blair

MFB/lld
cc:    Joseph Wolfe, Esq.
       Mr. Robert Gonder (81062144)

Bristol: 323759-1

**DIRECTOR EXHIBIT**
NO. 28.1 CONSISTING
OF 3 PAGES

# PENNSTUART®

PENN, STUART & ESKRIDGE, P.C.
ATTORNEYS AT LAW

POST OFFICE BOX 2009
BRISTOL, VIRGINIA 24203

804 ANDERSON STREET
BRISTOL, TENNESSEE 37620

TELEPHONE (423) 793-4800
FAX (423) 793-4900

## FACSIMILE TRANSMISSION

Please deliver the following pages to:

Name: _Ms. Jennifer Jackson_

Organization: _DOL_

Fax Number: _859-498-5787_

From: _Michael F Blair Esq_

File
Reference: _Joseph Fleming   40-756_

Number of pages to follow: _1_

Date: _11/4/11_

Message: _____
_____
_____

Sent by: _____  Time: _____  Date: _____

*This communication is privileged and confidential and is intended for the recipient named above. If you are not the recipient, you are hereby notified that any other dissemination or use of this information is strictly prohibited. If this communication is misdirected, or there are difficulties in transmission, please call the telephone number given above.*

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING III
WADE W. MASSIE II, III
MICHAEL F. BLAIR III
WILLIAM M. MOFFET III
MARK L. ESPOSITO III
TIMOTHY W. GRESHAM III
H. ASHBY DICKERSON
BYRUM L. GEISLER III
RICHARD E. LADD, JR. III
W. BRADFORD STALLARD
RAMESH MURTHY III
MARK E. FRYE III
LISA FRISINA CLEMENT
ANDREW M. HANSON III
JOHN A. MARTIN III
TIMOTHY K. LOWE I, III, •

# PENNSTUART

### Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN; VI DC

JOHN B. HEMMINGS (RETIRED)

JESSE F. NARRON
CAMERON S. BELL III
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL III, •
ELIZABETH R. WALTERS OF COUNSEL
BRUCE E. GIBSON OF COUNSEL III
TEMPLE W. CABELL OF COUNSEL
JOHN R. SIOMOND III
WENDY E. WARREN
J. RANDALL BROOKS, JR. I, II, III
JOSEPH S. HALL
WESLEY B. BOGGS I, III
HOLLY N. MANCL III, IV, V
JOHN S. HONEYCUTT III
SEAN J. MURPHY VI

E-Mail: mblair@pennstuart.com

Direct Dial: (423) 793-4806

November 4, 2011

Direct Fax: (423) 793-4846

**VIA FAX 859-498-5787 and REGULAR MAIL**
U. S. Department of Labor
ATTN:  Ms. Jennifer Jackson
402 Campbell Way
Mt. Sterling, KY 40353

RECEIVED
NOV 07 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

Re:    Joseph Fleming v Aberry Coal, Inc.
       OWCP No.:  XXX-XX-0560
       PS&E File No.:  40-756

Dear Ms. Jackson:

I am in receipt of your correspondence to Aberry Coal in this matter requesting that payments be made.  The employer has challenged the award of benefits and the matter will be referred to the Office of Administrative Law Judges for a formal hearing; accordingly, no payments will be made.

Yours truly,

PENN, STUART & ESKRIDGE

Michael F. Blair

MFB/lld
cc:    Joseph Wolfe, Esq.
       Mr. Robert Gonder (81062144)

Bristol: 323759-1

28.3

A357

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

JOSEPH FLEMING
1226 ZIRKLE ROAD
DANDRIDGE, TN 37725

ID/CW          0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  Joseph Fleming          ☐ Agent
                           ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
   Joseph Fleming              102411
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)

2. Article Number
   (Transfer from service label)     7010 3090 0002 9804 0788

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

ATTN: JOSEPH E. WOLFE
WOLFE, WILLIAMS, RUTHERFORD
    & REYNOLDS
PO BOX 625
NORTON, VA 24273

ID/CW          0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  Walt Graham          ☐ Agent
                        ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
   OCT 24 2011
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No
                                24273

NORTON, VA

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)     7010 3090 0002 9804 0795

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

DIRECTOR EXHIBIT
NO. 27.1 CONSISTING
OF 8 PAGES

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SECURITY INSURANCE COMPANY
OF HARTFORD
C/O ARROWPOINT CAPITAL
3600 ARCO CORPORATE DRIVE
CHARLOTTE, NC 28273

ID/JJ        0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X    Jack MacGregor        ☐ Agent
     Milemarker Logistics   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7010 3090 0002 9804 0801

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1549

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN: MICHAEL F. BLAIR
PENNSTUART
PO BOX 2009
BRISTOL, VA 24203

ID/JJ        0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X    ☐ Agent
     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 10/28/2011

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7010 3090 0002 9804 0818

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1549

A359

**U.S. DEPARTMENT OF LABOR**

Office of Workers' Compensation
Division of Coal Mine Workers' Compensation
402 Campbell Way
Mt. Sterling, KY  40353-7847



October 21, 2011

Phone:  (859) 497-8501 or 1-800-366-4628
Telefax:  (859) 498-5787

*INITIAL DETERMINATION*

MINER:  Joseph Fleming
CLAIM NO.:  XXX-XX-0560 LM C

Aberry Coal, Inc.
PO Box 426
Pound, VA 24279

Dear Sir/Madam:

This letter refers to the claim filed on behalf of the above named claimant under the Black Lung Benefits Act.

As set forth in the Proposed Decision and Order issued on September 20, 2010, we have initially determined that the claimant is eligible for benefits under the Act and that such benefits are payable by the responsible operator/carrier. Accordingly, Aberry Coal, Inc. should begin payment of benefits within thirty (30) days of the date of this letter and, upon making the first payment, immediately return the enclosed "Notice of First Payment" (CM-906) and the executed "Agreement to Pay Benefits" (CM-941) to this office.

Should you fail to begin payment to the claimant, benefits will be paid by the Black Lung Disability Trust Fund in accordance with 20 CFR 725.420(a).  If you are subsequently determined to be liable for the claim, you will be required to reimburse the Fund for all payments made up to that time.  In addition, in accordance with 725.420(c) you will be liable for such penalties and interest as are deemed appropriate together with the payment of the claimant's attorney fee, if any.

You may contact me at telephone number (800)366-4628 if you have any questions.

Sincerely,

*Roger Belcher/da*

Roger Belcher
District Director

cc:  Joseph Fleming
     Wolfe, Williams, Rutherford & Reynolds
     Security Insurance Company of Hartford
     PennStuart

Enclosures:     CM-906
                CM-941
                CM-971d
                Bill History Printout

27.2

CERTIFICATE OF FIRST PAYMENT OF BENEFITS      **U.S. DEPARTMENT OF LABOR**
OFFICE OF WORKERS' COMPENSATION PROGRAMS

NOTE: Within ten days after the first payment is made, file the original of this certificate with the initiating office. Send a copy to the person receiving benefits. The Black Lung Benefits Act (30 U.S.C. 901 et.seq) requires this report. Failure to report can result in a civil penalty of not more than $500 for each failure or refusal.

| | |
|---|---|
| 1. Name of Disabled or Deceased Coal Miner<br><br>**Joseph Fleming** | 2. Miner's Claim Number<br><br>**XXX-XX-0560 LM C** |

3. Name and Address of Person to Whom the Check is Made Payable (The Payee)
**Joseph Fleming**
**1226 Zirkle Road**
**Dandridge, TN 37725**

| | |
|---|---|
| 4. Name and Address of Coal Mine Operator<br>**Aberry Coal, Inc.**<br>**PO Box 426**<br>**Pound, VA 24279** | Name and Address of Insurance Carrier<br>**Security Insurance Company of Hartford**<br>**c/o Arrowpoint Capital**<br>**3600 Arco Corporate Drive**<br>**Charlotte, NC 28273** |

6. Name(s) of Dependent(s) of Disabled or Deceased Coal Miner

    **Arlene**

7. a. Last date DOL will issue a benefit check _____
                                     (month/day/year)

  b. Responsible Operator to reimburse the Trust Fund (Interim Benefits) for   _____ (dates)

                                                      $ _____ (amount)

  c. Responsible Operator to begin payment for         *October 2011* (month/year)

                                                       $     *$938.30* (amount)

  d. Responsible Operator to pay lump sum to claimant     *Aug. 2010 - Sept. 2011* (dates)

                                                         $    *$13,136.20* (amount)

  e. Responsible Operator to reimburse the Trust Fund for:   medical costs $    *$1,508.09* (amount)

                                                 interest   $ _____ (amount)

**X**   You will be notified of interest at a future date.

☐   I hereby certify that **I AGREE** with the information contained in Item 7 of this form and that payments have been initiated as indicated above.

☐   I hereby certify that **I DISAGREE** with the information contained in ITEM 7 of this form but have initiated benefits.

_____       _____
Signature of Person Authorized to Sign for Coal Mine Operator or Insurance Carrier      Date

_____
Print Name and Title

_____       _____
Address                                            Phone Number

CM-906
Rev. 10/83

27.3

**U.S. DEPARTMENT OF LABOR**     **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY  40353-7847**



**Phone:    (859) 497-8501 or 1-800-366-4628**
**Telefax:  (859) 498-5787**

In the matter of the claim for benefits
under the Black Lung Benefits Act

**AGREEMENT TO PAY BENEFITS**

Claim No.: XXX-XX-0560 LM C

Joseph Fleming
_____
Claimant


Aberry Coal, Inc.
_____
Coal Mine Operator


Security Insurance Company of Hartford
_____
Insurance Carrier

The above-named Coal Mine Operator and/or Insurance Carrier agrees to pay
benefits and other costs and expenses pursuant to the Black Lung Benefits Act
(30 U.S.C., 931 et seq.), based upon the finding by the Department of Labor of
the claimant's eligibility to be paid benefits on his own behalf and on behalf
of the following dependents:

   *Arlene*

The Coal Mine Operator further agrees to begin to pay benefits within fourteen
(14) days from the date of this agreement, the first payment to include
benefits which have accrued from August 1, 2010, with subsequent payment of
benefits to be made regularly each month thereafter and to reimburse the Black
Lung disability Trust Fund for any benefit payments made and any medical
development expenses incurred.

The Coal Mine Operator understands and agrees that this document may be the
basis for the issuance of an Award of Benefits and Order to Pay benefits in
this claim.  Notice of First Payment of Payments (CM-906) should follow this
agreement.

_____
Signature of Authorized Officer        Date


_____
Name and Title

CM-941
Rev. Oct. 1978



## TABLE OF MONTHLY BLACK LUNG BENEFIT RATES

| | PRIMARY | +1 | +2 | +3 |
|---|---|---|---|---|
| 07/01/73 – 09/30/73 | $ 169.80 | $ 254.70 | $ 297.10 | $ 339.50 |
| 10/01/73 – 09/30/74 | 177.60 | 266.40 | 310.80 | 355.20 |
| 10/01/74 – 09/30/75 | 187.40 | 281.10 | 328.00 | 374.80 |
| 10/01/75 – 09/30/76 | 196.80 | 295.20 | 344.40 | 393.50 |
| 10/01/76 – 09/30/77 | 205.40 | 308.10 | 359.50 | 410.80 |
| 10/01/77 – 09/30/78 | 219.90 | 329.80 | 384.80 | 439.70 |
| 10/01/78 – 09/30/79 | 232.00 | 348.00 | 405.90 | 463.90 |
| 10/01/79 – 09/30/80 | 254.00 | 381.00 | 444.50 | 508.00 |
| 10/01/80 – 09/30/81 | 279.80 | 419.60 | 489.60 | 559.50 |
| 10/01/81 – 09/30/82 | 293.20 | 439.80 | 513.10 | 586.40 |
| 10/01/82 – 12/31/83 | 304.90 | 457.40 | 533.60 | 609.80 |
| 01/01/84 – 12/31/84* | 317.10 | 475.60 | 554.90 | 634.20 |
| 01/01/85 – 12/31/86 | 328.20 | 492.30 | 574.30 | 656.40 |
| 01/01/87 – 12/31/87 | 338.00 | 507.00 | 591.50 | 676.00 |
| 01/01/88 – 12/31/88 | 344.80 | 517.20 | 603.40 | 689.50 |
| 01/01/89 – 12/31/89 | 358.90 | 538.40 | 628.10 | 717.80 |
| 01/01/90 – 12/31/90 | 371.80 | 557.70 | 650.70 | 743.60 |
| 01/01/91 – 12/31/91 | 387.10 | 580.60 | 677.40 | 774.10 |
| 01/01/92 – 12/31/92 | 403.30 | 605.00 | 705.80 | 806.60 |
| 01/01/93 – 12/31/93 | 418.20 | 627.30 | 731.90 | 836.40 |
| 01/01/94 – 12/31/95 | 427.40 | 641.10 | 748.00 | 854.80 |
| 01/01/96 – 12/31/96 | 435.10 | 652.70 | 761.50 | 870.20 |
| 01/01/97 – 12/31/97 | 445.10 | 667.70 | 779.00 | 890.20 |
| 01/01/98 – 12/31/98 | 455.40 | 683.10 | 796.90 | 910.70 |
| 01/01/99 – 02/31/99 | 469.50 | 704.30 | 821.60 | 939.00 |
| 01/01/00 – 12/31/00 | 487.40 | 731.00 | 852.80 | 974.70 |
| 01/01/01 – 12/31/01 | 500.50 | 750.80 | 875.90 | 1001.00 |
| 01/01/02 – 12/31/02 | 518.50 | 777.80 | 907.40 | 1037.00 |
| 01/01/03 – 12/31/03 | 534.60 | 801.90 | 935.50 | 1069.20 |
| 01/01/04 – 12/31/04 | 549.00 | 823.50 | 960.80 | 1098.00 |
| 01/01/05 – 12/31/05 | 562.80 | 844.10 | 984.80 | 1125.50 |
| 01/01/06 – 12/31/06 | 574.60 | 861.80 | 1005.50 | 1149.10 |
| 01/01/07 – 12/31/07 | 584.40 | 876.50 | 1022.60 | 1168.70 |
| 01/01/08 – 12/31/08 | 599.00 | 898.40 | 1048.10 | 1197.90 |
| 01/01/09 – 12/31/09 | 616.30 | 924.50 | 1078.50 | 1232.60 |
| 01/01/10 – | 625.60 | 938.30 | 1094.70 | 1251.10 |

*These benefit rates include the additional one-half percent increase that was granted retroactive to January 1, 1984. The following rates were in effect prior to the retroactive payments:

| 01/01/84 - 06/30/84 | $315.60 | $473.30 | $552.20 | $631.10 |
|---|---|---|---|---|

Form CM-971d
Rev. January 2009

**BENEFITS CALCULATION WORKSHEET**

**Miner:** _____ Joseph Fleming _____    **Claim No.:** _____ XXX-XX-0560 LM C _____

| Dependent Name | Date of Birth | Relationship | Entitlement Start | Entitlement End |
|---|---|---|---|---|
| Arlene | 03/03/1948 | Wife | 08/01/2010 | Continuing |

| From | To | No. Of Mos. | Monthly Rate | Offset | Total |
|---|---|---|---|---|---|
| 08/2010 | 12/2010 | 5 | $938.30 | $0.00 | $4,691.50 |
| 01/2011 | 09/2011 | 9 | $938.30 | $0.00 | $8,444.70 |

**Total** ▓$13,136.20▓

**Remarks:**    Continuing rate of monthly benefits: $938.30 effective October 2011
and payable on November 15, 2011.

J

REPORT DATE:   10/20/2011

REPORT ID:        CBPS 02

U.S. DEPARTMENT OF LABOR

DIVISION OF COAL MINE WORKERS COMPENSATION

CBPS BILL HISTORY REPORT

| Provider ID | Provider Name | Original Recip ID | Original Recip Name | Trans Control No. | Total Charge | Paid Amount | First DOS | Last DOS |
|---|---|---|---|---|---|---|---|---|
| 019972500 | MICHOS,  JOHN  A | 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 | FLEMING JOSEPH | 01104291355310490 | $25.00 | $25.00 | 01/28/2011 | 01/28/2011 |
| 020488600 | GLEN RAY BAKER JR PSC | 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 | FLEMING JOSEPH | 01104591227313736 | $155.50 | $155.50 | 01/28/2011 | 01/28/2011 |
| 019360900 | BARRETT,  PETER  J. | 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 | FLEMING JOSEPH | 01103591269309073 | $10.00 | $10.00 | 01/25/2011 | 01/25/2011 |
| 999999991 | CLAIMANT REIMBURSEMENT DEFAULT | 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 | FLEMING JOSEPH | 01103191218309996 | $123.42 | $123.42 | 01/14/2011 | 01/14/2011 |
| 020488600 | GLEN RAY BAKER JR PSC | 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 | FLEMING JOSEPH | 01103191220308893 | $1,420.00 | $1,194.17 | 01/14/2011 | 01/14/2011 |

Total Paid Amount:          $1,508.09

*This report contains Privacy Act protected data and is for Official Use Only.  Do not copy or distribute*

A365

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING III
WADE W. MASSIE II, III
MICHAEL F. BLAIR III
WILLIAM M. MOFFET III
MARK L. ESPOSITO III
TIMOTHY W. GRESHAM III
H. ASHBY DICKERSON
BYRUM L. GEISLER III
RICHARD E. LADD, JR. III
W. BRADFORD STALLARD
RAMESH MURTHY III
MARK E. FRYE III
LISA FRISINA CLEMENT
ANDREW M. HANSON III
JOHN A. MARTIN III
TIMOTHY K. LOWE I, III, *

JOHN B. HEMMINGS (RETIRED)

JESSE F. NARRON
CAMERON S. BELL III
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL III, *
ELIZABETH R. WALTERS OF COUNSEL III
BRUCE E. GIBSON OF COUNSEL
TEMPLE W. CABELL OF COUNSEL
JOHN R. SIGMOND III
WENDY E. WARREN
J. RANDALL BROOKS, JR. I, II, III
JOSEPH S. HALL
WESLEY B. BOGGS I, III
HOLLY N. MANCL III, IV, V
JOHN S. HONEYCUTT III
SEAN J. MURPHY VI

## PENNSTUART

Since 1890

ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with *

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN; VI DC

E-Mail: mblair@pennstuart.com    Direct Dial: (423) 793-4806    Direct Fax: (423)-793-4846

October 11, 2011

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**
U. S. Department of Labor
ATTN:  Ms. Jennifer Jackson
402 Campbell Way
Mt. Sterling, KY 40353

**RECEIVED**

**OCT 1 7 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

    Re:   Joseph Fleming v Aberry Coal, Inc.
          OWCP No.:  XXX-XX-0560
          PS&E File No.:  40-756

Dear Ms. Jackson:

    I am enclosing the Contested Issues Form and Special Answers on behalf of the above-noted defendant and request that they be filed.  By copy of this letter, I am forwarding a copy of these documents to all parties involved.

    Yours truly,

PENN STUART & ESKRIDGE

Michael F. Blair

MFB/DGR/sml
Enclosure
cc:    Joseph E. Wolfe, Esq. (Cert. Mail/RRR w/enc)
       Robert Gonder (81062144 w/enc)

**DIRECTOR EXHIBIT**
NO. 26-1 CONSISTING
OF 5 PAGES

A366

| CONTESTED ISSUES | **U.S. Department of Labor** |
| --- | --- |
| | Employment Standards Administration |
| | Division of Coal Mine Workers' Compensation |

| This information is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et. Seq.) in order to prepare the statement of contested and uncontested issues required by 20 C.F.R. § 725.421(b)(7) | OMB No.<br>Expires: |
| --- | --- |

| Miner's Name:<br><br>Joseph Fleming | Claim Number:<br><br>XXX-XX-0560 |
| --- | --- |

## Contested Issues Regarding the Eligibility of Claimant

The operator designated as the responsible operator in the proposed decision and order issued in this claim:

| Accepts | Denies | |
| --- | --- | --- |
| ___ | **X** | The miner has/had pneumoconiosis. |
| ___ | **X** | The miner's pneumoconiosis was caused by his coal mine employment. |
| ___ | **X** | The miner suffers from a totally disabling respiratory impairment. |
| ___ | **X** | The miner's disability is due to pneumoconiosis. |
| ___ | **N/A** | The miner's death was due to pneumoconiosis. |
| ___ | **None** | The following dependents of the claimant are qualified: |

1. Name

   Reason if Denied

2. Name

   Reason if Denied

3. Name

   Reason if Denied

**Other Issues**

Refer to Response to Schedule dated April 4, 2011

| Signature | Title |
| --- | --- |
| *[signature]* | Attorney |

| Name and Address of Firm | Date |
| --- | --- |
| Michael F. Blair<br>Penn, Stuart & Eskridge<br>P.O. Box 2009<br>Bristol, VA  24203 | October 11, 2011 |

**RECEIVED**

**OCT 1 7 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

Bristol: 86451-1

A367

IN THE UNITED STATES DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

| | |
|---|---|
| JOSEPH FLEMING | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) FBLC No.: XXX-XX-0560 |
| | ) |
| ABERRY COAL, INC. | ) |
| | ) |
| | ) |
| Employer. | ) |
| | ) |
| SECURITY INSURANCE COMPANY | ) |
| OF HARTFORD C/O ARROWPOINT | ) |
| CAPITAL, | ) |
| | ) |
| Insurer. | ) |

## SPECIAL ANSWER

Comes now, Aberry Coal, Inc., employer, and as its Special Answer to a claim for benefits asserted herein, states the following:

I.

Defendant denies that this claim has been timely filed.

II.

Defendant avers that the statutes and regulations under which this claim is being prosecuted are unconstitutionally discriminatory and arbitrary. All rights are reserved to assert such defenses in all future administrative or judicial proceedings in connection with such statutes and regulations.

RECEIVED

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Bristol: 321338-1

A368

**III.**

Defendant denies that the claimant has contracted the disease of coal workers' pneumoconiosis.

**IV.**

Defendant denies that claimant is totally disabled from pneumoconiosis or a respiratory or pulmonary impairment arising out of coal mining employment within the meaning of the Federal Coal Mine Health & Safety Act of 1969, as amended, and regulations thereunder.

**V.**

Defendant avers that if claimant is disabled, it is due to causes unrelated to exposure to coal or rock dust while employed in the coal mining industry.

**VI.**

Defendant denies that the findings of claimant's medical examiners or physicians justify a conclusion that the claimant is totally disabled by a respiratory or pulmonary impairment arising out of coal mining employment.

**VII.**

Defendant disputes the claimant's eligibility for benefits because of a failure to consider the claimant's ability to perform comparable and gainful work.

**VIII.**

The employer reserves its rights to have the claimant examined by a physician of the employer's choosing at a time deemed appropriate by the employer.

**IX.**

Defendant denies the number of years of coal mine employment alleged.

Bristol: 321338-1

RECEIVED
OCT 1 7 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

A369

3

## X.

Defendant denies that it owes claimant any benefits hereunder.


ABERRY COAL, INC.

By counsel

PENN, STUART & ESKRIDGE
P.O. BOX 2009
BRISTOL, VA 24203

By: _____
        MICHAEL F. BLAIR
        Counsel for Employer


## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing document on this 11th

day of October, 2011, to Joseph E. Wolfe, Esq., P.O. Drawer 625, Norton, VA 24273-0625.


_____
        MICHAEL F. BLAIR

RECEIVED

OCT 1 7 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Bristol: 321338-1

A370



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOSEPH FLEMING
1226 ZIRKLE ROAD
DANDRIDGE, TN 37725

FBO/SJS    Q560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                  9-22-11

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7011 0470 0000 7300 5902

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN: JOSEPH E. WOLFE
WOLFE, WILLIAMS, RUTHERFORD
& REYNOLDS
PO BOX 625
NORTON, VA 24273

FBO/SJS    Q560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  Arthur M. Rosner   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                  SEP 23 2011
                                  NORTON
                                  24273

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7011 0470 0000 7300 5919

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

DIRECTOR EXHIBIT
NO. 25.1 CONSISTING
OF 22 PAGES

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**ATTN: MICHAEL F. BLAIR**
**PENNSTUART**
**PO BOX 2009**
**BRISTOL, VA 24203**

PDO/TS        0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by ( Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

SEP 24 2011   BRISTOL VA 24203

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)      7011 0470 0000 7300 5940

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**SECURITY INSURANCE COMPANY**
**OF HARTFORD**
**C/O ARROWPOINT CAPITAL**
**3600 ARCO CORPORATE DRIVE**
**CHARLOTTE, NC 28273**

PDO/TS        0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by ( Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

SEP 22 2011

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)      7011 0470 0000 7300 5933

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**U.S. DEPARTMENT OF LABOR**

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY  40353-7847**



September 20, 2011

**Phone:    (859) 497-8501 or 1-800-366-4628**
**Telefax:  (859) 498-5787**

MINER:  Joseph Fleming
CLAIM NO.:  XXX-XX-0560 LM C

Aberry Coal Inc.
PO Box 426
Pound, VA 24279

Dear Sir/Madam:

If you agree with the Proposed Decision and Order awarding benefits, you should have an authorized officer of your organization sign and return to this Office the Agreement to Pay Benefits (Form CM-941).  Payment of benefits, in accordance with the rates shown in the Proposed Decision and Order, should begin by the 15th of the month following the month for which the benefits are payable and should include any accrued benefit amount, in accordance with the rates shown in the Proposed Decision and Order.

Benefits shall be considered due after the issuance of an effective order requiring the payment of benefits by the District Director.  The Proposed Decision and Order becomes effective on the thirtieth (30th) day after issuance if no party timely requests revision or a hearing.

If you wish to contest the Proposed Decision and Order, you must file a written request for revision or request a hearing within 30 days after the date of issuance of the Proposed Decision and Order.  You must specify the findings and conclusions with which you disagree.  The record will remain open for thirty (30) days unless extended for good cause by the District Director.

If you fail to respond within 30 days, the Proposed Decision and Order will become a final Decision and Order.  All rights to further proceedings with respect to the claim shall be considered waived, except as provided in 20 CFR 725.310.

Sincerely,

Jennifer Jackson
Claims Examiner

cc:    Joseph Fleming
       Aberry Coal, Inc.
       Wolfe, Williams, Rutherford & Reynolds
       Security Insurance Company of Hartford
       Pennstuart

Enclosures:    CM-906, Notice of First Payment of Benefits
               CM-941, Agreement to Pay Benefits
               CM-971d, Benefit Rate Table
               Report of Earnings by Bureau of Labor Statistics
               Bill Printout

25.2

**U.S. DEPARTMENT OF LABOR**      **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY   40353-7847**

**Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax:   (859) 498-5787**



| | |
|---|---|
| In the Matter of the Claim for Benefits Under the Black Lung Act | |
| Joseph Fleming<br>Claimant | **PROPOSED DECISION AND ORDER**<br>**Award of Benefits-Responsible Operator** |
| v. | MINER: Joseph Fleming<br>CLAIM NO.:  XXX-XX-0560 LM C |
| Aberry Coal Inc.<br>Responsible Operator | |
| and | |
| Director, Office of Workers' Compensation Programs | |

Such development, examination, investigation, and review as is deemed necessary pursuant to the Black Lung Benefits Act having been completed and duly considered, the District Director makes the following:

<u>FINDINGS OF FACT AND CONCLUSION OF LAW</u>

1. That Joseph Fleming, born September 11, 1945, hereinafter referred to as the miner, was employed as a coal miner in the Nation's coal mines for 9¼ years, from 1970 through March 30, 1991;

2. That notice of disability and written claim for benefits was timely filed on August 16, 2010;

3. That as a result of the conditions of his coal mine employment, the miner contracted pneumoconiosis, as that term is defined in the Act and the Regulations;

4. That such disease has caused a breathing impairment of sufficient degree to establish total disability, within the meaning of the Act and the Regulations;

5. That Aberry Coal Inc. is the coal mine operator designated as responsible for payment of benefits due the claimant;

25.3

PROPOSED DECISION AND ORDER AWARDING BENEFITS
Miner: Joseph Fleming
Claim No.:  XXX-XX-0560 LM C
Page: 2

6.    That the claimant is entitled to receive benefits on his/her own behalf and augmented on behalf of the
      following dependent(s).

| Dependent Name | Date of Birth | Relationship | Entitlement Start | Entitlement End |
|---|---|---|---|---|
| Arlene | 03/03/1948 | spouse | 08/01/2010 | continuing |

at the following rates:

| From | To | No. of Mos. | Monthly Rate | Total |
|---|---|---|---|---|
| 082010 | 12/2010 | 5 | $938.30 | $4,691.50 |
| 01/2011 | 09/2011 | 9 | $938.30 | $8,444.70 |

Total    $13,136.20

And continuing at the monthly rate of $938.30, to be paid on the fifteenth day of the month following the month for
which the benefits are due.

Based upon the foregoing Findings of Fact and Conclusions of law, the District Director makes the following:

### AWARD

That Aberry Coal Inc. shall pay to the claimant in the amount of $13,136.20 representing all benefits due up to and
including September 2011, and shall thereafter continue to pay benefits to the claimant at the rate of $938.30 per
month, subject to the limitations of the Act.

The designated responsible operator is also liable for the payment of all fees, charges, and other reasonable expenses
incurred by the miner in developing the claim and for such medical examination, treatment, service, medicine and
apparatus required due to the miner's disability.

Within 30 days after the date of issuance of this Proposed Decision and Order, any party may file a written request for
revision or request a formal hearing before the Office of Administrative Law Judges.  The party must specify the
findings and conclusions with which they disagree, and shall serve the written request on the District Director and all
other parties.

Signed in the office of the District Director on September 20, 2011

Jennifer J. Jackson
Claims Examiner

**PROOF OF SERVICE**

Claimant:  Joseph Fleming

Claim No.:  XXX-XX-0560 LM C

**CERTIFICATION**

I hereby certify that on September 20, 2011, the Decision and Order was filed in the office of the District Director and a certified copy mailed to the parties and their representatives at the addresses listed below.

This Order becomes final and effective thirty (30) days from the date printed on this Proof of Service, unless a party to the claim submits a timely request for revision or hearing before an Administrative Law Judge.  If payment is not made within thirty (30) days following the date that this Order becomes final and effective, the responsible operator becomes liable for interest, as provided in the regulations at 20 C.F.R. 725.608.  In addition, if payment is not made within ten (10) days after the 15th day of the month following the month for which benefits are payable, a penalty in the amount of 20% of the total compensation award will be due the claimant, in accordance with Section 14(f) of the Longshore and Harbor Workers' Compensation Act (LHWCA), as incorporated by Section 422(a) of the Black Lung Benefits Act, and 20 C.F.R. 725.607.

## NOTICE TO CLAIMANT

Once a final award has been issued (an award becomes final if no party files a timely request for revision or appeal) the claimant may apply for enforcement of any interest and/or penalty due from the operator, if the operator failed to make timely payment of compensation, as specified above. The 20 percent additional compensation is payable by the operator even if the effective award is overturned on appeal.

To apply for enforcement of interest and/or penalty, the beneficiary must file suit in the Federal District Court for the district in which the injury occurred (typically, the district in which the miner's last coal mine employment took place).

Jennifer J. Jackson
Claims Examiner

See below for a list of parties served this notice.

**CERTIFIED MAIL**

Joseph Fleming
1226 Zirkle Road
Dandridge, TN 37725

ATTN: Joseph E. Wolfe
Wolfe, Williams, Rutherford & Reynolds
PO Box 625
Norton, VA 24273

Security Insurance Company of Hartford
c/o Arrowpoint Capital
3600 Arco Corporate Drive
Charlotte, NC 28273

ATTN: Michael F. Blair
Pennstuart
PO Box 2009
Bristol, VA 24203

**REGULAR MAIL**

Aberry Coal Inc.
PO Box 426
Pound, VA 24279



| CERTIFICATE OF FIRST PAYMENT OF BENEFITS | **U.S. DEPARTMENT OF LABOR** |
|---|---|
| | OFFICE OF WORKERS' COMPENSATION PROGRAMS |

NOTE: Within ten days after the first payment is made, file the original of this certificate with the initiating office. Send a copy to the person receiving benefits. The Black Lung Benefits Act (30 U.S.C. 901 et.seq) requires this report. Failure to report can result in a civil penalty of not more than $500 for each failure or refusal.

| 1. Name of Disabled or Deceased Coal Miner | 2. Miner's Claim Number |
|---|---|
| **Joseph Fleming** | **XXX-XX-0560 LM C** |

3. Name and Address of Person to Whom the Check is Made Payable (The Payee)
   **Joseph Fleming**
   **1226 Zirkle Road**
   **Dandridge, TN  37725**

| 4. Name and Address of Coal Mine Operator | Name and Address of Insurance Carrier |
|---|---|
| **Aberry Coal Inc.** | **Security Ins Co Of Hartford** |
| **PO Box 426** | **c/o Arrowpoint Capital** |
| **Pound, VA 24279** | **3600 Arco Corporate Drive** |
| | **Charlotte      , NC 28273** |

6. Name(s) of Dependent(s) of Disabled or Deceased Coal Miner

   **Arlene, spouse**

7. a. Last date DOL will issue a benefit check _____/_____/_____
   (month/day/year)

   b. Responsible Operator to reimburse the Trust Fund (Interim Benefits) for  _____ (dates)

   $ _____ (amount)

   c. Responsible Operator to begin payment for  **September 2011** (month/year)

   $ **$938.30** (amount)

   d. Responsible Operator to pay lump sum to claimant  **082010 - 09/2011** (dates)

   $ **$13,136.20** (amount)

   e. Responsible Operator to reimburse the Trust Fund for:  medical costs $ **$1,508.09** (amount)

   interest $ _____ (amount)

**X** You will be notified of medical costs and interest at a future date.

☐ I hereby certify that I **AGREE** with the information contained in Item 7 of this form and that payments have been  initiated as indicated above.

☐ I hereby certify that I **DISAGREE** with the information contained in ITEM 7 of this form but have initiated benefits.

_____     _____
Signature of Person Authorized to Sign for Coal Mine Operator or Insurance Carrier     Date

_____
Print Name and Title

_____     _____
Address     Phone Number

CM-906
Rev. 10/83

25.4

A378



**U.S. DEPARTMENT OF LABOR**       **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY  40353-7847**

**Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax: (859) 498-5787**

In the matter of the claim for benefits
under the Black Lung Benefits Act                   AGREEMENT TO PAY BENEFITS

                                                    Claim Number: XXX-XX-0560 LM C

     Joseph Fleming
                    Claimant

     Aberry Coal, Inc.
                Coal Mine Operator

     Security Insurance of Hartford
     Insurance Carrier

The above-named Coal Mine Operator and/or Insurance Carrier agrees to pay
benefits and other costs and expenses pursuant to the Black Lung Benefits Act
(30 U.S.C., 931 et seq.), based upon the finding by the Department of Labor of
the claimant's eligibility to be paid benefits on his or her own behalf and on
behalf of the following dependents:

     *Arlene, spouse*

A Proposed Decision and Order issued by a District Director becomes effective
on the 30th day after issuance of the Proposed Decision and Order if no party
timely requests revision or a hearing. (20 C.F.R. 725.505(a)(2)) At that time
benefits become due.

The Responsible Coal Mine Operator agrees to begin to pay benefits by the 15th
day of the month following the month that such benefit payments become due and
to reimburse the Black Lung Disability Trust Fund for any benefit payments made
and any medical development expenses incurred. (20 C.F.R. 725.502(b)(1))
The first payment will include benefits which have accrued from August 1, 2010,
with subsequent payment of benefits to be made on the fifteenth (15th) day of
each month thereafter.

The Responsible Coal Mine Operator understands and agrees that this document
may be the basis for the issuance of an Award of Benefits and Order to Pay
benefits in this claim.  Notice of First Payment of Benefits (CM-906) should
follow this statement.

_____

Signature of Authorized Officer        Date

_____

Name and Title

                                   CM-941
                                   Rev. Nov 2001

A379

## TABLE OF MONTHLY BLACK LUNG BENEFIT RATES

|  | PRIMARY | +1 | +2 | +3 |
|---|---|---|---|---|
| 07/01/73 – 09/30/73 | $ 169.80 | $ 254.70 | $ 297.10 | $ 339.50 |
| 10/01/73 – 09/30/74 | 177.60 | 266.40 | 310.80 | 355.20 |
| 10/01/74 – 09/30/75 | 187.40 | 281.10 | 328.00 | 374.80 |
| 10/01/75 – 09/30/76 | 196.80 | 295.20 | 344.40 | 393.50 |
| 10/01/76 – 09/30/77 | 205.40 | 308.10 | 359.50 | 410.80 |
| 10/01/77 – 09/30/78 | 219.90 | 329.80 | 384.80 | 439.70 |
| 10/01/78 – 09/30/79 | 232.00 | 348.00 | 405.90 | 463.90 |
| 10/01/79 – 09/30/80 | 254.00 | 381.00 | 444.50 | 508.00 |
| 10/01/80 – 09/30/81 | 279.80 | 419.60 | 489.60 | 559.50 |
| 10/01/81 – 09/30/82 | 293.20 | 439.80 | 513.10 | 586.40 |
| 10/01/82 – 12/31/83 | 304.90 | 457.40 | 533.60 | 609.80 |
| 01/01/84 – 12/31/84* | 317.10 | 475.60 | 554.90 | 634.20 |
| 01/01/85 – 12/31/86 | 328.20 | 492.30 | 574.30 | 656.40 |
| 01/01/87 – 12/31/87 | 338.00 | 507.00 | 591.50 | 676.00 |
| 01/01/88 – 12/31/88 | 344.80 | 517.20 | 603.40 | 689.50 |
| 01/01/89 – 12/31/89 | 358.90 | 538.40 | 628.10 | 717.80 |
| 01/01/90 – 12/31/90 | 371.80 | 557.70 | 650.70 | 743.60 |
| 01/01/91 – 12/31/91 | 387.10 | 580.60 | 677.40 | 774.10 |
| 01/01/92 – 12/31/92 | 403.30 | 605.00 | 705.80 | 806.60 |
| 01/01/93 – 12/31/93 | 418.20 | 627.30 | 731.90 | 836.40 |
| 01/01/94 – 12/31/95 | 427.40 | 641.10 | 748.00 | 854.80 |
| 01/01/96 – 12/31/96 | 435.10 | 652.70 | 761.50 | 870.20 |
| 01/01/97 – 12/31/97 | 445.10 | 667.70 | 779.00 | 890.20 |
| 01/01/98 – 12/31/98 | 455.40 | 683.10 | 796.90 | 910.70 |
| 01/01/99 – 12/31/99 | 469.50 | 704.30 | 821.60 | 939.00 |
| 01/01/00 – 12/31/00 | 487.40 | 731.00 | 852.80 | 974.70 |
| 01/01/01 – 12/31/01 | 500.50 | 750.80 | 875.90 | 1001.00 |
| 01/01/02 – 12/31/02 | 518.50 | 777.80 | 907.40 | 1037.00 |
| 01/01/03 – 12/31/03 | 534.60 | 801.90 | 935.50 | 1069.20 |
| 01/01/04 – 12/31/04 | 549.00 | 823.50 | 960.80 | 1098.00 |
| 01/01/05 – 12/31/05 | 562.80 | 844.10 | 984.80 | 1125.50 |
| 01/01/06 – 12/31/06 | 574.60 | 861.80 | 1005.50 | 1149.10 |
| 01/01/07 – 12/31/07 | 584.40 | 876.50 | 1022.60 | 1168.70 |
| 01/01/08 – 12/31/08 | 599.00 | 898.40 | 1048.10 | 1197.90 |
| 01/01/09 – 12/31/09 | 616.30 | 924.50 | 1078.50 | 1232.60 |
| 01/01/10 – | 625.60 | 938.30 | 1094.70 | 1251.10 |

*These benefit rates include the additional one-half percent increase that was granted retroactive to January 1, 1984.  The following rates were in effect prior to the retroactive payments:

| 01/01/84 - 06/30/84 | $315.60 | $473.30 | $552.20 | $631.10 |
|---|---|---|---|---|

Form CM-971d
Rev. January 2009

REPORT DATE:   09/20/2011                                U.S. DEPARTMENT OF LABOR
REPORT ID:        CBPS 02                     DIVISION OF COAL MINE WORKERS COMPENSATION

                                                          CBPS BILL HISTORY REPORT

| Provider ID | Provider Name | Original Recip ID | Original Recip Name | Trans Control No. | Total Charge | Paid Amount | First DOS | Last DOS |
|---|---|---|---|---|---|---|---|---|
| 019972500 | MICHOS, JOHN A | 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 | FLEMING JOSEPH | 01104291355310490 | $25.00 | $25.00 | 01/28/2011 | 01/28/2011 |
| 020488600 | GLEN RAY BAKER JR PSC | 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 | FLEMING JOSEPH | 01104591227313736 | $155.50 | $155.50 | 01/28/2011 | 01/28/2011 |
| 019360900 | BARRETT, PETER J. | 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 | FLEMING JOSEPH | 01103591269309073 | $10.00 | $10.00 | 01/25/2011 | 01/25/2011 |
| 999999991 | CLAIMANT REIMBURSEMENT DEFAULT | 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 | FLEMING JOSEPH | 01103191218309996 | $123.42 | $123.42 | 01/14/2011 | 01/14/2011 |
| 020488600 | GLEN RAY BAKER JR PSC | 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 | FLEMING JOSEPH | 01103191220308893 | $1,420.00 | $1,194.17 | 01/14/2011 | 01/14/2011 |
| | | | | Total Paid Amount: | | $1,508.09 | | |

*This report contains Privacy Act protected data and is for Official Use Only.  Do not copy or distribute*

A381

## SUMMARY OF MEDICAL AND EMPLOYMENT EVIDENCE
## PROPOSED DECISION AND ORDER

Date Issued:  September 20, 2011                     DOL Claim No.:  XXX-XX-0560 LM C
Miner's Name: Joseph Fleming                         Claimant's Name: Joseph Fleming
Responsible Operator: Aberry Coal, Inc.              Insurance Carrier: Security Insurance Company of
                                                     Hartford

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq.  We have received the medical and employment evidence summarized below.  Based on a review of this evidence, we have concluded that Aberry Coal, Inc. is the responsible operator liable for the payment of any benefits in this claim.  We have also concluded that the claimant would be entitled to benefits. A summary of the medical and employment evidence and an analysis of the evidence are set forth below.  Copies of any evidence received following the issuance of the Schedule for the Submission of Additional Evidence are attached to this document.

## ENTITLEMENT ANALYSIS:

Based on the analysis of the medical evidence received to date, we have determined the following:

## RELATIONSHIP/DEPENDENCY:

Arlene, the spouse qualifies as an eligible dependent of the miner per 20 CFR 725.204.

Arlene, the spouse meets the relationship requirement per 20 CFR 725.205.

*(A copy of the marriage certificate is in the file as documentation.)*

## PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):

Glen R. Baker, M.D. examined the miner on January 14, 2011, on behalf of the Department of Labor.  The chest x-ray dated January 14, 2011, by Glen R. Baker, M.D. (B-Reader) was interpreted as 1/1 (O) positive for simple pneumoconiosis.

Kathleen A. Deponte, M.D. (B-Certified; B-Reader) submitted a chest x-ray on behalf of the claimant and the film was interpreted as no pleural or parenchymal abnormalities indicative of pneumoconiosis are seen.  The conclusion is a diagnosis of chronic obstructive pulmonary disease.

Dr. Baker provided the following diagnosis:  Coal workers' pneumoconiosis 1/1 based on 2000 ILO Classification caused by coal dust exposure, chronic obstructive pulmonary disease with severe obstructive defect based on pulmonary function study caused by coal dust exposure and cigarette smoking, moderate resting arterial hypoxemia based on arterial blood gas study caused by coal dust exposure and cigarette smoking, chronic bronchitis.  Dr. Baker noted that the miner is totally disabled.

He also has legal pneumoconiosis.  He has a severe obstructive defect on pulmonary function testing, moderate resting arterial hypoxemia and a symptom complex of chronic bronchitis.  These conditions can all be caused by coal dust exposure.  He has a long history of cigarette smoking of 35 years at the rate of one-half to one pack per day.  He quit smoking 5 years ago.  This can also cause similar symptoms.  The combination of coal dust and cigarette smoking may, in fact, be either synergistic or additive according to the medical literature.

Dr. Baker clarified his medical opinion and further noted that "I feel his 9¼ years of coal mine employment is sufficient to account for his x-ray changes, especially working in a high dust concentration as he did in his employment no matter how many years that he experienced."

*The claimant, through his attorney submitted the additional medical evidence as follows:*

- X-ray interpretation by Michael S. Alexander, M.D. (B-Certified; B-Reader) dated March 6, 2011, (film dated January 14, 2011). Reading was read as 1/0 (O) for simple pneumoconiosis;

- Arterial blood gas studies dated June 27, 2008, August 24, 2009, and August 11, 2010, produced positive results for a totally disabling respiratory impairment;

- Medical records by from Pulmonary Associates from Morristown dated 2008 through 2010 reveal the following: chronic obstructive pulmonary disease (COPD), severe; tobacco abuse, encourage patient to continue cessation, decreased weight loss, reactive airway disease and end stage COPD.

*The responsible coal mine operator, through their attorney, submitted the additional medical evidence as follows:*

- X-ray interpretation by A. K. Dahhan, M.D. (B-Reader) dated April 20, 2011, (film dated April 20, 2011). Reading was read as negative pneumoconiosis;

- Pulmonary function study dated April 20, 2011, produced positive results for a totally disabling respiratory impairment;

- Arterial blood gas study dated April 20, 2011, produced negative results which exceed standards for a totally disabling respiratory impairment;

- Medical opinion by William H. Anderson, M.D. dated March 31, 1995. The medical opinion reveals the following: "You have asked me to refer to my examination of 05/14/91 and answer the so called four smoking questions. Yes, it is medically feasible with any degree of medical certainty to distinguish between the pulmonary disability caused by cigarette smoking as opposed to that caused by exposure to coal mine dust base on the medical evidence especially since as it is our usual custom we did a residual volume. I do have an opinion as to the origin of the pulmonary disability with in the degree of medical probability and/or certainty especially since we did the residual volume. That opinion is that since his residual volume was189 percent of predicted this means that he had panlobular and centrilobular emphysema which is the type that occurs as a consequence of cigarette smoking. Thus his emphysema is as a result of his cigarette smoking and is not related to his pneumoconiosis or to having been a coal miner or having breathed mine dust. The above can be stated with a high degree of medical certainty."

- Medical opinion by A. K. Dahhan, M.D. dated April 20, 2011. The medical opinion reveals the following: "In conclusion, based on my evaluation of Mr. Fleming and my review of his medical records as described above, within a reasonable degree of medical certainty, the following conclusions can be made: 1) Mr. Fleming has no radiological finding consistent with coal workers' pneumoconiosis ruling out the medical form of the disease. 2) Mr. Fleming has an obstructive ventilatory defect. 3) From a respiratory standpoint Mr. Fleming does not retain the physiological capacity to return to his previous coal mining work or job of comparable physical demand. 4) Mr. Fleming's pulmonary impairment has not resulted from the inhalation of coal dust. 5) Mr. Fleming had pneumothorax requiring resection of part of the left lung which could result in some loss of his lung function and contributing to his overall pulmonary disability. 6) Mr. Fleming's pulmonary disability has resulted from his severe obstructive ventilatory defect that was caused by his lengthy smoking habit and contributed to by his previous left pneumothorax requiring resection of part of the left lung. 7) Based on my overall evaluation of Mr. Fleming, within a reasonable degree of medical certainty, I find no evidence of pulmonary impairment and/or disability caused by, related to, contributed to or aggravated by inhalation of coal dust, hence, no evidence of legal pneumoconiosis."

*The responsible operator, through their attorney, provided the additional medical evidence as follows:*

- X-ray interpretation by Paul S. Wheeler, M.D. (B-Certified; B-Reader) dated April 6, 2011, (film dated January 14, 2011). Reading was read as negative for pneumoconiosis;

- Sarah Long, M.D. reviewed the pulmonary function study dated January 14, 2011. She noted that "this pulmonary function study is not valid per Federal Black Lung Regulations because of less than optimal effort in performing the study. This study would not be useful in the evaluation of a respiratory impairment."

The weight of the chest x-ray evidence supports a finding of clinical and legal pneumoconiosis. The treatment records dated 2008 through 2010 from Pulmonary Associates of Morristown also supports this finding. Although the chest x-ray dated April 20, 2011, by Dr. Dahhan was read as negative for pneumoconiosis, Dr. Dahhan has no expertise in the interpretation of chest x-rays to identify pneumoconiosis.

Also the original chest x-ray dated April 20, 2011, had been requested several times from the responsible operator; but the film has not been forwarded to the Department of Labor as outlined in 20 CFR 718.102 (d). Therefore, this film has been given very little weight. Please note that a "B" Reader is a radiologist or other physician who has demonstrated his proficiency in assessing and classifying x-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health and Human Services. This is an Occupational Safety and Health receiving facility at Morgantown, West Virginia. "B" Readers have more training and greater expertise in the field of x-ray interpretation.

The medical evidence is sufficient for a finding of clinical and legal pneumoconiosis. Therefore, the requirements of 20 CFR 718.201 (a); 718.202 (a) (1) & (a) (4) have been met.

## RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:

Causality has been established by a reasoned medical opinion and 9¼ years of coal mine employment proven per 20 CFR 718.203 (c) and the presence of pneumoconiosis. A reasoned medical opinion supports a finding that the disease arose at least in part out of coal mine employment.

## DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:

The arterial blood studies dated January 14, 2011, and April 20, 2011, performed by Drs. Baker and Dahhan produced negative results; however, the pulmonary function studies dated June 27, 2008, August 24, 2009, August 11, 2010, January 14, 2011, and April 20, 2011, by Drs. Baker, Dahhan and Mejia produced positive results for a totally disabling respiratory impairment.

Although it was noted by Dr. Long that the pulmonary function studies dated January 14, 2001, were invalid, the pulmonary function study evidence collectively is overwhelmingly positive for a totally disabling respiratory impairment. Therefore, the requirements of 20 CFR 718.204 (b) (2) (i) & (b) (2) (iv) have been met.

## FIFTEEN YEAR PRESUMPTION:

This claim has been reviewed to determine if the changes in the Black Lung Benefits Act mandated by the Patient Protection and Affordable Care Act of 2010 (PPACA), Public Law 111-148 §1556(a), apply. Section 411(c)(4) of the Act provides presumptions of total disability due to pneumoconiosis or death due to pneumoconiosis under certain circumstances. The presumptions are applicable to claims that were filed before January 1, 1982 or after January 1, 2005, and were pending on or after March 23, 2010.

The presumption is available to miners who worked for a cumulative period of fifteen or more years in underground mining, or comparable surface mining, and the evidence establishes the existence of a totally disabling respiratory or pulmonary impairment. If a survivor establishes that the miner worked for fifteen or more years in coal mine employment and that the miner suffered from a totally disabling chronic respiratory or pulmonary impairment prior to death, it is presumed that the miner's death was due to pneumoconiosis. The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purpose of applying this presumption, shall be made in accordance with section 20 CFR 718.204.

For rebuttal in a miner's claim, the party opposing entitlement must establish either that the miner does not or did not have pneumoconiosis or that the miner's impairment did not arise out of or in connection with coal mine employment. In a survivor's case, the party opposing entitlement must provide evidence sufficient to rebut the presumption of death due to pneumoconiosis.

*As less than fifteen (15) years of coal mine employment have been established, the presumption is not invoked.*

This is a refiled claim rather than a modification request because more than one (1) year elapsed between the prior denial and the filing of this claim. This claim is approved pursuant to 20 CFR 725.309(d) as there has been a material change in condition.

Based upon the above, the claimant would be entitled to benefits.

### EMPLOYMENT EVIDENCE:

Mr. Fleming alleged 18 years of coal mine employment. The earnings record from the Social Security Administration verifies approximately 9¼ years of coal mine employment from 1970 through 1991.

### LIABILITY ANALYSIS:

Mr. Fleming alleged coal mine employment with Aberry Coal, Inc.; from 1989 through April 1991. The allegation is supported by the earnings record from the Social Security Administration and a deposition dated January 6, 1995. These earnings represent more than a full calendar year of employment. Aberry Coal, Inc. is insured by Security Insurance Company of Hartford. Please note that there are no earnings recorded on the employment record after 1991.

Aberry Coal, Inc. has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon the earnings record from the Social Security Administration.

2. The miner's employment with this operator included at least one working day after 12/31/69 based upon the earnings record from the Social Security Administration.

3. There is a rebuttable presumption that coal mine workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5. This operator is the operator that most recently employed the miner according to the earnings record from the Social Security Administration.

A Notice of Claim was received by the potentially liable insurance carrier, Security Insurance Company of Hartford, on September 4, 2010, as evidenced by the signed return receipt from the post office. The potentially liable insurance carrier *timely* responded to the Notice of Claim on September 20, 2010, and December 1, 2010, by denying liability and denying that Aberry Coal, Inc. is the potentially liable operator within the meaning of the Black Lung Benefits Act.

The insurance carrier through their attorney, *timely* responded to the Schedule for the Submission of Additional Evidence on April 6, 2011, by denying liability and denying that Aberry Coal, Inc. is the potentially liable operator within the meaning of the Black Lung Benefits Act and by contesting the claimant's entitlement to benefits.

## Table of Coal Mine Industry Average Earnings

| ANTHRACITE | | BITUMINOUS | | | |
|---|---|---|---|---|---|
| YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD |
| 1937 | 693.75 | 1937 | 585 00 | 1974 | 6080.00 |
| 1938 | 657.50 | 1938 | 525 00 | 1975 | 7405.00 |
| 1939 | 705.00 | 1939 | 598.75 | 1976 | 8008.75 |
| 1940 | 648.75 | 1940 | 617.50 | 1977 | 8987.50 |
| 1941 | 657.50 | 1941 | 750 00 | 1978 | 10038.75 |
| 1942 | 705.00 | 1942 | 857.50 | 1979 | 10878.75 |
| 1943 | 648.75 | 1943 | 1057.50 | 1980 | 10927.50 |
| 1944 | 733.75 | 1944 | 1267.50 | 1981 | 12100 00 |
| 1945 | 876.25 | 1945 | 1315.00 | 1982 | 12698.75 |
| 1946 | 1,060.00 | 1946 | 1362.50 | 1983 | 13720 00 |
| 1947 | 1,262.50 | 1947 | 1606.25 | 1984 | 14800 00 |
| 1948 | 1,342.50 | 1948 | 1691.25 | 1985 | 15250 00 |
| 1949 | 1,447.50 | 1949 | 1465 00 | 1986 | 15390 00 |
| 1950 | 1,553.75 | 1950 | 1633.75 | 1987 | 15750 00 |
| 1951 | 1,692.50 | 1951 | 1915 00 | 1988 | 15940 00 |
| 1952 | 1,750.00 | 1952 | 1880 00 | 1989 | 16250 00 |
| 1953 | 1,695.00 | 1953 | 2097.50 | 1990 | 16710 00 |
| 1954 | 1,775.00 | 1954 | 2022.50 | 1991 | 17080 00 |
| 1955 | 1,935.00 | 1955 | 2275.00 | 1992 | 17200 00 |
| 1956 | 2,083.75 | 1956 | 2472.50 | 1993 | 17260 00 |
| 1957 | 2,172.50 | 1957 | 2581.25 | 1994 | 17760 00 |
| 1958 | 2,130.00 | 1958 | 2415 00 | 1995 | 18440 00 |
| 1959 | 2,183.75 | 1959 | 2661.25 | 1996 | 18740.00 |
| 1960 | 2,266.35 | 1960 | 2687.50 | 1997 | 19010.00 |
| | ** | 1961 | 2645.00 | 1998 | 19160.00 |
| | ** | 1962 | 2717.50 | 1999 | 19340.00 |
| | ** | 1963 | 2835 00 | 2000 | 19090.00 |
| | ** | 1964 | 3031.25 | 2001 | 19040.00 |
| | ** | 1965 | 3222.50 | 2002 | 19640.00 |
| | ** | 1966 | 3438.50 | 2003 | 19900.00 |
| | ** | 1967 | 3662.50 | 2004 | 21570.00 |
| | ** | 1968 | 3801.25 | 2005 | 22060.00 |
| | ** | 1969 | 4261.25 | 2006 | 22080.00 |
| | | 1970 | 4777.50 | 2007 | 21960.00 |
| | | 1971 | 5008.75 | 2008 | 23270.00 |
| | | 1972 | 5576.25 | 2009 | 26140.00 |
| | | 1973 | 5898.75 | 2010 | 28230.00 |

\*    Figures for 1937-1970 were published by the Bureau of Census. Those for 1971 to present were published by the Bureau of Labor Statistics. All figures are based on annual industry wage survey. After 1990, the Bureau of Labor Statistics stopped keeping records on an annual basis. Standards from that year on are based on multiplying the average hourly rate by 1000 hours. A "year" as defined here is 125 working days.

\*\*   After 1960, average wage standards are the same for anthracite and bituminous mines.

### LIABILITY ANALYSIS:

Mr. Fleming alleged coal mine employment with Aberry Coal, Inc.; from 1989 through April 1991. The allegation is supported by the earnings record from the Social Security Administration and a deposition dated January 6, 1995. These earnings represent more than a full calendar year of employment. Aberry Coal, Inc. is insured by Security Insurance Company of Hartford. Please note that there are no earnings recorded on the employment record after 1991.

Aberry Coal, Inc. has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon the earnings record from the Social Security Administration.

2. The miner's employment with this operator included at least one working day after 12/31/69 based upon the earnings record from the Social Security Administration.

3. There is a rebuttable presumption that coal mine workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5. This operator is the operator that most recently employed the miner according to the earnings record from the Social Security Administration.

A Notice of Claim was received by the potentially liable insurance carrier, Security Insurance Company of Hartford, on September 4, 2010, as evidenced by the signed return receipt from the post office. The potentially liable insurance carrier *timely* responded to the Notice of Claim on September 20, 2010, and December 1, 2010, by denying liability and denying that Aberry Coal, Inc. is the potentially liable operator within the meaning of the Black Lung Benefits Act.

The insurance carrier through their attorney, *timely* responded to the Schedule for the Submission of Additional Evidence on April 6, 2011, by denying liability and denying that Aberry Coal, Inc. is the potentially liable operator within the meaning of the Black Lung Benefits Act and by contesting the claimant's entitlement to benefits.

# MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represent the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is Evidence of record or New evidence developed for this claim.)

**MINER:** Joseph Fleming
**CLAIM NO.:** XXX-XX-0560 LM C

## X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 10/02/2010 | 10/03/2010 CN | Kathleen A. Deponte, M.D. | B-Certified; B-Reader | 1 | No pleural or parenchymal abnormalities indicative of pneumoconiosis are seen. **Conclusion:** chronic obstructive pulmonary disease |
| 01/14/2011 | 01/14/2011 DN | Glen R. Baker, M.D. | B-Reader | 1 | 1/1 (O) Simple CWP |
| 01/14/2011 | 01/25/2011 D | Peter R. Barrett, M.D. | B-Certified; B-Reader | 1 | Quality Reading |
| 01/14/2011 | 03/06/2011 C - REBUTTAL | Michael S. Alexander, M.D. | B-Certified; B-Reader | 1 | 1/0 (O) Simple CWP |
| 04/20/2011 | 04/20/2011 RN | A. K. Dahhan, M.D. | NONE | 1 | Negative |
| 01/14/2011 | 04/06/2011 R - REBUTTAL | Paul S. Wheeler, M.D. | B-Certified; B-Reader | 2 | Negative |

## Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/ Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS | | | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | FEV1 | MVV | FVC | |
| 01/14/2011 DN | Glen R. Baker, M.D. | 65/68.3 | 0.67 | *NONE* | 3.17 | 21% | 1.85 | 74 | 2.38 | *YES* |
| 06/27/2008 CE | Ernesto Mejia, M.D. | 62/69.0 | 0.81 | *NONE* | 2.17 | 37% | 1.97 | 79 | 2.51 | ----- |
| 08/24/2009 CE | Ernesto Mejia, M.D. | 63/69.0 | 0.84 | 35.9 | 2.20 | 38% | 1.95 | 78 | 2.45 | ----- |
| 08/11/2010 CE | Ernesto Mejia, M.D. | 64/69.0 | 0.69 | 26.5 | 1.83 | 38% | 1.93 | 77 | 2.47 | ----- |
| 04/20/2011 RN | A. K. Dahhan, M.D. | 65/69.0 | 0.87 | 38 | 2.63 | 33% | 1.92 | 77 | 2.46 | ----- |

## Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/ Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|------|-----------|--------------------|------|-----|--------------------------|----------|--------|
| 01/14/2011 DN | Glen R. Baker, M.D. | Resting | 44.0 | 69.0 | 60.0 | 0-2999 | *TESTS NOT VALIDATED VALUES EXCEED STANDARDS* |
| 04/20/2011 RN | A. K. Dahhan, M.D. | Resting | 42.4 | 75.6 | 60.0 | 0-2999 | ---------- |

***THE ABG EXERCISE TEST IS MEDICALLY CONTRAINDICATED DUE TO THE PATIENT EXPERIENCING CHEST PAIN UPON EXERTION.***

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|-----------|-----------------------------------|----------|
| 01/14/2011 DN | Glen R. Baker, M.D. - <br><br>Board Certified in Internal Medicine, Subspecialty in Pulmonary Disease | Dr. Baker provided a diagnosis of coal workers' pneumoconiosis 1/1 based on 2000 ILO Classification caused by coal dust exposure, chronic obstructive pulmonary disease with severe obstructive defect based on pulmonary function study caused by coal dust exposure and cigarette smoking, moderate resting arterial hypoxemia based on arterial blood gas study caused by coal dust exposure and cigarette smoking, chronic bronchitis. Dr. Baker noted that the miner is totally disabled.<br><br>***Dr. Baker further noted the following:***<br><br>He also has legal pneumoconiosis. He has a severe obstructive defect on pulmonary function testing, moderate resting arterial hypoxemia and a symptom complex of chronic bronchitis. These conditions can all be caused by coal dust exposure. He has a long history of cigarette smoking of 35 years at the rate of one-half to one pack per day. He quit smoking 5 years ago. This can also cause similar symptoms. The combination of coal dust and cigarette smoking may, in fact, be either synergistic or additive according to the medical literature. |
| 01/28/2011 DN | Glen R. Baker, M.D. - <br><br>Board Certified in Internal Medicine, Subspecialty in Pulmonary Disease | ***CLARIFYING MEDICAL OPINION DATED 01/28/2011:***<br><br>"It is my gut opinion that he does have Coal Workers' Pneumoconiosis, at least category 1/1, due to his coal mine employment, even if it is 9¼ years. Although, I feel he does have more years than that of actual employment. I feel his severe chronic obstructive pulmonary disease (COPD) has more likely led to his longer history of cigarette smoking; though there has been some contribution from his dust exposure as well. The current medical literature suggests that the combination of cigarette smoking and coal dust exposure may be either additive or synergistic in terms of their effects on breathing problems.<br><br>To answer your questions very simply, I feel that 9¼ years of coal mine employment would be a significant degree of coal mine exposure for this patient to develop category 1/1 degree of pneumoconiosis. I also feel there is probably more years of employment than is actually verified. As always there is some other possible cause of his x-ray changes other than coal dust exposure as over one hundred diseases may mimic or cause similar x-ray changes as coal dust exposure may with the presence of Coal Workers' Pneumoconiosis. *Again, I feel his 9¼ years of coal mine employment is sufficient to account for his x-ray changes, especially working in a high dust concentration as he did in his employment no matter how many years that he experienced."* |

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 2008 - 2010 CE | Pulmonary Associates of Morristown | **The medical records reveal the following:** chronic obstructive pulmonary disease (COPD), severe; tobacco abuse, encourage patient to continue cessation, decreased weight loss, reactive airway disease and end stage COPD. |
| 03/31/1995 RE | William H. Anderson, MD. | "You have asked me to refer to my examination of 05/14/91 and answer the so called four smoking questions.  Yes, it is medically feasible with any degree of medical certainty to distinguish between the pulmonary disability caused by cigarette smoking as opposed to that caused by exposure to coal mine dust base on the medical evidence especially since as it is our usual custom we did a residual volume.  I do have an opinion as to the origin of the pulmonary disability with in the degree of medical probability and/or certainty especially since we did the residual volume.  That opinion is that since his residual volume was 189 percent of predicted this means that he had panlobular and centrilobular emphysema which is the type that occurs as a consequence of cigarette smoking.  Thus his emphysema is as a result of his cigarette smoking and is not related to his pneumoconiosis or to having been a coal miner or having breathed mine dust.  The above can be stated with a high degree of medical certainty." |
| 04/20/2011 RN | A. K. Dahhan, M.D. -<br><br>Board-Certified in Internal Medicine with a subspecialty in Pulmonary Disease | **The medical opinion is as follows:**<br><br>"In conclusion, based on my evaluation of Mr. Fleming and my review of his medical records as described above, within a reasonable degree of medical certainty, the following conclusions can be made:<br><br>• Mr. Fleming has no radiological finding consistent with coal workers' pneumoconiosis ruling out the medical form of the disease.<br><br>• Mr. Fleming has an obstructive ventilatory defect.<br><br>• From a respiratory standpoint Mr. Fleming does not retain the physiological capacity to return to his previous coal mining work or job of comparable physical demand.<br><br>• Mr. Fleming's pulmonary impairment has not resulted from the inhalation of coal dust.<br><br>• Mr. Fleming had pneumothorax requiring resection of part of the left lung which could result in some loss of his lung function and contributing to his overall pulmonary disability.<br><br>• Mr. Fleming's pulmonary disability has resulted from his severe obstructive ventilatory defect that was caused by his lengthy smoking habit and contributed to by his previous left pneumothorax requiring resection of part of the left lung.<br><br>• Based on my overall evaluation of Mr. Fleming, within a reasonable degree of medical certainty, I find no evidence of pulmonary impairment and/or disability caused by, related to, contributed to or aggravated by inhalation of coal dust, hence, no evidence of legal pneumoconiosis." |

**Physical Examination/ Other Evidence**

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 02/26/2011 R - REBUTTAL | Sarah B. Long, M.D. - UNKNOWN | *Dr. Long reviewed and validated the pulmonary function study dated January 14, 2011, and her medical opinion is as follows:*<br><br>"This pulmonary function study is not valid per Federal Black Lung Regulations because of less than optimal effort in performing the study. This study would not be useful in the evaluation of a respiratory impairment." |

## Length of Coal Mine Employment

The claimant has proven **9¼** years of coal mine employment.

U.S. DEPARTMENT OF LABOR        **Office of Workers' Compensation
                                Division of Coal Mine Workers' Compensation
                                402 Campbell Way
                                Mt. Sterling, KY  40353-7847**



June 30, 2011                   **Phone:   (859) 497-8501 or 1-800-366-4628
                                Telefax:  (859) 498-5787**

                                        MINER:   Joseph Fleming
                                CLAIM NO.:   XXX-XX-0560 LM C

ATTN:  Joseph E. Wolfe
Wolfe, Williams, Rutherford
  & Reynolds
PO Box 625
Norton, VA  24273

Dear Mr. Wolfe:

Your request for additional time to submit rebuttal evidence in response
to the Schedule for Submission of Additional Evidence dated May 17, 2011,
has been received.  ***The District Director grants the request and will
allow until August 1, 2011, for submission of the rebuttal evidence.***

It should be noted that extensions apply only to the party who requests
them.  The original timeframes will apply to all other parties except
that opposing parties must be granted at least thirty days to submit
rebuttal evidence.

Further extensions will be granted **only** if the relevance of the evidence
to be obtained is established and "good cause" is shown as to why the
specified evidence could not be submitted within the allotted timeframe.

Once all time periods allowed for submission of evidence have expired,
the District Director will proceed with the adjudication of the claim
based on review of all evidence accepted into the record.

Sincerely,

Jennifer J. Jackson
Claims Examiner

Enclosure:  Letter-06/14/2011 from Wolfe, Williams, Rutherford & Reynolds

cc:  Joseph Fleming
     Aberry Coal, Inc.
     Security Insurance Company of Hartford
     Pennstuart

DIRECTOR EXHIBIT
NO ____21____ CONSISTING
OF _____1_____ PAGES

A393

# WOLFE WILLIAMS RUTHERFORD & REYNOLDS
### ATTORNEYS AND COUNSELORS AT LAW

JOEY G. ARNOLD[1]
DAVID S. BARY[2]
BOBBY S. BELCHER, JR.
W. ANDREW DELPH, JR.
TONY M. HUTCHINSON
[1]*Member of TN and NC Bar*
[2]*Member of WV and VA Bar*

470 PARK AVENUE • P.O. BOX 625 • NORTON, VIRGINIA 24273
TELEPHONE (276) 679-0777 • FAX (276) 679-5919
*www.wfattorneys.com*

*All Attorneys Licensed in Virginia
Except as Noted*
June 14, 2011

JASON T. MARSHALL[3]
P. HEITH REYNOLDS
ROGER W. RUTHERFORD
VERNON M. WILLIAMS
JOSEPH E. WOLFE
[3]*Member of TN Bar*
[4]*Member of KY and VA Bar*

Ms. Jennifer Jackson, CE
U.S. Department of Labor
OWCP/DCMWC
402 Campbell Way
Mt. Sterling, KY 40353-7847
*Via First Class Mail*

**RECEIVED**

**JUN 17 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

**RE: Joseph Fleming; OWCP No.: XXX-XX-0560 LM C, OFN: 92123**

Dear Ms. Jackson:

We represent the above named miner in his claim for Federal black lung benefits. We respectfully request an extension of time to submit our rebuttal reading of the film dated April 20, 2011 in this case. We have requested this film numerous times from Mr. Blair's office and still have not received this film. Also, I have attached another formal request for the film. Claimant has not requested prior extension in this case and believes that no party will be prejudice by this request.

By copy of this correspondence, I am forwarding the same to Counsel for the Responsible Operator.

With best regards, I am,

Sincerely yours,
WOLFE WILLIAMS RUTHERFORD & REYNOLDS

JOSEPH E. WOLFE

JEW/keh
Cc:

Mr. Michael Blair, Esq.
PENN STUART & ESKRIDGE
P.O. Box 2009
Bristol, VA 24203

Mr. Joseph Fleming
1226 Zirkie Road
Dandridge, TN 37725

**DIRECTOR EXHIBIT
NO. 23.1 CONSISTING
OF 3 PAGES**

A394

# WOLFE WILLIAMS RUTHERFORD & REYNOLDS

### ATTORNEYS AND COUNSELORS AT LAW

JOEY G. ARNOLD[1]
DAVID S. BARY[2]
BOBBY S. BELCHER, JR.
W. ANDREW DELPH, JR.
TONY M. HUTCHINSON
[1]Member of TN and NC Bar
[2]Member of WV and VA Bar

470 PARK AVENUE • P.O. BOX 625 • NORTON, VIRGINIA 24273
TELEPHONE (276) 679-0777 • FAX (276) 679-5919
www.wfattorneys.com

*All Attorneys Licensed in Virginia
Except as Noted*
June 14, 2011

JASON T. MARSHALL[3]
P. HEITH REYNOLDS[4]
ROGER W. RUTHERFORD
VERNON M. WILLIAMS
JOSEPH E. WOLFE
[3]Member of TN Bar
[4]Member of KY and VA Bar

Mr. Michael Blair, Esq.
PENN STUART & ESKRIDGE
P.O. Box 2009
Bristol, VA 24203
*First Class Mail and
Fax (423)-793-4900*

**Subject: Joseph Fleming, SSN:  XXX-XX-0560, OFN:  92123**

Dear Mr. Blair:

      Please forward the x-ray film dated April 20, 2011 to the following address as soon as possible:

      **WWRR Law Firm
Attn: Krista Huckaby
PO Box 625
Norton, VA 24273**

Your assistance will be greatly appreciated.

Sincerely yours,

WOLFE WILLIAMS RUTHERFORD & REYNOLDS

JOSEPH E. WOLFE

JEW/keh

RECEIVED

JUN 17 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

23.2

LAW OFFICES
**WOLFE WILLIAMS RUTHERFORD & REYNOLDS**
ATTORNEYS AND COUNSELORS AT LAW
470 PARK AVENUE
P.O. Box 625
NORTON, VIRGINIA 24273



Ms. Jennifer Jackson, CE
U.S. Department of Labor
OWCP/DCMWC
402 Campbell Way
Mt. Sterling, KY 40353-7847

RECEIV

JUN 17

ESA / OWCP, In
Mt. Sterling,

40353$7847

A396



Geo. E. Penn (1895-1931)
Wm. A. Stuart (1922-1976)
G.R.C. Stuart (1952-1991)

JOHN B. HEMMINGS (Retired)

# PENNSTUART

### Since 1890

## ATTORNEYS AT LAW

Wm. W. Eskridge
Stephen M. Hodges
W. Challen Walling
Wade W. Massie ᴿ⋅ ᴵᴵᴵ
Michael F. Blair ᴵᴵᴵ
William M. Moffet ᴵᴵᴵ
Mark L. Esposito ᴵᴵᴵ
Timothy W. Gresham ᴵᴵᴵ
H. Ashby Dickerson
Byrum L. Geisler ᴵᴵᴵ
Richard E. Ladd, Jr. ᴿᴵ
W. Bradford Stallard
Ramesh Murthy ᴵᴵᴵ
Mark E. Frye ᴵᴵᴵ
Lisa Frisina Clement
Andrew M. Hanson ᴵᴵᴵ
John A. Martin ᴵᴵᴵ
Timothy K. Lowe ᴵ⋅ ᴵᴵᴵ⋅ •

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
ᴵKY; ᴿWV; ᴵᴵᴵTN; ᴵⱽIL; ⱽMN

Jesse F. Narron
Cameron S. Bell ᴵᴵᴵ
Kari Lou Frank
Patricia C. Arrighi ᴼF ᴄᴼᵁⁿˢᵉˡ
Richard E. Ladd, Sr. ᴼF ᴄᴼᵁⁿˢᵉˡ ᴵᴵᴵ⋅ •
Elizabeth R. Walters ᴼF ᴄᴼᵁⁿˢᵉˡ ᴵᴵᴵ
Bruce E. Gibson ᴼF ᴄᴼᵁⁿˢᵉˡ ᴵᴵᴵ
John R. Sigmond ᴵᴵᴵ
Wendy E. Warren
J. Randall Brooks, Jr. ᴵ⋅ ᴵᴵ⋅ ᴵᴵᴵ
Joseph S. Hall
Wesley B. Boggs ᴵ⋅ ᴵᴵᴵ
Holly N. Mancl ᴵᴵᴵ⋅ ᴵⱽ⋅ ⱽ⋅ •
John S. Honeycutt ᴵᴵᴵ⋅ •
Jennifer S. Rose

E-Mail: mblair@pennstuart.com         Direct Dial: (423) 793-4806         Direct Fax: (423) 793-4846

April 4, 2011

## CERTIFIED MAIL RETURN RECEIPT REQUESTED

Jennifer Jackson
U. S. Department of Labor
Office of Workers' Compensation
402 Campbell Way
Mt. Sterling, KY 40353

RECEIVED
APR 06 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

Re:     Joseph Fleming v Aberry Coal, Inc.
        OWCP No.: xxx-xx-0560
        PS&E File No.: 40-756

Dear Ms. Jackson:

Enclosed please find the Employer's Response to Schedule for Submission of Additional Evidence.   We will submit evidence in compliance with the deadline established in the regulations in the Schedule.   If an extension is necessary, we will inform you.

Sincerely,

**PENN, STUART & ESKRIDGE**

Michael F. Blair

MFB/RAB:mrw
Enclosure
cc:   Robert Gonder (81062144, via e-mail)
      Joseph E. Wolfe, Esq. (Via Certified Mail – RRR)

DIRECTOR EXHIBIT
NO. 22-1 CONSISTING
OF 6 PAGES

Bristol: 302862-1

**UNITED STATES DEPARTMENT OF LABOR**
**EMPLOYMENT STANDARDS ADMINISTRATION**
**OFFICE OF WORKERS' COMPENSATION PROGRAMS**
**DIVISION OF COAL MINE WORKERS' COMPENSATION**

RECEIVED

APR 0 6 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

| | | |
|---|---|---|
| JOSEPH FLEMING, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | OWCP No.: XXX-XX-0560 |
| | ) | |
| ABERRY COAL, INC., | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SECURITY INSURANCE CO. OF | ) | |
| HARTFORD C/O | ) | |
| ARROWPOINT CAPITAL, | ) | |
| | ) | |
| Insurer, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO SCHEDULE

Comes now, Security Insurance Company of Hartford c/o Arrowpoint Capital,
("Insurer"), and in response to the Schedule for Submission of Additional Evidence issued in this
case by the Department of Labor ("DOL"), pursuant to 20 CFR § 725.410(a), states:

## GENERAL

1.      Insurer avers that the statutes and regulations under which this claim is being
prosecuted are unconstitutionally discriminatory and arbitrary. All rights are reserved to assert such
defenses in all future administrative or judicial proceedings in connection with such statutes and
regulations.

1

22.2

A398

2.      Insurer avers that the revised regulations promulgated on January 19, 2001 are invalid and arbitrary and capricious.   All rights are reserved to assert such defenses in all future administrative or judicial proceedings in connection with such regulations.

RECEIVED

APR 0 6 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

## ENTITLEMENT

3.      Insurer asserts that the claim was not timely filed.

4.      Insurer asserts that the claimant was not employed as a miner as defined by the Act and regulations.

5.      Insurer denies the number of years of coal mine employment alleged by the claimant and/or found by DOL.  Employer disagrees that the claimant has 15 or more years of coal mine employment.

6.      Insurer denies that the claimant has pneumoconiosis, medical or legal.

7.      Insurer denies that the pneumoconiosis arose out of coal mine dust exposure in coal mine employment.

8.      Insurer denies that the claimant is totally disabled by a respiratory or pulmonary impairment.

9.      Insurer avers that if the claimant is disabled, it is not due to pneumoconiosis, medical or legal, or any lung disease or respiratory or pulmonary impairment arising out of coal mine employment or due to exposure to coal mine dust, while employed in the coal mine industry.

10.     Insurer denies that the findings of the claimant's or DOL's medical examiners or physicians justify a conclusion that the claimant is totally disabled by a respiratory or pulmonary impairment arising out of coal mine employment.

2

Bristol: 302868-1

11.     Insurer denies that the claimant can be found eligible for benefits without considering the claimant's ability to perform comparable and gainful work.

12.     Insurer reserves its rights to have the claimant examined by physicians of its choosing at times deemed appropriate by Insurer.

13.     Insurer denies that the claimant has any eligible dependents.

RECEIVED
APR 0 6 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

## LIABILITY

14.     Insurer denies that Aberry Coal, Inc. is the responsible operator.

15.     Insurer denies that Aberry Coal, Inc. was the last operator to employ the miner for at least one year.

16.     Insurer denies that it is financially capable of paying benefits.

17.     Insurer denies that it owes the claimant any benefits hereunder.


Respectfully submitted

**ABERRY COAL, INC.**

By Counsel


PENN, STUART & ESKRIDGE
P.O. Box 2009
BRISTOL, VA 24203

By:

Michael F. Blair


Bristol: 302868-1

A400

RECEIVED

APR 0 6 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been mailed to Jennifer

Jackson, U. S. DOL, 402 Campbell Way, Mt. Sterling, KY 40353 and Joseph E. Wolfe, Esquire, P.

O. Box 625, Norton, VA 24273, on this the 4th day of April, 2011.

Michael F. Blair

Bristol: 302868-1

A401

RECEIVED

APR 0 6 2011

| OPERATOR RESPONSE TO SCHEDULE FOR SUBMISSION OF ADDITIONAL EVIDENCE | U.S. DEPARTMENT OF LABOR Employment Standards Administration Office of Workers' Compensation Division of Coal Mine Workers' Compensation, OWCP, DCMWC |
|---|---|

| Miner's Name: Joseph Fleming | Claimant's Name: Joseph Fleming | Claim Number: xxx-xx-0560 | Mt. Sterling, KY 40353-0058 Expires: 10-31-07 |
|---|---|---|---|

| Responsible Operator's Name: Aberry Coal, Inc. | Insurer's Name:  Security Ins. Co. of Hartford c/o Arrowpoint Capital | Policy No. |
|---|---|---|

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.).  Please check appropriate boxes below.  While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim.  You will also be deemed to have contested the claimant's entitlement to benefits.

**A. Liability**

The named responsible operator:

   Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.   See attached.

   X   Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2).  Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.**

**B. Claimant's Entitlement**

The named responsible operator

   Accepts the claimant's entitlement to benefits.

   X   Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement to benefits.

| Name & Address of Firm Penn, Stuart & Eskridge P.O. Box 2009 Bristol, VA 24203 | Signature Michael F. Blair Title - Attorney | Date April 4, 2011 |
|---|---|---|

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue, N. W., Washington, D.C. 20210.  **(DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)** Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number.

Form CM-2790
Rev January 2001

Abingdon: 541116-1

22.3

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOSEPH FLEMING
1226 ZIRKLE ROAD
DANDRIDGE, TN 37725

Scat/B          0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Joe Fleming                        21Mar11

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☑ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)      7010 3090 0001 4715 4345

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN: JOSEPH E. WOLFE
WOLFE, WILLIAMS, RUTHERFORD
   & REYNOLDS
PO BOX 625
NORTON, VA 24273

Scat/B          0560 FLEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

24273

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)      7010 3090 0001 4715 4338

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**DIRECTOR EXHIBIT**
NO. 26.1 CONSISTING
OF 18 PAGES

A403



**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006                    See Reverse for Instructions

7010 3090 0001 4715 0552

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**ATTN: MICHAEL F. BLAIR**
**PENNSTUART**
**PO BOX 2009**
**BRISTOL, VA 24203**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                          ☐ Agent
                                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                           02/22/2011

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7010 3090 0001 4715 0552

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

A404

**SENDER:** COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**SECURITY INSURANCE COMPANY**
   **OF HARTFORD**
**C/O ARROWPOINT CAPITAL**
**3600 ARCO CORPORATE DRIVE**
**CHARLOTTE, NC 28273**

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _Susan Hoover_    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7010 3090 0001 4715 0545

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

A405

**U.S. DEPARTMENT OF LABOR**

Office of Workers' Compensation
Division of Coal Mine Workers' Compensation
402 Campbell Way
Mt. Sterling, KY 40353-7847



Phone:    (859) 497-8501 or 1-800-366-4628
Telefax:  (859) 498-5787

| Miner's Name | Designated Responsible Operator |
|---|---|
| Joseph Fleming | Aberry Coal, Inc. |
| | PO Box 426 |
| **Claimant's Name** | Pound, VA 24279 |
| Joseph Fleming | |

| Claimant's Address | Insurer |
|---|---|
| 1226 Zirkle Road | Security Insurance Company of Hartford |
| Dandridge, TN 37725 | c/o Arrowpoint Capital |
| | 3600 Arco Corporate Drive |
| | Charlotte, NC 28273 |

| DOL Claim Number | Date Issued |
|---|---|
| XXX-XX-0560 LM C | March 18, 2011 |

### SCHEDULE FOR THE SUBMISSION OF ADDITIONAL EVIDENCE

Joseph Fleming filed an application for benefits under the Black Lung Benefits Act on 08/16/2010. We have reviewed the medical evidence developed under 20 C.F.R. § 725.405, and the evidence relevant to coal mine operator liability received under 20 C.F.R. § 725.408. A copy of our "Summary of Medical and Employment Evidence" is attached.

Based on a review of that evidence, we have made the following preliminary conclusions:

1.   The claimant would be entitled to benefits if we issued a decision at this time; and

2.   The coal mine operator named above is the responsible operator liable for the payment of benefits.

**Entitlement**

We have reviewed the evidence developed thus far. Our preliminary analysis is that the claimant would be entitled to benefits if we issued a decision at this time. Our analysis of the evidence and the reasons for our conclusions are set forth in the attached Summary. In addition, a "Guide for Submitting Additional Evidence" is attached, explaining the limitations on the quantity of evidence that each party may submit and the types of medical evidence sufficient to establish each element of entitlement.

April 17, 2011The responsible operator may respond to this schedule by , in the manner prescribed in 20 CFR 725.412(b) and either accept or reject the claimant's entitlement to benefits. If the responsible operator does not respond, it will be considered to have contested the claimant's entitlement, and will be liable for the cost of obtaining additional medical and other necessary evidence in the event that the claimant is ultimately found entitled to benefits. The Black Lung Disability Trust Fund will be liable for those costs if the claimant is ultimately found entitled to benefits and this office has not designated a responsible operator.

21.2

A406

The claimant and the designated responsible operator listed above may now submit to this office additional medical evidence as to the claimant's entitlement. 20 C.F.R. § 725.414(a). After that evidence is submitted, and we complete any additional processing that we believe may be necessary (which may include an informal conference if all parties are represented and the other requirements of 20 C.F.R. § 725.416 are met), we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judges at that time.

The regulations implementing the Black Lung Benefits Act do not require that parties submit any additional medical evidence on entitlement at this point. Instead, parties may wait until the case is referred to the Office of Administrative Law Judges following a request for a hearing. 20 C.F.R. § 725.456(b)(2). If no party submits additional medical evidence on entitlement to our office, we will base our proposed decision and order on the preliminary conclusions stated above.

Any party that wishes to submit medical evidence at this time should mail that evidence to this office, and a copy to the other parties to the claim, in accordance with the following schedule:

| | |
|---|---|
| **May 17, 2011:** | Evidence that supports each party's position |
| **June 16, 2011:** | Evidence that responds to evidence submitted by another party |

Either party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above.

**Parties should take note that the amount of medical evidence that parties may submit is limited. 20 C.F.R. § 725.414. These limitations are explained in detail in the attached Guide. We encourage you to get advice from an attorney or other qualified representative before submitting any additional evidence. A claimant whose application is finally approved and who uses the services of an attorney in establishing entitlement may be entitled to a reasonable attorney's fee. If the designated responsible operator or the Trust Fund challenge the claimant's entitlement, and is ultimately determined to be liable, the responsible operator or the fund will also be liable for the claimant's attorney's fee. A claimant will not be liable for any attorney's fee if his or her claim is denied.** However, a claimant may be liable for a fee if he or she is represented by a person other than an attorney. If a party is represented by a person other than an attorney, the party and the representative should complete and sign the enclosed authorization form (CM-1078), and return it to this office.

The designated responsible operator has the right to require the miner to submit to a complete pulmonary evaluation. 20 C.F.R. § 725.414(a)(3)(i). This evaluation must take place within 100 miles of the miner's residence or at a location no farther from the claimant's residence than the distance that the miner traveled in order to obtain the complete pulmonary evaluation provided by the Department under 20 C.F.R. § 725.406, whichever is greater. A responsible operator may ask this office to approve a trip of greater distance.

## Liability

Based on the evidence developed thus far, we have made a preliminary designation of Aberry Coal, Inc. as the responsible operator liable for the payment of benefits. Our analysis of that evidence and the reasons for our conclusions are set forth in the attached Summary.

The designated responsible operator may respond to this schedule by April 17, 2011, and accept or reject its designation. If the responsible operator does not respond, it will be deemed to accept its designation and to waive its right to contest its liability in any further proceedings.

The designated responsible operator listed above may now submit to this office additional documentary evidence relevant to liability, and may identify witnesses relevant to liability that the designated responsible operator intends to call if the case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.414(b), (c).

Absent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.456(b)(1). In addition, the designated responsible operator may no longer submit evidence relevant to its status as a potentially liable operator; operators notified of their potential liability were required to submit all such evidence within 90 days after receiving notification. 20 C.F.R. § 725.408(b)(2). Accordingly, the designated responsible operator may now submit only that evidence relevant to whether another potentially liable operator should have been designated the responsible operator. Other potentially liable operators may also submit evidence relevant to liability.

Any party that wishes to submit liability evidence or identify liability witnesses, must mail that evidence or identification to this office, and a copy to the other parties to the claim, in accordance with the following schedule:

| | |
|---|---|
| **May 17, 2011:** | Evidence that supports each party's position |
| **June 16, 2011:** | Evidence that responds to evidence submitted by another party |

Any party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above.

After any additional evidence is submitted, we may undertake additional processing, including the notification of additional potentially liable operators and the designation of another responsible operator. After we conclude our processing, we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judge.

Please contact our office if you need assistance or have questions about the "Schedule for the Submission of Additional Evidence" or any of the other documents we have enclosed.

Sincerely,

Jennifer J. Jackson
Claims Examiner

Enclosures:    Summary of Medical and Employment Evidence
Copy of evidence
Guide for Submitting Additional Evidence
CM-2970
Table of Coal Mine Industry Average Earnings

Service (by certified mail):

Joseph Fleming
Wolfe, Williams, Rutherford & Reynolds
Aberry Coal, Inc.
Security Insurance Company of Hartford
Penn Stuart

**SUMMARY OF MEDICAL AND EMPLOYMENT EVIDENCE**
**(MINER'S CLAIM)**

| Date Issued:  March 18, 2011 | DOL Claim No.:  XXX-XX-0560 LM C |
|---|---|
| Miner's Name:  Joseph Fleming | Claimant's Name:  Joseph Fleming |
| Coal Mine Company:  Aberry Coal, Inc. | Insurance Carrier:  Security Insurance Company of Hartford |

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq. We have received the medical and employment evidence summarized below.  Based on a preliminary review of this evidence, we have concluded that Aberry Coal, Inc. is the responsible operator liable for the payment of any benefits in this claim.  We have also concluded that the claimant would be entitled to benefits if we made a decision at this time. A summary of the medical and employment evidence and an analysis of the evidence are set forth below.  Copies of all the evidence are attached to this document.

In order to qualify for black lung benefits, the claimant must prove the following facts:

- The claimant worked as a coal miner;
- The claimant has pneumoconiosis (black lung disease);
- The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
- The claimant has a totally disabling respiratory or pulmonary impairment; and
- The claimant's totally disabling impairment is caused at least in part by pneumoconiosis.

The evidence which we have received so far would support the following findings:

(X)   The claimant worked as a coal miner for 9¼ years;
(X)   The claimant has pneumoconiosis;
(X)   The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
(X)   The claimant has a totally disabling respiratory or pulmonary impairment; and
(X)   The claimant's totally disabling impairment was caused at least in part by pneumoconiosis.

However, the evidence also indicates that:

(  )   The claimant did not work as a coal miner;
(  )   The claimant does not have pneumoconiosis;
(  )   The claimant's pneumoconiosis was not caused by exposure to coal mine dust;
(  )   The claimant does not have a totally disabling respiratory or pulmonary impairment; and
(  )   The claimant's totally disabling impairment was not caused at least in part by pneumoconiosis.

## ENTITLEMENT ANALYSIS:

Based on the preliminary analysis of the medical evidence received to date, we have determined the following:

## RELATIONSHIP/DEPENDENCY:

Arlene, the spouse qualifies as an eligible dependent of the miner per 20 CFR 725.204.

Arlene, the spouse meets the relationship requirement per 20 CFR 725.205.

*(A copy of the marriage certificate is in the file as documentation.)*

## PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):

Glen R. Baker, M.D. examined the miner on January 14, 2011, on behalf of the Department of Labor. The chest x-ray dated January 14, 2011, by Glen R. Baker, M.D. (B-Reader) was interpreted as 1/1 (O) positive for simple pneumoconiosis.

Kathleen A. Deponte, M.D. (B-Certified; B-Reader) submitted a chest x-ray on behalf of the claimant and the film was interpreted as no pleural or parenchymal abnormalities indicative of pneumoconiosis are seen. The conclusion is a diagnosis of chronic obstructive pulmonary disease.

Dr. Baker provided the following diagnosis: Coal workers' pneumoconiosis 1/1 based on 2000 ILO Classification caused by coal dust exposure, chronic obstructive pulmonary disease with severe obstructive defect based on pulmonary function study caused by coal dust exposure and cigarette smoking, moderate resting arterial hypoxemia based on arterial blood gas study caused by coal dust exposure and cigarette smoking, chronic bronchitis. Dr. Baker noted that the miner is totally disabled.

He also has legal pneumoconiosis. He has a severe obstructive defect on pulmonary function testing, moderate resting arterial hypoxemia and a symptom complex of chronic bronchitis. These conditions can all be caused by coal dust exposure. He has a long history of cigarette smoking of 35 years at the rate of one-half to one pack per day. He quit smoking 5 years ago. This can also cause similar symptoms. The combination of coal dust and cigarette smoking may, in fact, be either synergistic or additive according to the medical literature.

Dr. Baker clarified his medical opinion and further noted that "I feel his 9¼ years of coal mine employment is sufficient to account for his x-ray changes, especially working in a high dust concentration as he did in his employment no matter how many years that he experienced." The medical evidence is sufficient for a finding of simple pneumoconiosis. Therefore, the requirements of 20 CFR 718.201 (a); 718.202 (a) (1) & (a) (4) have been met.

## RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:

Causality has been established by a reasoned medical opinion and 9¼ years of coal mine employment proven per 20 CFR 718.203 (c) and the presence of pneumoconiosis. A reasoned medical opinion supports a finding that the disease arose at least in part out of coal mine employment. The presumption has not been rebutted.

## DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:

The arterial blood studies dated January 14, 2011, performed by Dr. Baker produced negative results; however, the pulmonary function studies dated January 14, 2011, produced positive and valid results for a totally disabling respiratory impairment. Dr. Baker noted that the miner is totally disabled. The requirements of 20 CFR 718.204 (b) (2) (i) & (b) (2) (iv) have been met.

## FIFTEEN YEAR PRESUMPTION:

This claim has been reviewed to determine if the changes in the Black Lung Benefits Act mandated by the Patient Protection and Affordable Care Act of 2010 (PPACA), Public Law 111-148 §1556(a), apply. Section 411(c)(4) of the Act provides presumptions of total disability due to pneumoconiosis or death due to pneumoconiosis under certain circumstances. The presumptions are applicable to claims that were filed before January 1, 1982 or after January 1, 2005, and were pending on or after March 23, 2010.

The presumption is available to miners who worked for a cumulative period of fifteen or more years in underground mining, or comparable surface mining, and the evidence establishes the existence of a totally disabling respiratory or pulmonary impairment. If a survivor establishes that the miner worked for fifteen or more years in coal mine employment and that the miner suffered from a totally disabling chronic respiratory or pulmonary impairment prior to death, it is presumed that the miner's death was due to pneumoconiosis. The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purpose of applying this presumption, shall be made in accordance with section 20 CFR 718.204.

For rebuttal in a miner's claim, the party opposing entitlement must establish either that the miner does not or did not have pneumoconiosis or that the miner's impairment did not arise out of or in connection with coal mine employment. In a survivor's case, the party opposing entitlement must provide evidence sufficient to rebut the presumption of death due to pneumoconiosis.

***As less than fifteen (15) years of coal mine employment have been established, the presumption is not invoked.***

This is a refiled claim rather than a modification request because more than one (1) year elapsed between the prior denial and the filing of this claim. This claim is approved pursuant to 20 CFR 725.309(d) as there has been a material change in condition.

Based upon the above, the claimant would be entitled to benefits.

## EMPLOYMENT EVIDENCE:

Mr. Fleming alleged 18 years of coal mine employment. The earnings record from the Social Security Administration verifies approximately 9¼ years of coal mine employment from 1970 through 1991.

## LIABILITY ANALYSIS:

Mr. Fleming alleged coal mine employment with Aberry Coal, Inc.; from 1989 through April 1991. The allegation is supported by the earnings record from the Social Security Administration and a deposition dated January 6, 1995. These earnings represent more than a full calendar year of employment. Aberry Coal, Inc. is insured by Security Insurance Company of Hartford. Please note that there are no earnings recorded on the employment record after 1991.

Aberry Coal, Inc. has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon the earnings record from the Social Security Administration.

2. The miner's employment with this operator included at least one working day after 12/31/69 based upon the earnings record from the Social Security Administration.

3. There is a rebuttable presumption that coal mine workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5. This operator is the operator that most recently employed the miner according to the earnings record from the Social Security Administration.

A Notice of Claim was received by the potentially liable carrier, Security Insurance Company of Hartford, on September 4, 2010, as evidenced by the signed return receipt from the post office. The potentially liable carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.

By letters dated September 20, 2010, and December 1, 2010, Aberry Coal, Inc. has not accepted liability in this case.

## MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represent the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is Evidence of record or New evidence developed for this claim.)

**MINER:** Joseph Fleming
**CLAIM NO.:** XXX-XX-0560 LM C

### X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 10/02/2010 | 10/03/2010 CN | Kathleen A. Deponte, M.D. | B-Certified; B-Reader | 1 | No pleural or parenchymal abnormalities indicative of pneumoconiosis are seen. **Conclusion:** chronic obstructive pulmonary disease |
| 01/14/2011 | 01/14/2011 DN | Glen R. Baker, M.D. | B-Reader | 1 | 1/1 (O) Simple CWP |
| 01/14/2011 | 01/25/2011 D | Peter R. Barrett, M.D. | B-Certified; B-Reader | 1 | Quality Reading |

### Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/ Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS FEV1 | MVV | FVC | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/14/2011 DN | Glen R. Baker, M.D. | 65/68.3 | 0.67 | *NONE* | 3.17 | 21% | 1.85 | 74 | 2.38 | *YES* |

### Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/ Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|---|---|---|---|---|---|---|---|
| 01/14/2011 DN | Glen R. Baker, M.D. | Resting | 44.0 | 69.0 | 60.0 | 0-2999 | *TESTS NOT VALIDATED VALUES EXCEED STANDARDS* |

***THE ABG EXERCISE TEST IS MEDICALLY CONTRAINDICATED DUE TO THE PATIENT EXPERIENCING CHEST PAIN UPON EXERTION.***

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 01/14/2011 DN | Glen R. Baker, M.D. -<br><br>Board Certified in Internal Medicine, Subspecialty in Pulmonary Disease | Dr. Baker provided a diagnosis of coal workers' pneumoconiosis 1/1 based on 2000 ILO Classification caused by coal dust exposure, chronic obstructive pulmonary disease with severe obstructive defect based on pulmonary function study caused by coal dust exposure and cigarette smoking, moderate resting arterial hypoxemia based on arterial blood gas study caused by coal dust exposure and cigarette smoking, chronic bronchitis. Dr. Baker noted that the miner is totally disabled.<br><br>***Dr. Baker further noted the following:***<br><br>He also has legal pneumoconiosis. He has a severe obstructive defect on pulmonary function testing, moderate resting arterial hypoxemia and a symptom complex of chronic bronchitis. These conditions can all be caused by coal dust exposure. He has a long history of cigarette smoking of 35 years at the rate of one-half to one pack per day. He quit smoking 5 years ago. This can also cause similar symptoms. The combination of coal dust and cigarette smoking may, in fact, be either synergistic or additive according to the medical literature. |
| 01/28/2011 DN | Glen R. Baker, M.D. -<br><br>Board Certified in Internal Medicine, Subspecialty in Pulmonary Disease | ***CLARIFYING MEDICAL OPINION DATED 01/28/2011:***<br><br>"It is my gut opinion that he does have Coal Workers' Pneumoconiosis, at least category 1/1, due to his coal mine employment, even if it is 9¼ Years. Although, I feel he does have more years than that of actual employment. I feel his severe chronic obstructive pulmonary disease (COPD) has more likely led to his longer history of cigarette smoking; though there has been some contribution from his dust exposure as well. The current medical literature suggests that the combination of cigarette smoking and coal dust exposure may be either additive or synergistic in terms of their effects on breathing problems.<br><br>To answer your questions very simply, I feel that 9¼ years of coal mine employment would be a significant degree of coal mine exposure for this patient to develop category 1/1 degree of pneumoconiosis. I also feel there is probably more years of employment than is actually verified. As always there is some other possible cause of his x-ray changes other than coal dust exposure as over one hundred diseases may mimic or cause similar x-ray changes as coal dust exposure may with the presence of Coal Workers' Pneumoconiosis.<br><br>Again, I feel his 9¼ years of coal mine employment is sufficient to account for his x-ray changes, especially working in a high dust concentration as he did in his employment no matter how many years that he experienced." |

## Length of Coal Mine Employment

The claimant has proven **9¼ years** of coal mine employment.

A414

## GUIDE FOR SUBMITTING ADDITIONAL MEDICAL EVIDENCE
### (MINER'S CLAIM)

In order to receive Black Lung benefits, you must prove four medical "facts":

- You have pneumoconiosis (black lung disease);

- Your pneumoconiosis was caused at least in part by exposure to coal mine dust;

- You have a totally disabling respiratory or pulmonary impairment; and

- Your totally disabling impairment was caused at least in part by your pneumoconiosis.

"Pneumoconiosis" is a chronic lung disease caused by inhaling coal mine dust. X-ray, biopsy, and (in the case of a deceased miner) autopsy evidence may show the presence of certain types of pneumoconiosis in the lungs. Pneumoconiosis may also be diagnosed by a physician who finds a lung disease present which is caused by inhaling coal mine dust. "Totally disabled" means you are unable to perform the type of work you did as a coal miner because of a breathing impairment. Pneumoconiosis "causes" your total disability if the disease has a "material adverse effect" on your respiratory or pulmonary condition, or "materially worsens" a totally disabling impairment which is caused by another disease.

**NOTE: The Black Lung benefits program has limitations on the amount of medical evidence which the parties can submit. You are encouraged to get advice from an attorney or other qualified representative before submitting any additional evidence.**

The Black Lung benefits program regulations contain important limitations on the amount of medical evidence parties to a claim may submit. The following guidelines explain the quantity and types of evidence which you and the responsible operator (or the Department of Labor) may submit. You may submit the following types of evidence to prove you are entitled to benefits.

- No more than two chest X-ray interpretations. You may submit two x-ray readings of one film, or one reading each of two different films. NOTE: The professional training of the doctor who interprets the X-ray is important. If the doctor is trained as a "B"-reader and/or board-certified radiologist, his or her interpretation may be given more weight than an interpretation by a doctor who is not specially trained;

- No more than one report of each biopsy;

- No more than one report of an autopsy (if a survivor is pursuing a claim filed by a miner who is now deceased);

- The results of no more than two pulmonary function studies and two arterial blood gas studies; and

- No more than two medical reports containing a physician's assessment of the miner's respiratory or pulmonary condition.

**NOTE:** When you filed your application, you selected a physician to conduct a complete pulmonary examination, and the Department of Labor paid the costs of that examination. At your request, we will send the results of the objective testing to the physician of your choice. If your physician provides a medical report for our consideration, that report will count as one of the two reports which you may submit.

You may also submit the following types of evidence:

- No more than one physician's interpretation of each chest X-ray, pulmonary function study, arterial blood gas study, autopsy report, or biopsy report submitted by the responsible operator or the Department of Labor;

- No more than one physician's assessment apiece of any other test or procedure submitted by the responsible operator or the Department of Labor;

- No more than one statement from any physician who originally interpreted the chest X-ray or performed a biopsy or autopsy for you if the responsible operator or the Department of Labor submits rebuttal evidence involving that evidence;

- No more than one additional statement from a physician who prepared a medical report submitted by you if the responsible operator's or Department's rebuttal evidence tends to undermine your physician's conclusions.

- You may also submit treatment records from a hospital, clinic, or physician if your treatment involved a lung condition. There is no limit on the number of treatment records which you may submit.

- In order to assist you, the "Guide" describes each medical fact which you must prove and the evidence which may prove the fact. When we consider the evidence you submit, we must also consider any other properly submitted evidence as well.

**DISEASE:** You must prove you have pneumoconiosis. You may submit any or all of the following types of evidence:

- A chest X-ray interpreted by a doctor as showing simple or complicated pneumoconiosis.

- A biopsy report of your lung tissue.

- (For a claim filed by a miner who is now deceased), an autopsy of the deceased miner which includes a review of his or her lungs.

- A doctor's report which is based on an accurate knowledge of your work and medical history, symptoms, and medical testing. The doctor's report should not be based only on chest X-rays. The doctor must explain why he or she believes your lung condition is caused by working as a coal miner.

Each X-ray, biopsy report, autopsy report, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these procedures and reports.

**CAUSALITY:** You must prove your pneumoconiosis was caused at least in part by exposure to coal mine dust.

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked at least ten years as a coal miner you are entitled to a presumption that your Black Lung was caused by your exposure to coal mine dust. You are not required to submit any medical evidence. The Department of Labor or the responsible operator may submit evidence showing your Black Lung was not caused by exposure to coal mine dust. You may not exceed the limits on the amount of evidence required by the "Guide."

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked fewer than ten years as a coal miner you must submit evidence that your exposure to coal mine dust caused your Black Lung. An X-ray which shows you have Black Lung is not enough to prove that coal mine dust exposure caused the disease. A doctor's opinion that your Black Lung was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

- <u>If you submit a medical report from a physician who has diagnosed the presence of a lung disease</u> you must submit evidence that your exposure to coal mine dust caused the lung disease at least in part. A doctor's opinion that your lung disease was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

**TOTAL DISABILITY:** You must prove that you have a totally disabling respiratory or pulmonary impairment. You may submit any or all of the following types of evidence:

- A chest X-ray, biopsy, or autopsy interpreted by a doctor as showing complicated pneumoconiosis.

- The results of no more than two pulmonary function studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations for your gender, height, and age on the day you take the test.

- The results of no more than two arterial blood gas studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations.

- A doctor's report which is based on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your lung condition causes a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

- Each X-ray, pulmonary function study, arterial blood gas study, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these studies and reports. The limitations on the amount of evidence which you may submit must be strictly observed.

**DISABILITY CAUSATION:** You must prove that your Black Lung is a "substantially contributing cause" of your totally disabling respiratory or pulmonary impairment. Proving that you are totally disabled is not enough to prove that Black Lung is one of the causes of your disability. A doctor's opinion may be sufficient to prove your Black Lung is the cause, or one of the causes, of your disability. The doctor should base his or her opinion on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your Black Lung causes, or contributes to, a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.



**OPERATOR RESPONSE TO SCHEDULE FOR SUBMISSION OF ADDITIONAL EVIDENCE**

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

| Miner's Name:<br><br>**Joseph Fleming** | Claimant's Name:<br><br>**Joseph Fleming** | Claim Number:<br><br>**XXX-XX-0560 LM C** | OMB No.: 1215-0058<br>Expires: 12/31/2010 |
|---|---|---|---|
| Responsible Operator's Name:<br><br>**Aberry Coal, Inc.** | Insurer's Name:<br><br>**Security Insurance Company of Hartford** | Policy No.<br><br>**WC 97-05-73** | |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.) (20 CFR 725.410). Please check appropriate boxes below. While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim. You also will be deemed to have contested the claimant's entitlement to benefits.

## A.  Liability

The named responsible operator:

☐  Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.

☐  Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence advises you of the time period within which you may submit evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2). Absent extraordinary circumstances, no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.

## B.  Claimant's Entitlement

The named responsible operator:

☐  Accepts the claimant's entitlement to benefits.

☐  Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement. If you enter no response in this section, you will be deemed to have contested the claimant's entitlement to benefits.

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| | Title |
| | Signature | Date |

Public Burden Statement

We estimate that it will take an average of 20 minutes to complete this collection of information, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**

Form CM-2970
Rev Jan. 2001

A418

## Table of Coal Mine Industry Average Earnings

| ANTHRACITE | | BITUMINOUS | | | |
|---|---|---|---|---|---|
| YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD |
| 1937 | 693.75 | 1937 | 585 00 | 1974 | 6080.00 |
| 1938 | 657.50 | 1938 | 525 00 | 1975 | 7405.00 |
| 1939 | 705.00 | 1939 | 598.75 | 1976 | 8008.75 |
| 1940 | 648.75 | 1940 | 617.50 | 1977 | 8987.50 |
| 1941 | 657.50 | 1941 | 750 00 | 1978 | 10038.75 |
| 1942 | 705.00 | 1942 | 857.50 | 1979 | 10878.75 |
| 1943 | 648.75 | 1943 | 1057.50 | 1980 | 10927.50 |
| 1944 | 733.75 | 1944 | 1267.50 | 1981 | 12100 00 |
| 1945 | 876.25 | 1945 | 1315.00 | 1982 | 12698.75 |
| 1946 | 1,060.00 | 1946 | 1362.50 | 1983 | 13720 00 |
| 1947 | 1,262.50 | 1947 | 1606.25 | 1984 | 14800 00 |
| 1948 | 1,342.50 | 1948 | 1691.25 | 1985 | 15250 00 |
| 1949 | 1,447.50 | 1949 | 1465 00 | 1986 | 15390 00 |
| 1950 | 1,553.75 | 1950 | 1633.75 | 1987 | 15750 00 |
| 1951 | 1,692.50 | 1951 | 1915 00 | 1988 | 15940 00 |
| 1952 | 1,750.00 | 1952 | 1880 00 | 1989 | 16250 00 |
| 1953 | 1,695.00 | 1953 | 2097.50 | 1990 | 16710 00 |
| 1954 | 1,775.00 | 1954 | 2022.50 | 1991 | 17080 00 |
| 1955 | 1,935.00 | 1955 | 2275.00 | 1992 | 17200 00 |
| 1956 | 2,083.75 | 1956 | 2472.50 | 1993 | 17260 00 |
| 1957 | 2,172.50 | 1957 | 2581.25 | 1994 | 17760 00 |
| 1958 | 2,130.00 | 1958 | 2415 00 | 1995 | 18440 00 |
| 1959 | 2,183.75 | 1959 | 2661.25 | 1996 | 18740.00 |
| 1960 | 2,266.35 | 1960 | 2687.50 | 1997 | 19010.00 |
| | ** | 1961 | 2645.00 | 1998 | 19160.00 |
| | ** | 1962 | 2717.50 | 1999 | 19340.00 |
| | ** | 1963 | 2835 00 | 2000 | 19090.00 |
| | ** | 1964 | 3031.25 | 2001 | 19040.00 |
| | ** | 1965 | 3222.50 | 2002 | 19640.00 |
| | ** | 1966 | 3438.50 | 2003 | 19900.00 |
| | ** | 1967 | 3662.50 | 2004 | 21570.00 |
| | ** | 1968 | 3801.25 | 2005 | 22060.00 |
| | ** | 1969 | 4261.25 | 2006 | 22080.00 |
| | | 1970 | 4777.50 | 2007 | 21960.00 |
| | | 1971 | 5008.75 | 2008 | 23270.00 |
| | | 1972 | 5576.25 | 2009 | 26140.00 |
| | | 1973 | 5898.75 | | |

\*   Figures for 1937-1970 were published by the Bureau of Census.  Those for 1971 to present were published by the Bureau of Labor Statistics.  All figures are based on annual industry wage survey.  After 1990, the Bureau of Labor Statistics stopped keeping records on an annual basis.  Standards from that year on are based on multiplying the average hourly rate by 1000 hours.  A "year" as defined here is 125 working days.

\*\*   After 1960, average wage standards are the same for anthracite and bituminous mines.



of Labor
line Workers' Compensation
Kentucky 40353

■ Complete items 1, 2, and 3. Also complete
Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

1. Article Addressed to:

ABERRY COAL, INC.
PO BOX 426
POUND, VA 24279

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

SCOTT    0560 FLEM

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7010 3090 0001 4715 0569

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

UNITED STATES POSTAL SERVICE
PRIORITY MAIL
Visit us at usps.com

ABERRY COAL, INC.
PO BOX 426
POUND, VA 24279

RECEIVED
APR 18 2011
ESA/OWCP/DCMWC
Mt. Sterling, KY

3-21
3-28
4-11
REMAILED BY
REG. MAIL ON
4-18-2011

7010 3090 0001 4715 0569

UNITED STATES
$ 010.07
MAILED FROM ZIP CODE 4035

A420

RECEIVED
2010
ESA / OWCP / DCMWC
Mt. Sterling, KY

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING
WADE W. MASSIE II, III
MICHAEL F. BLAIR III
WILLIAM M. MOFFET III
MARK L. ESPOSITO III
TIMOTHY W. GRESHAM III
H. ASHBY DICKERSON
BYRUM L. GEISLER III
RICHARD E. LADD, JR. III
W. BRADFORD STALLARD
RAMESH MURTHY III
MARK E. FRYE III
LISA FRISINA CLEMENT
ANDREW M. HANSON II
JOHN A. MARTIN I, III
TIMOTHY K. LOWE I, III

# PENNSTUART

Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with *

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN



JOHN B. HEMMINGS (RETIRED)

JESSE F. NARRON
CAMERON S. BELL III
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL III
ELIZABETH R. WALTERS OF COUNSEL III
BRUCE E. GIBSON OF COUNSEL III
BRIAN J. RIFE III
JOHN R. SIGMOND III
WENDY E. WARREN
J. RANDALL BROOKS, JR. I, II, III
JOSEPH S. HALL
WESLEY B. BOGGS I, III
HOLLY N. MANCL II, IV, V
JOHN S. HONEYCUTT III, *
JENNIFER S. ROSE

E-Mail: mblair@pennstuart.com   Direct Dial: (423) 793-4806   Direct Fax: (423) 793-4846

November 29, 2010

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Jennifer Jackson
U.S. Department of Labor
Federal Black Lung Office
402 Campbell Way
Mt Sterling, KY 40353

     RE:    Joseph Fleming v. Aberry Coal, Inc.
           OWCP No.: XXX-XX-0560
           PS&E File No.: 40-756

Dear Ms. Jackson:

    We represent Aberry Coal, Inc. in the above referenced federal black lung claim. We forwarded an Operator Response to you on September 16, 2010. Enclosed please find a supplement to that response.

    Yours truly,

    PENN, STUART & ESKRIDGE

    Michael F. Blair

MFB/rab
Enclosure
cc:   Joseph E. Wolfe, Esquire (Cert. Mail/RRR)
      Patti Wise (81062144) (w/o enclosure)

DIRECTOR EXHIBIT
NO. 20.1 CONSISTING
OF 3 PAGES

Bristol: 290929-1

A421



RECEIVED

DEC 0 1 2010

ESA/OWCP/DCMWC
Mt. Sterling, KY

Operator Response
to Notice of Claim

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation
Division of Coal Mine Workers' Compensation

| Miner's Name | Claimant's Name | Claim Number | OMB No.:1215-0058 |
|---|---|---|---|
| Joseph Fleming | Joseph Fleming | XXX-XX-0560 | |

| Potentially Liable Operator's Name | Insurer's Name | Policy Number |
|---|---|---|
| Aberry Coal, Inc. | Security Insurance Company of Hartford, c/o Arrowpoint Capital | |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.). Please check appropriate boxes and provide requested information. **While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in Section B.** You must send a copy of this response to the claimant by regular mail.

**A.  Acceptance of Liability**

___    The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act.

**B. Controversion of Liability**

Indicate whether the named potentially liable operator accepts or denies the assertions that follow.  **Acceptance of these assertions is not necessarily an acceptance of liability.**  You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ___ | X | This operator was an operator for any period after 6/30/73. |
| ___ | X | This operator employed the miner <u>as a miner</u> for a cumulative period of not less than one year. |
| ___ | X | The miner was exposed to coal mine dust while working for this operator. |
| ___ | X | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ___ | X | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

**Time period for submission of evidence.**  Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90-day period.  The time period may be extended for good cause shown if an extension request is filed with the district director prior to the expiration of the 90-day period.  You must include a statement of reasons why you need additional time with your extension request.

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue, N. W., Washington, D.C. 20210.  **(DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**
**Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number.**





RECEIVED
DEC 01 2010
ESA/OWCP/DCMWC
Mt. Sterling, KY

RECEIVED
NOV 30 2010
ESA/OWCP/DCMWC
Mt. Sterling, KY

C. Additional Information

Please answer the questions below.  If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form.  If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (i.e. within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

1. The miner was employed by the named potentially liable operator (list **all** periods of employment)

    From: _____    To: _____
    _____    _____
    _____    _____

    Miner's Job                  Time Performed          Name and Location of
    Classification               (Beginning and          Mine or Facility
    Type(s) of Work performed    Ending Dates            (County and State)

    _____         _____        _____
    _____         _____        _____
    _____         _____        _____

2. The named potentially liable operator is insured for its obligations under the Black Lung Benefits __ as an approved self-insurer or __ by a policy or contract of insurance as follows:

    Insurance Carrier(s)         Policy Number(s)        Dates of Coverage

    _____         _____        _____
    _____         _____        _____
    _____         _____        _____

3. Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notices of Claim as potentially liable operators? __ Yes __ No  If yes, please explain the nature of the relationship:

    _____
    _____
    _____

4. Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or substantially all of the assets thereof, to another person or business organization? __ Yes __ No  If yes, please explain the details of the transaction(s), including the name(s) of the person(s) or organizations(s) acquiring the property:

    _____
    _____
    _____
    _____

5. Please set forth any additional facts regarding potential liability you would like to have considered:

    _____
    _____
    _____

| Name & Address of Firm | Signature | November 29, 2010 |
|---|---|---|
| Penn, Stuart & Eskridge<br>P.O. Box 2009<br>Bristol, VA 24203 | Michael F. Blair<br>Title   Attorney, | |

Bristol: 290927-1

A423

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

JOHN B. HEMMINGS (RETIRED)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING [III]
WADE W. MASSIE [II, III]
MICHAEL F. BLAIR [III]
WILLIAM M. MOFFET [III]
MARK L. ESPOSITO [III]
TIMOTHY W. GRESHAM [III]
H. ASHBY DICKERSON
BYRUM L. GEISLER [III]
RICHARD E. LADD, JR. [III]
W. BRADFORD STALLARD
RAMESH MURTHY [III]
MARK E. FRYE [III]
LISA FRISINA CLEMENT
ANDREW M. HANSON [III]
JOHN A. MARTIN [III]
TIMOTHY K. LOWE [I, III,]

JESSE F. NARRON
CAMERON S. BELL [III]
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL [III,]
ELIZABETH R. WALTERS OF COUNSEL [III]
BRUCE E. GIBSON OF COUNSEL [III]
BRIAN J. RIFE [III]
JOHN R. SIGMOND [III]
WENDY E. WARREN
J. RANDALL BROOKS, JR. [I, II, III]
JOSEPH S. HALL
WESLEY B. BOGGS [I, III]
HOLLY N. MANCL [IV, V,]

## PENNSTUART

Since 1890

### ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with ·

Additional Bar Memberships:
[I] KY; [II] WV; [III] TN; [IV] IL; [V] MN

E-Mail: mblair@pennstuart.com        Direct Dial: (423) 793-4806        Direct Fax: (423) 793-4846

September 16, 2010

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Jennifer Jackson
U.S. Department of Labor
Federal Black Lung Office
402 Campbell Way
Mt Sterling, KY 40353

RECEIVED
SEP 2 0 2010
ESA / OWCP / DCMWC
Mt. Sterling, KY

RE:    Joseph Fleming v. Aberry Coal, Inc.
       OWCP No.:  XXX-XX-0560
       PS&E File No.:  40-756

Dear Ms. Jackson:

We have received your notification indicating that Security Insurance Company of Hartford, c/o Arrowpoint Capital is being considered as responsible insurer in the above-captioned federal black lung claim. While we agree that we should be a party-at-interest to all future proceedings in this matter, we note that the employment data in the file may not be final. Therefore, we reserve the right to contest our liability as responsible operator in this instance, if and when additional information becomes available. We would appreciate your forwarding to us copies of all future correspondence in this matter. We are enclosing our conditional controversion form.

Yours truly,

**PENN, STUART & ESKRIDGE**

Michael F. Blair

MFB/RAB/cld
Enclosure
cc:    Joseph E. Wolfe, Esquire (Cert. Mail/RRR)
       Patti Wise (81062144)

DIRECTOR EXHIBIT
NO. _19.1_ CONSISTING
OF ___3___ PAGES

Bristol: 283765-1

A424

Operator Response
to Notice of Claim

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation
Division of Coal Mine Workers' Compensation

| Miner's Name<br><br>Joseph Fleming | Claimant's Name<br><br>Joseph Fleming | Claim Number<br><br>XXX-XX-0560 | OMB No.:1215-0058 |
|---|---|---|---|
| Potentially Liable Operator's Name<br><br>Aberry Coal, Inc. | Insurer's Name<br><br>Security Insurance Company of Hartford, c/o Arrowpoint Capital | | Policy Number |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.). Please check appropriate boxes and provide requested information. **While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in Section B.** You must send a copy of this response to the claimant by regular mail.

A.   Acceptance of Liability

___   The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act.

B. Controversion of Liability

Indicate whether the named potentially liable operator accepts or denies the assertions that follow. **Acceptance of these assertions is not necessarily an acceptance of liability.** You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ___ | X | This operator was an operator for any period after 6/30/73. |
| ___ | X | This operator employed the miner <u>as a miner</u> for a cumulative period of not less than one year. |
| ___ | X | The miner was exposed to coal mine dust while working for this operator. |
| ___ | X | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ___ | X | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

**Time period for submission of evidence.** Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90-day period. The time period may be extended for good cause shown if an extension request is filed with the district director prior to the expiration of the 90-day period. You must include a statement of reasons why you need additional time with your extension request.

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue, N. W., Washington, D.C. 20210. **(DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)** **Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number.**

RECEIVED
SEP 2 0 2010
ESA/OWCP/DCMWC
Mt. Sterling, KY

Bristol: 283766-1

19.2

## C. Additional Information

Please answer the questions below.  If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form.  If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (i.e. within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

1. The miner was employed by the named potentially liable operator (list **all** periods of employment)

   **From:** _____    **To:** _____

   _____           _____

   | Miner's Job Classification Type(s) of Work performed | Time Performed (Beginning and Ending Dates) | Name and Location of Mine or Facility (County and State) |
   |---|---|---|
   | _____ | _____ | _____ |
   | _____ | _____ | _____ |

2. The named potentially liable operator is insured for its obligations under the Black Lung Benefits __ as an approved self-insurer or __ by a policy or contract of insurance as follows:

   | Insurance Carrier(s) | Policy Number(s) | Dates of Coverage |
   |---|---|---|
   | _____ | _____ | _____ |
   | _____ | _____ | _____ |

3. Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notices of Claim as potentially liable operators? __ Yes __ No  If yes, please explain the nature of the relationship:

   _____

   _____

   _____

4. Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or substantially all of the assets thereof, to another person or business organization? __ Yes __ No  If yes, please explain the details of the transaction(s), including the name(s) of the person(s) or organizations(s) acquiring the property:

   _____

   _____

   _____

   _____

5. Please set forth any additional facts regarding potential liability you would like to have considered:

   _____

   _____

RECEIVED

SEP 2 0 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

| Name & Address of Firm | Signature | September 16, 2010 |
|---|---|---|
| Penn, Stuart & Eskridge P.O. Box 2009 Bristol, VA 24203 | Michael F. Blair Title  Attorney, | |

Bristol: 283766-1

A426



U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

7009 2250 0002 8690 9872

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**SECURITY INSURANCE COMPANY OF HARTFORD
C/O ARROWPOINT CAPITAL
3600 ARCO CORPORATE DRIVE
CHARLOTTE, NC 28273**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   Jack MacGregor   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   Mile Marker Logistics   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)   7009 2250 0002 8690 9872

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**DIRECTOR EXHIBIT**
NO. _18.1_ CONSISTING
OF _9_ PAGES

UNITED STATES
POSTAL SERVICE®

Home | Help |
Sign In

# Track & Confirm

### Search Results

Label/Receipt Number: 7009 2280 0002 8690 9872
Service(s): **Certified Mail**
Status: **Delivered**

Your item was delivered at 11:28 am on September 04, 2010 in CHARLOTTE, NC 28273.

**Detailed Results:**

- **Delivered, September 04, 2010, 11:28 am, CHARLOTTE, NC 28273**
- **Arrival at Unit, September 04, 2010, 10:51 am, CHARLOTTE, NC 28241**

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.     Go >

**Track & Confirm**

Enter Label/Receipt Number.

Go >

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

**U.S. DEPARTMENT OF LABOR**      **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY   40353-7847**



September 2, 2010      **Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax: (859) 498-5787**

MINER:   Joseph Fleming
CLAIM NO.:   XXX-XX-0560 LM C

Joseph Fleming
1226 Zirkle Road
Dandridge, TN  37725

Dear Mr. Fleming:

Aberry Coal, Inc. has been named as the "potentially liable operator"
responsible for your black lung claim.  The operator may be
represented by a law firm or insurance company.

The Black Lung Benefits Act provides you and the operator certain
rights and responsibilities.  The operator may, at their expense,
schedule you for a deposition concerning your employment.  They also
may request other information and documentation related to your
employment history.

You are obligated to cooperate or comply with any reasonable request
by the operator or representative.  If you believe any request is
unreasonable, contact this office for a determination of the
appropriateness of the request. DO NOT refuse to cooperate unless this
office advises that the request is not reasonable.

Failure to cooperate with any reasonable request by the operator may
cause your claim to be denied by reason of abandonment.

We have provided you a copy of the notice that tells the operator that
your claim has been filed.  That notice is for your information only;
it does not require any action on your part.

If you have any questions, please call this office.

Sincerely,

Jennifer J. Jackson
Claims Examiner

cc:  Wolfe, Williams, Rutherford & Reynolds
     Aberry Coal, Inc.
     Security Insurance Company of Hartford

18.2

A429

**U.S. DEPARTMENT OF LABOR**      **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**402 Campbell Way**
**Mt. Sterling, KY  40353-7847**



**Phone:   (859) 497-8501 or 1-800-366-4628**
**Telefax: (859) 498-5787**

### NOTICE OF CLAIM

Date Issued:  September 2, 2010

| | |
|---|---|
| **Miner's Name: Joseph Fleming** | |
| Claimant's Name/Address | Claim Number |
| Joseph Fleming<br>1226 Zirkle Road<br>Dandridge, TN  37725 | XXX-XX-0560 LM C |
| Potentially Liable Operator/Address | Insurance Carrier/Address |
| Aberry Coal, Inc.<br>PO Box 426<br>Pound, VA  24279 | Security Insurance Company<br>  of Hartford<br>c/o Arrowpoint Capital<br>3600 Arco Corporate Drive<br>Charlotte, NC  28273<br><br>*Policy Number: WC 97-05-73* |

The claimant named above has filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. 901 et seq.  We are currently developing the claim to determine the claimant's eligibility.  Enclosed is a copy of the claimant's application and any evidence OWCP has obtained to date relating to the miner's employment.

This Notice of Claim is issued pursuant to 20 C.F.R. 725.407.  We have identified you as a "potentially liable operator" in this claim.  A "potentially liable operator" is an employer of the miner (or a successor of an employer pursuant to 20 C.F.R. 725.492) who may be held liable for the payment of benefits should the claimant be found entitled to them.  Designation as a potentially liable operator does not constitute a determination that you are in fact liable.  Where OWCP's records indicate you obtained a policy of insurance, and the claim falls within such policy, we are sending a copy of this notice to your insurer.  You and your insurer shall be considered parties to the claim unless an adjudication officer dismisses you and you are not thereafter notified again of your potential liability.

*Our rationale for identifying Aberry Coal, Inc. as the responsible operator in this case is as follows:*

> *Mr. Fleming alleged coal mine employment with Aberry Coal, Inc.; from 1989 through April 1991.  The allegation is supported by the earnings record from the Social Security Administration and a deposition dated January 6, 1995.  These earnings represent more than a full calendar year of employment.  Aberry Coal, Inc. is insured by Security Insurance Company of Hartford.  Please note that there is no work reported after 1991.*

18.3

A430

Within 30 days of receipt of this Notice of Claim, you (or your insurer) must file a response pursuant to 20 C.F.R. 725.408 indicating your intent to accept or contest your identification as a potentially liable operator. This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 30 days. We have enclosed a form entitled "Operator Response to Notice of Claim" for your use. Please send your response and any other correspondence to the Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation, at the address shown above.

If you accept liability for the payment of benefits should the claimant obtain an award (*i.e.* you accept that you are the "responsible operator"), please mark the box in Section A (entitled "Acceptance of Liability") on the Operator Response to Notice of Claim. **Accepting liability means only that you are the operator liable for the payment of any benefits due; it does not constitute a stipulation or admission that the claimant is entitled to benefits.**

If you wish to contest your status as a potentially liable operator, you must state the precise nature of your disagreement by accepting or denying each of the five assertions listed in Section B (entitled "Contest of Potential Liability – Operator Assertions) on the Operator Response to Notice of Claim. The assertions are limited to information about your employment of the miner and your status as an operator. If you deny any of the five operator assertions, you have 90 days from your receipt of this notice to submit documentary evidence in support of your response. This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 90 days. **Absent extraordinary circumstances, no documentary evidence relevant to the assertions set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim) may be admitted in any further proceedings unless it is submitted within 90 days of your receipt of this notice or an extended period authorized by the District Director.**

If you do not respond within 30 days of your receipt of this Notice of Claim, you will not be allowed to contest your liability for payment of benefits on any of the grounds set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim).

Please note that your response need not include evidence about any other potentially liable operator and its employment of the miner. At the conclusion of the initial evidence-gathering period, the District Director will issue a Schedule for the Submission of Additional Evidence pursuant to 20 C.F.R. 725.410. In that schedule, the District Director will select and designate one "responsible operator" from the potentially liable operators notified. All parties will then be given an opportunity to present evidence regarding the liability of the designated responsible operator or any other operator.

NOTE: THE "OPERATOR RESPONSE TO NOTICE OF CLAIM" MUST INCLUDE THE ORIGINAL SIGNATURE OF AN AUTHORIZED OFFICIAL FOR THE POTENTIALLY LIABLE RESPONSIBLE OPERATOR OR ITS INSURANCE CARRIER. WE CANNOT ACCEPT A COPY OF THE RESPONSE SENT BY FAX IN LIEU OF THE ORIGINAL DOCUMENT.

We are available to assist you with this process.  I may be contacted at the address and telephone number shown above.

Sincerely,

Jennifer J. Jackson
Claims Examiner

Enclosures:   Copy of claim and evidence relating to miner's employment history
              Operator Response to Notice of Claim form (Form No. CM-2970a)

cc:   Joseph Fleming
      Wolfe, Williams, Rutherford & Reynolds
      Aberry Coal, Inc.
      Security Insurance Company of Hartford

# OPERATOR RESPONSE TO
# NOTICE OF CLAIM

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

| Miner's Name: | Claimant's Name: | Claim Number: | OMB No.: 1215-0058 Expires: 12/31/2010 |
|---|---|---|---|
| **Joseph Fleming** | **Joseph Fleming** | **XXX-XX-0560 LM C** | |

| Responsible Operator's Name: | Insurer's Name: | Policy No. |
|---|---|---|
| **Aberry Coal, Inc.** | **Security Insurance Company of Hartford** | **WC 97-05-73** |

**This information is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et.seq.) (20 CFR 725.408). Please check appropriate boxes and provide requested information. While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in Section B. (20 CFR 725.408).** You must send a copy of this response to the claimant by regular mail.

## A. Acceptance of Liability

☐ The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act

## B. Controversion of Liability

Indicate whether the named potentially liable operator accepts or denies the assertions that follows.
Acceptance of these assertions is not necessarily an acceptance of liability. You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ☐ | ☐ | This operator was an operator for any period after 06/30/73. |
| ☐ | ☐ | This operator employed the miner <u>as a miner</u> for a cumulative period of not less than one year. |
| ☐ | ☐ | The miner was exposed to coal mine dust while working for this operator. |
| ☐ | ☐ | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ☐ | ☐ | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

**Time period for submission of evidence.** Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90 day period. The time period may be extended for good cause shown if an extension request is filed with the district director prior to expiration of the 90 days period. You must include a statement of reasons why you need additional time with your extension request.

## Public Burden Statement

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N. W., Washington, D.C. 20210. **Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)**

Form CM-2970a
Rev. Jan. 2001

## C. Additional Information

Please answer the questions below. If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form. If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (*i.e.* within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

1. The miner was employed by the named potentially liable operator (list all periods of employment):

From: _____          To: _____

_____          _____

_____          _____

| Miner's Job Classification(s)/ Type(s) of Work Performed | Time Performed (Beginning and Ending Dates) | Name and Location of Mine or Facility (County and State) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

2. This named potentially liable operator is insured for its obligations under the Black Lung Benefits Act
   ☐ as an approved self-insurer or   ☐ by a policy or contract of insurance as follows:

| Insurance Carrier(s) | Policy Number | Dates of Coverage |
|---|---|---|
| _____ | _____ | _____ |

3. Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notice of Claim as potentially liable operators?   ☐ Yes   ☐ No   If yes, please explain the nature of the relationship.

_____

_____

_____

4. Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or substantially all of the assets thereof, to another person or business organization?   ☐ Yes   ☐ No   If yes, please explain the details of the transaction(s), including the name(s) of the person(s) or organization(s) acquiring the property.

_____

_____

_____

5. Please set forth any additional facts regarding potential liability you would like to have considered.

_____

_____

_____

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| | Title |
| | Signature        Date |

A434



...ent of Labor
...al Mine Workers' Compensation
... Way
..., Kentucky 40353

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7009 0820 0001 1462 2507

☐ Not deliverable as addressed
☐ Unable To Forward
☐ Insufficient Address
☐ Moved, Left No Address
☐ Unclaimed ☐ Refused
☐ No Such Street
☐ Attempted - Not Known
☐ Vacant
☐ No-Mail
☐ Box...

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ABERRY COAL INC.
PO BOX 4...
POUND... 24279

NOC...    05GO FHEM

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X     ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7009 0820 0001 1462 2507

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

RECEIVED
OCT 0 1 2010
ESA / OWCP / DCMWC
Mt. Sterling, KY

REM...
RE...

9.8...
9-13...
9-0...



ABERRY COAL INC.
PO BOX ...
POUND ... 24279

**U.S. Department of Labor**

**Employment Standards Administration**
**Office of Workers' Compensation Programs**
**Division of Coal Mine Workers' Compensation**

**Date**

A Joseph Fleming

I, _Joseph Fleming_, authorize and appoint
**(claimant's name)**

7/19/2010

**Wolfe Williams & Rutherford**
**(representative's name)**

P. O. Box 625
**(address)**

Norton, VA  24273

(276) 679-0777
**(phone number)**

to represent me before the Office of Workers' Compensation Programs in the pursuit of my claim for black lung benefits under the Federal Mine Safety and Health Act of 1977, as amended.

Claimant's Signature :  Joseph Flemi

DOL Claim Number    :  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

Claimant's Address    :  1226 Zirkle Rd

Dandridge TN

Zip Code    :  37725

865-397-9654

**DIRECTOR EXHIBIT**

NO 17 CONSISTING

OF 1 PAGES

**RECEIVED**

**AUG 1 6 2010**

ESA / OWCP / DCMWC
Mt. Sterling, KY

Ltr. CM-1078
Rev. Oct. 1978

A436

GEO. E. PENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING [III]
WADE W. MASSIE [II, III]
MICHAEL F. BLAIR [II]
WILLIAM M. MOFFET [II]
MARK L. ESPOSITO [II]
TIMOTHY W. GRESHAM [III]
H. ASHBY DICKERSON
BYRUM L. GEISLER [III]
RICHARD E. LADD, JR. [II]
W. BRADFORD STALLARD
RAMESH MURTHY [III]
MARK E. FRYE [II]
LISA FRISINA CLEMENT
ANDREW M. HANSON [II]
JOHN A. MARTIN [II]
TIMOTHY K. LOWE [I, III, •]

JOHN B. HEMMINGS (RETIRED)

JESSE F. NARRON
CAMERON S. BELL [II]
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL [II, •]
ELIZABETH R. WALTERS OF COUNSEL [II]
BRUCE E. GIBSON OF COUNSEL [III]
TEMPLE W. CABELL OF COUNSEL [II]
JOHN R. SIGMOND [III]
WENDY E. WARREN
J. RANDALL BROOKS, JR. [II, III]
JOSEPH S. HALL
WESLEY E. BOGGS [I, III]
HOLLY N. MANCL [II, IV, V]
JOHN S. HONEYCUTT [III]
JENNIFER S. ROSE

# PENN STUART

### Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
[I] KY; [II] WV; [III] TN; [IV] IL; [V] MN

E-mail: jmartin@pennstuart.com          Direct Dial: 423/793-4801          Direct Fax: 423/793-4841

June 15, 2011

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
Jennifer Jackson
U. S. Department of Labor
402 Campbell Way
Mt. Sterling, KY 40353

**RECEIVED**

**JUN 2 0 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

> Re:    Joseph Fleming v Aberry Coal, Inc.
>        OWCP No.: xxx-xx-0560
>        PS&E File No.: 40-756

Dear Ms. Jackson:

    In response to the Schedule for Submission of Additional Evidence, enclosed please find the following response evidence submitted pursuant to § 725.414(a)(3)(ii), which we would appreciate your filing on behalf of the employer:

1.    Validation report dated February 26, 2011 by Dr. Sarah Long regarding pulmonary function study performed January 14, 2011, along with Dr. Long's curriculum vitae

2.    April 6, 2011 interpretation of January 14, 2011 chest x-ray by Dr. Paul S. Wheeler, along with Dr. Wheeler's curriculum vitae

3.    Agreed order dated July 16, 2009 regarding Dr. Glen Baker's license to practice medicine in the Commonwealth of Kentucky

    We also rely on the evidence submitted by the employer and considered in the earlier claims.

Bristol: 309953-1

**DIRECTOR EXHIBIT**
NO. 16.1 CONSISTING
OF 23 PAGES

A437

Ms. Jennifer Jackson
RE: Joseph Fleming
June 15, 2011
Page 2

Sincerely,

PENN, STUART & ESKRIDGE

John A. Martin

JAM/rab
Enclosure
cc:    Robert Gonder (81062144, w/o enc. - via e-mail)
       Joseph E. Wolfe, Esq. (w/ enc. - via Certified Mail – RRR)

RECEIVED

JUN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

A438

Sarah B. Long, M.D.
2765 Bexley Park Road
Columbus, Ohio 43209
February 26, 2011

This is an evaluation of a pulmonary function study that was performed Joseph Fleming, FBLC No.: XXX-XX-0560.  This study was performed on January 14, 2011 at the office of Dr. Glen R. Baker, M.D.  DR. Baker supervised the study and signed the interpretation. The technician is Alvena Hill, MT.  The equipment is SensorMedics Vmax.

This study was performed before bronchodilator only.  There are very small copies of three flow volume loops.  These are too small to evaluate.  There is a copy of three superimposed spirometric tracings.  The initial slope of all of these tracings is quite shallow.  This indicates less than optimal effort at the start of forced expiration.  Thus the FEV1 would not be valid.

This pulmonary function study is not valid per Federal Black Lung Regulations because of less than optimal effort in performing the study.  This study would not be useful in the evaluation of a respiratory impairment.

*Sarah B. Long, M.D.*

Sarah B. Long, M.D.

Copied by FBLC

RECEIVED

JUN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

16.2

A439

NAME: FLEMING, JOSEPH

Date: Jan 14, 2011

ID# 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

DOB: 9/11/1945

**DEPT OF HEALTH AND HUMAN SERVICES**
**PUBLIC HEALTH SERVICE**
National Institute for Occupational Safety and Health
Federal Mine Safety & Health Act 1977

**B-READING**

Coal Worker's Health Surveillance Program
NIOSH PO Box 4258
Morgantown, WV 26504

PENNSTUART

**CHEST** (PA) **LAT RAO LAO AP**

Film Agency: G.R. BAKER, M.D.

**1. FILM QUALITY**

1 ☒2☐ 3 u/r

☐ Dark   ☐ Improper Position ☐ Hypoinflation
☒ Light   ☒ Poor Contrast   ☐ Mottle
☐ Artifacts  ☐ Poor Processing

Comments: UNDEREXPOSURE T-SPINE AND MID AND LOWER LUNGS (QUALITY 2)

**2A. Any Parenchymal abnormalities consistent with Pneumoconiosis?**   YES ☐ goto 2B, 2C   NO ☒ goto 3A

**2B. Small Opacities**

a. Shape / Size

| Primary | | Secondary | |
|---|---|---|---|
| p | s | p | s |
| q | t | q | t |
| r | u | r | u |

b. Zones

| | R | L |
|---|---|---|
| Upper | | |
| Middle | | |
| Lower | | |

**2C. Large Opacities**

c. Profusion

| | | |
|---|---|---|
| 0/_ | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

Size | 0 | A | B | C |

**4C. Mark all boxes that apply**
Airway Disorders
☐ Increased lung markings
☐ Hyperinflation
Bony Abnormalities
☐ Chest cage
☐ Fracture, healed (non-rib)
☐ Fracture, not healed (non-rib)
☒ Scoliosis
☐ Vertebral column
Abnormalities of the Diaphragm
☐ Eventration
☐ Hiatus hernia
Lung Abnormalities
☐ Azygos lobe
☐ Density
☐ Infiltrate
☐ Nodule, nodular lesion
Miscellaneous Abnormalities
☐ Cyst
☐ Foreign Body
☐ Surgery / sternal wires
Vascular Disorders
☐ Aorta, anomaly of
☐ Vascular abnormaliikty

**3A. Any Pleural abnormalities consistent with Pneumoconiosis?**   YES ☐ goto 3B, 3C   NO ☒ goto 4A

**3B. Pleural Plaques**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<½ 2=¼-½ 3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | 1=<½ 2=¼-½ 3=>½ | a=3-5 b=5-10 c=>10mm |
| Face On | O R L | O R L | | |
| Diaphragm | O R L | O R L | O R / 1 2 3 | O L / 1 2 3 | O R / A B C | O L / A B C |
| Other site(s) | O R L | O R L | | |

**3C. Costrophenic Angle Obliteration**   ☒ R L goto 3D   NO ☒ goto 4A

**3D. Diffuse Pleural Thickening**

| Chest Wall | SITE | CALCIFICATION | EXTENT (lateral chest wall profile + face on) 1=<½ 2=¼-½ 3=>½ | WIDTH (profile only) (3mm minimum width) a=3-5 b=5-10 c=>10mm |
|---|---|---|---|---|
| In Profile | O R L | O R L | | |
| Face On | O R L | O R L | O R / 1 2 3 | O L / 1 2 3 | O R / A B C | O L / A B C |

**4A. ANY Other Abnormalities?**   YES ☒ goto 4B, 4C, 4D, 4E   NO ☐ goto

**4B Other Symbols (Obligatory)**

| aa | at | ax | bu | ca | cg | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | me | pa | pb | pi | px | ra | rp | tb |

☒ Report other diseases or significant abnormalities in section 4C/4D

**4D.**
C
O
M
M
E
N
T
S

O
T
H
E
R
C
O
M
M
E
N
T
S

CHEST PA — HYPERINFLATION WITH DECREASED UPPER LUNG MARKINGS COMPATIBLE WITH EMPHYSEMA MORE LIKELY THAN DEEP BREATH. CHECK PULMONARY FUNCTIONS AND SMOKING HISTORY.
PROBABLE MINIMAL MEDIASTINAL AND POSSIBLE INTRAABDOMINAL OBESITY. CHECK BODY MASS INDEX.
FOCAL ARTERIOSCLEROSIS AORTIC ARCH AND SUBTLE SCOLIOSIS T-SPINE CURVED RIGHT.
PROBABLY NO OTHER ABNORMALITY BUT LIGHT FILM BLURS SOME FINE LUNG DETAIL IN MID AND LOWER LUNGS.
REPEAT WITH GOOD TECHNIQUE AND 30 DEGREE OBLIQUES OR GET CT SCAN FOR BETTER EVALUATION IF CLINICALLY INDICATED OR IF ANYONE HAS REPORTED THIS EXAM AS SHOWING PNEUMOCONIOSIS.
APPROXIMATE CTR: 12/32 EXCLUDING CARDIOPHRENIC ANGLE FAT.

**RECEIVED**

**JUN 2 0 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

**4E. Should worker see personal physician for findings in section 4.?**   YES ☒ NO ☐   Date Notified: /

**5.**   ☐☐☐ ☐☐ ☐☐☐☐

Physician's Soc. Security #

Name: Paul S. Wheeler, M.D.

Address: Johns Hopkins Hospital, 600 N. Wolfe Street, Baltimore, MD 21287 USA

Film Reader's Initials

*Date of Reading*

Apr 6, 2011 17:00 hr

Copied by PS&E | 4.3

A440

FILED OF RECORD

**JUL 16 2009**

K.B.M.L.

COMMONWEALTH OF KENTUCKY
BOARD OF MEDICAL LICENSURE
CASE NO. 1182

IN RE: THE LICENSE TO PRACTICE MEDICINE IN THE COMMONWEALTH OF
KENTUCKY HELD BY GLEN R. BAKER, M.D., LICENSE NO. 15090, 440
HOPKINSVILLE STREET, GREENVILLE, KENTUCKY 42345

AGREED ORDER

Come now the Kentucky Board of Medical Licensure (hereafter "the Board"),

acting by and through its Hearing Panel B, and Glen R. Baker, M.D. ("the licensee"),

and, based upon their mutual desire to fully and finally resolve the pending Complaint

without an evidentiary hearing, hereby ENTER INTO the following AGREED ORDER:

STIPULATIONS OF FACT

The parties stipulate the following facts, which serve as the factual bases for this

Agreed Order:

1.  At all relevant times, Glen R. Baker, M.D., was licensed by the Kentucky Board
    of Medical Licensure (hereafter "the Board") to practice medicine in the
    Commonwealth of Kentucky.

2.  The licensee's medical specialty is Pulmonary Disease Medicine.

3.  On April 4, 2006, the Board received a communication from Chris Johnson,
    R.Ph., Pharmacist Consultant, Drug Enforcement, Office of the Inspector General.
    Mr. Johnson reported that, as part of another investigation, his unit had reviewed
    the licensee's prescribing of controlled substances for the period January 1, 2004
    through February 13, 2006. Based upon this review, Mr. Johnson identified
    twenty (20) patient records that should be reviewed by a Board consultant, based

1



16.4

upon similar last names, polypharmacy, duplicate therapy, distance traveled to the

pharmacy, early refills, and use of addictive drug combinations.

4. The licensee's treatment records for 15 patients were obtained and provided to a

Board consultant for review. The consultant reviewed 9 of those records and

concluded, in part,

...
Review of Dr. Baker's charts was cumbersome. They consist of file folders with
loose paper except for stapled medication logs on the inside left and demographic
information on the inside right. Some charts seem to have an order to them with
progress notes on top, laboratory and radiologic reports, consultant letters, etc.
next, and billing records underneath. "Sticky" notes, presumably written by his
office staff, are frequently scattered throughout the chart. In one chart, I found
information on another patient of the same name, but with a different date of
birth. Dr. Baker currently uses "checklist" progress notes with some comments
added. However, his handwriting is illegible for the most part.
Therefore, most of the information I obtained was from consultant or hospital
typewritten reports or the legible handwritten documentation added to preprinted
history and physical forms his associates completed when they saw Dr. Baker's
patients in his absence. Examples of his charting are attached to the Expert
Review Worksheets. I attempted to maintain the charts in the same disarray in
which they arrived.
Dr. Baker has made attempts to document his prescriptions with medication logs
attached to the left inside covers of the charts. However, the amount and refills
are not included on the logs, and in some cases, medications documented
elsewhere in the charts are not included. Copies of these logs are attached to most
of the Expert Review Worksheets. There are occasional copies of prescriptions
he apparently signed, though most of them are written by someone else. It
appears he attempted to document in some of the progress notes what he had
prescribed, but that is mostly illegible. Copies of progress notes are also attached
to the Expert Review Worksheets.
I could discern no documentation of discussion with patients the potential
addictiveness of their scheduled medications. I found no contracts signed by
patients regarding their use of narcotics. Though included as part of the checklist
for Chronic Pain Syndrome, "no side effects from meds" is left blank in most
cases, as is "no excessive sleepiness" under Chronic Anxiety. However, Dr.
Baker did see these patients on a regular basis, with their visits matching the dates
on the KASPER for the most part. He did refuse to refill scheduled drugs when
patients reported them stolen or destroyed (mostly documented by the "sticky"
notes in some charts). He discharged DH from his practice for "recent legal
problems relating to drug trafficking...", and ran a KASPER on him and his
brother, RH. The discrepancies regarding early refills and prescriptions

2

A442

evidenced on the KASPERs cannot be discerned from Dr. Baker's charts, but I have included several months of most of the scheduled drugs, date of prescriptions and refills, amounts, and days of therapy with the Expert Review Worksheets.

Regarding Dr. Baker's care of these patients' other medical problems, though difficult to discern, he receives the benefit of the doubt. For the most part, their medical therapies appear appropriate for the diagnoses I could decipher. Of note, though some of his prescription forms indicate his practice is limited to pulmonology, and though some of the patients appeared to initially see him for respiratory problems, he attended to their other conditions, especially their chronic pain and anxiety. There was a paucity of laboratory evaluations in these charts; some definitely should have had more. ...Again, Dr. Baker's charts make it extremely difficult to thoroughly evaluate each case. Though I suspect he went to "checklist" progress notes at least in part to make them more legible, his illegible handwriting and practice of using a "squiggly" line through the physical examination portion of the progress notes do not improve his documentation. ....

In summary, from the information sent and the limited legibility, I discern no evidence that Dr. Baker prescribed medications with the intent of knowledge that they were likely to be used for purposes other than therapy. The amounts that were prescribed are probably not excessive if the patients' pain and anxiety were great. Further delineation from Dr. Baker is needed to discern whether their conditions warranted chronic, multiple, strong narcotics and benzodiazapines....Though attempts were made (such as mediation logs and checklist progress notes) to provide information, his charts fall short. They are incomplete. Since he apparently sees a large number of anxious chronic pain patients (as evidenced by a 286 page KASPER covering about 62 weeks), he should have better records of the patients' symptom severity, discussion of addiction potential, prescriptions provided (such as copies), and results of tests ordered. ...

5.  The Panel has attempted to address these violations in an informal manner.

Initially, the Panel asked the licensee to enter into a pre-litigation diversion

program, but the licensee declined to do so. The licensee had also indicated for a

period of time that he was fully retiring from the practice of medicine.

6.  During its initial review of this matter, the Inquiry Panel attempted to resolve the

issues through an informal diversion program which would have required the

licensee to successfully complete Prescribing and Documentation programs,

maintain a controlled substances log and submit to additional consultant reviews

3

to ensure that the issues had been adequately and appropriately addressed, along with paying the costs of the investigation. The licensee declined to enter into such an agreement because he was retiring from the practice of medicine. He also noted that he intended to surrender his DEA permit. The Panel voted to keep open the investigation to ensure that the licensee did both of those things.

7. The licensee did surrender his DEA permit in March 2007. He also provided a newspaper notice indicating that he was retiring from practice on January 15, 2007.

8. Following its initial review of this matter, the Board discovered another newspaper advertisement announcing the opening of Corbin-London Medical Associates, which indicated that practice was providing comprehensive family medicine, was accepting new patients and was "[w]elcoming back all former patients of Dr. Glenn Baker." The licensee was pictured in the advertisement, along with two ARNS's and 2 medical assistants. The Panel reconsidered its previous action based upon this new information.

9. The licensee responded that he did not intend to practice medicine at that location; rather, he was assisting a group of ARNP's by being available for consultation and serving as their "physician consultant" pursuant to a Collaborative Agreement for Non-scheduled Drugs. The licensee noted that he was maintaining his medical license in order to perform pulmonary evaluations, prepare reports of his findings and give depositions primarily dealing with black lung cases.

10. After reviewing all of the information available, Inquiry Panel A voted to issue this Complaint in order to resolve the issues in this case.

4

A444

11. While an evidentiary hearing was initially scheduled, the licensee has decided not to further contest this matter, for a variety of reasons.

<u>STIPULATED CONCLUSIONS OF LAW</u>

The parties stipulate the following Conclusions of Law which serve as the legal bases for this Agreed Order:

1. The licensee's Kentucky medical license is subject to regulation and discipline by this Board.

2. While he denies committing any violation or engaging in any wrongdoing, the licensee acknowledges and agrees that, based upon the Stipulations of Fact, the Hearing Panel could conclude that he has engaged in conduct which violates KRS 311.595(9), as illustrated by KRS 311.597(3) and (4). Accordingly, the parties agree that legal grounds exist for disciplinary action against his Kentucky medical license.

3. Pursuant to KRS 311.591(6) and 201 KAR 9:082, the parties may fully and finally resolve the pending Complaint without an evidentiary hearing by entering into an informal resolution such as this Agreed Order.

<u>**AGREED ORDER**</u>

Based upon the foregoing Stipulations of Fact and Stipulated Conclusions of Law, and, based upon their mutual desire to fully and finally resolve the pending Complaint without an evidentiary hearing, the parties hereby ENTER INTO the following

**AGREED ORDER:**

1. The license to practice medicine in the Commonwealth of Kentucky held by Glen R. Baker, M.D., SHALL BE SUBJECT to the terms and conditions of this Agreed

Order for a period of three (3) years, with that period to commence immediately upon the date of filing of this Agreed Order;

2. During the effective period of this Agreed Order, the licensee's Kentucky medical license SHALL BE SUBJECT to the following terms and conditions:

    a. The licensee SHALL NOT re-apply for his DEA permit unless and until the Panel approves him to do so;

    b. Before the Panel will consider any such request, the licensee must successfully complete the "Prescribing Controlled Drugs" course at either The Center for Professional Health at Vanderbilt University Medical Center, 1107 Oxford House, Nashville, TN 37232-0678, (615) 936-0678, or the University of South Florida College of Medicine, 12901 Bruce B. Downs Boulevard, MDC 46, Tampa, FL 33612, (813) 396-9217, at his expense, and provide the Board with written verification of his successful completion of that program;

    c. If the Panel should grant a request by the licensee that he be permitted to re-apply for his DEA permit, the Panel would do so by Amended Agreed Order which requires, at a minimum, that the licensee maintain a controlled substances log and permit the Board's agents to obtain and review that log and patient records, upon demand;

    d. The licensee SHALL successfully complete the Patient Care Documentation Seminar offered by the Center for Personalized Education for Physicians (CPEP), on either September 25, 2009 in Louisville, KY, or

6

on December 4, 2009 in Denver, CO, at his expense, and SHALL provide the Board with written verification of his completion of that program;

e.  If the licensee is providing clinical care for patients, even if it is on a part-time basis, at the time he completes the Documentation Seminar, he SHALL enroll in and successfully complete the CPEP Personalized Implementation Program, at his expense, and SHALL provide the Board with written verification of his completion of that program;

f.  The licensee SHALL pay the costs of this proceeding, $3,011.25, within twelve (12) months of the effective date of this Agreed Order;

g.  The licensee SHALL NOT violate any provision of KRS 311.595 and/or 311.597.

3.  The licensee expressly agrees that if he should violate any term or condition of the Agreed Order, the licensee's practice will constitute an immediate danger to the public health, safety, or welfare, as provided in KRS 311.592 and 13B.125. The parties further agree that if the Board should receive information that he has violated any term or condition of this Agreed Order, the Panel Chair is authorized by law to enter an Emergency Order of Suspension or Restriction immediately upon a finding of probable cause that a violation has occurred, after an *ex parte* presentation of the relevant facts by the Board's General Counsel or Assistant General Counsel. If the Panel Chair should issue such an Emergency Order, the parties agree and stipulate that a violation of any term or condition of this Agreed Order would render the licensee's practice an immediate danger to the health, welfare and safety of patients and the general public, pursuant to KRS 311.592

7

A447

and 13B.125; accordingly, the only relevant question for any emergency hearing

conducted pursuant to KRS 13B.125 would be whether the licensee violated a

term or condition of this Agreed Order.

4.  The licensee understands and agrees that any violation of the terms of this Agreed

Order would provide a legal basis for additional disciplinary action, including

revocation, pursuant to KRS 311.595(13).

SO AGREED on this 16th day of July, 2009.

FOR THE LICENSEE:


GLEN R. BAKER, M.D.


DARRELL L. SAUNDERS, ESQ
COUNSEL FOR THE LICENSEE

FOR THE BOARD:


RANDEL C. GIBSON, D.O.
CHAIR, HEARING PANEL B


C. LLOYD VEST II
General Counsel
Kentucky Board of Medical Licensure
310 Whittington Parkway, Suite 1B
Louisville, Kentucky 40222
(502) 429-7150

8

A448

## WAIVER OF RIGHTS

I, Glen R. Baker, M.D., am presently the Respondent in Kentucky Board of Medical Licensure Case No. 1182. I understand that, under 201 KAR 9:082, I must waive certain rights if I wish to resolve this matter by informal dispensation. Accordingly, I WAIVE my right to raise any constitutional, statutory or common law objection(s) I may have to the Hearing Panel rejecting the proposed informal dispensation or to the curtailment of such a settlement by the Board's General Counsel or Assistant General Counsel.

Furthermore, if the Hearing Panel accepts the proposed Agreed Order as submitted, I WAIVE my right to demand an evidentiary hearing or to raise additional constitutional or statutory objections in this matter. However, if the Hearing Panel should reject the proposed Agreed Order, I understand that further proceedings will be conducted in accordance with KRS 311.530 et seq, and I will have the right to raise any objections normally available in such proceedings.

Executed this __13__ day of __MAY__, 2009.


_____
GLEN R. BAKER, M.D.
Respondent


_____
DARRELL L. SAUNDERS, ESQ.
COUNSEL FOR THE RESPONDENT


9

A449

<u>CURRICULUM VITAE</u>

Name  Sarah Elizabeth Brackney Long

PERSONAL DATA

Born December 5, 1926 at Sidney, Ohio

Graduated from Wilbur Wright High School, Dayton, Ohio 1945

Married John Frederick Long June 15, 1948

Children: George Lynas, Helen Lucille (Corcoran), Harold Roy,

Clara Alice (Lawrence), Nancy Carol.

PROFESSIONAL EDUCATION

1945-1948  Ohio State University, Columbus, Ohio

   B.A. in Biological Sciences, with Distinction in
   Zoology

   Phi Beta Kappa-Honorary

1948-1952  Ohio State University College of Medicine

   Columbus, Ohio- Doctor of Medicine

1952-1953  Grant Hospital, Columbus, Ohio- Rotating Internship

1966-1969  Mt Carmel Medical Center, Columbus, Ohio

   Internal Medicine Residency, with special emphasis

   in Pulmonary Medicine

1968-1969  Chief Resident in Internal Medicine, Mt. Carmel

   Medical Center, Columbus, Ohio

   Board Eligible in Internal Medicine

COPIED BY FSRE

16.5

-2-    Sarah B. Long, M.D.

## POSITIONS HELD

1970 to present- Medical Consultant, Ohio Bureau of Disabilty
Determination.  This included all of Medical Consultive
Services for Black Lung Program during the period
it was administered by Social Security.

1979 to present- Physician Advisor to Utilization Management and
Peer Review at Mt. Carmel East Hospital, Columbus, Ohio

1973-1983  School Physician, Bexley, Ohio City Schools

1972 to present- Lecturer for pulmonary and cardiac systems.
Ohio Bureau of Disability Determination

1973-1976  Private Practice of Pulmonary Medicine, including
responsibility for interpertation of Pulmonary
Function Studies and Arterial Blood Gas Studies
in the Pulmonary Laboratory at Mt. Carmel Medical
Center, Columbus, Ohio

1970-1973  Physician. Student Health Service, Ohio State
University

1953-1966  General Medical Practice, plus a Leave of
Absence during a period when my children were young.

## MEMBERSHIP IN PROFESSIONAL ORGANIZATIONS

Franklin County, Ohio Academy of Medicine

Ohio State Medical Associan

Member of Active Stafff in the Department of Medicine.

Mt. Carmel Medical Center and Mt. Carmel East Hospital

Columbus, Ohio



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

# Paul S. Wheeler, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from **5/1/2009** until **4/30/2013**

*David N Weissman, MD*

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

A452

## CURRICULUM VITAE

Paul S. Wheeler, M.D.

### DEMOGRAPHIC INFORMATION

Current Appointments:    Associate Professor of Radiology
The Johns Hopkins Medical Institutions

Personal Data:    The Johns Hopkins Hospital – Radiology
410/955-5423
Fax: 410/955-5564
e-mail: pwheeler@jhmi.edu

### Education and Training:

B.A    1957    Harvard College
Cambridge, Massachusetts

M.D.    1961    Harvard Medical
Boston, Massachusetts

Internship    1961-1962    Cleveland Metropolitan General Hospital
Cleveland, Ohio

Radiology Residency    1963-1966    The Johns Hopkins Hospital
Baltimore, Maryland

Chief Resident/Radiology    1968-1969 – The Johns Hopkins Hospital
Baltimore, Maryland

### Professional Experience:

1968-1969   Instructor, Radiology
The Johns Hopkins Medical Institutions, Baltimore, Md

1969-1974   Assistant Professor, Radiology
The Johns Hopkins Medical Institutions, Baltimore, Md

1974-    Associate Professor, Radiology
The Johns Hopkins Medical Institutions, Baltimore, Md

---

Paul S. Wheeler, M.D.
Curriculum Vitae

### Professional Experience (Cont'd)

1970 -    Pneumoconiosis Interpretations for firms and government

1973 -    National Institute for Occupational Safety and Health, Examination, July 1973 to present

Relicensure "B" Reader Proficiency Examination - Certified 5/1/2005 – 4/30/2009

1974-1988    Director, Adult Outpatient Radiology Section

1981 -    Bethlehem Steel Corporation, Sparrows Point Plant, Baltimore, Silicosis Evaluation

1983 - 1985    The Medical Monitoring Program of the Maryland State Program - Headed by Dr. Marshall Levine, University of Medicine, Baltimore, Maryland (Asbestos Evaluation) (52

1984 -    Social Security Administration Project - Headed by Screening for Asbestos), Baltimore, Maryland

1984 -    Testimony before the United States Senate labor Sub Asbestos-related Litigations, April 24, Washington, D.C.

1986 -    Development of custom software for computer reporting w

Present    Director, Industrial Radiology – The Johns Hopkins Medica

### RESEARCH ACTIVITIES

#### Publications:
#### Peer-reviewed articles

1.   Wheeler PS and Honda M: Enlargement of the foramina ovale by in Neurology 15:785-786, August 1965.

2.   Margulies SI and Wheeler PS: Development of an automated repo the Second Conference on Computer Applications in Radiology, pp 1970.

3.   Reymond RD, Wheeler, PS, Perovic M, and Block B: The lucent cle cervical disc injury or disease. Clinical Radiology 23:188-192, 1972.

Paul S. Wheeler, M.D.
Curriculum Vitae

3

## Peer-reviewed articles (Cont'd):

4. Wheeler PS, Gitlin JN, Simborg DW, and Stiney J: The Johns Hopkins computer reporting system for diagnostic radiology. Proceedings of the Third Conference on Computer Applications in Radiology, pp 30-43, September 12-15, 1972.

5. Naidich DP, Bartelt D, Wheeler PS; and Stern WZ: Metallic mercury emboli. Am J Roentgenol 117:886-891, April, 1973.

6. Morgan RH, Donner MW, Gayler BW, Margulies SI, Rao PS, and Wheeler PS: Decision processes and observer error in the diagnosis of pneumoconiosis by chest roentgenography. Am J Roentgenol 117:757-765, April, 1973.

7. Wheeler PS and Simborg DW: The Johns Hopkins radiology computer reporting system. (Siemens) Electromedica 2-3:10-108, 1975.

8. Wheeler PS, Simborg DW, and Gitlin JN: The Johns Hopkins radiology reporting system. Radiology 119:315-319, May, 1976.

9. Wheeler PS: Comprehensive reporting by computer - A more cost-effective method than dictation. Proceedings of the Fifth Conference on Computer Applications in Radiology, pp 51-62, June 9-11, 1977.

10. Simborg DW, Krajci EJ, Wheeler PS, Gitlin JN, and Goldstein NS: Computer-Assisted radiology reporting: Quality of reports. Radiology 125:587-589, December 1977.

11. Wheeler PS and Gitlin JN: Computers in Radiology: A viewpoint of pitfalls and payoffs. Proceeding of the Sixth Conference on Computer Applications in Radiology, pp 1-4, June 18-21, 1979.

12. Donner MW, Wheeler PS, Gayler BW, Saba GP, and Olden RA: The Johns Hopkins Hospital Radiology viewing area. Applied Radiology 9:113-119, November-December, 1980.

13. Wheeler PS, Sillik FP, Hutchins GM, Klinefelter MD, and Siegelman SS: Diagnosis of Lipoid Pneumonia by Computed Tomography. JAMA 245:65-66, January, 1981.

14. Donner MW, Saba GP, Wheeler, PS, and Gayler BW: Planning Guide for Radiologic Installations. Fascicle 7, Part 2 - Facilities for Display and Interpretation of Radiographs (Radiology Viewing Area). American College of Radiology, Committee on Department Planning Commission of Equipment - 1981.

15. Wheeler PS: Risk Prevention, Quality Assurance, and the Missed Diagnosis Conference. Radiology 145:227-228, October, 1982.

Paul S. Wheeler, M.D.
Curriculum Vitae

## Peer-reviewed articles (Cont'd):

16. Wheeler PS, Pohlenz O, Hacker H, Freedman MT: The Missed Diag[...] Device. Radiology Today 2. F.H.W. Heuck and M.W. Donner, [...] Heidelberg, 1983.

17. Wheeler PS: Learning from Mistakes in Radiologic Practice. Diagnos[...]

18. Wheeler PS: What Does This X-ray Show? Surgical Rounds 6:118; 1[...]

19. Fishman EK, Pakter RL; Gayler BW, Wheeler PS, Siegelman SS [...] Diagnosis by computed tomography. J. Comput. Assist. Tomogr. 8(5):[...]

20. Wheeler PS: Direct reporting by computer in radiology: A special app[...] concept. Software in Healthcare, August-September 1985.

21. Wheeler PS: Error Management and quality assurance. Appl[...] January/February 1986.

22. Scott WW, Wheeler PS, Mitchell SE: Markers for Implanted Devices: [...] 148:387-390, February 1986.

23. Wheeler PS: Device Identification:Deficient Marking Systems. Editoria[...] 1986.

24. Hruban RH, Meziane MA, Zerhouni EA, Wheeler PS, D[...] Pathologic-Radiologic Correlation of Invasive Pulmonary Aspergill[...] Comput. Assist. Tomogr. 11 (3):534-536, May/June 1987.

25. Hruban RH, Meziane MA, Zerhouni EA, Khouri NF, Fishman EK, Whe[...] GM: High-resolution computed tomography of fixed-inflated lungs: Pa[...] of centrilobular emphysema. American Review of Respiratory Disease[...]

26. Yousem D, Traill TT, Wheeler PS, Fishman EK: Illustrative: Ca[...] Misdetection: Correlation of Echocardiography and CT. Cardiovasc. [...] 1987.

27. Wheeler, PS: Feeding tubes that pierce the lung: A case study in [...] assurance. Radiology (Editorial) 165:861, 1987.

28. Meziane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF, [...] Siegelman SS: High Resolution CT of the Lung Parenchyma [...] Radiographics 8, #1:27-54, January 1988.

29. Sison CP, Hruban RH, Moore W, Wheeler PS, Hutchins GM: Pulmon[...] pleural "asbestos" plaques. (Abstract) Laboratory Investigations, Janua[...]

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                    5

**Peer-reviewed articles (Cont'd):**

30. Harvey Textbook of Medicine ... Chapter 1.2 The Collection and Evaluation of Clinical Information. Johns R, Fortuin N, and Wheeler PS. In: The Principles and Practice of Medicine. Twenty-Second Edition, Harvey Am, Johns RJ, McKusick VA, Owens AH, and Ross RS (eds) Connecticut, Appleton Century Cross, 1988.

31. Ren H, Hruban RH, Kuhlman JE, Fishman EK, Wheeler PS, Zerhouni EA, and Hutchins GM: High resolution CT of rounded atelectasis: A radiologic pathologic correlation. J. Computed Assisted Tomogr. 12(6):1031-1034, 1988.

32. Sison RF, Hruban RH, Moore GW, Wheeler PS and Hutchins GM: Pulmonary disease associated with pleural asbestos plaques. CHEST, 95(4):831-835, April 1989.

33. Ren H, Hruban RH, Kuhlman JE, Fishman EF, Wheeler PS, Zerhouni EA and Hutchins GM: High resolution computed tomography of inflation-fixed lungs: The Beaded-Septum Sign of Pulmonary Metastases. J. Comput Assist Tomogr., 13(3):411-416, May/June 1989.

34. Ren H, Kuhlman JE, Hruban RH, Fishman EK, Wheeler PS and Hutchins GM: CT of inflation-fixed lungs: Wedge-shaped density and vascular sign in the diagnosis of infarction. J. Comput Assist Tomogr. 14(1):82-86, January/February 1990.

35. Hruban RH, Ren H, Kuhlman JE, Fishman EK, Wheeler PS, Baumgartner WA, Reitz, BA and Hutchins GM: Inflation-Fixed Lungs: Pathologic-Radiologic (CT) Correlation of Lung Transplantation. J. Comput. Assist Tomogr.:14(3):329-335, May/June 1990.

36. Ren H, Kuhlman JE, Hruban RH, Fishman EK, Wheeler PS and Hutchins GM: CT-Pathology Correlation of Amiodarone Lung. J. Comput Assist Tomogr. 14(5):760-765, September-October 1990.

37. Reger RB, Cole WS, Sargent EN, and Wheeler PS: Cases of Alleged Asbestos-Related Disease: a Radiologic Re-Evaluation. J. Occupational Medicine 32(11):1088-1090, November 1990.

38. Ren H, Lee DR, Hruban RH, Kuhlman JE, Fishman EK, Wheeler PS, and Hutchins GM: Pleural plaques do not predict asbestosis: High-resolution computed tomography and pathology study. Modern Pathology 4,#2:201-209, 1991.

39. Wheeler PS, Raymond S: The Computer-based Cumulative Report: Improvement in Quality and Efficiency. Radiology 182:355-357, 1992.

40. Lee WA, Hruban RH, Kuhlman JE, Fishman EK, Wheeler PS and Hutchins GM: High resolution computed tomography of inflation-fixed lungs: Pathologic-Radiologic correlation of pulmonary lesions in patients with leukemia, lymphoma, or other hematopoietic proliferative disorders. Clinical Imaging 16:15-24, 1992.

---

Paul S. Wheeler, M.D.
Curriculum Vitae

**Peer-reviewed articles (Cont'd):**

41. Wheeler PS, Scott WW, Jr. Medical Devices and Their Radiologic V... editors: Radiologic Guide to Medical Devices and Foreign Bodies. Louis, Missouri.

42. Scott WW Jr, Beall DP, Wheeler PS: The retained intrapericardial s... radiograph. AJR 171:595-597, 1998.

**ABSTRACTS:** Presented at United States and Canadian Academy of P...

1. High Resolution Computed Tomography of Inflation-Fixed Lungs: P... of Lung Transplantation. R. H. Hruban, H. Ren, J.E. Kuhlman, E.K... Baumgartner, B.A. Reitz, and G.M. Hutchins. Modern Pathology Vo...

2. High Resolution Computed Tomography and Pathology Study of F... Asbestosis. H. Ren, D.R. Lee, R.H. Hruban, J.E. Kuhlman, E.K. Fi... Hutchins. Modern Pathology Vol 3, 1990.

3. High Resolution Computed Tomography of Inflation-Fixed Lungs:... Associated Vascular Sign in the Diagnosis of Pulmonary Infarctio... Hruban, E.K. Fishman, P.S. Wheeler, and G.M. Hutchins. Modern Pathology...

**Extramural Sponsorship**

1970-present      Pneumoconiosis interpretations for firms and gov...

**EDUCATIONAL ACTIVITIES**
Teaching:
Residents at reading stations
Ongoing, Medical Students on Radiology Elective (4 hours per mont...

Editorial Activities:
Advisory Committee -- Continuing Medical Education, The Johns Ho...

**CLINICAL ACTIVITIES**
Certification:

1962   National Board of Medical Examiners
1965   Maryland State Board of Medical Examiners (#D10447
1968   American Board of Radiology (Written Examination)
1969   American Board of Radiology (Oral Examination)

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                7

<u>Service Responsibilities</u>
1966-1967    United States Army, General Medical Officer, 7th Special Force (airborne)

1967-1968    United States Army, General Medical Officer, 5th Special Force (airborne) Viet Nam

ORGANIZATIONAL ACTIVITIES

<u>Institutional Appointments:</u>



1970-        Pneumoconiosis Interpretations for firms and government agencies
1970-        Organizing Error Management conference for departmental QA
1973-1978    Medical Records Committee -- Appointed Chairman, Subcommittee on Abbreviations
             Medical Records Committee in 1975 (Developed updated list of abbreviations)
1973-        Outpatient Service Committee
1973-1979    Utilization Review Committee
1974-1988    Director, Adult Outpatient Radiology Section
1975-1990    Risk Prevention/Incident Review Committee
1980-1989    Professional Advisory Group to Quality Assurance Department
1983-        Editorial Board -- Medical Grand Rounds & Clinical Conferences
1984         Committee for Development of Outpatient Brochure -- Guide for the Patient, JHMI
1984-        Chairmanship for the Subcommittee on Focused Review, Medical Care Evaluation Comm
             Committee, JHMI
1986         Subcommittee for Enteral Feeding Tubes.  Develop policies for use and placement of
             Enteral feeding tubes.  Develop policies for use and placement of enteral feeding tubes.
             Meyerhoff Center for Digestive Disease, JHH
1993-        Consultant/Radiologist, The Baltimore City Eastern Chest Clinic -- TB Cases
2007         AJR Manuscript and Book Reviewer
Present      Advisory Committee, Radiology Information Technology, John Hopkins Hospital

<u>Professional Societies:</u>

1987-1995    Member of the American College of Radiology Task Force on Pneumoconiosis

             Ongoing Member of the American College of Radiology

<u>Consultantships:</u>
1970         Veterans Administration Hospital, Baltimore, Maryland.
1973         Siemens Corporation for Computer Reporting and Training
1975         Trained Staff at the Huntington Avenue VA Hospital, Boston, Massachusetts
1977         Course Director: Computer Reporting in Radiology - The Johns Hopkins Hospital
1977         Visiting Professor - March 21 - 22 - Training on computer reporting at the University of New
             Mexico, Albuquerque, New Mexico
1978         Visiting Professor - August 29 - September 2 - Training on computer reporting at the Loma
             Linda VA, Loma Linda, California
1979         Walter Reed Army Hospital, Washington, D.C.

---

Paul S. Wheeler, M.D.
Curriculum Vitae

RECOGNITION

<u>Awards:</u>
1986         Mezlane MA, Hruban RH, Zerhouni EA, Wheeler PS, KI
             GM, Siegelman SS: High Resolution CT of the Lung Pa
             Correlation.  Presented at the 72nd Scientific Assembly a
             Radiological Society of North America, Chicago, Illinois.

1987         Mezlane MA, Hruban RH, Zerhouni EA, Wheeler PS, KI
             GM, Siegelman SS: High Resolution CT of the Lung Pa
             Correlation.  Presented at the Annual American Roetger
             Miami, Fla.  <u>Gold Medal Award</u>

1997         Beall DP, Scott WW, Eng J, Hoffmann LV, Gayler E
             Khazan R, Bohlman ME:  Self Evaluation Radiographic
             Based Receiver Operating Characteristic Analysis Us
             Presented at 83rd Scientific Assembly and Annual Meet
             North America, Chicago, November 1997.  <u>Certificate o</u>

<u>Invited Talks:</u>

             <u>Computer Reporting</u> - Hopkins' and Siemens Uni

1972         Rochester Symposium - Planning Radiologic Diagnostic
1973 (Oct)   ECHO Meeting (IBM users) Kansas City
1973 (Oct)   XIII International Congress of Radiology, Madrid, Sp
             outline for modifying the original Johns Hopkins Radiol
             alone microcomputer version
1973 (May)   Association of University Radiologists - 21st Annual N
             Columbia, Vancouver, Canada
1974 (June)  Second Rochester Symposium - Planning and Operation
1974 (June)  AER Symposium - Computers in Diagnostic Radiology,
             on the Hopkins' system as well as moderate of one sess
1975         American Roentgen Ray Society, Atlanta, Georgia
1975 (Mar)   Fourth Conference -Proceedings of Computer Applica
             Nevada - Same presentation given at the University of
             1975.
1975 (June)  AER (Third Congress of the European Association of
             Presentation as well as demonstration of computer rep
1975 (Oct)   Third Rochester Symposium
1976         ISPRAD-II (2nd International Symposium on Planning of
1977         XIV Congresso Internacional De Radiología - Rio De Jan
             Presentation as well as demonstration.
1978 (April) Fourth Rochester Symposium

---

A456

Paul S. Wheeler, M.D.
Curriculum Vitae                                                                    9

### Invited Talks:  Computer Reporting

1978 (Aug)   Association of Radiologic Department Administrators - Las Vegas, Nevada
1979         International Symposium - Computers in Health Care, University of Wilwatersrand, Johannesburg, South Africa Presentation as well as demonstration for the City Hospital

### Central Viewing Facility



1978   Fourth Rochester Symposium - Presented: Central Viewing Facility: An Efficient Film Control Method

### General Presentations

1977         American Roentgen Ray Society - Boston, Massachusetts, Presented: Cervical Disc Vacuum Cleft: A Useful Sign of Acute Injury
1983 (Nov)   Radiological Society of North America Computed Tomography of Large Silicotic Opacities - Chicago, Illinois
1984 (Feb)   Occupational Medicine Course, School of Hygiene, The Johns Hopkins Medical Institutions. Presentation on Pneumoconiosis
1984 (Feb)   Maryland Radiological Technology Society - Baltimore City Hospital. Presentation on Technical Problems
1984 (April) Pulmonary Group, Pneumoconiosis Course, The Johns Hopkins Medical Institutions Presentation on Pneumoconiosis
1984 (April) Radiologic Technologists (Senior and Junior Class), The Johns Hopkins Hospital Presentation on Technique
1984 (April) Presentation at the United States Senate, Labor Subcommittee Hearing - Washington, D.C. Presentation:Asbestosis-related Litigations: A Scientific Perspective and Solution
1984 (May)   Topics in Clinical Medicine, Philip A. Tumulty Course. Presentation: Asbestosis: A Semantic Epidemic, The Johns Hopkins Medical Institutions
1984 (Nov)   Radiological Society of North America, Washington, D.C. Presentation: Asbestos: The Role of Radiology in a Semantic Epidemic.
1984 (Nov)   Radiological Society of North America, Washington, D.C. Presentation: Error Management: The Foundation of Meaningful Quality Assurance.
(April)      187th Annual Meeting of the Medical and Chirurgical Faculty of the State of Maryland Presentation: Asbestosis: How Serious a Problem?
1987 (Mar)   Visiting Professor, Radiology Group of New Brunswick, New Jersey. Presentation: Asbestosis - Senate Fact Finding.
1998 (April) Annual Health Conference - Occidental Chemical Corporation Presentation: Quality - Anything Worth Doing...Is Worth Doing Well
2000 (Mar)   National Industrial Sand Association – Seminar – 'Occupational Health 'Program, Leesburg, VA. Presentation:  X-ray Interpretations for the Pneumonioses.
2003 (July)  Annual Meeting for the Members of the Libby Medical Program, Montana. Presentation: Pneumoconiosis – Quality Assurance.

---

Paul S. Wheeler, M.D.
Curriculum Vitae

### General Presentations – Cont'd

2009 (April) "Etiology of Pneumoconioses and their Detection in the U ___ Health Effect of Indoor and Outdoor Air Pollution (4th term ___ Johns Hopkins Bloomberg School of Public Health

### SCIENTIFIC EXHIBITS:
#### A Functional Computer Reporting System for Radio ___

1973   Radiological Society of North America, Chicago, Illinois

#### The Johns Hopkins Radiology Computer Reporting S ___

1972   First Rochester Symposium
1973   XIII International Congress of Radiology, Madrid, Spain
1975   Radiological Society of North America, Chicago, Illinois

#### Technical Exhibits and Demonstrations

1976-1978   Radiological Society of North America - Display of SIREP ___

1986   Mezlane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF ___ Slegelman SS: High Resolution CT of the Lung Parenchyma with ___ Presented at the 72nd Scientific Assembly and Annual Meeting ___ North America, Chicago, Illinois. Certificate of Merit Award

1987   Mezlane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF ___ Fixed Lungs: Pathologic Radiologic Correlations. Presented at t ___ Association of Pathologists Scientific Assembly, Chicago, Illinois.

1987   Mezlane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF ___ Slegelman SS: High Resolution CT of the Lung Parenchyma with ___ Presented at the Annual American Roentgen Ray Society Meeting ___ Gold Medal Award

1987   Mezlane MA, Hruban RH, Zerhouni EA, Wheeler PS, Khouri NF ___ Slegelman SS: High Resolution CT of the Lung Parenchyma with ___ Presented at the European Congress of Radiology (May 29 - Jun ___

1991   Wheeler PS, Raymond SR: Computer-Based Cumulative Repor ___ Improvement. Presented at 77th Scientific Assembly and Annual ___ Society of North America (November 29 - December 6, 1991).Chi ___

1994   Bluemke D, Eng J, Wheeler P:  The Radiology Reporting Workstat ___ Implementation. Presented at 80th Scientific Assembly and Annu ___ Society of North America (November 28 - December 2, 1994) Ch ___

Paul S. Wheeler, M.D.
Curriculum Vitae                                                    11

<u>Technical Exhibits and Demonstrations – Cont'd</u>

1997   Beall DP, Scott WW, Eng J, Hoffmann LV, Gayler BW, Siegelman SS, Wheeler PS, Khazan R,
       Bohlman ME: Self Evaluation Radiographic Interpretation: Real-Time Internet-Based Receiver
       Operating Characteristic Analysis Using Computer-Based Data Entry. Presented at 83rd
       Scientific Assembly and Annual Meeting of The Radiological Society of North America,
       Chicago, November 1997. Certificate of Merit

*PSW/mes*
*Rev: 4/09*



**First Class Ma**





PENNST
POST OFFICE
BRISTOL, VIR

CERTIFIED MAIL

7011 0110 0001 3403 2213

RECEIVED
JUN 2 0 2011
ESA/OWCP/DCMWC
Mt. Sterling, KY

Jennifer Jackson
U. S. Department of Labor
Office of Workers' Compensation
402 Campbell Way
Mt. Sterling, KY 40353

GEO. E. RENN (1895-1931)
WM. A. STUART (1922-1976)
G.R.C. STUART (1952-1991)

## PENNSTUART

### Since 1890

JOHN B. HEMMINGS (RETIRED)

WM. W. ESKRIDGE
STEPHEN M. HODGES
W. CHALLEN WALLING [II]
WADE W. MASSIE [II, III]
MICHAEL F. BLAIR [III]
WILLIAM M. MOFFET [III]
MARK L. ESPOSITO [III]
TIMOTHY W. GRESHAM [III]
H. ASHBY DICKERSON
BYRUM L. GEISLER [III]
RICHARD E. LADD, JR. [III]
W. BRADFORD STALLARD
RAMESH MURTHY [III]
MARK E. FRYE [III]
LISA FRISINA CLEMENT
ANDREW M. HANSON [III]
JOHN A. MARTIN [III]
TIMOTHY K. LOWE [I, III, *]

### ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with *

Additional Bar Memberships:
[I] KY; [II] WV; [III] TN; [IV] IL; [V] MN

JESSE F. NARRON
CAMERON S. BELL [II]
KARI LOU FRANK
PATRICIA C. ARRIGHI OF COUNSEL
RICHARD E. LADD, SR. OF COUNSEL [III, *]
ELIZABETH R. WALTERS OF COUNSEL [III]
BRUCE E. GIBSON OF COUNSEL [III]
TEMPLE W. CABELL OF COUNSEL
JOHN R. SIGMOND [III]
WENDY E. WARREN
J. RANDALL BROOKS, JR. [I, II, III]
JOSEPH S. HALL
WESLEY B. BOGGS [I, III]
HOLLY N. MANCL [III, IV, V]
JOHN S. HONEYCUTT [III]
JENNIFER S. ROSE

E-mail: jmartin@pennstuart.com    Direct Dial: 423/793-4801    Direct Fax: 423/793-4841

May 16, 2011

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Jennifer Jackson
U. S. Department of Labor
402 Campbell Way
Mt. Sterling, KY 40353

    Re:    Joseph Fleming v Aberry Coal, Inc.
           OWCP No.: xxx-xx-0560
           PS&E File No.: 40-756

Dear Ms. Jackson:

    In response to the Schedule for Submission of Additional Evidence, enclosed please find the following medical evidence, which we developed, submitted pursuant to § 725.414(a)(3)(i), which we would appreciate your filing on behalf of the employer:

    1.    April 22, 2011 report of the April 20, 2011 examination by Dr. Abdul K. Dahhan; April 20, 2011 arterial blood gas study and pulmonary function study; and interpretation of the April 20, 2011 film by Dr. Dahhan, along with Dr. Dahhan's curriculum vitae.

    Enclosed please find the following treatment notes submitted pursuant to § 725.414(a)(4), which we would appreciate your filing on behalf of the employer:

    1.    March 31, 1995 letter by Dr. William H. Anderson

    We also rely on the evidence submitted by the employer and considered in the earlier claims.

DIRECTOR EXHIBIT
NO. 15 CONSISTING

Ms. Jennifer Jackson
RE: Joseph Fleming
May 16, 2011
Page 2

Sincerely,

PENN, STUART & ESKRIDGE

John A. Martin

JAM/rab
Enclosure
cc:   Robert Gonder (81062144, via e-mail)
      Joseph E. Wolfe, Esq. (Via Certified Mail – RRR)

A461

## PULMONARY & INTERNAL MEDICINE ASSOCIATES, P.S.C.

(502) 587-0915

FAX (502) 561-6418

| | |
|---|---|
| **INTERNAL MEDICINE** | **PULMONARY DISEASES** |
| JAMES L. BERSOT, JR., M.D. | **OCCUPATIONAL PULMONARY DISEASES** |
| MILES S. SNOWDEN, M.D. | JUDAH L. SKOLNICK, M.D. |
| CHARLES F. BOWLDS, M.D. | BARRY S. STOLER, M.D. |
| MELISSA T. BARRETT, M.D. | JOHN A. LLOYD, M.D. |
| MARY S. LEWIS, M.D. | S. LYLE GRAHAM, M.D. |
| | ROBERT W. POWELL, M.D. |
| | JOEL HOROWITZ, M.D. |
| **OCCUPATIONAL PULMONARY DISEASES** | CHRISTOPHER B. HOWERTON, M.D. |
| WILLIAM H. ANDERSON, M.D. | J. WESLEY McCONNELL, M.D. |
| | KENNETH C. ANDERSON, M.D. |

March 31, 1995

Paul E. Jones, Attorney
Baird, Baird, Baird and Jones
P.O. Box 351
Pikeville, Kentucky 41502

RE: Danny Joseph Fleming
SSN: 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

Dear Mr. Jones,

You have asked me to refer to my examination of 05/14/91 and answer the so called four smoking questions. Yes, it is medically feasible with any degree of medical certainty to distinguish between the pulmonary disability caused by cigarette smoking as opposed to that caused by exposure to coal mine dust. It is possible with any degree of medical certainty to distinguish between this claimant's pulmonary disability caused by cigarette smoking as opposed to coal mine dust based on the medical evidence especially since as is our usual custom we did a residual volume. I do have an opinion as to the origin of the pulmonary disability with in the degree of medical probability and/o certainty especially since we did the residual volume. That opinion is that since his residual volume was 189 percent of predicted this means that he had panlobular and centrilobular emphysema which is the type that occurs as a consequence of cigarette smoking. Thus his emphysema is as result of his cigarette smoking and is not related to his pneumoconiosis or to his having been a coal miner or having breathed mine dust. The above can be stated with a high degree of medical certainty.

Very Sincerely Yours,

William H. Anderson, M.D./map

A462



**A. Dahhan, M.D., F.C.C.P.**
**120 Professional Lane**
**Suite 101**
**Harlan, KY 40831**

*606-573-1085*

April 22, 2011

John Sigmond
PENNSTUART
Attorneys at Law
804 Anderson Street
Bristol, Tennessee 37620

NAME:  Joseph Fleming
SSN/DOB:  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

Dear Mr. Sigmond,

The above patient was seen by me for examination per your request on April 20, 2011.
He is a 65 year-old man who claims to have worked in the mining industry for 22 years
ending in 1991 after having a back injury resulting in a disc at L4-L5.  He was treated
with laminectomy.  Sixteen years of his mining employment was underground operating a
continuous miner and 6 years outside operating dozer, end loader and a coal auger.

The patient began smoking at the age of 21 and averaged a pack per day.  Mr. Fleming
quit at the age of 60 with a total of 39 pack years.  He has a history of daily cough and
productive clear sputum with frequent wheeze.  He has dyspnea on exertion such as less
than flight of stairs.

Medications:  Oxygen 2 liters per minute via nasal bone for the last six years.  Spiriva
inhaler once a day.  Advair inhaler twice a day.  Proventil via nebulizer three times a day.
Proventil meter dose inhaler as needed.  Prednisone in variable dosages presently on
2.5mg a day.

Review of System:  No orthopnea, paroxysmal dyspnea, edema, hypertension or angina.

Past History:  Hernia repair twice.  Lumbar disc surgery in 1991.

ON EXAMINATION:  Blood pressure 130/80.  Pulse 92.  Temperature 97.9 degrees.
Weight 176 pounds.  Height 69.5 inches.

Copied by PS&E

15.3

A463

Letter to John Sigmond                          RE:  Joseph Fleming
April 22, 2011                                   Page No. 2

Skin is clear.  Trachea in the midline.  Jugular veins non-distended.  Supine position.
Carotid arteries are palpable bilaterally.  No bruits.  Examination of the chest showed
increased AP diameter with hyper resonancy to percussion.  Inspection revealed barrel
appearing chest.  Auscultation revealed reduced air entry into both lungs with
prolongation of the expiratory phase and bilateral expiratory wheeze.  No crepitations or
pleural rubs are audible.  Cardiac examination showed regular rhythm with no gallops or
murmurs.  The abdomen is soft with no masses.  The liver and spleen are not enlarged.
Examination of the extremities showed no clubbing or edema.  Peripheral pulses are
present bilaterally.

Electrocardiogram showed regular sinus rhythm and normal tracings.

Arterial blood gases on 1.5 liters of oxygen showed a pO2 of 75.6 and pCO2 of 42.4.
The patient could not undergo an exercise study.

MAY 1 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Carboxyhemoglobin level was .4%
Hematocrit 46%.
Hemoglobin 15.8 grams.

Spirometry showed severe obstructive ventilatory defect with an FVC of 2.63 liters or
58% and an FEV1 of .87 liters or 25%.  No change takes place after administration of
bronchodilators.
Lung volume measurements showed a residual volume of 159%, total lung capacity 88%
and diffusion capacity 37%.

Chest x-ray showed hyperinflated lungs consistent with emphysema with post op changes
in the left chest.  No pleural or parenchymal abnormalities consistent with
pneumoconiosis were present.

I reviewed the record that you submitted to me regarding the above individual.

Included was a Department of Labor examination report by Dr. Baker indicating he
examined the patient on January 14, 2011.  He reported a history of coal mining for 22
years underground with a history of smoking half to a pack per day between the age of 25
and 60.  The patient was noted to have pneumothorax in 2004 requiring partial
pneumonectomy and thoracoplasty.  Clinical examination of the chest showed bilateral
inspiratory and expiratory wheeze.  Spirometry showed an FVC of 3.17 liters or 82% and
an FEV1 of .67 liters or 22%.  Arterial blood gases at rest showed a pO2 of 69 and pCO2
of 44.  Chest x-ray was read as 1/1.  Dr. Baker concluded that the patient suffered from
simple coal workers' pneumoconiosis with severe obstructive ventilatory impairment and
pulmonary disability.  He attributed it to a combination of coal dust exposure and
cigarette smoke.



Letter to John Sigmond                    RE:  Joseph Fleming
April 22, 2011                            Page No. 3

Dr. Sarah Long, in a validation report dated February 26, 2011, found the study to be invalid.

Chest x-ray dated October 2, 2010 read by Dr. DePonte as 0/0.

A report by Dr. Wicker indicated he examined the patient by request of the Department of Labor on November 15, 1994.  He obtained a history of coal mining for 20 years.  Eighteen years was outside.  He also obtained a history of smoking a pack per day since 1973 and continued to do so at the time of exam.  He noted a history of cough, sputum production, wheezing and shortness of breath.  Clinical examination of the chest showed bilateral wheeze.  Chest x-ray read as 0/0.  Spirometry showed an FVC of 4.34 liters or 96% and an FEV1 of 2.22 liters or 62%.  Arterial blood gases showed a pO2 of 67.9 and pCO2 of 44.3.  He concluded that the patient has no evidence of pneumoconiosis.  Dr. Wicker noted that the pulmonary function studies were invalid due to poor effort prevention him from being able to assess the patient's true ventilatory capacity.

Spirometry dated 11/15/1994 showed an FVC of 4.34 liters or 96% and an FEV1 of 2.22 liters or 62%.  After bronchodilators FVC was 90% and FEV1 was 54%.  The study was found to be invalid by Dr. Kraman in a validation report dated April 4, 1995.

Another spirometry dated April 25, 1995 showed an FVC of 4.44 liters or 98% and an FEV1 of 2.02 liters or 56%.  No change takes place after bronchodilators.

A report by Dr. Broudy dated February 23, 1995 indicated he examined the patient and reported the same occupational and medical history.  He noted a history of cough, sputum production, wheezing and shortness of breath.  Clinical examination of the chest showed delay of expiration with expiratory wheeze.  Chest x-ray read as category zero with emphysema.  Spirometry showed an FVC of 4.32 liters or 97% and an FEV1 of 1.87 liters or 32%.  After bronchodilators FVC was 97% and FEV1 was 51%.  Arterial blood gases showed moderate hypoxemia.  Dr. Broudy concluded that the patient suffered from chronic asthmatic bronchitis with no evidence of coal dust induced lung disease.

Chest x-ray dated 2/23/1995 read by Dr. Wiot and Dr. Spitz as 0/0.

A report by Dr. William Anderson dated March 31, 1995 indicated that it is medically feasible to distinguish between pulmonary disability secondary to cigarette smoke as opposed to that caused by inhalation of coal dust.  He concluded that the patient's impairment has not resulted from inhalation of coal dust.

In conclusion, based on my evaluation of Mr. Fleming and my review of his medical records as described above, within a reasonable degree of medical certainty, the following conclusions can be made:



Letter to John Sigmond                              RE: Joseph Fleming
April 22, 2011                                      Page No. 4

1. Mr. Fleming has no radiological finding consistent with coal workers' pneumoconiosis ruling out the medical form of the disease.


2. Mr. Fleming has an obstructive ventilatory defect.

3. From a respiratory standpoint Mr. Fleming does not retain the physiological capacity to return to his previous coal mining work or job of comparable physical demand.

4. Mr. Fleming's pulmonary impairment has not resulted from the inhalation of coal dust.

He demonstrates poorly obstructive ventilatory defect with over 2000cc loss of his FEV1 which is an amount that cannot be accounted for by the obstructive impact of coal dust on the respiratory system that is estimated by Dr. Attfield and associate in their epidemiological study to be 5-9cc loss of the FEV1 per year of coal dust exposure which is a trivial amount in Mr. Fleming's case considering the actual amount of loss that he demonstrates.

Mr. Fleming is being treated with multiple bronchodilator agents indicating his physician believes it to be amenable by such measures and another finding inconsistent with the permanent adverse affect of coal dust on the respiratory system.

Mr. Fleming had pneumothorax requiring resection of part of the left lung which could result in some loss of his lung function and contributing to his overall pulmonary disability.

5. Mr. Fleming's pulmonary disability has resulted from his severe obstructive ventilatory defect that was caused by his lengthy smoking habit and contributed to by his previous left pneumothorax requiring resection of part of the left lung.



Letter to John Sigmond                    RE: Joseph Fleming
April 22, 2011                            Page No. 5

6. Based on my overall evaluation of Mr. Fleming, within a reasonable degree of medical certainty, I find no evidence of pulmonary impairment and/or disability caused by, related to, contributed to or aggravated by inhalation of coal dust, hence, no evidence of legal pneumoconiosis.

If I can be of any further help, please contact me.

Best regards,

A. Dahhan, M.D., F.C.C.P
AKD/jls
References:
Michael Attfield & Thomas K. Hodus, <u>Pulmonary Function of U.S. Coal Miners Related To Dust Exposure Estimates</u>: AM REV RESPIR DIS 1992; 145: 605-609

RECEIVED

MAY 1 8 2011

ESA/OWCP/DCMWC
Mt. Sterling, KY

# A. DAHHAN, M.D., F.C.C.P.

120 PROFESSIONAL LANE
SUITE 101
HARLAN, KY 40831
PHONE (606) 573-1085

**DATE OF RADIOGRAPH**

| MONTH | DAY | YEAR |
|---|---|---|
| 0  4 | 2  0 | 2  0  1  1 |

**WORKER'S Social Security Number**

| | | |
|---|---|---|
| 4  0  4 | 6  0 | 0  5  6  0 |

Patient's Name: Joseph Fleming

**FACILITY IDENTIFICATION**

Note: Please record your interpretation of a single film by placing an "x" in the appropriate boxes on this form.

---

**1. FILM QUALITY**

[✗]1  2  3  U/R
(If not Grade 1, mark all boxes that apply)

- [ ] Overexposed (dark)
- [ ] Underexposed (light)
- [ ] Artifacts
- [ ] Improper position
- [ ] Poor contrast
- [ ] Poor processing
- [ ] Underinflation
- [ ] Mottle
- [ ] Other (please specify)

---

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**    YES [ ]    Complete Sections 2B and 2C    NO [✗]    Proceed to Section 3A

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY: p s / q t / r u
SECONDARY: p s / q t / r u

b. ZONES — R  L — UPPER / MIDDLE / LOWER

c. PROFUSION
0/-  0/0  0/1
1/0  1/1  1/2
2/1  2/2  2/3
3/2  3/3  3/+

**2C. LARGE OPACITIES**    SIZE  O  A  B  C    Proceed to Section 3A

---

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**    YES [ ]    Complete Sections 3B, 3C    NO [✗]    Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| In profile | O R L | O R L | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| Face on | O R L | O R L | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| Diaphragm | O R L | O R L | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| Other site(s) | O R L | O R L | O R — 1 2 3 — O L — 1 2 3 | O R — a b c — O L — a b c |

**3C. COSTOPHRENIC ANGLE OBLITERATION**    R L    Proceed to Section 3D    NO [ ]    Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| | | | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| | | | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| | | | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| In profile | O R L | O R L | O R — 1 2 3 — O L — 1 2 3 | O R — a b c — O L — a b c |
| Face on | O R L | O R L | | |

---

**4A. ANY OTHER ABNORMALITIES?**    YES [✗]    Complete Sections 4B, 4C, 4D, 4E    NO [ ]    Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

aa  at  ax  bu  ca  cg  cn  co  cp  cv  di  ef  em  es  fr  hi  ho  id  ih  kl  me  pa  pb  pi  px  ra  rp  tb

[✗] If other diseases or significant abnormalities, findings must be recorded on reverse. (section 4C/4D)

Date Physician or Worker notified?
MONTH  DAY  YEAR

**4E. Should worker see personal physician because of findings in section 4?**    YES [ ]    NO [✗]
Proceed to Section 5

---

**DATE OF READING**

| MONTH | DAY | YEAR |
|---|---|---|
| 0  4 | 2  0 | 2  0  1  1 |

PHYSICIAN'S SIGNATURE: _A.Dahhan M.D._

15.4    RAD 1

A468

**4C. MARK ALL BOXES THAT APPLY:** (Use of this list is intended to reduce handwritten comments and is optional)

**Abnormalities of the Diaphragm**
☐ Eventration
☐ Hiatal hernia

**Airway Disorders**
☐ Bronchovascular markings, heavy or increased
☐ Hyperinflation

**Bony Abnormalities**
☐ Bony chest cage abnormality
☐ Fracture, healed (non-rib)
☐ Fracture, not healed (non-rib)
☐ Scoliosis
☐ Vertebral column abnormality

**Lung Parenchymal Abnormalities**
☐ Azygos lobe
☐ Density, lung
☐ Infiltrate

☐ Nodule, nodular lesion

**Miscellaneous Abnormalities**
☐ Foreign body
☒ Post-surgical changes/sternal wire
☐ Cyst

**Vascular Disorders**
☐ Aorta, anomaly of
☐ Vascular abnormality

**4D. OTHER COMMENTS**

RECEIVED

MAY 1 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

**A. DAHHAN, M.D., F.C.C.P.**
**101 HARLAN PROFESSIONAL BUILDING**
**U.S. 421 SOUTH**
**HARLAN, KENTUCKY 40831**
**PHONE 606/573-1085**

Joseph Fleming
09/11/1945

## PULMONARY FUNCTION STUDIES

**Requested By:** _A. Dahhan M.D._ **Date** 04/20/2011

**Time** 11:00 **Tech** S.cox CRT **Model** CollinsGS

**Age** 65 **Sex** M **Ht.** 177cm **Inches Wt.** 80kg **Lbs b.P.** 764 **S.S. No.** 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

| TEST | Before | Observed Bronchodilator | After | | Predicated Values | |
|---|---|---|---|---|---|---|
| **Total Lung Capacity (T.L.C.)** | 6.12 | 88% | | | 6.95 | 100% |
| **Functional Residual Capacity (F.R.C.)** | 3.76 | 103% | | | 3.65 | 100% |
| **Residual Volume (R.V.)** | 3.70 | 159% | | | 2.33 | 100% |
| **Forced Expiratory Volume (F.E.V.)** | 2.63 | 58% | 2.35 | 51% | 4.58 | 100% |
| **First Expiratory Volume (F.E.V.1)** | 0.87 | 25% | 0.86 | 24% | 3.55 | 100% |
| **FEV1/FEV** | 33 | 43% | 37 | 47% | 78 | 100% |
| **Direct Maximum Voluntary Ventilation Per Min.** | 38 | 32% | 37 | 31% | 120 | 100% |
| **DLCO S.B.** | 12.01 | 37% | | | 32.61 | 100% |
| **DLCO/VA** | 2.65 | 55% | | | 4.78 | 100% |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**COOPERATION** _Good_

**COMPREHENSION** _Good_

**Bronchodilator Used** _Yes proventil_

**B.T.P.S. Corrected** _Yes_

**Paper Speed** _20mm/sec_

_____ **M.D.**
A. Dahhan M.D.

15.5

M. Dahhan, M.D., F.C.C.P. Pulmonary Lab
Dou Professional Blvd
, Kentucky 40831 (606) 7 1.085

PT: JOSEPH FLEMING                                      PT#: 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
AGE: 65 HT: 177.0 cm    WT: 80.0 kg    SEX: M RACE: C DATE: 04/20/2011
DIAGNOSIS:                          PRED-COLLINS3        TIME: 11:00:18
PHYSICIAN: DAHHAN M.D.              TECH: S.COX CRT              BP: 764 TEMP: 22.6
SMK HX: QUIT  0 ;(CIGARETTES  0  0.0 /DAY     0PACK/YRS)

Pre-Drug [# 3]*      Post-Drug [# 6]*
Temp: 22.6 BTPS: 1   Temp: 23.0 BTPS: 1.085
(04/20/2011 11:06:   (04/20/2011 11:33:14)
Posture: Sitting     Posture: Sitting
Albuterol                  00:00:0

| Spirometry |     | Predicted | Actual | %Pred | Actual | %Pred | %Chg |
|------------|-----|-----------|--------|-------|--------|-------|------|
| FVC        | (L) | 4.58      | 2.63   | 58    | 2.35   | 51    | -10  |
| FEV1       | (L) | 3.55      | 0.87   | 25    | 0.86   | 24    | -1   |
| FEV1/FVC   | (%) | 78        | 33     | 43    | 37     | 47    | 10   |
| FEF25-75%  | (L/S) | 3.27    | 0.29   | 9     | 0.28   | 8     | -5   |
| FEFmax     | (L/S) |         | 2.17   |       | 1.91   |       | -11  |
| TET        | (SEC) |         | 9.80   |       | 8.87   |       | -9   |

Pre-Drug [# 1]      Post-Drug [# 4]
Temp: 22.6 BTPS: 1   Temp: 23.0 BTPS: 1.085
(04/20/2011 11:03:   (04/20/2011 11:30:47)
Posture: Sitting     Posture: Sitting
Albuterol                  00:00:0

| Spirometry |     | Predicted | Actual | %Pred | Actual | %Pred | %Chg |
|------------|-----|-----------|--------|-------|--------|-------|------|
| FVC        | (L) | 4.58      | 2.46   | 54    | 2.29   | 50    | -6   |
| FEV1       | (L) | 3.55      | 0.79   | 22    | 0.85   | 24    | 7    |
| FEV1/FVC   | (%) | 78        | 32     | 41    | 37     | 48    | 15   |
| FEF25-75%  | (L/S) | 3.27    | 0.29   | 9     | 0.28   | 8     | -5   |
| FEFmax     | (L/S) |         | 3.00   |       | 2.39   |       | -20  |
| TET        | (SEC) |         | 8.83   |       | 8.39   |       | -4   |

Pre-Drug [# 2]      Post-Drug [# 5]
Temp: 22.6 BTPS: 1   Temp: 23.0 BTPS: 1.085
(04/20/2011 11:04:   (04/20/2011 11:32:04)
Posture: Sitting     Posture: Sitting
Albuterol                  00:00:0

| Spirometry |     | Predicted | Actual | %Pred | Actual | %Pred | %Chg |
|------------|-----|-----------|--------|-------|--------|-------|------|
| FVC        | (L) | 4.58      | 2.29   | 50    | 2.31   | 50    | 0    |
| FEV1       | (L) | 3.55      | 0.77   | 22    | 0.83   | 23    | 8    |
| FEV1/FVC   | (%) | 78        | 34     | 43    | 36     | 46    | 7    |
| FEF25-75%  | (L/S) | 3.27    | 0.29   | 9     | 0.23   | 7     | -19  |
| FEFmax     | (L/S) |         | 2.22   |       | 2.31   |       | 4    |
| TET        | (SEC) |         | 9.38   |       | 10.06  |       | 7    |

Pre-Drug [# 1]*      Post-Drug [# 2]*
Temp: 22.6 BTPS: 1   Temp: 23.0 BTPS: 1.085
(04/20/2011 11:08:   (04/20/2011 11:34:38)
PROVENTIL            11:33:3

| Spirometry |       | Predicted | Actual | %Pred | Actual | %Pred | %Chg |
|------------|-------|-----------|--------|-------|--------|-------|------|
| MVV        | (L/MIN) | 120     | 38     | 32    | 37     | 31    | -3   |
| Test Length | (SEC) |         | 12.00  |       | 12.00  |       | 0    |

Pre-Drug [ Avg ]*
(04/20/2011 11:19:

| Lung Volumes |     | Predicted | Actual | %Pred |
|--------------|-----|-----------|--------|-------|
| VC           | (L) | 4.58      | 2.42   | 53    |
| ERV          | (L) | 1.32      | 0.06   | 5     |
| FRC          | (L) | 3.65      | 3.76   | 103   |
| RV           | (L) | 2.33      | 3.70   | 159   |
| TLC          | (L) | 6.95      | 6.12   | 88    |
| RV/TLC       | (%) | 34        | 60     | 177   |
| IC           | (L) | 3.30      | 2.36   | 72    |

RECEIVED

MAY 1 8 2011

ESA / GWCP / DCMWC
Mt. Sterling, KY

VOL (L)

Pt. ID:   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          Pre-Drug

Pt. Name     FLEMING
Date:   04/20/2011          Syringe Vol: 3.0

Cal. Date:  04/20/2011   Cal. Time: 10:56



Case 3:15-cv-01900   Document: 15   Filed 02/23/2011   Date: 04/20/2011   478



Pt. Name: FLEMING
Pre-Drug
Pt. ID: 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   Date: 04/20/2011
Set  # : 0

| Effort | FVC | FEV1 | FEV1% | F25/75 | PEFR |
|--------|------|------|-------|--------|------|
| Pred | 4.50 | 3.55 | 77 | 3.27 | |
| 1 | 2.46 | 0.79 | 31 | 0.29 | 3.00 |
| 2 | >2.29 | 0.77 | 33 | 0.29 | 2.22 |
| 3 BEST | 2.63 | 0.87 | 33 | 0.29 | 2.17 |
| | | | | | |
| | | | | | |

Pt. Name: FLEMING
Post-Drug
Pt. ID: 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   Date: 04/20/2011
Set  # : 1



| Effort | FVC | FEV1 | FEV1% | F25/75 | PEFR |
|--------|------|------|-------|--------|------|
| Pred | 4.50 | 3.55 | 77 | 3.27 | |
| 4 | 2.29 | 0.85 | 37 | 0.28 | 2.39 |
| 5 | 2.31 | 0.83 | 36 | 0.23 | 2.31 |
| 6 BEST | 2.35 | 0.86 | 36 | 0.28 | 1.91 |
| | | | | | |
| | | | | | |

**A. DAHHAN, M.D., F.C.C.P.**
101 HARLAN PROFESSIONAL BUILDING
U.S. 421 SOUTH
HARLAN, KENTUCKY 40831
PHONE 606/573-1085

**BLOOD GASES STUDIES**

Joseph Fleming
09/11/1945

Requested By: ___A. Dahhan M.D.___  Date___04/20/2011___

Time___10:42___  Tech___S.cox CRT___  Calibration___Yes___

Age___65___  Sex___M___  Ht.___177cm___ Inches  Wt.___80kg___ Lbs  b.P.___764___  S.S. No.___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___

| Time/Minute | Resting | | | | | | | Comments |
|---|---|---|---|---|---|---|---|---|
| Work Load K.p.m | | | | | | | | |
| Pulse | 64 | | | | | | | |
| Hg. Sat. | 96.7 | | | | | | | |
| pO₂ | 75.6 | | | | | | | |
| pCO₂ | 42.4 | | | | | | | |
| pH | 7.404 | | | | | | | |
| Time Lapse | 10 sec. | | | | | | | |

**Interpretation:**

Resting: Right Brachial with 1.5 Lt. of 02.

Exercise: Not performed due to S.O.B. and fatigue.

*K.p.m.: Kilogram-meters/minutes

___A. Dahhan M.D.___  M.D.

15.6

A476



PATIENT SAMPLE REPORT

SYSTEM 845-08685
Sequence no  2588   Acc no
Source Arterial
Analysis Time  APR 26 2011 10:42
Patient ID     404404560   Sex
Birthdate                  Age

ACID/BASE 37°C
pH              7.404
pCO2            42.4        mmHg
pO2             75.6        mmHg
HCO3-act        25.9        mmol/L
HCO3-std        25.3        mmol/L
ctCO2           27.2        mmol/L
BE(B)           1.0         mmol/L
BE(ecf)         1.2         mmol/L

OXYGEN STATUS 37°C
ctHb            15.8        g/dL
Hct             46          %
sO2             96.7        %
pO2             21.8        mL/dL
FO2Hb           95.9        %
FCOHb           0.4         %
FMetHb          0.4         %
FHHb            3.3         %
ctO2(a)         21.3        mL/dL

RECEIVED
MAY 1 8 2011
ESA / OWCP / BCMWC
Mt. Sterling, KY

Name  Joseph Fleming TU05FC
B.D. OFIBUS          Site Rt Bronchial
SSN  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
Physician  Quinn M.D.    .02  1.5 L O2
Tech  Stone  CRT    Date  4/20/11

PRE

**A. DAHHAN, M.D., F.C.C.P.**
101 HARLAN PROFESSIONAL BUILDING
U.S. 421 SOUTH
HARLAN, KENTUCKY 40831
PHONE 606/573-1085

Joseph Fleming
19/11/1945

## CO-OXIMETRY STUDIES

Requested By:  A. Dahhan M.D.     Date   04/20/2011
Time   10:42   Tech   S.cox CRT   Calibration   Yes
Age   65   Sex   M   Ht.  177cm   Inches  Wt.   80kg   Lbs  b.P.   764   S.S. No.  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

| | |
|---|---|
| HEMOGLOBIN | 15.8g/dl |
| HEMATOCRIT | 46% |
| CARBOXYHEMOGLOBIN | 0.4% |
| OTHER | |

PATIENT SAMPLE REPORT

SYSTEM 845-09665
Sequence no  2588   Acc no
Source Arterial
Analysis Time  APR 20 2011 10:42
Patient ID   404600560      Sex
Birthdate                   Age

ACID/BASE 37°C
pH          7.404
pCO2        42.4        mmHg
pO2         75.6        mmHg
HCO3-act    25.9        mmol/L
HCO3-std    25.3        mmol/L
ctCO2       27.2        mmol/L
BE(B)       1.0         mmol/L
BE(ecf)     1.2         mmol/L

OXYGEN STATUS 37°C
ctHb        15.8        g/dL
Hct         46          %
sO2         96.7        %
BO2         21.8        ml/dL
FO2Hb       95.9        %
FCOHb       0.4         %
FMetHb      0.4         %
FHHb        3.3         %
ctO2(a)     21.3        ml/dL

INTERPRETATION:

_____  M.D.

A. Dahhan M.D.

Name  Joseph Fleming  TLIOSac
B.D  0611-45      Site  Rt Bronchial
SSN  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
Physician  Dahhan M.D.   02  1 5L 02
Tech  S.Cox CRT   Date  11-20-11
DRB



Name: Joseph Fleming     Ht: 177 cm

SS# 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     Wt: 80 kg

DOB 9-11-45     Age: 65

T. HR     Date: 4-20-11

Resting: Rt. Brachial     Exercise: Not performed due
to SOB + fatigue

Pulse

| PRE | | | | | |
|-----|---|---|---|---|---|
| 64 | | | | | |
| | | | | | |

Sa02
Pedal RPM:
Watt     :
Resistance:

# WOLFE WILLIAMS RUTHERFORD & REYNOLDS

### ATTORNEYS AND COUNSELORS AT LAW

JOEY G. ARNOLD[1]
DAVID S. BARY[2]
BOBBY S. BELCHER, JR.
W. ANDREW DELPH, JR.
TONY M. HUTCHINSON
[1]*Member of TN and NC Bar*
[2]*Member of WV and VA Bar*

470 PARK AVENUE • P.O. BOX 625 • NORTON, VIRGINIA 24273
TELEPHONE (276) 679-0777 • FAX (276) 679-5919
*www.wfattorneys.com*

*All Attorneys Licensed in Virginia
Except as Noted*
March 25, 2011

JASON T. MARSHALL[3]
P. HEITH REYNOLDS[4]
ROGER W. RUTHERFORD
VERNON M. WILLIAMS
JOSEPH E. WOLFE
[3]*Member of TN Bar*
[4]*Member of KY and VA Bar*

Ms. Jennifer J. Jackson, CE
U.S. Department of Labor
ESA/OWCP/DCMWC
402 Campbell Way
Mt. Sterling, KY 40353-7847
*Via First Class Mail*

**RE: Joseph Fleming v. Aberry Coal, Inc.; OWCP No.: XXX-XX-0560 LM C OFN: 92123**

Dear Ms. Jackson,

  Please find enclosed the following evidence Claimant wishes to submit in support of his claim:

- The rebuttal reading of the film dated January 14, 2011 by Dr. Michael Alexander and his curriculum vitae.
- Treatment records from Pulmonary Associates of Morristown, P.C. dated February 26, 2008 through December 23, 2010.

  By copy of this correspondence, I am forwarding the same to Counsel for the Responsible Operator.

  With best regards, I am,

         Sincerely yours,
         WOLFE WILLIAMS RUTHERFORD & REYNOLDS

         JOSEPH E. WOLFE

JEW/keh
CC:

Mr. Michael F. Blair, Esq.
PENN STUART & ESKRIDGE
804 Anderson Street
Bristol, TN 37620

Mr. Joseph Fleming
1226 Zirkie Road
Dandridge, TN 37725

**RECEIVED**

**MAR 2 8 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

**DIRECTOR EXHIBIT**

NO ___14___ CONSISTING

OF ___22___ PAGES

A481

Roentgenographic Interpretation

## U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



OMB No. 1215-0090
Expires: 02-28-96

NOTE: This report is authorized by law. (30 U.S.C., 901 et. seq.) The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-ray | 1B. Miner's Social Security Number | 1C. Film Quality (If not Grade 1. Give Reason:) |
|---|---|---|---|

JOSEPH FLEMING

1A. Date of X-ray: 0/14/11 MO. DAY YR.

1B. Miner's Social Security Number: 0560

1C. Film Quality: ☒ 1  2  3  U/R

1D. Is Film Completely Negative? YES ☐ Proceed to Section 5   NO ☒ Complete Section 2A

2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis? YES ☒ Complete 2B and 2C   NO ☐ Proceed to Section 3

### 2B. SMALL OPACITIES
a. SHAPE/SIZE
PRIMARY: ☒ s  q  r
SECONDARY: ☒ s  q  r
b. ZONES: ☒ R ☒ L

c. PROFUSION
| 0/- | 0/0 | 0/1 |
| ☒ 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

### 2C. LARGE OPACITIES
SIZE ☒ A  B  C   Proceed to Section 3

### 3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?
YES ☐ Complete 3B, 3C and 3D   NO ☒ Proceed to Section 4

### 3B. PLEURAL THICKENING
a. Diaphragm (plaque)  SITE ☐ O  R  L
b. Costophrenic Angle  SITE ☐ O  R  L

### 3C. PLEURAL THICKENING ...Chest Wall
a. CIRCUMSCRIBED (plaque)

| | O | R | | | | O | L | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SITE | O | R | | | | O | L | | | |
| In Profile | O | A | B | C | | O | A | B | C | |
| i. Width | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 | |
| Face On ii. Extent | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 | |
| iii. Extent | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 | |

b. Diffuse
| | O | R | | | | O | L | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SITE | O | R | | | | O | L | | | |
| In Profile | O | A | B | C | | O | A | B | C | |
| i. Width | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 | |
| Face On ii. Extent | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 | |
| iii. Extent | 0 | 1 | 2 | 3 | | 0 | 1 | 2 | 3 | |

### 3D. PLEURAL CALCIFICATION
| SITE | O | R | EXTENT | | | | O | L | EXTENT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| a. Diaphragm | O | R | 0 | 1 | 2 | 3 | O | L | 0 | 1 | 2 | 3 |
| b. Wall | | | 0 | 1 | 2 | 3 | | | 0 | 1 | 2 | 3 |
| c. Other Sites | | | 0 | 1 | 2 | 3 | | | 0 | 1 | 2 | 3 |

Proceed to Section 4

### 4A. ANY OTHER ABNORMALITIES?
YES ☒ Complete 4B and 4C   NO ☐ Proceed to Section 5

### 4B. OTHER SYMBOLS (OBLIGATORY)
O  ax  bu  ca  cn  co  cp  cv  di  ef  (em)  es  fr  hi  ho  id  ih  kl  pi  px  rp  tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION.
oo  [Specify ed.]   Oots Personal Physician notified?   Mo. Day Yr.

### 4C. OTHER COMMENTS
Mild hyperinflation with upper zone emphysematous changes. Mild aortic ASVD

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C? Yes / No   Proceed to Section 5

### 5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:
Dr Glen R Baker - US DOL x-ray.
DOL Medical Provider Number (if applicable):
Was film taken by a registered radiographer/radiographic technologist? ☐ Yes  ☐ No   State
Name   Registration No.

### 5B. Physician Interpreting Film (Print Name):
MICHAEL S. ALEXANDER, MD
Are you Board-certified Radiologist? ☒ Yes  ☐ No.   Board-eligible radiologist? ☐ Yes  ☐ No.   B-reader? ☒ Yes  ☐ No.

### 5C.
I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE: Michael S Alexander MD   DATE OF READING: 03/06/11 (Mo., Day, Yr.)

RECEIVED
MAR 2 8 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

14.2

A482

704 879 1240          P.02

# Michael S. Alexander, MD

## Curriculum Vitae

### Biographical Data:

| | |
|---|---|
| **Name:** | Michael Shepard Alexander, MD |
| **Date of Birth:** | July 27, 1952 |
| **Birthplace:** | New York, New York |
| **Citizenship:** | USA |
| **Marital Status:** | Married, one child |
| **Address:** | 699 Perkins Road, SE<br>Valdese, NC 28690-9409 |
| **Telephones:** | Home: 828-879-2880    Office: 828-879-1140    Fax: 828-879-1240 |

### Educational Background:

| | | |
|---|---|---|
| Secondary School: | Sep '66 – Jun '70 | The Taft School<br>Watertown, CT |
| College: | Sep '70 – May '74 | Columbia College<br>New York, NY |
| Medical School: | Feb '75 · Jun '78 | New York Medical College<br>Valhalla, NY |
| Residency: | Jul '78 – Jun '82 | Diagnostic Radiology<br>University of California, Irvine<br>Orange, CA |
| Fellowship: | Oct '83 – Sep '84 | Nuclear Medicine, Computed Tomography & Ultrasound<br>University of North Carolina<br>Chapel Hill, NC |
| Fellowship: | Jul '87 – Jul '88 | Nuclear Medicine and Radiation Health Sciences<br>The Johns Hopkins Hospital<br>Baltimore, MD |
| Fellowship: | Jun '87 – Jun '88 | Environmental Health Sciences<br>The Johns Hopkins University<br>School of Hygiene and Public Health<br>Baltimore, MD |

14.3

**Degrees, Diplomas, Certifications:**

| | |
|---|---|
| 1974 | Bachelor of Arts, Columbia College |
| 1978 | Doctor of Medicine, New York Medical College |
| 1979 | National Board of Medical Examiners |
| 1982 | Board Certification: Diagnostic Radiology<br>The American Board of Radiology |
| 1986 | Board Certification: Special Competence in Nuclear Radiology<br>The American Board of Radiology |
| 1988 | Board Certification: Nuclear Medicine, Diagnostic and Therapeutic<br>The American Board of Nuclear Medicine |
| 1988 | Certificate: Post Doctoral Fellowship in Environmental Health Sciences<br>The Johns Hopkins University, School of Hygiene and Public Health |
| 1992 | Certificate: Pneumoconiosis B Reader<br>U. S. Department of Health and Human Services<br>Centers for Disease Control and Prevention<br>National Institute for Occupational Safety and Health<br>Appalachian Laboratory for Occupational Safety and Health<br>(by Examination on 12/06/91, in Morgantown, WV) |
| 1996 | Certificate: Pneumoconiosis B Reader<br>U.S. Department of Health and Human Services<br>Centers for Disease Control and Prevention<br>National Institute for Occupational Safety and Health<br>Appalachian Laboratory for Occupational Safety and Health<br>(by Recertification Examination on 11/06/95, in Morgantown, WV) |
| 2000 | Certificate: Pneumoconiosis B Reader<br>U.S. Department of Health and Human Services<br>Centers for Disease Control and Prevention<br>National Institute for Occupational Safety and Health<br>Appalachian Laboratory for Occupational Safety and Health<br>(by Recertification Examination on 11/08/99, in Morgantown, WV) |
| 2004 | Certificate: Pneumoconiosis B Reader<br>U.S. Department of Health and Human Services<br>Centers for Disease Control and Prevention<br>National Institute for Occupational Safety and Health<br>Appalachian Laboratory for Occupational Safety and Health<br>(by Recertification Examination on 11/10/03, in Morgantown, WV) |

**Medical Licensure:**

| | | |
|---|---|---|
| California | No. G42013 | Issued 06/23/80 |
| North Carolina | No. 28453 | Issued 10/20/84 |
| Maryland | No. D35603 | Issued 08/11/87 |
| West Virginia | No. 16456 | Issued 05/06/91 |
| Virginia | No. 0101051899 | Issued 12/30/94 |

**Professional Background:**

| | |
|---|---|
| July 2001 – Present: | Independent Contractor |
| June '99 – June 2001 | Mecklenburg Radiology Associates, P. A.<br>Presbyterian Hospitals and Imaging Centers<br>PO Box 221249<br>Charlotte, NC 28222-1249 |
| March '95 – May '99 | Independent Contractor |
| July '91 – February '95 | Staff Radiologist<br>Bluefield Regional Medical Center    *and*    Princeton Community Hospital<br>500 Cherry Street                                    Twelfth Street<br>Bluefield, WV 24701                              Princeton, WV 24740 |
| July '90 – June '91 | Staff Radiologist<br>Piedmont Medical Imaging, PC<br>Grace Hospital<br>Morganton, NC 28655 |
| October '88 – June '90 | Assistant Professor of Radiology and Nuclear Medicine<br>The University of Maryland Medical System<br>Department of Diagnostic Radiology<br>22 South Greene Street<br>Baltimore, MD 21201 |
| July '87 – August `88 | Fellowship in Nuclear Medicine, Radiation Health Sciences, &<br>Environmental Health Sciences<br>The Johns Hopkins Hospital & School of Hygiene and Public Health<br>600 N. Wolfe Street<br>Baltimore, MD 21205 |
| November '86 – May '87 | Diagnostic Radiologist<br>Chatham County Hospital<br>Siler City, NC |
| January – October `86 | Diagnostic Radiologist<br>Kron Medical Associates<br>Chapel Hill, NC |
| September – December '85 | Staff Radiologist & Lecturer in Nuclear Medicine<br>Uppsala University Medical College<br>Department of Diagnostic Radiology<br>Akademiska Hospital<br>S-751 85 Uppsala, Sweden |

| | |
|---|---|
| Jan '85 – May '85 | Nuclear Medicine Physician Consultant<br>Cardiovascular Nuclear Medicine – Clinical Laboratory<br>Employer:  International Atomic Energy Agency<br>United Nations<br>Vienna, Austria<br>Location:  Liaquat Medical College<br>Pakistan Atomic Energy Agency Commission<br>Jamshoro, Pakistan |
| Oct '84 – Dec '84 | Diagnostic Radiologist – Kron Medical Associates<br>Chapel Hill, NC |
| Oct '83 – Sep '84 | Fellowship in Nuclear Medicine, Computed Tomography & Ultrasound<br>The University of North Carolina<br>Chapel Hill, NC |
| Sep '73 – May '74 | Research Assistant<br>Immunology and Tissue Transplantation – Department of Surgery<br>St. Luke's Hospital<br>New York, NY |

## Publications:

Clinical Nuclear Medicine 1992 Sept; 17(9): 736-7

"Normal Uptake in a Gravid Uterus on Tc-99m DTPA Imaging" by D. Griffith, M.S. Alexander, R. Gelman & E. Kotlyarov.

Gastrointestinal Radiology 1991 Summer; 16(3): 201-4

"The Use of Radionuclide Imaging in the Evaluation of Suspected Biliary Damage During Laparoscopic Cholecystectomy" by R. Gelman, M.S. Alexander, K. A. Zuker & R. W. Bailey.

Clinical Nuclear Medicine 1991 July; 16(7): 517-9

"Visualization of a Recanalized Umbilical Vein on Hepatobiliary Imaging with CT Correlation" by M. S. Alexander, R. A. Blake & R. Gelman.

J Nuclear Medicine Technology 1991 June: 19(2): 87-9

"Extraosseous Metastases Masquerading as Urine Contamination on Bone Scans" by R. Gelman, M.S. Alexander, & R. T. P. Sorandes.

## Presentations:

The National Coalition of Black Lung and Respiratory Disease Clinics Annual Conference Gatlinburg, TN
October 1-4, 2002

"The Chest X-ray Appearance of Coal Worker's Pneumoconiosis:  Understanding the ILO Form Pictorially"

| | |
|---|---|
| Washington and Lee University<br>School of Law - Legal Practice Clinic<br>Lexington, VA<br>November 9, 1999 | "The Radiographic Aspects of Pneumoconiosis;<br>Case Examples Illustrating the ILO Classification<br>System" |
| Washington and Lee University<br>School of Law - Legal Practice Clinic<br>Lexington, VA<br>November 3, 1997 | "The Radiographic Aspects of Pneumoconiosis" |
| III International Cardiology Conference<br>Hyderabad, Pakistan<br>February 16-18, 1985 | Lecture series & clinical workshop in<br>Cardiovascular Nuclear Medicine |
| Association of University<br>Radiologists Annual Meeting<br>Newport Beach, California<br>May 7-10, 1984 | "Assessment of Recoverable Renal Function:<br>Comparison of Two Radiopharmaceuticals" by<br>J. R. Perry, M. S. Alexander, E. V. Stabb and W.<br>H. McCartney, University of North Carolina,<br>Chapel Hill, NC |

## Hospital and Professional Appointments:

| | |
|---|---|
| Chairman, Radiation Safety Committee<br>Princeton Community Hospital | 1993, 1994 |
| Alternate Delegate, West Virginia State Medical Association<br>Mercer County Medical Society | 1993, 1994 |
| Council to the West Virginia State Medical Association<br>Mercer County Medical Society | 1994 |

# U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
## Public Health Service

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

# Michael Shepard Alexander, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

## B READER

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from 2/1/2008  until  1/31/2012



DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH



FLEMING, JOSEPH                                        02/26/08

CHIEF COMPLAINT: Patient is here for a routine follow up visit.

HISTORY OF PRESENT ILLNESS: He has been doing reasonably well. In fact he apparently has quit smoking for good. Minimal intermittent coughing and sputum production. No obvious hemoptysis. Occasional chest pain on both sides, some on the left side intermittently. No increasing SOB associated with it.

PAST MEDICAL HISTORY: Past medical history is otherwise unchanged.

SOCIAL HISTORY: As mentioned.

MEDICATION: Medications were reviewed; he has been compliant on Advair, Spiriva and PRN Albuterol nebulizer treatments. He is also on Chantix.

PHYSICAL EXAMINATION: His vital signs are relatively stable. O2 sat 93% on RA.
HEENT: No lymphadenopathy in the neck.
RESPIRATORY: Reasonably clear but however poor air entry, bilaterally. Resonant.
CARDIOVASCULAR: S1, S2 heard. No murmurs.
ABDOMEN: Soft abdomen. Good bowel sounds.
EXTREMITIES: No edema. No clubbing or cyanosis.
CNS: No focal neurological deficits.

ASSESSMENT AND PLAN:
1. COPD, severe. Will continue to monitor with repeat PFT at next visit. Continue Advair, Spiriva. Will go ahead and give him some Xopenex rescue inhalation along with PRN Albuterol nebulizer at home.
2. Tobacco abuse, encourage him to continue with cessation. Continue Chantix at least another month or two. Also continue some mucolytics from time to time. Also maybe consider a cardiac evaluation if persistent chest pain in the future. Will maybe even get a CXR if persistent chest pain.


Harsha N. Shantha, M.D.
HNS/bh

RECEIVED

MAR 2 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

14.4

A489

FLEMING, JOSEPH                                           05/29/08

CHIEF COMPLAINT: Patient is here for a routine follow up visit.

HISTORY OF PRESENT ILLNESS: He has been doing reasonably well. He had episodes of maybe mild upper respiratory allergic reaction/infection from which he recovered without any medication. No significant purulent sputum or hemoptysis. No chest pain. SOB about the same. He is able to do most of his daily activities. He has lost a little bit of weight, I believe he has some decreased appetite secondary to a lot of increased activity including some travel and things being out of schedule.

PAST MEDICAL HISTORY: Past medical history is otherwise unchanged.

SOCIAL HISTORY: Apparently he quit smoking for good secondary to Chantix for 3 months; he wants to continue it for a few more months.

MEDICATION: Medications were reviewed; he is compliant on Advair, Spiriva and nebulizer treatments.

PHYSICAL EXAMINATION: His vital signs are relatively stable. O2 sat 94% on RA. Respiratory rate in the teens.
HEENT: No lymphadenopathy in the neck.
RESPIRATORY: Reasonably clear breath sounds. Slightly diminished at both bases.
CARDIOVASCULAR: S1, S2 heard; no murmurs.
ABDOMEN: Soft abdomen. Good bowel sounds.
EXTREMITIES: No edema. No clubbing or cyanosis.
CNS: No focal neurological deficits.

ASSESSMENT AND PLAN:
1. Severe COPD, will repeat PFT next month. Continue Advair, Spiriva and PRN Albuterol nebulizer and Xopenex inhaler PRN.
2. Tobacco abuse, congratulated him on his quitting smoking. Continue Chantix for at least a few more months.
3. Decreased weight loss, he will need a CXR down the line. Patient to call back if persistent weight loss.

Patient to follow up with Pulmonary Associates of Morristown with Dr. Mejia and Ms. Susan Gourley since I will be leaving the practice. Patient agreeable.

Harsha N. Shantha, MD
HNS/bh

RECEIVED

MAR 2 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

## Pulmonary Associates of Morristown
### 500 McFarland Street   Suite B
### Morristown, Tennessee  37814
### 423 587-0740

| | |
|---|---|
| Date | 06/27/2008 |
| Time | 11:31:06AM |

| | | | | | |
|---|---|---|---|---|---|
| Last Name: | FLEMING | First Name: | JOSEPH | Identification: | 9356 |
| Date of Birth: | 09/11/1945 | Age: | 62 Years | Sex: | male |
| Height: | 69 inch | Weight: | 148 lbs | Race: | Caucasian |
| Physician: | E Mejia MD | Operator: | K.DRINNON | Pred. Module: | Knudson Norm |

## Pulmonary Function Analysis



### Spirometry

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| FVC | 4.16 | 2.17 | 52.2 | 2.35 | 56.3 | 8.0 |
| FEV1 | 3.33 | 0.81 | 24.2 | 0.89 | 26.7 | 10.4 |
| FEV1/FVC | 70.5 | 37.1 | 52.6 | 38.0 | 53.8 | 2.3 |
| 25-75 | 3.38 | 0.32 | 9.5 | 0.40 | 11.7 | 23.7 |
| FEF 50 | 4.18 | 0.30 | 7.1 | 0.42 | 10.1 | 40.9 |
| FEF 75 | 1.52 | 0.23 | 15.0 | 0.25 | 16.3 | 8.7 |
| PEF | 8.31 | 1.94 | 23.4 | 2.24 | 27.0 | 15.3 |
| FVC IN | 4.16 | 1.58 | 38.0 | 1.60 | 38.5 | 1.5 |
| FIF 50 | | 2.87 | | 2.41 | | -15.9 |
| PIF | | 3.15 | | 2.42 | | -23.0 |

### Lung Volumes

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| VC MAX | 4.43 | 3.17 | 71.5 | | | |
| TLC-He | 6.37 | 7.68 | 120.5 | | | |
| RV-He | 2.34 | 4.52 | 193.5 | | | |
| RV/TLC | 37.97 | 58.81 | 154.9 | | | |
| FRC-He | 3.83 | 5.79 | 151.2 | | | |
| ERV | 1.14 | 1.27 | 111.6 | | | |
| IC | 3.17 | 1.89 | 59.8 | | | |

### Diffusion

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| DLCOSB | 20.22 | 3.71 | 18.3 | | | |
| DLCOc | 20.2 | 3.7 | 18.3 | | | |
| VA | 6.77 | 5.73 | 84.5 | | | |
| DL/VA | 3.78 | 0.65 | 17.1 | | | |
| VIN | 4.16 | 1.67 | 40.0 | | | |
| Hb | | 14.6 | | | | |

### R Occlusion

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| R Occ | 3.23 | 10.41 | 322.3 | | | |
| G Occ | | 0.10 | | | | |
| P alv | | 6.76 | | | | |

1 MEJIA PFT REPORT 1 2

RECEIVED

MAR 2 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

A491

Pulmonary Associates of Morristown
500 McFarland Street  Suite B
Morristown, Tennessee  37814
423  587-0740

MasterScreen PFT,670627
ON:  EASI,D3EASI.DLL,1031,1,D2EASI.DLL

CD-Version: JLAB 4.54.0.9

| | | | |
|---|---|---|---|
| Animation | 4.53.2.37 | Disposable Catalog | 4.53.2.37 |
| LAB Core | 4.53.2.78 | Amos | 4.53.2.45 |
| JQM | 4.53.2.11 | LAB Demo | 4.53.2.37 |
| Online Manual | 4.53.2.39 | Standard Pneumology | 4.53.2.32 |
| Extended Pneumology | 4.53.2.51 | | |

(C) ERICH JAEGER GmbH  06/27/2008 11:25:53AM



RECEIVED

MAR 2 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

A492

| Last Name: | FLEMING | First Name: | JOSEPH | Identification: | 9356 |



**Date** 06/27/2008
**Time** 11:31:06AM

## Comments

GOOD EFFORT WITH TESTING.Max air autohaler given for post test spirometry.

## Interpretation

Test 3 + 4:
SUMMARY:
Results indicate an obstructive defect with the suggestion of concomitant restriction. The diffusing capacity is reduced. There does not appear to be a significant response to the one-time use of a bronchodilator.
This is a computer interpretation; review by a physician is required.

1— Very severe obstructive pulmonary disease with air trapping.

2— Marked decrease in diffusing capacity.

1 MEJIA PFT REPORT 2 2

RECEIVED
MAR 2 8 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

FLEMING, JOSEPH          #9356                          11/07/08
S: Patient with a history of severe COPD; underwent pulmonary function test which showed a FEV1 of 24% of predicted.
O: Lungs – bilateral scattered rhonchi and wheezes.
A: Severe COPD; Reactive Airway Disease;
P: Patient will receive a flu shot today and medicated with Decadron Im in my office, Prednisone in tapering dose; continue Spiriva, Advair and Albuterol; schedule for chest x-ray; follow up in my office in 4 months or prn.

                    Ernesto Mejia, M.D. /cc

FLEMING, JOSEPH          # 9356            03/23/09
S: Patient with a history of COPD. PFT showed an FEV-1 of 24% predicted. DLCO 50% predicted. Patient quit smoking. CXR showed chronic changes suggestive of COPD. No evidence of any tumors or any infiltrates.
O: Lungs – poor air exchange; scattered rhonchi; no crackles or wheezing. Heart – rhythm regular. Extremities – no edema.
A: COPD, stable.
P: Continue Spiriva, Advair and Pro-air. Follow up in my office in 4 months. Continue smoking cessation.

                    Ernesto Mejia, M.D./bh

FLEMING, JOSEPH          # 9356            08/13/09
S: Patient with a history of end stage COPD with an FEV-1 of only 21% predicted. DLCO 18% predicted. Quit smoking about 6 months ago, feeling much better.
O: Lungs – few expiratory wheezes; no crackles. Heart – rhythm regular. Extremities – no edema.
A: COPD, severe, end stage. Allergic rhinitis.
P: Patient will continue with Spiriva, Advair, Albuterol. I will provide some samples of Astepro for allergic rhinitis. Decadron IM in my office. Schedule CXR and full PFT.

                    Ernesto Mejia, M.D./bh

                                          12/07/09
FLEMING, JOSEPH          # 9356
S: Patient with a history of COPD with an FEV-1 of only 25% predicted. Comes for follow up. Doing well. CXR with no acute changes.
O: Lungs – expiratory wheezes; no crackles. Heart – rhythm regular.
A: End stage COPD, on O2 supplementation.
P: Continue O2 supplementation with Spiriva, Advair. Home nebulizer with Albuterol. Follow up in my office in 4 months or PRN. Patient will be medicated with a short course of Prednisone and Bactrim for resolving bronchitis.

                    Ernesto Mejia, M.D./bh

FLEMING, JOSEPH          # 9356            04/22/10
S: Patient with a history of COPD with an FEV-1 of only 25% predicted. C/O allergies to the pollen. Some chest tightness. Denies any sputum production.
O: Lungs – few scattered rhonchi; no crackles. Heart – rhythm regular.
A: COPD. Allergic rhinitis.
P: Patient will be medicated with Spiriva, Advair, Pro-air. Add Nasonex. Decadron IM in my office. Short course of Prednisone.

                    Ernesto Mejia, M.D./bh

RECEIVED
MAR 2 8 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

## Pulmonary Associates of Morristown
### 500 McFarland Street   Suite B
### Morristown, Tennessee  37814
### 423  587-0740

| | | |
|---|---|---|
| Date | ~~09/22/2013~~ | |
| Time | 02:19:06PM | |

| | | | | | |
|---|---|---|---|---|---|
| Last Name: | FLEMING | First Name: | JOSEPH | Identification: | 9356 |
| Date of Birth: | 09/11/1945 | Age: | 63 Years | Sex: | male |
| Height: | 69 inch | Weight: | 163 lbs | Race: | Caucasian |
| Physician: | E Mejia MD | Operator: | KIM COBBLE | Pred. Module: | Knudson Norm |

## Pulmonary Function Analysis





### Spirometry

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| FVC | 4.13 | 2.20 | 53.2 | 2.08 | 50.4 | -5.3 |
| FEV1 | 3.30 | 0.84 | 25.5 | 0.76 | 23.1 | -9.5 |
| FEV1/FVC | 70.3 | 38.3 | 54.5 | 36.6 | 52.1 | -4.5 |
| 25-75 | 3.34 | 0.36 | 10.9 | 0.26 | 7.8 | -28.6 |
| FEF 50 | 4.14 | 0.42 | 10.2 | 0.26 | 6.2 | -39.0 |
| FEF 75 | 1.50 | 0.22 | 14.5 | 0.24 | 16.1 | 11.1 |
| PEF | 8.28 | 2.38 | 28.8 | 2.60 | 31.4 | 9.1 |
| FVC IN | 4.13 | 2.00 | 48.4 | 2.60 | 62.8 | 29.7 |
| FIF 50 | | 3.59 | | 4.07 | | 13.2 |
| PIF | | 3.66 | | 4.22 | | 15.3 |
| MVV | 134.1 | 35.9 | 26.8 | | | |

### Lung Volumes

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| VC MAX | 4.40 | 3.04 | 69.0 | | | |
| TLC-He | 6.36 | 8.65 | 136.1 | | | |
| RV-He | 2.35 | 5.61 | 238.6 | | | |
| RV/TLC | 38.31 | 64.89 | 169.4 | | | |
| FRC-He | 3.69 | 6.48 | 175.6 | | | |
| ERV | 1.13 | 0.87 | 77.2 | | | |
| IC | 3.15 | 2.17 | 68.8 | | | |

### Diffusion

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| DLCOSB | 21.16 | 6.09 | 28.8 | | | |
| DLCOc | 21.2 | 6.1 | 28.8 | | | |
| VA | 6.77 | 5.04 | 74.5 | | | |
| DL/VA | 3.76 | 1.21 | 32.1 | | | |
| VIN | 4.13 | 1.63 | 39.3 | | | |
| Hb | | 14.6 | | | | |

### R Occlusion

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| R Occ | 3.23 | 13.62 | 421.6 | | | |
| G Occ | | 0.07 | | | | |
| P alv | | 8.63 | | | | |



Occlusion curve

1_MEJIA PFT REPORT 1 2

**RECEIVED**

**MAR 2 8 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

A495

Last Name: **FLEMING**    First Name: **JOSEPH**    Identification: **9356**



| **Date** | 08/24/2009 |
| **Time** | 02:19:06PM |

## Comments

dlco breath hold time was decreased 6 seconds.  Bronchodilator given 0.5cc Albuterol Sulfate in 3cc normal saline.
GOOD EFFORT WITH TESTING.Bronchodilator given 0.5cc Albuterol Sulfate in 3cc normal saline.

## Interpretation

Test 5 + 6:
SUMMARY:
Results indicate an obstructive defect with the suggestion of concomitant restriction. The diffusing capacity is reduced. There
does not appear to be a significant response to the one-time use of a bronchodilator.
This is a computer interpretation; review by a physician is required.

*1- Very severe obstructive pulmonary disease with air trapping*

*2- marked decrease in Diffusing capacity*

RECEIVED
MAR 2 8 2011
ESA / OWCP / DCMWC
Mt Sterling KY

1_MEJIA PFT REPORT 2 2

A496

FLEMING, JOSEPH                    # 9356                           08/06/10
S: Patient with a history of very severe COPD with an FEV-1 of only 25% predicted. Comes for follow up, doing well.
O: Lungs -- poor air exchange; expiratory wheezes; no crackles. Heart -- rhythm regular.
A: COPD, end stage, home O2 dependent at night, now using Prednisone 5mg. every other day.
P: Continue Spiriva, Advair, Albuterol. O2 supplementation at night. Prednisone every other day.
Patient still having off and on some craving for cigarettes. I encouraged the patient to avoid any nicotine products. He also asked for lung transplantation. I advised the patient to be smoke free for at least 6 months before any consideration.

Ernesto Mejia, M.D./bh

FLEMING, JOSEPH                    # 9356                           12/23/10
S: Patient with a history of COPD. Underwent PFT on August 11, 2010 which showed an FEV-1 of only 21% of predicted. Patient is already home O2 dependent. Patient also has worked 2 yrs. underground in the coal mines. He has been diagnosed with stage 2 black lung. Today C/O chest tightness, wheezing.
O: Lungs -- bilateral rhonchi; expiratory wheezes; no crackles. Heart -- rhythm regular.
A: COPD exacerbation. Black lung secondary to 2 yrs. coal mines exposure.
P: Continue Spiriva, Advair, Pro-air. Continue Prednisone every other day. Decadron IM in my office. Short course of Augmentin. Follow up in my office in 4 months or PRN.

Ernesto Mejia, M.D./bh

RECEIVED

MAR 2 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY



### Pulmonary Associates of Morristown
### 500 McFarland Street   Suite B
### Morristown, Tennessee  37814
### 423  587-0740

**Date** ~~05/12/2010~~
**Time** 01:43:42PM

| | | | | | |
|---|---|---|---|---|---|
| Last Name: | FLEMING | First Name: | JOSEPH | Identification: | 9356 |
| Date of Birth: | 09/11/1945 | Age: | 64 Years | Sex: | male |
| Height: | 69 inch | Weight: | 163 lbs | Race: | Caucasian |
| Physician: | E Mejia MD | Operator: | Ashleigh Smith | Pred. Module: | Knudson Norm |

## Pulmonary Function Analysis




### Spirometry

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| FVC | 4.10 | 1.82 | 44.5 | 2.01 | 49.0 | 10.0 |
| FEV1 | 3.27 | 0.68 | 21.0 | 0.70 | 21.5 | 2.5 |
| FEV1/F | 70.1 | 37.6 | 53.7 | 35.0 | 50.0 | -6.9 |
| 25-75 | 3.31 | 0.25 | 7.5 | 0.27 | 8.3 | 11.0 |
| FEF 50 | 4.10 | 0.25 | 6.1 | 0.27 | 6.6 | 7.1 |
| FEF 75 | 1.48 | 0.17 | 11.7 | 0.19 | 12.9 | 9.8 |
| PEF | 8.24 | 2.03 | 24.6 | 2.09 | 25.4 | 3.0 |
| FVC IN | 4.10 | 2.13 | 52.0 | 2.19 | 53.4 | 2.6 |
| FIF 50 | | 4.74 | | 3.64 | | -23.3 |
| PIF | | 5.15 | | 4.33 | | -15.8 |
| MVV | 132.8 | 26.4 | 19.9 | | | |

### Lung Volumes

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| VC MAX | 4.38 | 3.58 | 81.8 | | | |
| TLC-He | 6.34 | 7.08 | 111.5 | | | |
| RV-He | 2.37 | 3.50 | 147.6 | | | |
| RV/TLC | 38.65 | 49.43 | 127.9 | | | |
| FRC-He | 3.69 | 5.20 | 141.0 | | | |
| ERV | 1.11 | 1.71 | 153.3 | | | |
| IC | 3.14 | 1.87 | 59.7 | | | |

### Diffusion

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| DLCOSB | 20.93 | 6.87 | 32.8 | | | |
| DLCOc | 20.9 | 6.9 | 32.8 | | | |
| VA | 6.77 | 5.70 | 84.1 | | | |
| DL/VA | 3.73 | 1.21 | 32.3 | | | |
| VIN | 4.10 | 1.68 | 40.9 | | | |
| Hb | | 14.6 | | | | |

### R Occlusion

| | Ref | Pre Meas | Pre%Ref | Post Meas | Post%Ref | Post%Chg |
|---|---|---|---|---|---|---|
| R Occ | 3.23 | 14.04 | 434.4 | | | |
| G Occ | | 0.07 | | | | |
| P alv | | 6.70 | | | | |

RECEIVED

MAR 2 8 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

1_MEJIA PFT REPORT 1 2

A498

Last Name:    FLEMING        First Name:    JOSEPH        Identification:    9356



**Date** 08/11/2010
**Time** 01:43:42PM

## Comments

Bronchodilator given 0.5cc Albuterol Sulfate in 3cc normal saline.GOOD EFFORT WITH TESTING.

## Interpretation

Test 7 + 8:
SUMMARY:
Results indicate an obstructive defect with the suggestion of concomitant restriction. The diffusing capacity is reduced. There does not appear to be a significant response to the one-time use of a bronchodilator.
This is a computer interpretation; review by a physician is required.

1.— Very severe obstructive pulmonary disease with air trapping.

2.— Marked decrease in diffusing capacity

RECEIVED
MAR 2 8 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

1_MEJIA PFT REPORT 2-2

A499

## CURRICULUM VITAE

## ABDUL KADER DAHHAN, M.D., F.C.C.P.

| | |
|---|---|
| **BORN:** | Damascus, Syria (February 7, 1941) |
| **ADDRESS:** | 120 Professional Lane<br>Suite 101<br>Harlan, KY 40831 |
| **SPECIALTY:** | Internal Medicine – Pulmonary |
| **PRE-MEDICAL SCHOOL:** | Damascus University, Damascus, Syria<br>Graduated in 1957. Degree: P.C.B. |
| **MEDICAL SCHOOL:** | Damascus University, Damascus, Syria<br>(1957 to 1964) |
| **INTERNSHIP:** | Straight Medical, Kansas University<br>Medical Center, Kansas City, Kansas<br>July 1, 1965 to June 30, 1966. |
| **RESIDENCY:** | Internal Medicine, Lutheran Hospital<br>Cleveland, OH July 1, 1966 to<br>June 30, 1967.<br><br>Internal Medicine, Cleveland Clinic,<br>Cleveland, OH July 1, 1967 to<br>June 30, 1969. |
| **PULMONARY FELLOWSHIP:** | Cleveland Clinic, Cleveland, OH<br>July 1, 1969 to June 30, 1970.<br><br>University of Manitoba, Winnipeg,<br>Canada, July 1, 1970 to June 30, 1971 |

Copied by PS&E

14.11

PAGE TWO - CURRICULUM VITAE

EMPLOYMENT:                     Will Rogers Hospital, Saranac Lake,
                                New York, 1972 to 1974, Associate
                                Medical Director.

                                Daniel Boone Clinic, Harlan, KY
                                1974 to January 31, 1986, Depart-
                                ment Pulmonary Medicine.

                                Private Practice February 1986 to
                                Present.

BOARD CERTIFICATION:            American Board of Internal Medicine,
                                1975.

                                American Board of Pulmonary Medicine,
                                1982.

STATES LICENSED IN:             Kentucky, New York, Ohio, California

FELLOWSHIP:                     American College of Chest Physicians,
                                November 1985.

                                Certified B. Reader

MEMBERSHIP:                     American Thoracic Society
                                New York Academy of Science
                                American College of Chest Physicians
                                American Medical Association
                                Kentucky Medical Association
                                Harlan County Medical Society
                                Kentucky Thoracic Society
                                Kentucky Chapter A.C.C.P.

PRIVILEGES:                     Harlan Appalachian Regional Hospital,
                                Harlan, Kentucky.

PAGE THREE - CURRICULUM VITAE

PRIVILEGES:                    Paul B. Hall Medical Center,
                               Paintsville, Kentucky.

PUBLICATIONS:                  Drill Lung Biopsy
                               Journal of American Medical Assoc.
                               Page 904, Vol. 224, No. 6

                               F.M.G.
                               New England Journal of Medicine
                               Page 917, Vol. 291, No. 17

                               Pleural Thickening
                               Kentucky Medical Journal
                               January, 1975

                               Eosinophilic Pneumonia
                               Kentucky Medical Journal
                               July, 1981

PRESENTATIONS:                 Mesothelioma
                               Eighth Annual Symposium on Diseases
                               of the Chest, June 5, 1992.

                               Cryptococcal Infection of the Lung
                               Ninth Annual Symposium on Diseases
                               of the Chest, June 4, 1993.

                               Perineal Plastic Syndrome
                               Tenth Annual Symposium on Diseases
                               of the Chest, June 1994.

                               Diagnosis of Tuberculosis
                               Eleventh Annual Symposium on Diseases
                               of the Chest, May 6, 1995.





**First Class Ma**



PENNS
Post Off
Bristol, \

7010 3090 0000 7539 4509

RECEIVED

MAY 18 2011

ESA/OWCP/DCMWC
Mt. Sterling, KY

**CERTIFIED MAIL - RETURN RECEIPT
REQUESTED**
Jennifer Jackson
U. S. Department of Labor
402 Campbell Way
Mt. Sterling, KY 40353

A503

## Glen Baker M.D., F.C.C.P.

*Diplomat American boards of Internal Medicine*
*Diplomat American Boards of Pulmonary Diseases*
*Fellow American College of Chest Physicians*
*NIOSH Certified B Reader*

January 28, 2011

Jennifer J. Jackson
Claims Examiner
U.S. Department of Labor
Division of Coal Mine Workers' Compensation
402 Campbell Way
Mt. Sterling, KY 40353-7847

**RECEIVED**

**FEB 0 4 2011**

ESA / OWCP / DCMWC
Mt. Sterling, KY

RE:   Miner:       Joseph Fleming
        Claim No.:  XXX-XX-0560 LM C

Dear Ms. Jackson:

I have reviewed the chart on Mr. Fleming. He alleged approximately 22 years in the underground mines doing a variety of jobs. He stated he worked from 1988 to 1991 on his last job. He has a worked history filled out that showed approximately 22 years of coal mine employment.

He has x-ray changes consistent with Coal Workers Pneumoconiosis 1/1 on basis of 2000 ILO Classification. It is thought that at least 10 years is necessary to establish a relationship between coal dust exposure and the presence of pneumoconiosis. Unfortunately, only 9 ¼ years of employment was proven.

The patient does have a significant degree of obstructive airway disease as well as a significant smoking history with severe obstructive defect on pulmonary function testing. In one who has such a severe degree of emphysema, this could appear to decrease the appearance of opacities in the lung fields and make the degree of profusion of pneumoconiosis appear less simply due to destruction of lung tissue.

The presence of 10 years of coal mine employment is not a magic number in that with 9 years and 11 months, one would not have pneumoconiosis but at 10 years and one month, one would have pneumoconiosis. In a susceptible individual, 9 ¼ years of coal mine employment could be sufficient in a susceptible individual. As always, I am concerned that the patient's records do not fully reflect his actual years of coal mine employment which he has very carefully listed in his work history. I cannot attest to the accuracy of that work history, only that it is written in what appears to be at least 20 years or so of coal mine employment that he list in terms of the years that he worked and the companies that he worked for.

DIRECTOR EXHIBIT

NO. 13    CONSISTING

OF 2    PAGES

A504

Joseph Fleming
January 28, 2011
Page 2

It is my gut opinion that he does have Coal Workers Pneumoconiosis, at least category 1/1, due to his coal mine employment, even if it is 9 ¼ years. Although, I feel he does have more years than that of actual employment. I feel his severe COPD has more likely led to his longer history of cigarette smoking; though there has been some contribution from his dust exposure as well. The current medical literature suggest that the combination of cigarette smoking and coal dust exposure may be either additive or synergistic in terms of their effects on breathing problems.

To answer your question very simply, I feel that his 9 ¼ years of coal mine employment would be a significant degree of coal mine exposure for this patient to develop category 1/1 degree of pneumoconiosis. I also feel there is probably more years of employment than is actually verified. As always there is some other possible cause of his x-ray changes than coal dust exposure as over one hundred diseases may mimic or cause similar x-ray changes as coal dust exposure may with the presence of Coal Workers Pneumoconiosis.

Again, I feel his 9 ¼ years of coal mine employment is sufficient to account for his x-ray changes, especially working in a high dust concentration as he did in his employment no matter how many years that he experienced.

I hope this answers your questions. If not, please feel free to contact me regarding further information.

Sincerely,

Glen Baker M.D., F.C.C.P.
GB/ah

RECEIVED

FEB 0 4 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

*P.O. Box 505        *Corbin, KY 40702        *(606) 528-6005        *Fax: (606) 258-1781

**Medical History and Examination for**
**Coal Mine Workers' Pneumoconiosis**

**U.S. Department of Labor**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

RECEIVED
JAN 2 0 2011

Note: This report is authorized by law (30 USC 901 et. seq.) and required to receive a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. The method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

| A. Patient Information | (Please type or neatly print all responses.) | OMB No.: 1215-0090 Expires: 08/31/2011 |
|---|---|---|

**1. Name and Address**

Joseph Fleming
1226 Zirkle Road
Dandridge, TN 37725

**2. DOL Claim No.**

XXX-XX-0560

**3. Telephone No.**

(865)397-9654

**4. Date of Exam**

01/14/11

**5. Date of Birth**

09/11/1945

**6. Personal Physician (name, address, phone no.)**

Dr. Ernesto Mejia
500 McFarland St, Suite B
Morristown, TN 37814
423-587-0740

**7. Examining Physician (name, address, phone no.)**

Glen Baker, M.D.
1007 Cumberland Falls Hwy
PO Box 505
Corbin, KY 40702
Phone: (606)528-6005

| B. Employment History | (Please type or neatly print all responses.) |
|---|---|

[X] "Employment History," Form CM-911a or equivalent (dated __08/16/2010__ ) is attached. Please review the form and, with the miner's help, **complete only blocks 1.a,** below, describing his / her most recent coal mine job (of at least one year's duration). Then, move on to "C. Patient History."

[ ] CM-911a is not attached – complete both sections 1. and 2. below.

**1. Coal Mine Employment – CME.** List most recent employers first. In line (a.) describe the last job of at least one year's duration. (Include in all lines any coal mine construction or transportation work, or work in a mine preparation facility.)

| Name of Company | Job Title and Description of Job's Physical Requirements | From (mm/yy) | To (mm/yy) |
|---|---|---|---|
| a. Last CME held at least one year. Aberry Co. | roof bolter, scoop and continuous miner operator | 3/88 | 3/91 |
| b. Other CME: Alleged 22 years underground. | shuttle car and auger | | |

c. Additional number of years in CME not described above: _____ years.

**2. Other Employment – Not CME.** (If the employment exposed the claimant to an occupational toxic inhalant hazard, describe the inhalant under "Job Title and Description.")

| Name of Company | Job Title and Description | From (mm/yy) | To (mm/yy) |
|---|---|---|---|
| | | | |

| C. Patient History (Family – Medical – Social) | (Please type or neatly print all responses.) |
|---|---|

**1. Family History.**

Have the patient's parents, children, or other "blood" relatives ever had any of the following?

| | Yes | No | | Yes | No | If "Yes," identify family member: |
|---|---|---|---|---|---|---|
| High blood pressure | | x | Asthma | | x | tuberculosis – father |
| Heart disease | | x | Allergies | | x | |
| Tuberculosis | x | | Emphysema | | x | |
| Diabetes | | x | Stroke | | x | |
| Cancer | | x | | | | |

Page 1

DIRECTOR EXHIBIT
NO _12_ CONSISTING
OF _29_ PAGES

Form CM-988
Rev. Jan 1997

12.1

**C. Patient History (continued)**                    RECEIVED        (Please type or neatly print all responses.)

2.  Individual Health / Medical History.

JAN 2 0 2011

a.  **Does the patient have a history of:**

ESA / OWCP / DCMWC
Mt. Sterling, KY

| Yes | No | | When manifested | Yes | No | | When manifested |
|-----|-----|---|---|-----|-----|---|---|
| | x | Frequent Colds | | | x | Arthritis | |
| x | | Pneumonia | 1991 | | x | Heart disease | |
| | x | Pleurisy | | | x | Allergies | |
| x | | Attacks of wheezing | 17-18 years | | x | Cancer (of            ) | |
| | | Tuberculosis | | | x | Diabetes Mellitus | |
| x | | Chronic bronchitis | 17-18 years | | x | High Blood Pressure | |
| | x | Bronchial Asthma | | | x | Connective Tissue Disease | |

b.  **Other Significant Conditions or Serious Illnesses (when diagnosed?):**

N/A

c.  **Hospitalizations (reasons and dates):**

pneumonia 1991

d.  **Surgery:**

pneumothorax 2004, partial pneumonectomy 2004 and thoracoplasty, disc L4 and L5 1992, left inguinal hernia 1986 and right inguinal hernia 1986, right hernia 2008

---

**3.  Social History.**

a.  **Smoking History**

_____Never smoked

**XX** Has stopped smoking
Started: _age 25_ ; Stopped: _age 60_
Smoked what? __cigarettes__
How much (e.g., packs/day): ½ to 1 pack/day

_____ Currently smoking
Started: _____
Smokes what? _____
How much:_____

b.  **Other Pertinent Social History (e.g., drug or alcohol use, strenuous hobbies):**

N/A

---

**D. Present Illnesses / Physical Examination**                    **(Please type or neatly print all responses)**

1.  Chief complaints/symptoms - as described by patient.  Please comment on all "Yes" answers (e.g., describe frequency, duration, and/or severity of symptoms).

| Yes | No | | Comments |
|-----|-----|---|---|
| x | | Sputum (daily?) | 17-18 years, daily, 1/3 cup per 24 hours |
| x | | Wheezing (daily?) | 17-18 years, daily |
| x | | Dyspnea (quantitate) | 17-18 years, daily, dyspnea on exertion level ground 30 to 50 yards |
| x | | Cough | 17-18 years, daily |
| | x | Hemoptysis | |
| x | | Chest pain (inciting factor) | Chest pain with exertion 2 years |
| x | | Orthopnea | 10 years, sleeps on 3 pillows, which helps |
| x | | Ankle edema | occasional |
| | x | Paroxysmal Nocturnal Dyspnea | |

(Indicate  in D.4., next page, any of the above symptoms manifested during the exam.)

2.  Other complaints.  (Include here the patient's description of any limitations in physical activities like walking, climbing, and lifting.)

Occasional shortness of breath at night. Inhaler helps.

---

A507

**D. Present Illnesses / Physical Examination (continued)**                                   (Please type or neatly print all responses)

3. Current treatment (including medications)

Prednisone, Albuterol sulfate, Spiriva, Advair, oxygen

RECEIVED

JAN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

4. **Physical Findings:** Based on Your Physical Examination.
   (Show all findings, especially those pertinent to the respiratory system and the cardiovascular system.)

a.  Fill in the appropriate date or response:   *WNL   +NAD   -Neg

| General | | | Thorax & Lungs | | | Nose | | Abdomen | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Inspection | left thoracotomy | | Membranes | WNL | Peristalsis | WNL |
| Height: | 68 1/4" | | scar | | | Obstruction | NEG | Tenderness | NEG |
| Weight: | 175 | | Palpation | NAD | | Discharge | NEG | Ascites | NEG |
| | | | | | | Septum | WNL | Liver | WNL |
| Temperature | 97.0 | | Percussion | NAD | | Sinuses | WNL | Spleen | WNL |
| Pulse | 72 | | | | | | | Kidneys | WNL |
| Respiration | 18 | | Auscultation | bilateral | | **Throat** | | Urinary bladder | WNL |
| B.P. rt. arm | 150/80 | | inspiratory & expiratory | | | Erythema | NEG | Masses | NEG |
| B.P. lt. arm | 140/80 | | wheezing | | | Exudate | NEG | Hernia | NEG |
| Development | WNL | | **Heart** | | | Tonsils | WNL | | |
| Nutrition | WNL | | Peripheral pulse | WNL | | Pharynx | WNL | | |
| Hydration | WNL | | PMI | WNL | | | | | |
| Orientation | WNL | | Pulsation | NEG | | **Neck** | | | |
| Mentation | WNL | | Epigastric Cardiac | | | Masses | NEG | | |
| Personality | NAD | | Pulsation | NEG | | Thyroid | NAD | | |
| Mood | NAD | | Thrills | NEG | | Trachea | NAD | | |
| | | | Rhythm | WNL | | Arteries | NAD | | |
| **Extremities** | | | Sounds | WNL | | Veins | NAD | | |
| Color | WNL | | Gallop | NEG | | | | | |
| Clubbing | NEG | | Murmurs | NEG | | **Musculoskeletal** | | | |
| Edema | trace bilateral | | | | | Spine | NAD | | |
| Varicosities | NEG | | Friction Rub | NEG | | Joints | NAD | | |
| Arterial pulses | WNL | | | | | Muscles | NAD | | |

b.  Other recent findings – narrative summary:          * WNL – Within normal limits        -NEG - Negative

                                                         + NAD – No abnormality detected

6.  **Summary of diagnostic testing** – in the space below, check the applicable block(s) next to any test results **(including those conducted in conjunction with this physical exam)** which you reviewed and relied upon, at least in part, to base your medical assessments and conclusions – especially those on the next page.  Be sure to show the dates of each test and summarize the results.

| | | Dates | Summary of Results |
|---|---|---|---|
| X | **Chest X-ray** | 01/14/11 | Coal Workers Pneumoconiosis, 1/1 on basis of 2000 ILO Classification |
| X | **Vent Study (PFS)** | 01/14/11 | Severe obstructive defect |
| X | **Arterial Blood Gas** | 01/14/11 | Moderate resting arterial hypoxemia |
| X | **Other:**   EKG | 01/14/11 | Normal sinus rhythm, possible old anteroseptal infarction |
| | **Other:** | | |

**Page 3**

A508

D. Present Illnesses / Physical Examination (continued( _____ (Please type or neatly print all responses)

6. Cardiopulmonary Diagnosis (es): (And provide the basis (es) for your stated diagnosis (es).)

**1. Coal Workers Pneumoconiosis 1/1: on basis of 2000 ILO Classification**
**2. COPD with severe obstructive defect: pulmonary function testing**
**3. Moderate resting arterial hypoxemia: arterial blood gas analysis**
**4. Chronic bronchitis: by history**
**5. Chest pain with exertion: by history**

RECEIVED

JAN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

7. Etiology of Cardiopulmonary Diagnosis (es): (List Primary and Secondary Causes – if applicable – and Provide Rationale.)

**1. coal dust exposure**
**2. coal dust exposure/cigarette smoking**
**3. coal dust exposure/cigarette smoking**
**4. coal dust exposure/cigarette smoking**
**5. possible arteriosclerotic heart disease**

8. Impairment – If the patient has chronic respiratory or pulmonary disease, give your medical assessment – with rationale – of:

a.  The degree of severity of the impairment, particularly in terms of the extent to which the impairment prevents the patient from performing his/her current or last coal mine job of one year's duration: (refer to Section B.1.a if this form.)

**totally impaired**

b.  The extent to which each of the diagnoses listed in D.6. contributes to this impairment:

**fully**

9. Non-Cardiopulmonary Diagnosis – If the patient has any disabling **non-respiratory condition(s)** indicate what the condition is and describe its degree of the impairment, especially as it may affect the claimant's ability to perform his coal mine work:

**N/A**

E.  Physician Referral
Should the patient be referred to another physician for further evaluation?    Y    **X** N    Has referral been made?    Y    N
For what reason?

F.  Physician's Signature
I certify that the information furnished is correct and am aware that my signature attests to its accuracy.  I am also aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000, or imprisonment for up to one year, or both.

Signature: _Glen Baker MD_ _____    Date: ___1/14/11___

(Physician's name should be typewritten on the front page of this form.)

**Public Burden Statement**
We estimate that it will take an average of 30 minutes per response to complete this information collection, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and composing and reviewing the collection of information.  If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3525, 200 Constitution Avenue, N. W., Washington, D.C. 20210.  DO NOT SEND THE COMPLETED FORM TO THIS OFFICE
Note: Persons are not required to complete this collection of information unless it displays a currently valid OMB control number.

RECEIVED

JAN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

Joseph Fleming
SSN: XXX-XX-0560
Date of Exam: 01/14/11
Addendum

On the basis of my examination the patient has a chronic lung disease secondary to his coal mine employment. This is based on the presence of both clinical and legal pneumoconiosis.

With clinical pneumoconiosis he has x-ray changes of Coal Workers Pneumoconiosis, category 1/1, on basis of 2000 ILO Classification. He worked 22 years in the underground mines. He has no other condition to account for these x-ray changes. This is presumptive evidence these changes are, in fact, due to coal dust and represents Coal Workers Pneumoconiosis. The only way to prove this is to do a lung biopsy, which is not clinically indicated at this time.

He also has legal pneumoconiosis. He has a severe obstructive defect on pulmonary function testing, moderate resting arterial hypoxemia and a symptom complex of chronic bronchitis. These conditions can all be caused by coal dust exposure. He has a long history of cigarette smoking of 35 years at the rate of one-half to one pack per day. He quit smoking 5 years ago. This can also cause similar symptoms. The combination of coal dust and cigarette smoking may, in fact, be either synergistic or additive according to the medical literature. On this basis, I feel his condition has been significantly contributed to and substantially aggravated by coal dust exposure from his coal mine employment.

His pulmonary function studies meet federal guidelines for disability with his FEV1 and FEV1/FVC ratio meeting those values. On this basis, he would not have the respiratory capacity to perform the work of a coal miner or comparable work in a dust free environment.

His Coal Workers Pneumoconiosis 1/1, severe obstructive ventilatory defect, moderate resting arterial hypoxemia and chronic bronchitis all have an adverse effect on his respiratory system and contributes to his total pulmonary disability due significantly to his coal dust exposure.

_____          _____
Glen Baker M.D., F.C.C.P.                                Date

# GLEN R. BAKER, JR., M.D., F.C.C.P.

## CURRICULUM VITAE

**Address:**

Glen Ray Baker Jr. PSC
P. O. Box 505
Corbin, KY 40702

**Education:**

| | |
|---|---|
| 1960-1964 | Cumberland College, Williamsburg, Kentucky |

**Medical School:**

| | |
|---|---|
| 1964-1968 | University of Louisville School of Medicine |

**Internal Medicine:**

| | |
|---|---|
| 1968-1969 | University of Louisville School of Medicine & Affiliated |
| 1969-1970 | Hospitals, Louisville, Kentucky |
| 1970-1972 | U.S. Army Medical Officer |
| 1973-1974 | Mayo Graduate School, Mayo Clinic, Rochester, Minnesota, Fellowship in Internal Medicine |

**Pulmonary diseases:**

| | |
|---|---|
| 1972-1973 | Fellowship in Department of Respiratory & Environmental |
| 1974-1975 | Diseases, University of Louisville School of Medicine & Affiliated Hospitals, Louisville, KY |

**Board Certifications:**

| | | |
|---|---|---|
| June 1974 | Internal Medicine | Certificate #47142 |
| Oct. 1976 | Pulmonary Diseases | Certificate #47142 |
| Nov. 1976 | Fellow American College of Chest Physicians (F.C.C.P.) | |
| | NIOSH Certified B Reader | 11/01/1988 – 10/31/1992 |
| | NIOSH Certified B Reader | 02/01/1993 – 01/31/1997 |
| | NIOSH Certified B Reader | 02/01/1997 – 01/31/2001 |
| | NIOSH Certified B Reader | 06/01/2002 – 05/31/2006 |
| | NIOSH Certified B Reader | 06/01/2006 – 05/31/2010 |
| | NIOSH Certified B Reader | 06/01/2010 – 05/31/2014 |

**State Licensure:**

| | | |
|---|---|---|
| 1968 | Kentucky State Board of Health | #15090 |

**Professional Societies:**

Whitley County Medical Society
American Medical Association
Kentucky Thoracic Society
American College of Physicians
American Thoracic Society
American College of Chest Physicians
Mayo Alumni Associates
Founding Member, Brothers Mayo Society
Lake Cumberland Physician Network

Dr. Glen R. Baker
Curriculum Vitae
Page 2

**Past Positions:**

Private Practice, Consultative Pulmonary Disease & Internal
Medicine, Corbin, KY

Director, Department of Medicine, Baptist Regional Medical Center,
Corbin, KY

Director, Intensive Care Unit, Baptist Regional Medical Center,
Corbin, KY

Director, Respiratory Care Unit, Baptist Regional Medical Center,
Corbin, KY

Medical Director of Coal Miners Clinic, Greenville, KY

**Current Positions**

Medical Examiner, U.S. Department of Labor, Determinations
of Pulmonary Disorders

Medical Examiner, Independent Medical Exams for Occupational
Pulmonary Disorders

**Honors:**

| | |
|---|---|
| 1976 | Outstanding Alumnus, Cumberland College, Williamsburg, KY |
| 1988 | Cumberland College Hall of Fame |

cv Baker
05/2010



## U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
### Public Health Service

Centers For Disease Control And Prevention
National Institute For Occupational Safety And Health
Appalachian Laboratory For Occupational Safety And Health

THIS IS TO CERTIFY THAT

# Glen Ray Baker, Jr., M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

## B READER

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS
THIS CERTIFICATION WILL REMAIN IN EFFECT FROM 06/01/2002 UNTIL 05/31/2006.



DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH



A513



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

## Glen Ray Baker, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

THIS CERTIFICATION WILL REMAIN IN EFFECT **06/01/2006** UNTIL **05/31/2010.**

*David N Weissman, MD*
DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

CDC



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

# Glen Ray Baker, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS

This Certification will remain in effect from **6/1/2010** until **5/31/2014**

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

**Employment History**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

JAN 20 2011
OWCP / DCMWC
Mt. Sterling, KY

| | |
|---|---|
| Note: Persons are not required to respond to this collection of information unless it displays currently valid OMB control number. | OMB No. 1215-0052 Expires: 05-31-02 |

Please complete as accurately as possible the miner's complete employment history. (Where employment was in coal mining, specify whether the mine was a strip mine or an underground mine.) This report is authorized by law (30 U.S.C. 901 et. seq.) and required to obtain a benefit. While you are not required to respond, your cooperation is needed to ensure that full and proper consideration is given to this claim. Disclosure of the social security number is voluntary. Failure to disclose such number will not result in the denial of any right, privilege or benefit to which you may be entitled.

**Miner's Name**  Joseph Fleming

**Miner's Social Security Number**  404 60 0560

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | 3. Occupation (Specify type of work) | 4. Period of Employment Mo/Yr — Mo/Yr | | 5. Exposure to dust, gases, or fumes? (Yes/No) |
|---|---|---|---|---|---|
| South East Ky Coal Co. Jenkins KY | Extraction & Prep of Coal | Worked on Auger (Drill) | Jan 1970 | Jan 1973 | Yes |
| Scotia Coal Co Partridge KY | Coal Mining Ext & Pred of Coal | Ran Motor Bolted Top Shuttle Car | Mar 73 | May 77 | Yes |
| Sullivan Bros Coal Co Pikeville KY | Coal Mining Extraction & Prep of Coal | Operate Roof Bolter Shuttle Car | July 77 | Aug 79 | Yes |
| Everidge & Nease Coal Co Whitesburg Ky | Coal Mining Extraction of Coal | Shuttle Car & Scoop Oper | Oct 79 | Oct 80 | Yes |
| Hall Bros Coal Co. Virbie Ky | Coal Mining Extraction of Coal | Roof Bolter | Nov 80 | May 81 | Yes |
| Paramont Coal Co. Norton VA. | Coal Mining Extraction of Coal | Roof Bolt Shuttle Car | Aug 83 | May 84 | Yes |
| Kincer Bros Coal Co Whitesburg Ky | Coal Mining Extraction of Coal | Scoop Operator | June 84 | Mar 85 | Yes |
| Wampler Bros Coal Co. Whitesburg KY | Coal Mining Extraction of Coal | Shuttle Car Roof Bolter | Mar 85 | Mar 88 | Yes |
| A Berry Coal Co Whitesburg Ky | Coal Mining Extraction of Coal | Roof Bolter Scoop Continous Miner | Mar 88 | Mar 91 | Yes |

RECEIVED

AUG 16 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

Form CM-911a

1

A516

RECEIVED

JAN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | 3. Occupation (Specify type of work) | 4. Period of Employment | | 5. Exposure to dust, gases or fumes? |
|---|---|---|---|---|---|
| | | | Mo/Yr | Mo/Yr | (Yes/No) |
| BRANAHAM & BAKER COAL CO PRESTONSBURG KY | COAL MINING | STRIP MINE | Dont Remember Dates Worked 1 Year | | Yes |
| | | | | | |
| | | | | | |

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| 6. Signature of Claimant (first, middle, last) | 7. Date (month, date, year) |
|---|---|
| *Harold Fleming* | 7/19/2010 |

| 8. Mailing Address (Number, Street, Apt. No., P.O. Box or Rural Route) | 9. City and State |
|---|---|
| 1226 Zirkle Rd | Dandridge TN |

| 10. Zip Code | 11. County where you live | 12. Telephone number (include area code) |
|---|---|---|
| 37725 | Jefferson | 865 397 9654 |

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of Witness | Signature of Witness |
|---|---|
| | |
| Address (Number, Street, City, State & Zip Code) | Address (Number, Street, City, State & Zip Code) |

**PRIVACY ACT STATEMENT**

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this report is required under the Black Lung Benefits Act. (2) The information in the report will be used to determine eligibility under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C-3526, 200 Constitution Avenue, N.W., Washington, D.C. 20210.
DO NOT SEND THE COMPLETED FORM TO THIS OFFICE

RECEIVED

AUG 1 6 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

2

Form CM-911a

A517

**X-RAY FILED**

FEB 0 3 2011

## Roentgenographic Quality Rereading

**U. S. Department of Labor**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

**RE-READ** 

**NOTE:** This report is authorized by law (30 U.S.C., 901 et. seq. and 20 CFR 718.102) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

OMB No. 1215-0090
Expires: 08/31/2011

Please record your quality finding of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1A. Miner's Name (Print) | 1B. Date of X-ray | 1C. Miner's Social Security Number | 1D. Film Quality (If not Grade 1 give reason): |
|---|---|---|---|
| **Joseph Fleming** | 0 1 1 4 1 1 | **XXX-XX-0560** | 1 ☒ / 2 / 3 / U/R |
| | MO.  DAY  YR. | | |

**2A. ANY OTHER ABNORMALITIES?**  YES ☒  Complete 2B and 2C  NO ☐  Proceed to Section 3

**2B. OTHER SYMBOLS (OBLIGATORY)**

| aa | at | ax | bu | ca | cg | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | me | pa | pb | pi | px | ra | rp | tb |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION

OD    (Specify od.)    Date Personal Physician notified?    Mo.    Day    Yr.

**2C. OTHER COMMENTS**

**2D. SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 2C?**    Yes ☐    No ☒    Proceed to Section 3

**3A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:**

DOL Medical Provider Number (if applicable):

Was film taken by a registered radiographer/radiographic technologist? ☐ Yes  ☐ No

Name _____    Registration No. _____    State _____

**3B.** Physician Interpreting Film (Print Name): _____

Are you: Board-certified Radiologist? ☒ Yes  ☐ No    Board-eligible Radiologist? ☐ Yes  ☐ No    B-reader? ☒ Yes  ☐ No

**3C.** I certify that this film has been re-read for quality in accordance with the instructions provided by 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits Under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one-year, or both.

PHYSICIAN'S SIGNATURE _____    DATE OF RE-READING _1/8/11_ (Mo., Day, Yr.)

**Public Burden Statement**

We estimate that it will take an average of 3 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U. S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE**

NOTE: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Form CM-933b
Rev. June 2008

## THIS X-RAY HAS BEEN RE-READ BY A CERTIFIED "B" READER

12.3

# CURRICULUM VITAE

**PETER J. BARRETT, MD, FACR**
800 Boylston Street, Suite 714
Boston, MA 02116-3923
(617) 426-2110

## ACADEMIC HISTORY

St. John's Preparatory, Danvers, Massachusetts
1960 (honors)

College of the Holy Cross, Worcester, Massachusetts
B.A., Pre-Med, Chemistry, 1960-1964

Tufts University School of Medicine, Boston, Massachusetts
M.D., 1968

Internship, St. Elizabeth's Hospital of Boston, Brighton, Massachusetts
Internal Medicine, 1968-1969

Residency, Tufts New England Medical Center Hospital, Boston, Massachusetts
1969-1972

## BOARD CERTIFICATION

Diplomat, National Board of Medical Examiners, 1968

Diplomat, American Board of Radiology, Diagnostic Radiology, 1973

Diplomat, Massachusetts, State Board of Licensure, 1969

Diplomat, California State Board of Licensure, 1969

Diplomat, American Board of Nuclear Medicine, 1977

Diplomat, Special Competency in Nuclear Medicine, American Board of Radiology, 1976

Certified "B" Reader, Department of Health and Human Services, National Institute for
Occupational Safety and Health (NIOSH), August 1, 1984 through July 31, 2004

## TEACHING, UNIVERSITY APPOINTMENTS, AND HOSPITAL AFFILIATIONS

Clinical Professor of Radiology, Tufts Medical School, 1993-Present

Associate Clinical Professor of Radiology, Tufts Medical School, 1986-1993

Assistant Clinical Professor of Radiology, Tufts Medical School, 1980-1985

Instructor of Radiology, Tufts Medical School, 1975-1980

Staff Radiologist, Quincy Hospital

Director of Radiologic Services, Massachusetts Respiratory Hospital, 1987-Present

12.4

Curriculum Vitae
Peter J. Barrett, M.D.
Page 2

## TEACHING, UNIVERSITY APPOINTMENTS, AND HOSPITAL AFFILIATIONS (Continued)

Staff Radiologist, Massachusetts Respiratory Hospital, 1973-1987

Visiting lecturer in Radiology, Boston V.A. Hospital

Clinical Professor and Visiting Radiologist, New England Medical Center Hospital

Visiting lecturer in Radiology, Massachusetts General Hospital, 1973-1979

Lecturer in Pneumoconiosis, Harvard School of Public Health, 1989-1993

Instructor of Radiology, Harvard Medical School, 1972-1975

Assistant in Radiology, Massachusetts General Hospital, 1972-1974

## PROFESSIONAL APPOINTMENTS AND SOCIETIES

Member, American College of Radiology

Member, American Roentgen Ray Society

Member, American Thoracic Society.

Fellow, American College of Chest Physicians

Chairman, Legislative Committee, Massachusetts Radiological Society, 1999-2002

Consultant to the U.S. Department of the Army for asbestos concerns, Corpus Christi, Texas, April-May, 1999

Consultant to U.S. Department of Labor Black Lung Program, "B" Reader, 1988-Present

Fellow, American College of Radiology, 1995-Present

Member, Radiological Society of North America

Associate Chief of Radiology, Quincy Hospital, 1996-Present

Director, Nuclear Medicine Diagnostic and Therapeutic Laboratory, Quincy Hospital, 1995-Present

Chief of Radiology, Quincy Hospital, 1987-1989

President of Medical Staff, Quincy Hospital, 1986-1988

Member, Admissions Committee, Tufts University School of Medicine, 1982-1988

President, Massachusetts Radiological Society, 1996-1997

President Elect, Massachusetts Radiological Society, 1995-1996

Vice President and Board Member, Massachusetts Radiological Society, 1994-1995

Curriculum Vitae
Peter J. Barrett, M.D.
Page 3

## PROFESSIONAL APPOINTMENTS AND SOCIETIES (Continued)

Treasurer and Board Member, Executive Committee, Massachusetts Radiological Society, 1991-1993

Board Member, Committee on Finance, Massachusetts Medical Society, 1994-1995

Member, New England Society of Ultrasound in Medicine

Member, Society of Nuclear Medicine

Member, American Medical Association

Member, Massachusetts Radiological Society

Member, Massachusetts Medical Society, Norfolk-South District

Counselor, American College of Radiology, 1995-1998

## PUBLICATIONS

1. The Internal Cerebral Vein, Normal and Pathological Variations in Position and Configuration. New, Wolpert and Barrett, Neuroradiology, 7(2), 1974.

2. Unusual Duodenal Ulcers (Monograph: Roentgen Conference Number One). Warner-Chilcott, P.J. Barrett, and L.L. Robins.

3. Double Tracking in The Sigmoid Colon. Radiology, 120, Aug. 1976, 307-312. Ferrucci, Ragsdale, Barrett, Vickery, Dreyfus.

4. Asbestos Related Abnormalities Among United States Merchant Seamen. Correspondence re:, British Journal of Industrial Medicine, 47(12), Dec. 1990, 844, Barrett, Peter J.

5. Work in progress: Evaluation of 500 asbestos workers from the Coalinga, California, asbestos deposit for the presence or absence of pneumoconiosis. Record review, radiographic analysis, mineralogy partially completed. Grant applications in preparation. Co-authors: Edward Ilgren, Edward Goensler, Otto Wong.

## HONORARY SOCIETIES AND APPOINTMENTS

Recipient, 25 years of excellence in teaching radiology, Tufts University School of Medicine, May 1999

Alpha Sigma Nu National Honor Society

Harvard Medical Alumni Association, Honorary Member

Chairman, Board of Health, Town of Hingham, 1980-1984

**Roentgenographic Interpretation**

**U.S. DEPARTMENT OF LABOR**
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

RECEIVED

JAN 2 0 2011

Mt. Sterling, KY

Note: This report is authorized by law (30 USC 901 et. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

OMB No. 1215-0090
Expires 08/31/2011

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay charges reasonable and customary (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-Ray | | | 1B. Miner's Social Security Number | 1C. Film Quality (if not Grade 1. Give Reason) |
|---|---|---|---|---|---|
| **Joseph Fleming** | 01 MO | 14 DAY | 11 YR | **XXX-XX-0560** | ☒ 1  2  3  U/R |

**1D. Is Film Completely Negative?**
YES ☐ Proceed to Section 5    NO ☒ Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?**
YES ☒ Complete 2B and 2C    NO ☐ Proceed to Section 3

**2B. Small Opacities Consistent with Pneumoconiosis**

a. SHAPE/SIZE

PRIMARY
| p | s |
|---|---|
| q | r |
| r | u |

SECONDARY
| p | s |
|---|---|
| q | r |
| r | u |

b. ZONES
R L

c. PROFUSION
| 0/- | 0/0 | 0/1 |
|---|---|---|
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. Large Opacities Consistent with Pneumoconiosis**
SIZE  ☒  A  B  C    Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**
YES ☐ Complete Sections 3B, 3C    NO ☒ Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent and width)

| Chest Wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) Up to 1/4 of lateral chest wall = 1 / Up to 1/2 of lateral chest wall = 2 / > 1/2 of lateral chest wall = 3 | Width (in profile only) (3m minimum width required) 3 to 5 mm = a / 5 to 10 mm = b / > 10 mm = c |
|---|---|---|---|---|
| In Profile | O R L | O R L | O 1 2 3 — O 1 2 3 L | O a b c — O a b c L |
| Face On | O R L | O R L | | |
| Diaphragm | O R L | O R L | | |
| Other site(s) | O R L | O R L | | |

**3C. COSTOPHRENIC ANGLE OBLITERATION**
R L Proceed to Section 3D    NO ☐ Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent and width)

| Chest wall | Site | Calcification | Extent (chest wall, combined for in profile and face on) Up to 1/4 of lateral chest wall = 1 / Up to 1/2 of lateral chest wall = 2 / > 1/2 of lateral chest wall = 3 | Width (in profile only) (3m minimum width required) 3 to 5 mm = a / 5 to 10 mm = b / > 10 mm = c |
|---|---|---|---|---|
| In Profile | O R L | O R L | O 1 2 3 — O 1 2 3 L | O a b c — O a b c L |
| Face On | O R L | O R L | | |

**4A. ANY OTHER ABNORMALITIES?**
YES ☒ Complete 4B and 4C    NO ☐ Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**
aa  at  ax  bu  ca  cn  co  cp  cv  di  ef  em  es  fr  hi  ho  id  ih  kl  me  pa  pb  pi  px  ra  rp  tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION
OD    (Specify od.)    Date Personal Physician notified?

**4C. OTHER COMMENTS**

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?
YES    NO    Proceed to Section 5

**5A.** FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:    Glen Ray Baker Jr. PSC
DOL Medical Provider Number (if applicable):    020488600

Was film taken by a registered radiographer/radiographic technologist?    X Yes    ☐ No    KY

Name    Carla Steely    Registration No.    State 10-118-10789

**5B.** Physician Interpreting Film (Print Name):    Glen R. Baker M.D., F.C.C.P.

Are you: Board-Certified Radiologist? ☐ Yes  X No.    Board-eligible radiologist? ☐ Yes  X No.    B-reader? X Yes  ☐ No

**5C.** I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718. Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE    _Glen R Baker_    DATE OF READING    1/14/11    (Mo., Day, Yr.)

**Public Burden Statement**
We estimate that it will take an average of 5 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U. S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THE COMPLETED FORM TO THIS OFFICE
NOTE:   Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Form CM-933
Rev. June 2008

12.5

A522

**Report of Arterial Blood Gas Study**

U.S. DEPARTMENT OF LABOR
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

RECEIVED

JAN 2 0 2011

OMB No. 1215-0090
OWCP Exp. 10/31/2011
Sterling, KY

This report is authorized by law (30 USC 901 et. seq.) and required to obtain a benefit.  The results of this interpretation will aid in determining the miner's eligibility for black lung benefits.  Disclosure of a Social Security number is voluntary.  The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled.  This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

Instructions:  Summarized below are the procedures to be followed in administering this test.  The arterial blood gas study shall initially be administered at rest and in a sitting position.  If the results of the test at rest are not within the values indicated on the applicable table shown on the reverse side of this form, an exercise blood-gas study shall be offered to the miner unless medically contraindicated.  *If an exercise blood gas test is administered, blood shall be drawn during exercise.  Complete instructions for administration of this test and table of values may be found in 20 CFR Part 718, Subpart B, 718.105, and appendix C.

| 14. Name of Miner (First, middle, last) | 15. SSN or DOL Claim No. | 16. Date of Test (mm/dd/yyyy) |
|---|---|---|
| **Joseph Fleming** | XXX-XX-0560 | 01/14/11 |

17. Miner's:

| | |
|---|---|
| 65 | Age |
| 68½" | Height |
| 175 | Weight |

18. Altitude:  (Check one)

X   0 to 2999 feet above sea level
☐   3000 to 5999 feet above sea level
☐   6000 feet or more above sea level

19. Barometric Pressure

739.1

Equipment Temperature          37          C°

7.

Site of Puncture:  __right radial__          Indwelling line: _____          Single stick:  __X__

8a.

| | Time Sample Drawn | Iced Yes | No | Time Sample Analyzed |
|---|---|---|---|---|
| Rest: | 1:57 PM | | X | 1:59 PM |
| Exercise:* | | | | |

b. Pulse rate at time sample drawn:

Rest:  72          Exercise: _____

c.  Was equipment calibrated before and after each test?

X Yes  ☐ No

d.  Type of exercise and duration: *

9.

| | | Observed Values | |
|---|---|---|---|
| Test Results | Predicted Normal Range | Resting | Exercise if Administered* |
| pCO₂ (mmHg) | ≤ 45 mmHg | 44 | |
| pO₂ (mmHg) | ≥ 80 mmHg | 69 | |
| pH | 7.35 – 7.45 | 7.44 | |

| | | Observed Values | |
|---|---|---|---|
| Test Results | Predicted Normal Range | Resting | Exercise if Administered* |
| $pCO_2$ (mmHg) | ≤ 45 mmHg | 44 | |
| $pO_2$ (mmHg) | ≥ 80 mmHg | 69 | |
| pH | 7.35 – 7.45 | 7.44 | |

* Is the exercise portion of this study medically contraindicated?          ☒  Yes          ☐  No
If YES, for what reason?

chest pain with exertion

10. Additional Comments:

| 11a. Facility where test performed: | 12. Print or type name of technician performing the study: |
|---|---|
| **Glen Ray Baker Jr. PSC** | **Alvena Hill MT ASCP** |
| | 13. Print or type the name of the physician: |
| 11b. Provider Number: 020488600 | **Glen R. Baker M.D., F.C.C.P.** |

14. Physician's Signature:  I certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported.  I am also aware than any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1000, or imprisonment for up to one year, or both.

Signature:  _____          Date: 1/14/11

Form CM-1159
Rev. June 2008

12.6

A523

**DR. GLEN BAKER**
P.O. Box 505
**CORBIN, KY 40702**

RECEIVED

JAN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

**ARTERIAL BLOOD GAS REPORT**

**PATIENT:**      **Joseph Fleming**
**CLAIM NO.:**    **XXX-XX-0560**
**DATE:**         **01/14/11**

```
------------------------

    Osmetech OPTI CCA
      Patient Report
    14-Jan-11   01:59 PM
 Pat. ID:0560
 Sample No.:1633
 ACID/BASE 37.0°C
   pH    7.44
   PCO2    44    mmHg
   PO2 ↓  69    mmHg
   BE      4.0   mmol/L
   tCO2   30.1   mmol/L
   HCO3   28.8   mmol/L
   stHCO3 27.5   mmol/L


 HEMOGLOBIN/OXYGEN STATUS
   tHb   15.4   g/dL
   SO2    93    %
   Hct(c) -----   %

 ENTERED PARAMETERS
   Temp  37.0    °C
   Sex Male
   Hb Type Adult
   MCHC   0.0    %
   O2 Mode Room Air
   FIO2  0.03
   RQ  0.03
   P50   0.0     mmHg
   PuncSite RR

 Barometer:739.1 mmHg
 Operator ID:1
 S/N:1773  LOT:044109


   (Ref.Lim)
   pH     7.20 - 7.60
   PCO2    30 -   50  mmHg
   PO2     70 -  700  mmHg
   tHb   12.0 - 17.0  g/dL
   SO2     90 -  100 %

 MESSAGES
   PO2 under  70 (Ref.Lim)
```

A524

FLEMING, JOSEPH                    01/14/2011 14:56:40      Sinus rhythm
ID:    XXX XX 0560                                          Possible septal infarct - age undeter

D.O.B.: 09/11/1945    65 YEARS    | Vent. Rate:      71 bpm    Abnormal ECG
MALE          CAUCASIAN           | RR Interval:    842 ms
Meds:                             | PR Interval:    156 ms
Class:                            | QRS Duration:    92 ms
Dr:    GLEN R BAKER JR PSC        | QT Interval:    362 ms
Tech:  CSTEELY                    | QTc Interval:   381 ms
                                  | QT Dispersion:   70 ms
                                  | P-R-T AXIS:  81°   17°   57°

RECEIVED
JAN 20 2011
Env. O... /DCMWC
McSteven, KY



L: 10 mm/mV
C: 10 mm/mV                       QTc=Hodges
BURDICK                           BURDICK REORDER NO#SEE 710-0007-00    Atria 3100 Int ref#2007(019(009041)    Serial #:A3100-004

A525

Validation Of Pulmonary Function And
Arterial Blood Gas Studies

**U. S. Department of Labor**
Office of Workers' Compensation Programs

RECEIVED

JAN 3 1 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

| Miner's Name: | Social Security Number: |
|---|---|
| **Joseph Fleming** | **XXX-XX-0560 LM C** |
| Claims Examiner: | Office: |
| **Jennifer J. Jackson** | **Mt. Sterling, Kentucky  40353** |

## VENTILATORY STUDIES

Date of test: _01/14/2011_

☒ Vents are acceptable

☐ Vents are not acceptable*

- ☐ Insufficient number of FVC, FEV1 or MVV tracings without explanation for deficiency.
- ☐ Tracings improperly identified
- ☐ Tracings are not legible.
- ☐ Report does not include tracings.
- ☐ Equipment does not meet specifications.
- ☐ Less than optimal effort, cooperation and comprehension.
- ☐ Equipment not approved by NIOSH.
- ☐ Studies improperly performed.

Explain: _____

_____

Test Results:
(if different then reported)

FVC in L/BTPS: _____

FEV1/FVC in L/BTPS: _____

MVV in L BTPS/min: _____

## ARTERIAL BLOOD GAS STUDIES

Date of Test _____

Test is technically acceptable

☐ Yes    ☐ No

If test is not acceptable, indicate the reason:

☐ Venous sample   ☐ See Explanation

Explain: _____

_____

**Test Results**

Resting _____    Exercise _____

PO2 _____ mmHg   PCO2 _____ mmHg

pH _____

## Other Pulmonary Function Studies

Date of Test: _____

Name of Test: _____

Test Results: _____

_____

Test is technically acceptable

☐ Yes    ☐ No

If test is not acceptable, indicate reason:

_____

## PHYSICIAN CONSULTANT:

J. Michos MD
(Name – Print or Type)

_____    1/28/11
(Signature)              (Date)

*Test does not meet the technical quality standards applicable at the time the evidence was submitted (Sec. 727.206, 410.430, 718.103, 718.105, Appendices B and C)

Form CM-1104
Rev. Nov. 1988

12.8

A526

**Report of Ventilatory Study** 

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

RECEIVED



Note: This report is authorized by law (30 U.S.C. 901 et. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

JAN 2 0 2011

OMB No. 1215-0090
Expires 08/31/2011

ESA / OWCP / DCMWC

Instructions: Any ventilatory study conducted after January 19, 2001 must include tracings of flow versus volume (flow-volume loop) as part of the reported test. If the spirometer used for this test cannot provide a flow-volume loop, indicate this fact in item 10. Submit three tracings of the flow-volume loop which displays the entire maximum inspiration and the entire maximum forced expiration, and three tracings of the volume versus time (spirogram) derived electronically from the flow-volume loop. Identify each tracing with the patient's name and social security number/DOL Claim Number. Report the results of the FEV1, the FVC and the FEV1/FVC ratio (expressed as a percentage). If a bronchodilator is administered, report the values obtained both before and after bronchodilation and explain the significance of the results obtained in item 10. Measuring and reporting the MVV is optional. If the MVV is measured, submit two tracings of the individual breath volumes versus time if the MVV values obtained are within 10% of each other; otherwise, submit three tracings. The MVV results must be obtained independently, rather than calculated from the FEV1. Complete instructions and standards for administration of these tests may be found in 20 CFR Part 718, Subpart B, 718.103, and Appendix B, and are summarized on Form CM-2954a.

| 1. Name of Miner (First, middle, last) | 2. Social Security number or DOL Claim Number: | 3. Date and Time of Test |
|---|---|---|
| **Joseph Fleming** | **XXX-XX-0560** | 01 / 14 / 11    2 : 10 |
| | | MM DD YY    a.m. ☐  p.m. ☒ |

| 4. Age: 65 | 5. Sex: **Male** | 8. Circle as appropriate (If "poor", in no. 10. "Additional Comments", the nature and extent of any impact this factor had on the results obtained.) |
|---|---|---|
| 6. Height (Inches): 68¼" | 7. Weight: 175 | Miner's Degree of Cooperation: (Good)  Fair  Poor |
| | | Miner's ability to understand instructions and follow directions: (Good)  Fair  Poor |

| 9. (a) Type of Test | (b) Observed values BEFORE Bronchodilator (Corrected to BTPS) | (c) Observed values AFTER Bronchodilator, if given (Corrected to BTPS) | (d) Predicted Normal Values |
|---|---|---|---|
| FEV1 (In liters/second) (Required) | 0.67    (22%) | | 3.09 |
| FVC (In liters) (Required) | 3.17    (82%) | | 3.88 |
| FEV1/FVC Ratio (Required) | 21 | | 79 |
| MVV (In liters / minute) (Optional) | | | |

10. Additional Comments (For example - note any dyspnea; use of bronchodilators; coughing during test: If the miner was unable to complete the test, explain the reason for such failure.):
dyspnea

| 11. (a) Type of machine used (Trade name) | (b) Rate of paper speed | (c) Temperature of Equipment |
|---|---|---|
| **SensorMedics Vmax 20C** | **20 mm/sec** | 20° C |

| 12. Facility where test performed | 13. Print or Type Name and Title of Technician or Physician or administering test |
|---|---|
| **Glen Ray Baker Jr. PSC** | **Alvena Hill MT ASCP** |

I certify that these ventilatory studies were conducted and reported in compliance with specifications and instructions provided by the Department of Labor. I also certify that the information furnished is correct and I am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine up to $1000, or imprisonment for up to one year, or both.

| **Glen R. Baker M.D. F.C.C.P.** | *[signature]* | 1/14/11 |
|---|---|---|
| Print or Type Name of Physician | Physician's Signature | Date |

**Public Burden Statement**

We estimate that it will take an average of 20 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect to this collection of information, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U.S. Department of Labor, Room N-3464, 200 Constitution Avenue, N. W., Washington, D.C. 20210. **DO NOT SEND THE COMPLETED FORM THIS OFFICE**

NOTE: Persons are not required to respond to this collection of information unless it displays a current valid OMB control number.

Form CM-2907
Rev Dec. 2001

12.9

A527

Case: 15-3993    Document: 45    Filed: 02/24/2016    Page: 531

**Dr. Glen R. Baker PSC**
**1007 Cumberland Falls Hwy**
**P.O. Box 505**
# SPIROMETRY REPORT

RECEIVED
JAN 20 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

Name: **Fleming, Joseph**                    Id: XXX-XX-0560
Gender: Male                                 Date: 01/14/11
Age: 65        Race: Caucasian               Temp: 20        PBar: 742
Height(in): 68.3    Weight(lb): 175          Physician: Glen R. Baker MD
Diagnosis:                                   Technician: Alvena Hill MT   Alvena Hill MT

| Best Data | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|
| Spirometry | | | | | | | |
| FVC | Liters | 3.88 | 3.17 | 82 | | | |
| FEV1 | Liters | 3.09 | 0.67 | 22 | | | |
| FEV1/FVC | % | 79 | 21 | | | | |
| FEV3 | Liters | 3.67 | 1.15 | 31 | | | |
| FEF25-75% | L/sec | 3.14 | 0.16 | 5 | | | |
| PEF | L/sec | 8.04 | 3.20 | 40 | | | |
| FVL ECode | | | 001000 | | | | |



| All Trials | Pre | Trial 1 | Trial 2 | Trial 3 | Trial 4 | Trial 5 | Trial 6 | Trial 7 | Trial 8 |
|---|---|---|---|---|---|---|---|---|---|
| Spirometry | | | | | | | | | |
| FVC | Liters | | 3.17 | 3.15 | 2.97 | 2.99 | | | |
| FEV1 | Liters | | 0.62 | 0.64 | 0.67 | 0.65 | | | |
| FEV1/FVC | % | | 20 | 20 | 22 | 22 | | | |
| FEV3 | Liters | | 1.12 | 1.15 | 1.14 | 1.06 | | | |
| FEF25-75% | L/sec | | 0.16 | 0.16 | 0.16 | 0.14 | | | |
| PEF | L/sec | | 3.20 | 2.10 | 1.96 | 2.12 | | | |
| FVL ECode | | | _ 010 | _ 000 | _ 000 | _ 000 | | | |



COMMENTS
dyspnea

INTERPRETATION
*Severe obstructive ventilatory defect*

*John Roberts*

PF Reference: Knudson (1983)



**Dr. Glen Baker PSC**
**1007 Cumberland Falls Hwy**
**P.O. Box 505**
**Corbin, KY. 40702**

RECEIVED
JAN 2 0 2011
ESA / OWCP / DCMWC
Mt. Sterling, KY

Name: Fleming, Joseph                  Id: XXX-XX-0560
Gender: Male                           Date: 01/14/11
Age: 65      Race: Caucasian          Temp: 20      PBar: 742
Height(in): 68.3      Weight(lb): 175   Physician: Glen R. Baker MD
Any Info:                              Technician: Alvena Hill MT   *Alvena Hill MT*
                                                                    *1-14-11*

| Spirometry | (BTPS) | PRED | PRE-RX BEST | %PRED | POST-RX BEST | %PRED | % CHG |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 3.88 | 3.17 | 82 | | | |
| FEV1 | Liters | 3.09 | 0.67 | 22 | | | |
| FEV1/FVC | % | 79 | 21 | | | | |
| FEF25-75% | L/sec | 3.14 | 0.16 | 5 | | | |
| IsoFEF25-75 | L/sec | 3.14 | 0.16 | 5 | | | |
| FEF75-85% | L/sec | 0.60 | 0.09 | 14 | | | |
| PEF | L/sec | 8.04 | 3.20 | 40 | | | |
| FET100% | Sec | | 25.42 | | | | |
| FIVC | Liters | 3.88 | 0.04 | 1 | | | |
| FEV1 | Liters | 3.09 | 0.67 | 22 | | | |
| FIV1 | Liters | | | | | | |
| FEF/FIF50 | | <1.00 | | | | | |
| Vol Extrap | Liters | | 0.07 | | | | |
| FVL ECode | | | 001000 | | | | |



PRED ____
PRE ____
POST ____



PRED      PRE      POST
____      ____      ____

Comments:
dyspnea

Interpretation:
**Severe obstructive ventilatory defect**

CALIBRATION: Pred Volume: 3.00    Expire Avg: 2.99        Inspire Avg: 3.01            Flow Cal Date: 01/14/11

( ) = OUTSIDE 95% CONFIDENCE INTERVAL        PF Reference: Knudson (1983)            Version: IVS-0101-21-2

## Dr. Glen R. Baker PSC
1007 Cumberland Falls Hwy
P.O. Box 505
Corbin, KY.  40702

RECEIVED

JAN 20 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

**Fleming, Joseph**
**SSN: XXX-XX-0560**
Date of Test: 01/14/11
Physician: Glen R. Baker MD
Technician: Alvena Hill MT

DOB: 09/11/45                    Age: 65
Standing Height without shoes (in): 68.0 (cm): 173
Weight(lb): 175    (kg): 79.5
Gender: Male     Race: Caucasian

Spirometry Reference: Knudson (1983)                    Tabular Data and Spirometric Tracing are reported in BTPS conditions.

|  |  | Ref | Pre Meas | Pre % Ref | Post Meas | Post % Ref | Post % Chg |
|---|---|---|---|---|---|---|---|
| FVC | Liters | 3.88 | 3.17 | 82 |  |  |  |
| FEV1 | Liters | 3.09 | 0.67 | 22 |  |  |  |
| FEV1/FVC% |  | 79 | 21 |  |  |  |  |
| FET100% Sec |  |  | 25.42 |  |  |  |  |



Volume Scale 10 mm per Liter.
Time base is 20 mm per second.    The Marked FEV 1 was calculated using the "Backward Extropolation to Time Zero" Method.
dyspnea

Software Version: IVS-0101-21-2

Pulmonary Function Testing was performed using  SensorMedics Vmax System.
Device Type: Mass Flow Sensor with digital integration of Flow to Volume.

Calibration Data: (See Calibration Tracing Attached)
Calibration Date: 01/14/11
Cal Syringe Reference Volume: 3.00
Calibration Results: 2.99

A530

Case: 15-3999    Document: 15    Filed: 02/24/2016    Page: 534

**Dr. Glen R. Baker PSC**
**1007 Cumberland Falls Hwy**

RECEIVED
JAN 2 0 2011

-------------------- **Calibration Report** --------------------

| Flow Cal Date: 01/14/11 | Technician: Alvena Hill MT | PBar: 742 |

ESA / OWCP / DCMWC
Mt. Sterling, KY

**Reference:**

| | -- 1 -- | -- 2 -- | -- 3 -- | -- 4 -- | Mean (2.91 - 3.09) |
|---|---|---|---|---|---|
| 3.00 | 2.99 | 3.01 | 2.98 | 2.97 | 2.99 |



**Volume** (y-axis), **Time** (x-axis)

**Mass Flow Sensor: Flow Calibration**
[ ] 3 liters in 6 seconds.
[ ] 3 liters in 3 seconds.
[ ] 3 liters per second.

**Pulmonary Function Testing performed on a SensorMedics Vmax System.**

**Dr. Glen R. Baker PSC**
**1007 Cumberland Falls H**
**P.O. Box 505**
**Corbin, KY. 40702**

**Date: 01/14/11**                    **Pre**

RECEIVED

JAN 2 0 2011

ESA / OWCP / DCMWC
Mt. Sterling, KY

## Flow Volume Loop — Fleming, Joseph - XXX-XX-0560

|          | Ref   | Best  | % Ref | 2     | 3     | 4     | 5     |
|----------|-------|-------|-------|-------|-------|-------|-------|
| FVC      | 3.88  | 3.17  | 82    | 3.17  | 3.15  | 2.97  | 2.99  |
|          |       |       |       |       |       |       |       |
| FEV1     | 3.09  | 0.67  | 22    | 0.62  | 0.64  | 0.67  | 0.65  |
| FEV1/FVC | 79    | 21    |       | 20    | 20    | 22    | 22    |
| FEV3/FVC | 94    | 36    |       | 35    | 36    | 38    | 36    |
| FET100%  |       | 25.42 |       | 23.78 | 25.42 | 24.25 | 27.99 |
|          |       |       |       |       |       |       |       |
| FEF25-75%| 3.14  | 0.16  | 5     | 0.16  | 0.16  | 0.16  | 0.14  |
| FEF25%   | 7.34  | 0.28  | 4     | 0.25  | 0.28  | 0.19  | 0.22  |
| FEF50%   | 3.91  | 0.17  | 4     | 0.17  | 0.17  | 0.18  | 0.19  |
| FEF75%   | 1.39  | 0.10  | 7     | 0.10  | 0.10  | 0.10  | 0.08  |
| PEF      | 8.04  | 3.20  | 40    | 3.20  | 2.10  | 1.96  | 2.12  |
|          |       |       |       |       |       |       |       |
| FVL ECode|       | 001000|       | _010  | _000  | _000  | _000  |
|          |       |       |       |       |       |       |       |
| FIVC     | 3.88  | 0.04  | 1     | 0.26  | 0.04  | 0.01  | 0.02  |
| PIF      |       |       |       | 0.80  |       |       |       |
| FEF/FIF50| <1.00 |       |       | 0.24  |       |       |       |

**CURRICULUM VITAE**

John A. Michos, M.D.                    Phone: 804 443-2057
Route 3, P.O. Box 303                   SSN: ████████
Tappahannock, Virginia 22560

**BIOGRAPHICAL**     Date of Birth:  March 10, 1960, Washington, D.C.
                     Marital Status: Married with two children

**EDUCATION**        High School:  Yorktown High School, Arlington, Va., 1978

                     Undergraduate:  University of Virginia, Charlottesville, Va.
                     Degree:    Bachelor of Arts in Biology. 1982

                     Medical:  Eastern Virginia Medical School, Norfolk, Va.
                     Degree:  M.D., May 1988

**POST GRADUATE**    Internship:
                     Washington Hospital Center, Washington, D.C.
                     Internal Medicine, July 1988-June 1989

                     Residency:
                     Washington Hospital Center, Washington, D.C.
                     Internal Medicine, July 1989-June 1991
                     Director:  James Curtain, M.D.

                     Fellowship:
                     George Washington University Hospital, Washington, D.C.
                     Pulmonary Medicine, July 1991-June 1993
                     Director:  Samuel Spagnolo, M.D.

**MEDICALLY          Uniformed Services University Health Sciences,
RELATED              September 1982-June 1984.  Assisted in the purification
EMPLOYMENT**         and sequencing of Terminal Deoxynucleotidyl Transferase,
                     a leukemic marker.

                     Pulmonary Consultant, Department of Labor,
                     March 1992 to present.

12.10

Riverside Tappahannock Hospital,
Tappahannock, Virginia, September 1993 to present:
Director of Pulmonary Services,
Director of Intensive Care Unit,
Director of Pulmonary Function Lab,
Instructor, ACLS.

**PROFESSIONAL
MEMBERSHIPS**

American Medical Association
American College of Chest Physicians
American College of Physicians
Medical Society of Virginia

**PROFESSIONAL
INTERESTS**

Occupational and Environmental Lung Disease,
Pulmonary Exercise Testing

**PUBLICATIONS**

Handbook of Pulmonary Drug Therapy: Little, Brown, & Co.,
Chapter 3: Gram Positive Pneumonias.

**PROCEDURAL
SKILLS**

Fiberoptic Bronchoscopy, Closed Pleural Biopsy,
Thoracentesis, Swan-Ganz, Pulmonary function testing,
Exercise testing, Sleep Disorder studies.

**BOARD
CERTIFICATIONS**

National Board of Medical Examiners, July 1989,
Certificate Number: 356334

Diplomate of Internal Medicine.

Diplomate of Pulmonary Medicine.

**LICENSURE**

Commonwealth of Virginia





## Mountain View
## Regional Medical Center
A Member of Wellmont Health System

11-03-10

RE: Federal Black Lung Claim
Joseph Fleming

**RECEIVED**

**NOV 0 8 2010**

ESA / OWCP / DCMWC
Mt. Sterling, KY

Harry Skidmore, District Director
U.S. Department of Labor
Federal Black Lung Office
402 Campbell Way
Mount Sterling, Ky. 40353

Claim No: 0560

Dear Sir or Madam:

Please be advised that Joseph Fleming is being represented by Wolfe Williams Rutherford & Reynolds, P.O. Box 625, Norton, VA. 24273. Mr. Wolfe advised me to send the film directly to the Department of Labor. Please find enclosed the x-ray film dated 10-02-10 taken as part of an independent x-ray film on the above reference claimant on 10-02-10. Please make this film a part of the record.

It is Mr. Wolfe's request that you maintain control and custody of the enclosed film until such time as the black lung claim is resolved.

Thank you very much.

Sincerely,

*Jackie Cantrell*

Jackie D. Cantrell

jdc

Cc: Joseph Wolfe

**DIRECTOR EXHIBIT**
NO \_\_\_\_\_1\_\_\_1\_\_ CONSISTING
OF \_\_\_\_5\_\_\_\_ PAGES

310 Third Street, NE
Norton, Virginia 24273
276.679.9100
Fax 276.679.1926

A535

Wolfe

# B READING INTERPRETATION

| PATIENT NAME: Joseph Fleming | FACILITY: Mountain View Regional Medical Center |
|---|---|
| DATE OF RADIOGRAPH: 10-2-10 | PATIENT I.D. # 533093 |

RECEIVED

NOV 08 2010

ESA/OWCP/DCMWC
Mt. Sterling, KY

## 1. FILM QUALITY

[X] 1  [2]  [3]  [U/R]

If not Grade 1, mark all boxes that apply

- [ ] Overexposed (dark)
- [ ] Underexposed (light)
- [ ] Artifacts
- [ ] Improper position
- [ ] Poor contrast
- [ ] Poor processing
- [ ] Underinflation
- [ ] Mottle
- [ ] Other (please specify)

## 2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMONCONIOSIS?

YES [ ]  Complete Sections 2B and 2C    NO [X]  Proceed to Section 3A

## 2B. SMALL OPACITIES

### a. SHAPE/SIZE

PRIMARY: [p] [s] [q] [t] [r] [u]
SECONDARY: [p] [s] [q] [t] [r] [u]

### B. ZONES

| | R | L |
|---|---|---|
| UPPER | [ ] | [ ] |
| MIDDLE | [ ] | [ ] |
| LOWER | [ ] | [ ] |

### c. PROFUSION

[0/+] [0/0] [0/1]
[1/0] [1/1] [1/2]
[2/1] [2/2] [2/3]
[3/2] [3/3] [3/4]

## 2C. LARGE OPACITIES

SIZE [O] [A] [B] [C]    PROCEED TO SECTION 3A

## 3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMONCONIOSIS?

YES [ ]  Complete Sections 3B and 3C    NO [X]  Proceed to Section 4A

## 3B. PLEURAL PLAQUES (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall combined for in profile and face on) Up to 1/4 on lateral chest wall = 1 1/4 to 1/2 to lateral chest wall =2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3 mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm =c |
|---|---|---|---|---|
| Face on | [O] [R] [L] | [O] [R] [L] | | |
| In profile | [O] [R] [L] | [O] [R] [L] | | |
| Face on | [O] [R] [L] | [O] [R] [L] | | |
| Diaphragm | [O] [R] [L] | [O] [R] [L] | [O] [R] [1] [2] [3] | [O] [L] [1] [2] [3] | [a] [b] [c] | [a] [b] [c] |
| Other site(s) | [O] [R] [L] | [O] [R] [L] | | |

## 3C. COSTOPHRENIC ANLGE OBLITERATION

[R]  [L]  Proceed to Section 3D    NO [X]  Proceed to Section 4A

## 3D. DIFFUSE PLEURAL THICKENING (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall combined for in profile and face on) Up to 1/4 on lateral chest wall = 1 1/4 to 1/2 to lateral chest wall =2 > 1/2 of lateral chest wall = 3 | Width (in profile only) (3 mm minimum width required) 3 to 5 mm = a 5 to 10 mm = b > 10 mm =c |
|---|---|---|---|---|
| Face on | [O] [R] [L] | [O] [R] [L] | [O] [R] [1] [2] [3] | [O] [L] [1] [2] [3] | [a] [b] [c] | [a] [b] [c] |
| In profile | [O] [R] [L] | [O] [R] [L] | | |

## 4A. ANY OTHER ABNORMALITIES

YES [X]  Complete Sections 4B, 4C, 4D, 4E    NO [ ]  Proceed to Section 5

## 4B. OTHER SYMBOLS (OBLIGATORY)

[aa] [at] [ax] [bu] [ca] [cg] [cn] [co] [cp] [cv] [di] [ef] [em] [es] [fr] [hi] [ho] [id] [ih] [kl] [me] [pa] [pb] [pi] [px] [ra] [rp] [tb]

[OD] If other diseases or significant abnormalities, findings must be recorded. (section 4D)

## 4C.

Should worker see personal physician because of findings in section 4d?

YES [ ]  NO [ ]

Date Physician or Worker notified?

MONTH [ ] [ ]  DAY [ ] [ ]  YEAR [ ] [ ] [ ] [ ]

## 4D. OTHER COMMENTS:

Certified B Reader's Signature: _____    Date of Reading: 10-3-10

Kathleen A. DePonte, M.D., Board Certified Radiologist
NIOSH Certified B Reader

11.2

RADIOLOGY REPORT

WELLMONT HEALTH SYSTEM
Mountain View Hospital
310 3rd Street, NE
Norton, VA 24273
(276)679-6212 (276)679-3333 fax

Patient:    FLEMING,JOSEPH
Unit#:      M0000533093
DOB:        09/14/45  Age: 65Y  SEX: M
Account:    M1027580018

Dt of Svc:  10/02/2010 1340                Location: *OPM

Ord Phys:   DEPONTE,KATHLEEN ANN           Ref Phys:
Att Phys:   DEPONTE,KATHLEEN ANN           Pri Phys: *NO PRIMARY CARE MD

*************************************************************************

Check-in#  Ord#  Exam   CPT4            Exam Description

5207914    0001  0052   71010           DX CHEST 1 VIEW
                                          Ord Diag: PNEUMOCONIOSIS
                                          Ord Phys: DEPONTE,KATHLEEN A

*************************************************************************

   Exam Date       : 10/2/10 1340


   HISTORY: Twenty-two years underground. Personal physician Dr. Armando
   Mejia, Morristown Pulmonary Associates.

   CHEST PA FOR BLACK LUNG:

   Technical quality of the film is grade 1.

   No pleural or parenchymal abnormalities indicative of pneumoconiosis are
   seen. The lung volumes are increased with attenuated markings consistent
   with obstructive airways disease. Heart and mediastinum are within
   normal limits. Calcified hilar lymph nodes. No acute mediastinal
   abnormalities.

   CONCLUSION:
   Chronic obstructive pulmonary disease.

        Transcriptionist- ELIZABETH I HOBACK
                                    (Continued)

RECEIVED

NOV 0 8 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

```
RADIOLOGY REPORT                    WELLMONT HEALTH SYSTEM
                                    Mountain View Hospital
Patient:     FLEMING,JOSEPH        310 3rd Street, NE
Unit#:       M0000533093           Norton, VA 24273
DOB:         09/14/45  Age: 65Y  SEX: M    (276)679-6212 (276)679-3333 fax
Account:     M1027580018

Dt of Svc:   10/02/2010 1340             Location: *OPM

Ord Phys:    DEPONTE,KATHLEEN ANN         Ref Phys:
Att Phys:    DEPONTE,KATHLEEN ANN         Pri Phys: *NO PRIMARY CARE MD
```

**************************************************************************

```
   Checkin-Exam Code Summary
   5207914-0052


      Reading Physician- KATHLEEN A DEPONTE
      Releasing Physician- KATHLEEN A DEPONTE
      Released Date Time- 10/05/10 2004
   ------------------------------------------------------------------------

Technologist : HAILEE D BLANKENBECKLER
Dictate Date : 10/03/10 1250
Transcription: ELIZABETH I HOBACK
```

RECEIVED

NOV 0 8 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

A538



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**

Centers For Disease Control and Prevention
National Institute For Occupational Safety and Health
Appalachian Laboratory For Occupational Safety and Health

THIS IS TO CERTIFY THAT

## Kathleen Ann Deponte, M.D.

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFETY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS
This Certification will remain in effect from 7/1/2009   until 6/30/2013

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH/NIOSH

## SELECTION OF AN EXAMINING PROVIDER

Claimant's Name  Joseph Fleming    Claim No.   XXX-XX-0560 LM C

I have selected the following physician or medical facility to perform my complete pulmonary evaluation in connection with my claim for Federal black lung benefits.

Provider's Name:  *Glenn Baker MD*

Provider's Address:  *1007 Cumberland Falls Hwy*
*Corbin KY  40701*

**RECEIVED**

**DEC 0 6 2010**

ESA / OWCP / DCMWC
Mt. Sterling, KY

Is this provider on the list of qualified providers that we gave to you?

YES  ✓   NO _____

I certify that the provider that I have selected above has not treated or examined me within the 12 months preceding the date that I applied for Federal Black Lung benefits.  I further certify that I am not related to this provider, and my spouse is not related to this provider.

_____    _12/1/2010_
Claimant's Signature          Date

**PLEASE COMPLETE AND RETURN THIS FORM TO THIS OFFICE WITHIN 15 DAYS.**

DIRECTOR EXHIBIT
NO ___10___ CONSISTING
OF ___1___ PAGES

A540

# CERTIFICATE OF MARRIAGE
## COMMONWEALTH OF VIRGINIA

OCT 14 2010

CITY
COUNTY OF   Dickenson

FULL NAME OF GROOM   Danny Joseph Fleming

ESA / OWCP / DCMWC
Mt. Sterling, KY.

CLERK'S NO.   1253

PRESENT NAME
OF BRIDE   Arlene Bell Hunsucker

MAIDEN
NAME

| | GROOM | | | | BRIDE | | |
|---|---|---|---|---|---|---|---|
| **AGE** | **RACE** | **SINGLE, WIDOWED, OR DIVORCED** | **NO. TIMES PREV. MARRIED** | **AGE** | **RACE** | **SINGLE, WIDOWED, OR DIVORCED** | **NO. TIMES PREV. MARRIED** |
| 19 | W | S | 0 | 17 | W | S | 0 |

| GROOM | | BRIDE | |
|---|---|---|---|
| OCCUPATION  Unemployed | INDUSTRY OR BUSINESS | OCCUPATION  Housekeeper | INDUSTRY OR BUSINESS |
| BIRTHPLACE  Virgie, Ky. | | BIRTHPLACE  Jackhorn Ky. | |
| FATHER'S FULL NAME  Arthur Fleming | | FATHER'S FULL NAME  James Arlie Hunsucker | |
| MOTHER'S MAIDEN NAME  Minnie Stewart | | MOTHER'S MAIDEN NAME  Cassie Hammons | |
| RESIDENCE, CITY OR COUNTY MAILING ADDRESS  Jackhorn Ky. | | RESIDENCE, CITY OR COUNTY MAILING ADDRESS  Jackhorn Ky. | |

Proposed Date of Marriage   Aug. 31, 1964      Proposed Place of Marriage   Clintwood, Va.

Given under my hand this   31   day of   Aug.   19 64

Dep Clerk of   Circuit   Court.

## CERTIFICATE OF DATE AND PLACE OF MARRIAGE

I   Marion A. Coe   a   Appointed   of the   By the Court   Church, or religious order of that name, do hereby certify that on the   31   day of   Aug.   (Denomination)   19 64, in the county, city, or town of   Clintwood   , Virginia, under authority of this license I joined together in the Holy State of Matrimony the persons named and described therein. I qualified and gave bond in the county or city of   Dickenson   year 19 61, which authorizes me to celebrate the rites of marriage in the Commonwealth of Virginia.

Given under my hand this   31   day of   Aug.   , 19 64

Address of celebrant   Clintwood, Va.        Marion A. Coe
(Person who performs ceremony sign here.)

MARGIN - RESERVED FOR BINDING

The minister or other person solemnizing the marriage should complete within the day of the solemnizing the certificate on the right hand of the form, below the line, and transmit...

V. S. 3

THIS IS TO CERTIFY THAT THIS IS A TRUE AND CORRECT REPRODUCTION OF THE ORIGINAL RECORD FILED WITH THE CIRCUIT COURT FOR DICKENSON COUNTY VIRGINIA.

BY   Chrisy Fleming   , DC        RICHARD W. EDWARDS, CLERK        DATE ISSUED:   10/4/10

**VOID IF ALTERED OR DOES NOT BEAR IMPRESSED SEAL OF COURT**

(SEAL)

DIRECTOR EXHIBIT
NO   9.1   CONSISTING
OF   2   PAGES

A541

# COMMONWEALTH OF VIRGINIA

STATE DEPARTMENT OF HEALTH, RICHMOND

## CERTIFICATE OF MARRIAGE

I, _____ Marion A. Coe _____ , A _____ Appointed

_____ By the Court _____ , CHURCH, OR RELIGIOUS

OF THAT NAME, DO CERTIFY THAT ON THE _____ 31 _____ DAY OF _____ Aug

AT _____ Clintwood _____ , VIRGINIA UNDER AUTHORITY OF A LICENSE ISS

J.C. Sloter dep CLERK OF THE _____ Circuit _____ COURT OF _____ Dickenson

OR COUNTY, STATE OF VIRGINIA, DATED THE _____ 31 _____ DAY OF _____ Aug

I JOINED TOGETHER IN THE HOLY STATE OF MATRIMONY:

Danny Joseph Fleming HUSBAND, AND Arlene Bell Hunsucker H

GIVEN UNDER MY HAND THIS _____ 31 _____ DAY OF _____ Aug

Marion A. Coe
(PERSON WHO PERFORMS CEREMONY SIGN HERE.)

TO BE DELIVERED BY THE CELEBRANT TO THE PERSONS MARRIED.

**Request for State or Federal**
**Workers' Compensation Information**

**RECEIVED**
**OCT 0 7 2011**
FSA / DCMWC
Mt. Sterling, KY

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

OMB No. 1215-0060
Expires 03/30/2010

The requested information is needed to process a claim under the Black Lung Benefits Act
(30 U.S.C. 901 et. seq.).

**I. IDENTIFICATION OF MINER (To be completed by DOL Claims Examiner)**

| TO: | 1a. Name of Miner (First, Middle, Last) |
|---|---|
| Kentucky Labor Cabinet | **Joseph Fleming** |
| Division of Special Fund Payment Unit | b. Name of Claimant (if different from miner) |
| 1049 US 127 South Building | **Joseph Fleming** |
| Frankfort, KY  40601-9979 | 2. Address(Number, street, city, state, Zip code) |
| | **1226 Zirkle Road** |
| | **Dandridge, TN  37725** |

| 3. Employer's Name and Address | 4. Miner's Social Security Number |
|---|---|
| **Aberry Coal, Inc.** | **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** |
| **PO Box 426** | 5. State or Federal Claim Number(s) |
| **Pound, VA  24279** | |

| 6. Signature of DOL Claims Examiner | 7. Date(Month, day, year) |
|---|---|
| | **September 21, 2011** |

**II. WORKERS' COMPENSATION INFORMATION (To Be completed by a State or Federal Workers' Compensation official)**
Please complete all items as appropriate including item 5 if no claim number is provided. Forward Copy-1 to the Division of Coal Mine Workers' Compensation and retain copy-2 in your files for use in notifying the DCMWC of any changes in the miner's workers' compensation status or rate.

8. Has the miner or his widow filed a claim for workers' compensation benefits due to pneumoconiosis or other chronic lung disease?

[X] Yes [ ] No (if "Yes", complete items 9,10 and 11, as appropriate.)

9. Status of Claim:

[X] Approved   [ ] Denied   [ ] Pending

10. Payment Information:
a. Date began: ___7-14-96___
b. Expiration Date: ___8-11-2000___
c. Weekly Amount $ ___70.85___
d. Lump sum amount $ __N/A__ representing settlement at $_____ per week for ___ weeks beginning _____
e. Date of Lump sum payment: _____
f. Are medical treatment expenses covered?   [ ] Yes [X] No

11. Were Fees or Expenses paid out of the Award?
a. attorney fees
[X] Yes $ ___2254.74___
amount
[ ] No
[ ] Unknown

b. Other extraordinary expenses (if "Yes" explain under "Remarks")   [ ] Yes $_____
amount
[ ] No
[ ] Unknown

12. Remarks:

| Return To: U .S. Department of Labor | 13. Signature and Title |
|---|---|
| Office of Workers' Compensation Programs | |
| Division of Coal Mine Workers' Compensation | 14. Date(Month, day, year) |
| 402 Campbell Way | ___10-6-11___ |
| Mt. Sterling, KY  40353-7847 | |

**Public Burden Statement**
Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time or reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N. W., Washington, D.C. 20210.  **DO NOT SEND THE COMPLETE FORM TO THIS OFFICE**

Copy 1 –Return to DCMWC  Copy 2 - Retain for Status or Rate Change Notification  Copy 3 DCMWC File Copy

CM-905
Rev. Dec. 1999

**Persons are not required to respond to this collection of information unless it displays a current valid OMB Control Number**

**DIRECTOR EXHIBIT**
NO _____8_____ CONSISTING
OF _____1_____ PAGES

A543

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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        * * *



FROM:   SOCIAL SECURITY ADMINISTRATION
        OFFICE OF CENTRAL OPERATIONS
        300 N. GREENE STREET
        BALTIMORE, MARYLAND  21290-0300

U S DEPT OF LABOR COAL MINE WORKERS      NUMBER HOLDER NAME:
                                         JOSEPH    FLEMING
402 CAMPBELL WAY
```

RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

```
MT STERLING            KY  40353-7847

PERIOD REQUESTED  JANUARY 1957  THRU  DECEMBER 2009

YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL

EMPLOYER NUMBER:  59-0908948
H D CAFETERIA INC
PO BOX 7794
ST PETERSBURG FL 33734-7794

1962                                  9.50                    $9.50

EMPLOYER NUMBER:  35-9990000
DEPT OF THE ARMY SRD AC RC
ATTN DFAS ADIMB LAURA WICKS
% DFAS ATTN DFASIN ADIMB
8899 E 56TH ST
INDIANAPOLIS  IN 46249-0002

1962                                          195.00        $195.00
1963      245.70      257.40      304.44      298.11      $1,105.65
1964      298.11      298.11       99.37       72.22        $767.81
1965       57.76                                            $57.76

EMPLOYER NUMBER:  34-0906511
JET CAR WASH INC
RT 254 & OBERLIN AVE
LORAIN  OH 44053-0000

1965        6.00                                             $6.00
                              PAGE 001
```

DIRECTOR EXHIBIT
NO _____ CONSISTING
OF _____ PAGES

A544

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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        * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  34-4361040
DANA CORPORATION & SUBSIDIARIES
% DANA WORLD TRADE CORPORATION
4500 DORR ST
TOLEDO  OH 43615-4040
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1965 | | 762.81 | | | $762.81 |

```
EMPLOYER NUMBER:  38-0572515
MOTORS LIQUIDATION COMPANY
% RICHARD J ZABLOCKI
500 RENAISSANCE CENTER STE 1400
DETROIT  MI 48243-1929
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1965 | | | 670.23 | 1,842.80 | $2,513.03 |
| 1966 | 1,037.75 | 1,116.73 | 258.85 | | $2,413.33 |
| 1967 | 895.15 | | 149.04 | 579.42 | $1,623.61 |
| 1968 | 92.38 | | | | $92.38 |

```
EMPLOYER NUMBER:  38-1663348 A
COY KENDALL GREENHOUSES INC
17155 MARTINSVILLE RD
BELLEVILLE  MI 48111-3073
```

RECEIVED

OCT 2 5 2010

SSA / OWCP / DCMWC
Mt. Sterling, KY

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1966 | - | - | - | | $5.25 |

```
EMPLOYER NUMBER:  38-1804554
JAMES A DOWDAL
CLARK STATION
106 S GROVE
YPSILANTI  MI 48197-0000
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1966 | | 759.10 | 215.00 | | $974.10 |
| 1967 | 21.00 | | | | $21.00 |

```
EMPLOYER NUMBER:  34-0367600
LUBRIZOL CORP
29400 LAKELAND BLVD
WICKLIFFE  OH 44092-2201
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1966 | | | 272.78 | 1,211.94 | $1,484.72 |

PAGE 002

A545

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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      * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1967 | 432.74 | | | | $432.74 |

```
EMPLOYER NUMBER:  34-0808668
RES-TEP INC
1340 EAST 222ND ST
CLEVELAND  OH 44117-0000
```

| | | | | | |
|------|-------------|-------------|-------------|-----------|-------|
| 1966 | | | 72.00 | | $72.00 |

```
EMPLOYER NUMBER:  34-0876523
LORAIN BROADWAY LUMBER &
 MATERIAL CO INC
1071 BROADWAY AVE
LORAIN  OH 44052-0000
```

| | | | | | |
|------|-------------|-------------|-------------|-----------|-------|
| 1967 | | | 37.00 | | $37.00 |

```
EMPLOYER NUMBER:  34-0922036
HARRY FIOR
FIOR CONTRACTOR
257 NO WOODHILL DR
AMHERST  OH 44001-0000
```

RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

| | | | | | |
|------|-------------|-------------|-------------|-----------|-------|
| 1967 | | | 182.00 | | $182.00 |

```
EMPLOYER NUMBER:  39-0212761
CLARK OIL & REFINING CORPORATION
8530 W NATIONAL AVE
MILWAUKEE  WI 53201-0000
```

| | | | | | |
|------|-------------|-------------|-------------|-----------|-------|
| 1967 | | | | 12.80 | $12.80 |
| 1969 | 420.64 | | | 1,050.00 | $1,470.64 |
| 1970 | | | | 381.64 | $381.64 |

```
EMPLOYER NUMBER:  61-0578325
MARTHA N SELDEN
702 WICKLOW RD
LOUISVILLE  KY 40207-0000
```

| | | | | | |
|------|-------------|-------------|-------------|-----------|-------|
| 1968 | 240.00 | | | | $240.00 |

PAGE 003

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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      * * *
```

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  61-0587325
CHARLES M HOLBROOK
HOLBROOK SERVICE STATION
NEON  KY 41840-0000
```

| 1968 | 60.00 | | | | $60.00 |

```
EMPLOYER NUMBER:  31-0739658
TRUE MASONRY INC
9994 CUNNINGHAN RD
CAMP DENNISON OH 45111-0000
```

| 1968 | | | 144.38 | | $144.38 |

```
EMPLOYER NUMBER:  38-0419960
CHRYSLER MOTORS CORPORATION
1000 CHRYSLER DR
AUBURN HILLS MI 48326-2766
```

| 1968 | | | 905.45 | 1,620.16 | $2,525.61 |
| 1969 | 384.84 | | | | $384.84 |

```
EMPLOYER NUMBER:  61-0588707
ED KINCER SELDOM WRIGHT DAVID
  PRICE ETAL PTR
PEEM COAL CO
WHITESBURG  KY 41858-0000
```

RECEIVED

OCT 2 5 2010

SSA / OWCP / DCMWC
Mt. Sterling, KY

| 1970 | | | 72.00 | | $72.00 |

```
EMPLOYER NUMBER:  38-1944156
ELESON A WILMOTH
CLARK SUPER 100
304 NERRE WHITSON
COOKEVILLE  TN 38501-0000
```

| 1970 | | | | 84.00 | $84.00 |

PAGE 004

```
SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *     FOR SSN 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       * * *
```

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  64-0434044
MRS JOE W BROWN
BROAD WATER BEACH HOTEL
PO BOX 127
BILOXI  MS 39533-0127
```

| 1970 | | | | 272.00 | $272.00 |
|------|--|--|--|--------|---------|

```
EMPLOYER NUMBER:  94-1497173
CHEVRON U S A INC
575 MARKET ST
SAN FRANCISCO CA 94105-2854
```

| 1970 | | | | 53.46 | $53.46 |
|------|--|--|--|-------|--------|

```
EMPLOYER NUMBER:  61-0665453
RUDOLPH WILLIAMS C E KINCER SELDOM
  WRIGHT DAVID PRICE JENNIFER PRICE
  & DEENA RENEE SMITH
HIGH POINT COAL COMPANY
BOX 340
WHITESBURG  KY 41858-0000
```

**RECEIVED**

**OCT 2 5 2010**

ESA / OWCP / DCMWC
Mt. Sterling, KY

| 1971 | 57.50 | | | | $57.50 |
|------|-------|--|--|--|--------|

```
EMPLOYER NUMBER:  61-0711011
ARCHER & CLUBB COAL CO INC
BOX 308
NEON  KY 41840-0000
```

| 1971 | | | 200.70 | | $200.70 |
|------|--|--|--------|--|---------|

```
EMPLOYER NUMBER:  61-0716331
POM CORP
BOX 374
ANN ARBOR MI 48107-0000
```

| 1971 | | | | 2,978.75 | $2,978.75 |
|------|--|--|--|----------|-----------|
| 1972 | 584.50 | | | | $584.50 |

PAGE 005

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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      * * *
```

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  62-0697493
BROWNLEE-KESTERTON INC
3409 HENSON RD
PO BOX 89
KNOXVILLE   TN 37901-0000
```

| 1972 | | 12.50 | | | $12.50 |

```
EMPLOYER NUMBER:  59-0720444
ATLANTIC GULF COMMUNITIES CORP
JOSEPH MICHAEL B TTEE
824 N MARKET ST STE 904
WILMINGTON  DE 19801-4918
```

| 1972 | | | 398.40 | 2,552.82 | $2,951.22 |
| 1973 | 2,547.72 | 235.20 | | | $2,782.92 |

```
EMPLOYER NUMBER:  59-1264428
ATLANTIC CONDOMINIUMS INC
PO BOX 305
FT PIERCE FL 33454-0000
```

| 1972 | | | 396.13 | | $396.13 |

RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

```
EMPLOYER NUMBER:  82-0100960
OFFICEMAX INCORPORATED
% CORPORATE TAX DEPT
263 SHUMAN BLVD
NAPERVILLE   IL 60563-8147
```

| 1972 | | | 241.51 | 10.70 | $252.21 |

```
EMPLOYER NUMBER:  59-1316155
WILLIAM H HENSICK & SONS INC
PO BOX 309
VERO BEACH FL 32961-0309
```

| 1973 | | 223.13 | | | $223.13 |

PAGE 006

A549

SSA-1826                    ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *        FOR SSN 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        * * *


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT    OCT - DEC      TOTAL


EMPLOYER NUMBER:  61-0675550
ASA WRIGHT & ESTILL D BANKS
A & E COAL CO
A&E COAL CO RT 1 BOX 57
JACKHORN  KY 41825-0000

  1973                              60.00                         $60.00


EMPLOYER NUMBER:  61-0658048
GOVERNOR ELKHORNS COAL COMPANY INC
  HOBERT C JOHNSON
PO BOX 550
PIKEVILLE  KY 41502-0550

  1973                                            339.00          $339.00


EMPLOYER NUMBER:  62-6030561
SCOTIA COAL CO
P O BOX 10080
KNOXVILLE  TN 37919-0000

  1974              1,358.90    2,432.30    2,595.97    $6,387.17
  1975    2,315.91  4,752.52    2,560.65    4,022.44    $13,651.52
  1976    2,199.32  2,566.20    4,000.53    4,773.88    $13,539.93
  1977    3,142.50  1,496.22      851.08                $5,489.80

EMPLOYER NUMBER:  61-0671178
SCOTIA EMPLOYEES ASSOCIATION            *under*
% BILLIE ADAMS
PO BOX 169
BLEDSOE  KY 40810-0169

RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

  1975      40.00                                         $40.00
  1977     356.00                                         $356.00


EMPLOYER NUMBER:  61-0184050
ELKHORN & JELLICO COAL CO INC
PO BOX 929
LEXINGTON  KY 40588-0929

  1978      -           -           -           -        $1,255.67

                        PAGE 007

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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      * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

EMPLOYER NUMBER:  61-0594344
BRANHAM & BAKER COAL CO INC
% QUAKER COAL COMPANY INC
PO BOX 270
PRESTONSBURG  KY 41653-0270

| 1978 | - | - | - | - | $4,155.00 |
|------|---|---|---|---|-----------|

EMPLOYER NUMBER:  61-0861383
JOHNSON & SONS COAL CO INC
P O BOX 412
VIRGIE  KY 41572-0000

| 1978 | - | - | - | - | $60.00 |
|------|---|---|---|---|--------|

EMPLOYER NUMBER:  61-0931163
ANCOAL MINING CORPORATION
 % DELMER KINCER
BOX 1037
WHITESBURG  KY 41858-0000

| 1979 | - | - | - | - | $2,227.50 |
|------|---|---|---|---|-----------|

EMPLOYER NUMBER:  61-0944518
ACTION ENERGIES INC
PO BOX 3219
PIKEVILLE  KY 41502-3219

RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

| 1979 | - | - | - | - | $2,575.13 |
|------|---|---|---|---|-----------|
| 1980 | - | - | - | - | $3,696.00 |

EMPLOYER NUMBER:  54-1025698
PARAMOUNT MINING CORPORATION
PO BOX 800
WISE  VA 24293-0800

| 1980 | - | - | - | - | $2,860.00 |
|------|---|---|---|---|-----------|

A551

```
SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *     FOR SSN 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      * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

✓EMPLOYER NUMBER: 61-0949740
SULLIVAN BROTHERS INC
PO BOX 171
BELCHER  KY 41513-0171

| 1980 | - | - | - | - | $965.59 |
|------|---|---|---|---|---------|

✓EMPLOYER NUMBER: 61-0857570
EVERIDGE & NEASE COAL CO INC
HC 85 BOX 1484
WHITESBURG  KY 41858-9611

| 1985 | - | - | - | - | $3,168.74 |
|------|---|---|---|---|-----------|

EMPLOYER NUMBER: 13-1996648
UNIFORCE STAFFING SERVICES INC
PO BOX 969
BETHPAGE  NY 11714-0019

*not conf*

| 1987 | - | - | - | - | $427.50 |
|------|---|---|---|---|---------|

EMPLOYER NUMBER: 11-2904255
U N F SERVICES INC
 132 4TH ST GARDEN CITY PARK
250 AUSTRALIAN AVE S
W PALMBEACH FL 33401-5018

RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

| 1988 | - | - | - | - | $1,118.25 |
|------|---|---|---|---|-----------|

✓EMPLOYER NUMBER: 61-0977718
WAMPLER BROTHERS COAL CO INC
RR 3 BOX 6B
LEBANON  VA 24266-9413

| 1988 | - | - | - | - | $11,884.65 |
|------|---|---|---|---|------------|
| 1989 | - | - | - | - | $13,199.71 |

PAGE 009

SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *    FOR SSN 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      * * *


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC    TOTAL


EMPLOYER NUMBER:  54-1490968
ABERRY COAL INC
PO BOX 426
POUND  VA 24279-0426

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1989 | - | - | - | - | $9,030.00 |
| 1990 | - | - | - | - | $24,451.50 |
| 1991 | - | - | - | - | $6,401.75 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER   2008 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

                    PAGE 010 END


RECEIVED

OCT 2 5 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

```
*** REC 2010239 164650 HE1D09E0 BLBU CIPQYAF  PQAF  (F-BLB ) ***

QRY DATE: 08/27/10 AN: 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 DOC: 448 UNIT: MJHMA  PG: 001+ DEQR \
INPUT: YRS REQ: 1978-2009; COVERED DETAILS; SELF-EMPLOYMENT; EMPLOYER ADDRESS
MEF: NA: J   FLEMIN DB: 09/1945 SX: M AK: FLFMIN


DETAIL COVERED FICA EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS
REQUESTED
EIN: 610184050          ELKHORN & JELLICO COAL CO INC
                        PO BOX 929
                        LEXINGTON            KY  40588-0929
RPYR  REO LOAC  NAME        EARNINGS      TOTAL COMP  CONTROL NUMBER   PR    S
0078  AA       J  FLEMIN     1255.67        1255.67 8159-22-20429   00379
                WAGE TOTAL   1255.67
         OASDI EMPLOYER TOTAL 1255.67
EIN: 610594344          BRANHAM & BAKER COAL CO INC
                        % QUAKER COAL COMPANY INC
                        PO BOX 270
                        PRESTONSBURG         KY  41653-0270
0078  AA       J  FLEMIN     4155.00        4155.00 8220-72-07056   00379
                WAGE TOTAL   4155.00
         OASDI EMPLOYER TOTAL 4155.00
EIN: 610861383          JOHNSON & SONS COAL CO INC
                        P O BOX 412
                        VIRGIE               KY  41572-0000
0078  AA       J  FLEMIN       60.00          60.00 8193-35-04737   00479
                WAGE TOTAL     60.00
         OASDI EMPLOYER TOTAL   60.00
         78 OASDI YEARLY TOTAL 5470.67


EIN: 610931163          ANCOAL MINING CORPORATION
                        % DELMER KINCER
                        BOX 1037
                        WHITESBURG           KY  41858-0000
RPYR  REO LOAC  NAME        EARNINGS      TOTAL COMP  CONTROL NUMBER   PR    S
0079  AA       J  FLEMIN      136.54        2227.50 9038-22-03435   00280
      ZA       J  FLAMIN     -136.54            .00 6598-70-03435   00588 V
      IA       J  FLEMIN     2227.50            .00 0243-CISH-VET16  00381
                WAGE TOTAL   2227.50
         OASDI EMPLOYER TOTAL 2227.50
EIN: 610944518          ACTION ENERGIES INC
                        PO BOX 3219
                        PIKEVILLE            KY  41502-3219
0079  AA       J  FLEMIN     2575.13        2575.13 9080-38-11259   00280
                WAGE TOTAL   2575.13
         OASDI EMPLOYER TOTAL 2575.13
         79 OASDI YEARLY TOTAL 4802.63


EIN: 541025698          PARAMOUNT MINING CORPORATION
                        PO BOX 800
                        WISE                 VA  24293-0800
RPYR  REO LOAC  NAME        EARNINGS      TOTAL COMP  CONTROL NUMBER   PR    S
0080  AA1      J  FLEMIN     2860.00        2860.00 0113-66-17571   00281
      AA       J  FLEMIN    -2860.00       -2860.00 0113-66-17571   00281
      EA       J  FLEMIN     2860.00        2860.00 0105-73-18547   00281
                WAGE TOTAL   2860.00
         OASDI EMPLOYER TOTAL 2860.00
EIN: 610944518  ACTION ENERGIES INC
0080  AA       J  FLEMIN     3696.00        3696.00 0086-73-15296   00181
                WAGE TOTAL   3696.00
```

RECEIVED

SEP 0 1 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

DIRECTOR EXHIBIT
NO. 6 CONSISTING
OF 4 PAGES

A554

```
QRY  DATE: 08/27/10  AN: 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  DOC: 448 UNIT: MJH      PG: 002+ DEQR
       OASDI EMPLOYER TOTAL      3696.00
EIN: 610949740              SULLIVAN BROTHERS INC
                           PO BOX 171
                           BELCHER           KY  41513-0171
0080  AA        J  FLEMIN        965.59          .00 0110-68-11241  00281
                WAGE TOTAL        965.59
        OASDI EMPLOYER TOTAL      965.59
        80 OASDI YEARLY TOTAL    7521.59


  81 NONE

  82 NONE

  83 NONE

  84 NONE


EIN: 610857570              EVERIDGE & NEASE COAL CO INC
                           HC 85 BOX 1484
                           WHITESBURG         KY  41858-9611
RPYR  REO LOAC  NAME         EARNINGS      TOTAL COMP  CONTROL NUMBER  PR    S
0085  AA        J  FLEMIN       3168.74       3168.74 5077-74-09022  01186 V
                WAGE TOTAL       3168.74
        OASDI EMPLOYER TOTAL     3168.74
        85 OASDI YEARLY TOTAL    3168.74


  86 NONE


EIN: 131996648              UNIFORCE STAFFING SERVICES INC
                           PO BOX 622
                           WOODBURY           NY  11797-0622
RPYR  REO LOAC  NAME         EARNINGS      TOTAL COMP  CONTROL NUMBER  PR    S
0087  AA1       J  FLEMIN        427.50        427.50 7223-90-14163  00288 V
      1A        J  FLEMIN       -427.50       -427.50 7223-90-14163  04090 V
      IA        J  FLEMIN        427.50          .00 9283-83-04199  04090 V
                WAGE TOTAL        427.50
        OASDI EMPLOYER TOTAL      427.50
        87 OASDI YEARLY TOTAL     427.50


EIN: 112904255              U N F SERVICES INC
                            132 4TH ST GARDEN CITY PARK
                            250 AUSTRALIAN AVE S
                            W PALM BEACH       FL  33401-5018
RPYR  REO LOAC  NAME         EARNINGS      TOTAL COMP  CONTROL NUMBER  PR    S
0088  AA        J  FLEMIN       1118.25       1118.25 8356-91-10286  01489 V
                WAGE TOTAL       1118.25
        OASDI EMPLOYER TOTAL     1118.25
EIN: 610977718              WAMPLER BROTHERS COAL CO INC
                           RR 3 BOX 6B
                           LEBANON            VA  24266-9413
0088  AA        J  FLEMIN      11884.65      11884.65 8111-79-38229  01689 V
                WAGE TOTAL      11884.65
        OASDI EMPLOYER TOTAL    11884.65
        88 OASDI YEARLY TOTAL   13002.90


EIN: 541490968              ABERRY COAL INC
                           PO BOX 426
```

```
QRY  DATE: 08/27/10  AN: 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  DOC: 448 UNIT: MJHWO   PG: 003+ DEQR
                        POUND            VA  24279-0426
RPYR  REO LOAC  NAME           EARNINGS      TOTAL COMP  CONTROL NUMBER  PR
0089  AA         D J FLEMIN       9030.00        9030.00 9088-79-06845   01690
                 WAGE TOTAL       9030.00
            OASDI EMPLOYER TOTAL  9030.00
EIN: 610977718  WAMPLER BROTHERS COAL CO INC
0089  AA1        J   FLEMIN      13199.71       13199.71 9095-78-20457   01790
      1A         J   FLEMIN     -13199.71      -13199.71 9095-78-20457   03290
      AA         J   FLEMIN      13199.71       13199.71 9044-79-44771   03290
                 WAGE TOTAL      13199.71
            OASDI EMPLOYER TOTAL 13199.71
            89 OASDI YEARLY TOTAL 22229.71

EIN: 541490968  ABERRY COAL INC
RPYR  REO LOAC  NAME           EARNINGS      TOTAL COMP  CONTROL NUMBER  PR   S
0090  AA         D J FLEMIN      24451.50       24451.50 0129-79-03128   01991 \
                 WAGE TOTAL      24451.50
            OASDI EMPLOYER TOTAL 24451.50
            90 OASDI YEARLY TOTAL 24451.50

EIN: 541490968  ABERRY COAL INC
RPYR  REO LOAC  NAME           EARNINGS      TOTAL COMP  CONTROL NUMBER  PR   S
0091  AA         D J FLEMIN       6401.75        6401.75 1122-79-11276   03892 \
                 WAGE TOTAL       6401.75
            OASDI EMPLOYER TOTAL  6401.75
            91 OASDI YEARLY TOTAL  6401.75

       92 NONE

       93 NONE

       94 NONE

       95 NONE

       96 NONE

       97 NONE

       98 NONE

       99 NONE

       00 NONE

       01 NONE

       02 NONE

       03 NONE

       04 NONE

       05 NONE

       06 NONE
```

RECEIVED

SEP 0 1 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

A556

QRY DATE: 08/27/10  AN: 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  DOC: 448 UNIT: MJH     PG: 004  DEQR
    07 NONE

    08 NONE

    09 NONE

DETAIL COVERED MQGE EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS
REQUESTED (1983-1990)
  NO COVERED MQGE EARNINGS POSTED FOR YEARS REQUESTED

REMARKS
  CLAIMS ACTIVITY--SEE MBR

A557





**Description of Coal Mine Work
and Other Employment**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

| This report is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et. seq.). While you are not required to respond, your cooperation is needed to ensure that this claim is given full and proper consideration. | OMB No. 1215-0( Expires: 05-31-0 |
| --- | --- |

**Miner's Name**
Joseph Fleming

**Claim Number**
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

Please provide the following information concerning your current or last coal mine work, or the miner's last coal mine work prior to death.

## PART I — DESCRIPTION OF COAL MINE WORK

| 1. Job Title | 2. Dates Worked (Month and Year) |
| --- | --- |
| CONTINUOS MINER OPER & Shuttle CAR OPER | From: MAR 1988  To: MAR 1991 |

| 3. Highest or current rate of pay | 4. Number of days worked per week |
| --- | --- |
| $ AVERAGE 600⁰⁰ WKLY | 6 OR 7 |

5. Describe the duties of this job in your own words:

I WAS ON A CREW THAT OPERATED FROM TIME TO TIME
1. ROOF BOLTER
2. Shuttle CAR
3. SCOOP
4. CONTINUOS MINER, WE WERE REQUIRED TO
DO IT ALL

6. List all other jobs you or the deceased miner did in the coal mines for at least one year.

| a. Job Title | b. Dates Worked (Month and Year) | |
| --- | --- | --- |
| | From | To |
| | | |
| | | |
| | | |
| | | |
| | | |

**DIRECTOR EXHIBIT**
NO. 5 CONSISTING
OF 4 PAGES

**RECEIVED**
AUG 1 6 2010
ESA / OWCP / DCMWC
Mt. Sterling, KY

**Public Burden Statement**
Public reporting burden for this collection of information is estimated to average 30 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue, N.W., Washington, DC 20210. DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

A558

7. Describe the physical activity required by the coal mine job described in Number 5.

Sitting for _6 - 12_ hours (Give number of hours per day).

Standing for _6 - 12_ hours (Give number of hours per day).

Crawling _____ (distance) for _____ hours per day.

Lifting _30 - 60_ pounds _6 - 10_ times per day.

_____ pounds _____ times per day.

_____ pounds _____ times per day.

(Example: 25 pounds ten times per day)

Carrying _30 - 60_ pounds _10 FT_ (distance) _6 - 10_ times per day.

_____ pounds _____ (distance) _____ times per day.

_____ pounds _____ (distance) _____ times per day.

(Example: 20 pounds 50 feet 15 times per day)

8. Did the coal mine job discussed above involve:

1. The use of tools, machines or equipment?  ☑ Yes  ☐ No

2. Technical knowledge or special skills?  ☐ Yes  ☐ No

3. Any supervisory responsibilities?  ☐ Yes  ☐ No

Please explain all "Yes" answers. For example, the specific type of tools, machines or equipment used; the nature of any technical knowledge or special skills needed; and the nature of any supervisory duties including the number and type of employees supervised, the extent to which they had to be supervised, etc.

_Operated Lee Norse Continuos Miner_
_Operated Fletcher Roof Bolter_
_"             Shuttle Car_
_"             Scoop_

9. Were you (or the deceased miner) transferred from a previous job due to health reasons?

☐ Yes  ☑ No  If "Yes," provide the following information:

a. Previous Job:

b. Job transferred to:

RECEIVED

AUG 1 6 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

c. Effective date of transfer:

d. Reason:

e. If coal mine work has stopped, give reason and last date worked:

_Disabled Due To Pulmonary & Back Problems_
_Last Date Approx Mar 1991_

A559

## PART II — DESCRIPTION OF OTHER EMPLOYMENT

Please provide the following information about current or last non-coal mine employment.

| 10. Job title | 11. Type of business or industry |
|---|---|
| ~~Woodward~~ Service STA MGR | Oil industry |

| 12. Dates worked (Month and Year) | 13. Highest or current rate of pay | 14. Number of days worked per week |
|---|---|---|
| From: Dec 67  To: Dec 1969 | ? | 7 Days |

15. Describe the duties of this job in your own words:

Every Day MANAGEMENT OF Service STATION Assignment & Supervise Employees

16. Describe the physical activity required by the job described above.

Sitting for _____ hours per day.        Standing for _____ hours per day.

Lifting _____ pounds _____ times per day.
_____ pounds _____ times per day.
_____ pounds _____ times per day.

N/A

(Example: 25 pounds ten times per day)

Carrying _____ pounds _____ (distance) _____ times per day.
_____ pounds _____ (distance) _____ times per day.
_____ pounds _____ (distance) _____ times per day.

N/A

(Example: 20 pounds  50 feet  15 times per day)

17. Did the job discussed above (10 to 16) involve:

1. The use of tools, machines or equipment?   ☐ Yes  ☑ No
2. Technical knowledge or special skills?      ☐ Yes  ☑ No
3. Any supervisory responsibilities?           ☑ Yes  ☐ No

Please explain all "Yes" answers. For example, the specific type of tools, machines or equipment used; the nature of any technical knowledge or special skills needed; and the nature of any supervisory duties including the number and type of employees supervised, the extent to which they had to be supervised, etc.

MANAGE Employees & Work schedules 4 Employees

RECEIVED

AUG 1 6 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

18. If work has stopped, give date of last employment and reason.

| Date | Reason for stopping |
|---|---|
| Dec 1969 | To Go INTO COAL MINES |

A560

**PART III**

19. Use this section for additional space to answer any previous question, or to provide any other information you feel would be helpful. Please refer to previous questions by number. If more space is needed, use a blank sheet and attach.

im Doing This To The Best Of my Memory
i Had A House Fire in Feb 1999 & Lost
All my Records my Home WAS TOTAL Loss

*Juel Fleming*

RECEIVED

AUG 1 6 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

**PRIVACY ACT**

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claim adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits.

I certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and no conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

Signature of claimant or person filing on his/her behalf

*Jamlle Fleming*

Date

7/19/2010

A561




**Employment History**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

| | |
|---|---|
| **Note:** Persons are not required to respond to this collection of information unless it displays currently valid OMB control number. | OMB No. 1215-0052<br>Expires: 05-31-02 |

Please complete as accurately as possible the miner's complete employment history. (Where employment was in coal mining, specify whether the mine was a strip mine or an underground mine.) This report is authorized by law (30 U.S.C. 901 et. seq.) and required to obtain a benefit. While you are not required to respond, your cooperation is needed to ensure that full and proper consideration is given to this claim. Disclosure of the social security number is voluntary. Failure to disclose such number will not result in the denial of any right, privilege or benefit to which you may be entitled.

**Miner's Name**    Joseph Fleming

**Miner's Social Security Number**    404 60 0560

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | 3. Occupation (Specify type of work) | 4. Period of Employment Mo/Yr — Mo/Yr | | 5. Exposure to dust, gases, or fumes? (Yes/No) |
|---|---|---|---|---|---|
| SOUTH EAST KY COAL CO. Jenkins KY | EXTRACTION & PREP OF COAL | Worked on Auger (drill) | JAN 1970 | JAN 1973 | Yes |
| SCOTIA COAL CO PARTRIDGE KY | COAL MINING EXT & PREP OF COAL | Ran motor Bolted top Shuttle car | MAR 73 | MAY 77 | Yes |
| SULLIVAN BROS COAL CO Pikeville KY | COAL MINING EXTRACTION & PREP OF COAL | OPERATE ROOF BOLTER SHUTTLE CAR | July 77 | AUG 79 | Yes |
| EVERIDGE & NEASE COAL CO Whitesburg KY | COAL MINING EXTRACTION OF COAL | SHUTTLE CAR & SCOOP OPER | OCT 79 | OCT 80 | Yes |
| HALL BROS COAL CO Virbie KY | COAL MINING EXTRACTION OF COAL | ROOF BOLTER | NOV 80 | MAY 81 | Yes |
| PARAMONT COAL CO. NORTON VA. | COAL MINING EXTRACTION OF COAL | ROOF BOLT SHUTTLE CAR | AUG 83 | MAY 84 | Yes |
| KINCER BROS COAL CO WHITESBURG KY | COAL MINING EXTRACTION OF COAL | SCOOP OPERATOR | JUNE 84 | MAR 85 | Yes |
| WAMPLER BROS COAL CO. Whitesburg KY | COAL MINING EXTRACTION OF COAL | SHUTTLE CAR ROOF BOLTER | MAR 85 | MAR 88 | Yes |
| A BERRY COAL CO. Whitesburg KY | COAL MINING EXTRACTION OF COAL | ROOF BOLTER SCOOP CONTINOUS MINER | MAR 88 | MAR 91 | Yes |

RECEIVED

**DIRECTOR EXHIBIT**
NO. ___4___ CONSISTING
OF ___3___ PAGES

AUG 16 2010

ESA / OWCP / DCMWC    4.1
Mt. Sterling, KY

Form CM-911a

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | 3. Occupation (Specify type of work) | 4. Period of Employment | | 5. Exposure to dust, gases, or fumes? |
|---|---|---|---|---|---|
| | | | Mo/Yr | Mo/Yr | (Yes/No) |
| BRANAHAM & BAKER COAL CO PRESTONSBURG KY | COAL MINING | STRIP MINE | Dont Remember DATES Worked 1 year | | Yes |
| | | | | | |
| | | | | | |

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| 6. Signature of Claimant (first, middle, last) | 7. Date (month, date, year) |
|---|---|
| Aaron Fleury | 7/19/2010 |

| 8. Mailing Address (Number, Street, Apt. No., P.O. Box or Rural Route) | 9. City and State |
|---|---|
| 1226 Zirkle Rd | Dandridge TN |

| 10. Zip Code | 11. County where you live | 12. Telephone number (include area code) |
|---|---|---|
| 37725 | JEFFERSON | 865 397 9654 |

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of Witness | Signature of Witness |
|---|---|
| | |
| Address (Number, Street, City, State & Zip Code) | Address (Number, Street, City, State & Zip Code) |

### PRIVACY ACT STATEMENT

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this report is required under the Black Lung Benefits Act. (2) The information in the report will be used to determine eligibility under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have compiled with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.)

### Public Burden Statement

Public reporting burden for this collection of information is estimated to average 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C-3526, 200 Constitution Avenue, N.W., Washington, D.C. 20210.
DO NOT SEND THE COMPLETED FORM TO THIS OFFICE

RECEIVED

AUG 16 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

2

Form CM-911a

A563

U. S. DEPARTMENT OF LABOR
OWCP/DCMWC

MEMORANDUM TO:  Claim File

| | | | |
|---|---|---|---|
| Miner's Name: | Joseph Fleming | SSN: | 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 LM C 2 |
| Person Contacted: | Mr. Fleming | Telephone: | 865/397-9654 |

SUBJECT:  *CME HISTORY*

---

*I CONTACTED MR. FLEMING AND HE REMEMBERED WORKING AS A COAL MINER AT THE FOLLOWING COAL COMPANIES:*

- *PEEM COAL COMPANY*

- *HIGH POINT COAL COMPANY*

- *ARCHER & CLUBB COAL COMPANY, INC.*

- *POM CORPORATION*

- *A & E COAL COMPANY*

- *GOVERNOR ELKHORNS COAL  COMPANY, INC.*

- *SCOTIA COAL COMPANY*

- *SCOTIA EMPLOYEES ASSOCIATION*

- *ELKHORN & JELLICO COAL COMPANY, INC.*

- *JOHNSON & SONS COAL COMPANY, INC.*

- *ANCOAL MINING CORPORATION*

- *ACTION ENERGIES, INC.*

---

| | | |
|---|---|---|
| Signature | Claims Examiner / | November 1, 2010 |
|  | Title | Date |

4.2

A564

92123

SCANNED

JUL 21 2010

**Miner's Claim For Benefits Under The Black Lung Benefits Act**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



I hereby claim all benefits which may be payable to me under the Black Lung Benefits Act. I also hereby apply on behalf of my family for any benefits that may be payable under the Act.

OMB No. 1215-0052
Expires: 05-31-02

**IMPORTANT:** No benefits may be paid under the Black Lung Benefits Act, unless a completed application form has been received. However, disclosure of your Social Security Number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled. Collection of the information on this form is authorized by law (30 U.S.C. 901, et. seq.). This information is required to obtain a benefit.

(FOR DOL USE)

| 1. Miner's Full Name (first, middle, last) | 2. Miner's Social Security Number |
|---|---|
| Joseph Fleming | 404 60 0560 |

| 3. Miner's Date of Birth (month, day, year) | 4. Highest Grade Miner Completed in School |
|---|---|
| Sept 11 1945 | 8 TH Hs. Ged |

5. Have you (or someone on your behalf) ever filed a claim for Federal Black Lung benefits before?

☐ Yes    ☒ No

6. Decision made (if more than one claim filed, identify and show disposition of each in item 18, "Remarks")

☐ Allowed    ☐ Denied
☐ Withdrawn    ☐ Pending

7. Are you still working in or around coal mines?    ☐ Yes    ☒ No

If "yes," answer only c.
If "no," answer a-c.

a. When did you stop working in or around coal mines or a coal preparation facility in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

OCT 1991

b. Why did you stop working in or around coal mines or in a coal preparation facility in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

COPD & Back injury

c. Have you ever been transferred from your regular coal mine job to lighter duty?

☐ Yes    ☒ No    If "yes," provide date and reasons why you were transferred. Use space in Item 18, "Remarks."

8. How many years have you worked in or around coal mines, or in a coal preparation facility in the extraction or preparation of coal, or worked in coal mine construction or transportation in or around a coal mine? 16. To the best of your knowledge list your complete coal mine Employment History on Form CM-911a.

**NOTE:** If available evidence is not sufficient to arrive at a determination, you may be requested to have an independent medical examination at no expense to you. Should the Department of Labor obtain information useful to your physician for treatment, such information may be furnished to that physician.

9. Describe briefly any disability you believe you have due to pneumoconiosis (Black Lung) or other respiratory or pulmonary disease resulting from coal mine employment. Specifically, what aspect(s) of your regular job in the coal mines are you physically unable to perform as a result of your disability?

I AM ON OXYGEN ALMOST 24 HRS A DAY.
I TAKE 3-5 BREATHING Meds Per DAY.
I CANNOT WALK LONG DISTANCES
OR UP STAIRS I HAd 24% LUNG CAPACITY
AT MY LAST BREATHING TEST IN 09
MY LUNGS ARE FILTERING ONLY 10% OF AIR
FLOW.

**DIRECTOR EXHIBIT**
NO _____3_____ CONSISTING
OF _____6_____ PAGES

**RECEIVED**
AUG 1 6 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY
Form CM-911 3·1

1

A565

NOTE: The amount of any state or Federal Workers' Compensation/Occupational Disease benefits you are receiving based on your disability due to workers' pneumoconiosis will be subtracted from your benefits under Part C of the Black Lung Benefits Act.

10. Have you filed a workers' compensation claim under any state or Federal law on account of your disability, due to coal workers' pneumoconiosis?

☑ Yes    ☐ No    (If "yes," complete items a through j).

| a. With what state or Federal agency was the claim filed? | b. Approximate date of filing | c. Claim No. (If known) |
|---|---|---|
| KY (STATE Claim) | 1993 | |

| d. Decision made | e. Employer against whom Workers' Compensation Claim was filed? |
|---|---|
| ☑ Allowed  ☐ Denied  ☐ Pending | A Berry COAL CO Whitsburg Ky |

| f. Amount of payment: | g. Date payment began |
|---|---|
| Weekly: $ _____ per week | |
| Other: $ _____ per _____ | Date payment ended |

| h. Did you pay any attorney's fees or legal fees in securing your workers' compensation award? | i. If you have received a lump-sum payment based on your compensation claim, please indicate the following: |
|---|---|
| ☐ Yes    ☑ No | Period covered (fill in below):  Amount: $ 10 000 00<br>From: _____<br>To: _____ |

j. Do you receive any medical treatment benefits as part of your Workers' Compensation benefits?    ☐ Yes    ☑ No

NOTE: The amount of your earnings, either as an employee or from self-employment, will help us to determine the correct amount of black lung benefits to which you may be entitled. This information is required by the 1981 Amendment to the Black Lung Benefits Act.

11a. Enter the names and addresses of all persons, companies, or government agencies for which you worked during the previous calendar year. If self-employed, so indicate.

| Name and Address of Employer | Work Began Month, Year | Work Ended Month, Year | Approximate Earnings |
|---|---|---|---|
| N/A | | | |

b. How much do you expect your total earnings to be this year? (Count all of your earnings beginning with the first of the year and all expected earnings through the end of this year.)  $ N/A

| 12. Are you married now?  ☑ Yes  ☐ No | (If "Yes," compete items a-f)<br>(If "No," go to Item 13) | a. Date of marriage<br>8/31/1964 |
|---|---|---|

| b. Your wife's first and maiden name (Print)<br>Arlene B Hunsucker<br>SSN: 405 62 9785 | c. Her birth date<br>3/3/48 | d. Do you and your wife live together?<br>☑ Yes  ☐ No  (If "No," answer Items e and f) |
|---|---|---|

| e. Are you under a court order to make support payments to your wife?<br>☐ Yes    ☑ No    (If "Yes," attach a copy of the order) | f. Do you make regular support payments to your wife?<br>☐ Yes  ☑ No  (If "Yes," indicate amount)<br>$ _____ per _____<br>(week, month, other) |
|---|---|

13. Were you previously married?    ☐ Yes    ☑ No    (If "Yes," answer a through f)

| a. Full name of previous wife<br>N/A | b. Date married (month, day, year) | c. Place married (city and state) |
|---|---|---|

| d. How marriage ended  (death, divorce) | e. Date marriage ended | f. Place marriage ended (city and state) |
|---|---|---|

RECEIVED<br>AUG 16 2010<br>SEAK/OWCP/DCMWC<br>Mt. Sterling, KY

If prior marriage ended by divorce and you were married for 10 years before the divorce action, answer questions 14 and 15.

| 14. Are you under a court order to make support payments to a divorced wife?<br>☐ Yes    ☐ No    (If "Yes," attach a copy of the orders) | 15. Do you make substantial contributions to a divorced wife?<br>☐ Yes    ☐ No    (If "Yes," indicate amount)<br>$ _____ per _____<br>(week, month, other) |
|---|---|

N/A

2

A566

**16. Do you have any Unmarried children who are:**

List All Such Children In Order Of Birth Beginning With The Oldest
(Use "Remarks" space item 18 if space below is insufficient)

Under age 18          ☐ Yes  ☒ No

Age 18-23 and attending school   ☐ Yes  ☒ No

Age 18 or older and disabled   ☒ Yes  ☒ No

| | Check (X) sex of child | | Date of Birth (Mo., day, yr.) | Check (X) if child 18 or over is student or disabled | | Check (X) the column that shows child's relationship to you | | | |
|---|---|---|---|---|---|---|---|---|---|
| | M | F | | STUDENT | DISABLED | LEGITIMATE | ADOPTED | STEPCHILD | OTHER |
| Full name of child: Billy Joseph Fleming SSN: | X | | 10/4/90 | | X | X | | | |
| Full name of child: SSN: | | | | | | | | | |
| Full name of child: SSN: | | | | | | | | | |
| Full name of child: SSN: | | | | | | | | | |

If Any Child Named Above Does Not Live With You, Enter The Name And Address Of The Person Or Organization With Whom The Child Lives In Item 18, "Remarks."

**17.** The events listed below may affect the amount of your Federal Black Lung Benefits:

Your condition improves; or

You become entitled to receive workers' compensation or occupational disease payments due to disability on account of pneumoconiosis; or

The amount of any of the benefits described above to which you are entitled changes; or

You work in or around coal mines or in any other employment, including self-employment.

The events listed below relating to your dependents may also affect the amount of your Federal Black Lung Benefits:

A dependent marries, divorces, dies, or is adopted by someone else; or

A child 18-23 stops attending school, or in the case of a disabled child 18 or older, the disabling condition improves.

It is IMPORTANT that you report PROMPTLY any of the above events which occur.

Do you agree to notify the Department of Labor if any of the above events occur?    ☒ Yes    ☐ No

**18. Remarks:** (You may use this space for any explanations. If you need more space attach a separate sheet.)

Child Listed Above is Married & Lives With His Wife.

N/A

RECEIVED
AUG 1 6 2010
ESA / OWCP / DCMWC
Mt. Sterling, KY

3                                    Form CM-911

A567

19. Do you authorize any physician, hospital, agency, employer or other organization (including the Social Security Administration) to disclose to the Department of Labor any medical records, or information about your disability or any other information pertinent to your claim?

☒ Yes    ☐ No

20. Do you authorize the Department of Labor to give information about the decision on your Black Lung Benefits claim to the Workers' Compensation, Unemployment Compensation, or Disability Insurance agency of your State for use in connection with a claim you ma have with that agency?

☒ Yes    ☐ No

## SIGNATURE OF MINER

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining an benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| 21. Signature of Claimant (first, middle, last) | 22. Date (month, day, year) |
|---|---|
| *Jacob Fleming* | July 19, 2010 |

| 23. Mailing Address (Number, Street, Apt. No., P.O. Box or Rural Route) | 24. City and State |
|---|---|
| 1226 Zirkle Rd | Dandridge TN 37725 |

| 25. Zip Code | 26. County Where You Now Live | 27. Telephone Number (include area code) |
|---|---|---|
| 37725 | Jefferson | 865 397 9654 |

Witnesses are required ONLY if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| 28. Signature of Witness | 29. Signature of Witness |
|---|---|
| | |

| 30. Address (Number, Street, City, State & Zip Code) | 31. Address (Number, Street, City, State & Zip Code) |
|---|---|
| | |

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

## PRIVACY ACT NOTICE

In accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a) you are hereby notified that (1) the Black Lung Benefits Act (BLBA) (30 U.S.C. 901 et seq.) as amended, is administered by the Office of Workers' Compensation Programs (OWCP) of the U.S. Department of Labor, which receives and maintains personal information, relative to this application, on claimants and their immediate families; (2) information obtained by OWCP will be used to determine eligibility for the amount of benefits payable under the BLBA; (3) information may be given to coal mine operators potentially liable for payment of the claim, or to the insurance carrier or other entity which secured the operator's compensation liability; (4) information may be given to the physicians or medical service providers for use in providing treatment, making evaluations and for other purposes relating to the medical management of the claim; (5) information may be given to the Department of Labor's Office of Administrative Law Judges, or other person, board or organization, which is authorized or required to render decisions with respect to the claim or other matters arising in connection with the claim; (6) information may be given to Federal, state or local agencies for law enforcement purposes, to obtain information relevant to a decision under the BLBA, to determine whether benefits are being or have been paid properly, and, where appropriate, to pursue administrative offset and/or debt collection actions required or permitted by law; (7) disclosure of the claimant's Social Security Number (SSN) or tax identifying number (TIN) on this form is voluntary, and the SSN and/or TIN and other information maintained by the OWCP may be used for identification and for other purposes authorized by law; (8) failure to disclose all requested information, may delay the processing of this claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

COMPUTER MATCHING PROGRAM: The Department of Labor conducts computer matches with the Department of Health and Human Services and the Department of Veterans Affairs. Any information provided by applicants for and recipients of financial assistance or payments under Federal benefit programs may be subject to verification through computer matches which the Department of Labor conducts with these agencies.

## Public Burden Statement

Public reporting burden for this collection of information is estimated to average 45 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C-3520, 200 Constitution Avenue, NW, Washington, DC 20210. DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.

AUG 1 6 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY

4

A568



RECEIVED

OCT 14 2010

ESA / OWCP / DCMWC
Mt. Sterling, KY



3.2

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

MINER:
CLAIMANT: Joseph Fleming
SSN: 404 60 0560

1) Have you filed a State Workers' Compensation claim for your lung
   condition?    Yes ___✓___    No ~~___~~

   If yes, has a decision been issued?    Yes ___✓___    No _____
   (Please forward a copy of the decision issued.)    *Lost in Home Fire*

2) If you have not filed, do you intend to file a State Workers'
   Compensation claim?    Yes ~~___~~    No _____

3) If you have not filed and do not intent to file a State Workers'
   Compensation claim for your lung condition, please explain why not.




Signature _____*Joseph Fleming*_____    Date _7/19/2010_

**RECEIVED**

**AUG 1 6 2010**

ESA / OWCP / DCMWC
Mt. Sterling, KY

3.3

A570

Mailed to claimant on: September 2, 2010

## GUIDE TO FILING FOR BLACK LUNG BENEFITS
### (MINER)

The Black Lung Benefits Act provides monthly benefits to coal miners who are totally disabled by black lung disease caused by working in the coal mining industry.  "Totally disabled" means you are unable to perform the work you did as a coal miner because breathing coal mine dust has permanently impaired your ability to breathe normally.  You may also receive additional benefits for family members who are dependent on you and for the cost of your own medical treatment.  A coal mining company which employed you (usually the last company that employed you for a year or more) may be required to pay your benefits if it meets certain requirements under the law.  Otherwise, the Black Lung Disability Trust Fund will pay your benefits.

The first step in the process of applying for Black Lung benefits is to complete an application form.  You will be asked to provide important basic information about yourself and your family.  The form is called the "Miner's Claim for Benefits Under the Black Lung Act" (Form CM-911).  You will also complete an "Employment History" (Supplemental Form CM-911a).  This form requests information about your work as a miner, the number of years you worked, the names of the coal companies which employed you, and your work outside the coal mining industry.  We need this information to determine whether you were a coal miner and whether a specific coal mining company will pay your benefits.  A representative from the U. S. Department of Labor (Division of Coal Mine Workers' Compensation) or the Social Security Administration can assist you in completing the application forms.

Based on the information in your benefits application and Employment History form, we may ask you to provide additional information, including copies of official documents.  This information may include copies of marriage certificates, children's birth certificates, death certificates, proof of enrollment in schools for dependent children, etc.  This information is necessary to establish basic facts about your entitlement to benefits or the entitlement of members of your family.

After we have begun processing your benefits application, we will contact you to schedule **a complete pulmonary evaluation.**  A "pulmonary evaluation" is a medical examination to determine whether you are totally disabled by black lung disease.  The Department of Labor is required by law to offer you a free examination to prove that you may be entitled to black lung benefits.  We will provide you with a list of  physicians who can perform this examination.  All of these physicians will be located in your state or a bordering state.  You will be asked to select a physician you wish to use, within certain limitations.  The examination consists of:

- a physical examination by a physician;

- a chest X-ray;

- a pulmonary function test and an arterial blood gas test (unless medically contraindicated), which measure your ability to breathe.

DIRECTOR EXHIBIT
NO. 2 CONSISTING
OF 2 PAGES

Additional information about choosing a physician and the pulmonary examination are contained in the form "Selection of an Examining Provider." Please review this information carefully. **If you refuse to be examined, your claim may be denied without any further consideration of your entitlement to benefits.** You also have the right to have the results of this examination sent to your personal physician.

After we receive the results of your pulmonary examination, we will conduct a preliminary review of those results and determine whether they support an award or a denial of your claim. **This review is not final.** You will receive a letter explaining the results of the examination and the reasons for our opinion about your entitlement. This letter is called the "Schedule for the Submission of Additional Evidence." The "Schedule" will inform you about your opportunity to submit additional evidence, your right to obtain medical evidence from a physician of your own choosing, and the time limits for submitting evidence. If we find that a coal company is liable for your claim, that company has the right to have you examined by a physician of its choice. **If you refuse to be examined, your claim may be denied without any further consideration of your entitlement to benefits.**

The most important part of applying for Black Lung benefits is obtaining medical evidence about your physical condition. The Black Lung benefits program has limitations on the amount of medical evidence which you and the coal company may give us for determining whether you are entitled to benefits. **We encourage you to get advice from an attorney or other qualified representative before submitting any additional medical evidence to the Department of Labor. Ordinarily, attorney's fees which must be paid if your claim is approved will be paid by the coal company liable for your claim or the Black Lung Disability Trust Fund.** We will explain to you the situations in which you may be liable for payment of the attorney's fees. **You are not liable for any attorney's fees if your claim is denied.**

When we have received all of the evidence in your claim, we will decide whether your claim must be approved or denied. In some cases, we may ask you to attend an "informal conference" to discuss your claim before we make this decision. If we decide that an informal conference is necessary, we will inform you of your rights and obligations in writing when we schedule the conference. After we have reviewed your claim and all of the evidence (and the results of the conference if one is held), we will issue a "Proposed Decision and Order." This decision will approve or deny your claim and explain the reasons for our decision. We will also inform you (and the coal company if one is liable for your claim) of the options for challenging our decision and the time limits for taking any further action. These options include asking the Department to reconsider its decision or asking for a hearing before an administrative law judge.

If you have any questions about the benefits application process, we are available to give you answers. You should contact the district office listed below:

U. S. Department of Labor
OWCP/DCMWC
402 Campbell Way
Mt. Sterling, KY  40353-7847

A572



## BAIRD, BAIRD, BAIRD & JONES, P. S. C.
### ATTORNEYS AT LAW
415 SECOND STREET
P. O. BOX 351
PIKEVILLE, KENTUCKY 41502

WILLIAM J. BAIRD (1913-1987)
WILLIAM J. BAIRD, III
JOHN H. BAIRD
CHARLES J. BAIRD
PAUL E. JONES
TERRI SMITH WALTERS
JAMES B. RATLIFF
RUSSELL H. DAVIS, JR.
BILLY R. SHELTON
SAM A. CARTER
LOIS A. KITTS

TELEPHONE 606-437-6276
TELECOPIER 606-437-6383

TAX I.D. NUMBER
61-0974362

March 28, 1995

Ms. Rhonda Epling
Claims Examiner
U. S. Department of Labor
ESA/OWCP/DCMWC
334 Main Street, 5th Floor
Pikeville, Kentucky  41501

RE:   Joseph Fleming
v. Aberry Coal
Claim No. 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

Dear Ms. Epling:

We are enclosing deposition of the claimant which we would appreciate your filing and making part of the record in the above styled case.

Thank you for your attention to this matter.

Very truly yours,

Paul E. Jones

PEJ/tjr
Enclosure
cc:  Mr. Joseph Fleming
Ms. Toni Mazzoli
Mr. Bob Kulak

DIRECTOR EXHIBIT
NO. 1-31.2 CONSISTING
OF 144 PAGES

A573

U. S. DEPARTMENT OF LABOR

IN THE MATTER OF THE CLAIM )
FOR COMPENSATION UNDER THE )
FEDERAL COAL MINE HEALTH )
AND SAFETY ACT OF 1969, )
as amended )

JOSEPH FLEMING )

        Claimant )

  vs. )
                       OWCP NO. 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
                       CASE NO.

ABERRY COAL, INC. )

        Employer )

  and )

DIRECTOR, OFFICE OF WORKERS' )
COMPENSATION PROGRAMS )

      Party-In-Interest )

I N D E X

| NAME OF WITNESS | EXAMINATION BY | Page Nos. |
|---|---|---|
| Caption-Appearances | | 1 |
| JOSEPH FLEMING | Ms. Kitts: | 2 - 11 |
| Notary's Certificate | | 12 |
| INDEX | | 13 |

-13-

RECEIVED
JAN 2 3 1995

1.31.1

## DEPOSITION OF THE CLAIMANT

The deposition of the
Claimant, JOSEPH FLEMING, was taken pursuant to Notice,
on Friday, January 6, 1995, at the hour of 10:30 A. M.,
via Speakerphone, originating from the law offices of
Baird, Baird, Baird & Jones, P. S. C., 415 Second Street,
Pikeville, Kentucky, said deposition to be read and used
as evidence in the above styled action now pending before
the United States Department of Labor.

APPEARANCES:        The Claimant, Joseph Fleming,
                    present, via Speakerphone.


                    The Employer, Aberry Coal Company,
                    Inc., was represented by
                    counsel, HON. LOIS A. KITTS,
                    of the firm of Baird, Baird,
                    Baird & Jones, P. S. C.,
                    Pikeville, Kentucky 41502.

*********

1.

The Claimant,

JOSEPH FLEMING, having first been duly sworn, to tell the
truth, was examined and testified as follows, to-wit:

EXAMINATION      BY MS. KITTS:

Q1.      Could you state your
full name, please?

A.      Danny Joseph Fleming.

Q2.      Where do you live?

A.      I live at General
Delivery, Jackhorn, Kentucky 41825.

Q3.      And your Social
Security number?

A.      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.

Q4.      And your date of birth?

A.      9-11-45.

Q5.      Are you married?

A.      Yes.

Q6.      What is your wife's
name?

A.      Arlene.

Q7.      And how long have you
been married?

A.      Thirty years.

2.

Q8.                                    Do you have any
children at home?

A.                                     No.

Q9.                                    How far did you go
in school?

A.                                     I went to the 8th Grade.

Q10.                                   Do you have any
vocational training?

A.                                     No.

Q11.                                   Were you ever in the
Military?

A.                                     Yes, for three years.

Q12.                                   Which branch?

A.                                     Army.

Q13.                                   How many years have
you worked in and around the mines?

A.                                     Around 20 years.

Q14.                                   Where was the last
place that you worked?

A.                                     Aberry Coal.   I
worked there from August of 1989 to April of 1991.

Q15.                                   Why did you quit
working?

A.                                     I had a back injury.

Q16.                                   If you had not had

3.

A577

that back injury, would you have continued working the
next day?

A.                                    Yes, I would have.

Q17.                                  You have not returned
to work since your back injury?

A.                                    No, I haven't.

Q18.                                  Did you draw State
Workers Comp as a result of that back injury?

A.                                    Yes, I did.

Q19.                                  Are you still drawing
State Workers Compensation?

A.                                    Yes.

Q20.                                  How much?

A.                                    I draw $ 162.00
every two weeks.  Monthly I draw State Workers Comp
$ 489.84.

Q21.                                  Monthly you draw
$ 489.84?

A.                                    Right.

Q22.                                  Is this for life,
or how long?

A.                                    For eight years.

Q23.                                  Did you have a rib
claim?

A.                                    Yes, I was awarded

4.

$ 15,000 lump sum payment on it.

Q24.                                Who did you work for

prior to Aberry?

A.                                  Wampler Coal Company.

Q25.                                How long did you work

for Wampler?

A.                                  From February of 1988

to August of 1989.

Q26.                                What was your job

with Wampler?

A.                                  I ran a scoop.  And

belted top.

Q27.                                What was your job

at Aberry?

A.                                  I ran a miner and

coal loader, and belted top.

Q28.                                Prior to Wampler,

did you work at Action Energy?

A.                                  Yes, I did.

Q29.                                I have a form here

in front of me that says you worked for Action Energy

from May of 1981 to July of 1982, is that correct?

A.                                  Yes.

Q30.                                What did you do for

Action Energy?

5.

A579

A.                          I ran a shuttle car
and loader and bolted top. I worked from 5/81 to 7/83.

Q31.                        What did you do from
1983 to 1988?

A.                          I was off with a back
injury.

Q32.                        Where did you have
a back injury?

A.                          I had a back injury
at Action Energy also.

Q33.                        So you had a back
injury in 1983 at Action?  And you were off work until 1988?
Your back injury was in July of 1983?

A.                          Right.

Q34.                        And you went back
to work and worked for Wampler until August of 1989?

A.                          Right.

Q35.                        Before Action, who
did you work for?

A.                          For Paramount Mining.

Q36.                        What did you do for
Paramount?

A.                          I belted top, ran
a shuttle car, and scoop.

Q37.                        How long did you work

6.

for them?

A.                                              From 4/80 to 5/81.

38.                                             We are going down the
line.  We are going to get down to the first place that
you worked in the mines?  Who did you work for before
Paramount?

A.                                              Kinser Brothers,
I ran a scoop and belted top.

Q39.                                            How long did you work
there?

A.                                              From 8/78 to 4/80.

Q40.                                            And Lewis Mining,
how long did you work for them?

A.                                              From 8/77 to 8/78.

Q41.                                            What did you do for
Lewis?

A.                                              I ran a scoop.

Q42.                                            And your next employer?

A.                                              Scotia Coal Company.
I worked for them from February of 1973 to August of 1977.

Q43.                                            Did you have pay stubs
you went by to get this employment history?

A.                                              These are pretty
close to being accurate.  I don't have any pay stubs
to get these dates.  I just went over it in my mind, and

7.

came up the best I could with them.

Q44.                               So these you have

done from your memory, rather than pay stubs?

A.                                 Yes.

Q45.                               Did you work for

South Eastern Coal?

A.                                 Yes.

Q46.                               For how long?

A.                                 From 7/69 to 8/72.

Q47.                               On your form it says

8/71?

A.                                 That isn't right.

Q48.                               On your application,

it says the highest grade miner completed in school, is

the 12th Grade?  That is not correct?

A.                                 I went to the 8th

Grade, but I got a G.E.D.

Q49.                               So you got your GED,

high school equivalency?

A.                                 Yes.

Q50.                               Who is your treating

doctor?

A.                                 Dr. Tidall at Whitesburg

A. R. H.

Q51.                               How long have you

8.

been seeing Dr. Tidall?

A.                                  For about five years.

Q52.                                What do you see him

for?

A.                                  My back injury and

my breathing.

Q53.                                Does he have you on

any medication?

A.                                  Yes, I have Max Air.

Q54.                                Any other medications?

A.                                  The rest of my

medication is for my back injury, Flexoril, a muscle relaxant

and Anthed and Tylox.

Q55.                                Is there any other

medication?

A.                                  That is it.

Q56.                                How long have you been

on the Max Air?

A.                                  On and off for a couple

of years.

Q57.                                Are you on it right

now?

A.                                  No.

Q58.                                Have you been

hospitalized in the last ten years?

9.

A.                          Yes.

Q59.                        Where have you been
hospitalized?

A.                          At Whitesburg A. R. H.

Q60.                        Have you been
hospitalized any other places?

A.                          No.

Q61.                        Why were you hos-
pitalized in the A. R. H. at Whitesburg?

A.                          I was hospitalized
for rupture, matter of fact I was hospitalized for
left hernia repair, right hernia repair, and then the back
injury.

Q62.                        Have you been hos-
pitalized for breathing?

A.                          No, I haven't.

Q53.                        Have you filed a
previous claim for Federal Black Lung benefits?

A.                          No, I haven't.

Q54.                        Have you had any C-T
scans run on your chest?

A.                          No.

Q55.                        Does your wife work?

A.                          No, she doesn't.

10.

Q56.                              Are you drawing Disabled
Social Security?

A.                                Yes.

Q57.                              How much is that a month?

A.                                $ 641.00 I think.

Q58.                              Which physicians examined
you for the Social Security?

A.                                I was examined by Docter
Kennedy in Hazard, which the Social Security Administration
sent me to.

Q59.                              Was this for your back?

A.                                Yes.

Q60.                              Have you ever been
diagnosed as having a heart condition?

A.                                No, I haven't.

Q61.                              Are you a cigarette smoker?

A.                                Yes.

Q62.                              How long have you smoked?

A.                                24-25 years.

Q63.                              How much per day?

A.                                About a pack.

Q64.                              Do you ever go over a pack
a day?

A.                                Hardly ever.

Ms. Kitts:  I have no further questions.

*****CONCLUSION OF DEPOSITION*****

11.

STATE OF KENTUCKY

COUNTY OF PIKE.....C E R T I F I C A T E

                           I, Patty Schuler,

a Notary Public in and for the State of Kentucky, at Large,

do hereby certify that the foregoing deposition of------

JOSEPH FLEMING------was taken at the time, date, place,

and for the purpose, as stated in the caption hereof;

that said witness was first duly sworn by me before the

giving of said testimony; that said testimony was taken

by me in shorthand notes, and by recording machine; that

said testimony was afterwards reduced by me to the fore-

going typewritten pages; that said pages constitute a

full, true, and correct transcript of said testimony.

                           I further certify

that counsel for the parties hereto were in attendance, as

stated in the caption hereof.

                           WITNESS my hand,

this the 9th day of January, 1995.

               My Commission Expires:_11-25-98.

                     _Patty Schuler_____
                     Notary Public, State at Large, Kentucky

12.

Fleming County

WORKER'S Social Security Number     TYPE OF READING     FACILITY IDENTIFICATION

| 4 | 0 | 4 | 6 | 0 | 0 | 5 | 6 | 0 |

TYPE OF READING: A B P

FACILITY IDENTIFICATION: [ ][ ][ ][ ]

---

**1A. DATE OF X-RAY**    **1B. FILM QUALITY**   If Not Grade 1 Give Reason: ____    **1C. IS FILM COMPLETELY NEGATIVE?**

1A. MONTH DAY YEAR: 02 23 95

1B. ☒ 2 3 UR

1C. YES ☒ Proceed to Section 5    NO ☐ Proceed to Section 2

---

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☐ COMPLETE 2B and 2C   NO ☐ PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p  s | p  s |
| q  t | q  t |
| r  u | r  u |

b. ZONES

R   L

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**

SIZE O A B C

PROCEED TO SECTION 3

---

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☐ COMPLETE 3B, 3C and 3D   NO ☐ PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE   O R L

b. COSTOPHRENIC ANGLE
SITE   O R L

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE | O R | O L |
| IN PROFILE | | O A B C | O A B C |
| i. WIDTH | | 0 1 2 3 | 0 1 2 3 |
| ii. EXTENT | | 0 1 2 3 | 0 1 2 3 |
| FACE ON iii. EXTENT | | 0 1 2 3 | 0 1 2 3 |

b. DIFFUSE

| | SITE | O R | O L |
| IN PROFILE | | O A B C | O A B C |
| i. WIDTH | | 0 1 2 3 | 0 1 2 3 |
| ii. EXTENT | | 0 1 2 3 | 0 1 2 3 |
| FACE ON iii. EXTENT | | 0 1 2 3 | 0 1 2 3 |

**3D. PLEURAL CALCIFICATION**

SITE O R EXTENT     O L EXTENT

| | | O R | | O L | |
| a. DIAPHRAGM | | 0 1 2 3 | a. DIAPHRAGM | 0 1 2 3 |
| b. WALL | | 0 1 2 3 | b. WALL | 0 1 2 3 |
| c. OTHER SITES | | 0 1 2 3 | c. OTHER SITES | 0 1 2 3 |

PROCEED TO SECTION 4

---

**4A. ANY OTHER ABNORMALITIES?**   YES ☐ COMPLETE 4B and 4C   NO ☐ PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

O ax bu ca cn co cp cv di ef em es fr hi ho id ih kl pi px rp tb

Report items which may be of present clinical significance in this section.   OD (SPECIFY od.)

Date Personal Physician notified?
MONTH DAY YR

**4C. OTHER COMMENTS** _____

_____

_____

_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.   YES NO   PROCEED TO SECTION 5

---

**5. FILM READER'S INITIALS**    **PHYSICIAN'S SOCIAL SECURITY NUMBER\***    **DATE OF READING**

Complete if social security number is not furnished.

DATE OF READING: MONTH 02 DAY 23 YR 95

NAME (LAST—FIRST—MIDDLE)

STREET ADDRESS    CITY    STATE    ZIP CODE

\*Furnishing your social security number is voluntary. Your refusal to provide this number will not effect your right to participate in this program.

CDC/NIOSH (M) 2.8
REV. 4/80
☆U.S.GPO:1990-0-749-702

1.30



February 231, 1995

Mr. Paul E. Jones
BAIRD, BAIRD, BAIRD & JONES
415 Second Street
P.O. Box 351
Pikeville, KY  41501

                                    RE:  Mr. Danny Fleming
                                         Lexington Cl. #840-498-0

Dear Counselor:

I saw Mr. Danny Fleming at the Lexington Clinic for an occupational pulmonary
disease evaluation at your request on February 23, 1995.  Mr. Fleming is a 49-
year-old married, Caucasian male from Letcher County, Kentucky with an 8th grade
education.  He has been a smoker consuming 1 pack per day for 10 to 20 years,
starting in his early 20's and quitting for 5 or 6 years before resuming once
again.  He worked about 22 years underground running a roof bolter, continuous
miner and loading machine.  He says that he worked 4 or 5 years on the surface
where he operated a coal auger.  He briefly worked in the auto industry in
Michigan for a couple of years.  His last company was A-Berry Coal Company for
which he worked 2-1/2 to 3 years, stopping in September, 1991 because of a back
injury.  He says that he worked steadily until then.  He hurt his back when he
fell backward while pulling a piece of equipment.  He suffered a ruptured disc
and underwent a laminectomy and discectomy in the lumbar spine in September,
1991.  This was done in Bristol, Tennessee.  He says his injury left him
"disabled" because of nerve damage in the back.  He suffers from chronic lower
back pain and pain in the right lower extremity.  Were it not for the injury he
might otherwise work.

He did state that he started having breathing trouble two or three years before
the accident, but did not see a doctor nor go to the hospital for breathing
except for the time he was given a Maxair inhaler by his local physician.  This
was given to help his breathing and he still occasionally uses it.  He says that
he awakens at night with cough and sputum production especially in the late
evening and early in the morning.  The phlegm is clear or cloudy in color.
There is no history of hemoptysis, weight loss or fever.  He has had ankle
swelling.  On the job he was having breathing in dusty areas.  He says that if
it was not very dusty he could get the job done, but noticed more shortness of
breath with exertion as time went on.  He says that he is more limited by his
breathing than his back problem but cannot quantitate his dyspnea very well.  He
still goes fishing and watches U.K. ballgames.  He has had chest heaviness

PULMONARY DISEASES                                    LOCATION

Bruce C. Broudy, M.D.                                 1221 South Broadway
John F. Dineen, M.D.                                  Lexington, KY  40504
Jeremiah Suhl, M.D.                                   (606) 255-6841
Mary Jean Vogt, M.D.                                  FAX: (606) 254-0255

1.29



Mr. Paul E. Jones
RE: Mr. Danny Fleming
Lexington Cl. #840-498-0
February 23, 1995

Page Two

anteriorly when he is having a coughing spasm. He has a lot of wheezing.
Occasionally he does use the inhaler for his breathing.

Past medical history reveals that he is on Ansaid, Tylox and Flexeril for his
back problems. He has had bilateral inguinal herniorrhaphies in 1989 and 9185.
There is no history of allergies or blood transfusion. There is no history of
any other surgery, serious injury or hospitalization. There is no history of
tuberculosis, carcinoma, asthma, pneumonia, stroke, heart attack, peptic ulcer
disease, kidney stones, diabetes or hypertension.

Physical examination reveals a well developed, well nourished Caucasian male in
no apparent distress. His height is 68-1/2 inches; weight is 150 pounds. Blood
pressure is 112/62; pulse is 80. The respirations are normal. He was afebrile.
The examination of the head and neck is unremarkable except for dentures. The
chest expansion is satisfactory. The lungs have inspiratory and especially
expiratory wheezes with marked expiratory delay. The cardiac exam reveals a
regular rhythm without murmur, rub or gallop. The abdomen is without mass,
organomegaly or tenderness. There is no cyanosis, clubbing or edema of the
extremities.

Spirometry shows moderately severe obstructive airways disease. The patient's
effort appears satisfactory.

The arterial blood gas study shows moderate resting arterial hypoxemia with
marked elevation of the carboxyhemoglobin indicating continued exposure to
smoke. The total hemoglobin is 16.3 grams.

The chest x-rays are of good diagnostic quality. The soft tissues, bony
structures, cardiac silhouette and mediastinal structures are normal. The lung
zones are clear and I see no evidence of coal workers' pneumoconiosis. I would
categorize the films as negative or Category 0 according to the ILO
classification system for pneumoconioses.

DIAGNOSES:
1. Chronic asthmatic bronchitis with moderately severe chronic obstructive
airways disease.

PULMONARY DISEASES                                LOCATION

Bruce C. Broudy, M.D.                             1221 South Broadway
John F. Dineen, M.D.                              Lexington, KY  40504
Jeremiah Suhl, M.D.                               (606) 255-6841
Mary Jean Vogt, M.D.                              FAX: (606) 254-0255



Mr. Paul E. Jones
RE:  Mr. Danny Fleming
Lexington Cl. #840-498-0
February 23, 1995

Page Three

COMMENTS:  I believe the chronic asthmatic bronchitis is due to cigarette smoking and some predisposition to asthma or bronchospasm.  Because of the current level of obstructive airways disease, I do not believe this gentleman retains the respiratory capacity to perform the work of an underground coal miner or to do similarly arduous manual labor.  I believe the cause of the impairment is cigarette smoking and asthma which are diseases or conditions of the general public.  I do not believe that Mr. Fleming has coal workers' pneumoconiosis.  I do not believe that there has been any significant pulmonary disease or respiratory impairment which has arisen from this man's occupation as a coal worker.

It is medically feasible, with any degree of medical certainty, to distinguish between the pulmonary disability caused by cigarette smoking as opposed to that caused by exposure to coal mine dust.  It is possible, with any degree of medical certainty, to distinguish between this claimant's pulmonary disability caused by cigarette smoking as opposed to coal mine dust based on the medical evidence.  I do have an opinion as to the origin of the pulmonary disability within the degree of medical probability and/or certainty.  I believe the pulmonary disability is due to cigarette smoking.

If there are any further questions, please do not hesitate to contact me.

Sincerely,

Bruce Broudy, M.D.

BB/bm
0223/0223

Enclosures: Attorney Letter
            Form 104
            Spirometry Report
            X-Ray Form

PULMONARY DISEASES                                LOCATION

Bruce C. Broudy, M.D.                             1221 South Broadway
John F. Dineen, M.D.                              Lexington, KY  40504
Jeremiah Suhl, M.D.                               (606) 255-6841
Mary Jean Vogt, M.D.                              FAX: (606) 254-0255

Case: 15-3999    Document: 15    Filed: 02/24/2016    Page: 594

**FORM 104**
Adopted April 19, 1988
Plaintiff's Employment History

DEPARTMENT OF WORKERS' CLAIMS
**WORKERS' COMPENSATION BOARD**
FRANKFORT, KENTUCKY 40601

## Instructions

Please complete this form as accurately as possible, giving your complete adult employment history. It is especially important to include the address of the employer and how long you worked there.

If you have been employed as a coal miner, please be sure to say whether the mines you worked at were strip mines or underground mines.

| | Name and Address of Employer | Type of Industry | Occupation | Period of Employment Mo/Yr | Mo/Yr | Exposure to dust, gases or fumes? (Yes/No) |
|---|---|---|---|---|---|---|
| | Name: DANNY J FLEMING | | | Social Security Number: 404 60 0560 | | |
| 1. | THORTON KY ASBERRY COAL | COAL MINE | COAL MINER | 2/88 | 9/91 | Yes |
| 2. | WAYLAND KY WHIMPLER COAL CO | " | " | 2/85 | 2/88 | Yes |
| 3. | WHITESBURG KY EVERIDGE COAL CO | " | " | 1/80 | 2/85 | Yes |
| 4. | SCOTIA COAL CO | " | " | 1/73 | 1/77 | Yes |
| 5. | ACTION ENERGY | " | " | 1/68 | 1/73 | Yes |
| 6. | | | | | | |

I hereby certify that the information given me on and in connection with this form is true and correct to the best of my knowledge and belief.

Signature of Plaintiff: _Danny J Fleming_    Date: 2/23/95

Mailing Address: Gen Del    City and State: JACKHORN KY    Zip Code: 41825

A591

Validation of Pulmonary Function and
Arterial Blood Gas Studies

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

MAY 3 1 1995

| Miner's Name | Social Security Number: |
|---|---|
| Fleming, Joseph | 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 |
| Claims Examiner: | Office: PI |

## VENTILATORY STUDIES

Date of Test: 4-25-95

☒ Vents are acceptable

☐ Vents are not acceptable*

☐ Insufficient number of FVC, FEV, or MVV
Tracings without explanation for deficiency.
☐ Tracings improperly identified.
☐ Tracings are not legible.
☐ Report does not include tracings.
☐ Equipment does not meet specifications.
☐ Less than optimal effort, ccooperation and comprehension.
☐ Equipment not approved by NIOSH.
☐ Studies improperly performed.

**Test Results:**
(If different than reported)

FVC in L/BTPS: _____

$FEV_1$/FVC in L/BTPS: _____

MVV in L BTPS/Min: _____

Explain: _____

## ARTERIAL BLOOD GAS STUDIES

Date of Test: _____

Test is technically acceptable:

☐ Yes      ☐ No*

If test is not acceptable, indicate reason:

☐ Venous sample    ☐ See explanation

**Test Results:**

Resting: _____ Exercise: _____

$PO_2$ _____ mmHg $PCO_2$ _____ mmHg

pH _____

Explain: _____

## OTHER PULMONARY FUNCTION STUDIES

Date of Test: _____

Name Of Test: _____

Test Results: _____

Test is technically acceptable:

☐ Yes      ☐ No*

If test is not acceptable, indicate reason:

_____

PHYSICIAN CONSULTANT: **N. K. BURKI, M.D., Ph.D.**
(Name-print or type)

(Signature)

5/20/95
(Date)

*Test does not meet the technical quality standards applicable at the time the evidence was submitted. (Sec. 727.206, 410.430, 718.103, 718.105, Appendices B and C.)

Form CM-1104
Rev. Nov. 1988

1.28

 Report of Ventilatory Study

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



**Note:** This report is authorized by law (30 USC, 901 et seq.). The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security Number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

OMB No. 1215-0090
Expires: 01-31-90

**Instructions:** Please submit three tracings for each test performed, and record the highest values of the three below. The study must include results of the $FEV_1$ and the FVC or MVV (MBC), or both. If the MVV (MBC) is reported, the results of the test shall be obtained independently, rather than calculated from the $FEV_1$ (Note: Two MVV (MBC) tracings are sufficient if the results are within 5% of each other). Each tracing must be identified with patient's name and Social Security Number/DOL Claim Number. If a bronchodilator is administered, values obtained both before and after administration of the bronchodilator must be entered and the significance of the results obtained explained in item 10. Complete instructions and standards for administration of these tests may be found in 20 CFR Part 718, Subpart B, 718.103, and Appendix B, and are summarized on Form CM-954a.

| 1. Name of Miner (First, middle, last) | 2. Social Security Number or DOL Claim Number: | 3. Date and Time of Test |
|---|---|---|
| Joseph Fleming | 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 | 4/25/95  9:40  MM DD YY  a.m. ☒ p.m. |

| 4. Age: | 5. Sex: | 8. Circle as appropriate (if "poor", explain in No. 10, "Additional Comments") |
|---|---|---|
| 49 | Male | Miner's Cooperation:  Good  (Fair)  Poor |
| 6. Height (inches): | 7. Weight: | Miner's ability to understand instructions and follow directions:  (Good)  Fair  Poor |
| 68 3/4 | 147 | |

| 9. (a) Type of Test | (b) Observed Values BEFORE Bronchodilator (Corrected to BTPS) | Observed Values AFTER Bronchodilator, if Given (Corrected to BTPS) | (c) Predicted Normal Values |
|---|---|---|---|
| $FEV_1$ (in liters/second) | 2.02 | 1.92 | 3.59    56% |
| MVV (in liters/minute) | 77.81 | 80.38 | 143.5    54% |
| FVC (in liters) | 4.44 | 4.57 | 4.51    98% |

10. Additional Comments: (For example - note any dyspnea; use of bronchodilators; reason for failure to complete a test, etc.)

| 11. (a) Type of machine used (Trade name) | (b) Rate of paper flow | (c) Temperature of Equipment |
|---|---|---|
| Puritan Bennett PB900A | MVV12SEC | Pre-Set |

| 12. Facility where test performed | 13. Print or type name of technician administering test |
|---|---|
| Hazard Clinic | Betty J. Holliday |

I certify that these ventilatory studies were conducted and reported in compliance with specifications and instructions provided by the Department of Labor. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

| Mitchell Wicker, Jr., M.D. | | 4/25/9-5 |
|---|---|---|
| Print or Type Name of Physician | Physician's Signature | Date    7.27 |

THE PULMONARY FUNCTION STUDY TRACINGS/EKG
GRAPHS WERE NOT SUITABLE FOR PHOTOCOPYING.

THE ORIGINAL TRACINGS/GRAPHS ARE INCLUDED
IN THE FORMAL RECORD.

## PULMONARY & INTERNAL MEDICINE ASSOCIATES, P.S.C.

(502) 587-0915

FAX (502) 561-6418

| INTERNAL MEDICINE | PULMONARY DISEASES |
|---|---|
| JAMES L. BERGOT, JR., M.D. | OCCUPATIONAL PULMONARY DISEASES |
| MILES S. SNOWDEN, M.D. | JUDAH L. SKOLNICK, M.D. |
| CHARLES F. BOWLDS, M.D. | BARRY S. STOLER, M.D. |
| MELISSA T. BARRETT, M.D. | JOHN A. LLOYD, M.D. |
| MARY S. LEWIS, M.D. | S. LYLE GRAHAM, M.D. |
| | ROBERT W. POWELL, M.D. |
| | JOEL HOROWITZ, M.D. |
| | CHRISTOPHER B. HOWERTON, M.D. |
| OCCUPATIONAL PULMONARY DISEASES | J. WESLEY McCONNELL, M.D. |
| WILLIAM H. ANDERSON, M.D. | KENNETH C. ANDERSON, M.D. |

March 31, 1995

Paul E. Jones, Attorney
Baird, Baird, Baird and Jones
P.O. Box 351
Pikeville, Kentucky 41502

RE: Danny Joseph Fleming
SSN: 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

Dear Mr. Jones,

You have asked me to refer to my examination of 05/14/91 and answer the so called four smoking questions.  Yes, it is medically feasible with any degree of medical certainty to distinguish between the pulmonary disability caused by cigarette smoking as opposed to that caused by exposure to coal mine dust.  It is possible with any degree of medical certainty to distinguish between this claimant's pulmonary disability caused by cigarette smoking as opposed to coal mine dust based on the medical evidence especially since as is our usual custom we did a residual volume.  I do have an opinion as to the origin of the pulmonary disability with in the degree of medical probability and/or certainty especially since we did the residual volume.  That opinion is that since his residual volume was 189 percent of predicted this means that he had panlobular and centrilobular emphysema which is the type that occurs as a consequence of cigarette smoking.  Thus his emphysema is as result of his cigarette smoking and is not related to his pneumoconiosis or to his having been a coal miner or having breathed mine dust.  The above can be stated with a high degree of medical certainty.

Very Sincerely Yours,

William H. Anderson, M.D./map

224 EAST BROADWAY, SUITE 700
LOUISVILLE, KENTUCKY 40202
(502) 587-0915

4003 KRESGE WAY, SUITE 338
LOUISVILLE, KENTUCKY 40207
(502) 587-0915

207 SPARKS AVENUE, SUITE 406
JEFFERSONVILLE, INDIANA 47130
(812) 283-7818

A595

BAIRD, BAIRD, BAIRD & JONES, P. S. C.

ATTORNEYS AT LAW

415 SECOND STREET

P. O. BOX 351

PIKEVILLE, KENTUCKY 41502

WILLIAM J. BAIRD (1913-1987)
WILLIAM J. BAIRD, III
JOHN H. BAIRD
CHARLES J. BAIRD
PAUL E. JONES
TERRI SMITH WALTERS
JAMES B. RATLIFF
RUSSELL H. DAVIS, JR.
BILLY R. SHELTON
SAM A. CARTER
LOIS A. KITTS

TELEPHONE 606-437-6276
TELECOPIER 606-437-6383

TAX I.D. NUMBER
61-0974362

November 30, 1994

Ms. Rhonda Epling
Claims Examiner
U. S. Department of Labor
ESA/OWCP/DCMWC
334 Main St., 5th Floor
Pikeville, KY  41501

                      RE:   Joseph Fleming v.
                            Aberry Coal
                            Claim No. 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

Dear Ms. Epling:

We represent Aberry Coal through Underwriters Safety & Claims in
the Federal O. D. Claim filed by Joseph Fleming.  We are enclos-
ing Operator Response which we desire to file.  Please be
advised that we are contesting the issue of statute of limita-
tions.

Please advise how the above employer was named as responsible
operator.  We request an informal conference.

We would appreciate you noting the undersigned as attorneys of
record for this company and keeping us advised as to all further
proceedings.

                      Very truly yours,

                      Paul E. Jones

PEJ/tjr
Enclosure
cc:  Mr. Joseph Fleming
     Ms. Toni Mazzoli
     Mr. Bob Kulak

1.25.1

OMB No. 44-R1531

**U.S. DEPARTMENT OF LABOR**
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

**OPERATOR RESPONSE**

| Miner's Name | Claim Type | Claim Number |
|---|---|---|
| JOSEPH FLEMING | | 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 |

*This report is authorized by the Black Lung Benefits Act. (30 U.S.C. 901 et seq.)  While you are not required to respond, your cooperation is needed to expedite the processing of this claim.*

## ACCEPTANCE OF LIABILITY

[X] This firm is the responsible operator within the meaning of the Black Lung Benefits Act.

## CONTROVERSION OF LIABILITY

This firm is not the responsible operator because:

[ ] The miner was never an employee of this firm.

[ ] This firm was not the operator with whom the miner had the most recent period of cumulative employment of one year

[ ] This firm was not an operator of a mine or other covered facility for any period after June 30, 1973.

[ ] The miner was not employed by this firm during the times alleged on the claim form.  His/her periods of employment with is firm were:

1.  From _____ to _____ Name of Mine _____

   Location of Mine _____  _____
   (County)                                              (State)

2.  From _____ to _____ Name of Mine _____

   Location of Mine _____  _____
   (County)                                              (State)

[X] Other *(Explain):* _____ Medical Examination Requested _____

   Informal Conference Requested

   _____

   _____

   _____

| Name & Address of Firm | Signature | Date |
|---|---|---|
| **Baird, Baird, Baird & Jones, P.S.C.** <br> **P.O. Box 351** <br> **Pikeville, Kentucky 41502** | | 11/30/94 |
| | Title <br> ATTORNEY FOR ABERRY COAL | |

Form - Computer #BBBJTEVOR

Form CM-970a

1.25.2

A597

**U.S. DEPARTMENT OF LABOR**

Employment Standards Administration
Office of Workers' Compensation
Division of Coal Mine Workers' Compensation
334 Main St., 5th Floor
Pikeville, KY  41501



November 9, 1994

Phone: (606) 432-0116
1-800-366-4599

NOTICE OF CLAIM

| Coal Mine Operator | Miner's Name |
|---|---|
| Aberry Coal, Inc. | Joseph Fleming |
| **Address(St.No.,City, State,Zip)** | **Claimant's Name** |
| P.O. Box 426 | Joseph Fleming |
| Pound, VA   24279 | |
| | **Address(St.No.,City,State,Zip)** |
| | General Delivery |
| | Jackhorn, KY  41825 |
| **Name of Insurance Carrier** | |
| Security Insurance Co. of Hartford | |
| **Address(St.,No.,City,State,Zip)** | **Claim Number** |
| 9 Farm Springs Drive | |
| Farmington, CT   06032 | 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 |

We have received a claim for benefits from the above named claimant under the Federal Mine Safety and Health Act of 1977, as amended (30 U.S.C. 901 et seq.). The claim is presently being developed to determine the claimant's eligibility for benefits. Enclosed is a copy of the evidence developed to date.

In accordance with Section 725.412 of Title 20 of the Code of Federal Regulations (1979), this is to advise you that your company has been identified as the putative responsible operator in this claim, based on the history of coal mine employment and/or other evidence. If it should be determined that the claimant is entitled to benefits and that you are the responsible operator, you would be responsible for the payment of all benefits, fees, charges, and reasonable expenses incurred by the claimant in developing this claim.

You must respond to this office within thirty (30) days from the date of your receipt of this notice.

CM-971a
11/78

1.34

A598

If you agree to accept liability, please mark the applicable section on the enclosed Operator Response Form (CM-970a). This does not mean you accept eligibility of the claimant for benefits, only that you are accepting liability as the responsible operator within the meaning of the Act, should the claimant subsequently be found entitled to benefits. If liability is controverted, documentation supporting your position must accompany the CM-970a.

In regard to the question of the claimant's eligibility for benefits, you have the right to have the miner examined at your expense by a physician of your choice. If you desire to do so arrangements should be made which are convenient to the parties concerned. All relevant evidence, including medical evidence, must be submitted to this office within a reasonable time from the date of this notice. [Section 725.414(b) of Title 20 of the Code of Federal Regulations.]

If it should be determined that the claimant is entitled to benefits and that you are the responsible operator, you shall have thirty (30) days from the date of the District Director's notice of initial finding of eligibility in which to accept or contest such finding and to submit any available evidence not previously submitted to the District Director [Section 725.414(b) of Title 20 of the Code of Federal Regulations.]

Sincerely,

Rhonda Epling

Rhonda Epling
Claims Examiner

cc: claimant; Aberry Coal, Inc.; Security Insurance Co. of Hartford;

Enclosures: Copy of claim and supporting documents
            Form CM-970a (Operator Response Form)

**U.S. DEPARTMENT OF LABOR**
                          Employment Standards Administration
                          Office of Workers' Compensation
                          Division of Coal Mine Workers' Compensation
                          334 Main St., 5th Floor
                          Pikeville, KY  41501
May 1, 1995               Phone: (606) 432-0116
                                 1-800-366-4599

                          MINER: Joseph Fleming
                          SSN: 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

Joseph Fleming
General Delivery
Jackhorn, KY  41825

Dear Mr. Fleming:

We have carefully reviewed the evidence in your claim under the Black
Lung Benefits Act.  This evidence does not show that you qualify for
black lung benefits.  Your claim is therefore denied.

To qualify for black lung benefits, you must show that:

    1.    You have pneumoconiosis (black lung disease); and

    2.    the disease was caused at least in part by your coal mine
          work; and

    3.    the disease has caused total disability.

You must meet all three of the above conditions to qualify for black
lung benefits.

You do not qualify for benefits because the evidence in your claim

    1.    (X)    does not show that you have pneumoconiosis (black Lung
                 disease);

    2.    (X)    does not show that the disease was caused at least in
                 part by coal mine work:

    3.    (X)    does not show that you are totally disabled by the
                 disease.  Totally disabled means you are unable to
                 perform the type of work required by your coal mine work
                 because of a breathing impairment caused by
                 pneumoconiosis (black lung disease).  The results of your
                 medical evidence are shown on the enclosed explanation.

                                              CM-1000a
                                              01/82

                                                              1.33

A600

Miner:  Joseph Fleming
  SSN:  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
 Page:  2

If you disagree with this determination you may pursue your claim
further if you:

(1)  SUBMIT ADDITIONAL EVIDENCE

You may refer to the enclosed "Guide for Submitting Additional
Evidence (CM-1000g)" on which we have checked the items that
will be helpful in pursuing your claim.  You must send the
evidence to us within sixty (60) days of the date of this
letter.  If you need more time, you must request approval from
this office.

OR

(2)  REQUEST A HEARING ON YOUR CLAIM

Your claim can be scheduled for a formal hearing conducted by
the Office of Administrative Law Judges of the United States
Department of Labor.  An informal conference may be scheduled
prior to the hearing if it appears a conference would be
helpful in resolving your claim.  If you want a hearing, you
must make your request within sixty (60) days of the date of
this letter unless you notify us that you intend to submit
additional evidence.

If you intend to pursue your claim, you may wish to obtain a
representative in order to be sure that your rights are fully protected.
We will furnish copies of all the evidence in your claim to you or any
representative you choose.  If you obtain a representative, you must
complete the enclosed Authorization (CM-1078) and return it to this
office.

NOTE:  If you do not take any action within sixty (60) days, your claim
will be considered abandoned and the denial will become final.  However,
you have the right to ask for reconsideration of your claim if you write
to this office within one (1) year from the date the denial becomes
final, but only if your condition has changed, or a mistake was made
when your claim was denied.  If you request reconsideration, you must
submit proof to support your request.

Sincerely,

*Kimberly Tackett*

Kimberly Tackett
Claims Examiner

Enclosures:  CM-1000g, CM-998, CM-1078

cc:  Baird, Baird, Baird & Jones, PSC
     Security Insurance Co. of Hartford
     Aberry Coal, Inc.

A601



**U.S. Department of Labor**    Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

GUIDE FOR SUBMITTING
ADDITIONAL EVIDENCE

This is a guide to be used in submitting additional evidence needed in order to determine whether you qualify for benefits under the Black Lung Benefits Amendments of 1981. Please read carefully the item(s) checked on pages 1, 2 and/or 3 of this guide if you plan to send in more evidence.

EVIDENCE OF COAL MINE WORK: The evidence in your claim contains proof of _____8+_____ years of coal mine work. This may affect the use of the presumption described in item 2b of the guide. If you have additional evidence of coal mine employment, you should submit it to this office.

MEDICAL EVIDENCE: The items checked below show types of medical evidence needed to support your claim. If you plan to submit medical evidence and you contact a doctor, you should show the doctor this form. To establish eligibility for benefits you need:

(X)  1.  PROOF OF PNEUMOCONIOSIS  (BLACK LUNG DISEASE)
Pneumoconiosis (black lung disease) means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.

The presence of black lung disease may be established by:

a.  Chest x-ray; or

b.  Pathologic tissue examination (biopsy; or autopsy, in the case of a deceased miner); or

c.  A doctor's report giving a diagnosis of black lung disease even though a chest x-ray did not show the disease (this diagnosis must be based on test results, physical findings, knowledge of the miner's medical and work histories and must be supported by a reasoned medical opinion).

(X)  2.  PROOF THAT THE DISEASE WAS CAUSED BY COAL MINE WORK
This may be established by:

a.  A doctor's opinion based upon knowledge of the miner's condition and complete work history, including both coal mine and noncoal mine work; or

CM-1000g
Rev. July 1988

A602



-2-

b.  PRESUMPTION:  If a miner was engaged in coal mine work for at least ten years, it may be presumed that the pneumoconiosis (black lung disease) (if any) was caused by the coal mine work; or

c.  (In the case of a deceased miner)
affidavits, testimony or other evidence which shows substantial dust exposure in the miner's coal mine work and no other substantial source of the pneumoconiosis (black lung disese is apparent.

3.  PROOF OF TOTAL DISABILITY OR DEATH DUE TO PNEUMOCONIOSIS (BLACK LUNG DISEASE)  This may be established by:

a.  X-ray or other evidence confirming the presence of complicated pneumoconiosis (the most severe form of black lung disease); or

*b.  Breathing test (ventilatory study) results whicih meet the standards described in the enclosed form; or

*c.  Arterial blood gas study results (at rest or after exercise) which meet the total disability standards of the Regulations; or

*d.  Evidence of pneumoconiosis with evidence of cor pulmonale with right-sided congestive heart failure; or

*e.  A reasoned medical opinioon establishing that the miner has or had a breathing impairment which prevents or prevented tasks required by the miner's coal mine work.

A reasoned medical opinion of one which considers the physical requirement of the miner's coal mine work, and, considering test results, physical examination, and medical history, specifies the limitations on physical activity imposed on the miner by the breathing impairment.

*To show that you are totally disabled by black lung disease, this evidence should be accompanied by a reasoned medical opinion which, considering the tests results, physical examination and medical history, specifies the relationship between the diagnosed black lung disease and the breathing impairment.

OR IN THE CASE OF SURVIVOR'S CLAIMS:

a.  Autopsy or other evidence that pneumoconiosis (black lung disease) was the cause of death, or that the cause of death was significantly related to pneumoconiosis (black lung disease).

-3-

b. PRESUMPTION: If the miner was employed for 25 years or more in coal mine work before June 30, 1971, and died on or before March 1, 1978, the eligible survivors are entitled to benefits, unless it is established that the miner was not partially or totally disabled at time of death. (Applies only to claims filed prior to July 1, 1982).

RELATIONSHIP AND DEPENDENCY  (Survivors' Claims only)

To establish your eligibility you must send in

( )  4.   PROOF THAT YOU ARE AN ELIGIBLE SURVIVOR OF A COAL MINER

Eligible survivors are the miner's spouse, surviving divorced spouse, children, parents, brothers, and sisters.  Relationship can be proven by copies of marriage certificates, birth certificates, divorce decrees, adoption papers, etc.

( )  5.   PROOF THAT YOU WERE DEPENDENT ON THE MINER AT THE TIME OF DEATH

You must be legal dependent of the deceased miner, which may be established by the requirements below:

a.   Surviving spouse-must be married to the miner at the time of the miner's death.

b.   Divorced spouse-must be receiving support from the miner at the time of the miner's death.

c.   Child-must be under age 18, or under age 23 and a full-time student, or be totally disabled.

d.   Parent, sister, or brother-must be total dependent on the miner at the time of the miner's death.

These are the basic dependency requirements.  You must meet the full requirements of the Black Lung Benefits Act and applicable requirements to qualify for benefits.

NOTE:  You must meet **both** relationship and dependency requirements to qualify for benefits.

A604

To Miner: ___Joseph Fleming___

Claim Number: ___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___

(X)  The ventilatory study (breathing test) performed on 11/15/94 to
     measure your breathing capacity indicated that you have

          a measured one second forced expiratory volume (FEV$_1$) of
          __2.22*__ Liters per second and

          a maximum breathing capacity (MVV or MBC) of __78__ Liters per
          minute and/or

          a maximum forced vital capacity (FVC) of __4.34__ Liters and
          FEV$_1$/FVC ratio of __51__ %.

     In order to establish total disability under the law a miner of
     your height, __68 3/4__ inches and age __49__ must demonstrate by
     ventilatory study that his or her breathing capacity has been
     reduced to a level where:

          the FEV$_1$ does not exceed __2.14__ Liters per second and:

          the MVV or MBC does not exceed __86__ Liters per minute, or

          the FVC does not exceed __2.70__ Liters, or

          the FEV$_1$/FVC ratio must be equal to or less than 55% or

     that the pneumoconiosis condition has caused a breathing impairment
     which is the medical equivalent of the above standards.

(X)  The Arterial Blood-Gas Study performed on __11/15/94__ to detect
     any impairment in alveolar gas exchange indicated the following:

|           | At Rest | During Exercise |
|-----------|---------|-----------------|
| pCO$_2$   | 44.3    | **              |
| PO$_2$    | 67.9    | **              |

     In order to establish total disability under the Law, a miner with
     a pCO$_2$ value of 44.3| ** must have a PO$_2$ value of 60.0| ** or
     lower, either at rest or during exercise.

*The examining physician noted he felt your effort in performing this
test was not adequate for accurately measuring your breathing capacity;
also, the threshold requirement of pneumoconiosis has not been
established.

**The doctor indicated you were unable to undergo the exercise arterial
blood-gas test because of your back injury.

                                                    CM-998
                                                    02/86

A605

# BAIRD, BAIRD, BAIRD & JONES, P. S. C.

ATTORNEYS AT LAW

415 SECOND STREET

P. O. BOX 351

PIKEVILLE, KENTUCKY 41502

WILLIAM J. BAIRD (1913-1987)
WILLIAM J. BAIRD, III
JOHN H. BAIRD
CHARLES J. BAIRD
PAUL E. JONES
TERRI SMITH WALTERS
JAMES B. RATLIFF
RUSSELL H. DAVIS, JR.
BILLY R. SHELTON
SAM A. CARTER
LOIS A. KITTS

TELEPHONE 606-437-6276
TELECOPIER 606-437-6383

TAX I.D. NUMBER
61-0974362

June 6, 1995

Ms. Rhonda Epling
Claims Examiner
U. S. Department of Labor
ESA/OWCP/DCMWC
Pikeville, Kentucky  41501

RE:   Joseph Danny Fleming v.
Aberry Coal
Claim No. 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

Dear Ms. Epling:

We are enclosing copy of x-ray interpretation of Dr. Harold B.
Spitz dated May 29, 1995, which we would appreciate your filing
and making a part of the record in the above styled claim.

Thank you for your attention to this matter.

Very truly yours,

Lois A. Kitts

LAK/dt
Enclosure
cc:  Mr. Joseph D. Fleming
     Ms. Toni Mazzoli
     Mr. Bob Kulak

WORKER'S Social Security Number **7047650560**    NAME **Danny Fleming**

FACILITY IDENTIFICATION **Lexington Clinic**

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|
| MONTH DAY YR | [1] 2 3  U/R   If Not Grade 1 Give Reason: | YES ☐ Proceed to Section 5    NO [X] Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☐  COMPLETE 2B and 2C   NO [X]  PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY    SECONDARY

| p | s | | p | s |
| q | t | | q | t |
| r | u | | r | u |

b. ZONES

R   L

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**

SIZE [O] A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☐  COMPLETE 3B, 3C and 3D   NO [X]  PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE [O] R L

b. COSTOPHRENIC ANGLE
SITE [O] R L

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE | O R | | O L |
| IN PROFILE | i. WIDTH | O A B C | | O A B C |
| | ii. EXTENT | 0 1 2 3 | | 0 1 2 3 |
| FACE ON | iii. EXTENT | 0 1 2 3 | | 0 1 2 3 |

b. DIFFUSE

| | SITE | O R | | O L |
| IN PROFILE | i. WIDTH | O A B C | | O A B C |
| | ii. EXTENT | 0 1 2 3 | | 0 1 2 3 |
| FACE ON | iii. EXTENT | 0 1 2 3 | | 0 1 2 3 |

**3D. PLEURAL CALCIFICATION**

SITE [O] R  EXTENT

| a. DIAPHRAGM | 0 1 2 3 |
| b. WALL | 0 1 2 3 |
| c. OTHER SITES | 0 1 2 3 |

SITE [O] L  EXTENT

| a. DIAPHRAGM | 0 1 2 3 |
| b. WALL | 0 1 2 3 |
| c. OTHER SITES | 0 1 2 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**   YES [X]  COMPLETE 4B and 4C   NO ☐  PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | pi | px | rp | tb |

Report items which may be of present clinical significance in this section.    [OD]  (SPECIFY od.)

Date Personal Physician notified?
MONTH DAY YR

**4C. OTHER COMMENTS**

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?   YES NO   PROCEED TO SECTION 5

**5. FILM READER'S INITIALS** [HBS]

PHYSICIAN'S SOCIAL SECURITY NUMBER* **262626 9649**

DATE OF READING
MONTH DAY YR **16 15 95**

CERTIFIED B-READER

NAME **HAROLD B. SPITZ, M.D.**
**UNIVERSITY OF CINCINNATI HOSPITAL**
STREET ADDRESS    CITY    STATE    ZIP CODE
**DEPARTMENT OF RADIOLOGY**
**234 GOODMAN ST., M.L. 0742**
**CINCINNATI, OHIO  45267-0742**

YES [XX]

CDC/NIOSH (M) 2.8
REV. 4/80
MODIFIED

# University Radiology Associates of Cincinnati, Inc.

May 29, 1995

Lois A. Kitts
Baird, Baird, Baird and Jones, P.S.C.
415 Second Street
P.O. Box 351
Pikeville, KY 41502

re: Danny Fleming
    SS# 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

Dear Ms. Kitts:

Supplier:                  Lexington Clinic,
                           Lexington, KY
Date:                      2-23-95
Identification:            8404980, SS# 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 & name
Film and Quality:          PA chest--good quality

The bones, soft tissues, heart and aorta are normal.
There is decreased vascularity in both upper lobes and there
may be some bullae present.  Otherwise, the lungs are clear.
The diaphragm is low and flat.  The costophrenic angles are
clear.

IMPRESSION:
1.  NO EVIDENCE OF COAL WORKERS' PNEUMOCONIOSIS.
2.  CHRONIC OBSTRUCTIVE PULMONARY DISEASE WITH SOME
    UPPER LOBE BULLAE.

Harold B. Spitz, M.D.

HBS:mm
enclosures

A608

# BAIRD, BAIRD, BAIRD & JONES, P. S. C.

### ATTORNEYS AT LAW
### 415 SECOND STREET
### P. O. BOX 351
### PIKEVILLE, KENTUCKY 41502

WILLIAM J. BAIRD (1913-1987)
WILLIAM J. BAIRD, III
JOHN H. BAIRD
CHARLES J. BAIRD
PAUL E. JONES
TERRI SMITH WALTERS
JAMES B. RATLIFF
RUSSELL H. DAVIS, JR.
BILLY R. SHELTON
SAM A. CARTER
LOIS A. KITTS

TELEPHONE 606-437-6276
TELECOPIER 606-437-6383

TAX I.D. NUMBER
61-0974362

June 5, 1995

Ms. Rhonda Epling
Claims Examiner
U. S. Department of Labor
ESA/OWCP/DCMWC
334 East Main Street, 5th Floor
Pikeville, KY  41501

RE:   Joseph Danny Fleming v.
Aberry Coal
Claim No. 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

Dear Ms. Epling:

We are enclosing copy of x-ray interpretation of Dr. Jerome F.
Wiot dated May 18, 1995, which we would appreciate your filing
and making a part of the record in the above styled claim.

Thank you for your attention to this matter.

Very truly yours,

Lois A. Kitts

LAK/dt
Enclosure
cc:  Mr. Joseph D. Fleming
     Ms. Toni Mazzoli
     Mr. Bob Kulak



| WORKER'S Social Security Number | NAME | FACILITY IDENTIFICATION |
|---|---|---|
| 4 6 4 6 0 0 5 6 5 | FLEMING, DANNY | LEXINGTON CLINIC |

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | If Not Grade 1 Give Reason: | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH DAY YR 0 2 2 3 9 5 | 1 ②2 3 U/R | | YES ☐ Proceed to Section 5   NO ☑ Proceed to Section 2 |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES ☐ COMPLETE 2B and 2C   NO ☑ PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY: p s q t r u
SECONDARY: p s q t r u

b. ZONES
R   L

c. PROFUSION
0/- 0/0 0/1
1/0 1/1 1/2
2/1 2/2 2/3
3/2 3/3 3/+

**2C. LARGE OPACITIES**

SIZE: O A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES ☐ COMPLETE 3B, 3C and 3D   NO ☑ PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE: O R L

b. COSTOPHRENIC ANGLE
SITE: O R L

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | O R | | O L |
|---|---|---|---|
| SITE | | | |
| IN PROFILE i. WIDTH | O A B C | | O A B C |
| ii. EXTENT | 0 1 2 3 | | 0 1 2 3 |
| FACE ON iii. EXTENT | 0 1 2 3 | | 0 1 2 3 |

b. DIFFUSE

| | O R | | O L |
|---|---|---|---|
| SITE | | | |
| IN PROFILE i. WIDTH | O A B C | | O A B C |
| ii. EXTENT | 0 1 2 3 | | 0 1 2 3 |
| FACE ON iii. EXTENT | 0 1 2 3 | | 0 1 2 3 |

**3D. PLEURAL CALCIFICATION**

| SITE | O R | EXTENT | | O L | EXTENT |
|---|---|---|---|---|---|
| a. DIAPHRAGM | | 0 1 2 3 | a. DIAPHRAGM | | 0 1 2 3 |
| b. WALL | | 0 1 2 3 | b. WALL | | 0 1 2 3 |
| c. OTHER SITES | | 0 1 2 3 | c. OTHER SITES | | 0 1 2 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**  YES ☑ COMPLETE 4B and 4C   NO ☐ PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

O ax bu ca cn co cp cv di ef e̶x̶ es fr hi ho id ih kl pi px rp tb

Report items which may be of present clinical significance in this section.  OD  (SPECIFY od.)

Date Personal Physician notified?
MONTH DAY YR

**4C. OTHER COMMENTS** _____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?  YES NO   PROCEED TO SECTION 5

**5. FILM READER'S INITIALS**  D F W

CERTIFIED B-READER

YES / X /

PHYSICIAN'S SOCIAL SECURITY NUMBER*  2 7 3 2 8 3 2 7 7 9

DATE OF READING
MONTH DAY YR
0 5 1 6 9 5

NAME
Jerome F. Wiot, M.D.
University Hospital
Department of Radiology
234 Goodman Street
Mail Location #742
Cincinnati, Ohio 45267

STREET ADDRESS   CITY   STATE   ZIP CODE

CDC/NIOSH (M) 2.8

1.19

A610

**JEROME F. WIOT, M.D.,**

University of Cincinnati
Department of Radiology
PO Box 670742
Cincinnati, Ohio 45267-0742
513-558-2489

May 18, 1995

Ms. Lois Kitts
Baird, Baird, Baird and Jones
415 Second Street
P.O. Box 351
Pikeville, KY 41502

RE:   Fleming, Danny
        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

Dear Ms. Kitts:

I have reviewed three PA chest x-rays of the above named patient, all dated 2/23/95 from Lexington Clinic marked with the patient's name and social security number.

The films are of acceptable quality by ILO standards.

There is no evidence of coal worker's pneumoconiosis. There is a suggestion of some emphysema, but the chest is otherwise unremarkable.

I have submitted a classification sheet indicating there is no evidence of coal worker's pneumoconiosis.

Sincerely,

Jerome F. Wiot, M.D.
Professor of Radiology

JFW:js
Enclosures



Roentgenographic Interpretation

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

OMB No. 1215-0090
Expires: 02-28-96

NOTE: This report is authorized by law. (30 U.S.C., 901 et. seq.) The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-ray | 1B. Miner's Social Security No. | 1C. Film Quality (If not Grade 1, Give Reason) |
|---|---|---|---|
| Fleming Joseph | 1 / 15 / 94 MO. DAY YR. | 2 0 4 6 0 0 5 6 | 1   2   3   U/R |

1C. Is Film C. (relately integrity? YES ☐  Proceed to Section 5  NO ☒ Complete Section 2A

2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis? YES ☐ Complete 2B and 2C  NO ☒ Proceed to Section 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY: p s / q t / r u
SECONDARY: p s / q t / r u

b. ZONES (R / L grid)

c. PROFUSION
| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**
# REREAD
SIZE  O  A  B  C    Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**
YES ☐ Complete 3B, 3C and 3D   NO ☒ Proceed to Section 4

**3B. PLEURAL THICKENING**
a. Diaphragm (plaque)
SITE  O  R  L
b. Costophrenic Angle
SITE  O  R  L

**3C. PLEURAL THICKENING ...Chest Wall**

a. CIRCUMSCRIBED (plaque)
SITE  O  R        O  L
In Profile:
i. Width    A B C        A B C
ii. Extent  0 1 2 3      0 1 2 3
Face On
iii. Extent 0 1 2 3      0 1 2 3

b. Diffuse
SITE  O  R        O  L
In Profile:
i. Width    A B C        A B C
ii. Extent  0 1 2 3      0 1 2 3
Face On
iii. Extent 0 1 2 3      0 1 2 3

**3D. PLEURAL CALCIFICATION**
SITE  O  R  EXTENT        O  L  EXTENT
a. Diaphragm ..........  0 1 2 3     a. Diaphragm ..........  0 1 2 3
b. Wall ..............   0 1 2 3     b. Wall ..............   0 1 2 3
c. Other Sites ........  0 1 2 3     c. Other Sites ........  0 1 2 3
Proceed to Section 4

**4A. ANY OTHER ABNORMALITIES?**
YES ☒ Complete 4B and 4C   NO ☐ Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**
O  ax  bu  ca  cn  co  cp  cv  di  ef  em  es  fr  hi  ho  id  ih  kl  pi  px  rp  tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION.  (Specify od.)
_Andray Areton ??_

Date Personal Physician notified?  Mo.  Day  Yr.

**4C. OTHER COMMENTS**

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?  Yes ☐ No ☒   Proceed to Section 5

**5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:** _____
DOL Medical Provider Number (if applicable): _____
Was film taken by a registered radiographer/radiographic technologist?  Yes ☐  No ☐   State _____
Name _____  Registration No. _____

**5B. Physician Interpreting Film (Print Name):** _____
Are you: Board-certified Radiologist? ☒ Yes ☐ No.  Board-eligible radiologist? ☐ Yes ☐ No.  B-reader? ☒ Yes ☐ No.

**5C.** I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE  _E. Nicholas Dwight M.D._
DATE OF READING  **DEC 0 7 1994** (Mo., Day, Yr.)

***** Public Burden Statement *****
We estimate that it will take an average of 5 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Office of IRM, Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0090), Washington, D.C. 20503.

DO NOT SEND THE COMPLETED FORM TO EIHER OF THESE OFFICES.

Form CM-933
Rev. Nov. 1992

## CURRICULUM VITAE
### E. NICHOLAS SARGENT, M.D., F.A.C.R., PROFESSOR EMERITUS

## PERSONAL INFORMATION

BUSINESS ADDRESS

15398 Tetilias Ct.
San Diego, CA. 92128

BUSINESS TELEPHONE

(619) 674-1405

HOME TELEPHONE

(619) 674-1405

## EDUCATION

UNIVERSITY
GRADUATE SCHOOL
MEDICAL SCHOOL

New York University, B.S. 1933-35
New York University, 1935-36
New York University, College of
   Medicine M.D., 1936-40

INTERNSHIP

Los Angeles County Hospital
   Los Angeles, Calif. 1940-41

RESIDENCIES

Kings County Hospital
   New York, 1941-42
Bellevue Hospital, New York, 1942
   (Interrupted by World War II)
St. Louis City Hospital, 1946-47
   Leroy Sante, M.D., Preceptor
Army School of Roentgenology and
   Mayo Clinic (during military
   service)

## HONORS

Citation and Plaque - Orange County
   Board of Supervisors, 1967
Certificate of Merit Radiology
   Presentation, International
   Congress of Cytology, 1972
Citation and Plaque - Southern California
   Radiology Society, 1976
Macklin Day, Lecturer, U.S. Navy
   Portsmouth, VA, November 1977
Leroy Sante Memorial Lecture, St. louis,
   Missouri, April, 1981
Certificate of Appreciation - Centers
   for Disease Control, National
   Institute for Occupational Safety
   and Health (April 3, 1983-
   December 23, 1986)
Macklin Day, Lecturer, U.S. Navy
   Portsmouth, VA, November, 1986
Organizing committee member & participant
   Section Chairman VIIth  Int'l
   Pneumoconiosis Conference, U.S.
   Dept. of Health & Human Servces,
   August 23-26, 1988, Pittsburgh, PA

NIOSH - Centers for Disease Control, Atlant
   Georgia. Nominated for Alice
   Hamilton Award for Occupational
   Safety and Health Symbolizing Leade
   ship through Science, and membersh:
   in Alice Hamilton Club. 1991

1.17

E. NICHOLAS SARGENT, M.D., F.A.C.R.                                    2

LICENSURE                          California

BOARD CERTIFICATION                American Board of Radiology, 1947

PROFESSIONAL BACKGROUND

ACADEMIC APPOINTMENTS              Professor of Radiology, USC School
                                      1967 - Present Professor Emeritus

HOSPITAL AFFILIATION               LAC/USC Medical Center
                                      Chief of Radiology Section (Retir

SPECIFIC TEACHING                  Teaching and Lectures - Medical
RESPONSIBILITIES (PAST)               students, residents in radiology
                                      Post-graduate radiologists and
                                      pulmonary physicians, USC School
                                      of Medicine

(PAST) SPECIFIC
ADMINISTRATIVE RESPONSIBILITIES    Director, Radiology Department,
                                      Orange County Medical Center,
                                      1963 - 1967
                                   Board of Directors, Research & Educati
                                      Foundation, Orange County Medica
                                      Center, Orange, CA 1964-1967
                                   Director, Radiology Technician Student
                                      Training, Orange County Medical
                                      Center, Orange, CA 1960 - 1967
                                   Program Chairman, Postgraduate
                                      Radiology Education, University
                                      of Southern California
                                   Member, Intern Advisory Committee
                                      LAC/USC Medical Center
                                   Member, Radiology Residency Selection
                                      Committee Directory, Radiology
                                      Internship Program LAC/USC Medic
                                      Center
                                   Co-Director of Chest Radiology Section
                                      LAC/USC Medical Center, 1967-
                                      present
                                   Director, Radiology Section, Clinical
                                      Research Center, LAC/USC Medical
                                      Center
                                   Chairman, Professional Staff Associati
                                      Credentials Committee for
                                      Radiology

A614

E. NICHOLAS SARGENT, M.D., F.A.C.R.                                    3

PROFESSIONAL BACKGROUND   (cont.d)

(PAST) SPECIFIC ADMINISTRATIVE
RESPONSIBILITIES

Member, Ad Hoc Committee Appointments
    and Promotions, LAC/USC Medical
    Center
Member, Audit Committee, Radiology
    Department, LAC/USC Medical Center
Member LAC/USC Medical Utilization
    Committee
Norris Library Liason - Department
    of Radiology

(PAST) OTHER SIGNIFICANT
ACTIVITIES

Chairman, Library Committee, Orange
    County Medical Center, Orange,
    Calif.  1962-1967
Chairman, Professional Services
    Association, Full-time staff,
    Orange, CA  1964-1967
Isotope Committee & Cancer Committee
    Orange County Medical Center
    Orange, Calif.  1963-1967
Editorial Staff, Orange County Medical
    Association Bulletin, 1964-1967
Lecturer, Radiology Technology,
    Orange Coast College, Costa Mesa,
    Calif.  1964-1967
College Advisory Committee, Orange
    Coast College, 1963-1964
Commission on Education, American
    College of Radiology 1969-1970
Syllabus on Technique for Chest
    Radiography prepared for
    NIOSH under Amergican College
    of Radiology, 1975
Editorial Committee of Western Journal
    of Medicine, Epitomes of Progress
    Radiology
Member of Commission on Radiology
    Technology, American College
    of Radiology
Member American College of Radiology
    Committee for Study of Reactions
    to Opaque Radiographic Diagnostic
    Media

A615

E. NICHOLAS SARGENT, M.D., F.A.C.R.                                    4

<u>PROFESSIONAL BACKGROUND</u>  (cont.)

(PAST) OTHER SIGNIFICANT
ACTIVITIES

Program Chairman, Postgraduate
    Radiology Education, University of
    California, School of Medicine
Book Reviewer, California Medicine
Member of Radiation Advisory Com-
    mittee, California Medical Associ-
    ation
Member of Radiation Safety & Equip-
    ment Committee, Los Angeles
    Radiological Society
Member Technologist Advisory Com-
    mittee California Radiology
    Society
Course Director, Medical-Legal
    Aspects of Asbestos Related
    Disase, USC School of Medicine,
    USC School of Law, National
    Cancer Institute, 1980
American Board of Radiology,
    Examiner for Certification
American Society X-ray Technologists
    Member National Program Inspection
    Team

(PRESENT) OTHER
SIGNIFICANT ACTIVITIES

Professional Staff Association
    Credentials Committee
Asbestos Working Group, Task Force on
    Pneumoconiosis, American College
    Radiology
American Journal of Roentgenology
    and Radiology - Critical Reviewer
    and abstractor

SOCIETY MEMBERSHIPS

(PAST)

Orange County Medical Association
Orange County Radiology Society
    Secretary 1964
    Vice President 1965
    President 1966
    Chairman, Education Committee,
    1964 - 1967

A616

PROFESSIONAL BACKGROUND   (cont.)

SOCIETY MEMBERSHIPS                Los Angeles County Radiology Society
(PAST)                             Los Angeles County Medical Association
                                   California Medical Association
                                   Southern California Radiological
                                         Society
                                         Program Chairman 1970-1971
                                         Secretary-Treasurer 1971-1972
                                         Executive Committee 1972-present
                                         President 1975-1976
                                   American Medical Association
                                   New York Academy of Sciences
                                   Society of Gastrointestinal Radiologists
                                         Founding Member
                                   American Thoracic Radiology Society
                                   American Thoracic Society

(PRESENT)                          American College of Radiology, Fellow
                                   American Roentgen Ray Society
                                   Radiological Society of North America
                                   Faculty Member, Fleischner Society
                                   Faculty Member, American College of
                                         Radiology, Pneumoconiosis Seminars
                                         1970 - present
                                   American Thoracic Radiology Society

CONSULTANTSHIPS (PAST)             Veterans Administration Hospital
                                         Long Beach, California
                                   Barlow Hospital, Los Angeles, Calif.
                                   Southern California Permanente
                                         Medical Group (Asbestos-Related
                                         Pulmonary Disease)
                                   Kenneth Norris Jr. Cancer Hospital
                                         Los Angeles, Calif.

NATIONAL                           Public Health Service Panel of
                                         Consultant Radiologists,
(PRESENT)                                Pneumoconiosis Program
                                   Consultant, National Institute for
                                         Occupational Safety and Health
                                         Department of Health, Education
                                         and Welfare, Public Health Service

                                   Consultant, Navy Asbestos Medical
                                         Surveillance B Reader Program,
                                         U.S. Department of the Navy,
                                         Norfolk, VA.

                                   Consultant, Oak Ridge Associated
                                         Universities Center for
                                         Epidemiologic Research for the
                                         Beryllium Workers Followup
                                         Study, Medical Sciences
                                         Division, Oak Ridge Associated
                                         Universities, Oak Ridge, TN

K. NICHOLAS SARGENT, M.D., F.A.C.R.                                      6

PROFESSIONAL BACKGROUND   (cont.)

NATIONAL

(PRESENT)                          Member, Task Force on Pneumoconiosis
                                     Quality Control Committee and
                                     Program Committee, American
                                     College of Radiology
                                   Executive Committee member, Task
                                     Force on Pneumoconiosis, American
                                     College of Radiology
                                   Chairman, X-ray Technology Committee
                                     for Pneumoconiosis - Task Force
                                     American College of Radiology

(PAST)                             Consultant-Lecturer, Radiology
                                     Services, National Naval Medical
                                     Center, Bethesda, Md.
                                   Consultant, Asbestos Medical Surveil-
                                     lance Committee, United States
                                     Navy
                                   Member, National Chest Panel for
                                     Efficacy of Chest Radiology
                                     Examinations, Bureau of
                                     Radiological Health
                                   Consultant, Department of Preventive
                                     Medicine and Biometrics, USU
                                     School of Medicine - (Armed
                                     Services) Bethesada, Md.
                                   Chairman, X-ray Surveillance Subcom-
                                     mittee of the Mine Health Research
                                     Advisory Committee


MAJOR AREAS OF RESEARCH            CHEST:

INTEREST (Present)                 1)  Occupational Lung Disease
                                   2)  Asbestos Dust Related Disease

E. NICHOLAS SARGENT, M.D., F.A.C.R.                                    7

## PRESENTATIONS

1.  CHRONIC BERYLLIUM DISEASE.
    Presented at diagnostic workshop Cleveland Clinic Educational
    Foundation.  May 7 - 8, 1986.

2.  PNEUMOCONIOSIS TEACHING SESSIONS.
    Presented American College of Radiology, yearly.

3.  RADIOLOGY OF THE PNEUMOCONIOSIS PARTICULARLY ASBESTOS RELATED
    DISEASE.
    Presented Fleischner Society, yearly.

4.  RADIOLOGY OF THE PNEUMOCONIOSIS.
    Presented at Baylor University, College of Medicine, Office of
    Continuing Education.  Houston, Texas.
    April 23 - 25, 1987.

5.  TECHNICAL SESSIONS ON RADIOLOGY.  Co-chairman.
    Presented International Pneumoconiosis Conference in Pittsburgh.
    August 23, 24, 1988.

6.  CHEST RADIOGRAPHIC APPROACH TO ASBESTOS DISEASES.
    Presented American Occupational Medical Association Scientific
    Session.
    April 29, 1988.

7.  COMMENDATION.
    Commendation by Edward L. Baker, M.D., Chairman of the Inter-
    national Pneumoconiosis Conference and George Kliesch Diplomatic
    Vice-Chairman International Labor Office and National Institute
    of Occupational Safety and Health as a member of the organizing
    committee for the ILO Classification changes.

8.  ILO CLASSIFICATION AND ASBESTOS RELATED DISEASE.
    Presented at the Northwest Occupational Lung Disease Conference,
    Seattle, Washington.  September 24, 1989.

9.  ILO CLASSIFICATION SYSTEM.
    Faculty member for teaching ILO classification system prior to
    the "B" reading examination, yearly.  October 24 - 1989.
    Denver, Colorado.

10. RELATIONSHIPS BETWEEN EXPOSURE AND MEDICAL/LEGAL PROBLEMS
    RELATIVE TO ASBESTOS.
    Invitation from Robert A. Goldstein, M.D., Acting Director
    Allergy Immunization and Transplantation, National Institute
    of Allergy and Infectious Diseases, Bethesda, Maryland.
    The purpose of this invitation was to review material on behalf
    _____ _____ _____ expert opinion concerning relationships

E. NICHOLAS SARGENT, M.D., F.A.C.R.                                    8


<u>PRESENTATIONS</u>          (cont.)


11.  U.S. DEPARTMENT OF ENERGY / OAKRIDGE INSTITUTE FOR SCIENCE
     AND EDUCATION; Y-12 BERYLLIUM WORKER ENHANCED MEDICAL
     SURVEILLANCE PROGRAM ORIENTATION, 4/21/93.
     Presentations on radiographic changes in chronic beryllium
     disease, explanation of the I.L.O. classification of
     radiographic changes of pneumoconiosis, and presentation
     in small group sessions on the radiographic techniques
     required for optimum technique for radiography of chronic
     beryllium disease.

E. NICHOLAS SARGENT, M.D., F.A.C.R.                                9

## BIBLIOGRAPHY

1.  Sargent EN: Editor. "UNUSUAL CASE OF THE MONTH". X-Ray
    Diagnostix. Orange County Med Assoc J, 1963 - 1965.

2.  Sargent EN: THE PHYSICIAN RADIOLOGIST. Guest Editorial,
    Orange County Med Assoc Bull, June 1964.

3.  Sargent EN: HISTORY OF THE ORANGE COUNTY HOSPITAL. Orange
    County Med Assoc Bull. Golden Anniversary Issue. June 1964.

4.  Sargent EN: THE COMMON RESPONSIBILITY.
    Am J Radiol Technol. March 1965.

5.  Sargent EN, Posnikoff J, Reilly E: PRIMARY HEMANGIOMA OF THE
    SKULL. AJR, Radiat Ther and Nucl Med 95:874-879, 1965.

6.  Sargent EN, Posnikoff J: SIMPLE PORTABLE HEADHOLDER. A NEW
    APPLICATION OF AN OLD PRINCIPLE.
    AJR, Radiat Ther and Nucl Med 95:955-956, 1965.

7.  Sargent EN, Hickman C: THE APPLICATION OF THE USE OF RADIOACTIVE
    PHOSPHORUS - 32 IN LARVAE: A NEW APPROACH FOR IDENTIFICATION OF
    ADULT INSECT SOURCES. J Invest Radiol 1: March-April 1966.

8.  Posnikoff J, Sargent EN: MULTIPLE BILATERAL INTRACRANIAL INTRA-
    CAVERNOUS AND INTRADURAL CAROTID ANEURYSMS.
    Bull Los Angeles County Neurol Soc 31:51-61, 1966.

9.  Sargent EN, Robertson TL: APPLICATION OF THE IMPEDENCE PNEUMO-
    GRAPH TO CHEST RADIOGRAPHY. Progress in Biomedical Engineering.
    (Pub.) Books, Inc., Washington D.C., 1966.

10. Sargent EN: "BOOK REVIEW - PRINCIPLES OF BONE DIAGNOSIS"
    Second Edition by George Simon, M.D.
    AJR, Radiat Ther and Nucl Med 97: July 1966.

11. Sargent EN, Carson M, Reilly E: ROENTGENOGRAPHIC MANIFESTATIONS
    OF VARICELLA PNEUMONIA WITH POSTMORTEM CORRELATION.
    AJR, Radiat Ther and Nucl Med 98:305-317, 1966. (Year Book of
    Radiology, 1969, Medical World News, Modern Medicine, Internal
    Medical Digest Abstracts).

12. Sargent EN, Robertson RL, Wagoner EV, O'Loughlin BJ: THE
    APPLICATION OF IMPEDANCE PNEUMOGRAPH TO CHEST RADIOGRAPHY (A USEFUL
    MEDICAL BY-PRODUCT OF THE SPACE PROGRAM).
    AJR, Radiat Ther and Nucl Med 98:487-491, 1966.

13. Berk J, Sargent EN, Ferris J, Keller T, Guth P: MANAGEMENT OF
    GASTRIC ULCERS, BENIGN AND MALIGNANT. The Medical Television
    Network Participant. Continuing Education in Medicine - University

E. NICHOLAS SARGENT, M.D., F.A.C.R.          BIBLIOGRAPHY          10

14. Sargent EN: BOOK REVIEW - PATHOLOGY OF BONE. By D.H. Collins. AJR, Radiat Ther and Nucl Med 98: December 1966.

15. Sargent EN, Guth P, Graffman N: RECTAL CHOLECYSTOGRAPHY. Radiology 88:997-1001, May 1967.

16. Sargent EN, Donaldson N: INFUSION EXCRETORY UROGRAPHY, REPORT OF 100 CASES USING RENOGRAFIN 60. J Can Assoc Radiol 18:434-441, December 1967.

17. Sargent EN, Carson M, Reilly E: VARICELLA PNEUMONIA. California Med 107:141-148, August 1967.

18. O'Gorman L, Cottingham R, Sargent EN, O'Loughlin B: MEDIASTINAL EMPHYSEMA IN THE NEWBORN. Dis of the Chest 53:301-308, March 1968. Yearbook of Radiology, 1969.

19. Posnikoff J, Berrzowski HV, Sargent EN: THE HANGING LUMBAR VIEW IN VENTRICULOGRAPHY FOR COMMUNICATING HYDROCEPHALUS OF INFANCY. Los Angeles Neurol Soc Bull 33:82-85, April 1968.

20. Sargent EN: PERFORMANCE OF RADIOLOGY BY THE NON-RADIOLOGIST PHYSICIAN. Proceedings of Conference of Teachers of Radiology American College of Radiology. pp 49-56, February 1968.

21. Sargent EN, Ebersole C: DACRYOCYSTOGRAPHY: THE USE OF SINOGRAFIN FOR VISUALIZATION OF THE NASOLACRIMAL PASSAGES. AJR, Radiat Ther and Nucl Med 102:831-839, April 1968. Yearbook of Ophthalmology 1968.

22. Turner AF, Sargent EN: PERCUTANEOUS PULMONARY NEEDLE BIOPSY. AN IMPROVED NEEDLE FOR A SIMPLE DIRECT METHOD OF DIAGNOSIS. AJR, Radiat Ther and Nucl Med 104:846-850, December 1968. Yearbook of Radiology, 1970.

23. Sargent EN, Turner AF: PERCUTANEOUS TRANSCRIOCOTHYROID MEMBRANE SELECTIVE BRONCHOGRAPHY. (A SIMPLE, SAFE TECHNIQUE FOR SELECTIVE CATHETERIZATION AND VISUALIZATION OF SEGMENTAL AND SUBSEGMENTAL BRONCHI). AJR, Radiat Ther and Nucl Med 104:792-801, December 1968.

24. Jacobson G, Sargent EN: APICAL ROENTGENOGRAPHIC VIEWS OF THE CHEST. AJR, Radiat Ther and Nucl Med 104:822-828, December 1968. Abstract - Modern Medicine, October 1969.

25. Sargent EN, Turner AF, Jacobson G: SUPERIOR MARGINAL RIB DEFECTS. (AN ETIOLOGICAL CLASSIFICATION). AJR, Radiat Ther and Nucl Med 106:491-505, July 1969. Yearbook of Orthopedics and Traumatic Injury and Abstracts. Yearbook of Radiology, Abstracts, 1970.

26. Sargent EN, Meyers H:  WIRE GUIDE AND TECHNIQUE FOR CANTOR TUBE
    INSERTION.  RAPID SMALL BOWEL INTUBATION.
    AJR, Radiat Ther and Nucl Med 107:150-155, September 1969.
    Abstract - Modern Medicine, 1969.

27. Sargent EN, Meyers H:  BENEMID IN INTRAVENOUS CHOLANGIOGRAPHY
    CLINICAL EVALUATION.
    J Invest Radiol 4:306-309, September - October 1969.

28. Sargent EN, Turner AF:  CATHETER TIP DEFLECTOR SYSTEM FOR
    SELECTIVE BRONCHOGRAPHY. Radiology 93:936-939, October 1969.

29. Sargent EN, Halpern M:  OPTIMAL DOSE FOR INTRAVENOUS UROGRAPHY.
    J Can Assoc Radiol 21:98-101, June 1970.

30. Sargent EN, Balchum E, Freed AL, Jacobson G:  MULTIPLE PULMONARY
    CALCIFICATIONS DUE TO COCCIDIOIDOMYCOSIS.
    AJR, Radiat Ther and Nucl Med 109:500-504, July 1970.

31. Sargent EN, Turner AF:  EMERGENCY TREATMENT OF PNEUMOTHORAX.
    AJR, Radiat Ther and Nucl Med 109:531-535, July 1970.

32. Sargent EN, Turner AF:  NEEDLE HOLDER AND GUIDE FOR PULMONARY
    ASPIRATION BIOPSY. Radiology 96:346, August 1970.

33. Sargent EN, Gordonson J:  NEPHROBRONCHOLITHIASIS.
    AJR, Radiat Ther and Nucl Med 110:701-703, December 1970.

34. Sargent EN, Barnes RA, Schwinn CP:  MULTIPLE PULMONARY
    FIBROLEIOMYOMATOUS HAMARTOMAS.
    AJR, Radiat Ther and Nucl Med 110:694-700, December 1970.

35. Sargent EN, et al.:  IMPORTANT ADVANCES IN CLINICAL MEDICINE.
    EPITOMES OF PROGRESS - RADIOLOGY.
    California Med 115:65-74, August 1971.

36. Sargent EN, Sherwin R:  SELECTIVE WEDGE BRONCHOGRAPHY (PILOT
    STUDY IN ANIMALS FOR DEVELOPMENT OF A PROPER TECHNIQUE).
    AJR 113:660-679, December 1971.

37. Birnbaum W, Gordonson J, Sargent EN:  SPRING SUCTION DEVICE
    FOR PULMONARY NEEDLE ASPIRATION BIOPSY.
    Radiology 101:62, October 1971.

38. Sargent EN, Gordonson J, Wilson R, George F:  GRANULAR CELL
    MYOBLASTOMA OF THE TRACHEA - RESPONSE TO RADIATION THERAPY.
    AJR 114:89-92, January 1972.
    Yearbook of Radiology, Abstract, 1973.

E. Nicholas Sargent, M.D., F.A.C.R.              BIBLIOGRAPHY              12

39. Sargent EN, Jacobson G, Wilkinson EE: DIAPHRAGMATIC PLEURAL
    CALCIFICATIONS FOLLOWING SHORT OCCUPATIONAL EXPOSURE TO ASBESTOS.
    AJR, Radiat Ther and Nucl.Med 115:473-478, July 1972.

40. Gordonson J, Sargent EN, Jacobson G, Turner AF: ROENTGENOGRAPHIC
    MANIFESTATIONS OF PULMONARY AMYLOIDOSIS.
    J Can Assoc Radiol 23:269-272, December 1972.

41. Sargent EN, Schwinn CP, Turner AF, Gordonson JS, Pashky O:
    PULMONARY ASPIRATION - BIOPSY UTILIZING A LONG NEEDLE AND
    FLUOROSCOPIC IMAGE - INTENSIFIER TELEVISION TECHNIQUES.
    Compendium on Diagnostic Cytology (No. 2), 11: 1973.

42. Gordonson J, Trachtenberg S, Sargent, EN: SUPERIOR VENA
    CAVA OBSTRUCTION DUE TO SARCOIDOSIS.
    Chest 63:292-293, February 1973.

43. Sargent EN, Barbour BH, Espinosa N, Meyers HI: EVALUATION OF
    RENAL FUNCTION FOLLOWING DOUBLE DOSE INFUSION INTRAVENOUS
    CHOLANGIOGRAPHY.
    AJR, Radiat Ther and Nucl Med 117:412-418, February 1973.

44. Siemsen JK, Sargent EN, Grebe SF, Winsor DW, Wentz D, Jacobson G:
    PULMONARY CONCENTRATION OF 67 GA IN PNEUMOCONIOSIS.
    AJR, Radiat Ther and Nucl Med 120:815-820, April 1974.

45. Gordonson JS, Birnbaum W, Sargent EN, Jacobson G: PULMONARY
    CRYPTOCOCCOSIS. Radiology 112:557-561, September 1974.

46. Sargent EN, Turner AF, Gordonson J, Schwinn CP, Pashky O:
    PERCUTANEOUS PULMONARY NEEDLE BIOPSY - REPORT OF 350 CASES.
    AJR, Radiat Ther and Nucl Med 122:758-768, December 1974.

47. Sargent EN, Co-author: A HOME STUDY SYLLABUS ON TECHNIQUE FOR
    CHEST RADIOGRAPHY. Publisher. National Institute of Occupational
    Safety and Health, Department of Health, Education and Welfare.
    ACR and ASRT, 1975.

48. Sargent EN, Shulman A, Meyers HI, Gutler RB, Nicoloff JT,
    Defazio LT: A NEW CONTRAST MEDIUM FOR INTRAVENOUS CHOLANGIO-
    CHOLECYSTOGRAPHY: MEGLUMINE IODOXAMATE.
    AJR 157:257-260, September 1975.

49. Siemsen JK, Sargent EN, Wentz D, Grebe SF: GALLIUM-67
    SCINTIGRAPHY OF PULMONARY DISEASE AS COMPLEMENT TO RADIOGRAPHY.
    Radiology 118:371-375, February 1976.

50. Shaub M, Gordonson JS, Sargent EN: EXTRAPLEURAL LIPOMA.
    West J Med 124:147-149, February 1976.

51. Sargent EN, Robbins AH, Vincent ME, Boswell W, Meyers HI,

E. NICHOLAS SARGENT, M.D., F.A.C.R.        BIBLIOGRAPHY        13

52. Sargent EN, Meyers HI, Hubsher J:  CHOLECYSTOKINETIC CHOLECYSTO-
    GRAPHY - EFFICACY AND TOLERANCE STUDY OF THE C-TERMINAL OCTAPEPTIDE
    FRAGMENT OF CHOLECYSTOKININ, SINCALIDE, FOLLOWING ORAL CHOLECYSTO-
    GRAPHY. AJR 127:267-271, March 1976.

53. Saw EC, Sargent EN, Yokoyam T:  INTERCOSTAL PULMONARY HERNIA.
    Arch Surg 3:548-551, May 1976.

54. Sargent EN:  SUPERIOR MARGINAL RIB EROSION IN SCLERODERMA.
    Letter to the Editor.  Chest 70:107, July 1976.

55. Schwinn CP, Sargent EN, Turner AF, et al.:  CYTOPATHOLOGY OF
    PERCUTANEOUS NEEDLE ASPIRATION BIOPSY.  In:  Tutorials of
    Cytology.  Eds.  G. Weid, L. Koss, J. Reagan.  Compendium on
    Diagnostic Cytology 4:517-543, 1976.

56. Sargent EN:  EPITOMES OF PROGRESS IN RADIOLOGY.
    West J Med 1974-1977.

57. Sargent EN, Jacobson G, Gordonson J:  PLEURAL PLAQUES -
    A SIGNPOST OF ASBESTOS DUST INHALATION.
    Semin Roentgenol 12:287-297, October 1977.

58. Sargent EN, Hubsher J:  CHOLECYSTOKINETIC CHOLECYSTOGRAPHY,
    EFFICACY AND TOLERANCE STUDY OF CERULETIDE.
    Proceedings International Symposium on Gastrointestinal Hormones
    and Pathology of the Gastrointestinal System, Rome 1977.

59. Sargent EN, Hubsher J:- CHOLECYSTOKINETIC CHOLECYSTOGRAPHY, USE
    OF CERULETIDE IN SYMPTOMATIC PATIENTS FOR RADIOGRAPHIC STUDY OF
    THE GALLBLADDER. Proceedings 10th European Congress of Inter-
    national College of Surgeons, Milan 1977.

60. Sargent EN, Boswell W, Hubsher J:  CHOLECYSTOKINETIC
    CHOLECYSTOGRAPHY.
    AJR 130:1051-1055, June 1978.

61. Sargent EN, Gordonson J, Jacobson G, et al.:  BILATERAL PLEURAL
    THICKENING - A MANIFESTATION OF ASBESTOS DUST EXPOSURE.
    AJR 131:579-585, October 1978.

62. (A.)  Sargent EN, Morgan WKC:  SILICOSIS.  Chapter In:
         Diagnosis and Management of Current Drug and Occupational
         Induced Disease.  (ed.)  L. Preger.  Grune & Stratton.
         San Francisco, Calif., 1980.

    (B.)  Sargent EN, Morgan WKC:  COAL WORKERS' PNEUMOCONIOSIS.
         Chapter In:  Diagnosis and Management of Current Drug and
         Occupational Induced Disease.  (ed.)  L. Preger.  Grune &
         Stratton.  San Francisco, Calif., 1980.

63. (A.)  Sargent EN, et al.:  RADIOGRAPHIC CHANGES FOLLOWING
         ASBESTOS DUST EXPOSURE.  (Ref. 57).
         Yearbook of Radiology.  Abstracted for, Important Contribu-
         tions to Radiology Literature, 1979.

    (B.)  Sargent EN, et al.:  CHOLECYSTOKINETIC CHOLECYSTOGRAPHY:
         EFFICACY AND TOLERANCE STUDIES OF CERULETIDE. (Ref. 58).
         Yearbook of Radiology.  Abstracted for, Important Contribu-
         tions to Radiology Literature, 1979.

64. Sargent EN, Hubsher J:  CHOLECYSTOKINETIC CHOLECYSTOGRAPHY:
    EFFICACY AND TOLERANCE STUDY OF CERULETIDE.
    Edizioni Minerva.  Medica.  1979.

65. Sargent EN:  OPTIMIZATION OF CHEST RADIOLOGY.  Proceedings of
    Symposium.  Madison, Wisconsin.  April 30 - May 2, 1979.
    U.S. Department of Health & Human Services.  Rockville, Maryland.

66. Sargent EN, Wieler M, Halls J:  CHOLECYSTOKINETIC CHOLECYSTO-
    GRAPHY:  COMPARISON OF THE EFFECT OF THE INTRAMUSCULAR
    ADMINISTRATION OF CERULETIDE TO A FATTY MEAL.
    AJR 133:489-492, September 1979.

67. Felton JS, Sargent EN, Gordonson JS:  RADIOGRPAHIC CHANGES
    FOLLOWING ASBESTOS EXPOSURE - EXPERIENCE WITH 500 WORKERS.
    J of Occup Med (No. 1) 1:15-20, January 1980.

68. Clark T, Harrington V, Sargent EN, et al.:  RESPIRATORY
    EFFECTS OF DUST EXPOSURE IN TACONITE MINING AND PROCESSING.
    Am Rev Respir Dis 121:959-966, 1980.

69. Sargent EN, Halls J, Colletti P, Wieler M:  RADIOGRAPHY OF THE
    SMALL INTESTINE - EFFICACY AND TOLERANCE STUDY OF CERULETIDE.
    Radiology 136:57-60, July 1980.

70. Sargent EN:  ASBESTOSIS AND PNEUMOCONIOSIS SCREENING, ABSTRACT
    OF PROCEEDINGS OF SYMPOSIUM ON OPTIMIZATION OF CHEST RADIOGRAPHY.
    AJR (No. 4) 134:199-205, January 1980.

71. Sargent EN, Co-author:  TEACHING MODULE, ASBESTOS RELATED
    DISEASE. American College of Radiology & National Institute,
    June 1981.

72. Sargent EN, Halls JM:  UNTERSUCHUNG DER WIRKSAMKEIT AND
    VERTRAGLICHKEIT von CERULETID bei DER RONTGENOLOGISCHEN
    UNTERSUCHUNG des DUNNDARMS.
    Therapiewoche 31:2709-2715, 1981.

73. Sargent EN, Felton JS, Barnes LT:  CALCIFIED INTERLOBAR PLEURAL
    PLAQUES. (FOLLOWING ASBESTOS DUST INHALATION).
    _____ (No. 3) 140:634, September 1981.

74. Sargent EN, Co-author:  REFERRAL CRITERIA FOR CHEST X-RAY
    EXAMINATION. Bureau of Radiologic Health, American College of
    Radiology.  1981.

75. Sargent EN:  SOLITARY PULMONARY NODULE.   In:  Radiography of
    the Chest.  Fleischner Society Publication.  1981.

76. Reger RB, Ames RG, Merchant J, Sargent EN, Polakoff P:
    THE DETECTION OF LUNG ABNORMALITIES USING PA ONLY VERSUS PA +
    OBLIQUE RADIOGRAPHS. Chest (No. 3) 81:290-295, March 1982.

77. Sargent EN, Editor and Co-author:  CHEST RADIOLOGY AND TECHNOLOGY
    FOR PNEUMOCONIOSIS STUDIES.
    Publisher.  American College of Radiology.  National Institute for
    Occupational Safety and Health.  December 1982.

78. Sargent EN:  UPDATE ON DIAGNOSTIC TECHNIQUES IN PULMONARY
    MEDICINE:  ASBESTOS INHALATION. p.71-79.  Published LDS Hospital,
    Pulmonary Division, Department of Medicine.  University of Utah,
    Salt Lake City, Utah.

79. Sargent EN:  CRITICAL REVIEWER AND REFEREE.  RADIOGRAPHIC
    EVALUATION OF ASBESTOS RELATED CHEST DISORDERS. (Auth. Gefter,
    Miller, Epstein).  C.R.C. Press Inc., December 1982.

80. Sargent EN, Co-author:  THE SELECTION OF PATIENTS FOR X-RAY
    EXAMINATIONS:  CHEST X-RAY SCREENING EXAMINATIONS.
    U.S. Department of Health & Human Services, Public Health Service.
    Food & Drug Administration.  Published, August 1983.

81. Cooper WC, Sargent EN:  A 26-YEAR RADIOGRAPHIC FOLLOW-UP OF
    WORKERS IN A DIATOMITE MINE AND MILL.
    J of Occup Med (No. 6) 26:456-460, June 1984.

82. Sargent EN, Boswell WD, Jr., Ralls PW, Markovitz A:  "SUBPLEURAL
    FAT PADS (IMPORTANCE OF RECOGNITION - RADIOGRAPHIC FEATURES)."
    Radiology 152:273-277, 1984.  (Selected as an outstanding contribu-
    tion and most significant article).

83. Sargent EN, Lundell CJ:  PNEUMOCONIOSES.  In:  Radiology:
    Diagnosis/Imaging/Intervention.  Editor, Taveras JM.  Publisher,
    J.B. Lippincott Company, Philadelphia.  1986..

84. Cooper WC, Sargent EN:  STUDY OF CHEST RADIOGRAPHS AND PULMONARY
    VENTILATORY FUNCTION IN PERLITE WORKERS.
    J of Occup Med 28:199-206, March 1986.

85. Amandus HE, Althouse R, Morgan WKC, Sargent EN, Jones R:
    THE MORBIDITY AND MORTALITY OF VERMICULITE MINERS AND MILLERS
    EXPOSED TO TREMOLITE-ACTINOLITE. Part 111:  Radiographic
    Findings.  Am J Industr Med 11:27-37, 1987.

86. Stark P, Sargent EN, Boylen TC, Jaramillo D:  PULMONARY ARTERIAL
    HYPERTENSION AS A MANIFESTATION OF LUPUS ERYTHEMATOSIS.

E. NICHOLAS SARGENT, M.D., F.A.C.R.          BIBLIOGRAPHY          16

87.  Bender AP, Williams AN, Parker D, et al:  MEDICAL SCREENING FOR
     ASBESTOS-RELATED LUNG DISEASE AMONG CONWED CORPORATION (CLOQUET)
     WORKERS AND THEIR SPOUSES.   Preliminary report to the Minnesota
     Legislature.  March 1, 1989.  E. N. Sargent participant in
     radiographic changes studied.

88.  Sargent EN:  RADIOGRAPHIC FEATURES OF CHRONIC BERYLLIUM DISEASE.
     Section IV. Chapter C. In: Beryllium; Toxicology; Hygiene and
     Regulation.  Co-editors: O. P. Preuss, M. Rossman and M. Powers.
     Williams & Wilkens.  Baltimore, Maryland.  1991.

89.  Howard JJ, Culver DB, Sargent EN:  PREVALENCE OF CLINICAL AND
     RADIOGRAPHIC ABNORMALITIES IN 150 WORKERS EXPOSED TO NON-CALCINED
     DIATOMACEOUS EARTH IN CENTRAL CALIFORNIA.  Exhibit, VIIth
     International Pneumoconiosis Conference.  August 23 - 26, 1988.
     Pittsburgh, Pennsylvania.  Abstract in Proceedings 1989.

90.  Reger RB, Cole WS, Sargent EN, and Wheeler PS:  CASES OF ALLEGED
     ASBESTOS-RELATED DISEASE, A RADIOLOGIC REEVALUATION,  JOURNAL OF
     OCCUPATIONAL MEDICINE. Vol 32, No 11, November 1990.

91.  Dick JA, Morgan WKC, Muir DFC, Reger RB, Sargent N:  THE
     SIGNIFICANCE OF IRREGULAR OPACITIES IN THE CHEST RADIOGRAPH.
     CHEST, ~~April~~ July, 1992.

92.  Bracken M, Morgan WKC, Sargent EN, Wheeler P:  ON THE
     DIAGNOSTIC ACCURACY OF ASBESTOS INDUCED DISEASE. JOURNAL OF
     OCCUPATIONAL MEDICINE  (in ~~press 1993~~).
     -- submitted for publication)



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Public Health Service**
Centers For Disease Control And Prevention
National Intstitute For Occupational Safety And Health
Appalachian Laboratory For Occupational Safety And Health

THIS IS TO CERTIFY THAT

*E. NICHOLAS SARGENT, M.D.*

HAS SATISFACTORILY COMPLETED TRAINING/TESTING AND IS A DESIGNATED

**B READER**

AS STIPULATED IN CFR TITLE 42, PART 37.51,
FEDERAL MINE SAFTY AND HEALTH ACT OF 1977 AND ITS AMENDMENTS.

THIS CERTIFICATION WILL REMAIN IN EFFECT FROM   08/09/95   UNTIL   08/08/9

DIRECTOR, DIVISION OF RESPIRATORY
DISEASE STUDIES, ALOSH / NIOSH

© OOES 746

EXAMINATION REPORT

CANDIDATE'S NAME        E. NICHOLAS SARGENT, M.D.

SOCIAL SECURITY NO.: ▓▓▓▓▓▓▓        DATE OF EXAM: 03/04/95    POINTS

   I.     PROFICIENCY IN SMALL OPACITY
         PROFUSION CLASSIFICATION

         SUM OF FALSE-POSITIVE AND
         FALSE NEGATIVE RATIOS*
         (20 POINTS POSSIBLE)     0 + 0 = 0        20.0

  II.    PROFICIENCY IN LARGE OPACITY
        PROFUSION CLASSIFICATION

        SUM OF FALSE-POSITIVE AND
        FALSE NEGATIVE RATIOS*
        (20 POINTS POSSIBLE)     0 + 0 = 0        20.0

III.    OVERREADING-UNDERREADING TENDENCY
      (10 POINTS POSSIBLE)     0.04 MINOR CATEGORIES   9.6

  IV.    INCONSISTENCY INDEX
      (30 POINTS POSSIBLE)     0.80 MINOR CATEGORIES   30.0

   V.    PROFICIENCY IN THE DETECTION
       OF PLEURAL CHANGES

       SUM OF FALSE-POSITIVE AND
       FALSE NEGATIVE RATIOS*
       (20 POINTS POSSIBLE)    1 + 11 = 12     15.2

GRADE:  94.8

COMMENTS: PASSING GRADE: 60

\* POSITIVE-NEGATIVE CASE SEPARATIONS FOR THESE CALCULATIONS WERE
  BETWEEN CATEGORIES 0/1 AND 1/0 FOR SMALL OPACITIES, AND BETWEEN
  CATEGORIES O AND A FOR LARGE OPACITIES.

THIS EXAMINATION HAS BEEN DEVELOPED FOR THE NATIONAL INSTITUTE FOR
OCCUPATIONAL SAFETY AND HEALTH TO TEST THE PROFICIENCY OF INDIVIDUALS
IN (1) CLASSIFYING THE PROFUSION CHARACTERISTICS OF PNEUMOCONIOSIS
RECORDED IN CHEST ROENTGENOGRAMS.  (2) CLASSIFYING THE PLEURAL
CHANGES CHARACTERISTIC OF CERTAIN INORGANIC DUSTS, AND
(3) RECOGNIZING THE PRESENCE OF DISEASE OTHER THAN PNEUMOCONIOSIS.
THE MINIMUM PASSING GRADE IS 50.

```
               B Reader from Nov 1, 1988 to Oct 31, 1992
               B Reader from May 1, 1996 to Apr 30, 2000
               A Reader from May 1, 2000 to Present

SANDERS, ANGELITA D
     11416 ELFSTONE WAY          COLUMBIA          MD 21044
          B Reader from Dec 1, 1990 to Nov 30, 1994

SARGENT, JEFFERY DALE
     28 MIDWAY                   BRISTOL           TN 37620
          B Reader from Jul 1, 1986 to Jun 30, 1998

SARGENT, NICHOLAS E
     15398 TETILLAS COURT       SAN DIEGO         CA 92128
          A Reader from Jul 1, 1991 to Aug 8, 1991
          B Reader from Aug 19, 1970 to Jun 30, 1991
          B Reader from Aug 9, 1991 to Aug 31, 1999
          B Reader from Sep 1, 1999 to Aug 31, 2003

SATYANARAYANA, KANAGAL
     3912 E ROLLING GREEN LANE ORANGE            CA 92667
          A Reader from Dec 29, 1982 to Jun 30, 1986
          A Reader from Jul 1, 1990 to Present
          B Reader from Jul 1, 1986 to Jun 30, 1990

SAVIT, RUSS MARC
     725 LAWSON AVE              HAVERTOWN         PA 19083
          B Reader from May 1, 2001 to Apr 30, 2005

SAWLANI, TULSI C
     473 SCARBOROUGH ROAD        VALPARAISO        IN 46383
          B Reader from Feb 1, 1993 to Jan 31, 2001

SCANLON, GERARD T
     MILWAUKEE CO HOSP           MILWAUKEE         WI 53226
          A Reader from Jan 15, 1971 to Dec 18, 1978
          B Reader from Dec 19, 1978 to Jun 30, 1982
          A Reader from Jul 1, 1982 to Present

SCATARIGE, JOHN CHARLES
     PO BOX 278                  LUTHERVILLE TIMONIUM MD 21094-0278
          A Reader from Feb 1, 1994 to Nov 30, 2001
          B Reader from Feb 1, 1990 to Jan 31, 1994
          B Reader from Dec 1, 2001 to Nov 30, 2005

SCHABEL, STEPHEN IRWIN
     669 SHORTWOOD STREET        CHARLESTON        SC 29412
          A Reader from May 20, 1985 to Jun 30, 1985
          B Reader from Jul 1, 1985 to Jul 31, 2001
          B Reader from Aug 1, 2001 to Jul 31, 2005

SCHAFFER, BURTON
     1703 SARATOGA COURT         VOORHEES          NJ 08043
          A Reader from Oct 1, 1992 to Dec 31, 1992
          A Reader from Jan 1, 1997 to Present
          B Reader from Oct 1, 1988 to Sep 30, 1992
          B Reader from Jan 1, 1993 to Dec 31, 1996

SCHAUBLE, THOMAS LEE
     103 DEVON COURT             GIBSONIA          PA 15044
          B Reader from Mar 1, 1999 to Feb 28, 2003

SCHECHTER, SHELDON
```



**Whereas** for more than twenty-five years
**The American College of Radiology**
**Task Force on Pneumoconiosis**
has benefited from
the leadership and participation of

**E. Nicholas Sargent, M.D.**
as member, 1970-1996,

**Be it known** by this certificate
awarded fondly and respectfully
by his colleagues that these years of
service and accomplishment are
hereby recognized and commemorated
by acclamation on this date,
October 18, 1996

Anthony J. Proto, Chairman

Roentgenographic Interpretation

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



**NOTE:** This report is authorized by law. (30 U.S.C., 901 et. seq.) The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

OMB No. 1215-0090
Expires: 01-31-93

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed (one physician), and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-ray | 1B. Miner's Social Security Number | 1C. Film Quality (if not Grade 1. Give Reason;) |
|---|---|---|---|
| Joseph Fleming | MO. 11 DAY 15 YR. 94 | 404 60 05960 | X 1 2 3 U/R |

**1D. Is Film Completely Negative?**  YES ☐ Proceed to Section 5   NO ☒ Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?**  YES ☐ Complete 2B and 2C   NO ☒ Proceed to Section 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY: p s / q t / r u
SECONDARY: p s / q t / r u

b. ZONES
R L

c. PROFUSION
0/- 0/0 0/1
1/0 1/1 1/2
2/1 2/2 2/3
3/2 3/3 3/+

**2C. LARGE OPACITIES**
SIZE O A B C   Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES ☐ Complete 3B, 3C and 3D   NO ☒ Proceed to Section 4

**3B. PLEURAL THICKENING**
a. Diaphragm (plaque)
SITE  O R L
b. Costophrenic Angle
SITE  O R L

**3C. CIRCUMSCRIBED (plaque)**
SITE  O R
In Profile  O A B C
I. Width  0 1 2 3
Face On  II. Extent  0 1 2 3
III. Extent  0 1 2 3

SITE  O L
In Profile  O A B C
I. Width  0 1 2 3
II. Extent  0 1 2 3
III. Extent  0 1 2 3

**3C. PLEURAL THICKENING ...Chest Wall**
b. Diffuse
SITE  O R
In Profile  O A B C
I. Width  0 1 2 3
II. Extent  0 1 2 3
III. Extent  0 1 2 3

SITE  O L
In Profile  O A B C
I. Width  0 1 2 3
II. Extent  0 1 2 3
III. Extent  0 1 2 3

**3D. PLEURAL CALCIFICATION**
SITE  O R  EXTENT
a. Diaphragm .......... 0 1 2 3
b. Wall ............... 0 1 2 3
c. Other Sites ......... 0 1 2 3

SITE  O L  EXTENT
a. Diaphragm .......... 0 1 2 3
b. Wall ............... 0 1 2 3
c. Other Sites ......... 0 1 2 3
Proceed to Section 4

**4A. ANY OTHER ABNORMALITIES?**  YES ☒ Complete 4B and 4C   NO ☐ Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**
O ax bu ca cn co cp cv di ef em es fr hi ho id ih ki pi px rp tb

**4C. REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION.**
☐ OD (Specify od.)
Date Personal Physician notified?  Mo. Day Yr.

**4C. OTHER COMMENTS**  4 MARKUPS @ biopses
_____
_____
_____

**SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?**  Yes ☒   Proceed to Section 5

**5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:** Nazard Clinic
DOL Medical Provider Number (if applicable): 103246
Was film taken by a registered radiographer/radiographic technologist? ☒ Yes   ☐ No   Ky State
Name  D. Smith   Registration No. 116992

**5. Physician interpreting Film (Print Name):** Mitchell Dirken M.D.
Are you: Board-certified Radiologist? ☐ Yes  ☐ No.  Board-eligible radiologist? ☐ Yes  ☐ No.  B-reader? ☒ Yes  ☐ No.
I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and CM-954b, Subpart B, 718.102 and Appendix A.

PHYSICIAN'S SIGNATURE _____   DATE OF READING 11-15-94 (Mo., Day, Yr.)

**Public Burden Statement**
We estimate that it will take an average of 10 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Office of Information Management, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0090), Washington, D.C. 20503.

Form CM-933
Rev. May 1990

X - RAY FILED

1.16

Fleming, Joseph                    11/15/94                    Black Lung


CHEST X-RAY:


Cardiothoracic ratio is 12.5 to 39.5 cms.  No acute pulmonary disease is noted.  Bony
structures intact.  Increased markings at both bases consistent with chronic bronchitis.
Minimal flattening of the diaphragms bilaterally.  I see no evidence of pneumoconiosis.


t1                                        Mitchell Wicker, Jr., M.D.

# Validation of Pulmonary Function and Arterial Blood Gas Studies

APR 26 1995

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

| Miner's Name | Social Security Number: |
|---|---|
| Joseph Danny Fleming | 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 |

| Claims Examiner: | Office: |
|---|---|
| Kimberly Jackett | Pikeville |

## VENTILATORY STUDIES

Date of Test: 2/23/95

☑ Vents are acceptable

☐ Vents are not acceptable*

**Test Results:**
(If different than reported)

☐ Insufficient number of FVC, FEV, or MVV Tracings without explanation for deficiency.    FVC in L/BTPS: _____

☐ Tracings improperly identified.    FEV$_1$/FVC in L/BTPS: _____

☐ Tracings are not legible.

☐ Report does not include tracings.    MVV in L BTPS/Min: _____

☐ Equipment does not meet specifications.

☐ Less than optimal effort, ccooperation and comprehension.

☐ Equipment not approved by NIOSH.

☐ Studies improperly performed.

Explain: _____

## ARTERIAL BLOOD GAS STUDIES

Date of Test: _____

**Test Results:**

Test is technically acceptable:    Resting: _____    Exercise: _____

☐ Yes    ☐ No*    PO$_2$ _____ mmHg  PCO$_2$ _____ mmHg

If test is not acceptable, indicate reason:    pH _____

☐ Venous sample    ☐ See explanation

Explain: _____

## OTHER PULMONARY FUNCTION STUDIES

Date of Test: _____

Test is technically acceptable:

☐ Yes    ☐ No*

Name Of Test: _____

If test is not acceptable, indicate reason:

Test Results: _____

**PHYSICIAN CONSULTANT:** N. K. BURKI, M.D., Ph.D.

(Name-print or type)

_____ (Signature)    4/25/95 (Date)

*Test does not meet the technical quality standards applicable at the time the evidence was submitted. (Sec. 727.206, 410.430, 718.103, 718.105, Appendices B and C.)

1.15

Form CM-1104
Rev. Nov. 1988

LEXINGTON CLINIC
1221 S BROADWAY
LEXINGTON, KY. 40504
Pulmonary Function Report

SILICOSIS?

Name:FLEMING,DANNY
Age: 49 Years
Sex/Race: Male / Caucasian
Height: 68112  67 in   175 cm
Weight: 150 lbs   69 kg

ID#:8404980FLEMING
Room:Out/P    Date:23-FEB-95
Temp/Pres: 20 C / 737 mmHg
Physician:BROUDY
Tested by:ELIZABETH

|  |  |  | PRED | TRL1 | TRL2 | TRL3 | BEST | %PRED | %CHG |
|---|---|---|---|---|---|---|---|---|---|
| SPIROMETRY | (BTPS) | PRE-Rx |  |  |  |  |  |  |  |
| FVC | Liters |  | 4.32 | 3.90 | 4.41 | 4.68 | 4.68 | 97 |  |
| FEV.5 | Liters |  | 3.07 | 1.32 | 1.38 | 1.33 | 1.38# | 45* |  |
| FEV1 | Liters |  | 3.87 | 1.87 | 2.00 | 1.94 | 2.00# | 52* |  |
| FEV1/FVC | % |  | 90 | 48 | 45 | 41 | 43# |  |  |
| FEF25-75% | L/Sec |  | 3.85 | 0.72 | 0.55 | 0.55 | 0.55# | 14* |  |
| IsoFEF25-75 | L/Sec |  | 3.85 | 0.72 | 0.55 | 0.55 | 0.55# | 14* |  |
| PEF | L/Sec |  |  | 5.73 | 3.79 | 5.03 | 5.03 |  |  |
| FEF50% | Sec |  |  | 8.5 | 14.8 | 16.1 | 16.1 |  |  |
| FEF50/FIF50 | Unitless |  |  | 0.62 | 0.37 | 0.22 | 0.23 |  |  |
| Vol Extrap | Liters |  |  | 0.06 | 0.05 | 0.05 | 0.05 |  |  |
| E Code |  |  |  | 010 | 010 | 010 | 10010 |  |  |
| MVV | L/Min |  | 154 | 77 | 68 | 69 | 77 | 50% |  |
| f | 1/Min |  |  | 60 | 55 | 55 | 60 |  |  |

| ARTERIAL BLOOD GASES |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | %FIO2 | pH | PCO2 | PO2 | %HbO2 | %HbCO |
| Predicted | 21 | 7.35-7.45 | 35-45 | 72-84 | >97 | <2 |
| Resting | 21 | 7.415 | 41.0 | 61.5 | 93.6 | 9.7 |

# = OUTSIDE 95% CONFIDENCE INTERVAL    * = OUTSIDE NORMAL RANGE
CALIBRATION:   PRED: 3.38       ACTUAL: EXP 3.42   INSP 3.38
IPS-OL10-08 IPS-OL10-07  N-2103-4

COMMENTS:

HGB. 16.3.RR.ES.PT CHEST EXCURSION FAIR.MVV SLOW PT COOPERATED
WELL.

Danny Fleming - LC #840-498-0

**INTERPRETATION:** Spirometry shows moderately severe obstructive airways disease. The patient's effort appears satisfactory. The arterial blood gas study shows moderate resting arterial hypoxemia with marked elevation of the carboxyhemoglobin indicating continued exposure to smoke. The total hemoglobin is 16.3 grams.

Bruce Broudy, M.D./bm

1.14

Case: 15-3999    Document: 15    Filed: 12/24/2018    Page: 640



SILICOSIS?

Name:FLEMING,DANNY
Age:                    49 Years
Sex/Race:          Male   / Caucasian
Height:               69 in   175 cm
Weight:              150 lbs   68 kg

ID#:8404980FLEMING
Room:Out/P    Date:23-FEB-95
Temp/Pres: 20 C / 737 mmHg
Physician:BROUDY
Tested by:ELIZABETH

FLOW/VOLUME ( Pre-Rx ____ )
              (Post-Rx ...)

CAL VOLUME / TIME

VOLUME/TIME ( Pre-Rx ____ )
              (Post-Rx ...)

BAR GRAPHS

NORMAL    PRE    POST

FUC        FEV1        FEF25-75%

Name: FLEMING, John
ID: 340490

| Pre-Rx | PRED | LAST 8 3 | Tri 1 | Tri 2 | Tri 3 (Best) | BEST | %Pr |
|---|---|---|---|---|---|---|---|
| FVC | 4.82 | | 3.90 | 2.42 | 4.68 | 1.68 | 97 |
| | | | | | | | |
| FEV.5 | 3.07 | | 1.32 | 1.36 | 1.33 | 1.33 | 43 * |
| FEV1 | 3.87 | | 1.87 | 1.97 | 1.94 | 1.97 | 51 * |
| FEV1/FVC | 90 | | 48 | 81 | 41 | 42 | |
| | | | | | | | |
| FEF25-75% | 3.85 | | 0.72 | 1.93 | 0.55 | 0.55 | 14 * |
| IsoFEF25-75 | 3.85 | | 0.72 | 1.93 | 0.55 | 0.55 | 14 * |
| FEF75-85% | | | 0.26 | 1.01 | 0.15 | 0.15 | |
| FEF50% | | | 0.84 | 2.24 | 0.68 | 0.768 | |
| PEF | | | 3.76 | 2.88 | 5.03 | 5.03 | |
| | | | | | | | |
| FET100% | | | 8.5 | 1.9 | 16.1 | 16.1 | |
| | | | | | | | |
| FIVC | 4.82 | | 1.83 | 0.73 | 4.55 | 4.55 | 94 |
| FIF50% | | | 1.36 | 1.22 | 3.02 | 3.02 | |
| PIF | | | 1.40 | 1.63 | 3.35 | 3.35 | |
| FEF50/FIF50 | <0.00 | | 0.62 | 1.83 | 0.22 | 0.22 | |
| | | | | | | | |
| Vol Extrap | | | 0.06 | 0.18 | 0.09 | 0.09 | |
| E Code | | | 000 | 000 | | 10010 | |



Name: FLEMING,DANNY                                    Date: 23-FEB-95
ID #: 8404980FLEMING

| Pre-Rx | PRED | LAST @ 1 | Trl 1 | Trl 2 | Trl 3 | BEST | %PRED |
|--------|------|------|-------|-------|-------|------|-------|
| MVV | | 77 | 77 | | | 77 | |
| f | | 60 | 60 | | | 60 | |

Name: FLEMING,DANNY                                    Date: 23-FEB-95
ID #: 8404980FLEMING

Pre-Rx



Name: FLEMING,DANNY                                    Date: 23-FEB-95
ID #: 8404980FLEMING

| Pre-Rx | PRED | LAST @ 1 | Trl 1 | Trl 2 | Trl 3 | BEST | %PRED |
|--------|------|------|-------|-------|-------|------|-------|
| MVV | | 68 | 77 | 68 | | 77 | |
| f | | 55 | 60 | 55 | | 60 | |

Name: FLEMING,DANNY                                    Date: 23-FEB-95
ID #: 8404980FLEMING

Pre-Rx

400



Name: FLEMING,DANNY                                      Date: 23-FEB-95
ID #: 84049S0FLEMING

| Pre-Rx | PRED | LAST S 3 | Trl 1 | Trl 2 | Trl 3 | BEST | %PRED |
|--------|------|----------|-------|-------|-------|------|-------|
| MVV | | 49 | 77 | 58 | 49 | 77 | |
| f | | 55 | 60 | 55 | 55 | 60 | |

Name: FLEMING,DANNY                                      Date: 23-FEB-95
ID #: 84049S0FLEMING


Pre-Rx



A640

Validation of Pulmonary Function and
Arterial Blood Gas Studies

APR 06 1995

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| Miner's Name | Social Security Number: |
|---|---|
| *Joseph Fleming* | *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* |
| Claims Examiner: | Office: |
| *J. L. Clemons* | *PI* |

## VENTILATORY STUDIES

Date of Test: *11/15/94*

☐ Vents are acceptable

☑ Vents are not acceptable*

   ☐ Insufficient number of FVC, FEV, or MVV
      Tracings without explanation for deficiency.
   ☐ Tracings improperly identified.
   ☐ Tracings are not legible.
   ☐ Report does not include tracings.
   ☐ Equipment does not meet specifications.
   ☑ Less than optimal effort, ccooperation and comprehension.
   ☐ Equipment not approved by NIOSH.
   ☐ Studies improperly performed.

**Test Results:**
(If different than reported)

FVC in L/BTPS: _____

FEV$_1$/FVC in L/BTPS: _____

MVV in L BTPS/Min: _____

     Explain: *Excessive variation between 2 best FEVs*

## ARTERIAL BLOOD GAS STUDIES

Date of Test: _____

Test is technically acceptable:

   ☐ Yes    ☐ No*

If test is not acceptable, indicate reason:

   ☐ Venous sample   ☐ See explanation

**Test Results:**

Resting: _____  Exercise: _____

PO$_2$ _____ mmHg PCO$_2$ _____ mmHg

pH _____

Explain: _____

_____

## OTHER PULMONARY FUNCTION STUDIES

Date of Test: _____

Name Of Test: _____

Test Results: _____

_____

Test is technically acceptable:

   ☐ Yes    ☐ No*

If test is not acceptable, indicate reason:

_____

_____

**PHYSICIAN CONSULTANT:** *S Kraman*
(Name-print or type)

*S Kraman*
(Signature)

*4/6/95*
(Date)

*Test does not meet the technical quality standards applicable at the time the evidence was submitted. (Sec. 727.206, 410.430, 718.103, 718.105, Appendices B and C.)

1.13

Form CM-1104
Rev. Nov. 1988

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



**Note:** This report is authorized by law (30 USC, 901 et seq.). The results of this interpretation may aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security Number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

OMB No. 1215-0090
Expires: 01-31-90

**Instructions:** Please submit three tracings for each test performed, and record the highest values of the three below. The study must include results of the FEV₁ and the FVC or MVV (MBC), or both. If the MVV (MBC) is reported, the results of the test shall be obtained independently, rather than calculated from the FEV₁ (Note: Two MVV (MBC) tracings are sufficient if the results are within 5% of each other). Each tracing must be identified with patient's name and Social Security Number/DOL Claim Number. If a bronchodilator is administered, values obtained both before and after administration of the bronchodilator must be entered and the significance of the results obtained explained in item 10. Complete instructions and standards for administration of these tests may be found in 20 CFR Part 718, Subpart B, 718.103, and Appendix B, and are summarized on Form CM-954a.

| 1. Name of Miner (First, middle, last) | 2. Social Security Number or DOL Claim Number: | 3. Date and Time of Test |
|---|---|---|
| Joseph Fleming | 404 60 0560 | 11 15 94  2:44  MM DD YY  a.m. / p.m. |

| 4. Age: 49 | 5. Sex: male | 8. Circle as appropriate (if "poor", explain in No. 10, "Additional Comments") |
|---|---|---|
| 6. Height (inches): 68 3/4 | 7. Weight: 147 | Miner's Cooperation:  Good  (Fair)  Poor  Miner's ability to understand instructions and follow directions:  (Good)  Fair  Poor |

| 9. (a) Type of Test | (b) Observed Values BEFORE Bronchodilator (Corrected to BTPS) | Observed Values AFTER Bronchodilator, if Given (Corrected to BTPS) | (c) Predicted Normal Values |
|---|---|---|---|
| FEV₁ (in liters/second) | 2.22 at 62% | 1.93 at 54% | 3.59 |
| MVV (in liters/minute) | 78 at 55% | 90 at 63% | 144 |
| FVC (in liters) | 4.34 at 96% | 4.04 at 90% | 4.51 |

10. Additional Comments: (For example - note any dyspnea; use of bronchodilators; reason for failure to complete a test, etc.)

Effort was at best fair, this was not felt to be a valid representation of the patient's maximum voluntary ventilatory capacity.

| 11. (a) Type of machine used (Trade name) | (b) Rate of paper flow | (c) Temperature of Equipment |
|---|---|---|
| Puritan Bennett | MVV 2 sec | Preset |

| 12. Facility where test performed | 13. Print or type name of technician administering test |
|---|---|
| Hazard Clinic | N. Barker PFT |

I certify that these ventilatory studies were conducted and reported in compliance with specifications and instructions provided by the Department of Labor. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

| Mitchell Wicker MD | | 11-15-94 |
|---|---|---|
| Print or Type Name of Physician | Physician's Signature | Date |

Form CM-907
Rev. June 1987

1.12

CURRICULUM VITAE
STEVE S. KRAMAN, M.D.

## PERSONAL INFORMATION

BUSINESS ADDRESS                    VA Medical Center 111H
                                    Lexington, KY  40511

BUSINESS TELEPHONE                  (606) 233-4511

## EDUCATION

UNIVERSITY                          University of Puerto Rico
                                    1964-1968  B. S. Degree

                                    University of Puerto Rico
                                    School of Medicine, San Juan,
                                    Puerto Rico, 1969-1973
                                    M.D. Degree

INTERNSHIP                          Brookdale Hospital
                                    Brooklyn, N.Y.  1973-1974
                                    Straight Medical Internship

RESIDENCY                           Brookdale Hospital
                                    Brooklyn, N.Y.  1973-1976
                                    Internal Medicine

FELLOWSHIPS                         Queens Hospital Center
                                    Jamaica, N.Y.  1976-1977
                                    First Year Pulmonary

                                    Brookdale Hospital
                                    Brooklyn, N.Y.  1977-1978
                                    Second Year Pulmonary

## CERTIFICATIONS                   ABIM  1976
                                    Pulmonary Medicine 1978

## LICENSURE                        KY 1974 & NY 1978

## ACADEMIC APPOINTMENTS            University of Kentucky Medical
                                    Center, Assistant Professor of
                                    Medicine - 07/78-06/84

                                    University of Kentucky Medical
                                    Center, Associate Professor of
                                    Medicine - 07/84 to present

## CURRENT BUSINESS AFFILIATION     Veterans Administration
                                    Hospital   Lexington, KY
                                    Chief of Staff  10/86 to present

1. 1

Curriculum Vitae
of

Steve S. Kraman, M.D.
Veterans Administration Medical Center
Cooper Drive Division
Lexington, KY  40511
(606) 233-4511

## Educational Background

1964-1968:  University of Puerto Rico, Mayaguez, P.R.  B.S. degree.

1969-1973:  University of Puerto Rico, School of Medicine, San Juan, P.R.
M.D. degree.

1973-1974:  Brookdale Hospital, Brooklyn, NY   Straight medical internship.

1974-1976:  Brookdale Hospital, Brooklyn, NY  2 years residency, Internal
Medicine

1976-1977:  Queens Hospital Center, Jamaica, NY  One year pulmonary
followship.

1977-1978:  Brookdale Hospital, Brooklyn, NY  Second year pulmonary
fellowship.

## Professional Background

1973-1976:  Brookdale Hospital, Brooklyn, NY  Emergency Room Physician
1977-1978:    one night weekly.

7/78-present:  University of Kentucky Medical Center, Lexington, KY, Assistant
Professor of Medicine

## Additional Information

Birth Date:  August 30, 1944          Height:  5'6"

Weight:  135 lbs.                      Health:  Excellent

Married, three children               Board certified, ABIM, 1976, #54223
                                      Board certified, Pulmonary Medicine,
                                      1978, #054223

Curriculum Vitae of Steve Kraman, M.D.

Memberships in National Academic Professional Organizations

Bioelectromagnetics Society – 1979

American Federation for Clinical Research – 1979

American Thoracic Society – 1978

Fellow, American College of Chest Physicians – 1981

Associate Member, American Physiological Society – 1982

Memberships in Regional Academic Professional Organizations

Kentucky Thoracic Society – 1978

    Member, Program Committee – 1978–79, 1979–80, 1980–81, 1981–82
    Chairman, Program Committee – 1980–81
    Member, Executive Committee – 1980–81
    Secretary–Treasurer – 1981–82

Professional Administrative Responsibilities – Hospital

Member – I.C.U. Renovation Committee, V.A., 7/78–10/78

Chairman – Pharmacy & Therapeutics Committee, V.A., 9/78 – 9/79

Chairman – Respiratory Care Evaluation Committee, U.K., 1/79 – 1/80

Member – Environmental and Infection Control Committee, V.A., 1/79–4/80

Member, Medical Service, Patient Care Audit Review and Coordinating Committee, V.A., 9/79 – present

Chairman, I.C.U. Audit Subcommittee, V.A., 10/79 – 1/80

Chairman, Respiratory Care Committee, U.K., 1/80 – 9/82

Associate Medical Director, Department of Respiratory Therapy, U.K., 1/80 – 9/82

Member, Research Space Committee, V.A., 9/82 – present

Grants

NHLBI  Grant Number 5R01 HL26334 – 1981–82

## Abstracts

1. Kraman, S., Khan, F., Seriff, N., and Patel, S.: "Acute renal failure in the respiratory intensive care unit: Frequency and implications; A prospective study." Chest, 1977; 72:403.

2. Berger, R., Kraman, S., and Paciotti, M.: "Pulmonary Strongyloidiosis complicating therapy with corticosteroids." Am. Rev. Respir. Dis. 1979: 119 (Suppl):224.

3. Kraman, S.S.: "The determination of the site of origin of vesicular lung sounds: A new technique." Am. Rev. Respir. Dis. 1980; 121:368.

4. Kraman, S.S.: "Effect of microphone characteristics on the wave-form of crackles." Fed. Proc. 1981; 40(3):796.

5. Kraman, S.S.: "Does laryngeal noise contribute to the vesicular lung sounds?" Am. Rev. Respir. Dis. 1981; 123:107.

6. Kraman, S.S., O'Donnell, D.: "Vesicular lung sound mapping by automated flow-gated phonopneumography." The Physiologist 1981; 24(4):106.

7. Kraman, S.S.: "Comparative lung sound amplitude and subtraction characteristics in normal subjects." Fed. Proc. 1982; 41:1127.

8. Kraman, S.S.: "The forced expiratory wheeze: Its origin and possible relation to lung compliance." Clinical Research 1982; 30(2):433A.

9. Kraman, S.S.: "The effect of mild airways obstruction on the site of origin of lung sounds." The Physiologist 1982; 25(4):210.

10. Dosani, R.A. and Kraman, S.S.: "Three dimensional contour mapping of lung sounds in normals." The Physiologist 1982; 25(4):210.

## Book Chapters

1. Kraman, S.S. 1982. Bronchiectasis. In Pulmonary Diseases. N.K. Burki, Editor. Medical Examination Publishing., Garden City, NY. 308-312.

2. Burki, N.K. and S.S. Kraman. 1982. Miscellaneous Lower Respiratory Tract Infections. Ibid. 235-247

## Publications

1. Kraman, S., Khan, F., Seriff, N., and Patel, S.: "Acute renal failure in the respiratory intensive care unit: Frequency and implications; A prospective study." Critical Care Medicine 1979; 7:263-6.

2. Kraman, S., and Adler, J.J.: "Mercury Aspiration." Chest 1980; 77:211-12.

Reviewer for American Review of Respiratory Disease 1981

Coordinating grant reviewer, V.A. Medical Center 1981

3. Berger, R., Kraman, S., and Paciotti, M.: "Pulmonary strongyloidiosis complication therapy with corticosteroids." American Journal of Tropical Medicine and Hygiene 1980; 29(1):31-4.

4. Safdar, F., and Kraman, S.: "Fiberoptic bronchoscopy in pulmonary abscess." (correspondence to Editor) Chest 1980; 77:707-8.

5. Kraman, S.: "Determination of the site of production of respiratory sounds by subtraction phonopneumography." Am. Rev. Respir. Dis. 1980: 122:303-9.

6. Berger, R., and Kraman, S.: "Miliary blastomycosis and short course corticosteroids." Arch. Int. Med. 1981; 141:1223-5.

7. Kraman, S.: "Does laryngeal noise contribute to the vesicular lung sound?" Am. Rev. Respir. Dis. 1981; 124:292-4.

8. Thacker, R., and Kraman, S.: "The prevalence of auscultatory crackles in subject without lung disease." Chest 1982; 81:672-674.

9. Kraman, S.: "Rapid lung sound amplitude measurement by automated flow-gated phonopneumography." Proc. of the 3rd internation symposium on computers in critical care and pulmonary medicine, 1982. In Press.

10. O'Donnell, D. and Kraman, S.: "Vesicular lung sound amplitude mapping by flow-gated phonopneumography." J. Appl. Physiol. 1982; 53(3):603-609.

11. Kraman, S.: "Lung sounds: Relative sites of origin and comparative amplitudes in normal subjects." Lung 1983; 161:57-64.

12. Lorenz, R. and Kraman, S.: "Intracavitary mass in a patient with far-advanced tuberculosis." Chest 1982, 82:91-92.

13. Kraman, S.: "The forced expiratory wheeze: The site of origin and its possible relationship to lung compliance." Respiration In press. 1982.

14. Kraman, S.: The effects of mild airways obstruction on the site of origin of lung sounds. Submitted J. Appl. Physiol. 1982.

15. Dosani, R.A. and Kraman, S.: "Lung sound intensity mapping in normal men." Provisionally accepted. Chest In press. 1982.

16. Kraman, S.S.: "An improved technique for automated lung sound intensity measurement." Submitted J. Appl. Physiol. 1982.

17. Kraman, S.S.: "The windmill: Has the pocket spirometer arrived?" Submitted Chest 1982.

18. Kraman, S.S.: "How much of lung sound is chest wall sound?" Submitted J. Appl. Physiol. 1982.

19. Huang, K.C., Kraman S.S. and Wright BD:  Video Stethoscope: a simple method for assuring continuous bilateral lung ventilation during anesthesia.  Submitted <u>Anesthesia and Analgesia</u>. 1982.

## Presentations

1. "Acute Renal Failure in the Respiratory Intensive Care Unit: Frequency and Implications; A Prospective Study." 43rd Annual Scientific Assembly, American College of Chest Physicians, Las Vegas, Nevada, October 30, 1977.

2. Pulmonary Strongyloidiasis Complicating Therapy with Corticosteroids." Annual Meeting of the Kentucky Thoracic Society, October 27, 1979.

3. "A Technique of the Determination of Site of Production of Lung Sounds." 4th International Conference on Lung Sounds, North Western Memorial Hospital, Chicago, Illinois, September 21, 1979.

4. "The Determination of the Extent of Crackle Propagation on the Chest Wall." 5th International Conference on Lung Sounds, Imperial College, London, England, September 15, 1980.

5. "Effect of Microphone Characteristics on the Wave-Form of Crackles." 65th Meeting of the Federation of American Societies for Experimental Biology, Atlanta, Georgia, April 14, 1981.

6. "Vesicular Lung Sound Amplitude Mapping by Flow Gated Phonopneumography." Third Annual International Symposium on Computers in Critical Care and Pulmonary Medicine, Norwalk, Connecticut, June 17, 1981.

7. "Vesicular Lung Sound Amplitude Mapping by Flow Gated Phonopneumography." Sixth International Conference on Lung Sounds, Faulkner Hospital, Boston, Massachusetts, October 1-2, 1981 and the American Physiological Society, Cincinnati, Ohio, October 15, 1981.

8. "Investigation of Amplitude Heterophone in a Presumed Normal Subject." Sixth International Conference on Lung Sounds, Faulkner Hospital, Boston, Massachusetts, October 1-2, 1981.

9. "Comparative Lung Sound Amplitude and Subtraction Characteristics in Normal Subjects." 66th Meeting of the Federation of American Societies for Experimental Biology, New Orleans, Louisiana, April 20, 1982.

10. The effect of mild airways obstruction on the site of origin of lung sounds. 7th International Conference of lung sounds, Martinez, CA. October 8, 1982 and 1982 meeting of the American Physiological Society, San Diego, CA. October 12, 1982.

THE PULMONARY FUNCTION STUDY TRACINGS/EKG
GRAPHS WERE NOT SUITABLE FOR PHOTOCOPYING.

THE ORIGINAL TRACINGS/GRAPHS ARE INCLUDED
IN THE FORMAL RECORD.

j.10

Report of Arterial Blood Gas Study



**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

OMB No. 1215-009
Expires: 05-31-89

This report is authorized by law (30 USC 901 et. seq). The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

Instructions: Summarized below are the procedures to be followed in administering this test. The arterial blood-gas study shall initially be administered at rest and in a sitting position. If the results of the test at rest are not within the values indicated on the applicable table shown on the reverse side of this form, an exercise blood-gas study shall be offered to the miner unless medically contraindicated. If an exercise blood-gas test is administered, blood shall be drawn during exercise. Complete instructions for administration of this test and table of values may be found in 20 CFR Part 718, Subpart B, 718.105, and appendix C.

| 1. Name of Miner (First, middle, last) | 2. SSN or DOL Claim No. | 3. Date of Test (Mo., day, year) |
|---|---|---|
| Joseph Fleming | 404 600560 | 11-15-94 |

| 4. Miner's: | 5. Altitude: (Check one) | 6. Barometric Pressure |
|---|---|---|
| 49 Age | ☑ 0 to 2999 feet above sea level | 746 |
| 68¾ Height | ☐ 3000 to 5999 feet above sea level | Equipment Temperature |
| 147 Weight | ☐ 6000 feet or more above sea level | 37 c° |

7. Site of Puncture: Radial    Indwelling line: _____    Single stick: ✓

| 8a. | Time Sample Drawn | Iced | | Time Sample Analyzed | b. Pulse rate at time sample drawn: |
|---|---|---|---|---|---|
| | | Yes | No | | Rest: 76    Exercise: |
| Rest: | 2:30 | | ✓ | 2:31 | c. Was equipment calibrated before and after each test? |
| Exercise: | | | | | ☑ Yes    ☐ No |

d. Type of exercise and duration:

9.

| | | Observed Values | |
|---|---|---|---|
| Test Results | Predicted Normal Range | Resting | Exercise if Administered |
| pCO$_2$(mmHg) | 35-45 | 44.3 | |
| pO$_2$(mmHg) | 85-103 | 67.9 | |
| pH | 7.35-7.45 | 7.393 | |

10. Additional Comments:

Patient did not do exercised ABGs because of back injury.

| 11. Facility where test performed: | 12a. Print or type name of technician performing the study: |
|---|---|
| Hazard Clinic | N. Barku LPN |
| | b. Print or type the name of Physician: |
| | M. Wicker M.D. |
| 13. Provider Number: 163246 | 14. Physician's Signature: |
| | 1.9 |



ELECTROCARDIOGRAPH REQUEST

| PREV. ECG   YES ☐   NO ☐   AMB. ☐   BED. ☐ | EMERG. ☐   DIG. ☐   QUIN. ☐   AGE | SEX _M_   B.P. | DATE 11-15-94 |
| CLIN. DIAG.: | | ORDERED BY _Mitchell Wicker_ | M.D. |

ELECTROCARDIOGRAPH REPORT

| RHYTHM:   SINUS ☐   OTHER: | RATES: | INTERVALS: | AXIS: |
| | ATR.      VENTR. | P-R   QRS   QTc | +    °  —    ° |

| DESCRIPTION:           LIMB LEADS | PRECORDIAL LEADS |
| P | |
| QRS | |
| S-T | |
| T. U. | |

PATIENT IDENTIFICATION

*Joseph Fleming*

INTERPRETATION

Sinus rhythm at 70, PR interval .12, QRS .08.  Axis
which is normal.
IMPRESSION:  Normal EKG.

DATE ___11/15/94___   INTERPRETED BY _____   M.D.

BURDICK
007875

PRINTED IN U.S.A.
Q-00-307

A653

**Medical History and Examination**
**Coal Mine Workers' Pneumoconio...**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| A. Patient Information | (Please type or neatly print all responses.) | OMB No.: 1215-0090 |
| --- | --- | --- |

**1. Name and Address**

Joseph Fleming
General Delivery
Jackhorn, KY 41825

Expires: 01-31-93

**2. DOL Claim No.**

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

**3. Telephone No.**

( 606)855-4215

**4. Date of Exam**

11/15/94

**5. Date of Birth**

9/11/45

**6. Personal Physician (name, address, phone no.)**

Dr. Tidal
Whitesburg, KY

**7. Examining Physician (name, address, phone no.)**

Mitchell Wicker, Jr., M.D.
P.O. Box 719
Hazard, KY  41702
(606) 439-1316

| B. Employment History | (Please type or neatly print all responses.) |
| --- | --- |

☐ "Employment History", Form CM-911a, or equivalent (dated ___ / ___ / ___ ) is attached.   Please review the form and, with the miner's help, **complete only blocks 1.a, below,** describing his/her most recent coal mine job (of at least one year's duration).  Then, move on to "C. Patient History".

☑ CM-911a is not attached - complete both sections, 1. and 2., below.

**1. Coal Mine Employment – CME.** List most recent employment first.  In line (a.) describe the last job of at least one year's duration.  (Include in all lines any coal mine construction or transportation work, or work in a mine preparation facility.)

| Name of Company | Job Title and Description of Job's Physical Requirements | From (mm/yy) | To (mm/yy) |
| --- | --- | --- | --- |
| a. Last year held at least one year.<br><br>Aberry Coal Co<br>Pound, VA. | Inside, ran miner, roof bolter, coal loader | 1988 | 1991 |
| b. Other CME:<br><br>20 years - 18 years inside. | | | |

c. Additional number of years in CME **not** described above: _____ years.

**2. Other Employment - Not CME.** (If the employment exposed the patient to an occupational toxic inhalant hazard, describe the inhalant under "Job Title and Description".)

| Name of Company | Job Title and Description | From (mm/yy) | To (mm/yy) |
| --- | --- | --- | --- |
| | | | |

| C. Patient History (Family - Medical - Social) | (Please type or neatly print all responses.) |
| --- | --- |

**1. Family History.**

Have the patient's parents, children, or other "blood" relatives ever had any of the following:

| | Yes | No | | Yes | No | If "Yes," identify family member |
| --- | --- | --- | --- | --- | --- | --- |
| High blood pressure | | X | Asthma | | X | Mother living; kidney problems. |
| Heart Disease | | X | Allergies | | X | Father living; tuberculosis. |
| Tuberculosis | X | | Emphysema | | X | |
| Diabetes | | X | Stroke | | X | |
| Cancer | | X | | | | |

Form CM-988
Rev. July 1987

**C. Patient History** (continued)                                                                  (Please type or neatly print all responses.)

2. Individual Health/Medical History.

a. Does the patient have a history of:

| Yes | No | | When Manifested (Month, Year) | Yes | No | | When Manifested (Month, Year) |
|---|---|---|---|---|---|---|---|
| | X | Frequent Colds | _____ | | X | Arthritis | _____ |
| | X | Pneumonia | _____ | | X | Heart Disease/Problems | _____ |
| | X | Pleurisy | _____ | | X | Allergies | _____ |
| X | | Attacks of wheezing | 2 years | | X | Cancer (of          ) | _____ |
| | X | Tuberculosis | _____ | | X | Diabetes Mellitus | _____ |
| | X | Chronic bronchitis | _____ | | X | High Blood Pressure | _____ |
| | X | Bronchial Asthma | _____ | | X | Connective Tissue Disease | _____ |

b. Other Significant Conditions or Serious Illnesses (when diagnosed?)

   October 1990 - Back injury.

c. Hospitalizations (reasons and dates):

   Negative.

d. Surgery:
   2 years ago - Bristol, TN - Laminectomy.
   1982, 1989 - Whitesburg, KY - Bilateral hernia repair.

3. Social History.

a. Smoking History

| ☐ Never Smoked | ☐ Has Stopped Smoking | ☒ Currently Smoking |
|---|---|---|
| | Started: _____ ; Stopped: _____ | Started: 1973 |
| | Smoked what? _____ | Smokes what? cigarettes |
| | How much (e.g., packs/day): _____ | How much: 1 ppd |

b. Other Pertinent Social History (e.g. drug or alcohol use; strenuous hobbies):

   Denies use of alcohol.

**D. Present Illness/Physical Examination**                                                          (Please type or neatly print all responses.)

1. Chief Complaints/Symptoms - as described by patient. Please comment on **all** "Yes" answers (e.g. describe frequency, duration, and/or severity of symptoms).

| Yes | No | | Comments |
|---|---|---|---|
| X | | Sputum (daily?) | 4 years; pale grayish phlegm. |
| X | | Wheezing (daily?) | 2 years; at hours sleeping. |
| X | | Dyspnea (quantitate) | 4 years; in AM and evening and PM, exertional. |
| X | | Cough | 4 years; at AM and PM. |
| | X | Hemoptysis | |
| X | | Chest pain  (Inciting Factor): | Sternal Area. |
| | X | Orthopnea | |
| X | | Ankle edema | Both swell frequently. |
| | X | Paroxysmal Nocturnal Dyspnea | |

(Indicate in D.4., next page, any of the above symptoms manifested during the exam.)

2. Other complaints. (Include here the patient's description of any limitations in physical activities like walking, climbing, and lifting.)
   15 lbs lifting ability.
   Not sure how much walking he can do.

A655

D. Present Illness/Physical Exam (continued)                    (Please type or neatly print all responses.)

3. Current Treatment (including medications):

    Ansaid
    Tylox
    Flexoril

4. Physical Findings: Based on Your Physical Examination.
    (Show all findings, especially those pertinent to the respiratory system and the cardiovascular system.)

a. Fill in the appropriate data or response:

| General | | Thorax & Lungs | | Nose | | Abdomen | |
|---|---|---|---|---|---|---|---|
| | | Inspection | normal | Membranes | normal | Peristalsis | normal |
| Height | 68 3/4" | | | Obstruction | none | Tenderness | none |
| Weight | 147 | Palpation | normal | Discharge | none | Ascites | none |
| | | | | Septum | normal | Liver | not enlarged |
| Temperature | 97.8 | Percussion | 4 fingerbreath | Sinuses | normal | Spleen | non palpable |
| Pulse | 76 | | diaphragm excursion | | | Kidneys | non palpable |
| Respiration | 18 | Auscultation | wheezing | Throat | | Urinary bladder | non palpable |
| B.P. rt. arm | 140/80 | | | Erythema | none | Masses | non palpable |
| B.P. lf. arm | 140/80 | | | Exudate | none | Hernia | inguinal |
| Development | normal | Heart | | Tonsils | normal | guaiac negative stool | |
| Nutrition | normal | Peripheral Pulse | normal | Pharynx | normal | | |
| Hydration | normal | PMI | 5th intercoastal space at midclavicular line | | | | |
| Orientation | full | Pulsation | normal | Neck | | | |
| Mentation | clear | Epigastric Cardiac | | Masses | none | | |
| Personality | pleasant | Pulsation | normal | Thyroid | normal | | |
| Mood | cooperative | Thrills | none | Trachea | midline | | |
| | | Rhythm | regular | Arteries | normal | | |
| Extremities | | Sounds | normal | Veins | normal | | |
| Color | normal | Gallop | none | | | | |
| Clubbing | none | Murmurs | none | Musculoskeletal | | | |
| Edema | none | | | Spine | normal | | |
| Varicosities | none | Friction rub | none | Joints | normal | | |
| Arterial Pulses | normal | | | Muscles | normal | | |

b. Other relevant findings - narrative summary:

5. Summary of Diagnostic Testing - In the space below, check the applicable block(s) next to any test results (including those conducted in conjunction with this physical exam)  which you reviewed and relied upon, at least in part, to base your medical assessments and conclusions - especially those on the next page. Be sure to show the date(s) of each test, and summarize the results.

| | | Dates | Summary of Results |
|---|---|---|---|
| [x] | Chest X-ray | 11/15/94 | I see no evidence of pneumoconiosis. |
| [x] | Vent Study (PFS) | 11/15/94 | PRE: FEV1 2.22 or 62%, MVV 78 or 55%, FVC 4.34 or 96% |
| [x] | Arterial Blood Gas | 11/15/94 | RESTING: pCO2 44.3, pO2 67.9, pH 7.393 |
| [x] | Other:    EKG | 11/15/94 | Sinus rhythm at 70, PR interval .12, QRS .08. Axis which is normal. |
| [ ] | Other: | | IMPRESSION: Normal EKG. |

D. **Present Illness/Physical Exam** (Continued)        (Please type or neatly print all responses.)

6. **Cardiopulmonary Diagnosis (es):** (And provide the **basis (es)** for your stated diagnosis (es).)

> I see no evidence of pneumoconiosis.

7. **Etiology of Cardiopulmonary Diagnosis (es):** (List Primary and Secondary Causes - if applicable - and Provide Rationale.)

> N/A.

8. **Impairment** – If the patient has chronic respiratory or pulmonary disease, give your medical assessment - With Rationale - of:

a. The degree of severity of the impairment, particularly in terms of the extent to which the impairment prevents the patient from performing his/her current or last coal mine job of one year's duration: (Refer to section B.1.a. of this form.)

> Patient's respiratory capacity cannot be determined due to patient's failure to comply with the testing protocol.

b. The extent to which each of the diagnoses listed in D.6. above contributes to the impairment:

> N/A.

9. **Non-Cardiopulmonary Diagnosis** – If the patient has any disabling **non-respiratory condition(s)** indicate what the condition is and describe its degree of impairment, especially as it may affect the patient's ability to perform his coal mine work:

> N/A.

E. **Physician Referral**

Should this patient be referred to another physician for further evaluation?  [ ] Y  [X] N    Has referral been made?  [ ] Y  [X] N
For what reason?

F. **Physician Signature**

I certify that the information furnished is correct and am aware that my signature attests to its accuracy. I am also aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000., or to imprisonment for up to one year, or both.

Signature: _____      Date: 11/15/94

(Physician's name should be typewritten on front page of this form.)

    *U.S. GPO:1991-312-377/51261

A657









### Which Medical Specialist For You



▷ **Statistics**







**Links**

# American Board of Medical Spec

  

## Certifications

**Important Notice: This service is not completely accepted by t and NCQA for commercial use to verify physician credentials b dates are supplied.**

**For a definition of a specialty or subspecialty <u>click here</u>**

### Mitchell Wicker Jr, MD
Locations:

**Hazard, KY  United States**

**Certified By: The American Board of Internal Medicine**

| General Certificates: | Subspecialty Certificates: |
|---|---|
| Internal Medicine | |

<u>Search Again</u>                    <u>Previous Search Results</u>

T

**Home | About ABMS | Who's Certified | Member Boards | Conferences Publications | Links | Contact Us | Search | Site Index**

**American Board of Medical Specialties**
1007 Church Street, Suite 404 | Evanston, IL 60201-5913
Phone Verification (866) ASK-ABMS
Phone: (847) 491-9091 | Fax: (847) 328-3596
*Copyright © 2004 American Board of Medical Specialties*

# Registrar of Vital Statistics
## Certified Copy



THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND - NOT A WHITE BACKGROUND

Form V. S. No. 2-A

**COMMONWEALTH OF KENTUCKY**
DEPARTMENT OF HEALTH
Bureau of Vital Statistics
**CERTIFICATE OF LIVE BIRTH**

Registration District No. **1180**   Primary Registration District No. **2161**

**1. PLACE OF BIRTH:**
(a) County **Pike**
(b) City or town **RURAL** (If outside city or town limits, write RURAL)
(c) Name of hospital or institution: **Etty, Kentucky** (If not in hospital or institution give exact number on reverse)
(d) Mother's stay before delivery!
In hospital or institution **In this community years** (Specify whether years, months, or days)

**2. A USUAL RESIDENCE OF MOTHER:**
(a) State **Kentucky**
(b) County **Pike**
(c) City or town **RURAL** (If outside city or town limits, write RURAL)
(d) Street No. **Etty, Kentucky** IF RURAL GIVE P. O. ADDRESS

**3. FULL NAME OF CHILD** **Joseph Fleming**

| 4. Sex | 5. If legitimate? **yes** | 6. Twin, triplet (or other) Number in order of birth **?** | 7. Number months of pregnancy **9** | 8. Date of birth **Sept 11 1945** (Month) (Day) (Year) |
|---|---|---|---|---|

**FATHER OF CHILD**
9. Full name **Arthur Fleming**
10. Color or race **W**   11. Age at time of this birth **21** yrs.
12. Birthplace **Etty, Kentucky**
13. Usual occupation **Coal miner**
14. Industry or business **Elkhorn Coal Co.**

**MOTHER OF CHILD**
15. Full maiden name **Minda Stewart**
16. Color or race **W**   17. Age at time of this birth **23** yrs.
18. Birthplace **Etty, Kentucky**
19. Usual occupation **house wife**
20. Industry or business **home**

21. Children born to this mother:
(a) How many other children of this mother are now living? **6**
(b) How many other children were born alive but are now dead? **0**
(e) How many other children were born dead? **0**

22. I hereby certify that I attended the birth of this child who was born alive at the hour of **12:10** p.m. on the date above stated and that the information given was furnished by **Arthur Fleming** related to this child as **father**
23. Date received by local registrar **10-25-1945**   Attendant's own signature **Margaret Stewart** (M.D., Midwife, or other)
24. **Lucille Pruitt** Registrar's Own Signature   Address **Etty, Kentucky**

Was blood test for Syphilis made on Mother? **no**   If not, why?
Name of test used ____ Date ____
Laboratory making test ____

Over

THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

I, Robert N. Hurst III, State Registrar of Vital Statistics, hereby certify this to be a true and correct copy of the certificate of birth, death, marriage or divorce of the person therein named, and that the original certificate is registered under the file number shown. In testimony thereof I have hereunto subscribed my name and caused the official seal of the Office of Vital Statistics to be affixed at Frankfort, Kentucky this **19th** day of **Feb.**, 19 **92**

**Robert N. Hurst**

U.S. PATENT NO'S. 4227725 4265400 4251100 4227719 4210246 4341404 4251647

A659




# Registrar of Vital Statistics
## Certified Copy

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND - NOT A WHITE BACKGROUND

Form V. S. No. 1-A

**FEDERAL SECURITY AGENCY**
**U.S. PUBLIC HEALTH SERVICE**
**NATIONAL OFFICE VITAL STATISTICS**

**COMMONWEALTH OF KENTUCKY**
DEPARTMENT OF HEALTH
Bureau of Vital Statistics

**CERTIFICATE OF LIVE BIRTH**

Registration District No. **880**    Primary Registration District No. **6621**

1. PLACE OF BIRTH:
(a) County: *Letcher*
(b) City or town: *Jackhorn* (If outside city or town limits, write RURAL)
(c) Name of hospital or institution:
(If not in hospital or institution give street number or location)
(d) Mother's stay before delivery:
In hospital or institution ___ in this community ___
(Specify whether years, months, or days)

2. USUAL RESIDENCE OF MOTHER:
(a) State: *Ky.*
(b) County: *Letcher*
(c) City or town: *Jackhorn* (If outside city or town limits, write RURAL)
(d) Street No.: 
IF RURAL GIVE P. O. ADDRESS

3. FULL NAME OF CHILD: *Arlena Belle Hunsucker*    Weight ___ lbs. ___ ozs.

4. Sex: *Girl*    5. Legitimate: *Yes*    6. Twin, triplet or other—Number in order of birth    7. Number months of pregnancy: *9*    8. Date of birth: *3-3-48* (Month) (Day) (Year)

**FATHER OF CHILD**

9. Full name: *James Aslin Hunsucker*
10. Color or race: *W*    11. Age at time of this birth: *54* yrs.
12. Birthplace: *Wise Co., Va.*
13. Usual occupation: *Miner*
14. Industry or business:

**MOTHER OF CHILD**

15. Full maiden name: *Janie Bell Hammonds*
16. Color or race: *W*    17. Age at time of this birth: *40* yrs.
18. Birthplace: *Wise Co., Va.*
19. Usual occupation: *Housewife*
20. Industry or business:

21. Children born to this mother: *12*
(b) How many other children were born alive but are now dead? *3*

(a) How many other children of this mother are now living? *8*
(c) How many children were born dead? *0*

22. I hereby certify that I attended the birth of this child who was born alive at the hour of *8* A. m. on the date above stated and that the information given was furnished by *Jas. Hunsucker*, related to this child as *father*
Data received by local registrar *3-13-48*    Attendant's own signature: *J. R. Shieswood* (M.D., Midwife, or Other)
Registrar's Own Signature: *E. M. Collins*    Address: *Fleming, Ky.*

Were blood test for Syphilis made on Mother? *no*    If not why?
Name of test used: ___    Date ___

Over

THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

I, Robert N. Hurst III, State Registrar of Vital Statistics, hereby certify this to be a true and correct copy of the certificate of birth, death, marriage or divorce of the person therein named, and that the original certificate is registered under the file number shown. In testimony thereof I have hereunto subscribed my name and caused the official seal of the Office of Vital Statistics to be affixed at Frankfort, Kentucky this *19th* day of *Feb.*, 19 *92*

*Robert N. Hurst*

U.S. PATENT NO's 4227728 4295468 4318166 4227718
4218346 4341404 4351547

A660

# COMMONWEALTH OF VIRGINIA

### STATE DEPARTMENT OF HEALTH, RICHMOND

## CERTIFICATE OF MARRIAGE

I, _____ Marion A. Coe _____, A _____ Appointed

_____ By the Court _____, CHURCH, OR RELIGIOUS

OF THAT NAME, DO CERTIFY THAT ON THE _____ 31 _____ DAY OF _____ Aug

AT _____ Clintwood _____, VIRGINIA UNDER AUTHORITY OF A LICENSE ISS

_J. C. Slater_ dep CLERK OF THE _Circuit_ COURT OF _Dickenson_

OR COUNTY, STATE OF VIRGINIA, DATED THE _31_ DAY OF _Aug_

I JOINED TOGETHER IN THE HOLY STATE OF MATRIMONY:

_Danny Joseph Fleming_ HUSBAND, AND _Arlene Bell Hunsucker_ H

GIVEN UNDER MY HAND THIS _31_ DAY OF _Aug_

_Marion A. Coe_

(PERSON WHO PERFORMS CEREMONY SIGN HERE.)

TO BE DELIVERED BY THE CELEBRANT TO THE PERSONS MARRIED.

```
SSA-1826             ITEMIZED STATEMENT OF EARNINGS        JOB: 9586
VERSION 1984.002 * * *    FOR SSN 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      * * *


FROM:   SOCIAL SECURITY ADMINISTRATION
        OFFICE OF CENTRAL RECORDS OPERATIONS
        BALTIMORE, MARYLAND  21235-0000


DEPARTMENT OF LABOR, COAL MINE WORKERS    NUMBER HOLDER NAME:
                                          JOSEPH    FLEMING

334 MAIN STREET 5TH FL
1ST NATIONAL BANK BLDG

PIKEVILLE              KY  41501-0000

PERIOD REQUESTED   JANUARY 1961  THRU  DECEMBER 1993

YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC     TOTAL

EMPLOYER NUMBER: 59-0908948
H D CAFETERIA INC
130 37TH AVE N
ST PETERSBURG   FL 337041414

1962                             9.50              $     9.50

EMPLOYER NUMBER: 35-9991567



1962                                        195.00 $     195.00
1963     245.70      257.40      304.44     298.11 $   1,105.65
1964     298.11      298.11       99.37      72.22 $     767.81
1965      46.78                                    $      46.78

EMPLOYER NUMBER: 34-0906511
JET CAR WASH INC
RT 254 & OBERLIN AVE
LORAIN    OH 440530000

1965       6.00                                    $       6.00
                          PAGE 001
```

1.4

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS           JOB: 9586
VERSION 1984.002 * * *     FOR SSN 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      * * *


YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC     TOTAL


EMPLOYER NUMBER:  34-4361040
DANA CORPORATION
DANA CORPORATION AND SUBSIDIARIES
PO BOX 1000
TOLEDO    OH 436971000

1965                    762.81                       $     762.81

EMPLOYER NUMBER:  38-0572515
GENERAL MOTORS CORPORATION
PO BOX 9029
WARREN    MI 480909029

1965                                670.23   1,842.80 $   2,513.03
1966     1,037.75     1,116.73      258.85            $   2,413.33
1967       895.15                   149.04     579.42 $   1,623.61
1968        92.38                                     $      92.38

EMPLOYER NUMBER:  38-1804554
JAMES A DOWDAL
CLARK STATION
106 S GROVE
YPSILANTI    MI 481970000

1966                    759.10      215.00            $     974.10
1967        21.00                                     $      21.00

EMPLOYER NUMBER:  34-0367600
LUBRIZOL CORP
29400 LAKELAND BLVD
WICKLIFFE     OH 440922201

1966                                272.78   1,211.94 $   1,484.72
1967       432.74                                     $     432.74

EMPLOYER NUMBER:  34-0808668
RES-TEP INC
1340 EAST 222ND ST
CLEVELAND    OH 441170000

1966                                 72.00            $      72.00

                              PAGE 002
```

```
SSA-1826            ITEMIZED STATEMENT OF EARNINGS          JOB: 9586
VERSION 1984.002 * * *      FOR SSN 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      * * *


YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT    OCT - DEC     TOTAL


EMPLOYER NUMBER:  38-1663348 A
COY KENDALL GREEN HOUSES INC
17155 MARTINSVILLE RD
BELLEVILLE    MI 481113073

1966       -            -            -            -      $       5.25

EMPLOYER NUMBER:  34-0876523
LORAIN BROADWAY LUMBER &
 MATERIAL CO INC
1071 BROADWAY AVE
LORAIN    OH 440520000

1967                            37.00                   $      37.00

EMPLOYER NUMBER:  34-0922036
HARRY FIOR
FIOR CONTRACTOR
257 NO WOODHILL DR
AMHERST    OH 440010000

1967                           182.00                   $     182.00

EMPLOYER NUMBER:  39-0212761
CLARK OIL & REFINING CORPORATION
8530 W NATIONAL AVE
MILWAUKEE    WI 532010000

1967                                             12.80 $      12.80
1969       420.64                             1,050.00 $   1,470.64
1970                                            381.64 $     381.64

EMPLOYER NUMBER:  61-0578325
MARTHA N SELDEN
702 WICKLOW RD
LOUISVILLE    KY 402070000

1968       240.00                                       $     240.00
```

PAGE 003

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS           JOB: 9586
VERSION 1984.002 * * *    FOR SSN 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      * * *


YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC     TOTAL


EMPLOYER NUMBER:  61-0587325
CHARLES M HOLBROOK
HOLBROOK SERVICE STATION
NEON    KY 418400000

1968                    60.00                      $       60.00

EMPLOYER NUMBER:  31-0739658
TRUE MASONRY INC
9994 CUNNINGHAN RD
CAMP DENNISON   OH 451110000

1968                               144.38          $      144.38

EMPLOYER NUMBER:  38-0419960
CHRYSLER MOTORS CORPORATION
12000 CHRYSLER DR
HIGHLAND PARK   MI 482881899

1968                               905.45   1,620.16 $    2,525.61
1969         384.84                                $       384.84

EMPLOYER NUMBER:  61-0588707
ED KINCER SELDOM WRIGHT DAVID
 PRICE ETAL PTR
PEEM COAL CO
WHITESBURG    KY 418580000

1970                                72.00          $       72.00

EMPLOYER NUMBER:  38-1944156
ELESON A WILMOTH
CLARK SUPER 100
304 NERRE WHITSON
COOKEVILLE    TN 385010000

1970                                            84.00 $     84.00
                              PAGE 004
```

A665

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS        JOB: 9586
VERSION 1984.002 * * *     FOR SSN 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     * * *
```

```
YEAR   JAN - MARCH   APRIL -JUNE   JULY - SEPT   OCT - DEC     TOTAL
```

```
EMPLOYER NUMBER:  64-0434044
MRS JOE W BROWN
BROAD WATER BEACH HOTEL
PO BOX 127
BILOXI    MS 395330127

1970                                              272.00 $      272.00

EMPLOYER NUMBER:  94-1497173
CHEVRON U S A INC
575 MARKET ST
SAN FRANCISCO   CA 941052823

1970                                               53.46 $       53.46

EMPLOYER NUMBER:  61-0665453
RUDOLPH WILLIAMS C E KINCER SELDOM
 WRIGHT DAVID PRICE JENNIFER PRICE
 & DEENA RENEE SMITH
HIGH POINT COAL COMPANY
BOX 340

1971         57.50                                        $       57.50

EMPLOYER NUMBER:  61-0711011
ARCHER & CLUBB COAL CO INC
BOX 308
NEON    KY 418400000

1971                                  200.70             $      200.70

EMPLOYER NUMBER:  61-0716331
POM CORP
BOX 374
ANN ARBOR    MI 481070000

1971                                            2,978.75 $    2,978.75
1972        584.50                                       $      584.50
```

PAGE 005

A666

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS        JOB: 9586
VERSION 1984.002 * * *      FOR SSN 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       * * *


YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC     TOTAL


EMPLOYER NUMBER:  62-0697493
BROWNLEE-KESTERTON INC
3409 HENSON RD
PO BOX 89
KNOXVILLE    TN 379010000

1972                   12.50                     $      12.50

EMPLOYER NUMBER:  59-0720444
GENERAL DEVELOPMENT CORPORATION
U S BANKRUPTCY COURT D I P
2601 SO BAYSHORE DR
MIAMI     FL 331335460

1972                              398.40   2,552.82 $   2,951.22
1973      2,547.72       235.20                    $   2,782.92

EMPLOYER NUMBER:  59-1264428
ATLANTIC CONDOMINIUMS INC
PO BOX 305
FT PIERCE   FL 334540000

1972                              396.13           $     396.13

EMPLOYER NUMBER:  82-0100960
BOISE CASCADE CORPORATION
% CORPORATE TAX DEPT
PO BOX 50
BOISE    ID 837280050

1972                              241.51    10.70 $      252.21

EMPLOYER NUMBER:  59-1316155
WILLIAM H HENSICK & SONS INC
PO BOX 309
VERO BEACH    FL 329610309
1973                   223.13                     $     223.13
                            PAGE 006
```

A667

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS         JOB: 9586
VERSION 1984.002 * * *     FOR SSN 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      * * *


YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC     TOTAL


EMPLOYER NUMBER:  61-0675550
ASA WRIGHT & ESTILL D BANKS
A & E COAL CO
A&E COAL CO RT 1 BOX 57
JACKHORN    KY 418250000

1973                               60.00                $      60.00

EMPLOYER NUMBER:  61-0658048
GOVERNOR ELKHORNS COAL COMPANY INC
 HOBERT C JOHNSON
PO BOX 550
PIKEVILLE     KY 415020550

1973                                            339.00 $     339.00

EMPLOYER NUMBER:  62-6030561
SCOTIA COAL CO
P O BOX 10080
KNOXVILLE     TN 379190000

1974             1,358.90    2,432.30    2,595.97 $    6,387.17
1975   2,315.91  4,752.52    2,560.65    4,022.44 $   13,651.52
1976   2,199.32  2,566.20    4,000.53    4,773.88 $   13,539.93
1977   3,142.50  1,496.22      851.08             $    5,489.80

EMPLOYER NUMBER:  61-0671178
SCOTIA EMPLOYEES ASSOCIATION
HC 67 BOX 568
CUMBERLAND, KY  40823

1975     40.00                                   $      40.00
1977    356.00                                   $     356.00

EMPLOYER NUMBER:  61-0184050
ELKHORN & JELLICO COAL CO INC.
PO BOX 929
LEXINGTON, KY  40588

1978      -          -          -          -     $    1,255.67
```

PAGE 007

```
SSA-1826            ITEMIZED STATEMENT OF EARNINGS        JOB: 9586
VERSION 1984.002 * * *    FOR SSN 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    * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  61-0594344
BRANHAM & BAKER COAL CO INC
PO BOX 271
PRESTONSBURG, KY  41653
```

| 1978 | - | - | - | - | $ 4,155.00 |

```
EMPLOYER NUMBER:  61-0861383
JOHNSON & SONS COAL CO INC
P O BOX 412
VIRGIE, KY  41572
```

| 1978 | - | - | - | - | $ 60.00 |

```
EMPLOYER NUMBER:  61-0931163
ANCOAL MINING CORPORATION
 % DELMER KINCER
BOX 1037
WHITESBURG, KY  41858
```

| 1979 | - | - | - | - | $ 2,227.50 |

```
EMPLOYER NUMBER:  61-0944518
ACTION ENERGIES INC
PO BOX 3219
PIKEVILLE, KY  41502
```

| 1979 | - | - | - | - | $ 2,575.13 |
| 1980 | - | - | - | - | $ 3,696.00 |

```
EMPLOYER NUMBER:  54-1025698
PARAMOUNT MINING CORPORATION
PO BOX 800
WISE, VA  24293
```

| 1980 | - | - | - | - | $ 2,860.00 |

PAGE 008

A669

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS         JOB: 9586
VERSION 1984.002 * * *      FOR SSN 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      * * *


YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC    TOTAL


EMPLOYER NUMBER:  61-0949740
SULLIVAN BROTHERS INC
PO BOX 171
BELCHER, KY  41513

1980       -          -            -            -       $     965.59

EMPLOYER NUMBER:  61-0857570
EVERIDGE & NEASE COAL CO INC
HC 85 BOX 1484
WHITESBURG, KY  41858

1985       -          -            -            -       $   3,168.74

EMPLOYER NUMBER:  13-1996648
UNIFORCE SERVICES INC
1335 JERICHO TPKE
NEW HYDE PARK, NY  11040

1987       -          -            -            -       $     427.50

EMPLOYER NUMBER:  11-2904255
U N F SERVICES INC
 132 4TH ST GARDEN CITY PARK
PO BOX 1176
NEW HYDE PARK, NY  11040

1988       -          -            -            -       $   1,118.25

EMPLOYER NUMBER:  61-0977718
WAMPLER BROTHERS COAL CO INC
RT 3 BOX 6B
LEBANON, VA  24266

1988       -          -            -            -       $  11,884.65
1989       -          -            -            -       $  13,199.71
```

PAGE 009

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS              JOB: 9586
VERSION 1984.002 * * *     FOR SSN 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        * * *


  YEAR   JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL


  EMPLOYER NUMBER:  54-1490968
  ABERRY COAL INC
  PO BOX 426
  POUND, VA  24279

  1989        -            -            -            -       $     9,030.00
  1990        -            -            -            -       $    24,451.50
  1991        -            -            -            -       $     6,401.75

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS, IF ANY, FOR THE YEAR THIS STATEMENT IS
PRINTED ARE NOT YET AVAILABLE FROM OUR RECORDS.

                            PAGE 010 END
```

A671

**Description of Coal Mine Work and Other Employment**

**U. S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| This report is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et.seq.). While you are not required to respond, your cooperation is needed to ensure that this claim is given full and proper consideration. | OMB No. 1215 - 0056 Expires: 03-31-96 |
|---|---|

| Miner's Name | Claim Number |
|---|---|
| Joseph Fleming | 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 |

Please provide the following information concerning your current or last coal mine work, or the miner's last coal mine work prior to death.

### PART I – DESCRIPTION OF COAL MINE WORK

| 1. Job title MINER OPER. ROOF BOLTER | 2. Dates worked (Month and year) From: 8/89   To: 4/91 |
|---|---|
| 3. Highest or current rate of pay $ 12.00 HR. | 4. Number of days worked per week 6 days |

5. Describe the duties of this job in your own words:

AS MINER OPER WAS RESPONSIBLE FOR EXTRACTION OF COAL AT FACE OF MINE. USING A CONTINIOUS MINER,

AS ROOF BOLTER WAS RESPONSIBLE FOR DRILLING TOP OF MINE FOR TEST HOLES + INSTALLATION OF BOLTS FOR ROOF SUPPORT

6. List all other jobs you or the deceased miner did in the coal mines for at least one year.

| a. Job Title | b. Dates Worked (Month and Year) | |
|---|---|---|
| | From | To |
| SHUTTLE CAR OPER | 7/69 | 4-91 |
| SCOOP OPER | " | " |
| ROOF BOLTER OPER | " | " |
| MINER OPER | " | " |
| | | |
| | | |
| | | |

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0056), Washington, D.C. 20503.

1,3

**DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES**

Form  CM-913

7. Describe the physical activity required by the coal mine job described in number 5.

Sitting for ____5____ hours (Give number of hours per day).

Standing for ____3____ hours (Give number of hours per day).

Crawling _____ (distance) for _____ hours per day.

Lifting ____30 LBS____ pounds ____10____ times per day.

_____ pounds _____ times per day.

_____ pounds _____ times per day.

( Example:  25 pounds ten times per day )

Carrying _____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

( Example:  20 pounds 50 feet 15 times per day )

8. Did the coal mine job discussed above involve:

1. The use of tools, machines or equipment:?  ☑ Yes   ☐ No

2. Technical knowledge or special skills?  ☑ Yes   ☐ No

3. Any supervisory responsibilities?  ☐ Yes   ☒ No

Please explain all "Yes" answers.  For example, the specific type of tools, machines or equipment used; the nature of any technical knowledge or special skills needed and the nature of any supervisory duties including the number and type of employees  supervised, the extent to which they had to be supervised, etc.

1. CONTINOUS MINING MACH
2. KNOWLEDGE OF EXTRACTION METHODS

9. Were you (or the deceased miner) transferred from a previous job due to health reasons?

☐ Yes   ☑ No   If "Yes", provide the following information:

a. Previous Job:

b. Job transferred to:

c. Effective date of transfer:

d. Reason:

e. If coal mine work has stopped, give reason and last date worked:

DISABLING BACK INJURY  4/1/91

A673

## PART II - DESCRIPTION OF OTHER EMPLOYMENT

Please provide the following information about current or last non-coal mine employment.

| 10. Job title | 11. Type of business or industry |
|---|---|
| GAS STATION OPER | GAS N OIL |

| 12. Dates worked (Month and year) | 13. Highest or current rate of pay | 14. Number of days worked per week |
|---|---|---|
| From: 7/67  To: 6/69 | 200°° wk | 5 - 6 |

15. Describe the duties of this job in your own words:

MANAGED ALL FINANCIAL ASPECTS OF STATION, SCHEDULED
WORK FORCE, SUPERVISED EMPLOYEES

16. Describe the physical activity required by the job described above.

Sitting for 2 hours per day.    Standing for _____ hours per day.

Lifting 2 LBS pounds 3 times per day.

_____ pounds _____ times per day.

_____ pounds _____ times per day.

( Example:  25 pounds ten times per day )

Carrying _____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

_____ pounds _____ ( distance ) _____ times per day.

( Example:  20 pounds 50 feet 15 times per day )

17. Did the job discussed above (10 to 16) involve:

1. The use of tools, machines or equipment?    ☐ Yes    ☑ No

2. Technical knowledge or special skills?    ☐ Yes    ☑ No

3. Any supervisory responsibilities?    ☑ Yes    ☐ No

Please explain all "Yes" answers. For example, the specific type of tools, machines or equipment used; the nature of any technical knowledge or special skills needed and the nature of any supervisory duties including the number and type of employees supervised, the extent to which they had to be supervised, etc.

3-4 EMPLOYEES, SHIFT CHANGE

18. If work has stopped, give date of last employment and reason.

| Date | Reason for stopping |
|---|---|
| 6/69 | CHANGE JOBS |

PART III

19. Use this section for additional space to answer any previous questions or to provide any other information you feel would be helpful. Please refer to previous questions by number. If more space is needed, use a blank sheet and attach.

## PRIVACY ACT

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claim adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits.

I certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| Signature of claimant or person filing on his/her behalf | Date |
|---|---|
| | 12/20/94 |

☆ U.S. GPO:1993-361-855/99067

Employment History

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

Note: Please complete as accurately as possible the miner's complete employment history. (Where employment was in coal mining, specify whether the mine was a strip mine or an underground mine.) This report is authorized by law (30 U.S.C. 901 et. seq.). While you are not required to respond, your cooperation is needed to ensure that full and proper consideration is given to this claim. Disclosure of the social security number is voluntary. Failure to disclose such number will not result in the denial of any right, privilege or benefit to which you may be entitled.

OMB No. 1212-0052
Expires: 06-30-92

Miner's Name: **Joseph Fleming**

Miner's Social Security Number: **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**

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel manufacturing or other) Occupation | 3. Occupation (Specify type of work) | 4. Period of Employment Mo/Yr – Mo/Yr | 5. Exposure to dust, gases, or fumes? (Yes/No) |
|---|---|---|---|---|
| ✓ A Berry Coal THORNTON KY | MINER OPER, ROOF BOLTER COAL EXT | MINER | 8/81 – 4/91 | Yes |
| ✓ WAMPLER BROS MAYKING KY | ROOF BOLTER COAL EXT | MINER | 2/88 – 8/89 | Yes |
| ✓ ACTION ENERGY PIKEVILLE KY | ROOF BOLTER COAL EXT | MINER | 5/81 – 7/82 | Yes |
| ✓ PARMOUNT MINING MAYKING KY | ROOF BOLTER COAL EXT | MINER | 4/80 – 5/81 | Yes |
| Perry KINCER BROS MAYKING KY | SCOOP OPER. ROOF BOLTER COAL EXT | MINER | 10/71 – 10/79 | Yes |
| LEWIS MINING NEON KY | SCOOP OPER. COAL EXT | MINER | 8/77 – 8/78 | Yes |
| ✓ SCOTIA COAL PARTRIDGE KY | SHUTTLE CAR OPER SCOOP OPER COAL EXT | MINER | 9/73 – 7/77 | Yes |
| SOUTH EASTERN KY COAL CO | JENKINS KY COAL EXT | AUGER STRIP MINING | 7/6 – 8/71 | Yes |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

1.2

Form CM-911a

| 1. Name and Address of Employer (City and State) | 2. Type of Industry (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other) | 3. Occupation (Specify type of work) | 4. Period of Employment | | 5. Exposure to dust, gases, or fumes? |
|---|---|---|---|---|---|
| | | | Mo/Yr | Mo/Yr | (Yes/No) |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I hereby certify that the information given me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| 6. Signature of Claimant (First, middle, last) | 7. Date (Month, date, year) |
|---|---|
| *Joseph Fleming* | 12/19/94 |

| 8. Mailing Address (Number, Street, Apt. No., P.O. Box or Rural Route) | 9. City and State |
|---|---|
| *General Delivery Jackhorn* | *Neon* |

| 10. ZIP Code | 11. County where you live | 12. Telephone number (include area code) |
|---|---|---|
| *Ky 41825* | *Letcher* | *855 - 4215* |

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of Witness | Signature of Witness |
|---|---|
| Address (Number, Street, City, State & ZIP Code) | Address (Number, Street, City, State & ZIP Code) |

### Public Burden Statement

Public reporting burden for this collection of information is estimated to average 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0052), Washington, D.C. 20503.

DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES

A677

# WORK HISTORY

JOSEPH FLEMING
404 60 0560

| | FROM | TO |
|---|---|---|
| 1. ABERRY COAL CO POUND VA. | 8/89 | 4/91 |
| 2. WAMPLER BROS COAL CO. MAYKING KY | 2/88 | 8/89 |
| 3. ACTION ENERGY PIKEVILLE KY | 5/81 | 7/82 |
| 4. PARAMONT MINING NORTON VA. | 4/80 | 5/81 |
| 5. KINLER BROS MAYKING KY | 10/71 | 10/79 |
| 6. LEWIS MINING CO. NEON KY | 8/77 | 8/78 |
| 7 SCOTIA COAL PARTRIDGE KY | 2/73 | 7/77 |
| 8 SOUTHEASTERN COAL NEON | 7/69 | 8/71 |

Miner's Claim For Benefits Under
The Black Lung Benefits Act

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



I hereby claim all benefits which may be payable to me under the Black Lung Benefits Act. I also hereby apply on behalf of my family for any benefits that may be payable under the Act. *Joseph Henry*

OMB No. 1215-0052
Expires: 03-31-95

**(FOR DOL USE)**

**IMPORTANT:** No benefits may be paid under the Black Lung Benefits Act unless a completed application form has been received. (30 U.S.C. 901 et. seq.) Completion of this form may represent a claim against an individual coal mine operator. If such operator is involved, a copy of this form will be provided to that operator.

| 1. Miner's full name (First, middle, last) | 2. Miner's Social Security Number |
|---|---|
| *Joseph Fleming* | 404 60 0560 |

| 3. Miner's Date of birth (Month, day, year) | 4. Highest grade miner completed in school |
|---|---|
| *9/11/45* | *12* |

5. Have you (or someone on your behalf) ever filed a claim for Federal Black Lung benefits before?

☐ Yes   ☒ No

6. Decision made (If more than one claim filed, identify and show disposition of each in item 20, "Remarks")

☐ Allowed   ☐ Denied
☐ Withdrawn   ☐ Pending

7. Are you still working in or around coal mines?

☐ Yes   If "yes," answer only c.
☒ No   If "no," answer a-c.

a. When did you stop working in or around coal mines or a coal preparation facility in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

*4 - 1 - 91*

b. Why did you stop working in or around coal mines or in a coal preparation facility in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

*due TO BACK INJURY*

c. Have you ever been transferred from your regular coal mine job to lighter duty?

☐ Yes   ☒ No

If "yes," provide date and reasons why you were transferred. Use space in item 20, "Remarks".

8. How many years have you worked in or around coal mines, or in a coal preparation facility in the extraction or preparation of coal, or worked in coal mine construction or transportation in or around a coal mine? *20 YRS* To the best of your knowledge list your complete coal mine Employment History on Form CM-911a.

~~See ... CM-911 711A FORM~~

**NOTE:** If available evidence is not sufficient to arrive at a determination, you may be requested to have an independent medical examination at no expense to you. Should the Department of Labor obtain information useful to your physician for treatment, such information may be furnished to that physician.

9. Describe briefly any disability you believe you have due to pneumoconiosis (Black Lung) or other respiratory or pulmonary disease resulting from coal mine employment. Specifically, what aspect(s) of your regular job in the coal mines are you physically unable to perform as a result of your disability?

*EXTREME SHORTNESS OF BREATH Lack OF STAMINA, INCREASED COUGHING, CHEST PAIN SWELLING OF FEET & ANKLES, COUGHING UP PHLEGM FROM LUNGS. SLEEP INTERRUPTED due TO SMOTHERING & COUGHING*

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 45 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0052), Washington, D.C. 20503.

**DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES**

Form CM-911
Rev. April 1993

NOTE: The amount of any state or Federal Workers' Compensation or Occupational Disease benefits you are receiving based on your disability due to coal workers' pneumoconiosis will be subtracted from your benefits under Part C of the Black Lung Benefits Act.

**10.** Have you filed a workers' compensation claim under any state or Federal law on account of your disability, due to coal workers' pneumoconiosis?

☑ Yes   ☐ No   (If "yes", complete items a through j).

**a.** With what state or Federal agency was the claim filed?
FRANK FORT _DOWC_

**b.** Approximate date of filing:
JAN 92

**c.** Claim No.:
92-19353

**d.** Decision made
☑ Allowed   ☐ Denied   ☐ Pending

**e.** Employer against whom Workers' Compensation Claim was filed?
ABERRY COAL CO

**f.** Amount of payment:

Weekly: $ _____ per week

Other: $ _____ per

**g.** Date payment began:

Date payment ended:

**h.** Did you pay any attorney's fees or legal fees in securing your workers' compensation award?

☑ Yes   ☐ No

**i.** If you have received a lump-sum payment based on your compensation claim, please indicate the following:

Period covered (fill in below):   Amount: $ 15,000 00

From:   To: APR 94

**j.** Do you receive any medical treatment benefits as part of your Workers' Compensation benefits?   ☐ Yes   ☑ No

NOTE: The amount of your earnings, either as an employee or from self-employment, will help us to determine the correct amount of black lung benefits to which you may be entitled. This information is required by the 1981 Amendment to the Black Lung Benefits Act.

**11a.** Enter the names and addresses of all persons, companies, or government agencies for which you worked during the previous calendar year. If self-employed, so indicate.

| Name and Address of Employer | Work Began Month, Year | Work Ended Month, Year | Approximate Earnings |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**b.** How much do you expect your total earnings to be this year? (Count all of your earnings beginning with the first of the year and all expected earnings through the end of this year.)   $ _____

**12.** Are you married now? ☑ Yes   ☐ No

(If "Yes" Complete items a-g.)

(If "No" go to item 13).

**a.** Date of marriage
8/31/64

**b.** Check whether your present marriage was performed by:

☑ Clergyman   ☐ Authorized Public Official

☐ Other (Explain in item 20, 'Remarks")

**c.** Your wife's maiden name (Print)
ARLENA B HUNSUCKER

SSN:

**d.** Her birth date
3/3/48

**e.** Do you and your wife live together?

☑ Yes   ☐ No   (If "no", answer items f and g)

**f.** Are you under a court order to make support payments to your wife?

☐ Yes   ☑ No   (If "yes", attach a copy of the order)

**g.** Do you make regular support payments to your wife?

☐ Yes   ☑ No   (If "yes", indicate amount)

$ _____ per _____
(week, month, other)

**13.** Were you previously married?   ☐ Yes   ☑ No   (If "yes" answer a through f)

**a.** Full name of previous wife:

**b.** Date married (Month, day, year)

**c.** Place married (City & State)

**d.** How marriage ended: (death, divorce)

**e.** Date marriage ended:

**f.** Place marriage ended (City, State)

If prior marriage ended by divorce and you were married for 10 years before the divorce action, answer questions 14 and 15.

**14.** Are you under a court order to make support payments to a divorced wife?

☐ Yes   ☐ No   (If "yes", attach a copy of the orders)

**15.** Do you make substantial contributions to a divorced wife?

☐ Yes   ☐ No   (If "yes", indicate amount)

$ _____ per _____
(week, month, other)

16. Do you have any **Unmarried** children wh ...

List All Such ... ren In Order Of Birth
Beginning With The Oldest

(Use "Remarks" space if space below is insufficient.)

Under age 18    ☐ Yes    ☒ No

Age 18-23 and attending school    ☐ Yes    ☒ No

Age 18 or older and disabled    ☐ Yes    ☐ No

| Check (X) sex of child | | Date of Birth (Mo., day, yr.) | Check (X) if child 18 or over is student or disabled | | Check (X) the column that shows child's relationship to you | | | | |
|---|---|---|---|---|---|---|---|---|---|
| M | F | | STUDENT | DISABLED | LEGITIMATE | ADOPTED | STEPCHILD | OTHER | |

| Full name of child: | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SSN: | | | | | | | | | | |
| Full name of child: | | | | | | | | | | |
| SSN: | | | | | | | | | | |
| Full name of child: | | | | | | | | | | |
| SSN: | | | | | | | | | | |
| Full name of child: | | | | | | | | | | |
| SSN: | | | | | | | | | | |

**If Any Child Named Above Does Not Live With You, Enter The Name And Address Of The Person Or Organization With Whom The Child Lives In Item 20, "Remarks".**

17. The events listed below may affect the amount of your Federal Black Lung Benefits:

Your condition improves; or

You become entitled to receive workers' compensation or occupational disease payments due to disability on account of pneumoconiosis; or

The amount of any of the benefits described above to which you are entitled changes; or

You work in or around coal mines or in any other employment, including self-employment.

The events listed below relating to your dependents may also affect the amount of your Federal Black Lung Benefits:

A dependent marries, divorces, dies, or is adopted by someone else; or

A child 18-23 stops attending school, or in the case of a disabled child 18 or older, the disabling condition improves.

It is **IMPORTANT** that you report **PROMPTLY** any of the above events which occur.

Do you agree to notify the Department of Labor if any of the above events occur?    ☒ Yes    ☐ No

18. Do you authorize any physician, hospital, agency, employer or other organization (including the Social Security Administration) to disclose to the Department of Labor any medical records, or information about your disability or any other information pertinent to your claim?    ☒ Yes    ☐ No

19. Do you authorize the Department of Labor to give information about the decision on your Black Lung Benefits claim to the Workers' Compensation, Unemployment Compensation, or Disability insurance agency of your State for use in connection with a claim you may have with that agency?    ☒ Yes    ☐ No

20. Remarks: (You may use this space for any explanations. If you need more space attach a separate sheet.)

Remarks - Continued

## PRIVACY ACT STATEMENT

The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this report is required under the Black Lung Benefits Act. (2) The information in the report will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claims adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled).

COMPUTER MATCHING PROGRAM: The Department of Labor conducts computer matches with the Department of Health and Human Services and the Department of Veterans Affairs. Any information provided by applicants for and recipients of financial assistance or payments under Federal benefit programs may be subject to verification through computer matches which the Department of Labor conducts with these agencies.

## SIGNATURE OF MINER

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment for not more than one year or both.

| 21. Signature of Claimant (First, middle, last)  *Joseph Fleming* | 22. Date (Month, day, year)  *11/1/94* |
|---|---|
| 23. Mailing Address (Number, Street, Apt. No., P.O. Box or Rural Route)  *Gen Del JACKHORN Ky 41825* | 24. City and State  *JACKHORN KY* |
| 25. ZIP Code  *41825* | 26. County Where You Now Live  *LETCHER* | 27. Telephone Number (include area code)  *606 855 4215* |

Witnesses are required ONLY if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| 28. Signature of witness | 29. Signature of witness |
|---|---|
| 30. Address (Number, street, city, state & ZIP code) | 31. Address (Number, street, city, state & ZIP code) |

IN THE UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES

JOSPEH FLEMING,                              )
                                             )
                  Claimant,                  )
                                             )
v.                                           )        Case No.:  2012-BLA-05241
                                             )        OWCP No.:  XXX-XX-0560
ABBERY COAL, INC.,                           )
                                             )
                  Employer,                  )
                                             )
SECURITY INSURANCE COMPANY                   )
OF HARTFORD C/O ARROWPOINT                   )
CAPITAL,                                     )
                                             )
                  Insurer.                   )
and                                          )
                                             )
DIRECTOR, OFFICE OF WORKERS'                 )
COMPENSATION PROGRAMS,                       )
                                             )
                  Party-In-Interest.         )

## EMPLOYER'S CLOSING ARGUMENT

### STATEMENT OF THE CASE

This claim is before the Court on a subsequent claim for benefits filed by the claimant on July

19, 2010.  (DX 3).[1]  The Department of Labor issued a Proposed Decision and Order ("PDO")

awarding benefits on September 20, 2011, and the employer requested that the claim be forwarded to

the Office of Administrative Law Judges for a formal hearing.  (DX 25, 26).  The Honorable Daniel

Solomon conducted a hearing on October 16, 2012.  During the hearing, the ALJ accepted into

evidence DX 1-33, CX 1-5, and EX 1-11.  (Tr. at 5, 8, 35).  The ALJ left the record open for thirty

---

1.  The employer will refer to the Director's Exhibits as "DX," Claimant's Exhibits as "CX," the Employer's
Exhibits as "EX," and the Hearing Transcript as "Tr."

Bristol: 363288-1

A683

days following the hearing. (Tr. at 13). The claimant submitted CX 6, a rereading of a March 28, 2012 digital image, on December 13, 2012.

The claimant filed his initial application for benefits on November 1, 1994. (DX 1). That claim was denied by the Department of Labor on March 1, 1995, on the basis that claimant did not have pneumoconiosis and that he was not totally disabled by the disease. (DX 1).

### STIPULATIONS

The employer does not contest the issues of timeliness, post-1969 employment, that the claimant was a miner, that the claimant has one dependent for the purposes of augmenting benefits, or that it was properly named the responsible operator for purposes of the present claim.

### ISSUES

The issues that remain in contention are pneumoconiosis, causation of pneumoconiosis, total disability due to pneumoconiosis, and length of coal mining employment.

Bristol: 363288-1

## MEDICAL EVIDENCE IN CURRENT CLAIM

### X-RAY EVIDENCE

| Date of X-ray | Exhibit | Physician | Qualifications | Interpretation |
|---|---|---|---|---|
| 1/14/11 | DX 12 | Baker | B | t/t, 4z, 1/1 |
| 1/14/11 | DX 12 | Barrett | B/BCR | Quality only |
| 1/14/11 | DX 16 | Wheeler | B/BCR | Negative |
| 1/14/11 | DX 14 | Alexander | B/BCR | p/p, 6z, 1/0 |
| 4/20/11 | EX 10 | Scott | B/BCR | Negative |
| 4/20/11 | CX 1 | Alexander | B/BCR | p/p, 5z, 1/0 |
| 1/16/12 | CX 3 | DePonte | B/BCR | s/s, 4z, 1/0 |
| 1/16/12 | EX 6 | Scott | B/BCR | negative |
| 3/28/12 | CX 5 | Alexander | B/BCR | p/t, 4z, 1/0 |
| 3/28/12 | EX 9 | Scott | B/BCR | negative |

### PULMONARY FUNCTION STUDIES

| Date | EXH | Physician | Age/ HT | FEV1 | MVV | FVC | FEV1/ FVC | Disability Standard | | | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | FEV1 | MVV | FVC | |
| 1/14/11 | DX 12 | Baker | 65/ 68" | 0.67 | ⎯⎯ | 3.17 | 21 | 1.82 | 73 | 2.34 | no |
| 4/20/11 | DX 15 | Dahhan | 65/ 69" | 0.87 0.86 | ⎯⎯ | 2.63 2.35 | 33 37 | 1.89 | 75 | 2.42 | |
| 1/16/12 | CX 3 | Gallai | 66/ 70" | 0.70 0.76 | 35 38 | 2.06 2.13 | 34 36 | 1.96 | 79 | 2.52 | |
| 3/20/12 | EX 1 | Rosenberg | 66/ 70" | 0.68 0.85 | ⎯⎯ | 2.48 2.76 | 28 31 | 1.96 | 79 | 2.52 | |
| 3/28/12 | CX 5 | Splan | 66/ 70" | 0.75 0.74 | 33 33 | 2.18 2.00 | 34 37 | 1.96 | 79 | 2.52 | no |

| Exhibit No. | Physician | Date of Review | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
| EX 7 | Long | 9/7/12 | CX 5 | Not valid |
| DX 16 | Long | 2/26/11 | DX 12 | Not valid |

*ARTERIAL BLOOD GAS STUDIES*

| Date | EXH | Physician | Altitude | PCO2 | PO2 | PO2 Disability Standard |
|---|---|---|---|---|---|---|
| 1/14/11 | DX 12 | Baker | 0-2,999 | 44 | 69 | 60 |
| 4/20/11 | DX 15 | Dahhan | 0-2,999 | 42.4 | 75.6 | 60 |
| 1/16/12 | CX 3 | Gallai | 0-2,999 | 39.9 | 57.4 | 60 |
| 3/20/12 | EX 1 | Rosenberg | 0-2,999 | 40.3 44.4 | 65.4 56.7 | 60 60 |
| 3/28/12 | CX 5 | Splan | 0-2,999 | 43.2 | 48.6 | 60 |

*OTHER MEDICAL EVIDENCE*

| Date of Study | Exhibit | Physician | Qualifications | Type of Evidence | Interpretation |
|---|---|---|---|---|---|
| 3/26/12 of 3/20/12 | EX 1 | Wheeler | B/BCR | Digital Image | Negative |
| 12/9/12 of 3/20/12 | CX 6 | DePonte | B/BCR | Digital Image | s/t, 1/0 |

## Biopsy Evidence

The employer submitted Dr. Caffrey's September 19, 2012 report regarding a review of a June 24, 2005 biopsy. The claimant did not submit biopsy evidence.

## MEDICAL REPORT EVIDENCE

Dr. Baker examined the claimant pursuant to 20 C.F.R. § 725.406 and completed a report on January 17, 2011. (DX 12). Dr. Baker also completed a clarification report on January 28, 2011.

Bristol: 363288-1

(DX 13). The claimant submitted a medical report by Dr. Gallai dated January 19, 2012, and a report from Dr. Splan dated March 28, 2012. (CX 3, CX 5).

In response, the employer submitted an April 22, 2011 report from Dr. Dahhan along with Dr. Dahhan's supplemental report of September 21, 2012. (DX 15, EX 11). The employer also submitted a report from Dr. Rosenberg dated April 16, 2012. (EX 1).

*TREATMENT NOTE EVIDENCE*

The employer submitted a consultation report from Dr. Uszenki and Morristown Hamblen Hospital dated June 18, 2005. (EX 2). The employer submitted a treatment note from Dr. Knight and Morristown Hamblen Hospital dated December 3, 2010. (EX 3). Lastly, the employer submitted treatment notes from Appalachian Regional Hospital, Baptist Hospital, and Dr. Anderson dated February 11, 1998, June 15, 2005, and March 31, 1995, respectively. (EX 4, EX 5, DX 15).

The claimant submitted treatment records from Pulmonary Associates of Morristown dated February 26, 2008, through December 23, 2010. (DX 14).

## SMOKING HISTORY

The nature and extent of a miner's smoking history may be relevant to issues such as the existence of pneumoconiosis and the cause of a miner's disability. *See* Sellards v. Director, OWCP, 17 B.L.R. 1-77, 1-81 (1993). In determining a miner's smoking history, the administrative law judge must consider all evidence pertaining to the issue and resolve any discrepancies contained in the record. *See* Webber v. Peabody Coal Co., 23 B.L.R. 1-123, 1-137 (2006). Based upon the hearing transcript and medical records in evidence, the ALJ should find that the claimant has a smoking history of at least 35 pack-years. Although claimant testified at the hearing to smoking for about a

Bristol: 363288-1

ten year period, he has been extremely inconsistent in reporting his smoking history and the medical evidence in this case demonstrates a much more extensive smoking history.

First, the evidence supports a finding that the claimant smoked regularly for a period of 35 to 40 years. Dr. Splan noted in his report that claimant smoked from 1966 through 2005. (CX 5). A note from Dr. Wicker and Hazard Clinic dated November 15, 1994, states that claimant began smoking in 1973. (DX 1). A treatment note from Dr. Shantha of Pulmonary Associates of Morristown records that the claimant quit smoking sometime around February of 2008. (DX 14). Claimant had carboxyhemoglobin levels consistent with smoking during arterial blood gas studies performed by Dr. Broudy on February 23, 1995, and performed at Baptist Hospital on June 15, 2005. (DX 1, EX 5).

Next, the medical evidence also demonstrates that the claimant was smoking anywhere from one-half to two packs cigarettes per day during the 35 to 40 year span in which he smoked. A treatment note from an ER visit by the claimant to Whitesburg Appalachian Regional Healthcare on February 11, 1998 indicates that claimant was smoking two packs of cigarettes per day. (EX 4). Dr. Baker recorded that claimant smoked one-half to one pack per day during the Department of Labor medical exam. (DX 12). A November 15, 1994 treatment note from Dr. Wicker states that claimant was smoking one pack per day. (DX 1). A February 23, 1995 treatment note from Dr. Broudy records that claimant smoked at a rate of one pack per day. (DX 1). Dr. Uszenski reported that claimant smoked up to one pack per for many years in a June 18, 2005 treatment note. (EX 2).

It is clear from the above records that claimant smoked on a regular basis from 1973, or earlier, until 2008, smoking anywhere from one-half pack to two packs of cigarettes per day. As the

Bristol: 363288-1

evidence notes periods where claimant was smoking up to two packs per day, the employer contends that crediting claimant with smoking one pack per day from 1973-2008 will understate claimant's actual smoking history. Accordingly, the ALJ should find that claimant has at least a 35 pack-year smoking history.

ARGUMENT

To establish entitlement to benefits under the Act, claimant must establish the existence of pneumoconiosis, that the pneumoconiosis arose out of coal mine employment, and that the pneumoconiosis is totally disabling. 30 U.S.C. §901; 20 C.F.R. §§718.3, 718.202, 718.203, 718.204. Where a miner files a claim for benefits more than one year after the final denial of a previous claim, the duplicate claim must also be denied unless the administrative law judge finds that there has been a "material change in conditions" since the denial of the previous claim. 20 C.F.R. §725.309(d) (2000). In this case, claimant's prior claim was denied because he failed to establish the existence of pneumoconiosis or that he is totally disabled as a result of pneumoconiosis. (DX 1). Consequently, claimant was required to submit new evidence establishing those elements of entitlement in order to obtain review of the merits of his duplicate claim. See 20 C.F.R. §725.309(d) (2000); Sharondale Corp. v. Ross, 42 F.3d 993, 19 BLR 2-10 (6th Cir. 1994). In considering a request for modification of the denial of a duplicate claim (which, as here, was denied based upon a failure to establish a material change in conditions), an administrative law judge must determine whether all of the evidence developed in the duplicate claim, including any new evidence submitted with the request for modification, establishes a material change in conditions. See 20 C.F.R. §725.309(d) (2000); Hess v. Director, OWCP, 21 BLR 1-141, 1-143 (1998). If the evidence establishes a material change

Bristol: 363288-1

A689

in conditions, the administrative law judge must then consider the merits of the duplicate claim. Hess, 21 BLR at 1-143.

### I. Applicability and Constitutionality of the PPACA

Section 1556 of the PPACA included two substantive changes to the Act. The first, §1556(a), restored a rebuttable presumption of death or disability due to pneumoconiosis upon a showing of a totally disabling respiratory impairment and 15 or more years of coal-mine employment. The second, §1556(b), provides for the automatic entitlement of widows of miners whose claims were awarded during their lifetimes. Finally, §1556(c) of the act applied the amendments to all claims filed after January 1, 2005, and pending on or after March 23, 2010.

The employer wishes to preserve the challenges to the constitutionality of §1556 for appellate purposes. Even if the amendments are constitutional, however, it is the employer's position that they do not apply to this claim. Although this claim was filed after January 1, 2005, and the evidence establishes that claimant has a totally disabling respiratory or pulmonary impairment, the evidence fails to prove that the claimant worked in the mines for 15 or more years.

Claimant bears the burden of establishing the length of coal mine employment. Shelesky v. Director, OWCP, 7 B.L.R. 1-3 (1984); Niccoli v. Director, OWCP, 6 B.L.R. 1-910 (1984). Absent stipulation by the parties as to the length of coal mine employment, the fact-finder must make a specific, complete finding on this issue. Boyd v. Director, OWCP, 11 B.L.R. 1-39 (1988). Calculating the length of coal mine work may be based on any reasonable method so long as it is supported by substantial evidence in the record considered as a whole. Clayton v. Pyro Mining Co., 7 B.L.R. 1-551 (1984); Schmidt v. Amax Coal Co., 7 B.L.R. 1-489 (1984). In determining length of

employment in the coal mines, it is proper to consider evidence from a variety of sources, including affidavits of co-workers, Social Security records, sworn testimony, written statements of the miner (including the Form CM-911a), records of the employer, and pension records.  20 C.F.R. § 725.101(a)(32)(ii).

Claimant's itemized statement shows earnings from coal mining employment beginning in 1970 and continuing through 1991.  At hearing, claimant testified that his first job as a miner was in 1970 and that he quit working in August of 1991.  (Tr. at 15).  He further testified that he missed one year of work for a back injury around 1991, and that he did not work between 1980 and 1985 due to a back injury.  (Tr. at 16, 29).  The claimant's Social Security Earnings Record affirms that he did not work in 1981, 1982, 1983, or 1984.  He further stated that he spent one year in Florida working construction.  (Tr. at 16-18).  Accordingly, there are at most 16 different years in which claimant could have worked as a coal miner (1970 through 1991 minus four years due to injury minus 1 year in Florida).  However, a review of claimant's SSER, the only evidence in the record regarding his employment history, demonstrates that claimant worked less than ten years during that 16 year period.

The Director credited claimant with 9.25 years of coal mine employment.  (DX 25).  The employer contends that claimant has only 5.3 years of coal mine employment.  It appears that the Director arrived at the 9.25 figure by comparing claimant's earnings to the average *yearly* earnings of coal miners listed in Exhibit 610, which equates to only 125 days of exposure, or less than half the number of work days in a year.  However, the provision from §725.493(b) equating125-days to a full year applies only to calculations identifying the responsible operator.  *See* <u>Soulsby v. Consolidation</u>

Coal Co., 3 BLR 1-565 (1981); Flethcher v. Director, OWCP, 2 BLR 1-1911(1980). This method overestimates the total length of claimant's employment. A more accurate figure is obtained by comparing the earnings reflected in claimant's itemized statement of earnings with the *daily* average of coal miner's listed in 610 to determine how many weeks he worked in each year. Using this method, the employer's calculations are set forth in the table below[2]:

| YEAR | EMPLOYER | CLAIMANT'S EARNINGS | DOL AVERAGE DAILY WAGE | NUMBER OF WEEKS WORKED |
|---|---|---|---|---|
| 1970 | Peem Coal Co | $72.00 | $38.22 | 0.4 |
| 1971 | High Point Coal Company | $57.50 | $40.07 | 0.2 |
| 1971 | Archer & Clubb Coal Co Inc | $200.70 | $40.07 | 1.0 |
| 1973 | A & E Coal Co | $60.00 | $47.19 | 0.3 |
| 1973 | Governor Elkhorns Coal Company Inc | $339.00 | $47.19 | 1.4 |
| 1974 | Scotia Coal Co | $6,387.17 | $48.64 | 26.3 |
| 1975 | Scotia Coal Co | $13,651.52 | $59.24 | 42.8 |
| 1976 | Scotia Coal Co | $13,539.93 | $64.07 | 42.3 |
| 1977 | Scotia Coal Co | $5,489.80 | $71.90 | 15.3 |
| 1978 | Elkhorn & Jellico Coal Co Inc | $1,255.67 | $80.31 | 3.1 |
| 1978 | Branham & Baker Coal Co Inc | $4,155.00 | $80.31 | 10.3 |
| 1978 | Johnson & Sons Coal Co Inc | $60.00 | $80.31 | 0.1 |
| 1979 | Ancoal Mining Corporation | $2,227.50 | $87.03 | 5.1 |
| 1979 | Action energies Inc | $2,575.13 | $87.03 | 5.9 |
| 1980 | Action energies Inc | $3,696.00 | $87.42 | 8.5 |
| 1980 | Paramount Mining Corporation | $2,860.00 | $87.42 | 6.5 |
| 1985 | Everidge & Nease Coal Co Inc | $3,168.74 | $122.00 | 5.2 |
| 1988 | Wampler Brothers Coal Co Inc | $11,884.65 | $127.52 | 18.6 |
| 1989 | Wampler Brothers Coal Co Inc | $13,199.71 | $130.00 | 20.3 |

2. The employer calculated the length of claimant's employment by dividing the claimant's earnings by the average daily wage of coal miners found at Exhibit 610 to arrive at the number of days worked, dividing by 5 to get the number of weeks worked, and then dividing by 50 to get the percentage of the year worked.
Bristol: 363288-1

| 1989 | Aberry Coal Inc | $9,030.00 | $130.00 | 13.9 |
|------|----------------|-----------|---------|------|
| 1990 | Aberry Coal Inc | $24,451.50 | $133.68 | 36.6 |
| 1991 | Aberry Coal Inc | $6,401.75 | $136.64 | 9.4 |
| | **TOTAL EARNINGS** | $124,763. | **TOTAL WEEKS** | 273.50 |
| | | | **TOTAL YEARS** | 5.3 |

Regardless of the method applied by the ALJ, claimant has far less than 15 years of coal mining employment. While claimant contends that he believes the SSER does not accurately reflect his earnings, he was unable to state which earnings were not accurately recorded at hearing when asked by the ALJ. (HT at 23). The burden is on the claimant to establish coal mining employment in excess of 15 years, and he has failed to provide any evidence that he was employed as a miner for more than the 9.25 years credited to him by the DOL. Accordingly, the rebuttable presumption set forth in §1556(a) of the PPACA is inapplicable to this claim and the burden remains on claimant to prove all elements of entitlement.

**II.    Existence of Pneumoconiosis**

For the purposes of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising from coal mine employment. § 718.201. Section 718.202(a) prescribes four methods by which claimant can prove the existence or pneumoconiosis: (1) a properly conducted and reported chest x-ray; (2) a properly conducted and reported biopsy or autopsy; (3) reliance upon certain presumptions which are set forth in §§ 718.304, 718.305, and 718.306; or (4) the finding by a physician of pneumoconiosis as defined in §718.201 which is based upon objective evidence and supported by a reasoned medical opinion. Evidence

Bristol: 363288-1

meeting one of these methods does not automatically establish the disease, but rather the ALJ must weigh all the evidence concerning the issue before making a finding of pneumoconiosis. Island Creek Coal Co. v. Compton, 211 F.3d 203 (4th Cir. 2000). Finally, in Collins v. Pond Creek Mining, BRB No.: 08-0737 BLA (July 29, 2009), the Board held that, even when the employer's evidence has been excluded, the ALJ must still assess whether the claimant's evidence, standing alone, itself is sufficient to prove each element of entitlement.

First, the x-ray evidence does not preponderate in favor of a finding of pneumoconios. The parties submitted nine ILO readings of four analog chest x-rays. Dr. Baker read the claimant's January 14, 2011 Department of Labor x-ray as positive, t/t, 4z, 1/1. (DX 12). Dr. Wheeler read that same x-ray as negative, while Dr. Alexander read the film as barely positive, 1/0. (DX, 16, DX 14). While Drs. Wheeler and Alexander are dually-certified as B-readers and board certified radiologists, Dr. Baker is only a B-reader and the ALJ should disregard his reading. Further, Dr. Wheeler is a teaching professor of radiology at Johns Hopkins University Medical Center. In Lynch v. Old Ben Coal Co., BRB No. 10-0209 BLA (December 8, 2010), the Board held that, in analyzing the negative x-ray interpretations of Drs. Scott and Wheeler, the Administrative Law Judge did not err in considering their qualifications and other factors relevant to the level of radiological competence, such as a prestigious position teaching. In addition, a barely qualifying reading of 1/0 such as Dr. Alexander's can be given less weight by the finder of fact. *See* York v. Jewell Ridge Coal Co., 7 BLR 1-766 (1985). Accordingly, considering Dr. Wheeler's qualifications and the barely qualifying nature of Dr. Alexander's reading, the ALJ should determine that the January 14, 2011 x-ray film preponderates against a finding of pneumoconiosis.

Bristol: 363288-1

Next, the employer submitted Dr. Scott's negative reading of an April 20, 2011 x-ray. (EX 10). In response, claimant submitted a barely positive 1/0 reading of that same film by Dr. Alexander. (CX 1). Like Dr. Wheeler, Dr. Scott is also a teaching professor of radiology at Johns Hopkins University Medical Center and the ALJ should afford more probative value to his reading. Additionally, the ALJ should afford less weight to Dr. Alexander's reading because it is barely qualifying. Therefore, the April 20, 2011 film also preponderates against a finding of pneumoconiosis.

Next, claimant submitted Dr. DePonte's barely positive 1/0 reading of a January 16, 2012 film. (CX 3). The employer submitted a negative reading of that film by Dr. Scott. (EX 6). Again, considering Dr. Scott's qualifications and the barely qualifying nature of Dr. DePonte's reading, the ALJ should find that this film also preponderates against a finding of pneumoconiosis.

Lastly, claimant submitted Dr. Alexander's barely qualifying 1/0 reading of a March 28, 2012 x-ray film. (CX 5). Dr. Scott read that same film as negative. (EX 9). Once again, the more highly qualified Dr. Scott's reading outweighs the barely qualifying reading of Dr. Alexander, and the March 28, 2012 film is also negative for pneumoconiosis. Accordingly, each of the positive readings by dually-certified physicians in the record is barely qualifying, 1/0. Furthermore, the more highly qualified physicians read each of the films in the record as negative. Therefore, the ALJ should find that the x-ray evidence as a whole fails to preponderate towards a finding of pneumoconiosis.

Next, the readings submitted as Other Medical Evidence weigh against a finding of pneumoconiosis. In Webber v. Peabody Coal Co., 23 B.L.R. 1-123 (2006) (*en banc*) (J. Boggs, concurring), the board held that digital x-ray interpretations are not considered "chest x-ray"

Bristol: 363288-1

evidence under 20 C.F.R. § § 718.101(b), 718.102, 718.202(a)(1), and Appendix A to Part 718, as they do not satisfy the quality standards at Appendix A. However, the Board went on to hold that digital chest x-rays are "properly considered under 20 C.F.R. § 718.107, where the Administrative Law Judge must determine on a case-by-case basis, pursuant to C.F.R. § 718.107(b), whether the proponent of the digital x-ray evidence has established that it is medically acceptable and relevant to entitlement." Finally, the Board has also stated that digital x-rays and CT scans, which are admissible as other evidence, are properly evaluated under the medical report evidence. *See* Melnick v. Consolidation Coal Co., 16 B.L.R. 131 (1991); Webber v. Peabody Coal Co., 23 B.L.R. 1-123 (2006) (*en banc*).

The employer submitted a negative reading of a March 20, 2012 digital chest x-ray by Dr. Wheeler. (EX 1). Claimant submitted Dr. DePonte's barely positive 1/0 reading of that same image. (CX 6). As with the x-ray evidence, the ALJ should consider the qualifications of Dr. Wheeler and that Dr. DePonte's reading is barely qualifying and find that the sole reading submitted as "other medical evidence" preponderates against a finding of pneumoconiosis.

Next, the biopsy evidence in this case weighs against a finding of pneumoconiosis. Claimant did not submit biopsy evidence, and the employer submitted a biopsy report completed by Dr. Caffrey on September 19, 2012 of a June 24, 2005 biopsy. (EX 8). Dr. Caffrey concluded that lesions of coal workers' pneumoconiosis were not present. He explained that CWP lesions are caused by coal dust stimulated the production of reticulum and/or collagen, followed by focal emphysema development. He stated that there was no such evidence present in claimant's biopsy. Further, he noted that the alveoli were filled with macrophages containing a dusty brown pigment, a

Bristol: 363288-1

finding consistent with long term tobacco use. The employer contends that the ALJ should afford

significant weight to the uncontested biopsy report of Dr. Caffrey and determine that it preponderates

heavily against a finding of clinical or legal pneumoconiosis.

Next, the claimant cannot establish the existence of pneumoconiosis through the medical

opinion evidence under § 718.202(a)(4). This subsection states that a determination of the existence

of pneumoconiosis may also be made if a physician, exercising sound medical judgment,

notwithstanding a negative x-ray, finds that the miner suffers from pneumoconiosis as defined in

§ 718.201. The provision goes on to state that such a medical finding of pneumoconiosis ". . . be

based on objective medical evidence such as blood gas studies, electrocardiograms, pulmonary

function studies, physical performance tests, physical examination, and medical and work histories.

Such a finding shall be supported by a reasoned medical opinion." [3]

First, Dr. Baker performed the Department of Labor medical exam and completed a report

dated January 17, 2011, as well as a clarification report on January 28, 2011, finding that claimant

suffered from legal and clinical pneumoconiosis. (DX 12, DX 13). As an initial matter, the

employer notes that Dr. Baker reported a smoking history of one-half to one pack of cigarettes per

day for 35 years, while the medical evidence establishes that he was actually smoking up to two

---

3. A "reasoned" opinion is one in which the administrative law judge finds the underlying documentation adequate
to support the physician's conclusions. Fields, 10 B.L.R. 1-19. A "documented" opinion is one that sets forth the
clinical findings, observations, facts and other data on which the physician based the diagnosis. Fields v. Island
Creek Coal Co., 10 B.L.R. 1-19 (1987). Whether a medical report is sufficiently documented and reasoned is for the
administrative law judge as the finder of fact to decide. Clark v. Karst-Robbins Coal Co., 12 B.L.R. 1-149 (1989)(en
banc). An internally inconsistent report may be accorded little, if any, probative weight. Hopton v. U.S. Steel Corp.,
7 B.L.R. 1-12 (1984).

Bristol: 363288-1

packs of cigarettes per day during certain periods. In <u>Trumbo v. Reading Anthracite Co.</u>, 17 B.L.R. 1-85 (1993), the Board held that a physician's opinion was less probative where based on an inaccurate smoking history. Accordingly, Dr. Baker's opinion should be afforded less weight because he underestimated claimant's smoking history.

Furthermore, the ALJ should discredit the opinion of Dr. Baker because he relied upon an inaccurate history of coal mine employment. In <u>Worhach v. Director, OWCP</u>, 17 B.L.R. 1-105 (1993)(per curiam), the Board noted that it was proper for an ALJ to discredit a medical opinion based on an inaccurate length of coal mine employment. Dr. Baker recorded that claimant had worked as a coal miner for 22 years in his initial report, while the employer has demonstrated that claimant actually only has 5.3 years of coal mine employment. (DX 12). Dr. Baker later submitted a clarification report, noting that he believed 9.25 years of coal mine employment would be sufficient to produce CWP in the claimant. (DX 13). However, this number is still significantly higher than the 5.3 years actually worked by claimant. In addition, Dr. Baker noted in his clarification report that he still believed claimant had at least 20 years of coal mine employment, despite the DOL's finding of far less employment. (DX 13). Dr. Baker appears to be unwilling to accept a finding of years of coal mine employment less than what claimant related to him, and his opinion should be appropriately discredited for that reason.

Further, Dr. Baker's clarification report is self-contradictory and not consistent with the physician's own assertions regarding medical data and, therefore, not probative. The ALJ may properly accord less weight to a medical opinion that overlooks or downplays medical data inconsistent with his own conclusion. *See* <u>Gross v. Dominion Coal Corp.</u>, 23 BLR 1-8 (2003).

Here, Dr. Baker stated, "It is thought that at least 10 years is necessary to establish a relationship between coal dust exposure and the presence of pneumoconiosis." Nonetheless, he goes on to conclude that claimant suffers from pneumoconiosis as a result of coal dust exposure, even if he only worked for less than ten years in the mines. Dr. Baker's downplay of his own contention that ten years of mining employment is necessary for a causal relationship between coal dust exposure and pneumoconiosis is not well-reasoned and the ALJ should discredit his report.

Lastly, the ALJ should discredit the opinion of Dr. Baker because he failed to maintain objectivity in his diagnosis of claimant. After stating that ten years is generally necessary to establish a relationship between exposure and CWP, Dr. Baker states, "*Unfortunately*, only 9 ¼ years of employment was proven (emphasis added)." (DX 13). Dr. Baker goes on to express his discontent and concern with the Department of Labor's finding of 9 ¼ years of coal mine employment. Dr. Baker appears to believe that a finding of less coal mine employment is "unfortunate" because it weighs against a finding of legal pneumoconiosis. As a physician offering a disinterested medical opinion, Dr. Baker should view such a finding as objective data on which to base his professional opinion as opposed to inconvenient information to be disregarded. Accordingly, Dr. Baker has become an advocate for the claimant, and his medical opinion should be disregarded for lack of objectivity.

Next, the employer submitted an April 22, 2011 report from Dr. Dahhan along with Dr. Dahhan's supplemental report of September 21, 2012. (DX 15, EX 11). Dr. Dahhan determined that, although claimant was totally disabled from a respiratory standpoint, he did not suffer any impairment as a result of coal mine dust exposure. (DX 15). Dr. Dahhan noted that claimant

Bristol: 363288-1

suffered a ventilator defect with over a 2000cc loss of his FEV1. He further noted that coal dust exposure generally results in a FEV1 loss of 5-9cc per year of exposure. Dr. Dahhan also noted that claimant was being treated with multiple bronchodilator agents, which are not effective in combating the irreversible and permanent effects of legal pneumoconiosis. Dr. Dahhan concluded that this indicated that claimant's treating physician believed he suffered from an impairment not associated with coal dust exposure. Accordingly, Dr. Dahhan determined, to a reasonable degree of medical certainty, that claimant suffered from a pulmonary impairment not associated with exposure to coal mine dust.

On September 21, 2012, Dr. Dahhan submitted a supplemental report after reviewing newly submitted evidence. (EX 11). Dr. Dahhan stated that the newly submitted evidence did not change his opinion that claimant did not suffer from a respiratory or pulmonary impairment related to coal mine dust exposure. Furthermore, the physician noted that the "gold standard" for diagnosing pneumoconiosis is pathological examination, and that Dr. Caffrey's report demonstrated that claimant did not suffer from pneumoconiosis.

Next, claimant submitted a medical report completed by Dr. Gallai and dated January 19, 2012. (CX 3). Dr. Gallai determined that claimant suffered from legal pneumoconiosis. However, Dr. Gallai relied upon an inaccurate employment history of 18 years of coal mine employment. Even if the ALJ applies the generous method of calculation used by the Department of Labor to compute coal mine employment, Dr. Gallai's use of 18 years still doubles the actual number of years claimant worked as a miner.

Further, Dr. Gallai relied upon a smoking history of merely twelve and one-half pack years in

Bristol: 363288-1

his medical report. As demonstrated in the "Smoking History" section above, the medical evidence in the record demonstrates a smoking history of at least 35 pack years. Remarkably, Dr. Gallai uses the number 12.5 despite a recording of 26 years smoking in the PFT performed during his own independent medical exam. As with the report of Dr. Baker, Dr. Gallai's opinion should be disregarded due to his reliance upon an inflated history of coal mine employment and inaccurate smoking history. The employer contends that the physician simply cannot make an accurate diagnosis of legal pneumoconiosis while relying on an employment history that more than doubles the claimant's actual time in the coal mines and a smoking history that is approximately one-third of that demonstrated by the medical evidence.

Next, claimant submitted Dr. Splan's medical report dated March 28, 2012. (CX 5). Dr. Splan diagnosed claimant with chronic bronchitis, COPD, emphysema, cor pulmonale, and CWP. Like Dr. Gallai, Dr. Splan relied on an inaccurate history of coal mine employment and smoking. Regarding claimant's employment history, Dr. Splan stated that claimant worked as a miner from 1973 until 1992, a 19 year period. Dr. Splan did not account for the time period between 1980 and 1985 during which claimant testified that he was out of work with a back injury and which is confirmed by claimant's SSER. He also failed to account for the time period during which claimant was living in Florida and not performing coal mining work. Dr. Splan's reliance on 19 years of coal mine employment more than doubles the generous number arrived at by the Department of Labor and undermines his medical opinion.

Regarding claimant's smoking history, Dr. Splan noted that claimant smoked for 39 years at a rate of one-half pack of cigarettes per day, or 19.5 pack years. (CX 5). Again, this estimate severely

underestimates claimant's actual smoking history of 35 pack years, and the ALJ should discredit the medical opinion of Dr. Splan accordingly.

Finally, the employer submitted a report from Dr. Rosenberg dated April 16, 2012. (EX 1). Dr. Rosenberg determined that claimant did not suffer from clinical or legal pneumoconiosis, but from a severe airflow obstruction related to his extensive smoking history. Dr. Rosenberg explained that emphysema caused by smoking was distinguishable from emphysema caused by coal mine dust, and that claimant exhibited symptoms consistent with smoking related emphysema. Dr. Rosenberg noted claimant's marked reduction of diffusing capacity and air trapping, both inconsistent with coal workers' pneumoconiosis. Dr. Rosenberg further noted that claimant demonstrated a marked bronchodilator response, and that such is not consistent with legal pneumoconiosis because coal mine dust causes scarring of the airways, making use of bronchodilators ineffective. Dr. Rosenberg further cited studies comparing the effects of cigarette smoking and coal dust exposure on miners' FEV1. According to those studies, smoking causes a 100% greater decrease in airflow than post 1969 coal mine employment. Based on claimant's employment and smoking history and his objective test results, Dr. Rosenberg concluded to a reasonable degree of medical certainty that claimant did not have clinical or legal coal workers' pneumoconiosis. The employer contends that the ALJ should defer to the sound and detailed opinions of Drs. Dahhan and Rosenberg and determined that the medical opinion evidence does not preponderate towards a finding of pneumoconiosis.

Accordingly, the medical evidence as a whole preponderates against a finding of pneumoconiosis. Each x-ray submitted into evidence was read as negative by the most highly

Bristol: 363288-1

qualified physicians, and the only positive readings by dually-certified physicians are barely positive, 1/0. Next, Dr. Caffrey concluded in the only biopsy report in the record that claimant did not suffer from clinical or legal pneumoconiosis. Finally, because the medical reports of Drs. Baker, Gallai, and Splan each relied upon highly inaccurate smoking and employment histories, they are outweighed by the sound medical opinions of Drs. Rosenberg and Dahhan. Therefore, claimant has failed to establish by a preponderance of the evidence that he suffers from clinical or legal pneumoconiosis, and his claim must be denied.

**III.     Causation of Pneumoconiosis**

Because the evidence fails to establish the existence of legal pneumoconiosis, claimant is unable to establish the disease was caused by his past exposure to coal mine dust. The employer also notes that, because claimant has not established ten years of coal mine employment, he is not entitled to the rebuttable presumption of §718.302 and he must prove this element by a preponderance of the evidence.

**IV.     Total Disability Due to Pneumoconiosis**

Lastly, the Claimant must establish that he is totally disabled due to pneumoconiosis. This element is fulfilled if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment.§ 718.204(c); Lollar v. Alabama By-Products Corp., 893 F.2d 1258 (11th Cir. 1990). The regulations provide that pneumoconiosis is a "substantially contributing cause" of the miner's disability if it (i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine

employment. In general, the fact that an individual suffers or suffered from a totally disabling respiratory or pulmonary impairment is not, in itself, sufficient to establish that the impairment is or was due to pneumoconiosis. § 718.204(c)(2). A Claimant can establish this element through a physician's documented and reasoned medical report, §718.204(c).

Here, even if the ALJ finds claimant suffered from a disabling respiratory impairment, the medical evidence fails to establish that pneumoconiosis caused or contributed to that impairment. Drs. Baker, Gallai, and Splan each failed to provide a well-reasoned analysis as to why claimant's disability is a result of coal mine employment as opposed to smoking. Furthermore, each of their reports was based on highly inaccurate smoking histories and inflated coal mine employment histories. On the other hand, both Drs. Dahhan and Rosenberg rationally explained that claimant suffered from a disability related to his smoking history and wholly unrelated to his limited time spent as a coal miner. Therefore, as claimant has the burden of proof, the ALJ should find that claimant has failed to establish total disability due to pneumoconiosis.

## CONCLUSION

For the above-stated reasons, this claim should be denied. The evidence fails to establish that the claimant suffers from pneumoconiosis or that he is total disabled from the disease.

Respectfully submitted,

ABBERY COAL, INC.

By Counsel

Bristol: 363288-1

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA/TN  24203
(423) 793-4800

By: _____
       Nate D. Moore, Esquire
       Counsel for Employer


## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing this 7th day of January, 2013 to

Joseph Wolfe, Esquire, Wolfe, Williams, Rutherford & Reynolds, P.O. Box 625, Norton, VA 24273,

and Associate Regional Solicitor, U.S. Department of Labor, Suite 230, 618 Church Street,

Nashville, TN  37219-2456.


                             Nate D. Moore

Bristol: 363288-1

**U.S. Department of Labor**

Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



Issue Date: 24 January 2013

JOSEPH FLEMING,
    Claimant,

v.                                                    2012-BLA-05241

ABERRY COAL, INC.
    Employer,

and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
    Party-in-Interest.

APPEARANCES:
    Andrew Delph, Esquire and Micah Blankenship, Esquire
        For Claimant
    John Sigmond, Esquire
        For the Employer
    Donna Sonner, Esquire
        For the Director

BEFORE:    DANIEL F. SOLOMON
            Administrative Law Judge

## DECISION AND ORDER
### *AWARD OF BENEFITS*

This proceeding arises from a request for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* Claimant filed a subsequent application for benefits on July 19, 2010, and the District Director issued a proposed decision and order awarding benefits on December 14, 2010. Director's Exhibits, "DX" 25. Employer requested that the claim be forwarded to the Office of Administrative Law Judges for a formal hearing on October 11, 2011. (DX 26).

Claimant filed an initial application for benefits on November 1, 1994. (DX 1). That claim was denied by the Department of Labor on March 1, 1995, on the basis that claimant did not have pneumoconiosis and that he was not totally disabled by the disease. (DX 1). It was not appealed and that decision is final.

This claim came to hearing in Knoxville, Tennessee October 16, 2012. The Claimant was the sole witness. I entered DX 1- DX 33, Claimant's exhibits "CX" 1- CX 5, and Employer exhibits "EX" 1- EX 11. (Transcript, "TR" at 5, 8, 35). I left the record open following the hearing and Claimant submitted CX 6, a rereading of a March 28, 2012 digital image, on December 13, 2012. I hereby enter it into evidence.

Both of the parties have submitted briefs.

## APPLICABLE STANDARDS

~~Because the Claimant filed this application for benefits after March 31, 1980, the~~
regulations set forth at part 718 apply.

~~To receive black lung disability benefits under the Act, a miner must prove that (1) he~~
suffers from pneumoconiosis, (2) the pneumoconiosis arose out of coal mine employment, (3) he
is totally disabled, and (4) his total disability is caused by pneumoconiosis. *Gee v. W.G. Moore
and Sons*, 9 B.L.R. 1-4 (1986) (en banc); *Baumgartner v. Director, OWCP*, 9 B.L.R. 1-65
(1986) (en banc). *See Mullins Coal Co., Inc. of Virginia v. Director, OWCP*, 484 U.S. 135,
141, 11 B.L.R. 2-1 (1987). The failure to prove any requisite element precludes a finding of
entitlement. *Anderson v. Valley Camp of Utah, Inc.*, 12 B.L.R. 1-111 (1989); *Perry v. Director,*
OWCP, 9 B.L.R. 1-1 (1986) (en banc).

## STIPULATIONS AND WITHDRAWAL OF ISSUES

1. Timeliness of the claim is no longer being contested. Timeliness is a jurisdictional
   matter that cannot be waived. There is a rebuttable presumption that every claim for
   benefits is timely filed. I have reviewed all of the evidence in the record and no
   evidence exists to rebut the presumption.
2. The Claimant last worked in Kentucky and therefore the law of the 6th Circuit Court of
   Appeals applies in this case. (TR 11).
3. The Claimant is a "miner" as that term is defined by the Act, and has worked after
   1969. (TR 9).
4. Claimant has one dependent. (TR 36).
5. Claimant is totally disabled from a respiratory standpoint. (TR 36).
6. Employer is the responsible operator. (TR 36).

After a review of the stipulations and the record, they are accepted.

## REMAINING ISSUES

1. ~~Whether the miner suffers from pneumoconiosis.~~
2. If so, whether the miner's pneumoconiosis arose out of coal mine employment.
3. If so, whether the miner's disability is due to pneumoconiosis.

## BURDEN OF PROOF

"Burden of proof," as used in this setting and under the Administrative Procedure Act[1] is
that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of
proof." "Burden of proof" means burden of persuasion, not merely burden of production. 5
U.S.C. § 556(d).[2] The drafters of the APA used the term "burden of proof" to mean the burden

---

[1] 33 U.S.C. § 919(d) ("[N]otwithstanding any other provisions of this chapter, any hearing held under this chapter
shall be conducted in accordance with [the APA]; 5 U.S.C. § 554(c)(2). Longshore and Harbors Workers'
Compensation Act ("LHWCA") 33 U.S.C. § 901-950, is incorporated by reference into Part C of the Black Lung
Act pursuant to 30 U.S.C. § 932(a).
[2] The Tenth and Eleventh Circuits held that the burden of persuasion is greater than the burden of production,
*Alabama By-Products Corp. v. Killingsworth*, 733 F.2d 1511, 6 B.L.R. 2-59 (11th Cir. 1984); *Kaiser Steel Corp.*
~~*v. Director, OWCP [Sainz]*, 748 F.2d 1426, 7 B.L.R. 2-84 (10th Cir. 1984). These cases arose in the context where~~
an interim presumption is triggered, and the burden of proof shifted from a claimant to an employer/carrier.

of persuasion. *Director, OWCP, Department of Labor v. Greenwich Collieries [Ondecko]*, 512 U.S. 267, 18 B.L.R. 2A-1 (1994).[3]

A claimant has the general burden of establishing entitlement and the initial burden of going forward with the evidence. The obligation is to persuade the trier of fact of the truth of a proposition, not simply the burden of production; the obligation to come forward with evidence to support a claim. Therefore, the Claimant cannot rely on the Director to gather evidence. The Claimant bears the risk of non-persuasion if the evidence is found insufficient to establish a crucial element. *Oggero v. Director, OWCP*, 7 B.L.R. 1-860 (1985).

## COAL MINE EMPLOYMENT

Calculation of the length of coal mine employment may be based on "any reasonable method" such as affidavits of co-workers, testimony of the miner, payroll stubs, W-2 forms, or Social Security records.

At the hearing and on Claimant's application, Claimant stated he worked 18 years as an underground miner. Claimant testified he "did just about everything from shoveling ribs to the last few years, [and] ran a continuous miner for Mr. Aberry Coal Company." (TR 11). The District Director made a preliminary finding that Claimant spent 9.25 years employed as a coal miner from 1970 until 1991. (DX 25). At the hearing, Claimant speculated the discrepancy in the Department of Labor and Claimant's records was "somebody wasn't turning in [his] wages." (TR 15). Claimant testified he worked in the coal mines from 1970 until about August or September of 1991. *Id.* at 15. There were injuries which prevented Claimant from working: one period of time was approximately a year and few other periods on account of his back injury. *Id.* at 16. Claimant also testified there were no long strikes during his employment. *Id.* at 16.

Claimant's Social Security Earnings Record indicates that he worked for Peem Coal Co. in 1970; Clark Super 100 in 1970; Chevron USA Inc. in 1970; High Point Coal Company in 1971; Archer & Clubb Coal Co. Inc. in 1971; POM Corp from 1971 until 1972; Brownlee-Kesterton Inc. in 1972; Atlantic Gulf Communities Corp. from 1972 until 1973; Atlantic Condominiums Inc. in 1972; Officemax Incorporated in 1972; William H. Hensick & Sons Inc. in 1973; A&E Coal Co in 1973; Governor Elkhorns Coal Company Inc. in 1973; Scotia Coal Co. from 1974 until 1977; Scotia Employees Association in 1975 and 1977; Elkhorn & Jellico Coal Co Inc. in 1978; Branham & Baker Coal Co. in 1978; Johnson & Sons Coal Co. Inc. in 1978; Ancoal Mining Corporation in 1979; Action Enterprises Inc. from 1979 until 1980; Paramount Mining Corporation in 1980; Sullivan Brothers Inc. in 1980; Everidge & Nease Coal Co. Inc. in 1985; Uniforce Staffing Services Inc. in 1987; U N F Services Inc. in 1988; Wampler Brothers Coal Co. Inc. from 1988 until 1989; Aberry Coal Inc. from 1989 until 1991. (DX-07)

Claimant's itemized statement shows earnings from coal mining employment beginning in 1970 and continuing through 1991. At hearing, claimant testified that his first job as a miner was in 1970 and that he quit working in August of 1991. (TR 15). He further testified that he missed one year of work for a back injury around 1991, and that he did not work between 1980 and 1985 due to a back injury. *Id.* at 16, 29. The claimant's Social Security Earnings Record affirms that he did not work in 1981, 1982, 1983, or 1984. He further stated that he spent one year in Florida working construction. *Id.* at 16-18. Accordingly, there are at most 16 different years in which claimant could have worked as a coal miner (1970 through 1991 minus four years due to injury minus 1 year in Florida). However, by Employer's estimate, the only evidence in

---

[3] Also known as the risk of non-persuasion, *see* 9 J. Wigmore, Evidence § 2486 (J. Chadbourn rev. 1981).

- 3 -

the record regarding his employment history, demonstrates that claimant worked less than ten years during that 16 year period.

Again, relying entirely on the Social Security record, the Director credited Claimant with 9.25 years of coal mine employment. (DX 25).

Employer contends that claimant has only 5.3 years of coal mine employment. It appears that the Director arrived at the 9.25 figure by comparing claimant's earnings to the average yearly earnings of coal miners listed in Exhibit 610, based on 125 days of exposure, or less than half the number of work days in a year. Employer argues that the provision from §725.493(b) equating 125-days to a full year applies only to calculations identifying the responsible operator. *See Soulsby v. Consolidation Coal Co.*, 3 BLR 1-565 (1981); *Fletcher v. Director, OWCP*, 2 BLR 1-1911(1980). I am advised that a more accurate figure is obtained by comparing the earnings reflected in claimant's itemized statement of earnings with the daily average of coal miner's listed in 610 to determine how many weeks he worked in each year. Employer's calculations are set forth in the table below:

| Year | Employer | Earnings | Tax | Weeks |
|------|----------|----------|-----|-------|
| 1970 | Peem Coal Co | $72.00 | $38.22 | 0.4 |
| 1971 | High Point Coal Company | $57.50 | $40.07 | 0.2 |
| 1971 | Archer & Clubb Coal Co Inc | $200.70 | $40.07 | 1.0 |
| 1973 | A & E Coal Co | $60.00 | $47.19 | 0.3 |
| 1973 | Governor Elkhorns Coal Company | $339.00 | $47.19 | 1.4 |
| 1974 | Scotia Coal Co | $6,387.17 | $48.64 | 26.3 |
| 1975 | Scotia Coal Co | $13,651.52 | $59.24 | 42.8 |
| 1976 | Scotia Coal Co | $13,539.93 | $64.07 | 42.3 |
| 1977 | Scotia Coal Co | $5,489.80 | $71.90 | 15.3 |
| 1978 | Elkhorn & Jellico Coal Co Inc | $1,255.67 | $80.31 | 3.1 |
| 1978 | Branham & Baker Coal Co Inc | $4,155.00 | $80.31 | 10.3 |
| 1978 | Johnson & Sons Coal Co Inc | $60.00 | $80.31 | 0.1 |
| 1979 | Ancoal Mining Corporation | $2,227.50 | $87.03 | 5.1 |
| 1979 | Action energies Inc | $2,575.13 | $87.03 | 5.9 |
| 1980 | Action energies Inc | $3,696.00 | $87.42 | 8.5 |
| 1980 | Paramount Mining Corporation | $2,860.00 | $87.42 | 6.5 |
| 1985 | Everidge & Nease Coal Co Inc | $3,168.74 | $122.00 | 5.2 |
| 1988 | Wampler Brothers Coal Co Inc | $11,884.65 | $127.52 | 18.6 |
| 1989 | Wampler Brothers Coal Co Inc | $13,199.71 | $130.00 | 20.3 |
| 1989 | Aberry Coal Inc | $9,030.00 | $130.00 | 13.9 |
| 1990 | Aberry Coal Inc | $24,451.50 | $133.68 | 36.6 |
| 1991 | Aberry Coal Inc | $6,401.75 | $136.64 | 9.4 |
| | **Total Earnings** | $124,763. | **Weeks** | 273.50 |

Employer argues that Claimant has far less than 15 years of coal mining employment. I am advised that while Claimant contends that he believes the SSER does not accurately reflect his earnings, he was unable to state which earnings were not accurately recorded at hearing when I asked him. (TR 23).

Although I note Employer's argument, I find that the Department of Labor, "DOL," method is more reasonable. However, I listened to the testimony, and I had an opportunity to observe the Claimant and I find that he is credible, and the DOL did not take his allegations into consideration.

- 4 -

This is not the first time that a miner has alleged that not all of his wages were properly credited. The standard is based on a preponderance of the evidence and the records are not necessarily dispositive. The Claimant is not a good historian, but the records do not substantiate that he was out of work as long as six years due to workers' compensation related injuries. I note from the earnings record that Claimant worked sporadically or intermittently prior to work with Employer. Claimant did not exaggerate on other matters during the hearing. He alleged that some of the mines he worked for did not take out Social Security taxes. (TR 17, 23-24). He stated that there may have been some confusion as the earnings record credited him at the location of a home office when he was actually working in mining. For example, the notation for T.O.M. Corporation in Ann Arbor, Michigan, actually represents work performed with the East Kentucky Coal Co.  (TR 26).  Likewise, work credited to Boise Cascade is in error, as he has never been in Idaho. *Id.* at 27.

It is reasonable to expect that he also worked for periods "under the table," as alleged, early in his career, in the 1970's. *See* colloquy at 31-32. Therefore, I find that Claimant engaged in coal mine employment for at least 15 years.

### TOTAL DISABILITY

The Claimant appeared at hearing in a wheelchair and wearing a breathing device. Employer stipulated that Claimant is totally disabled. TR 36.[4]

The regulations at 20 CFR § 718.204(b) provide the following five methods to establish total disability: (1) pulmonary function (ventilatory) studies; (2) blood gas studies; (3) evidence of cor pulmonale with right-sided congestive heart failure; (4) reasoned medical opinions; and (5) lay testimony.

Drs. Baker, Gallai, Splan, Dahhan, and Rosenberg all examined Claimant and unanimously agree that Claimant is totally disabled from a pulmonary perspective.  *See* DX 13, CX 3, CX 5, DX 15, EX 1 and EX 11.

### UNDERGROUND MINING

Claimant testified and there is no contrary evidence that all of his mining work was underground.

### PATIENT PROTECTION AND AFFORDABLE CARE ACT

Congress enacted amendments to the Act ("PPACA"), which became effective on March 23, 2010, affecting claims filed after January 1, 2005. The amendments revive Section 411(c)(4) of the Act, 30 U.S.C. §921(c)(4), which provides a rebuttable presumption of total disability due to pneumoconiosis or, relevant to survivor's claims, death due to pneumoconiosis in cases where the claimant has established that the miner had fifteen or more years of qualifying coal mine employment and a totally disabling respiratory impairment. 30 U.S.C. §921(c)(4).

The claim was filed after 2005, the miner worked more than 15 years in an equivalency to underground coal mine employment, and he is totally disabled.

### SHIFTING BURDEN OF PROOF

To rebut the presumption by proving that the miner's totally disabling impairment is unrelated to the miner's coal mine employment, the party opposing entitlement must rule out any

---

[4] I note that Employer submitted evidence intended to impeach the validity of the testing. DX 16, EX 7. However, I accept the stipulation.

- 5 -

connection between the miner's impairment and his coal mine employment. *Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939 (4th Cir. 1980); *Defore v. Alabama By-Products Corp.*, 12 B.L.R. 1-27, 1-29 (1988). The party opposing entitlement need not establish the precise etiology of the totally disabling impairment, however. It is sufficient to prove that the impairment is unrelated to coal mine employment. 20 C.F.R. § 718.305(d) (2010); *see also Tanner v. Freeman United Coal Co.*, 10 B.L.R. 1-85, 1-87 (1987).

## PNEUMOCONIOSIS

Pneumoconiosis is defined as a chronic dust disease arising out of coal mine employment. 20 C.F.R § 718.201(a). The regulatory definitions include both clinical pneumoconiosis, defined as diseases recognized by the medical community as pneumoconiosis, and legal pneumoconiosis, defined as any chronic lung disease or impairment arising out of coal mine employment. 20 C.F.R. § 718.201(a)(1)&(2).

The regulation further indicates that a lung disease arising out of coal mine employment includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

The presence of pneumoconiosis can be established by: (1) chest x-rays interpreted as positive for the disease (§ 718.202(a)(1)); or  (2) biopsy report (§ 718.202(a)(2)); or (3) the presumptions described in Sections 718.304, 718.305, or 718.306, if found to be applicable; or (4) a reasoned medical opinion which concluded the disease is present, if the opinion is based on objective medical evidence such as blood-gas studies, pulmonary function tests, physical examinations, and medical and work histories. (§ 718.202(a)(4)).

The following x-rays were submitted

| Date of X-ray | Exhibit | Physician | Qualifications | Interpretation |
|---|---|---|---|---|
| 1/14/11 | DX 12 | Baker | B | t/t, 4z, 1/1 |
| 1/14/11 | DX 12 | Barrett | B/BCR | Quality only |
| 1/14/11 | DX 16 | Wheeler | B/BCR | Negative |
| 1/14/11 | DX 14 | Alexander | B/BCR | p/p, 6z, 1/0 |
| 4/20/11 | EX 10 | Scott | B/BCR | Negative |
| 4/20/11 | CX 1 | Alexander | B/BCR | p/p, 5z, 1/0 |
| 1/16/12 | CX 3 | DePonte | B/BCR | s/s, 4z, 1/0 |
| 1/16/12 | EX 6 | Scott | B/BCR | negative |
| 3/28/12 | CX 5 | Alexander | B/BCR | p/t, 4z, 1/0 |
| 3/28/12 | EX 9 | Scott | B/BCR | negative |

The evidence consists of 9 readings of four x-rays. Five are read as positive and four as negative.  The Board has held that an administrative law judge is not required to defer to the numerical superiority of x-ray evidence, *Wilt v. Wolverine Mining Co.*, 14 B.L.R. 1-70 (1990),

- 6 -

although it is within my discretion to do so, *Edmiston v. F & R Coal Co.*, 14 B.L.R. 1-65 (1990). "[W]here two or more X-ray reports are in conflict . . . consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays." 20 C.F.R. 718.202(a)(1). However, I am "not required to defer to . . . radiological experience or . . . status as a professor of radiology." *Dempsey v. Sewell Coal Co.*, 23 B.L.R. 1-47 (2004). *See Peranich v. Director, OWCP*, BRB No. 87-3158, BLA (Nov. 27, 1990) (unpub.) (it is proper to accord greater weight to the opinion of a dually-qualified physician over a physician who is a board-certified radiologist, but not a B-reader); *see also Cranor v. Peabody Coal Co.*, 22 B.L.R. 1-1 (1999) (en banc on recon.), *Sheckler v. Clinchfield Coal Co.*, 7 B.L.R. 1-128 (1984).

In this case the evidence is conflicted.

Only Dr. Baker is not dually qualified. Although I am asked to credit the qualifications of Drs. Scott and Wheeler, due to teaching experience at Johns Hopkins Medical School, I choose not to do so because of the logic discussed below. I am also asked to give Dr. Alexander's readings less credit because they are the "barely qualifying." I find this is an example of the pregnant negative and also do not accept this argument. Accepting only the opinions of the dually certified physicians, the evidence is at equipoise.

However, a review of the opinions shows that in the most recent x-ray, September 19 2012, EX 9, Dr. Scott rated the film quality as a 2, due to scapular overlay and also noted a 1.5 cm nodule and possible cancer and emphysema. There is no record of cancer. Emphysema may evidence legal pneumoconiosis. I find that this is an equivocal reading and attribute less weight to it.

Therefore I accept that the most recent evidence favors the Claimant's arguments.[5]

Accordingly, I find that Employer has failed to meet the shifting burden of proof in this case. *Rose v. Clinchfield Coal Co.*, and *Defore v. Alabama By-Products Corp.*, *supra*.

In fact, I find that the x-ray evidence is sufficient to establish clinical pneumoconiosis in this record.

Employer submitted Dr. Caffrey's September 19, 2012 report regarding a review of a June 24, 2005 biopsy. The claimant did not submit biopsy evidence. However, as this evidence is old, I attribute little weight to it.

Employer also relies on the reports from Drs. Rosenberg and Dahhan to rule out pneumoconiosis. However, both assumed that the x-ray evidence was negative, and therefore I find that their opinions are flawed. I find further that even if the x-ray evidence been in equipoise, their opinions are flawed.[6]

After a review of the evidence, as the Employer bears the burden of proof, I find that the evidence does not rule out clinical pneumoconiosis. In fact, I find that the most persuasive opinion comes from Dr. Alexander, who unequivocally diagnosed pneumoconiosis. Accordingly, I find that Employer has failed to meet the shifting burden of proof in this case. *Rose v. Clinchfield Coal Co.*, and *Defore v. Alabama By-Products Corp.*, *supra*.

---

[5] Both of the parties submitted readings of a March 28, 2012 digital image. DX 1, CX 6. The readings oppose each other. However, Dr. Wheeler did note emphysema and tuberculosis with question marks. It is Claimant's position that Dr. Wheeler's report is poorly documented and should be granted no probative weight due to the uncertainty of Dr. Wheeler's interpretation and that he deemed it unreadable.

However, digital x-rays are deemed "other" evidence under the rules and as I have already ruled for Claimant on the x-ray evidence, I choose not to do so with respect to "other" evidence.

[6] Claimant argues that their opinions contravene DOL policy. However, as I have already found that the opinions are flawed, I need not discuss this allegation.

- 7 -

**ETIOLOGY**

The remaining issue to be determined is whether Claimant's total disability is at least in part caused by his pneumoconiosis. Again, the burden is on the Employer to rule out Pneumoconiosis as a cause for total disability.

Employer relies on the opinions of Drs. Rosenberg and Dahhan who failed to find pneumoconiosis. I have the discretion to accord less weight to the opinions of examining physicians to the extent that they did not diagnose pneumoconiosis, contrary to the determination that the existence of pneumoconiosis was established. *Skukan v. Consolidation Coal Co.*, 993 F.2d 1228, 17 BLR 2-97 (6th Cir. 1993), vac'd sub nom., *Consolidated Coal Co. v. Skukan*, 114 S. Ct. 2732 (1994), rev'd on other grounds, *Skukan v. Consolidated Coal Co.*, 46 F.3d 15, 19 BLR 2-44 (6th Cir. 1995); *Trujillo v. Kaiser Steel Corp.*, 8 BLR 1-472, 1-473 (1986).

Therefore, I find that Employer has not ruled out that total disability is due in part to pneumoconiosis. 20 C.F.R. § 718.204(c).

## CONCLUSION

Pursuant to 20 C.F.R. § 725.503, benefits are payable as of the month of onset of total disability and if the evidence does not establish the month of onset, benefits are payable beginning with the month during which the claim was filed.

The Claimant was initially evaluated by Dr. Baker in January, 2011. I find it reasonable to expect that the condition was the same at the time he applied.

Therefore, I find that benefits are payable as of the month during which Claimant filed the claim, July, 2010.

# ORDER

The claim for benefits is hereby **GRANTED**. Augmentation for one dependent is also granted.



Digitally signed by Daniel Solomon
DN: CN=Daniel Solomon,
OU=Administrative Law Judge, O=Office
of Administrative Law Judges,
L=Washington, S=DC, C=US
Location: Washington DC

**DANIEL F. SOLOMON**
**ADMINISTRATIVE LAW JUDGE**

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478 and 725.479. The address of the Board is: Benefits Review Board, U.S. Department of Labor, P.O. Box 37601, Washington, DC 20013-7601. Your appeal is considered filed on the date it is received in the Office of the Clerk of the Board, unless the appeal is sent by mail and the Board determines that the U.S. Postal Service postmark, or

A713

other reliable evidence establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207. Once an appeal is filed, all inquiries and correspondence should be directed to the Board. After receipt of an appeal, the Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed. At the time you file an appeal with the Board, you must also send a copy of the appeal letter to Associate Solicitor, Black Lung and Longshore Legal Services, U.S. Department of Labor, 200 Constitution Ave., NW, Room N-2117, Washington, DC 20210. *See* 20 C.F.R. § 725.481. If an appeal is not timely filed with the Board, the decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479(a).

- 9 -

A714

## SERVICE SHEET

Case Name:  **FLEMING_JOSEPH_v_ABERRY_COALINC_DIR-O_**

Case Number: **2012BLA05241**

Document Title: **DECISION AND ORDER AWARD OF BENEFITS**

I hereby certify that a copy of the above-referenced document was sent to the following this 24th day of January, 2013:



Digitally signed by DELANNIE HONESTY
DN: CN=DELANNIE HONESTY,
OU=LEGAL TECH, O=Office of
Administrative Law Judges, L=Washington,
S=DC, C=US
Location: Washington DC

**DELANNIE HONESTY**
**LEGAL TECH**

District Director
Chief, Branch of Claims and Systems Mgmnt
U. S. Department of Labor
Room N3454, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
          *{Hard Copy - Regular Mail}*

Associate Solicitor
U. S. Department of Labor
Division of Black Lung Benefits
Suite N-2117, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
          *{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U. S. Department of Labor
Suite 230
618 Church Street
NASHVILLE TN 37219-2456
          *{Hard Copy - Regular Mail}*

Joseph Fleming
1226 Zirkle Road
DANDRIGE TN 37725
          *{Hard Copy - Certified Mail}*

Joseph E Wolfe, Esq.
Wolfe, Williams, Rutherford & Reynolds
P.O. Box 625
NORTON VA 24273
          *{Hard Copy - Certified Mail}*

Michael F Blair, Esq.
Pennstuart
P.O. Box 2009
BRISTOL VA 24203
          *{Hard Copy - Certified Mail}*

Security Insurance Company of Hartford
c/o Arrowpoint Capital
3600 Arco Corporate Drive
CHARLOTTE NC 28273
          *{Hard Copy - Regular Mail}*

A715

IN THE UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD

| | | |
|---|---|---|
| JOSEPH FLEMING, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | BRB No.: 2013-0237 BLA |
| v. | ) | Case No.: 2012-BLA-05241 |
| | ) | OWCP No.: XXX-XX-0560 |
| ABERRY COAL, INC., | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| SECURITY INSURANCE CO. OF | ) | |
| HARTFORD, c/o ARROWPOINT CAPITAL, | ) | |
| | ) | |
| Insurer, | ) | |
| | ) | |
| Defendants. | ) | |

## EMPLOYER'S BRIEF IN SUPPORT OF ITS PETITION FOR REVIEW

### STATEMENT OF THE CASE

This proceeding arises from a subsequent claim for benefits filed under the Black Lung

Benefits Act of 1977, 30 U.S.C. § 901 et seq. The claim is currently before the Board on the

employer's appeal of ALJ Solomon's January 24, 2013 Decision and Order awarding benefits.

### PROCEDURAL HISTORY

The claimant filed his initial application for benefits on November 1, 1994. (DX 1).[1] That

claim was denied by the Department of Labor on March 1, 1995, on the grounds that claimant had

failed to prove pneumoconiosis or total disability due to pneumoconiosis. (DX 1). The claimant

filed his current application for federal black lung benefits on July 19, 2010. (DX 3). The

---

1. The employer will refer to the Director's Exhibits as "DX," Claimant's Exhibits as "CX," the Employer's
Exhibits as "EX," and the Hearing Transcript as "Tr."

Bristol: 370775-1

Department of Labor issued a Proposed Decision and Order awarding benefits on September 20, 2011, and the employer requested that the claim be forwarded to the Office of Administrative Law Judges for a formal hearing.  (DX 25, 26).

The Honorable Daniel Solomon conducted a hearing on October 16, 2012.  During the hearing, the ALJ accepted into evidence DX 1-33, CX 1-5, and EX 1-11.  (Tr. at 5, 8, 35).  The ALJ left the record open for 30 days following the hearing.  (Tr. at 13).  The claimant submitted CX 6, a rereading of a March 20, 2012 digital image, on December 13, 2012.

The ALJ issued a Decision and Order awarding benefits on January 24, 2013.  Although the ALJ did not make a specific finding of years of coal mining employment, he determined that the claimant had been employed as a coal miner for "at least 15 years."  (Decision and Order, "D&O," at 3-5).  And, because the claim was filed after January 1, 2005, and because employer conceded that claimant suffered from a disabling respiratory impairment, the ALJ determined that the claimant was entitled to the rebuttable presumption that his disability was due to pneumoconiosis.  (D&O at 5).  The ALJ went on to find that the employer had failed to rule out pneumoconiosis or prove claimant's disability was not due to pneumoconiosis, and awarded benefits.  (D&O at 7-8).

The employer filed a timely Notice of Appeal on February 15, 2013, and the claim is currently before the Board for review.

Bristol: 370775-1

<u>ISSUES</u>

I.    The ALJ erred in finding claimant established more than 15 years of qualifying coal mine employment and in finding claimant entitled to the rebuttable presumption of total disability due to pneumoconiosis set forth in 30 U.S.C. §921(c)(4).

II.   The ALJ erred in finding employer had failed to "rule out" pneumoconiosis.

III.  The ALJ erred in finding employer failed to establish that claimant's disability did not arise out of, or in connection with, employment in a coal mine.

<u>STANDARD OF REVIEW</u>

The Benefits Review Board's scope of review is defined by statute. The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law. 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a); O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359 (1965).

<u>ARGUMENT</u>

I.    The ALJ erred in finding claimant established more than 15 years of qualifying coal mine employment and in finding claimant entitled to the rebuttable presumption of total disability due to pneumoconiosis set forth in 30 U.S.C. §921(c)(4).

The claimant bears the burden of establishing length of coal mine employment. Shelesky v. Director, OWCP, 7 B.L.R. 1-3 (1984); Niccoli v. Director, OWCP, 6 B.L.R. 1-910 (1984). As the Federal Black Lung Benefits Act does not provide a specific method to be used in determining the length of a claimant's coal mining employment, the Board will uphold the ALJ's calculation if it is based on a reasonable method and supported by substantial evidence in the record as a whole. Vickery v. Director, OWCP, 8 BLR 1-430 (1986); Smith v. National Mines Corp., 7 BLR 1-803 (1985); Miller v. Director, OWCP, 7 BLR 1-693 (1983); Maggard v. Director, OWCP, 6 BLR 1-285

Bristol: 370775-1

(1983). However, the administrative law judge is required to explain his method of calculation by setting forth what evidence is credited or rejected and the rationale therefore. *See* Shapell v. Director, OWCP, 7 B.L.R. 1-304 (1984); Fee v. Director, OWCP, 6 B.L.R. 1-1100 (1984). All records regarding the claimant's employment are to be considered by the ALJ in his computation of coal mine employment, including affidavits of co-workers, Social Security records, sworn testimony, written statements of the miner (including the Form CM-911a), records of the employer, and pension records. 20 C.F.R. § 725.101(a)(32)(ii); Green v. A.G.P. Co., Inc., 4 BLR 1-109 (1981).

**A.      The ALJ erred in failing to explain how he calculated the length of claimant's coal mining employment.**

The ALJ is required to specifically articulate what evidence he credits or rejects along with his rationale for crediting or rejecting it. For example, in Shapell, the Board vacated and remanded the ALJ's decision where his finding of three years of coal mine employment was "too cursory to comply with the Administrative Procedure Act." 7 B.L.R. 1-304. The Board explained:

> The record contains conflicting information concerning claimant's various coal mine jobs between 1930 and 1956. *Citations omitted.* The administrative law judge, however, failed to explicitly consider any of this evidence and state why he credits or discredits specific pieces of evidence. 7 B.L.R. 1-308.

Likewise, in Fee, the Board vacated and remanded the ALJ's calculation of coal mine employment where he failed to explicitly credit or discredit each piece of testimony related to the length of employment issue. 6 B.L.R. 1-1100 (1984). Specifically, the Board stated that the ALJ erred by failing to explain why he discredited testimony and affidavit evidence related to the claimant's employment during certain years. 6 B.L.R. 1-1103 (1984). The Board vacated the ALJ's order despite its finding that "some aspects of his findings have been explained." Id.

In <u>Goodman v. Round Mountain Coal Company</u>, BRB No. 09-0407 BLA (September 29, 2010) (unpub.), a case decided subsequent to the revival of the 15 year presumption, the Board vacated the ALJ's determination of length of coal mining employment due to the ALJ's failure to explain his calculations. There, the ALJ reviewed the relevant evidence, including an employment history form from the claimant, the claimant's Social Security earnings records, and the claimant's testimony. After stating that he believed the claimant's employment history form and testimony were unreliable, the ALJ determined that claimant had 13 years of coal mining employment based upon the Social Security earnings record. The Board instructed the ALJ on remand to adequately explain the method he used to calculate the claimant's length of coal mining employment. <u>Goodman</u>, slip op at 3.

As was the case in <u>Goodman</u>, the ALJ here failed to adequately explain the method he used to calculate the claimant's length of coal mining employment. Rather, the ALJ simply noted that the claimant had alleged that some of the mines he worked for may not have taken out social security taxes, and that the miner, therefore, had worked for at least 15 years in the coal mines. (D&O at 5). The ALJ recited that the claimant testified that his first job as a miner was in 1970 and that his last job as a coal miner was in August of 1991. (D&O at 3). The ALJ further recited the claimant's testimony that he did not work in the years 1981, 1982, 1983, or 1984 due to a back injury, that he had missed a year of work around 1991 due to a back injury, and that he spent another year working construction in Florida during the relevant time period. (D&O at 3). Accordingly, the ALJ noted that there were 16 different years in which the claimant could have worked as a coal miner. (D&O at 3).

Bristol: 370775-1

Next, the ALJ provided a summary of the employer's argument that the evidence only established 5.3 years of coal mining employment. (D&O at 4). After reciting the employer's argument, without explanation, the ALJ noted that he believed the DOL used a more reasonable method in determining that the claimant had 9.25 years of coal mining employment. (D&O at 4). However, the ALJ rejected the Department of Labor's calculation because the Department of Labor did not take into account the claimant's testimony that he had earnings that were not reported to the Social Security Administration. (D&O at 4).

The ALJ went on to note that other miners have previously alleged that not all earnings were properly reported to the Social Security Administration. (D&O at 5). The ALJ noted that the claimant alleged that he had worked for some mines that did not take out social security taxes, and that there may have been confusion as to the earnings credited to him based on earnings being credited to the location of the home office as opposed to a coal mine. (D&O at 5). Then, the ALJ stated:

> It is reasonable to expect that he also worked for periods "under the table," as alleged, early in his career, in the 1970s. *See* Colloquy at 31-32. Therefore, I find that claimant engaged in coal mine employment for at least 15 years.

Although the ALJ explained that he credited the claimant's testimony regarding his coal mine employment, and that he found that the social security earnings records did not fairly represent all of claimant's employment, he still failed to explain how he determined claimant worked "at least 15 years" in the mines. As noted by the Board in Fee, it is not adequate that an ALJ explain "some aspects of his findings." The ALJ noted that the Department of Labor used an adequate method in calculating the claimant's coal mine employment. He further noted that claimant likely had some

Bristol: 370775-1

additional coal mining employment based upon the claimant's testimony that not all of his earnings were reported. (D&O at 5). However, the ALJ provided absolutely no explanation for how he determined that the claimant should be credited with over five years of additional coal mine employment on top of the 9.25 years calculated by the DOL based solely on claimant's testimony. Furthermore, the ALJ failed to provide a specific number of years for which the claimant had worked as a coal mine employee.

A specific finding of years claimant worked as a coal miner is particularly important in this case as claimant's length of employment is exceptionally close to the 15 year threshold provided by the PPACA to shift the burden of proof to the employer. The ALJ specifically stated that "…there are at most 16 different years in which claimant could have worked as a coal miner." (D&O at 3). As such, the ALJ would have to credit claimant with full years of coal mine employment for 15 out of the 16 years in which claimant *could have possibly* worked as a coal miner for the PPACA presumption to apply. Again, the burden was on claimant to establish that he had worked as a miner in 15 of the 16 relevant years. Although the ALJ did specifically credit the testimony of claimant, he arbitrarily determined that claimant had "engaged in coal mine employment for at least 15 years" without any explanation of the method he used to calculate coal mine employment. As such, the ALJ erred and the case must be remanded.

Finally, if it is found that claimant has established less than 15 years of qualifying coal mine employment, claimant would not be entitled to the presumption set forth in 30 U.S.C. §921(c)(4), and the burden of proof would remain on the claimant to establish each element of entitlement by a preponderance of the evidence.

Bristol: 370775-1

**B.** **The ALJ erred in failing to consider all evidence of record relating to claimant's coal mine employment.**

As noted above, the ALJ must consider all records of claimant's coal mine employment when computing the length of his employment. 20 C.F.R. § 725.101(a)(32)(ii); Green v. A.G.P. Co., Inc., 4 B.L.R 1-109 (1981). In his decision, the ALJ referred to claimant's application, claimant's hearing testimony, claimant's itemized statement of earnings from the Social Security Administration, the employer's calculations regarding the length of claimant's coal mine employment, and the Director's overall finding regarding claimant's length of employment. The ALJ did not consider claimant's application for benefits, Form CM-913, and deposition testimony from his prior claim (DX 1), the Director's finding of only eight years in the prior claim (DX 1), the Description of Coal Mine Work and Other Employment (DX 5), the Form CM-911 completed by the claimant (DX 4), or the statement from the claims examiner noting that she had discussed his coal mine employment with the claimant. (DX 4). This failure requires that the ALJ's finding be reversed because claimant's testimony contained in those exhibits directly contradicts much of his hearing testimony, which in turn calls into question the ALJ's decision to credit claimant's hearing testimony in finding he engaged in coal mine employment for more than 15 years and that he last worked in August or September of 1991.

Claimant noted on his initial application dated November 1, 1994, that he last worked on April 1, 1994, when he suffered a back injury. (DX 1). The claimant also testified during his deposition on January 6, 1995, that he last worked in April, 1991, when he suffered a back injury. (DX 1). Similarly, claimant noted in DX 4 and DX 5 that he last worked in March 1991. Finally,

Bristol: 370775-1

claimant noted on the Form CM-913 from his prior claim that he last worked on April 1, 1994. The discrepancy in claimant's testimony regarding his last date of employment is important for two reasons. First, it reduces the total amount of time claimant spent working in the mines by five to six months. It is not clear whether the ALJ would have found claimant engaged in coal mine employment for "at least 15 years" had he found that claimant stopped working on April 1, 1994, some five to six months earlier than he testified at the hearing.

The discrepancy in claimant's testimony is also important because it calls the reliability of his hearing testimony itself into question. The ALJ relied entirely upon the claimant's testimony that some of the employers he worked for may have failed to report his earnings to the Social Security Administration when finding that claimant should be credited with at least 15 years of employment. As will be noted below, this is despite the claimant's acknowledgement that he did not know which employers failed to report his earnings, and his acknowledgement upon cross examination that he could be mistaken that he worked for the employers as long as he claimed he did on direct examination. (Tr. at 17, 32).

Next, although the ALJ acknowledged the SSER and claimant's application in his discussion of the evidence relating to claimant's coal mine employment, he did not weigh it together with claimant's testimony when issuing his finding regarding the length of claimant's employment. This is again important because the ALJ found that, by his own testimony, claimant could have worked, at most, during 16 calendar years. As previously noted, the ALJ's finding of at least 15 years must be remanded for consideration of whether claimant last worked on April 1, 1991, rather than August or September. Furthermore, the ALJ failed to consider whether claimant did not engage in coal mine

employment during the fourth quarter of 1970. Claimant acknowledged during the hearing that his social security earnings record was accurate in reporting that he was working in Biloxi, Mississippi during this period. (Tr. at 25). He also acknowledged working at Clarke Super 100 in Cookeville, Tennessee during the fourth quarter of 1970. (Tr. at 25). At no time did claimant allege that this work was coal mining work.

Finally, given the ALJ's finding that claimant worked in only 16 calendar years, the ALJ erred by failing to consider when claimant started his employment in 1970. To the extent the evidence permits, the beginning and ending dates of all periods of coal mine employment shall be ascertained. 20 C.F.R. § 725.101(a)(32)(ii). The claimant's earnings report shows no earnings until the third quarter of 1970. Again, given the ALJ's finding that claimant could have worked, at most, during 16 calendar years, and that he worked "at least 15 years," reducing claimant's total employment by an additional six months could significantly affect this finding.

Finally, the ALJ failed to consider whether claimant was also off work due to a back injury in 1986 and 1987. Claimant testified during the hearing that he was off work due to back injury on two separate occasions before he suffered his work-ending injury in 1991. (Tr. at 15-16). The claimant acknowledged one of those periods is represented by the absence of earnings on his SSER between 1980 and 1985. (Tr. at 29). The claimant also noted that he was off for another period of approximately one year. (Tr. at 16). This is consistent with the lack of earnings from coal mine employment in 1986 and 1987 on claimant's SSER. The ALJ did not consider this fact in determining that claimant worked at least 16 calendar years. If an additional year is added to the amount of time claimant acknowledged being off work, then claimant could have performed coal

Bristol: 370775-1

mine employment in only 15 calendar years. The claim must be remanded for consideration of this issue as well.

### C.    The ALJ's finding of 15 years of coal mine employment is not rational or supported by substantial evidence.

In addition to the ALJ's insufficient explanation regarding his calculation of coal mine employment, the limited insight provided into his method of calculation demonstrates that it is not based on a reasonable method or supported by substantial evidence. Again, the Board will uphold the ALJ's calculation if it is based on a reasonable method and supported by substantial evidence in the record as a whole. Vickery v. Director, OWCP, 8 BLR 1-430 (1986); Smith v. National Mines Corp., 7 BLR 1-803 (1985); Miller v. Director, OWCP, 7 BLR 1-693 (1983); Maggard v. Director, OWCP, 6 BLR 1-285 (1983). "Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." Piney Mountain Coal Company v. Mays, 176 F.3d 753; 1999 U.S. App. Lexis 8487 (4th Cir. 1999), *quoting* NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939). In Allentown Mack Sales and Serv., Inc. v. NLRB, the Supreme Court explained that the substantial evidence test requires a degree of evidence that could satisfy a reasonable fact-finder of a particular fact. 522 U.S. 359, 377, 118 S. Ct. 818 (1998).

Here, the ALJ's calculations fail to meet the criteria of being reasonable or supported by substantial evidence for several reasons. The relevant evidence in the record consists of claimant's social security earnings statement, claimant's benefits application forms, claimant's hearing testimony and claimant's deposition testimony. The ALJ determined that the Director's and employer's calculations were inaccurate based upon claimant's hearing testimony that the possibility

Bristol: 370775-1

existed that an employer did not report earnings. (D&O at 6). Although claimant testified that he believed he worked for a few employers for longer than demonstrated by his SSER, he also stated that it was very likely that he was mistaken regarding his length of employment. (Tr. at 32). Further, regarding his memory surrounding his history of employment as a miner, claimant stated, "I had these wrote down and I worked real hard. I'm not the sharpest tool in the shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could, but not having any documentation, there was no way I could tell you 100 percent sure about any of them." (Tr. at 33). By his own admission, claimant is not a reliable source regarding his employment history.

Remarkably, even though he afforded more probative value to claimant's testimony than to the other evidence in the record, the ALJ agreed that claimant is "not a good historian." (D&O at 5). In a single paragraph, the ALJ discredited claimant's testimony and subsequently relied entirely on that testimony to credit claimant with over five years of coal mine employment that is not supported by any other evidence in the record. (D&O at 5). The ALJ's decision to afford more probative value to one sentence of vague, uncertain testimony is inconsistent with prior holdings of the Board. For example, in Yendall v. Director, OWCP, 4 BLR 1-1467 (1982), the Board affirmed the ALJ's decision to discredit the claimant's testimony regarding coal mine employment where it was very uncertain. In addition, prior Board decisions have upheld an ALJ's decision to afford more weight to the Social Security records than to claimant testimony where the testimony was unclear. Brumley v. Clay Coal Corp., 6 BLR 1-956 (1984); Tackett v. Director, OWCP, 6 BLR 1-839 (1984); see also Clayton v. Pyro Mining Co., 7 BLR 1-551 (1984); Preston v. Director, OWCP, 6 BLR 1-1229

Bristol: 370775-1

(1984); Hall v. Director, OWCP, 2 BLR 1-998 (1980); Mullins v. Director, OWCP, 6 BLR 1-508 (1983).

Furthermore, even if a reasonable fact-finder could determine that claimant's testimony warranted adding additional years to his coal mine employment, there is absolutely no evidence as to how many more years should be added. "Substantial evidence" does not justify adding over five years of coal mine employment as opposed to one or two years of employment. Accordingly, the ALJ's decision to add over five years of coal mine employment based on claimant's vague assertion that some of his employers may not have reported his earnings is not supported by substantial evidence and must be reversed.

> **D.** **The ALJ erred in rejecting the employer's and Director's calculations regarding the length of claimant's coal mine employment.**

The ALJ primarily rejected the employer's and Director's methods of calculations on the grounds that it was based upon claimant's social security earnings records, and he accepted claimant's testimony that some of his employers may not have reported all of his income. (D&O at 4). Employer argues that the ALJ's decision to credit claimant's hearing testimony must be reversed for the reasons set forth above. In addition, however, the ALJ further erred in his consideration of the methods of calculation employed by the employer and Director. First, after reciting the employer's calculations regarding the length of claimant's employment, he simply noted "I find the Department of Labor, 'DOL,' method is more reasonable." (D&O at 4). The ALJ provided absolutely no basis for his finding that the Department of Labor's method was more reasonable. The failure of the administrative law judge to address all relevant evidence or explain his rationale requires remand. Hall v. Director, OWCP, 12 B.L.R. 1-80 (1988). The ALJ provided no support for

his finding. Therefore, his finding is not in compliance with the Administrative Procedures Act and the claim must be remanded for further consideration of this issue.

Finally, although the employer believes its method of calculation is more accurate than the method employed by the Director, the ALJ also erred in his rejection of the Department of Labor's calculations regarding the length of claimant's coal mine employment. The ALJ noted again on page four of his decision that he found claimant to be credible, and "the DOL did not take his allegations into consideration." Contrary to the ALJ's finding, DX 4 reveals that the claims examiner, Jennifer Jackson, contacted the claimant on November 1, 2010, to ask him which employers listed on his social security earnings records were coal companies. This apparently resulted in the Director's crediting the claimant with an additional 1.25 years of coal mine employment, since it only credited claimant with eight years of employment in the prior claim. (DX 1). As noted above, the ALJ did not consider DX 4 in issuing his finding regarding the length of claimant's coal mine employment. As such, his decision to discredit the Department of Labor's calculations for the reasons stated must be vacated and remanded for further consideration.

## II. The ALJ erred in finding employer failed to "rule out pneumoconiosis."

### A. The ALJ failed to review all evidence of record when considering whether employer had met its burden of proof.

Here, the ALJ erred by failing to first assess whether claimant established a change in condition, and upon making such a finding, in failing to consider all evidence of record to determine whether employer had met its burden of proof. As claimant filed his present claim more than one year after the Director's March 1, 1995 denial, this claim is a subsequent claim and the ALJ was required to deny the claim on the same basis as the prior claim unless claimant established a material

Bristol: 370775-1

change in condition.[2]  20 C.F.R. §725.309.  To do that, claimant was required to prove by a preponderance of the evidence developed since the prior denial at least one element of entitlement previously found against him.  Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358 (4th Cir. 1996)(*en banc*).

Claimant's prior claim was denied on the grounds that claimant failed to establish the existence of pneumoconiosis or that he was totally disabled due to the disease.  (DX 1).  The ALJ failed to issue a specific finding as to whether claimant established a change in condition, nor did he review the entire record to determine whether the employer had met its burden of proof set forth in §718.305(d) upon finding that the evidence established claimant was totally disabled due to pneumoconiosis.  "Once the miner establishes a change in condition through the newly submitted evidence, the ALJ must consider all the evidence in the record — old and new — to determine whether the claimant is entitled to benefits."  Cumberland River Coal Co. v. Banks, 690 F.3d 477 (6th Cir. 2012).  Director's Exhibit 1 includes three negative chest x-ray readings of the February 23, 1995 chest x-ray by Drs Wicker, Wiot and Spitz.  The ALJ did not consider these readings when assessing whether the Employer had met its burden of "ruling out" pneumoconiosis, and the claim must be remanded for consideration of that issue.  "The Black Lung Benefits Act commands judges to consider "*all* relevant evidence" in determining the validity of a given claim."  Dixie Fuel Co., LLC v. Dir., 700 F.3d 878, 881 (6th Cir. 2012)(*citing* 30 U.S.C. § 923(b)).  *See also* Administrative Procedures Act, 5 U.S.C.S. § 557(c)(3)(A).

---

2.  While DOL revised § 725.309, the D.C. Circuit Court of Appeals held the regulation is not substantively different from the previous requirement that claimant prove "a material change in conditions."  Nat'l Mining Assoc. v. Dep't of Labor, 292 F.3d 849, 863-864 (D.C. Cir. 2002).  For simplicity, we will refer to a "material change in condition."

Bristol: 370775-1

**B.**     **The ALJ erred in reflexively discrediting Dr. Caffrey's biopsy report.**

The ALJ erred in mechanically discrediting Dr. Caffrey's biopsy report on the grounds that it was "old." (D&O at 7). While it is proper for an administrative law judge to find that an opinion that pneumoconiosis is never progressive is hostile to the Act, there is no contrary proposition that pneumoconiosis always has to result in such a progressive worsening of symptoms. *see* Workman v. Eastern Associated Coal Corp., 23 BLR 1-22, 1-26 (2004) (Motion for Recon.) (*en banc*) (the amendments to Section 718.201 did not alter claimant's burden of proving the existence of pneumoconiosis arising out of coal mine employment by a preponderance of the evidence and without the benefit of any presumption of latency or progressivity); *see generally* Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849, 863, 23 BLR 2-124, 2-172-173 (D.C. Cir. 2002) (pneumoconiosis can be latent and progressive, but is not in the majority of cases). Finally, the Board has held that the later evidence rule is not to be mechanically applied. Triplett v. Incoal Coal Co., 2 B.L.R. 1-633 (1979).

Dr. Caffrey reviewed slides from claimant's lung-wedge biopsy on June 24, 2005, and found no evidence of the disease. (EX 8). The claimant submitted no evidence in rebuttal of Dr. Caffrey's findings. No physician of record has opined that the lung biopsy from 2005 would not be useful in determining whether claimant suffers from pneumoconiosis, and the ALJ provided no explanation for how he determined that the biopsy was too old to be relevant to his determination. The ALJ's decision to discredit the report amounts to a medical finding that is outside his authority. Therefore, the ALJ's finding must be vacated and remanded for further consideration. Dr. Caffrey's opinion, if

Bristol: 370775-1

credited, supports the findings of Drs. Wicker, Wiot, Spitz, Wheeler and Scott that claimant does not

suffer from pneumoconiosis.

> ### C. The ALJ erred in his consideration of the chest x-ray evidence and in finding it failed to preponderate against a finding of clinical coal workers' pneumoconiosis.

As noted above, the ALJ failed to consider the readings of claimant's chest x-rays found in

DX 1, and the claim must be remanded for that reason alone. The ALJ further erred, however, in his

consideration and weighing the chest x-ray readings in the current claim.

First, the ALJ did not weigh all the chest x-ray readings submitted in the current claim. "This

Court will affirm an ALJ's factual findings when substantial evidence supports those conclusions.

(Citation Omitted). Where, however, an ALJ has improperly characterized the evidence or failed to

account of relevant record material, deference is inappropriate and remand is required." Eastover

Mining Co. v. Williams, 338 F.3d 501, 508 (6th Cir. 2003)(citing Director, Office of Workers'

Compensation Programs v. Rowe, 710 F.2d 251, 255 (6th Cir. 1983). "Although an ALJ may give

more weight to some evidence than other evidence, he is not allowed to ignore competing

evidence." Dixie Fuel Co., LLC v. Dir., 700 F.3d 878, 880 (6th Cir. 2012).

Although the ALJ listed all of the readings and noted that the readings of the dually certified

readers were equally divided, he only discussed Dr. Scott's reading of the March 28, 2012 film[3] (EX

9). (D&O at 7). He did not evaluate Dr. Alexander's reading of that film, nor did he evaluate and

---

3 . The ALJ incorrectly referred to this film as being taken on September 19, 2012. (D&O at 7). However, that is
actually the date of Dr. Scott's reading (EX 9).

Bristol: 370775-1

weigh the seven readings of the other three films in evidence in the current claim. Again, the ALJ's finding must be vacated and the claim remanded for evaluation of all the evidence of record.

Next, the ALJ erred in discrediting the readings by Drs. Wheeler and Scott, and in failing to consider their credentials as professors of radiology when weighing the evidence. On page 7 of his decision, the ALJ acknowledged Drs. Wheeler's and Scott's credentials, but indicated that he would not give greater weight to their opinions "because of the logic discussed below." In considering Dr. Scott's reading, the only reading he actually discussed, the ALJ noted it included a finding of possible emphysema, which the ALJ stated "may evidence legal pneumoconiosis." He therefore found the reading to be equivocal and discredited it. The ALJ did not consider that Dr. Scott specifically noted on the ILO form that the film revealed no parenchymal or pleural abnormalities consistent with pneumoconiosis. Furthermore, as will be noted below, the ALJ never weighed the medical report evidence to determine whether it established claimant's emphysema was caused or substantially aggravated by coal dust exposure. The Board considered and rejected this same reasoning in Harris v. Old Ben Coal Co., BRB No. 04-0812 BLA (January 27, 2006). In Harris, the Board noted:

> Employer is correct, however, in asserting that the administrative law judge relied upon his own medical conclusions when characterizing Dr. Wiot's x-ray interpretations. The administrative law judge referred to Dr. Wiot's findings of bullae and emphysematous changes in the upper lung fields, and his finding of interstitial fibrosis, and determined that they were "not necessarily wholly inconsistent with" the positive readings for pneumoconiosis. Decision and Order at 17. Absent medical evidence in the record that the items described by Dr. Wiot are consistent with pneumoconiosis, the administrative law judge relied upon his own understanding of the significance of these findings to determine that Dr. Wiot's negative readings supported a finding of pneumoconiosis. This is beyond the scope of the

Bristol: 370775-1

administrative law judge's role as fact-finder. *See* Casella v. Kaiser
Steel Corp., 9 BLR 1-131 (1986).

The ALJ clearly performed the same type of analysis in the present claim. As such, he erred
in finding that a finding of emphysema discredited Dr. Scott's finding of no pneumoconiosis.

The ALJ further erred in finding that the most persuasive opinion comes from Dr. Alexander,
who unequivocally diagnosed pneumoconiosis. (D&O at 7). The ALJ did not identify which
reading of Dr. Alexander he credited. Assuming he was referring to the reading of the March 28,
2012 film, the ALJ's decision must again be reversed because he applied a different standard when
evaluating the two readings of the film. As noted above, Dr. Scott also stated unequivocally that the
film revealed no parenchymal or pleural abnormalities consistent with pneumoconiosis. Both
physicians also similarly noted questions regarding the etiology of the mass found in the left upper
zone of claimant's lung. Dr. Alexander included question marks around his opinion finding the mass
represented scarring. Finally, both physicians found the film to be quality two with scapular overlay.

The claim must be remanded for proper consideration of Dr. Scott's reading, and for full
consideration of all chest x-ray readings of record.

**D.     The ALJ erred in failing to issue a specific finding with regard to
        whether the readings submitted as "other evidence" ruled out
        pneumoconiosis.**

The ALJ further erred in failing to consider the readings submitted as "other" evidence. The
ALJ acknowledged the readings in footnote 5 on page seven of his decision. However, he did not
issue a specific finding as to the weight he would attribute the readings, nor did he consider the
"other" evidence together with the chest x-ray, biopsy evidence, and medical report evidence when

Bristol: 370775-1

assessing whether the employer met its burden of ruling out pneumoconiosis. *See* Compton v. Island Creek Coal Co., 211 F.3d 203 (4th Cir 2000).

To the extent the ALJ considered Dr. Wheeler's reading of the March 20, 2012 film,[4] he erred in dismissing his reading simply because he marked the form to indicate that the film was unreadable, and because he included question marks next to the finding of emphysema and TB.[5] Dr. Wheeler explained that he marked the form unreadable because NIOSH did not, at that time, allow classifications of digital images. Nevertheless, the doctor went on to provide a narrative report of his findings.

With regard to the question marks placed beside the findings of emphysema and TB, the ALJ failed to acknowledge that the doctor specifically noted in his narrative report that the film revealed no evidence of coal workers' pneumoconiosis. Simply including question marks in the ILO form does not provide sufficient reason for discrediting a reading. In Gibson v. Alex Energy Inc., BRB No. 11-0483 BLA (April 19, 2012) (slip. op. at 5-6), the ALJ found Dr. Wheeler's reading of a film to be equivocal because he included a question mark in the box on the ILO form asking the physician to answer further questions regarding small and large opacities if they answer yes to the question regarding abnormalities consistent with pneumoconiosis. The ALJ noted that Dr. Wheeler's equivocal answer regarding the threshold question called his entire simple and complicated pneumoconiosis opinion into doubt. In reversing the ALJ's finding, the Board noted that Dr.

---

4 . The ALJ again misidentified the film as being taken on March 28, 2012. (D&O at 7, f.n. 5).
5. The ALJ includes negative remarks about Dr. Wheeler's reading in his opinion, but again, it does not appear that he rendered a decision as to the actual weight it would be accorded.

Wheeler unequivocally opined that the x-ray in question did not show any large opacities of complicated pneumoconiosis because he specifically indicated on the ILO form that the film revealed Category O large opacities. The fact that Dr. Wheeler's reading also acknowledged 2cm, 4cm and 5cm masses "compatible with conglomerate granulomatous disease: histoplasmosis more likely than TB or mycobacterium avium complex (MAC)" did not alter the Board's finding. The Board's reasoning in Gibson is applicable to present claim. Therefore, the Board should remand the claim for proper consideration of the readings submitted as "other" evidence.

Finally, to the extent the ALJ discredited Dr. Wheeler's reading because he failed to state whether emphysema could constitute legal pneumoconiosis, his finding must be reversed for the same reasons set forth in Section II C above.

### E.     The ALJ erred in his consideration of the medical report evidence.

As previously noted, the ALJ did not consider the medical report evidence except to indicate that Drs. Rosenberg and Dahhan based their opinions upon their understanding that the chest x-ray evidence was negative for pneumoconiosis, which was contrary to his finding. For this reason, he found their opinions to be flawed and discredited them. As noted above, the ALJ erred in his evaluation of the chest x-ray evidence and in his ultimate finding that it established clinical pneumoconiosis. If the ALJ's finding on that issue is reversed, then his consideration of the medical report evidence must also be vacated and remanded for further consideration.

Furthermore, the ALJ erred in failing to consider whether the evidence ruled out legal pneumoconiosis. The regulations at § 718.202(a) provide four alternative methods for proving pneumoconiosis. Chest x-rays are considered under § 718.202(a)(1). Section 718.202(a)(4) in

Bristol: 370775-1

listing the objective tests on which a physician may rely in diagnosing pneumoconiosis specifically excludes chest x-rays. The Board has acknowledged this as well by holding that a medical report that is nothing more than a repeat of a chest x-ray is not sufficient under § 718.202(a)(4). See Worhach v. Director, OWCP, 17 BLR at1-110.

Here, the ALJ dismissed the opinions of Drs. Rosenberg and Dahhan because "both assumed the x-ray evidence was negative, and therefore I find that their opinions are flawed." The ALJ provided no further explanation for discrediting the reports of Drs. Rosenberg and Dahhan. However, contrary to the ALJ's contention, neither physician predicated their opinions upon negative x-ray evidence.

First, Dr. Rosenberg provided an extensive review of all medical evidence in the record in his report. (Ex 1). Specifically, Dr. Rosenberg included an entire section in his report reciting each x-ray reading in the record. He also noted that Dr. Wheeler had detected no micronodularity in a recent film. Then, Dr. Rosenberg provided an approximately four page discussion centered on distinguishing the effects of coal mine dust exposure from the effects of cigarette smoking as each relates to pulmonary function study values. Based on claimant's ventilatory studies as compared to this discussion, Dr. Rosenberg determined that claimant suffered from a disabling impairment as a result of his extensive smoking history and not as a result of coal dust exposure. Dr. Rosenberg's medical opinion that coal dust exposure did not result in disability was based primarily on claimant's ventilatory values and not on any "assumption" that the x-ray evidence was negative.

Likewise, Dr. Dahhan also determined that claimant's pulmonary function study values were not consistent with coal dust related lung disease but with lung disease secondary to cigarette

smoking. (DX 15, EX 11). Although Dr. Dahhan did note that he believed claimant did not have radiological findings consistent with legal pneumoconiosis, he cited the same study by Dr. Attfield regarding the distinctions between the ventilatory effects of coal dust exposure and cigarette smoking. Accordingly, because both physicians' opinions that claimant did not have legal pneumoconiosis were based primarily on claimant's pulmonary function values that were inconsistent with the disease, the ALJ erred by discrediting the reports due to their alleged reliance on an assumption of negative x-ray evidence. Accordingly, the ALJ erred in discounting the reports of Drs. Dahhan and Rosenberg and the claim must be remanded.

Finally, on remand, the ALJ must consider the claimant's smoking history when analyzing the legal pneumoconiosis issue. The Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a), by means of 33 U.S.C. §919(d) and 5 U.S.C. §554(c)(2), requires that an administrative law judge independently evaluate the evidence and provide an explanation for his findings of fact and conclusions of law. Wojtowicz v. Duquesne Light Co., 12 BLR 1-162 (1989). The nature and extent of a miner's smoking history may be relevant to issues such as the existence of pneumoconiosis and the cause of a miner's disability. *See* Sellards v. Director, OWCP, 17 B.L.R. 1-77, 1-81 (1993). As such, the ALJ is required to make specific findings regarding a claimant's smoking history and must consider all evidence pertaining to the issue and resolve any discrepancies contained in the record. *See* Webber v. Peabody Coal Co., 23 B.L.R. 1-123, 1-137 (2006). Although an ALJ's conclusions regarding a claimant's smoking history is a factual finding that will be upheld if supported by substantial evidence, the ALJ's failure to

Bristol: 370775-1

consider any part of the evidence relating to the smoking history is cause for remand. *See* Triplett v.

Sewell Coal Co., BRB No. 01-0537 BLA (Mar. 6, 2002)(unpub.).

Based on all evidence in the record, the employer argued in its closing argument brief that the ALJ should find a smoking history of at least thirty-five pack years. Such a significant smoking history should weigh heavily in the ALJ's determination regarding the existence of pneumoconiosis and disability causation. However, the ALJ failed to make any finding related to claimant's smoking history. As such, the claim must be remanded for further consideration of that issue.

### III.    The ALJ erred in finding employer failed to establish that claimant's disability did not arise out of, or in connection with, employment in a coal mine.

The ALJ summarily discredited the opinions of Drs. Rosenberg and Dahhan on the issue of disability causation because they did not find clinical pneumoconiosis. (D&O at 8). The existence of pneumoconiosis and disability due to pneumoconiosis are two completely separate issues. Impairment does not automatically result from a finding of clinical pneumoconiosis. Hess v. Dominion Coal Corp./Sun Coal, BRB No. 12-0211 BLA (Feb. 05, 2013). The ALJ did not consider whether the evidence established legal pneumoconiosis. As noted above, he summarily discredited Dr. Dahhan's and Dr. Rosenberg's opinions because they did not find clinical pneumoconiosis. However, the ALJ also discredited Dr. Scott's reading because he did not find pneumoconiosis when he acknowledged it revealed evidence of emphysema. The ALJ made no finding as to whether claimant's emphysema was due to coal dust exposure, and therefore constituted legal pneumoconiosis. The ALJ's reasoning is circular and must be vacated.

Furthermore, even if it is found that claimant suffers from clinical pneumoconiosis, the ALJ must still consider the opinions to determine whether employer has established that pneumoconiosis

Bristol: 370775-1

-25-

was not a substantially contributing cause of claimant's disability. *See* 20 C.F.R § §718.204(C)(1), 718.305(a).

### CONCLUSION

In conclusion, the Board must vacate and remand the Decision and Order of the ALJ because he erred in his calculation of the length of claimant's coal mine employment and in his weighing of the evidence. The ALJ failed to consider all relevant evidence relating to the length of claimant's coal mine employment, and failed to adequately explain what method he used to calculate the length of the claimant's employment. The ALJ further erred in his analysis of the chest x-ray, "other," biopsy, and medical report evidence when considering whether the new evidence "ruled out" pneumoconiosis, and in failing to perform a de novo review of the evidence following a finding that claimant established a change in condition. Finally, the ALJ erred in his consideration of the evidence when determining whether employer had met its burden of establishing claimant's disability was not due to pneumoconiosis.

Respectfully submitted,

ABERRY COAL, INC.,

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA/TN 24203
(423) 793-4800

By: _____
JOHN R. SIGMOND, Esquire
Counsel for Employer

Bristol: 370775-1

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing this 8th day of April, 2013 to

Joseph Wolfe, Esquire, Wolfe, Williams, Rutherford & Reynolds, P.O. Box 625, Norton, VA 24273,

and Rae Ellen Frank James, Esquire, Associate Solicitor of Labor, U.S. Department of Labor, Suite

N 2605, NDOL, 200 Constitution Avenue NW, Washington, D.C.  20210.

JOHN R. SIGMOND

Bristol: 370775-1

A741

**U.S. Department of Labor**

Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601



BRB No. 13-0237 BLA

| | | |
|---|---|---|
| JOSEPH FLEMING | ) | **NOT PUBLISHED** |
| | ) | |
| Claimant-Respondent | ) | |
| | ) | |
| v. | ) | **DEC 17 2013** |
| | ) | |
| ABERRY COAL, INCORPORATED | ) | DATE ISSUED:_____ |
| | ) | |
| Employer-Petitioner | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, UNITED | ) | |
| STATES DEPARTMENT OF LABOR | ) | |
| | ) | |
| Party-in-Interest | ) | DECISION and ORDER |

Appeal of the Decision and Order Award of Benefits of Daniel F. Solomon, Administrative Law Judge, United States Department of Labor.

Joseph E. Wolfe and Ryan C. Gilligan (Wolfe Williams Rutherford & Reynolds), Norton, Virginia, for claimant.

John R. Sigmond (Penn, Stuart & Eskridge), Bristol, Virginia, for employer.

Before: DOLDER, Chief Administrative Appeals Judge, SMITH and HALL, Administrative Appeals Judges.

PER CURIAM:

Employer appeals the Decision and Order Award of Benefits (2012-BLA-05241) of Administrative Law Judge Daniel F. Solomon, rendered on a subsequent claim filed on July 19, 2010,[1] pursuant to provisions of the Black Lung Benefits Act, 30 U.S.C. §§901-

---

[1] Claimant filed an initial claim on November 1, 1994, which was finally denied by the district director on March 1, 1995, as claimant did not establish any of the elements of entitlement. Director's Exhibit 1.

944 (Supp. 2011) (the Act). The administrative law judge credited claimant with at least fifteen years of underground coal mine employment and determined, based on employer's stipulation, that claimant is totally disabled pursuant to 20 C.F.R. §718.204(b), thereby establishing a change in an applicable condition of entitlement at 20 C.F.R. §725.309.[2] The administrative law judge further found that claimant invoked the rebuttable presumption of total disability due to pneumoconiosis, set forth in amended Section 411(c)(4), 30 U.S.C. §921(c)(4), and that employer did not rebut that presumption.[3] Accordingly, the administrative law judge awarded benefits.

On appeal, employer argues that the administrative law judge erred in crediting claimant with fifteen years of underground coal mine employment. Employer also challenges the administrative law judge's finding that it failed to establish rebuttal of the amended Section 411(c)(4) presumption. Claimant responds, urging affirmance of the award of benefits. The Director, Office of Workers' Compensation Programs, declined to file a substantive response, unless specifically requested to do so by the Board. In a reply brief, employer reiterates its previous contentions.[4]

The Board's scope of review is defined by statute. The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law.[5]  33 U.S.C. §921(b)(3), as incorporated by 30

---

[2] The revisions made to 20 C.F.R. §725.309, which became effective on October 25, 2013, do not impact this case. 78 Fed. Reg. 59,102, 59,118 (Sept. 25, 2013)(to be codified at 20 C.F.R. §725.309).

[3] Section 1556 of Public Law No. 111-148 reinstated the presumption of Section 411(c)(4) of the Act, 30 U.S.C. §921(c)(4), as implemented by 78 Fed. Reg. 59,102, 59,114 (Sept. 25, 2013)(to be codified at 20 C.F.R. §718.305). Under amended Section 411(c)(4), a miner is presumed to be totally disabled due to pneumoconiosis if he or she establishes at least fifteen years of underground coal mine employment, or coal mine employment in conditions substantially similar to those in an underground mine, and a totally disabling respiratory or pulmonary impairment.

[4] We affirm, as unchallenged on appeal, the administrative law judge's findings that claimant's coal mine employment was underground, that claimant is totally disabled, and that claimant established a change in an applicable condition of entitlement. *See Skrack v. Island Creek Coal Co.*, 6 BLR 1-710 (1983); Decision and Order at 5; Hearing Transcript at 11.

[5] The record reflects that claimant's coal mine employment was in Kentucky. Director's Exhibit 1. Accordingly, this case arises within the jurisdiction of the United

2

U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman and Grylls Associates, Inc.*, 380 U.S. 359 (1965).

In considering whether claimant had fifteen years of qualifying coal mine employment to invoke the amended Section 411(c)(4) presumption, the administrative law judge reviewed claimant's 2010 application for benefits, his testimony at the hearing on this claim, and the Social Security earnings records (SSERs) submitted with this claim. The administrative law judge found that claimant's SSERs established that his work as a miner began in 1970 and ended in 1991. Decision and Order at 3; Director's Exhibit 7. The administrative law judge further noted that claimant testified that he did not work from 1981 through 1984 and in 1991 due to a back injury, and that he was employed in construction for one year. Decision and Order at 3; Director's Exhibit 7. The administrative law judge found that claimant's SSER confirmed his testimony regarding the gap in his employment history between 1981 and 1985 and his work in the construction industry. *Id.* The administrative law judge concluded that "there are at most sixteen different years in which claimant could have worked as a coal miner." Decision and Order at 3.

The administrative law judge then indicated that the district director found that claimant's SSER showed 9.25 years of coal mine employment, based on a comparison of "claimant's earnings to the average yearly earnings of coal miners . . . based on 125 days of exposure, or less than half the number of work days in a year." Decision and Order at 4; Director's Exhibit 25. The administrative law judge also acknowledged employer's assertion that claimant has 5.3 years of coal mine employment, based upon a comparison of the earnings figures on the SSERs to the daily average of coal miners' earnings, as calculated by the Bureau of Labor Statistics. Decision and Order at 4. The administrative law judge found that, although the method used by the district director was the more reasonable one, the district director did not consider claimant's allegation that he was entitled to credit for additional years of coal mine employment, as his SSERs are not accurate. *Id.* The administrative law judge stated:

> This is not the first time that a miner has alleged that not all of his wages were properly credited. The standard is based on a preponderance of the evidence and the records are not necessarily dispositive. The [c]laimant is not a good historian, but the records do not substantiate that he was out of work as long as six years due to workers' compensation related injuries. I note from the earnings record that [c]laimant worked sporadically or

---

States Court of Appeals for the Sixth Circuit. *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989) (en banc).

3

intermittently prior to work with [e]mployer. Claimant did not exaggerate on other matters during the hearing. He alleged that some of the mines he worked for did not take out Social Security taxes. ([Hearing Transcript at] 17, 23-24). He stated that there may have been some confusion as the earnings record credited him at the location of a home office when he was actually working in mining. For example, the notation for T.O.M. Corporation in Ann Arbor, Michigan, actually represents work performed with the East Kentucky Coal Co. ([Hearing Transcript at] 26). Likewise, work credited to Boise Cascade is in error, as he has never been in Idaho. *Id.* at 27.

It is reasonable to expect that he also worked for periods "under the table," as alleged, early in his career, in the 1970's. *See* colloquy at 31-32. Therefore, I find that [c]laimant engaged in coal mine employment for at least [fifteen] years.

*Id.* at 5.

Employer argues that the administrative law judge's finding cannot be affirmed, as the administrative law judge did not fully consider the relevant evidence and did not adequately explain how he arrived at his conclusion. We agree. The length of claimant's coal mine employment is an issue on which claimant bears the burden of proof. *See Kephart v. Director, OWCP*, 8 BLR 1-185 (1985); *Hunt v. Director, OWCP*, 7 BLR 1-709 (1985); *Shelesky v. Director, OWCP*, 7 BLR 1-34 (1984). Because the regulations do not contain a required method for computing the time spent in coal mine employment, the Board has held that it will uphold the administrative law judge's determination if it is based on a reasonable method and is supported by substantial evidence in the record considered as a whole. *See Muncy v. Elkay Mining Co.*, 25 BLR 1-21 (2011); *Vickery v. Director, OWCP*, 8 BLR 1-430 (1986).

In the present case, employer alleges correctly that the administrative law judge did not adequately explain the method he used to compute a coal mine employment history of at least fifteen years. It can be discerned from the administrative law judge's Decision and Order that he credited the district director's determination that claimant had 9.25 years of coal mine employment, as consistent with claimant's SSERs and the product of a reasonable method of computation. *See* Decision and Order at 4. It can also be discerned that the administrative law judge found that, because the district director did not do so, he was required to address claimant's allegation that the SSERs underreport the extent of his coal mine employment. *Id.* at 5. In contrast, the method by which the administrative law judge derived at least an additional five years of coal mine employment from claimant's hearing testimony on this issue is not apparent and, as a

4

consequence, we cannot determine whether the method the administrative law judge used is a reasonable one.

Specifically, the administrative law judge did not explain how he resolved the conflict between his determination that claimant "is not a good historian" and his crediting of claimant's testimony, nor did he address the significance of claimant's statement that he could not identify which employer failed to withhold Social Security taxes. Decision and Order at 5; Hearing Transcript at 17, 32. Similarly, the administrative law judge did not resolve conflicts in the evidence regarding the years in which claimant engaged in coal mine employment. As employer notes, the administrative law judge apparently credited claimant with one year of coal mine employment in 1970, although the SSERs show no such earnings until the third quarter. Director's Exhibit 4. Employer also correctly maintains that, in determining that claimant could have worked as a miner for sixteen years between the starting and ending date of his coal mine employment, the administrative law judge accounted for the periods of unemployment to which claimant testified, but did not consider the fact that claimant's SSERs reflect that he was also unemployed in 1986 and had no coal mine employment in 1987. Decision and Order at 4; Director's Exhibit 7. Because the administrative law judge did not identify the method by which he arrived at his length of coal mine employment determination, and did not resolve the conflicts in all of the relevant evidence as discussed above, his Decision and Order does not comply with the Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a), by means of 33 U.S.C. §919(d) and 5 U.S.C. §554(c)(2). *See Wojtowicz v. Duquesne Light Co.*, 12 BLR 1-162 (1989). We, therefore, vacate his finding that claimant established at least fifteen years of coal mine employment and his determination that claimant invoked the presumption at amended Section 411(c)(4).

On remand, the administrative law judge must reconsider whether claimant has established fifteen years of underground coal mine employment sufficient to invoke the amended Section 411(c)(4) presumption. In so doing, the administrative law judge must be mindful that claimant bears the burden of proof on this issue. *See Mills v. Director, OWCP*, 348 F.3d 133, 136, 23 BLR 2-12, 2-16 (6th Cir. 2003); *Kephart*, 8 BLR at 1-186. Due to the absence of specific guidelines for the computation of time spent in coal mine employment, the Board will uphold the administrative law judge's determination if it is based on a reasonable method and supported by substantial evidence in the record considered as a whole.[6] *See Muncy*, 25 BLR at 1-27. Accordingly, the administrative

---

[6] For this reason, we reject employer's allegation that the administrative law judge was required to apply the method that it used, i.e., comparing claimant's earnings to the daily average of coal miners' earnings, or explain why he rejected that method. *See Muncy v. Elkay Mining Co.*, 25 BLR 1-21, 1-27 (2011); *Vickery v. Director, OWCP*, 8 BLR 1-430 (1986).

law judge must consider all relevant evidence of record in ascertaining the dates and length of claimant's underground coal mine employment including, but not limited to, claimant's testimony, the employment history forms submitted in both claims, and claimant's SSERs.[7]  *Id.*  If the administrative law judge finds that the evidence is insufficient to establish the beginning and ending dates of claimant's coal mine employment, or he finds that any of claimant's work lasted less than a calendar year, the administrative law judge may total the partial periods of employment, or divide claimant's yearly income from work as a miner by the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics.[8]  *See* 20 C.F.R. §725.101(a)(32)(iii).

Because we have vacated the administrative law judge's finding that claimant invoked the amended Section 411(c)(4) presumption, we decline to address employer's arguments relevant to rebuttal of the presumption, as they are not ripe for consideration. If the administrative law judge finds on remand that claimant has established fifteen years of underground coal mine employment, he may reinstate his finding that claimant is entitled to the invocation of the amended Section 411(c)(4) presumption and, further, reinstate the award of benefits.  Conversely, if the administrative law judge finds on remand that claimant is unable to establish the fifteen years of underground coal mine employment necessary for invocation of the amended Section 411(c)(4) presumption, the administrative law judge must consider whether claimant has established entitlement pursuant to 20 C.F.R. Part 718 without benefit of the presumption.

---

[7] This includes evidence from the miner's 1994 claim and the present subsequent claim.  Employer alleges that there is a conflict between the evidence in claimant's initial claim and the evidence in claimant's subsequent claim regarding the end date of his coal mine employment.  Employer's Brief in Support of Its Petition for Review at 8-9.

[8] Because the administrative law judge's use of this formula is discretionary, we reject employer's allegation that the administrative law judge is required to either apply the formula, or explain why he did not.  *See Muncy,* 25 BLR at 1-27.

6

Accordingly, the administrative law judge's Decision and Order Award of Benefits is affirmed in part, vacated in part and the case is remanded for further consideration consistent with this opinion.

SO ORDERED.


NANCY S. DOLDER, Chief
Administrative Appeals Judge


ROY P. SMITH
Administrative Appeals Judge


BETTY JEAN HALL
Administrative Appeals Judge

# CERTIFICATE OF SERVICE

2013-0237-BLA Joseph Fleming v. Aberry Coal, Inc., Director, Office of Workers' Compensation Programs
(Case No. 12-BLA-5241)

I certify that the parties below were served this day.

DEC 17 2013

_____
(DATE)

_____
Thomas O. Shepherd, Jr., Esq.    _TF_
Clerk of the Appellate Boards

Dominique V. Sinesi
U.S. Department of Labor
200 Constitution Avenue, N W
N-2117
Washington, DC 20210
    --*Certified*

John R. Sigmond
PennStuart
Post Office Box 2009
Bristol, VA 24203
    --*Certified*

Joseph Fleming
1226 Zirkle Road
Dandridge, TN 37725
    --*Certified*

Hon. Daniel F. Solomon
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, N.W., Suite 400-N
Washington, DC 20001

Joseph E. Wolfe, Esq.
Wolfe Williams Rutherford & Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA 24273
    --*Certified*

Seena Foster, Esq.
Office of Administrative Law Judges
Techworld Plaza
800 K Street NW
Suite 400
Washington, DC 20210

Steven Breeskin
U.S. Department of Labor
Suite C-3516, NDOL
Washington, DC 20210

A749

IN THE UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES

JOSPEH FLEMING,             )

                         Claimant,        )

v.                           )     Case No.:  2012-BLA-05241
                           )     OWCP No.:  XXX-XX-0560

ABBERY COAL, INC.,        )

                       Employer,     )

SECURITY INSURANCE COMPANY  )
OF HARTFORD C/O ARROWPOINT   )
CAPITAL,                )

                       Insurer.      )
and                       )

DIRECTOR, OFFICE OF WORKERS'  )
COMPENSATION PROGRAMS,     )

                    Party-In-Interest.  )

## EMPLOYER'S COMMENTS ON REMAND

### STATEMENT OF THE CASE

This claim is before the Court on a subsequent claim for benefits filed by the claimant on July 19, 2010.  (DX 3).[1]  The Department of Labor issued a Proposed Decision and Order ("PDO") awarding benefits on September 20, 2011, and the employer requested that the claim be forwarded to the Office of Administrative Law Judges for a formal hearing.  (DX 25, 26).  The Honorable Daniel Solomon conducted a hearing on October 16, 2012.  During the hearing, the ALJ accepted into evidence DX 1-33, CX 1-5, and EX 1-11.  (Tr. at 5, 8, 35).  The ALJ left the record open for thirty

---

1. The employer will refer to the Director's Exhibits as "DX," Claimant's Exhibits as "CX," the Employer's Exhibits as "EX," and the Hearing Transcript as "Tr."

Bristol: 451456-1

days following the hearing. (Tr. at 13). The claimant submitted CX 6, a rereading of a March 28, 2012 digital image, on December 13, 2012.

On January 24, 2013, the ALJ issued his *Decision and Order – Award of Benefits.* In his Decision, the ALJ first determined that claimant established at least 15 years of coal mine employment. (D&O at 4-5). As the parties stipulated that claimant was totally disabled from a respiratory impairment, the ALJ afforded the claimant the rebuttable presumption of disability due to pneumoconiosis set forth in § 1556 of the PPACA. (D&O at 5). The ALJ went on to find that the employer failed to rebut the presumption, and awarded benefits. (D&O at 8).

The employer filed timely Notice of Appeal of the ALJ's award. After accepting briefs from both parties, the Board issued a *Decision and Order* on December 17, 2013, vacating and remanding the ALJ's award of benefits. In its Decision, the Board held that the ALJ failed to adequately explain his method of calculation in determining that claimant proved 15 years of coal mine employment. (D&O at 4). The Board further held that the ALJ failed to explain how he resolved conflict between various items of evidence in the record. (D&O at 5). On remand, the Board instructed the ALJ to consider all relevant evidence in calculating the claimant's employment history, and to keep in mind that the claimant bears the burden of proving coal mine employment. (D&O at 5-6).

On April 8, 2014, the ALJ provided the parties until May 9, 2014 to comment on whether claimant established 15 years of coal mine employment and, if not, whether the claimant established entitlement pursuant to 20 C.F.R. Part 718 without benefit of the presumption.

Bristol: 451456-1

## ISSUES

As noted by the ALJ in his April 8, 2014 Order to Comment, the only issues before the ALJ

on remand are whether claimant established 15 years of coal mine employment and, if not, whether

claimant proved each element of entitlement without the benefit of the 15 year presumption.

Bristol: 451456-1

A752

### MEDICAL EVIDENCE IN CURRENT CLAIM

*X-RAY EVIDENCE*

| Date of X-ray | Exhibit | Physician | Qualifications | Interpretation |
|---|---|---|---|---|
| 1/14/11 | DX 12 | Baker | B | t/t, 4z, 1/1 |
| 1/14/11 | DX 12 | Barrett | B/BCR | Quality only |
| 1/14/11 | DX 16 | Wheeler | B/BCR | Negative |
| 1/14/11 | DX 14 | Alexander | B/BCR | p/p, 6z, 1/0 |
| 4/20/11 | EX 10 | Scott | B/BCR | Negative |
| 4/20/11 | CX 1 | Alexander | B/BCR | p/p, 5z, 1/0 |
| 1/16/12 | CX 3 | DePonte | B/BCR | s/s, 4z, 1/0 |
| 1/16/12 | EX 6 | Scott | B/BCR | negative |
| 3/28/12 | CX 5 | Alexander | B/BCR | p/t, 4z, 1/0 |
| 3/28/12 | EX 9 | Scott | B/BCR | negative |

*PULMONARY FUNCTION STUDIES*

| Date | EXH | Physician | Age/HT | FEV1 | MVV | FVC | FEV1/FVC | Disability Standard | | | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | FEV1 | MVV | FVC | |
| 1/14/11 | DX 12 | Baker | 65/68" | 0.67 | ____ | 3.17 | 21 | 1.82 | 73 | 2.34 | no |
| 4/20/11 | DX 15 | Dahhan | 65/69" | 0.87 0.86 | ____ | 2.63 2.35 | 33 37 | 1.89 | 75 | 2.42 | |
| 1/16/12 | CX 3 | Gallai | 66/70" | 0.70 0.76 | 35 38 | 2.06 2.13 | 34 36 | 1.96 | 79 | 2.52 | |
| 3/20/12 | EX 1 | Rosenberg | 66/70" | 0.68 0.85 | ____ | 2.48 2.76 | 28 31 | 1.96 | 79 | 2.52 | |
| 3/28/12 | CX 5 | Splan | 66/70" | 0.75 0.74 | 33 33 | 2.18 2.00 | 34 37 | 1.96 | 79 | 2.52 | no |

| Exhibit No. | Physician | Date of Review | Rebuttal of Exhibit No. | Comments |
|---|---|---|---|---|
| EX 7 | Long | 9/7/12 | CX 5 | Not valid |
| DX 16 | Long | 2/26/11 | DX 12 | Not valid |

*ARTERIAL BLOOD GAS STUDIES*

| Date | EXH | Physician | Altitude | PCO2 | PO2 | PO2 Disability Standard |
|---|---|---|---|---|---|---|
| 1/14/11 | DX 12 | Baker | 0-2,999 | 44 | 69 | 60 |
| 4/20/11 | DX 15 | Dahhan | 0-2,999 | 42.4 | 75.6 | 60 |
| 1/16/12 | CX 3 | Gallai | 0-2,999 | 39.9 | 57.4 | 60 |
| 3/20/12 | EX 1 | Rosenberg | 0-2,999 | 40.3 44.4 | 65.4 56.7 | 60 60 |
| 3/28/12 | CX 5 | Splan | 0-2,999 | 43.2 | 48.6 | 60 |

*OTHER MEDICAL EVIDENCE*

| Date of Study | Exhibit | Physician | Qualifications | Type of Evidence | Interpretation |
|---|---|---|---|---|---|
| 3/26/12 of 3/20/12 | EX 1 | Wheeler | B/BCR | Digital Image | Negative |
| 12/9/12 of 3/20/12 | CX 6 | DePonte | B/BCR | Digital Image | s/t, 1/0 |

*Biopsy Evidence*

The employer submitted Dr. Caffrey's September 19, 2012 report regarding a review of a June 24, 2005 biopsy. The claimant did not submit biopsy evidence.

Bristol: 451456-1

*MEDICAL REPORT EVIDENCE*

Dr. Baker examined the claimant pursuant to 20 C.F.R. § 725.406 and completed a report on January 17, 2011. (DX 12). Dr. Baker also completed a clarification report on January 28, 2011. (DX 13). The claimant submitted a medical report by Dr. Gallai dated January 19, 2012, and a report from Dr. Splan dated March 28, 2012. (CX 3, CX 5).

In response, the employer submitted an April 22, 2011 report from Dr. Dahhan along with Dr. Dahhan's supplemental report of September 21, 2012. (DX 15, EX 11). The employer also submitted a report from Dr. Rosenberg dated April 16, 2012. (EX 1).

*TREATMENT NOTE EVIDENCE*

The employer submitted a consultation report from Dr. Uszenki and Morristown Hamblen Hospital dated June 18, 2005. (EX 2). The employer submitted a treatment note from Dr. Knight and Morristown Hamblen Hospital dated December 3, 2010. (EX 3). Lastly, the employer submitted treatment notes from Appalachian Regional Hospital, Baptist Hospital, and Dr. Anderson dated February 11, 1998, June 15, 2005, and March 31, 1995, respectively. (EX 4, EX 5, DX 15).

The claimant submitted treatment records from Pulmonary Associates of Morristown dated February 26, 2008, through December 23, 2010. (DX 14).

## SMOKING HISTORY

The nature and extent of a miner's smoking history may be relevant to issues such as the existence of pneumoconiosis and the cause of a miner's disability. *See* Sellards v. Director, OWCP, 17 B.L.R. 1-77, 1-81 (1993). In determining a miner's smoking history, the administrative law judge must consider all evidence pertaining to the issue and resolve any discrepancies contained in the

record.  *See* <u>Webber v. Peabody Coal Co.,</u> 23 B.L.R. 1-123, 1-137 (2006).  Based upon the hearing transcript and medical records in evidence, the ALJ should find that the claimant has a smoking history of at least 35 pack-years.  Although claimant testified at the hearing to smoking for about a ten year period, he has been extremely inconsistent in reporting his smoking history and the medical evidence in this case demonstrates a much more extensive smoking history.

First, the evidence supports a finding that the claimant smoked regularly for a period of 35 to 40 years.  Dr. Splan noted in his report that claimant smoked from 1966 through 2005.  (CX 5).  A note from Dr. Wicker and Hazard Clinic dated November 15, 1994, states that claimant began smoking in 1973.  (DX 1).  A treatment note from Dr. Shantha of Pulmonary Associates of Morristown records that the claimant quit smoking sometime around February of 2008.  (DX 14).  Claimant had carboxyhemoglobin levels consistent with smoking during arterial blood gas studies performed by Dr. Broudy on February 23, 1995, and performed at Baptist Hospital on June 15, 2005.  (DX 1, EX 5).

Next, the medical evidence also demonstrates that the claimant was smoking anywhere from one-half to two packs cigarettes per day during the 35 to 40 year span in which he smoked.  A treatment note from an ER visit by the claimant to Whitesburg Appalachian Regional Healthcare on February 11, 1998 indicates that claimant was smoking two packs of cigarettes per day.  (EX 4).  Dr. Baker recorded that claimant smoked one-half to one pack per day during the Department of Labor medical exam.  (DX 12).  A November 15, 1994 treatment note from Dr. Wicker states that claimant was smoking one pack per day.  (DX 1).  A February 23, 1995 treatment note from Dr. Broudy

records that claimant smoked at a rate of one pack per day.  (DX 1).  Dr. Uszenski reported that

claimant smoked up to one pack per for many years in a June 18, 2005 treatment note.  (EX 2).

It is clear from the above records that claimant smoked on a regular basis from 1973, or

earlier, until 2008, smoking anywhere from one-half pack to two packs of cigarettes per day.  As the

evidence notes periods where claimant was smoking up to two packs per day, the employer contends

that crediting claimant with smoking one pack per day from 1973-2008 will understate claimant's

actual smoking history.  Accordingly, the ALJ should find that claimant has at least a 35 pack-year

smoking history.

#### ARGUMENT

To establish entitlement to benefits under the Act, claimant must establish the existence of

pneumoconiosis, that the pneumoconiosis arose out of coal mine employment, and that the

pneumoconiosis is totally disabling. 30 U.S.C. §901; 20 C.F.R. §§718.3, 718.202, 718.203, 718.204.

Where a miner files a claim for benefits more than one year after the final denial of a previous claim,

the duplicate claim must also be denied unless the administrative law judge finds that there has been

a "material change in conditions" since the denial of the previous claim. 20 C.F.R. §725.309(d)

(2000).  In this case, claimant's prior claim was denied because he failed to establish the existence of

pneumoconiosis or that he is totally disabled as a result of pneumoconiosis. (DX 1).  Consequently,

claimant was required to submit new evidence establishing those elements of entitlement in order to

obtain review of the merits of his duplicate claim. *See* 20 C.F.R. §725.309(d) (2000); <u>Sharondale</u>

<u>Corp. v. Ross</u>, 42 F.3d 993, 19 BLR 2-10 (6th Cir. 1994)  If the evidence establishes a material

change in conditions, the administrative law judge must then consider the merits of the duplicate claim. Hess, 21 BLR at 1-143.

### I.    Applicability and Constitutionality of the PPACA

Section 1556 of the PPACA included two substantive changes to the Act.  The first, §1556(a), restored a rebuttable presumption of death or disability due to pneumoconiosis upon a showing of a totally disabling respiratory impairment and 15 or more years of coal-mine employment.  The second, §1556(b), provides for the automatic entitlement of widows of miners whose claims were awarded during their lifetimes. Finally, §1556(c) of the act applied the amendments to all claims filed after January 1, 2005, and pending on or after March 23, 2010.  Although this claim was filed after January 1, 2005, and the evidence establishes that claimant has a totally disabling respiratory or pulmonary impairment, the 1556 does not apply to this claim because the claimant has failed to prove that he worked in the mines for 15 or more years.

Claimant bears the burden of establishing the length of coal mine employment.  Shelesky v. Director, OWCP, 7 B.L.R. 1-3 (1984); Niccoli v. Director, OWCP, 6 B.L.R. 1-910 (1984).  Absent stipulation by the parties as to the length of coal mine employment, the fact-finder must make a specific, complete finding on this issue.   Boyd v. Director, OWCP, 11 B.L.R. 1-39 (1988). Calculating the length of coal mine work may be based on any reasonable method so long as it is supported by substantial evidence in the record considered as a whole.  Clayton v. Pyro Mining Co., 7 B.L.R. 1-551 (1984); Schmidt v. Amax Coal Co., 7 B.L.R. 1-489 (1984).  In determining length of employment in the coal mines, it is proper to consider evidence from a variety of sources, including affidavits of co-workers, Social Security records, sworn testimony, written statements of the miner

Bristol: 451456-1

(including the Form CM-911a), records of the employer, and pension records.  20 C.F.R. §
725.101(a)(32)(ii).

Claimant's itemized statement shows earnings from coal mining employment beginning in
1970 and continuing through 1991.  At hearing, claimant testified that his first job as a miner was in
1970 and that he quit working in August of 1991.  (Tr. at 15).  He further testified that he missed one
year of work for a back injury around 1991, and that he did not work between 1980 and 1985 due to
a back injury.  (Tr. at 16, 29).  The claimant's Social Security Earnings Record affirms that he did
not work in 1981, 1982, 1983, or 1984.  He further stated that he spent one year in Florida working
construction.  (Tr. at 16-18).  Accordingly, there are, at most, 17 different years in which claimant
could have worked as a coal miner (1970 through 1991 minus four years due to injury minus 1 year
in Florida).  However, a review of claimant's SSER, demonstrates that claimant worked less than ten
years during those 17 years.

The claimant's social security earnings report divides the claimant's earnings for the years
1970-1977 into quarter increments.  Based upon these divisions, claimant's earnings from coal mine
employers during this time period can be calculated as follows:

Claimant shows earnings of $72.00 from Peem Coal Co in the third quarter of 1970.  He
shows no other earnings from coal mine employment in 1970, and claimant confirmed that he spent
time in Biloxi, Mississippi and San Francisco, California during this year at the hearing.  (Tr. at 24).
Claimant can be credited, at most, with a quarter year of employment from for 1970.

Claimant earned $57.50 from High Point Coal in the first quarter of 1971, and $200.70 from
Archer & Clubb Coal Co in the third quarter of 1971.  He shows no earnings from coal mine

Bristol: 451456-1

A759

employers in the second and fourth quarters of those years. Claimant can be credited with, at most, half a year of employment for the year 1971.

Claimant shows no earnings from coal mine employers in 1972. Claimant should receive no credit for the year 1972.

Claimant shows earnings from General Development Corporation of Miami, Florida in the first two quarters of 1973. He testified to living in Florida for a one year period doing construction. It can be appreciated that he did not perform coal mine work during this time. Claimant can, at most, be credited with one half year coal mine employment for the year 1973.

Claimant shows no earnings from coal mine employment in the first quarter of 1974. Claimant can, at most, be credited with three-quarters of a year coal mine employment in 1974.

Claimant shows earnings in each period of the years 1975 and 1976. At most, claimant can be credited with one year of employment for each of those two years.

Claimant shows no earnings from coal mine employment in the final quarter of 1977. Claimant can, at most, be credited with three-quarters of a year of coal mine employment for 1977.

Accordingly, based upon the SSER, the claimant can be credited with no more than 4.75 years of coal mine employment for the time period from 1970 through 1977. The employer notes that it would be generous to credit claimant with the full 4.75 years for this time period, as he shows earnings of less than $100.00 in several of those quarters.

Next, claimant testified that he did not work during the years 1981 through 1984 due to an injury, and he shows no earnings from coal mine employment during those years. As such, the remaining years at issue are 1978 through 1980, and 1985 through 1991, during which the claimant

Bristol: 451456-1

shows sporadic earnings from coal mine employment. Claimant shows no earnings in the year 1986 from any type of employment, and he testified that he had missed work for two separate periods due to his back injury prior to retiring. (Tr. At 15-16). His only earnings in 1987 are from Uniforce Services, and claimant testified that this was not coal related. (Tr. at 30). He further testified to quitting work in August or September of 1991, meaning he could only be credited with three-quarters of a year of coal mine employment for that year. Even if claimant was credited with full years of credit for the years 1978 through 1980, 1985, and 1988 through 1990, and ¾ of a year for 1991, the claimant's total length of employment would only amount to 12.5 years after adding 4.75 years for the time period of 1970-1977. Again, the employer's notes that this would be an extremely generous calculation given claimant's relatively low earnings from coal mine employment in several of the years at issue ($3,168.74 in 1985, $6,556 in 1980).

Alternatively, the ALJ could compare the claimant's earnings from his SSER to average daily earnings of coal miners listed in Exhibit 610. Using this method, the employer's calculations are set forth in the table below[2]:

---

2. The employer calculated the length of claimant's employment by dividing the claimant's earnings by the average daily wage of coal miners found at Exhibit 610 to arrive at the number of days worked, dividing by 5 to get the number of weeks worked, and then dividing by 50 to get the percentage of the year worked.
Bristol: 451456-1

| YEAR | EMPLOYER | CLAIMANT'S EARNINGS | DOL AVERAGE DAILY WAGE | NUMBER OF WEEKS WORKED |
|------|----------|---------------------|------------------------|------------------------|
| 1970 | Peem Coal Co | $72.00 | $38.22 | 0.4 |
| 1971 | High Point Coal Company | $57.50 | $40.07 | 0.2 |
| 1971 | Archer & Clubb Coal Co Inc | $200.70 | $40.07 | 1.0 |
| 1973 | A & E Coal Co | $60.00 | $47.19 | 0.3 |
| 1973 | Governor Elkhorns Coal Company Inc | $339.00 | $47.19 | 1.4 |
| 1974 | Scotia Coal Co | $6,387.17 | $48.64 | 26.3 |
| 1975 | Scotia Coal Co | $13,651.52 | $59.24 | 42.8 |
| 1976 | Scotia Coal Co | $13,539.93 | $64.07 | 42.3 |
| 1977 | Scotia Coal Co | $5,489.80 | $71.90 | 15.3 |
| 1978 | Elkhorn & Jellico Coal Co Inc | $1,255.67 | $80.31 | 3.1 |
| 1978 | Branham & Baker Coal Co Inc | $4,155.00 | $80.31 | 10.3 |
| 1978 | Johnson & Sons Coal Co Inc | $60.00 | $80.31 | 0.1 |
| 1979 | Ancoal Mining Corporation | $2,227.50 | $87.03 | 5.1 |
| 1979 | Action energies Inc | $2,575.13 | $87.03 | 5.9 |
| 1980 | Action energies Inc | $3,696.00 | $87.42 | 8.5 |
| 1980 | Paramount Mining Corporation | $2,860.00 | $87.42 | 6.5 |
| 1985 | Everidge & Nease Coal Co Inc | $3,168.74 | $122.00 | 5.2 |
| 1988 | Wampler Brothers Coal Co Inc | $11,884.65 | $127.52 | 18.6 |
| 1989 | Wampler Brothers Coal Co Inc | $13,199.71 | $130.00 | 20.3 |
| 1989 | Aberry Coal Inc | $9,030.00 | $130.00 | 13.9 |
| 1990 | Aberry Coal Inc | $24,451.50 | $133.68 | 36.6 |
| 1991 | Aberry Coal Inc | $6,401.75 | $136.64 | 9.4 |
|  | TOTAL EARNINGS | $124,763. | TOTAL WEEKS | 273.50 |
|  |  |  | TOTAL YEARS | 5.3 |

As demonstrated above, comparing claimant's earnings to the daily earnings of coal miners from Exhibit 610, claimant has merely 5.3 years.

Bristol: 451456-1

The ALJ could also compare claimant's earnings to the average *yearly* earnings of coal miners listed in Exhibit 610, which equates to only 125 days of exposure, or less than half the number of work days in a year. The Director credited claimant with 9.25 years of coal mine employment using this method. (DX 25).

No matter the method of calculation applied, the claimant cannot establish fifteen years of coal mine employment based upon his SSER. Accordingly, the only remaining evidence that can extend the claimant's length of coal mine employment beyond 15 years is his testimony. However, for the reasons set forth below, the claimant's testimony is insufficient to prove 15 or more years of coal mine employment.

The claimant testified that he believed the SSER may have understated his earnings from Peem Coal Company, Highpoint Coal, Archer & Clubb Coal, and A&E Coal. (Tr. at 24, 25, 26, 27). However, when asked whether he might be mistaken regarding his recollection of his employment with those companies, claimant stated, "It very well could be." (Tr. at 32). Further, regarding his memory surrounding his history of employment as a miner, claimant stated, "I had these wrote down and I worked real hard. I'm not the sharpest tool in the shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could, but not having any documentation, there was no way I could tell you 100 percent sure about any of them." (Tr. at 33). By his own admission, claimant is not a reliable source regarding his employment history. The Board has regularly upheld ALJ decisions to afford more weight to the Social Security records than to claimant testimony where the testimony was unclear. Brumley v. Clay Coal Corp., 6 BLR 1-956 (1984); Tackett v. Director, OWCP, 6 BLR 1-839 (1984); *see also* Clayton v. Pyro Mining Co., 7 BLR 1-551 (1984); Preston v.

Director, OWCP, 6 BLR 1-1229 (1984); Hall v. Director, OWCP, 2 BLR 1-998 (1980); Mullins v. Director, OWCP, 6 BLR 1-508 (1983).

Further, even if claimant's testimony was not unreliable on its face, it would still have to be weighed against the contradictory evidence of record. For example, his hearing testimony that he last worked in August or September of 1991 is contradicted by his previous statements that he quit working in April of 1991. *See* November 1, 1994 Form CM-911a (DX 1.2); January 6, 1995 Deposition of Claimant (DX 1.31 at 3).

Even if claimant's testimony that some employer's may not have reported earnings is true, it is too vague to justify adding any years of employment to his employment history. While claimant suggested the possibility that the SSER may not reflect his full earnings, he was unable to state which earnings were not accurately recorded at hearing when asked by the ALJ. (HT at 23). The burden is on the claimant to establish coal mining employment in excess of 15 years, and he has failed to provide any evidence that he was employed as a miner for more than the 9.25 years credited to him by the DOL. Accordingly, the rebuttable presumption set forth in §1556(a) of the PPACA is inapplicable to this claim and the burden remains on claimant to prove all elements of entitlement.

**II.    Existence of Pneumoconiosis**

For the purposes of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising from coal mine employment. § 718.201. Section 718.202(a) prescribes four methods by which claimant can prove the existence or pneumoconiosis: (1) a properly conducted and reported chest x-ray; (2) a properly conducted and reported biopsy or autopsy; (3) reliance upon certain presumptions which are set forth in §§ 718.304,

Bristol: 451456-1

718.305, and 718.306; or (4) the finding by a physician of pneumoconiosis as defined in §718.201 which is based upon objective evidence and supported by a reasoned medical opinion. Evidence meeting one of these methods does not automatically establish the disease, but rather the ALJ must weigh all the evidence concerning the issue before making a finding of pneumoconiosis. Island Creek Coal Co. v. Compton, 211 F.3d 203 (4th Cir. 2000). Finally, in Collins v. Pond Creek Mining, BRB No.: 08-0737 BLA (July 29, 2009), the Board held that, even when the employer's evidence has been excluded, the ALJ must still assess whether the claimant's evidence, standing alone, itself is sufficient to prove each element of entitlement.

    **a.**    **X-Ray Evidence**

    First, the x-ray evidence does not preponderate in favor of a finding of pneumoconiosis. The parties submitted nine ILO readings of four analog chest x-rays. Dr. Baker read the claimant's January 14, 2011 Department of Labor x-ray as positive, t/t, 4z, 1/1. (DX 12). Dr. Wheeler read that same x-ray as negative, while Dr. Alexander read the film as barely positive, 1/0. (DX, 16, DX 14). While Drs. Wheeler and Alexander are dually-certified as B-readers and board certified radiologists, Dr. Baker is only a B-reader. "[W]here two or more X-ray reports are in conflict…consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays." 20 C.F.R. 718.202(a)(1). Accordingly, the ALJ should disregard Dr. Baker's reading. Further, Dr. Wheeler is a teaching professor of radiology at Johns Hopkins University Medical Center. In Lynch v. Old Ben Coal Co., BRB No. 10-0209 BLA (December 8, 2010), the Board held that, in analyzing the negative x-ray interpretations of Drs. Scott and Wheeler, the Administrative Law Judge did not err in considering their qualifications and other factors relevant to the level of radiological

Bristol: 451456-1

competence, such as a prestigious position teaching. In addition, a barely qualifying reading of 1/0 such as Dr. Alexander's can be given less weight by the finder of fact. *See* <u>York v. Jewell Ridge Coal Co.</u>, 7 BLR 1-766 (1985). Accordingly, considering Dr. Wheeler's qualifications and the barely qualifying nature of Dr. Alexander's reading, the ALJ should determine that the January 14, 2011 x-ray film preponderates against a finding of pneumoconiosis.

Next, the employer submitted Dr. Scott's negative reading of an April 20, 2011 x-ray. (EX 10). In response, claimant submitted a barely positive 1/0 reading of that same film by Dr. Alexander. (CX 1). Like Dr. Wheeler, Dr. Scott is also a teaching professor of radiology at Johns Hopkins University Medical Center and the ALJ should afford more probative value to his reading. Additionally, the ALJ should afford less weight to Dr. Alexander's reading because it is barely qualifying. Therefore, the April 20, 2011 film also preponderates against a finding of pneumoconiosis.

Next, claimant submitted Dr. DePonte's barely positive 1/0 reading of a January 16, 2012 film. (CX 3). The employer submitted a negative reading of that film by Dr. Scott. (EX 6). Again, considering Dr. Scott's qualifications and the barely qualifying nature of Dr. DePonte's reading, the ALJ should find that this film also preponderates against a finding of pneumoconiosis.

Lastly, claimant submitted Dr. Alexander's barely qualifying 1/0 reading of a March 28, 2012 x-ray film. (CX 5). Dr. Scott read that same film as negative. (EX 9). In addition to their respective readings, each physician noted an abnormality on this film inconsistent with pneumoconiosis. On Dr. Alexander's x-ray report, the physician noted in the "Other Comments" section, "Ill-defined density in LUZ level of anterior 3rd rib. ?scarring? Recommend follow-up." (CX 5). Similarly, Dr.

Bristol: 451456-1

Scott noted in the "Other Comments" section of his report, "Possible 1.5 cm nodule overlying left anterior 3rd rib-possible cancer. Advise CT." (EX 9). Therefore, both physicians who read the March 28, 2012 film observed an abnormality in the left anterior 3rd rib that was inconsistent with pneumoconiosis, and both physicians recommended that claimant follow up with further testing due to the abnormality. As such, Dr. Scott's notation regarding the abnormality is consistent with the other reading in the record and his reading should not be discounted on the basis of an alternative diagnosis.

Accepting only the opinions of the dually certified physicians, there are four negative x-ray readings and four barely positive readings in the record. Although the employer contends that the readings of Drs. Scott and Wheeler should be afforded greater weight due to their superior qualifications, the x-ray evidence is only in equipoise if the ALJ does not do so. Accordingly, claimant has failed to establish the existence of clinical pneumoconiosis via analogue x-ray evidence.

**b.    "Other" Medical Evidence**

Next, the readings submitted as Other Medical Evidence weigh against a finding of pneumoconiosis. In Webber v. Peabody Coal Co., 23 B.L.R. 1-123 (2006) (*en banc*) (J. Boggs, concurring), the board held that digital x-ray interpretations are not considered "chest x-ray" evidence under 20 C.F.R. § § 718.101(b), 718.102, 718.202(a)(1), and Appendix A to Part 718, as they do not satisfy the quality standards at Appendix A. However, the Board went on to hold that digital chest x-rays are "properly considered under 20 C.F.R. § 718.107, where the Administrative Law Judge must determine on a case-by-case basis, pursuant to C.F.R. § 718.107(b), whether the proponent of the digital x-ray evidence has established that it is medically acceptable and relevant to

Bristol: 451456-1

entitlement." Finally, the Board has also stated that digital x-rays and CT scans, which are admissible as other evidence, are properly evaluated under the medical report evidence. *See* <u>Melnick v. Consolidation Coal Co.</u>, 16 B.L.R. 131 (1991); <u>Webber v. Peabody Coal Co.</u>, 23 B.L.R. 1-123 (2006) (*en banc*). ).

In this case, there is not statement from any physician that satisfies the "medical acceptability" of digital x-rays and CT scans as required by 20 C.F.R. § 718.107(b). As such, the sole digital x-ray in the record is not probative on the issue of the existence of pneumoconiosis. In any event, the readings of the March 20, 2012 digital film are in equipoise and cannot assist the claimant in proving pneumoconiosis.

### c.    Biopsy Evidence

Next, the biopsy evidence in this case weighs against a finding of pneumoconiosis. Claimant did not submit biopsy evidence, and the employer submitted a biopsy report completed by Dr. Caffrey on September 19, 2012 of a June 24, 2005 biopsy. (EX 8). Dr. Caffrey concluded that lesions of coal workers' pneumoconiosis were not present. He explained that CWP lesions are caused by coal dust stimulated the production of reticulum and/or collagen, followed by focal emphysema development. He stated that there was no such evidence present in claimant's biopsy. Further, he noted that the alveoli were filled with macrophages containing a dusty brown pigment, a finding consistent with long term tobacco use. The employer contends that the ALJ should afford significant weight to the uncontested biopsy report of Dr. Caffrey and determine that it preponderates heavily against a finding of clinical or legal pneumoconiosis.

### d.    Medical Opinion Evidence

Next, the claimant cannot establish the existence of pneumoconiosis through the medical opinion evidence under § 718.202(a)(4).  This subsection states that a determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, finds that the miner suffers from pneumoconiosis as defined in § 718.201.  The provision goes on to state that such a medical finding of pneumoconiosis ". . . be based on objective medical evidence such as blood gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories.  Such a finding shall be supported by a reasoned medical opinion." [3]

First, Dr. Baker performed the Department of Labor medical exam and completed a report dated January 17, 2011, as well as a clarification report on January 28, 2011, finding that claimant suffered from legal and clinical pneumoconiosis.  (DX 12, DX 13).  As an initial matter, the employer notes that Dr. Baker reported a smoking history of one-half to one pack of cigarettes per day for 35 years, while the medical evidence establishes that he was actually smoking up to two packs of cigarettes per day during certain periods.  In <u>Trumbo v. Reading Anthracite Co.</u>, 17 B.L.R.

---

3.  A "reasoned" opinion is one in which the administrative law judge finds the underlying documentation adequate to support the physician's conclusions.  <u>Fields</u>, 10 B.L.R. 1-19.  A "documented" opinion is one that sets forth the clinical findings, observations, facts and other data on which the physician based the diagnosis.  <u>Fields v. Island Creek Coal Co.</u>, 10 B.L.R. 1-19 (1987).  Whether a medical report is sufficiently documented and reasoned is for the administrative law judge as the finder of fact to decide.  <u>Clark v. Karst-Robbins Coal Co.</u>, 12 B.L.R. 1-149 (1989)(<i>en banc</i>).  An internally inconsistent report may be accorded little, if any, probative weight.  <u>Hopton v. U.S. Steel Corp.</u>, 7 B.L.R. 1-12 (1984).

Bristol: 451456-1

1-85 (1993), the Board held that a physician's opinion was less probative where based on an inaccurate smoking history. Accordingly, Dr. Baker's opinion should be afforded less weight because he underestimated claimant's smoking history.

Dr. Baker also based his opinion on a positive x-ray reading when, as discussed above, the c-ray evidence fails to establish the presence of pneumoconiosis.

Furthermore, the ALJ should discredit the opinion of Dr. Baker because he relied upon an inaccurate history of coal mine employment. In Worhach v. Director, OWCP, 17 B.L.R. 1-105 (1993)(per curiam), the Board noted that it was proper for an ALJ to discredit a medical opinion based on an inaccurate length of coal mine employment. Dr. Baker recorded that claimant had worked as a coal miner for 22 years in his initial report, while the evidence demonstrates no more than ten years of coal mine employment. (DX 12). Dr. Baker later submitted a clarification report, noting that he believed 9.25 years of coal mine employment would be sufficient to produce CWP in the claimant. (DX 13). However, Dr. Baker noted in his clarification report that he still believed claimant had at least 20 years of coal mine employment, despite the DOL's finding of far less employment. (DX 13). Dr. Baker appears to be unwilling to accept a finding of years of coal mine employment less than what claimant related to him, and his opinion should be appropriately discredited for that reason.

Further, Dr. Baker's clarification report is self-contradictory and not consistent with the physician's own assertions regarding medical data and, therefore, is not probative. The ALJ may properly accord less weight to a medical opinion that overlooks or downplays medical data inconsistent with his own conclusion. See Gross v. Dominion Coal Corp., 23 BLR 1-8 (2003).

Here, Dr. Baker stated, "It is thought that at least 10 years is necessary to establish a relationship between coal dust exposure and the presence of pneumoconiosis." Nonetheless, he goes on to conclude that claimant suffers from pneumoconiosis as a result of coal dust exposure, even if he only worked for less than ten years in the mines. Dr. Baker's downplay of his own contention that ten years of mining employment is necessary for a causal relationship between coal dust exposure and pneumoconiosis is not well-reasoned and the ALJ should discredit his report.

Next, the ALJ should discredit the opinion of Dr. Baker because he failed to maintain objectivity in his diagnosis of claimant. After stating that ten years is generally necessary to establish a relationship between exposure and CWP, Dr. Baker states, "*Unfortunately*, only 9 ¼ years of employment was proven (emphasis added)." (DX 13). Dr. Baker goes on to express his discontent and concern with the Department of Labor's finding of 9 ¼ years of coal mine employment. Dr. Baker appears to believe that a finding of less coal mine employment is "unfortunate" because it weighs against a finding of legal pneumoconiosis. As a physician offering a disinterested medical opinion, Dr. Baker should view such a finding as objective data on which to base his professional opinion as opposed to inconvenient information to be disregarded. Accordingly, Dr. Baker has become an advocate for the claimant, and his medical opinion should be disregarded for lack of objectivity.

Finally, Dr. Baker's report is simply not sufficient to amount to a reasoned medical report. Dr. Baker stated, "It is my gut opinion that he does have Coal Workers Pneumoconiosis, at least category 1/1, due to his coal mine employment, even if it is 9 ¼ years." (DX 13 P.2). However, a finding of pneumoconiosis must be based upon a reasoned medical opinion, not gut feelings, and the

Bristol: 451456-1

ALJ just disregard Dr. Baker's report in determining whether claimant has proved the existence

pneumoconiosis.

Next, claimant submitted a medical report completed by Dr. Gallai and dated January 19,

2012. (CX 3). Dr. Gallai determined that claimant suffered from legal pneumoconiosis. However,

Dr. Gallai relied upon an inaccurate employment history of 18 years of coal mine employment. Even

if the ALJ applies the generous method of calculation used by the Department of Labor to compute

coal mine employment, Dr. Gallai's use of 18 years still doubles the actual number of years claimant

worked as a miner.

Further, Dr. Gallai relied upon a smoking history of merely twelve and one-half pack years in

his medical report. As demonstrated in the "Smoking History" section above, the medical evidence

in the record demonstrates a smoking history of at least 35 pack years. Remarkably, Dr. Gallai uses

the number 12.5 despite a recording of 26 years smoking in the PFT performed during his own

independent medical exam. As with the report of Dr. Baker, Dr. Gallai's opinion should be

disregarded due to his reliance upon an inflated history of coal mine employment and inaccurate

smoking history. The employer contends that the physician simply cannot make an accurate

diagnosis of legal pneumoconiosis while relying on an employment history that more than doubles

the claimant's actual time in the coal mines and a smoking history that is approximately one-third of

that demonstrated by the medical evidence.

Further, Dr. Gallai failed to explain how the objective testing and medical data supported his

diagnosis. Although Dr. Gallai notes claimant's pulmonary function and blood gas testing results as

evidence of legal pneumoconiosis, such data is merely evidence of impairment and does not establish

Bristol: 451456-1

cause of impairment. The doctor went on to note that claimant had "18 years of high concentration of coal dust exposure" to explain why he believed that claimant's impairment was the result of coal mine dust. However, setting aside the inaccuracy of the 18 year figure relied upon by Dr. Gallai, occupational exposure is not evidence of pneumoconiosis. Rather, occupational exposure is merely a reason to expect that evidence might be found. *See* <u>Sahara Coal Co. v. Fitts</u>, 39 F.3d 781, 18 BLR 2-384 (7th Cir. 1994), cited with approval in <u>Buffalo Mining Co. v. Copley</u>, No. 98-1508, 1998 U.S. App. LEXIS 31583 (4th Cir. Dec. 17, 1998) (unpub.). Therefore, we are left primarily with the doctor's reliance on Dr. DePonte's 1/0 reading of the claimant's January 16, 2012 chest x-ray film. As noted above, the chest x-ray evidence does not support a finding of clinical pneumoconiosis. It also, of course, does not establish the existence of legal pneumoconiosis.

Dr. Gallai's diagnosis of clinical pneumoconiosis is based entirely upon his review of a single x-ray report. Further, his diagnosis of legal pneumoconiosis rests upon his mistaken belief that claimant had 18 years of exposure to coal mine dust and merely 12.5 years of exposure to cigarette smoke. Accordingly, the ALJ should disregard Dr. Gallai's report as it relates to the existence of pneumoconiosis.

Next, claimant submitted Dr. Splan's medical report dated March 28, 2012. (CX 5). Dr. Splan diagnosed claimant with chronic bronchitis, COPD, emphysema, cor pulmonale, and CWP. Like Dr. Gallai, Dr. Splan relied on an inaccurate history of coal mine employment and smoking. Regarding claimant's employment history, Dr. Splan stated that claimant worked as a miner from 1973 until 1992, a 19 year period. Dr. Splan did not account for the time period between 1980 and 1985 during which claimant testified that he was out of work with a back injury and which is

Bristol: 451456-1

confirmed by claimant's SSER.  He also failed to account for the time period during which claimant was living in Florida and not performing coal mining work.  Dr. Splan's reliance on 19 years of coal mine employment more than doubles the generous number arrived at by the Department of Labor and undermines his medical opinion.

Regarding claimant's smoking history, Dr. Splan noted that claimant smoked for 39 years at a rate of one-half pack of cigarettes per day, or 19.5 pack years.  (CX 5).  Again, this estimate severely underestimates claimant's actual smoking history of 35 pack years, and the ALJ should discredit the medical opinion of Dr. Splan accordingly.

Like Drs. Baker and Gallai, Dr. Splan failed to offer adequate reasoning for his diagnosis of pneumoconiosis.  Again, his diagnosis of clinical pneumoconiosis is based solely upon x-ray evidence, and cannot be considered "reasoned."  Regarding his diagnosis of legal pneumoconiosis, Dr. Splan stated, "Statutory diagnosis of pneumoconiosis is present based upon confirmed work time, exposure to coal dust symptoms and findings on physical examination, spirometry and arterial blood gas reports these findings are very severe obstructive airways disease on pulmonary function test and PO2 48.6 mmHg and PCO2 43.2 mmHg on arterial blood gas on room air."  First, occupational exposure or "confirmed work time" is not evidence of pneumoconiosis, and in any event Dr. Splan's understanding of claimant's work history is inaccurate.  Next, although Dr. Splan cites "symptoms and findings on physical examination," he fails to state which symptoms and findings he is referring to or how those symptoms/findings support his diagnosis.  Finally, the PFT and ABG results are merely evidence of impairment, and Dr. Splan fails to explain why he believes the impairment is related to claimant's exposure to coal mine dust rather than his remarkable

Bristol: 451456-1

smoking history.   Significantly, Dr. Splan does not attribute any of claimant's impairment to cigarette smoke.  In sum, Dr. Splan relies upon inaccurate smoking and work histories, and fails to explain how his diagnosis of pneumoconiosis is supported by objective testing or medical data.

As each of the three physicians diagnosing pneumoconiosis relied upon inaccurate work and smoking histories, and as each of those physicians failed to provide adequate reasoning supporting their diagnoses, the claimant cannot establish the existence of pneumoconiosis by the medical report evidence.  Moreover, even if any of the reports discussed above were probative, they would be outweighed by the well-reasoned opinions of Drs. Dahhan and Rosenberg.

The employer submitted an April 22, 2011 report from Dr. Dahhan along with Dr. Dahhan's supplemental report of September 21, 2012. (DX 15, EX 11). Dr. Dahhan determined that, although claimant was totally disabled from a respiratory standpoint, he did not suffer any impairment as a result of coal mine dust exposure.  (DX 15).  Dr. Dahhan noted that claimant suffered a ventilator defect with over a 2000cc loss of his FEV1.  He further noted that coal dust exposure generally results in a FEV1 loss of 5-9cc per year of exposure.  Dr. Dahhan also noted that claimant was being treated with multiple bronchodilator agents, which are not effective in combating the irreversible and permanent effects of legal pneumoconiosis. Dr. Dahhan concluded that this indicated that claimant's treating physician believed he suffered from an impairment not associated with coal dust exposure. Accordingly, Dr. Dahhan determined, to a reasonable degree of medical certainty, that claimant suffered from a pulmonary impairment not associated with exposure to coal mine dust.

On September 21, 2012, Dr. Dahhan submitted a supplemental report after reviewing newly submitted evidence.  (EX 11).  Dr. Dahhan stated that the newly submitted evidence did not change

his opinion that claimant did not suffer from a respiratory or pulmonary impairment related to coal mine dust exposure. Furthermore, the physician noted that the "gold standard" for diagnosing pneumoconiosis is pathological examination, and that Dr. Caffrey's report demonstrated that claimant did not suffer from pneumoconiosis.

Finally, the employer submitted a report from Dr. Rosenberg dated April 16, 2012. (EX 1). Dr. Rosenberg determined that claimant did not suffer from clinical or legal pneumoconiosis, but from a severe airflow obstruction related to his extensive smoking history. Dr. Rosenberg explained that emphysema caused by smoking was distinguishable from emphysema caused by coal mine dust, and that claimant exhibited symptoms consistent with smoking related emphysema. Dr. Rosenberg noted claimant's marked reduction of diffusing capacity and air trapping, both inconsistent with coal workers' pneumoconiosis. Dr. Rosenberg further noted that claimant demonstrated a marked bronchodilator response, and that such is not consistent with legal pneumoconiosis because coal mine dust causes scarring of the airways, making use of bronchodilators ineffective. Dr. Rosenberg further cited studies comparing the effects of cigarette smoking and coal dust exposure on miners' FEV1. According to those studies, smoking causes a 100% greater decrease in airflow than post 1969 coal mine employment. Based on claimant's employment and smoking history and his objective test results, Dr. Rosenberg concluded to a reasonable degree of medical certainty that claimant did not have clinical or legal coal workers' pneumoconiosis. The employer contends that the ALJ should defer to the sound and detailed opinions of Drs. Dahhan and Rosenberg and determined that the medical opinion evidence does not preponderate towards a finding of pneumoconiosis.

Bristol: 451456-1

### E.    Conclusion regarding the Existence of Pneumoconiosis

In sum, the medical evidence as a whole fails to establish the existence of clinical or legal pneumoconiosis. Each x-ray submitted into evidence was read as negative by the most highly qualified physicians, and the only positive readings by dually-certified physicians are barely positive, 1/0. Next, Dr. Caffrey concluded in the only biopsy report in the record that claimant did not suffer from clinical or legal pneumoconiosis. Finally, because the medical reports of Drs. Baker, Gallai, and Splan each relied upon highly inaccurate smoking and employment histories and contain little to no reasoning, they are outweighed by the sound medical opinions of Drs. Rosenberg and Dahhan. Therefore, claimant has failed to establish by a preponderance of the evidence that he suffers from clinical or legal pneumoconiosis, and his claim must be denied.

### III.    Causation of Pneumoconiosis

Because the evidence fails to establish the existence of legal pneumoconiosis, claimant is unable to establish the disease was caused by his past exposure to coal mine dust. The employer also notes that, because claimant has not established ten years of coal mine employment, he is not entitled to the rebuttable presumption of §718.302 and he must prove this element by a preponderance of the evidence.

### IV.    Total Disability Due to Pneumoconiosis

Lastly, the Claimant must establish that he is totally disabled due to pneumoconiosis. This element is fulfilled if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. § 718.204(c); Lollar v. Alabama By-Products Corp., 893 F.2d 1258 (11th Cir. 1990). The regulations provide that pneumoconiosis is

Bristol: 451456-1

a "substantially contributing cause" of the miner's disability if it (i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment. In general, the fact that an individual suffers or suffered from a totally disabling respiratory or pulmonary impairment is not, in itself, sufficient to establish that the impairment is or was due to pneumoconiosis. § 718.204(c)(2). A Claimant can establish this element through a physician's documented and reasoned medical report, §718.204(c).

Here, even if the ALJ finds claimant suffered from a disabling respiratory impairment, the medical evidence fails to establish that pneumoconiosis caused or contributed to that impairment. Drs. Baker, Gallai, and Splan each failed to provide a well-reasoned analysis as to why claimant's disability is a result of coal mine employment as opposed to smoking. Furthermore, each of their reports was based on highly inaccurate smoking histories and inflated coal mine employment histories. On the other hand, both Drs. Dahhan and Rosenberg rationally explained that claimant suffered from a disability related to his smoking history and wholly unrelated to his limited time spent as a coal miner. Therefore, as claimant has the burden of proof, the ALJ should find that claimant has failed to establish total disability due to pneumoconiosis.

## CONCLUSION

For the above-stated reasons, this claim should be denied. The evidence fails to establish that the claimant suffers from pneumoconiosis or that he is total disabled from the disease.

Bristol: 451456-1

-30-

Respectfully submitted,

ABBERY COAL, INC.

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA/TN 24203
Phone:        423-793-4804
Fax:            423-793-4844
Email:         nmoore@pennstuart.com

By: _____
    NATE D. MOORE
    Counsel for Defendants
    VSB No.: 84977

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing this 8th day of May, 2014 to

Joseph Wolfe, Esquire, Wolfe, Williams, Rutherford & Reynolds, P.O. Box 625, Norton, VA 24273,

and U. S. Department of Labor, Office of the Solicitor , 618 Church Street, Suite 230, Nashville, TN

37219-2456.

_____
    NATE D. MOORE

Bristol: 451456-1

A779

**U.S. Department of Labor**

Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



Issue Date: **19 May 2014**

JOSEPH FLEMING,
    Claimant,

v.                                  **2012-BLA-05241**

ABERRY COAL, INC.
    Employer,

and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
    Party-in-Interest.

APPEARANCES:
    Andrew Delph, Esquire and Micah Blankenship, Esquire
        For Claimant
    John Sigmond, Esquire
        For the Employer
    Donna Sonner, Esquire
        For the Director

BEFORE:    DANIEL F. SOLOMON
            Administrative Law Judge

## DECISION AND ORDER ON REMAND
### *AWARD OF BENEFITS*

    This proceeding arises from a request for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* Claimant filed an initial application for benefits on November 1, 1994. (Director's Exhibits, "DX" 1). That claim was denied by the Department of Labor on March 1, 1995, on the basis that claimant did not have pneumoconiosis and that he was not totally disabled by the disease. (DX 1). It was not appealed and that decision is final.

    Claimant filed a subsequent application for benefits on July 19, 2010, and the District Director issued a proposed decision and order awarding benefits on December 14, 2010. (DX 25). Employer requested that the claim be forwarded to the Office of Administrative Law Judges for a formal hearing on October 11, 2011. (DX 26). I entered a Decision and Order Awarding Benefits, but the case was appealed to the Benefits Review Board ("BRB" or "Board").

This claim was affirmed in part and vacated in part by the Board and remanded to me. The Board did not set aside findings that the claim was filed in a timely manner; Claimant last worked in Kentucky and therefore the law of the 6th Circuit Court of Appeals applies in this case; Claimant is a "miner" as that term is defined by the Act, and has worked after 1969; Claimant has one dependent; Claimant is totally disabled from a respiratory standpoint; and Employer is the responsible operator.

I am advised that I did not adequately explain the method used to compute a coal mine employment history of at least fifteen years. It is Claimant's burden to establish the length of his coal mine employment. *Shelesky v. Director, OWCP*, 7 B.L.R. 1-34 (1984). The Black Lung Benefits Act does not provide specific guidelines for computing the length of a miner's employment. *Vickery v. Director, OWCP*, 8 B.L.R. 1-430 (1986).

At the hearing and on Claimant's application, Claimant stated he worked 18 years as an underground miner. Claimant testified he "did just about everything from shoveling ribs to the last few years, [and] ran a continuous miner for Mr. Aberry Coal Company." (Transcript, "TR" 11). The District Director made a preliminary finding that Claimant spent 9.25 years employed as a coal miner from 1970 until 1991. (DX 25). At the hearing, Claimant speculated that the discrepancy in the Department of Labor and Claimant's records is explained by "somebody wasn't turning in [his] wages." (TR 15). Claimant testified he worked in the coal mines from 1970 until about August or September of 1991. (*Id.* at 15).

The period in question covers more than a twenty year period. Claimant admitted there were periods of employment where he was injured which prevented him from working. (*Id.*) In one period he was unable to work for about a year due to an injury, and there were a few other periods on account of his back injury. (*Id.*) During another period, Claimant spent one year in Florida in construction jobs. (*Id.* at 16-18). Claimant testified there were no long strikes during his employment. (*Id.*).

The Social Security Earnings Record indicates that he worked for Peem Coal Co. in 1970; Clark Super 100 in 1970; Chevron USA Inc. in 1970; High Point Coal Company in 1971; Archer & Club Coal Co. Inc. in 1971; POM Corp from 1971 until 1972; Brownlee-Kesterton Inc. in 1972; Atlantic Gulf Communities Corp. from 1972 until 1973; Atlantic Condominiums Inc. in 1972; Officemax Incorporated in 1972; William H. Hensick & Sons Inc. in 1973; A&E Coal Co in 1973; Governor Elkhorns Coal Company Inc. in 1973; Scotia Coal Co. from 1974 until 1977; Scotia Employees Association in 1975 and 1977; Elkhorn & Jellico Coal Co Inc. in 1978; Branham & Baker Coal Co. Inc. in 1978; Johnson & Sons Coal Co. Inc. in 1978; Ancoal Mining Corporation in 1979; Action Enterprises Inc. from 1979 until 1980; Paramount Mining Corporation in 1980; Sullivan Brothers Inc. in 1980; Everidge & Nease Coal Co. Inc. in 1985; Uniforce Staffing Services Inc. in 1987; U N F Services Inc. in 1988; Wampler Brothers Coal Co. Inc. from 1988 until 1989; Aberry Coal Inc. from 1989 until 1991. (DX 7)

Claimant testified regarding each of these employers. He said he worked for Peem Coal Company in 1970 and stated "I know I was there close to a year." (TR at 24)  The earnings record shows Claimant only earned $72.00 in 1970. (DX 07). Claimant next testified he worked for High Point Coal Company in 1971. (TR at 24). Claimant only earned $57.50 according to the

- 2 -

earnings record although he testified he "worked there almost a year." (DX 07; TR at 25)
Claimant was asked about his coal mine employment with Archer and Club Coal Company
where earnings records indicated he only made $200.00. (TR at 26; DX 07). However, Claimant
testified: "I worked there for about a year, maybe longer." (TR at 26). Next, Claimant was asked
about the records which showed earnings from T.O.M. Corporation in Ann Arbor, Michigan.
(*Id.*) Claimant testified his work was not in Ann Arbor, but the Corporation in Ann Arbor was
the parent corporation of Eastern Kentucky Coal Company. (*Id.*) Claimant's earnings from this
corporation establish at least one year of employment. Claimant's testimony of working with
Brownley Ketterson, Inc, A & E Coal Company, and Governor Elkhorn's along with his
earnings record establishes one year of Employment during this period. (*Id.* at 26-27).
Claimant's Employment with Scotia Employees Association in 1974 brings his total to five years
of employment. (DX 07).

Again, Employer asks me to credit only those periods when earnings are recorded in the
Social Security records.[1] Employer submits that using its method, the Claimant worked only 5.3
years.[2] I am directed to testimony that Claimant believed the SSER may have understated his
earnings from Peem Coal Company, Highpoint Coal, Archer & Clubb Coal, and A&E Coal. (Tr.
at 24, 25, 26, 27). I am reminded that when asked whether he might be mistaken regarding his
recollection of his employment with those companies, claimant stated, "It very well could be."
(Tr. at 32). Further, regarding his memory surrounding his history of employment as a miner,
Claimant stated, "I had these wrote down and I worked real hard. I'm not the sharpest tool in the
shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could,
but not having any documentation, there was no way I could tell you 100 percent sure about any
of them." (Tr. at 33).

Employer argues that by his own admission, Claimant is not a reliable source regarding
his employment history. Employer argues that the Board has regularly upheld decisions to afford
more weight to the Social Security records than to claimant testimony where the testimony was
unclear.[3]

---

[1] For example, I am advised by Employer that Claimant shows no earnings from coal mine employers in 1972.
Claimant should receive no credit for the year 1972. Claimant shows earnings from General Development
Corporation of Miami, Florida in the first two quarters of 1973. He testified to living in Florida for a one year
period doing construction. It can be appreciated that he did not perform coal mine work during this time. Claimant
can, at most, be credited with one half year coal mine employment for the year 1973. Claimant shows no earnings
from coal mine employment in the first quarter of 1974. Claimant can, at most, be credited with three-quarters of a
year coal mine employment in 1974. Claimant shows earnings in each period of the years 1975 and 1976. At most,
claimant can be credited with one year of employment for each of those two years. Claimant shows no earnings
from coal mine employment in the final quarter of 1977. Claimant can, at most, be credited with three-quarters of a
year of coal mine employment for 1977. "Accordingly, based upon the SSER, the claimant can be credited with no
more than 4.75 years of coal mine employment for the time period from 1970 through 1977. The employer notes
that it would be generous to credit claimant with the full 4.75 years for this time period, as he shows earnings of less
than $100.00 in several of those quarters."
[2] The Board specifically rejected this position in footnote 6 of the BB&O. "[W]e reject employer's allegation that
the administrative law judge was required to apply the method that it used, i.e., comparing claimant's earnings to the
daily average of coal miners' earnings, or explain why he rejected that method." *See Muncy v. Elkay Mining Co.*,
25 BLR 1-21, 1-27 (2011); *Vickery v. Director, OWCP*, 8 BLR 1-430 (1986).
[3] Citing to *Brumley v. Clay Coal Corp.*, 6 BLR 1-956 (1984); *Tackett v. Director, OWCP*, 6 BLR 1-839 (1984); see
also *Clayton v. Pyro Mining Co.*, 7 BLR 1-551 (1984); *Preston v. Director, OWCP*, 6 BLR 1-1229 (1984); *Hall v.
Director, OWCP*, 2 BLR 1-998 (1980); *Mullins v. Director, OWCP*, 6 BLR 1-508 (1983).

- 3 -

Employer maintains that even if claimant's testimony was not unreliable on its face, as impeachment, Employer argues that Claimant's hearing testimony that he last worked in August or September of 1991 is contradicted by his previous statements that he quit working in April of 1991. I am also directed to November 1, 1994 Form CM-911a (DX 1.2): January 6, 1995. Deposition of Claimant (DX 1.31 at 3).

Further, Employer argues that even if Claimant's testimony that some employers may not have reported earnings is true, "it is too vague to justify adding any years of employment to his employment history. While claimant suggested the possibility that the SSER may not reflect his full earnings, he was unable to state which earnings were not accurately recorded at hearing." The burden is on the claimant to establish coal mining employment in excess of 15 years, and he has failed to provide any evidence that he was employed as a miner for more than the 9.25 years credited to him by the DOL.

Claimant allegedly continued working for Scotia Employees Associates from 1975 to 1977 which establishes three more years of employment. (*Id.*) Claimant's employment with Elkhorn Jellico Coal Company in 1978 establishes an additional year of employment. (*Id.*) In 1979 and 1980, Claimant's earnings and his testimony show that between Johnson and Sons Coal, Ann Coal Mining & Action Energies and Paramount, he is able to establish an additional year and one-half. (*See* DX 7) Thus, Claimant is able to establish over ten years of coal mine employment.

Finally, Claimant's earnings with Everidge & Neece Coal and Wampler establish an additional three years and his Employment with Asberry Coal from 1989 through 1991 establish another three years of employment. (DX 7)

The Benefits Review Board advises me that I did not explain how I resolved the conflict between my determination that claimant 'is not a good historian' and a crediting of Claimant's testimony, nor did I address the significance of claimant's statement that he could not identify which employer failed to withhold Social Security taxes.

The Board also noted "the administrative law judge apparently credited claimant with one year of coal mine employment in 1970, although the SSERs show no such earnings until the third quarter." (*Id.*) Employer asks me to defer to the Social Security record and disregard testimony. Claimant stated: "I know I was there [at Peem Coal Company] close to a year." (TR 24). Claimant argues that it is entirely within my discretion to find Claimant's statement credible and find that he established one year of coal mine employment based on this testimony. I agree. I find that Claimant is credible.

Claimant argues that even if he "is not a good historian" his testimony may still be credible. I agree that I do not find that the testimony was conflicting or inaccurate. I accept that Claimant may have struggled to remember how much money he earned at a job he worked over forty years ago, but this does not discredit his testimony if he remembers how long he worked at a particular coal mine site. I note that there is evidence on the last date that he worked from the prior record, but Claimant was not confronted with it at hearing. Moreover, I find that it is not

- 4 -

*so ?*

A783

crucial to a credibility determination as more importantly, that evidence is twenty years old and I note that with time, memory may recede.

Although Claimant may not be 100 % sure of all of the details, I accept that he is accurate that he was not always paid "on the books." I accept that Claimant is correct that some of his employers did not generate Social Security records. I reject the argument that Claimant's memory and testimony is too vague, and find that to a reasonable degree of probability, he is to be believed.

Calculation of the length of a miner's employment must be based on a reasonable method of computation, and supported by substantial evidence in the record. *Clayton v. Pyro Mining Co.*, 7 B.L.R. 1-551 (1984). "While a person's social security records are proof of particular employment," an ALJ errs in assuming "the absence of social security records for some years" proves claimant was not employed as a coal miner. *Wensel v. Director.*, 888 F.2d 14, 17 (3d Cir. 1989) (citing *Marx v. Director*, 870 F.2d 114 (3d Cir. 1989)). "The dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and sworn testimony." 20 C.F.R. § 725.101)). A determination of a witness's credibility is entitled to deference. See *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 218 (6th Cir. 1996). Courts have upheld reliance on a miner's sworn testimony regarding length of coal mine employment, because the testimony was an appropriate evidentiary source. *See Appalachian Coal Co. v. Adkins*, 468 Fed. Appx. 331, 335 (4th Cir. 2012) (unpublished).

Although I note Employer's argument, I find that the Department of Labor, "DOL," method is more reasonable than Employer's method. However, I listened to the testimony, and I had an opportunity to observe the Claimant and I found that he is credible, and the DOL did not take his allegations into consideration.

As stated in my decision, this is not the first time that a miner has alleged that not all of his wages were properly credited. The standard is based on a preponderance of the evidence and the records are not necessarily dispositive. The records do not substantiate that he was out of work as long as six years due to workers' compensation related injuries. I note from the earnings record that Claimant worked sporadically or intermittently prior to work with Employer. He does not allege that Employer failed to properly credit the time he worked for Employer. Claimant did not exaggerate on other matters during the hearing. He alleged that some of the other mines that he worked for did not take out Social Security taxes. (TR at 17, 23-24). He stated that there may have been some confusion as the earnings record credited him at the location of a home office when he was actually working in mining. For example, the notation for T.O.M. Corporation in Ann Arbor, Michigan, actually represents work performed with the East Kentucky Coal Co. (TR at 26). Likewise, work credited to Boise Cascade is in error, as he has never been in Idaho. (*Id.* at 27).

It is reasonable to expect that he also worked for periods "under the table," as alleged, early in his career, in the 1970's. *See* colloquy at 31-32.

- 5 -

A784

I again accept that based on the record, the District Director accurately found 9.2 years of coal mine employment. I find that the Claimant is credible that he actually worked more than that. Although I do not accept that he worked 18 years, I accept that he worked more than 15 years in mining. All of the work was underground.[4] *Cross Mountain Coal, Inc. v. Ward, supra.*

## CONCLUSION

Pursuant to 20 C.F.R. § 725.503, I again find that benefits are payable as of the month of onset of total disability and if the evidence does not establish the month of onset, benefits are payable beginning with the month during which the claim was filed.

The Claimant was initially evaluated by Dr. Baker in January, 2011. I find it reasonable to expect that the condition was the same at the time he applied.

Therefore, I find that benefits are payable as of the month during which Claimant filed the claim, July, 2010.

## ORDER

The claim for benefits is hereby **GRANTED**. Augmentation for one dependent is also granted.



Digitally signed by Daniel Solomon
DN: CN=Daniel Solomon,
OU=Administrative Law Judges, O=Office
of Administrative Law Judges,
L=Washington, S=DC, C=US
Location: Washington DC

**DANIEL F. SOLOMON**
**ADMINISTRATIVE LAW JUDGE**

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478 and 725.479. The address of the Board is: Benefits Review Board, U.S. Department of Labor, P.O. Box 37601, Washington, DC 20013-7601. Your appeal is considered filed on the date it is received in the Office of the Clerk of the Board, unless the appeal is sent by mail and the Board determines that the U.S. Postal Service postmark, or other reliable evidence establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207. Once an appeal is filed, all inquiries and correspondence should be directed to the Board. After receipt of an appeal, the Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed. At the time you file an appeal with the Board, you must also send a copy of the appeal letter to Associate Solicitor, Black Lung and

---

[4] In Footnote 4 of the Board Decision, "We affirm, as unchallenged on appeal, the administrative law judge's findings that claimant's coal mine employment was underground, that claimant is totally disabled, and that claimant established a change in an applicable condition of entitlement." See *Skrack v. Island Creek Coal Co.*, 6 BLR 1-710 (1983).

- 6 -

Longshore Legal Services, U.S. Department of Labor, 200 Constitution Ave., NW, Room N-2117, Washington, DC 20210. *See* 20 C.F.R. § 725.481. If an appeal is not timely filed with the Board, the decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479(a).

- 7 -

## SERVICE SHEET

Case Name:  **FLEMING_JOSEPH_v_ABERRY_COALINC_DIR-O_**

Case Number: **2012BLA05241**

Document Title: **DECISION AND ORDER ON REMAND AWARD OF BENEFITS**

I hereby certify that a copy of the above-referenced document was sent to the following this 19th day of May, 2014:



Digitally signed by DELANNIE HONESTY
DN: CN=DELANNIE HONESTY,
OU=LEGAL TECH, O=Office of
Administrative Law Judges, L=Washington,
S=DC, C=US
Location: Washington DC

**DELANNIE HONESTY**
**LEGAL TECH**

Associate Solicitor
U. S. Department of Labor
Division of Black Lung Benefits
Suite N-2117, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
          *{Hard Copy - Regular Mail}*

District Director
Chief, Branch of Claims and Systems Mgmnt
U. S. Department of Labor
Room N3454, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
          *{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U.S. Department of Labor
22nd Floor West
1100 Wilson Boulevard
ARLINGTON VA 22209
          *{Hard Copy - Regular Mail}*

Joseph Fleming
1226 Zirkle Road
DANDRIGE TN 37725
          *{Hard Copy - Certified Mail}*

Joseph E Wolfe, Esq.
Wolfe, Williams, Rutherford & Reynolds
P.O. Box 625
NORTON VA 24273
          *{Hard Copy - Certified Mail}*

Michael F Blair, Esq.
Pennstuart
P.O. Box 2009
BRISTOL VA 24203
          *{Hard Copy - Certified Mail}*

Security Insurance Company of Hartford
c/o Arrowpoint Capital
3600 Arco Corporate Drive
CHARLOTTE NC 28273
          *{Hard Copy - Regular Mail}*

A787

IN THE UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD

| | | |
|---|---|---|
| JOSEPH FLEMING, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | Case No.:   2012-BLA-05241 |
| v. | ) | OWCP No.:  XXX-XX-0560 |
| | ) | |
| ABERRY COAL, INC., | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| SECURITY INSURANCE CO. OF | ) | |
| HARTFORD, c/o ARROWPOINT CAPITAL, | ) | |
| | ) | |
| Insurer, | ) | |
| | ) | |
| Defendants. | ) | |

<u>EMPLOYER'S NOTICE OF APPEAL</u>

Comes now the employer, Navajo Coal, Inc., by counsel, and for this Notice of Appeal states

as follows:

1.　　　The petitioner in this matter is:

Aberry Coal, Inc.
P.O. Box 426
Pound, VA 24279

Insured by:

Security Insurance Company of Hartford
c/o Arrowpoint Capital
P.O. Box 1000
Charlotte, NC 28201
telephone number:  704-522-2752

Bristol: 458946-1

A788

-2-

Represented by:

Nate D. Moore
Penn Stuart
P. O. Box 2009
Bristol, VA, 24203
telephone number: 423-793-4804

2.    The claimant is:

Joseph Fleming
1226 Zirkle Road
Dandridge, TN 37725

Represented by:

Joseph E. Wolfe, Esq.
Wolfe, Williams, Rutherford & Reynolds
P. O. Box 625
Norton, VA 24273-0625
telephone number: 276-679-0777

3.    Other parties include the Director, Office of Workers' Compensation Programs and

Stephen Breeskin, District Director; represented by:

U. S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, TN 37219-2456

Rae Ellen Frank-James
Counsel for Black Lung Benefits
U. S. DOL/DCMWC
200 Constitution Ave NW, RM NM-2605
Washington, DC 20210.

4.    The OWCP and case numbers are: 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 and 2012-BLA-05241, respectively.

5.    The decision appealed from was issued by The Honorable Daniel F. Solomon dated

May 19, 2014.

Bristol: 458946-1

A789

-3-

5.      The decision appealed from was issued by The Honorable Daniel F. Solomon dated May 19, 2014.

6.      Aberry Coal, Inc. has not filed and has no knowledge that any other party has filed a motion for reconsideration of the decision.

Respectfully submitted,

ABERRY COAL, INC.

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, TN/VA  24203
423-793-4804
Fax:  423-793-4844
nmoore@pennstuart.com

By: _____
    NATE D. MOORE
    Counsel for Employer

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been mailed to Joseph E. Wolfe, Esquire, Wolfe, Williams, Rutherford & Reynolds, P. O. Box 625, Norton, VA 24273-0625, U. S. Department of Labor, Office of the Solicitor, 618 Church Street, Suite 230, Nashville, TN 37219-2456, Rae Ellen Frank James, Counsel for Black Lung Benefits, U. S. DOL/DCMWC, 200 Constitution Ave NW, RM NM-2605, Washington, DC 20210, and Carol Green, Senior Claims Examiner, U. S. Department of Labor, 200 Constitution Ave, NW, Washington, DC 20210 on this 11th day of June, 2014.

_____
NATE D. MOORE

Bristol: 458946-1

A790

IN THE UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD

JOSEPH FLEMING,            )
                                  )
          Claimant,        )
                                  )    BRB No.: 2014-0329 BLA
v.                             )    Case No.: 2012-BLA-05241
                                  )    OWCP No.:  XXX-XX-0560
ABERRY COAL, INC.,         )
                                  )
          Employer,      )
                                  )
SECURITY INSURANCE CO. OF    )
HARTFORD, c/o ARROWPOINT CAPITAL, )
                                  )
         Insurer,         )
                                  )
         Defendants.    )

## EMPLOYER'S PETITION FOR REVIEW

This day comes the employer, by counsel, and states the following as grounds for its Petition for Review.

### I.

The ALJ erred in finding claimant established more than 15 years of qualifying coal mine employment, and in finding claimant entitled to the rebuttable presumption of total disability due to pneumoconiosis set forth in 30 U.S.C. §921(c)(4).

### II.

The ALJ erred in finding employer had failed to "rule out" pneumoconiosis.

### III.

The ALJ erred in finding employer failed to establish that claimant's disability did not arise out of, or in connection with, employment in a coal mine.

Bristol: 474670-1

A791

-2-

After reviewing the record, decision, and arguments of counsel, Aberry Coal, Inc. respectfully

requests that the Benefits Review Board reverse or vacate the award of benefits and remand the case

for proper consideration.

Respectfully submitted,

ABERRY COAL, INC.

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA/TN 24203
Phone:  423-793-4804
Fax:  423-793-4844
Email:  nmoore@pennstuart.com

By: _____
    NATE D. MOORE, Esquire
    Counsel for Defendants
    VSB No.: 84977

CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the foregoing this 12th day of August, 2014

to Joseph Wolfe, Esquire, Wolfe, Williams & Reynolds, P.O. Box 625, Norton, Virginia, 24273, and

Dominique Sinesi, Esquire, Associate Solicitor of Labor, U.S. Department of Labor, Suite NWN-

2117, 200 Constitution Avenue NW, Washington, D.C.  20210.

_____
NATE D. MOORE

Bristol: 474670-1

A792

IN THE UNITED STATES DEPARTMENT OF LABOR
BENEFITS REVIEW BOARD

| | | |
|---|---|---|
| JOSEPH FLEMING, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | BRB No.: 2014-0329 BLA |
| v. | ) | Case No.: 2012-BLA-05241 |
| | ) | OWCP No.: XXX-XX-0560 |
| ABERRY COAL, INC., | ) | |
| | ) | |
| Employer, | ) | |
| | ) | |
| SECURITY INSURANCE CO. OF | ) | |
| HARTFORD, c/o ARROWPOINT CAPITAL, | ) | |
| | ) | |
| Insurer, | ) | |
| | ) | |
| Defendants. | ) | |

## EMPLOYER'S BRIEF IN SUPPORT OF ITS PETITION FOR REVIEW

### STATEMENT OF THE CASE

This proceeding arises from a subsequent claim for benefits filed under the Black Lung Benefits Act of 1977, 30 U.S.C. § 901 et seq. The claim is currently before the Board on the employer's appeal of ALJ Solomon's May 19, 2014 Decision and Order awarding benefits.

### PROCEDURAL HISTORY

The claimant filed his initial application for benefits on November 1, 1994. (DX 1).[1] That claim was denied by the Department of Labor on March 1, 1995, on the grounds that claimant had failed to prove pneumoconiosis or total disability due to pneumoconiosis. (DX 1). The claimant filed his current application for federal black lung benefits on July 19, 2010. (DX 3). The Department of Labor issued a Proposed Decision and Order awarding benefits on September 20,

---

1. The employer will refer to the Director's Exhibits as "DX," Claimant's Exhibits as "CX," the Employer's Exhibits as "EX," and the Hearing Transcript as "Tr."

2011, and the employer requested that the claim be forwarded to the Office of Administrative Law Judges for a formal hearing. (DX 25, 26).

The Honorable Daniel Solomon conducted a hearing on October 16, 2012. During the hearing, the ALJ accepted into evidence DX 1-33, CX 1-5, and EX 1-11. (Tr. at 5, 8, 35). The ALJ left the record open for 30 days following the hearing. (Tr. at 13). The claimant submitted CX 6, a rereading of a March 20, 2012 digital image, on December 13, 2012.

The ALJ issued a Decision and Order awarding benefits on January 24, 2013. Although the ALJ did not make a specific finding of years of coal mining employment, he determined that the claimant had been employed as a coal miner for "at least 15 years." (Decision and Order, "D&O," at 3-5). And, because the claim was filed after January 1, 2005, and because employer conceded that claimant suffered from a disabling respiratory impairment, the ALJ determined that the claimant was entitled to the rebuttable presumption that his disability was due to pneumoconiosis. (D&O at 5). The ALJ went on to find that the employer had failed to rule out pneumoconiosis or prove claimant's disability was not due to pneumoconiosis, and awarded benefits. (D&O at 7-8).

The employer timely appealed ALJ Solomon's January 24, 2013 Decision and Order to the Benefits Review Board (BRB). On December 17, 2013, the BRB issued a Decision and Order affirming in part and vacating and remanding in part the ALJ's award of benefits. Specifically, the Board vacated the ALJ's finding that claimant had established 15 or more years of coal mine employment. The Board determined that the ALJ failed to adequately explain the method of calculation that he used to compute the length of the claimant's coal mine employment. *December 17, 2013 Decision and Order* at 4. The Board further held that the ALJ failed to resolve conflicts in

the evidence related to the issue of the claimant's history as a coal miner.  Id. at 5.  On remand, the Board instructed the ALJ to consider all evidence relevant to the claimant's coal mine history and resolve any conflicts in such evidence in determining whether claimant proved 15 years of coal mine employment.  Id. at 5-6.  The Board did not consider the employer's arguments regarding rebuttal of the § 411(c)(4) presumption, noting that those issues were not ripe because the ALJ's finding that the presumption was applicable had been vacated.  Id. at 6.

After accepting comments on remand from claimant and the employer, the ALJ issued his *Decision and Order on Remand – Award of Benefits* on May 19, 2014.  While the ALJ did not make a specific finding regarding the number of years claimant worked as a coal miner, he again concluded that claimant proved over 15 years of coal mine employment.  *May 19, 2014 Decision and Order* at 2-6.  Specifically, the ALJ stated, "Although I do not accept that he worked 18 years, I accept that he worked more than 15 years in mining."  Id. at 6.  After determining that claimant proved 15 years of coal mine employment, the ALJ did not reevaluate the evidence related to the employer's rebuttal of the 15 presumption, presumably relying upon his analysis from his January 24, 2013 Decision and Order.

On June 11, 2014, the employer filed timely Notice of Appeal.  On July 14, 2014, the Board issued an acknowledgment of the employer's appeal and ordered the employer to submit its Petition for Review and supporting brief within thirty days of receipt of the acknowledgement.  The employer now submits it brief in support of its Petition for Review.

## STATEMENT OF THE FACTS

Claimant first worked as coal miner in the year 1970 and last worked as a miner in either April 1991 or August 1991.  *See* November 1, 1994 form CM-111A, DX 1; January 6, 1995 Deposition of claimant, DX 1; October 16, 2012 Hearing Transcript at 15.  During this time period, there are several periods of time in which the claimant was undisputedly not performing coal mine employment. For example, claimant's Social Security Earnings Report (SSER) shows non-coal mine employment in Biloxi, Mississippi in the year 1970, and the claimant confirmed that he did some work in Biloxi in that year.  (DX 7 at 5; Tr. at 25).

Likewise, Claimant also testified that he spent approximately one (1) year in Florida between 1970 and 1991 working construction and that he did not perform coal mine employment during that time.  (Tr. at 16-18).  Claimant's SSER supports his testimony that he spent time in Florida as he shows earnings from Atlantic Gulf Communities Corp., Atlantic Condominiums, Inc., Office Max, Inc., and Avero Beach Florida Company beginning in the third quarter of 1972 through the second quarter of 1973.  (DX 7 at 6).

Next, claimant's SSER shows no earnings from any employment in the years 1981, 1982, 1983, and 1984, and the claimant testified at hearing that he did not do any work during that time period due to a back injury.  (DX 7, Tr. at 29).

In 1987, claimant's SSSER shows earnings with Uniforce Services, Inc. and no other employer.  (DX 7 at 9).  In 1988, claimant shows earnings with UNF Services, Inc.  (Id.).  Both Uniforce Services and UNF Services, Inc. have addresses located in New Hyde Park, New Jersey.

At hearing, the claimant confirmed that his work at Uniforce and UNF was not related to coal mine employment. (Tr. at 30).

It is unclear exactly when claimant last worked as a coal miner. On his initial Application for Benefits dated December 20, 1994, the claimant reported that his last work in coal mine employment occurred in April 1991. (DX 1). At the October 16, 2012 hearing, approximately twenty (20) years later, claimant stated, "The best I can remember, it was in August or September of '91." (Tr. at 15).

The claimant did testify at hearing that he believed his SSSER may have understated his earnings with certain companies, specifically with Peem Coal Company, Highpoint Coal, Archer & Clubb Coal, and A & E Coal. (Tr. at 24, 25, 26, 27). However, when asked whether he might be mistaken regarding his recollection of his employment with those companies, claimant stated, "It very well could be." (Tr. at 32). Further, regarding his memory surrounding his employment as a miner, claimant stated "I had these wrote down and I worked real hard. I'm not the sharpest tool in the shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could, but not having any documentation, there was no way I could tell you 100% about any of them." (Tr. at 33).

Although the ALJ did not provide the specific method that he used to compute the claimant's coal mine history length in his most recent Decision and Order, he did state that he credited the claimant with five (5) years for the time period of 1970 through 1974, five and one-half years (5½) years for the time period of 1975 through 1980, and six (6) years for the combined time periods of 1985, and 1988 through 1991. (May 19, 2014 Decision and Order at 2-3, 4). In crediting the claimant with five (5) years for the time period of 1970 through 1974, the ALJ did not discuss the

claimant's testimony that he spent time doing non coal mine related work in 1970. Id. Although the ALJ noted that claimant testified to having spent a year in Florida in a footnote during this time period,[2] he did not consider that evidence in his determination that claimant should be credited with a full year of coal mine employment for each year from 1970-1974. Id.

Next, in 1977, claimant only shows earnings of $5,489.80 from Scotia Coal, while the Department of Labor's 125-day average earnings of coal miners for that year is $8,987.50. (DX 7). Claimant did not testify that Scotia paid unreported earnings. Claimant's only testimony regarding the length of time that he worked for Scotia was his affirmative answer to counsel's statement that he "worked for them for a few years." (Tr. at 28). Nonetheless, the ALJ credited the claimant with one full year of employment for the year 1977, stating that "[c]laimant allegedly continued working for Scotia Employees Associates from 1975 to 1977 which establishes three more years of employment." (May 19, 2014 D&O at 4).

Likewise, the ALJ stated, "Claimant's employment with Elkhorn & Jellico Coal Company in 1978 establishes an additional year of employment." (Id. at 4). Claimant shows earnings of $1,255.67 from Elkhorn & Jellico Coal Company in 1978, and claimant did not provide any testimony regarding his employment with that company. (DX 7 at 7, Tr. at 28).

Next, claimant's SSER shows earnings of $3,168.74 from Everidge & Nease Coal Company in 1985, $11,884.65 from Wampler Brothers Coal Company in 1988, and $13,199.71 from Wampler Brothers Coal Company in 1989, and claimant did not testify that those companies paid any

---

2 The footnote in the ALJ's Decision and Order is actually just a paragraph copied and pasted from the employer's Brief on Remand. The ALJ did not consider the evidence regarding the time claimant spent in Florida at any other point in his discussion of the claimant's length of coal mine employment.

Bristol: 468703-1

unreported earnings. Still, the ALJ determined that "[c]laimant's earnings with Everidge & Nease Coal and Wampler establish an additional three years…" *D&O* at 4.

Lastly, claimant's SSER shows earnings with Aberry Coal of $9,030.00 in 1989, $24,451.50 in 1990, and $6,401.75 in 1991. (DX 7 at 10). Claimant did not testify that Aberry paid any unreported earnings, and Claimant estimated that he worked for Aberry until August or September of 1991, while earlier evidence places claimant's final date of employment with Aberry in April of 1991. (Tr. at 15). The ALJ found that claimant's employment with that company established an additional three years. *D&O* at 4. The ALJ did not explain why he credited claimant with a full year of employment in 1991 when the uncontested evidence establishes that he did not work for the entire year in 1991. Id. Remarkably, for the years 1985, 1988, 1989, 1990, and 1991, the ALJ credited the claimant with six (6) years of coal mine employment for a five (5) year period. Id.

The ALJ concluded his analysis of the length of coal by employment by stating, "Although I do not accept that he worked 18 years, I accept that he worked more than 15 years in mining." Id. at 6. As noted above, the ALJ did not analyze the medical evidence in his most recent Decision and Order.

<u>ISSUES</u>

I.    The ALJ erred in finding claimant established more than 15 years of
      qualifying coal mine employment and in finding claimant entitled to the
      rebuttable presumption of total disability due to pneumoconiosis set forth in
      30 U.S.C. §921(c)(4).

II.   The ALJ erred in finding employer had failed to "rule out" pneumoconiosis.

III.  The ALJ erred in finding employer failed to establish that claimant's disability
      did not arise out of, or in connection with, employment in a coal mine.

<u>STANDARD OF REVIEW</u>

The Benefits Review Board's scope of review is defined by statute.  The administrative law

judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and

in accordance with applicable law.  33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a);

<u>O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.</u>, 380 U.S. 359 (1965).

<u>ARGUMENT</u>

**I.    The ALJ erred in finding claimant established more than 15 years of qualifying coal mine employment and in finding claimant entitled to the rebuttable presumption of total disability due to pneumoconiosis set forth in 30 U.S.C. §921(c)(4).**

The claimant bears the burden of establishing length of coal mine employment. <u>Shelesky v. Director, OWCP</u>, 7 B.L.R. 1-3 (1984); <u>Niccoli v. Director, OWCP</u>, 6 B.L.R. 1-910 (1984). As the Federal Black Lung Benefits Act does not provide a specific method to be used in determining the length of a claimant's coal mining employment, the Board will uphold the ALJ's calculation if it is based on a reasonable method and supported by substantial evidence in the record as a whole. <u>Vickery v. Director, OWCP</u>, 8 BLR 1-430 (1986); <u>Smith v. National Mines Corp.</u>, 7 BLR 1-803 (1985); <u>Miller v. Director, OWCP</u>, 7 BLR 1-693 (1983); <u>Maggard v. Director, OWCP</u>, 6 BLR 1-285 (1983). However, the administrative law judge is required to explain his method of calculation by setting forth what evidence is credited or rejected and the rationale therefore. *See* <u>Shapell v. Director, OWCP</u>, 7 B.L.R. 1-304 (1984); <u>Fee v. Director, OWCP</u>, 6 B.L.R. 1-1100 (1984). All records regarding the claimant's employment are to be considered by the ALJ in his computation of coal mine employment, including affidavits of co-workers, Social Security records, sworn testimony, written statements of the miner (including the Form CM-911a), records of the employer, and pension records. 20 C.F.R. § 725.101(a)(32)(ii); <u>Green v. A.G.P. Co., Inc.</u>, 4 BLR 1-109 (1981).

Here, the ALJ's finding that claimant established at least 15 years of qualifying coal mine employment must be reversed or vacated for several reasons. The ALJ erred by failing to adequately explain how he computed the claimant's coal mine employment length and by ignoring evidence relevant to claimant's coal mine employment history. Further, the ALJ's finding that claimant

established at least 15 years is not rationale and is not supported by substantially evidence. As the

ALJ's finding of entitlement is based upon his application of the 15 year presumption, his findings

regarding the claimant's coal mine employment must be reversed or vacated and remanded.

> **A.     The ALJ erred in failing to explain how he calculated the length of claimant's coal mining employment and by refusing to consider evidence relevant to claimant's coal mine employment history.**

In computing the miner's coal mine employment, the ALJ is required to specifically articulate

what evidence he credits or rejects along with his rationale for crediting or rejecting it. For example,

in Shapell, the Board vacated and remanded the ALJ's decision where his finding of three years of

coal mine employment was "too cursory to comply with the Administrative Procedure Act." 7

B.L.R. 1-304. The Board explained:

> The record contains conflicting information concerning claimant's
> various coal mine jobs between 1930 and 1956. *Citations omitted.*
> The administrative law judge, however, failed to explicitly consider
> any of this evidence and state why he credits or discredits specific
> pieces of evidence. 7 B.L.R. 1-308.

Likewise, in Fee, the Board vacated and remanded the ALJ's calculation of coal mine

employment where he failed to explicitly credit or discredit each piece of testimony related to the

length of employment issue. 6 B.L.R. 1-1100 (1984). Specifically, the Board stated that the ALJ

erred by failing to explain why he discredited testimony and affidavit evidence related to the

claimant's employment during certain years. 6 B.L.R. 1-1103 (1984). The Board vacated the ALJ's

order despite its finding that "some aspects of his findings have been explained." Id.

In Goodman v. Round Mountain Coal Company, BRB No. 09-0407 BLA (September 29,

2010) (unpub.), a case decided subsequent to the revival of the 15 year presumption, the Board

vacated the ALJ's determination of length of coal mining employment due to the ALJ's failure to explain his calculations. There, the ALJ reviewed the relevant evidence, including an employment history form from the claimant, the claimant's Social Security earnings records, and the claimant's testimony. After stating that he believed the claimant's employment history form and testimony were unreliable, the ALJ determined that claimant had 13 years of coal mining employment based upon the Social Security earnings record. The Board instructed the ALJ on remand to adequately explain the method he used to calculate the claimant's length of coal mining employment. Goodman, slip op at 3.

As was the case in Goodman, the ALJ here failed to adequately explain the method he used to calculate the claimant's length of coal mining employment. Rather, the ALJ simply provided a cursory review of the claimant's earnings report for certain time periods, and without further explanation stated that claimant established a full year of employment for each year in each period. Additionally, the ALJ refused to consider numerous portions of the record that were discussed in the employer's closing argument brief that preponderated against a finding of 15 or more years of qualifying coal mine employment. The employer has provided a detailed analysis of the ALJ's errors for each given time period below:

        1.    1970 -1974

The ALJ credited claimant with five full years of coal mine employment for this five year period. D&O at 2-3. Remarkably, claimant acknowledged during the hearing that his social security earnings record was accurate in reporting that he was working in Biloxi, Mississippi during the final pay period of 1970 doing non coal mine related work. (Tr. at 25). He also acknowledged working at

Clarke Super 100 in Cookeville, Tennessee during the fourth quarter of 1970. (Tr. at 25). The ALJ simply did not consider the claimant's time performing non-coal mine related work in 1970 in his analysis, instead crediting claimant with a full year for that time period.

In 1972, the claimant shows no earnings from coal mine employers. He does, however, show earnings with various employers in the state of Florida. The claimant testified that he spent approximately one (1) year during this time period living in Florida performing non-coal mine employment work. Nonetheless, the ALJ credited the claimant with a full year of coal mine employment for this time. In fact, the ALJ's only mention of the claimant's time spent in Florida is in a footnote on page three of his Decision and Order. Remarkably, the ALJ simply copied and pasted a paragraph from the employer's closing argument in that footnote, then proceeded to ignore the evidence in his actual analysis. The ALJ is required to actually consider all evidence relevant to the issue of length of coal mine employment and resolve any conflicting evidence, and the ALJ's mere mention of evidence in a footnote without consideration of the evidence in his actual analysis is not sufficient.

The time period encompassing 1970 through 1974 is a five (5) year time period, and the claimant specifically stated that he spent at least one (1) year in Florida doing non-coal mine related work during this time period. The claimant also specifically testified to spending time in Biloxi, Mississippi doing non-coal mine related work during this time. As such, it is impossible for the claimant to prove even four (4) years of coal mine employment based upon his own testimony. Accordingly, the ALJ clearly erred by crediting him with a total of five (5) years of coal mine employment during this time period.

2.     1975 – 1980

Regarding this time period, the ALJ stated as follows:

> Claimant allegedly continued working for Scotia Employees
> Associates from 1975 to 1977 which establishes three more years of
> employment. (Id.) Claimant's employment with Elkhorn & Jellico
> Coal Company in 1978 establishes an additional year of employment.
> (Id.) In 1979 and 1980, claimant's earnings and his testimony show
> that between Johnson & Sons Coal, Ancoal Mining and Action
> Energies and Paramont, he is able to establish an additional year and
> one-half. (See DX 7). Thus, claimant is able to establish over ten
> years of coal mine employment.
> (D&O at 4).

First, the ALJ fails to explain how the claimant's employment with Scotia Coal from 1975

through 1977 establishes a full three (3) years of coal mine employment. The claimant earned only

$5,489.80 with Scotia in 1977, and the claimant did not testify that this company paid any unreported

earnings. The ALJ entirely neglected to explain how such low earnings amounted to an entire year

of coal mine employment.

Likewise, the claimant only shows earnings of $1,255.67 with Elkhorn & Jellico Coal

Company in 1978, and the claimant did not testify that this company paid any unreported earnings.

Again, the ALJ did not explain how he computed that the claimant's earnings of slightly over

$1,000.00 proved one (1) year of coal mine employment.

Finally, the ALJ's vague statement that "claimant's earnings and his testimony shows" that

he is entitled to an additional year and a half for the years of 1979 and 1980 is also too vague and

non-specific. The ALJ is required to explain how the claimant's testimony and earnings establish

one and a half years of coal mine employment, and is further required to explain the method of

calculation which he is using. The ALJ's conclusory statements regarding the evidence related to

claimant's employment from 1975 through 1980 is not sufficient to apprise the parties of how he

calculated the length of claimant's coal mine employment.

        3.     1985, 1988 – 1991

Regarding this final time period, the ALJ stated as follows:

> Finally, claimant's earnings with Everidge & Nease Coal and
> Wampler establish an additional three years and his employment with
> Asberry Coal from 1989 through 1991 establish another three years of
> employment. (DX 6).
> (D&O at 4).

Initially, the employer notes that the claimant shows earnings with the above-mentioned

companies in 1985 and in 1988 through 1991, a five (5) year period. Remarkably, the ALJ credited

the claimant with a total of six (6) years of coal mine employment for this five (5) year period.

Moreover, the ALJ once again fails to explain how the claimant's earnings records with these

companies entitles the claimant to credit for each of the full years. The ALJ neglects to explain his

method of calculation, instead making conclusionary statements that the claimant's earnings records

entitles him to a certain amount of employment.

In sum, the ALJ at no point explained the method of calculation that he was utilizing to

support his finding of at least fifteen (15) years of coal mine employment. Instead the ALJ's

Decision and Order consisted of him making conclusory statements that either the claimant's earning

history or his testimony establishes that he worked full years of coal mining from 1970 through 1980,

1985, and 1988 through 1991. As noted by the Board in <u>Fee</u>, it is not adequate that an ALJ explain

"some aspects of his findings." As the ALJ is required to explain his method for calculating the

length of coal mine employment, and as he failed to consider evidence related to the issue, the ALJ's

finding in this case is inadequate and his award of benefits must be vacated and remanded for further consideration. The employer further notes that, rather than making a specific finding of years spent in coal mine employment, the ALJ simply found that claimant worked more than 15, but less than 18, years. A specific finding of years claimant worked as a coal miner is particularly important in this case as claimant's length of employment is exceptionally close to the 15 year threshold provided by the PPACA to shift the burden of proof to the employer.

**B.      The ALJ's finding of 15 years of coal mine employment is not rational or supported by substantial evidence.**

In addition to the ALJ's insufficient explanation regarding his calculation of coal mine employment, the limited insight provided into his method of calculation demonstrates that it is not based on a reasonable method or supported by substantial evidence. Again, the Board will uphold the ALJ's calculation if it is based on a reasonable method and supported by substantial evidence in the record as a whole. Vickery v. Director, OWCP, 8 BLR 1-430 (1986); Smith v. National Mines Corp., 7 BLR 1-803 (1985); Miller v. Director, OWCP, 7 BLR 1-693 (1983); Maggard v. Director, OWCP, 6 BLR 1-285 (1983). "Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." Piney Mountain Coal Company v. Mays, 176 F.3d 753; 1999 U.S. App. Lexis 8487 (4th Cir. 1999), *quoting* NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939). In Allentown Mack Sales and Serv., Inc. v. NLRB, the Supreme Court explained that the substantial evidence test requires a degree of evidence that could satisfy a reasonable fact-finder of a particular fact. 522 U.S. 359, 377, 118 S. Ct. 818 (1998).

Here, the ALJ's calculations fail to meet the criteria of being reasonable or supported by substantial evidence for several reasons. The ALJ's finding of at least 15 years of coal mine employment is premised entirely upon the claimant's vague testimony that some employer's may not have reported all earnings. However, claimant only testified that four specific employers underreported earnings: Peem Coal Company, Highpoint Coal, Archer & Clubb Coal, and A & E Coal. (Tr. at 24, 25, 26, 27). Remarkably, the ALJ used the claimant's testimony that these four companies did not always pay "on the books" to inflate the claimant's earnings with *all* companies. While the ALJ is free to credit claimant's testimony that some employment was unreported, he cannot assume that claimant had unreported earnings with all companies where claimant did not testify to such.

And, even if a reasonable fact-finder could determine that claimant's testimony warranted adding additional years to his coal mine employment, there is absolutely no evidence as to how many more years should be added. "Substantial evidence" does not justify adding numerous years of employment on top of that which is established by the claimant's earnings records simply because the claimant stated four employers may not have reported all earnings. Despite the Board's instructions to the ALJ to "be mindful that claimant bears the burden of proof on this issue," the ALJ refused to hold the claimant to this burden.

Next, as noted above, the ALJ credited claimant with coal mine employment for several time periods when claimant specifically testified that he was *not* working as a miner. It is undisputed that claimant spent approximately one year in Florida doing non-coal mine work in 1972-1973, and that he spent time Biloxi, Mississippi doing non-coal mine related work in 1970. As such, it is

impossible that claimant worked for five years as a miner for the time period of 1970-1974 based upon the undisputed evidence of record. Still, the ALJ credited claimant with five years of coal mine employment for that time period.

Likewise, the ALJ credited claimant with six years of coal mine employment for the years 1985, and 1988 through 1991. Again, the ALJ's finding is not rationale. Twenty C.F.R. § 725.101(a)(32)(i) specifically provides that a miner cannot be credited with greater than one year of employment for a one year period.

Further, the ALJ credited claimant with a full year of employment for the year 1991, when he undisputedly quit working well before the end of the year. And, regarding the conflicting evidence as to whether claimant quit working in April or August of 1991, the ALJ refused to consider the earlier evidence in which the claimant stated that he last worked in April of 1991 because "that evidence is twenty years old and I note that with time, memory may recede." The ALJ's statement is irrational on its face. The fact that memory may fade is the precise reason why the employer argued that the ALJ should credit the application completed by claimant in 1994 (which stated he quit work in April of 1991) over his 2011 hearing testimony stating that he quit work in August of 1991. Essentially, the ALJ rejected claimant's 1994 statement because his memory may have faded by 2011, clearly a finding that is not supported by substantial evidence.

The time period from 1970 through 1991 covers twenty-two different years. Claimant testified that he spent part of 1970 in Biloxi, Mississippi. Claimant testified that he did not work during the four years from 1981 through 1984 due to an injury. Claimant testified to working for approximately one year in Florida, which is supported by his SSER. Claimant shows no earnings

from any coal mine employment in 1986 and 1987, and claimant provided no evidence or testimony that he was working as a coal miner during those years. Claimant also testified that he performed non-coal mine work in 1986-1987. Claimant readily admitted that he did not work for the full year in 1991. Based upon the above, it is mathematically impossible for claimant to prove that he worked fifteen years as a coal miner. Accordingly, the ALJ's finding of more than 15 years of coal mine employment is not supported by substantial evidence and must be reversed or vacated and remanded.

## II. The ALJ erred in finding employer failed to "rule out pneumoconiosis."

### A. The ALJ failed to review all evidence of record when considering whether employer had met its burden of proof.

Here, the ALJ erred by failing to first assess whether claimant established a change in condition, and upon making such a finding, in failing to consider all evidence of record to determine whether employer had met its burden of proof. As claimant filed his present claim more than one year after the Director's March 1, 1995 denial, this claim is a subsequent claim and the ALJ was required to deny the claim on the same basis as the prior claim unless claimant established a material change in condition.[3] 20 C.F.R. §725.309. To do that, claimant was required to prove by a preponderance of the evidence developed since the prior denial at least one element of entitlement previously found against him. Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358 (4th Cir. 1996)(*en banc*). "Once the miner establishes a change in condition through the newly submitted evidence, the ALJ must consider all the evidence in the record — old and new — to determine whether the

---

3. While DOL revised § 725.309, the D.C. Circuit Court of Appeals held the regulation is not substantively different from the previous requirement that claimant prove "a material change in conditions." Nat'l Mining Assoc. v. Dep't of Labor, 292 F.3d 849, 863-864 (D.C. Cir. 2002). For simplicity, we will refer to a "material change in condition."

claimant is entitled to benefits." <u>Cumberland River Coal Co. v. Banks</u>, 690 F.3d 477 (6th Cir. 2012).

Here, claimant's prior claim was denied on the grounds that claimant failed to establish the existence of pneumoconiosis or that he was totally disabled due to the disease. (DX 1). However, the ALJ failed to issue a specific finding as to whether claimant established a change in condition. As such, the claim must be remanded.

Even if it can be presumed that claimant established a material change in conditions based upon the ALJ's finding of entitlement, the ALJ erred by failing to review the entire record to determine whether the employer had met its burden of proof set forth in §718.305(d) upon finding that the evidence established claimant was totally disabled due to pneumoconiosis. Director's Exhibit 1 includes three negative chest x-ray readings of the February 23, 1995 chest x-ray by Drs Wicker, Wiot and Spitz. The ALJ did not consider these readings when assessing whether the Employer had met its burden of "ruling out" pneumoconiosis. "The Black Lung Benefits Act commands judges to consider "*all* relevant evidence" in determining the validity of a given claim." <u>Dixie Fuel Co., LLC v. Dir.</u>, 700 F.3d 878, 881 (6th Cir. 2012)(*citing* 30 U.S.C. § 923(b)). *See also* Administrative Procedures Act, 5 U.S.C.S. § 557(c)(3)(A). Accordingly, as the ALJ failed to make a finding regarding whether claimant established a material change in conditions, and as he failed to consider all evidence of record, his finding of entitlement must be vacated.

### B.    The ALJ erred in mechanically discrediting Dr. Caffrey's biopsy report on the grounds that it was "old."

While it is proper for an administrative law judge to find that an opinion that pneumoconiosis is never progressive is hostile to the Act, there is no contrary proposition that pneumoconiosis always has to result in such a progressive worsening of symptoms. *see* <u>Workman v. Eastern Associated</u>

-20-

Coal Corp., 23 BLR 1-22, 1-26 (2004) (Motion for Recon.) (*en banc*) (the amendments to Section 718.201 did not alter claimant's burden of proving the existence of pneumoconiosis arising out of coal mine employment by a preponderance of the evidence and without the benefit of any presumption of latency or progressivity); *see generally* Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849, 863, 23 BLR 2-124, 2-172-173 (D.C. Cir. 2002) (pneumoconiosis can be latent and progressive, but is not in the majority of cases). Further, the Board has held that the later evidence rule is not to be mechanically applied. Triplett v. Incoal Coal Co., 2 B.L.R. 1-633 (1979). Here, the ALJ mechanically and improperly implied the later evidence rule by refusing to consider Dr. Caffrey's 2005 biopsy report without any explanation.

Dr. Caffrey reviewed slides from claimant's lung-wedge biopsy on June 24, 2005, and found no evidence of the disease. (EX 8). The claimant submitted no evidence in rebuttal of Dr. Caffrey's findings. No physician of record has opined that the lung biopsy from 2005 would not be useful in determining whether claimant suffers from pneumoconiosis, and the ALJ provided no explanation for how he determined that the biopsy was too old to be relevant to his determination. The ALJ's decision to discredit the report amounts to a medical finding that is outside his authority. Therefore, the ALJ's finding must be vacated and remanded for further consideration. Dr. Caffrey's opinion, if credited, supports the findings of Drs. Wicker, Wiot, Spitz, Wheeler and Scott that claimant does not suffer from pneumoconiosis.

**C.    The ALJ erred in his consideration of the chest x-ray evidence and in finding it failed to preponderate against a finding of clinical coal workers' pneumoconiosis.**

"This Court will affirm an ALJ's factual findings when substantial evidence supports those conclusions. (Citation Omitted). Where, however, an ALJ has improperly characterized the evidence or failed to account of relevant record material, deference is inappropriate and remand is required." Eastover Mining Co. v. Williams, 338 F.3d 501, 508 (6th Cir. 2003)(citing Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 255 (6th Cir. 1983). "Although an ALJ may give more weight to some evidence than other evidence, he is not allowed to ignore competing evidence." Dixie Fuel Co., LLC v. Dir., 700 F.3d 878, 880 (6th Cir. 2012). As noted above, the ALJ failed to consider the readings of claimant's chest x-rays found in DX 1. The ALJ further erred, however, in his consideration and weighing of the chest x-ray readings in the current claim.

Although the ALJ listed all of the readings and noted that the readings of the dually certified readers were equally divided, he only discussed Dr. Scott's reading of the March 28, 2012 film[4] (EX 9). (D&O at 7). He did not evaluate Dr. Alexander's reading of that film, nor did he evaluate and weigh the seven readings of the other three films in evidence in the current claim.

Next, the ALJ erred in discrediting the readings by Drs. Wheeler and Scott. On page 7 of his decision, the ALJ acknowledged Drs. Wheeler's and Scott's credentials, but indicated that he would not give greater weight to their opinions "because of the logic discussed below." In considering Dr.

---

4 . The ALJ incorrectly referred to this film as being taken on September 19, 2012. (D&O at 7). However, that is actually the date of Dr. Scott's reading (EX 9).

Bristol: 468703-1

Scott's reading, the only reading he actually discussed, the ALJ noted it included a finding of possible emphysema, which the ALJ stated "may evidence legal pneumoconiosis." He therefore found the reading to be equivocal and discredited it. The ALJ did not consider that Dr. Scott specifically noted on the ILO form that the film revealed no parenchymal or pleural abnormalities consistent with pneumoconiosis. Furthermore, as will be noted below, the ALJ never weighed the medical report evidence to determine whether it established claimant's emphysema was caused or substantially aggravated by coal dust exposure.

The Board considered and rejected this same reasoning in Harris v. Old Ben Coal Co., BRB No. 04-0812 BLA (January 27, 2006). In Harris, the Board noted:

> Employer is correct, however, in asserting that the administrative law judge relied upon his own medical conclusions when characterizing Dr. Wiot's x-ray interpretations. The administrative law judge referred to Dr. Wiot's findings of bullae and emphysematous changes in the upper lung fields, and his finding of interstitial fibrosis, and determined that they were "not necessarily wholly inconsistent with" the positive readings for pneumoconiosis. Decision and Order at 17. Absent medical evidence in the record that the items described by Dr. Wiot are consistent with pneumoconiosis, the administrative law judge relied upon his own understanding of the significance of these findings to determine that Dr. Wiot's negative readings supported a finding of pneumoconiosis. This is beyond the scope of the administrative law judge's role as fact-finder. See Casella v. Kaiser Steel Corp., 9 BLR 1-131 (1986).

The ALJ clearly performed the same type of analysis in the present claim. As such, he erred in finding that a finding of emphysema discredited Dr. Scott's finding of no pneumoconiosis.

The ALJ further erred in finding that the most persuasive opinion comes from Dr. Alexander, who unequivocally diagnosed pneumoconiosis. (D&O at 7). The ALJ did not identify which reading of Dr. Alexander he credited. Assuming he was referring to the reading of the March 28,

2012 film, the ALJ's decision must again be reversed because he applied a different standard when evaluating the two readings of the film. As noted above, Dr. Scott also stated unequivocally that the film revealed no parenchymal or pleural abnormalities consistent with pneumoconiosis. Both physicians also similarly noted questions regarding the etiology of the mass found in the left upper zone of claimant's lung. Dr. Alexander included question marks around his opinion finding the mass represented scarring. Finally, both physicians found the film to be quality two with scapular overlay.

In sum, the ALJ failed to consider all relevant x-ray evidence, and further erred analyzing the employer's evidence more critically than that of the claimant. As such, this claim must be remanded for proper consideration of Dr. Scott's reading, and for full consideration of all chest x-ray readings of record.

> ### D. The ALJ erred in failing to issue a specific finding with regard to whether the readings submitted as "other evidence" ruled out pneumoconiosis.

The ALJ further erred in failing to consider the readings submitted as "other" evidence. The ALJ acknowledged the readings in footnote 5 on page seven of his initial decision. However, he did not issue a specific finding as to the weight he would attribute the readings, nor did he consider the "other" evidence together with the chest x-ray, biopsy evidence, and medical report evidence when assessing whether the employer met its burden of ruling out pneumoconiosis. *See* Compton v. Island Creek Coal Co., 211 F.3d 203 (4th Cir 2000).

To the extent the ALJ considered Dr. Wheeler's reading of the March 20, 2012 film,[5] he erred in dismissing his reading simply because he marked the form to indicate that the film was

---

5 . The ALJ again misidentified the film as being taken on March 28, 2012. (D&O at 7, f.n. 5).

Bristol: 468703-1

unreadable, and because he included question marks next to the finding of emphysema and TB.[6] Dr. Wheeler explained that he marked the form unreadable because NIOSH did not, at that time, allow classifications of digital images. Nevertheless, the doctor went on to provide a narrative report of his findings.

With regard to the question marks placed beside the findings of emphysema and TB, the ALJ failed to acknowledge that the doctor specifically noted in his narrative report that the film revealed no evidence of coal workers' pneumoconiosis. Simply including question marks in the ILO form does not provide sufficient reason for discrediting a reading. In <u>Gibson v. Alex Energy Inc.</u>, BRB No. 11-0483 BLA (April 19, 2012) (slip. op. at 5-6), the ALJ found Dr. Wheeler's reading of a film to be equivocal because he included a question mark in the box on the ILO form asking the physician to answer further questions regarding small and large opacities if they answer yes to the question regarding abnormalities consistent with pneumoconiosis. The ALJ noted that Dr. Wheeler's equivocal answer regarding the threshold question called his entire simple and complicated pneumoconiosis opinion into doubt. In reversing the ALJ's finding, the Board noted that Dr. Wheeler unequivocally opined that the x-ray in question did not show any large opacities of complicated pneumoconiosis because he specifically indicated on the ILO form that the film revealed Category O large opacities. The fact that Dr. Wheeler's reading also acknowledged 2cm, 4cm and 5cm masses "compatible with conglomerate granulomatous disease: histoplasmosis more likely than TB or mycobacterium avium complex (MAC)" did not alter the Board's finding. The Board's

---

6. The ALJ includes negative remarks about Dr. Wheeler's reading in his opinion, but again, it does not appear that he rendered a decision as to the actual weight it would be accorded.

reasoning in <u>Gibson</u> is applicable to present claim. Therefore, the Board should remand the claim for proper consideration of the readings submitted as "other" evidence.

Finally, to the extent the ALJ discredited Dr. Wheeler's reading because he failed to state whether emphysema could constitute legal pneumoconiosis, his finding must be reversed for the same reasons set forth in Section II C above.

### E.     The ALJ erred in his consideration of the medical report evidence.

As previously noted, the ALJ did not consider the medical report evidence except to indicate that Drs. Rosenberg and Dahhan based their opinions upon their understanding that the chest x-ray evidence was negative for pneumoconiosis, which was contrary to his finding. For this reason, he found their opinions to be flawed and discredited them. As noted above, the ALJ erred in his evaluation of the chest x-ray evidence and in his ultimate finding that it established clinical pneumoconiosis. If the ALJ's finding on that issue is reversed, then his consideration of the medical report evidence must also be vacated and remanded for further consideration.

Furthermore, the ALJ erred in failing to consider whether the evidence ruled out legal pneumoconiosis. The regulations at § 718.202(a) provide four alternative methods for proving pneumoconiosis. Chest x-rays are considered under § 718.202(a)(1). Section 718.202(a)(4) in listing the objective tests on which a physician may rely in diagnosing pneumoconiosis specifically excludes chest x-rays. The Board has acknowledged this as well by holding that a medical report that is nothing more than a repeat of a chest x-ray is not sufficient under § 718.202(a)(4). <u>See</u> <u>Worhach v. Director</u>, OWCP, 17 BLR at1-110.

Here, the ALJ dismissed the opinions of Drs. Rosenberg and Dahhan because "both assumed the x-ray evidence was negative, and therefore I find that their opinions are flawed." The ALJ provided no further explanation for discrediting the reports of Drs. Rosenberg and Dahhan. However, contrary to the ALJ's contention, neither physician predicated their opinions upon negative x-ray evidence.

First, Dr. Rosenberg provided an extensive review of all medical evidence in the record in his report. (Ex 1). Specifically, Dr. Rosenberg included an entire section in his report reciting each x-ray reading in the record. He also noted that Dr. Wheeler had detected no micronodularity in a recent film. Then, Dr. Rosenberg provided an approximately four page discussion centered on distinguishing the effects of coal mine dust exposure from the effects of cigarette smoking as each relates to pulmonary function study values. Based on claimant's ventilatory studies as compared to this discussion, Dr. Rosenberg determined that claimant suffered from a disabling impairment as a result of his extensive smoking history and not as a result of coal dust exposure. Dr. Rosenberg's medical opinion that coal dust exposure did not result in disability was based primarily on claimant's ventilatory values and not on any "assumption" that the x-ray evidence was negative.

Likewise, Dr. Dahhan also determined that claimant's pulmonary function study values were not consistent with coal dust related lung disease but with lung disease secondary to cigarette smoking. (DX 15, EX 11). Although Dr. Dahhan did note that he believed claimant did not have radiological findings consistent with legal pneumoconiosis, he cited the same study by Dr. Attfield regarding the distinctions between the ventilatory effects of coal dust exposure and cigarette smoking. Accordingly, because both physicians' opinions that claimant did not have legal

pneumoconiosis were based primarily on claimant's pulmonary function values that were inconsistent with the disease, the ALJ erred by discrediting the reports due to their alleged reliance on an assumption of negative x-ray evidence. Accordingly, the ALJ erred in discounting the reports of Drs. Dahhan and Rosenberg and the claim must be remanded.

Finally, on remand, the ALJ must consider the claimant's smoking history when analyzing the legal pneumoconiosis issue. The Administrative Procedure Act, 5 U.S.C. §557(c)(3)(A), as incorporated into the Act by 30 U.S.C. §932(a), by means of 33 U.S.C. §919(d) and 5 U.S.C. §554(c)(2), requires that an administrative law judge independently evaluate the evidence and provide an explanation for his findings of fact and conclusions of law. Wojtowicz v. Duquesne Light Co., 12 BLR 1-162 (1989). The nature and extent of a miner's smoking history may be relevant to issues such as the existence of pneumoconiosis and the cause of a miner's disability. *See* Sellards v. Director, OWCP, 17 B.L.R. 1-77, 1-81 (1993). As such, the ALJ is required to make specific findings regarding a claimant's smoking history and must consider all evidence pertaining to the issue and resolve any discrepancies contained in the record. *See* Webber v. Peabody Coal Co., 23 B.L.R. 1-123, 1-137 (2006). Although an ALJ's conclusions regarding a claimant's smoking history is a factual finding that will be upheld if supported by substantial evidence, the ALJ's failure to consider any part of the evidence relating to the smoking history is cause for remand. *See* Triplett v. Sewell Coal Co., BRB No. 01-0537 BLA (Mar. 6, 2002)(unpub.).

Based on all evidence in the record, the employer argued in its closing argument brief that the ALJ should find a smoking history of at least thirty-five pack years. Such a significant smoking history should weigh heavily in the ALJ's determination regarding the existence of pneumoconiosis

and disability causation. However, the ALJ failed to make any finding related to claimant's smoking history. As such, the claim must be remanded for further consideration of that issue.

### III.    The ALJ erred in finding employer failed to establish that claimant's disability did not arise out of, or in connection with, employment in a coal mine.

The ALJ summarily discredited the opinions of Drs. Rosenberg and Dahhan on the issue of disability causation because they did not find clinical pneumoconiosis. (D&O at 8). The existence of pneumoconiosis and disability due to pneumoconiosis are two completely separate issues. Impairment does not automatically result from a finding of clinical pneumoconiosis. <u>Hess v. Dominion Coal Corp./Sun Coal</u>, BRB No. 12-0211 BLA (Feb. 05, 2013). The ALJ did not consider whether the evidence established legal pneumoconiosis. As noted above, he summarily discredited Dr. Dahhan's and Dr. Rosenberg's opinions because they did not find clinical pneumoconiosis. However, the ALJ also discredited Dr. Scott's reading because he did not find pneumoconiosis when he acknowledged it revealed evidence of emphysema. The ALJ made no finding as to whether claimant's emphysema was due to coal dust exposure, and therefore constituted legal pneumoconiosis. The ALJ's reasoning is circular and must be vacated.

Furthermore, even if it is found that claimant suffers from clinical pneumoconiosis, the ALJ must still consider the opinions to determine whether employer has established that pneumoconiosis was not a substantially contributing cause of claimant's disability. *See* 20 C.F.R § §718.204(C)(1), 718.305(a).

### CONCLUSION

In conclusion, the Board must vacate and remand the Decision and Order of the ALJ because he erred in his calculation of the length of claimant's coal mine employment and in his weighing of the evidence. The ALJ failed to consider all relevant evidence relating to the length of claimant's coal mine employment, and failed to adequately explain what method he used to calculate the length of the claimant's employment. The ALJ further erred in his analysis of the chest x-ray, "other," biopsy, and medical report evidence when considering whether the new evidence "ruled out" pneumoconiosis, and in failing to perform a de novo review of the evidence following a finding that claimant established a change in condition. Finally, the ALJ erred in his consideration of the evidence when determining whether employer had met its burden of establishing claimant's disability was not due to pneumoconiosis.

Respectfully submitted,

ABERRY COAL, INC.,

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA/TN 24203
Phone: 423-793-4804
Fax: 423-793-4844
Email: nmoore@pennstuart.com

By: _____
NATE D. MOORE, Esquire
Counsel for Defendants
VSB No.: 84977

Bristol: 468703-1

A821

-30-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have mailed a true copy of the foregoing this 12th day of August, 2014 to Joseph Wolfe, Esquire, Wolfe, Williams & Reynolds, P.O. Box 625, Norton, Virginia, 24273, and Dominique Sinesi, Esquire, Associate Solicitor of Labor, U.S. Department of Labor, Suite NWN-2117, 200 Constitution Avenue NW, Washington, D.C.  20210.

NATE D. MOORE

A822

**UNITED STATES DEPARTMENT OF LABOR**
**BENEFITS REVIEW BOARD**
**WASHINGTON, D.C.**

**IN THE MATTER OF:**

**ABERRY COAL  INC.**

    *PETITIONER*

                                     **BRB NO. 14-0329-BLA**

V.

**JOSEPH FLEMING,**

    *RESPONDENT*

AND

**DIRECTOR, OFFICE OF WORKERS'**
**COMPENSATION PROGRAMS**

    *PARTY-IN-INTEREST*

**RESPONSE BRIEF**

Joseph E. Wolfe
Brad A. Austin
Wolfe Williams Rutherford
& Reynolds
470 Park Avenue
Post Office Box 625
Norton, Virginia 24273
(276) 679-0777

1

A823

## STATEMENT OF THE CASE

Mr. Joseph Fleming (hereinafter "Claimant") filed the current claim for benefits on August 16, 2010.[1] (DX[2]-03)  The District Director issued a Proposed Decision and Order Award of Benefits on September 20, 2011. (DX-25)  Aberry Coal Incorporated, (hereinafter "Employer") requested a formal hearing (DX-26)

The case was assigned to the Honorable Judge Daniel Solomon who issued a Decision and Order Award of Benefits on January 24, 2013. (hereinafter referenced as "*ALJ D&O 1*").   Calculating the length of Claimant's coal mine employment, the judge acknowledged the Director's finding of 9.25 years but also considered Claimant's position that he was an underground miner for 18 years. *Id.* 3.   Claimant testified at the formal hearing that he did not believe that his Social Security Earnings Records properly documented the extent of his coal mine employment. *Id. referencing H.Tr.* 15.   Judge Solomon found Claimant credible in that he spent at least fifteen years employed as an underground coal miner. *Id.* Judge Solomon invoked the rebuttable presumption at 30 U.S.C. §921(c)(4) based on the length of Fleming's coal mine employment, and Employer's stipulation that he suffers from a totally disabling respiratory impairment. *Id.*

---

[1] The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (2010) (Hereinafter "ACA") was signed into law on the 23rd of March, 2010.
[2] "DX" refers to an exhibit of the Director, Office of Workers' Compensation Programs.  "CX" refers to an exhibit of the claimant, and "EX" refers to an exhibit of the Employer. Each reference is followed by the assigned exhibit number from which the cited material appears.

Judge Solomon first considered the x-ray evidence to determine whether Employer rebutted the presumption that Fleming suffers from pneumoconiosis. Considering the readings by the dually-qualified physicians, Judge Solomon found the x-ray evidence, when counting heads, is in "equipoise." *Id.* at 7. The ALJ found the readings of Fleming's digital x-ray to be in opposition of each other based on readings by two dually qualified physicians. *Id.* Considering the x-ray readings in entirety the judge found Dr. Scott's reading of Fleming's March 28, 2012 film to be equivocal, and found the x-ray evidence overall "sufficient to establish clinical pneumoconiosis."[3] *Id.* Judge Solomon would afford reduced weight to Dr. Caffrey's biopsy report based on the age of this study, and found the medical opinions of Drs. Rosenberg and Dahhan to be contrary to the x-ray findings of clinical pneumoconiosis. Finally, the ALJ afforded reduced weight to the disability causation opinions of Drs. Dahhan and Rosenberg for failing to diagnose Fleming with clinical coal workers' pneumoconiosis. *Id.* at 8. Judge Solomon would find Fleming entitled to an award of benefits based on Employer's failure to rebut the presumption at 30 U.S.C. §921(c)(4).

Employer appealed Judge Solomon's Decision and Order to this Court and submitted a Petition for Review and brief on April 8, 2013. This Court issued a Decision and Order on December 17, 2013 affirming in part and vacating in part and remanding back to the administrative law judge for

---

[3] Judge Solomon would find that Dr. Alexander offered the most persuasive opinion regarding the presence of pneumoconiosis. *ALJ D&O*, 7.

3

further consideration.  (hereinafter "*BRB D&O*").  This Court found the ALJ failed to adequately explain the method he used to compute Claimant's length of coal mine employment.

Judge Solomon then issued a Decision and Order on Remand awarding benefits dated May 19, 2014.  (hereinafter "*ALJ D&O 2*").  Judge Solomon again determined Claimant was a miner for more than 15 years but this time supplied a 5 1/2 page single-spaced explanation for his calculation.  The ALJ again invoked the rebuttable presumption and again found Claimant was entitled to an award of benefits.

Still dissatisfied, Employer has again appealed Judge Solomon's Decision and Order to this Court.  Employer again believes Judge Solomon erred in his determination that Claimant was an underground coal miner for at least fifteen years.  Employer also argues the ALJ erred in his finding that Employer failed to rebut the presumption that Claimant suffers from coal workers' pneumoconiosis and that Employer failed to rebut disability causation.

Claimant submits the following as his response to Employer's Petition for Review and in support of his position that this Court must *affirm* Judge Solomon's Decision and Order on Remand awarding benefits.  Substantial evidence supports the ALJ's findings in this case and Judge Solomon's method of computation regarding Claimant's length of coal mine employment was rational and in accordance with applicable law.  Employer's arguments are entirely without merit and must be rejected by this Court.

4

## STANDARD OF REVIEW

20 C.F.R. § 802.301(a) provides that the Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.

"The Board's circumscribed scope of review requires that a party challenging the Decision and Order below address that Decision and Order with specificity and demonstrate that substantial evidence does not support the result reached or that the Decision and Order is contrary to law." *Crockett Colleries, Inc. v Barret*, 478 F.3d 350, 353 (2007). *See* 20 C.F.R. §802.211(b). "A petitioner who fails to comply with the requisite regulations provides the Board with no basis to reach the merits of an appeal." *Id.* The 6th Circuit has held, "when medical testimony conflicts, the question "'of whether a physician's report is sufficiently documented and reasoned is a credibility matter left to the trier of fact.'" *Crockett Colleries, Inc. v. Barret*, 478 F.3d 350, 355 (2007).

5

A827

## ARGUMENT

### I.   JUDGE SOLOMON'S CALCULATION OF THE LENGTH OF CLAIMANT'S COAL MINE EMPLOYMENT IS RATIONAL, SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IN ACCORDANCE WITH LAW.

Employer again argues Judge Solomon erred in finding Claimant spent at least fifteen years employed as an underground coal miner. *Petition for Review and brief* ("*Pet.*") at 9-18.   Employer accuses Judge Solomon of "ignoring evidence relevant to claimant's coal mine employment history" and "refus[ing] to consider numerous portions of the record that were discussed in the employer's closing argument brief that preponderated against a finding of 15 or more years of qualifying coal mine employment." *Id.* at 9, 11.   Employer once again argues that the record does not support the ALJ's calculations.   *Id.* at 11-18.   However, Employer's arguments must be rejected because the ALJ's determination that Claimant spent over fifteen years employed as an underground coal miner is based on all the evidence of record, and in accordance with controlling authority.

The Black Lung Benefits Act does not provide specific guidance for determining the length of a miner's employment.   As such, this Court will uphold an ALJ's determination with respect to the length of coal mine employment if based on a reasonable method that is supported by substantial evidence. *Vickery v. Director, OWCP*, 8 B.L.R. 1-430 (1986); *Smith v. National Mines Corp.*, 7 B.L.R. 1-803 (1985). "While a person's social security records are proof of particular employment," an ALJ errs in

6

assuming "the absence of social security records for some years" proves claimant was not employed as a coal miner. *Wensel v. Dir., Off. of Workers' Compen. Programs, U.S. Dept. of Lab.*, 888 F.2d 14, 17 (3d Cir. 1989) (*citingMarx v. Dir., Off. of Workers' Compen. Programs, U.S. Dept. of Lab., Benefits Rev. Bd.*, 870 F.2d 114 (3d Cir. 1989)). "The dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and *sworn testimony*." 20 C.F.R. § 725.101 (emphasis added). The ALJ's determination of a witness's credibility is entitled to deference. *See Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 218 (6th Cir. 1996). Courts uphold an ALJ's reliance on a miner's sworn testimony regarding length of coal mine employment, because testimony is an appropriate evidentiary source. *See Appalachian Coal Co. v. Adkins*, 468 Fed. Appx. 331, 335 (4th Cir. 2012)(unpublished).

In this case, Judge Solomon determined Claimant worked for at least fifteen years as a coal miner after considering his earnings record, application, sworn testimony, and the calculations obtained by the Director and Employer. *ALJ D&O 2* at 2-5. On remand, the ALJ provided a detailed explanation of his calculations and fully considered both Claimant's and Employer's arguments. As noted by Judge Solomon "this is not the first time that a miner has alleged that not all of his wages were properly credited" and "the records are not necessarily dispositive." *Id.* at 5. In this case, Judge Solomon specifically provided:

7

A829

> Although I note Employer's argument, I find that the Department of Labor. . .method is more reasonable than Employer's method.  However, I listened to the testimony, and I had an opportunity to observe the Claimant and I found that he is credible, and the DOL did not take his allegations into consideration.

It is well-established that an administrative law judge's credibility determination is entitled to deference, *Ward*, 93 F.3d at 218, and this Court should defer to the ALJ's credibility determination in this case.

Furthermore, on remand, Judge Solomon elaborated on his approach in finding Claimant was an underground miner for over 15 years.  The ALJ noted:

> At the hearing and on Claimant's application, Claimant stated he worked 18 years as an underground miner. Claimant testified he "did just about everything from shoveling ribs to the last few years, [and] ran a continuous miner for Mr. Aberry Coal Company." (Transcript, "TR" 11). The District Director made a preliminary finding that Claimant spent 9.25 years employed as a coal miner from 1970 until 1991. (DX 25). At the hearing, Claimant speculated that the discrepancy in the Department of Labor and Claimant's records is explained by "somebody wasn't turning in [his] wages." (TR 15). Claimant testified he worked in the coal mines from 1970 until about August or September of 1991. *(Id.* at 15).
>
> The period in question covers more than a twenty year period. Claimant admitted there were periods of employment where he was injured which prevented him from working. *(Id.)* In one period he was unable to work for about a year due to an injury, and there were a few other periods on account of his back injury. *(Id.)* During another period, Claimant spent one year in Florida in construction jobs. *(Id.* at 16-18). Claimant testified there were no long strikes during his employment. *(Id.).*
>
> The Social Security Earnings Record indicates that he worked for Peem Coal Co. in 1970; Clark Super 100 in 1970; Chevron USA Inc. in 1970; High Point Coal Company in 1971; Archer & Club Coal Co. Inc. in 1971; POM Corp from 1971 until 1972;

8

A830

Brownlee-Kesterton Inc. in 1972; Atlantic Gulf Communities Corp. from 1972 until 1973; Atlantic Condominiums Inc. in 1972; Officemax Incorporated in 1972; William H. Hensick & Sons Inc. in 1973; A&E Coal Co in 1973; Governor Elkhorns Coal Company Inc. in 1973; Scotia Coal Co. from 1974 until 1977; Scotia Employees Association in 1975 and 1977; Elkhorn & Jellico Coal Co Inc. in 1978; Branham & Baker Coal Co. Inc. in 1978; Johnson & Sons Coal Co. Inc. in 1978; Ancoal Mining Corporation in 1979; Action Enterprises Inc. from 1979 until 1980; Paramount Mining Corporation in 1980; Sullivan Brothers Inc. in 1980; Everidge & Nease Coal Co. Inc. in 1985; Uniforce Staffing Services Inc. in 1987; UN F Services Inc. in 1988; Wampler Brothers Coal Co. Inc. from 1988 until 1989; Aberry Coal Inc. from 1989 until 1991. (DX 7)

Claimant testified regarding each of these employers. He said he worked for Peem Coal Company in 1970 and stated "I know I was there close to a year." (TR at 24) The earnings record shows Claimant only earned $72.00 in 1970. (DX 07). Claimant next testified he worked for High Point Coal Company in 1971. (TR at 24). Claimant only earned $57.50 according to the earnings record although he testified he '"worked there almost a year." (DX 07: TR at 25) Claimant was asked about his coal mine employment with Archer and Club Coal Company where earnings records indicated he only made $200.00. (TR at 26; DX 07). However, Claimant testified: '"I worked there for about a year, maybe longer." (TR at 26). Next, Claimant was asked about the records which showed earnings from T.O.M. Corporation in Ann Arbor, Michigan. (Id.) Claimant testified his work was not in Ann Arbor, but the Corporation in Ann Arbor was the parent corporation of Eastern Kentucky Coal Company. (Id.) Claimant's earnings from this corporation establish at least one year of employment. Claimant's testimony of working with Brownly Ketterson, Inc, A & E Coal Company, and Governor Elkhorn's along with his earnings record establishes one year of Employment during this period. (Id. at 26-27). Claimant's Employment with Scotia Employees Association in 1974 brings his total to five years of employment. (DX 07).

*ALJ D&O 2* at 2-3.    Although Employer believes the ALJ ignored its

arguments as well as the record, Employer's position is simply inaccurate.

In fact, Judge Solomon fully addressed Employer's argument:

9

For example, I am advised by Employer that Claimant shows no earnings from coal mine employers in 1972. Claimant should receive no credit for the year 1972. Claimant shows earnings from General Development Corporation of Miami, Florida in the first two quarters of 1973. He testified to living in Florida for a one year period doing construction. It can be appreciated that he did not perform coal mine work during this time. Claimant can, at most, he credited with one half year coal mine employment for the year 1973. Claimant shows no earnings from coal mine employment in the first quarter of 1974. Claimant can, at most, be credited with three-quarters of a year coal mine employment in 1974. Claimant shows earnings in each period of the years 1975 and 1976. At most, claimant can be credited with one year of employment for each of those two years. Claimant shows no earnings from coal mine employment in the final quarter of 1977. Claimant can, at most, be credited with three-quarters of a year of coal mine employment for 1977 ... Accordingly, based upon the SSER, the claimant can be credited with no more than 4.75 years of coal mine employment for the time period from 1970 through 1977. The employer notes that it would be generous to credit claimant with the full 4.75 years for this time period, as he shows earnings of less than $100.00 in several of those quarters."

*Id.* at 3 n. 1.  The ALJ also noted the following with regard to Employer's

argument:

Again, Employer asks me to credit only those periods when earnings are recorded in the Social Security records. Employer submits that using its method, the Claimant worked only 5.3 years. I am directed to testimony that Claimant believed the SSER may have understated his earnings from Peem Coal Company, Highpoint Coal, Archer & Clubb Coal, and A&E Coal. (Tr. at 24, 25, 26, 27). I am reminded that when asked whether he might be mistaken regarding his recollection of his employment with those companies, claimant stated, "It very well could be." (Tr. at 32). Further, regarding his memory surrounding his history of employment as a miner, Claimant stated, "I had these wrote down and I worked real hard. I'm not the sharpest tool in the shed as the old saying goes, but I worked real hard to get these as accurate as I possibly could, but not having any documentation, there was no way I could tell you 100 percent sure about any of them." (Tr. at 33).

10

Employer argues that by his own admission, Claimant is not a reliable source regarding his employment history. Employer argues that the Board has regularly upheld decisions to afford more weight to the Social Security records than to claimant testimony where the testimony was unclear.

Employer maintains that even if claimant's testimony was not unreliable on its face, as impeachment, Employer argues that Claimant's hearing testimony that he last worked in August or September of 1991 is contradicted by his previous statements that he quit working in April of 1991. I am also directed to November 1, 1994 Form CM-911 a (DX 1.2) January 6, 1995. Deposition of Claimant (DX 1.31 at 3).

Further, Employer argues that even if Claimant's testimony that some employers may not have reported earnings is true, "it is too vague to justify adding any years of employment to his employment history. While claimant suggested the possibility that the SSER may not reflect his full earnings, he was unable to state which earnings were not accurately recorded at hearing." The burden is on the claimant to establish coal mining employment in excess of 15 years, and he has failed to provide any evidence that he was employed as a miner for more than the 9.25 years credited to him by the DOL.

*ALJ D&O 2* at 3-4.  However, after fully considering Employer's argument,

Judge Solomon, within his discretion, did not accept it.  Instead, Judge

Solomon reasonably provided the following explanation in his continued

calculation:

Claimant allegedly continued working for Scotia Employees Associates from 1975 to 1977 which establishes three more years of employment. *(Id.)* Claimant's employment with Elkhorn Jellico Coal Company in 1978 establishes an additional year of employment. *(Id.)* In 1979 and 1980, Claimant's earnings and his testimony show that between Johnson and Sons Coal, Ann Coal Mining & Action Energies and Paramount, he is able to establish an additional year and one-half. *(See* DX 7) Thus, Claimant is able to establish over ten years of coal mine employment.

11

Finally, Claimant's earnings with Everidge & Neece Coal and Wampler establish an additional three years and his Employment with Asberry Coal from 1989 through 1991 establish another three years of employment. (DX 7)

The Benefits Review Board advises me that I did not explain how I resolved the conflict between my determination that claimant 'is not a good historian' and a crediting of Claimant's testimony, nor did I address the significance of claimant's statement that he could not identify which employer failed to withhold Social Security taxes.

The Board also noted "the administrative law judge apparently credited claimant with one year of coal mine employment in 1970, although the SSERs show no such earnings until the third quarter." *(Id.)* Employer asks me to defer to the Social Security record and disregard testimony. Claimant stated: "I know I was there [at Peem Coal Company] close to a year." (TR 24).

Claimant argues that it is entirely within my discretion to find Claimant's statement credible and find that he established one year of coal mine employment based on this testimony. I agree. I find that Claimant is credible. Claimant argues that even if he is not a good historian" his testimony may still be credible. I agree that I do not find that the testimony was conflicting or inaccurate. I accept that Claimant may have struggled to remember how much money he earned at a job he worked over forty years ago, but this does not discredit his testimony if he remembers how long he worked at a particular coal mine site. I note that there is evidence on the last date that he worked from the prior record, but Claimant was not confronted with it at hearing. Moreover, I find that it is not crucial to a credibility determination as more importantly, that evidence is twenty years old and I note that with time, memory may recede.

Although Claimant may not be 100% sure of all of the details, I accept that he is accurate that he was not always paid "on the books." I accept that Claimant is correct that some of his employers did not generate Social Security records. I reject the argument that Claimant's memory and testimony is too vague, and find that to a reasonable degree of probability, he is to be believed.

12

A834

Employer obviously believes the ALJ is required to accept its proposed method for calculating Claimant's length of coal mine employment. But the ALJ's determination that Claimant's testimony along with the earnings records establishes that he spent over fifteen years employed as a coal miner must be affirmed. The ALJ's analysis reflects proper consideration and gives credit to Claimant's testimony. The ALJ also was not compelled to adopt the contrary calculation obtained by Employer. Employer's calculation was based solely on Claimant's reported wages, which are averaged by the average wages for miners each year. The ALJ found the Director's calculation to be more reasonable, but noted that the Director did not have the advantage of considering Claimant's sworn testimony. Ultimately, Judge Solomon considered Claimant's employment over a twenty year period and concluded "the records do not substantiate that he was out of work as long as six years due to workers' compensation related injuries." *ALJ D&O 2* at 5. Judge Solomon noted that "the District Director accurately found 9.2 years of coal mine employment" and "I find that the Claimant is credible that he actually worked more than that." *Id.* at 6. "Although I do not accept that he worked 18 years, I accept that he worked more than 15 years in mining. All of the work was underground." *Id.*

Judge Solomon's calculation of Claimant's length of coal mine employment is rational, supported by substantial evidence, and in accordance with applicable law. Employer's argument seeks to relitigate this issue and its request should be denied. This Court should defer to Judge

13

Solomon's credibility determination regarding Claimant's hearing testimony. Also, on remand, the ALJ provided a complete and thorough review of Claimant history as a coal miner and specifically explained his calculations as required by this Court.    As such, this Court should reject Employer's arguments and affirm the ALJ's finding that Claimant had more than 15 years of qualifying coal mine employment.

A836

## II.  SUBSTANTIAL EVIDENCE SUPPORTS JUDGE SOLMON'S DETERMINATION EMPLOYER FAILED TO REBUT THE PRESUMPTION CLAIMANT SUFFERS FROM COAL WORKERS' PNEUMOCONIOSIS AND THAT EMPLOYER FAILED TO REBUT DISABILITY CAUSATION.

The Benefits Review Board is not empowered to reweigh the medical evidence of record if substantial evidence supports the findings of the Administrative Law Judge. *O'Keefe v. Smith, Hinchman & Grylls Associations, Inc.*, 380 U.S. 359 (1965).  In light of this standard, the Administrative Law Judge is afforded great leeway in evaluating the evidence of record. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938).  This Court must affirm the ALJ's weighing of the conflicting evidence if it is supported by substantial evidence.  "Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

Employer's second argument on this appeal is that Judge Solomon erred in finding that Employer failed to meet its burden to establish that Claimant does not suffer from coal workers' pneumoconiosis. *Pet.* 18-28. Initially, Employer argues that Judge Solomon erred in finding Claimant entitled to benefits on this subsequent claim without first addressing whether Claimant demonstrated a change in conditions pursuant to 20 C.F.R. §725.309. *Id.* 18-19.  However, as provided in footnote 4 of this Court's previous Decision and Order, "We affirm, as unchallenged on appeal,

15

the administrative law judge's finding that claimant's coal mine employment was underground, that claimant is totally disabled, and that claimant established a change in an applicable condition of entitlement." *BRB D&O* at 2 n. 4. According to Employer, Judge Solomon erred in his analysis of the evidence in this case, because in accordance with 20 C.F.R. §725.309, Judge Solomon was required to first evaluate the evidence to determine whether Fleming demonstrated a change in conditions. *Pet* at 18-19. But, nothing in the regulations "precludes the use of the 15—year presumption to show a change in condition." *Consolidation Coal Co. v. Director, OWCP*, ___ F.3d ___, 2013 WL 3215666 (7th Cir. 2013.).

Employer also contends that Judge Solomon erred by failing to consider "three negative chest x-ray readings of the February 23, 1995 chest x-ray by Drs. Wicker, Wiot and Spitz." *Pet.* at 18. This argument fails because the judge's analysis reflects he focused on the most recent medical evidence in determining Claimant suffers from pneumoconiosis. *See ALJ D&O* at 7. Specifically, the ALJ found Dr. Caffrey's review of Claimant's 2005 biopsy to be "old" and worthy of "little weight." *Id.* It is proper to give more weight to the more recent evidence of record because coal workers' pneumoconiosis is a progressive and irreversible disease. *Craner v. Peabody Coal Co.*, 22 B.L.R. 1-1 (1999)(en banc on recon.). The judge's failure to specifically reference x-ray evidence, which is over fifteen years old, is *de minimus* because the judge's analysis reflects that he focused on the more recent evidence when awarding benefits.

16

Employer is also incorrect that Judge Solomon erred by "mechanically discrediting Dr. Caffrey's biopsy report on the grounds that it was 'old.'" *Pet. at 19.* According to Employer, the physician's review of Claimant's lung-wedge biopsy from June, 2005 supports the eighteen year old negative readings, and the more recent negative readings by its physicians. *Pet. at 20.* First, Judge Solomon acted within his discretion in affording reduced weight to these biopsy results based on the presence of more recent medical evidence. *Thorn v. Itmann Coal Co.*, 3 F.3d 713 (4th Cir. 1993). Second, and more importantly, "[a] negative biopsy is not conclusive evidence that the miner does not have pneumoconiosis." 20 C.F.R. §718.106(c). It is Employer's burden to rebut the presumption at 30 U.S.C. §921(c)(4), and the outdated biopsy evidence, which does not rule out pneumoconiosis, was properly rejected by Judge Solomon.

Next, Employer feels Judge Solomon erred in weighing the conflicting x-ray evidence. *Pet. at 21-23.* Employer claims Judge Solomon "did not weigh all the chest x-ray readings." *Id.* at 23. But Judge Solomon rationally found that "[t]he evidence consists of 9 readings of four x-rays. Five are read as positive and four as negative." *ALJ D&O*, 6. The ALJ decided to credit the interpretations of the dually certified physicians over that of the B-reader, and opted not to give additional weight to the physicians who have teaching experience. *Id.* at 7. *See Woodward v. Director, OWCP,* 991 F.2d 314, fn4 (6th Cir. 1993) (More weight may be given to the interpretation of a dually-certified physician over that of a B-reader.) Accepting the reading

17

at face value, the ALJ found the x-ray evidence in equipoise. *Id.* The judge properly considered the x-ray interpretations as a whole, and afforded reduced weight to Dr. Scott's interpretation of the March 28, 2012 film as equivocal.[4] *Id. referencing* EX-09.    There is no merit to Employer's suggestion that Judge Solomon failed to consider all the x-ray evidence of record.

Employer further disputes Judge Solomon's decision to afford reduced weight to the x-ray reading of Dr. Scott. *Pet.* at 21. "[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert.[] He must evaluate the evidence, weigh it, and draw his own conclusions." *Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997) (internal citations omitted). Dr. Scott's interpretation contains a speculative diagnosis of cancer, and recommends a follow up CT scan to evaluate the abnormalities he observed. EX-09.    Judge Solomon acted within his discretion in finding that this equivocation reduced the probative value of Dr. Scott's reading. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276 (4th Cir. 2010). Judge Solomon did not err in accepting Dr. Alexander's unequivocal positive reading of this film to find this film positive for pneumoconiosis. *ALJ D&O*, 6. *See also* CX-05.

There is also no merit to Employer's argument that Judge Solomon erred by not affording additional weight to the x-ray interpretations of Drs. Wheeler and Scott based on their credentials. *Pet.* at 21. The determination

---

[4] The judge mistakenly referenced the date of Dr. Scott's interpretation as the date of the x-ray film. *See ALJ D&O*, 6-7.

18

of whether to afford more weight to a physician's opinion based on qualifications is a discretionary matter. *Scott v. Mason Coal Co.*, 14 BLR 1-37 (1990)(en banc recon.).   Judge Solomon is not required to afford additional weight to a physician's opinion solely based on qualifications. *Clark v. Karst-Robbins Coal Co.*, 12 BLR 1-149 (1989)(en banc).   Employer's argument is completely without merit, and simply another request for this Court to substitute its inferences for that of the ALJ.

Ultimately, the ALJ rationally relied on Dr. Alexander's multiple x-ray interpretations, which consistently found Claimant suffers from pneumoconiosis.   It was rational for the ALJ to accept the opinion of Dr. Alexander "who unequivocally diagnosed pneumoconiosis" on three separate films. *ALJ D&O*, 7.   Even if Judge Solomon had accepted Dr. Scott's interpretation, the x-ray evidence would still be in equipoise, which is insufficient to carry its burden of proof under §921(c)(4). However, the ALJ's weighing the x-ray evidence is rational and supported by substantial evidence.

Employer further disputes the ALJ's weighing of the two conflicting readings of Claimant's digital x-ray. *Pet.* 23-25. But the judge considered the readings of Claimant's March 28, 2012 digital x-ray and the judge declined to afford reduced probative weight to Dr. Wheeler's speculative and equivocal interpretation. *ALJ D&O*, at 7 fn. 5.   Judge Solomon's decision to rely on the dually qualified physicians and not to afford reduced probative weight to Dr. Wheeler's interpretation renders the readings of this digital x-

19

ray in equipoise.  Accordingly, the ALJ rationally found that the analog x-ray evidence is positive for simple pneumoconiosis, and the digital x-ray evidence does not establish the presence or absence of the disease.  Judge Solomon's determination that Claimant suffers from pneumoconiosis is rational, supported by substantial evidence, and in accordance with law. This Court must affirm Judge Solomon's finding that Employer failed to meet its burden.

Employer's final argument on this appeal is that the ALJ erred in discrediting the opinions of Drs. Rosenberg and Dahhan on the basis that neither physician diagnosed Claimant with clinical pneumoconiosis, which is contrary to the ALJ's weighing of the evidence. *Pet.* at 28.  However, it is well-established that "where a physician does not find the existence of pneumoconiosis, the ALJ may, in determining causation issues, accord less weight to that opinion." *Mountain Clay Inc. v. Collins*, 256 Fed. Appx. 757, 762 (6th Cir. 2007).  Substantial evidence supports the ALJ's weighing of the opinions of Drs. Dahhan and Rosenberg.

20

A842

## CONCLUSION

For the foregoing reasons, this Court should affirm Judge Solomon's determination that Claimant is entitled to the rebuttable presumption at 30 U.S.C. § 921(c)(4), and that Employer has failed to rebut this presumption that Claimant suffers from coal workers' pneumoconiosis and that his occupational exposure to coal mine dust contribute to his totally disabling respiratory impairment.

Respectfully submitted,
JOSEPH FLEMING
By Counsel


WOLFE, WILLIAMS, & REYNOLDS
470 Park Avenue
Norton, Virginia 24273
(276) 679-0777
(276) 679-5919 (fax)

BY: _____

Joseph E. Wolfe, Esq.
Brad A. Austin, Esq.

21

A843

## Certificate

I, the undersigned, do hereby certify that I have forwarded a copy of the foregoing Response Brief to:

Mr. John R. Sigmond, Esq.
PENN STUART
P.O. Box 2009
Bristol, VA 24203

Mr. Thomas O. Shepherd, Jr., Esq.
Executive Counsel and Clerk
Of the Benefits Review Board
U.S. Department of Labor
P.O. Box 37601
Washington, D.C. 20013-7601

Ms. Dominique Sinesi, Esq.
Associate Solicitor
U.S. Department of Labor
200 Constitution Ave., NW, Room N-2117
Washington, D.C. 20210

on this 9th day of October, 2014.

_____
Joseph E. Wolfe
Brad A. Austin

22

A844

Geo. E. Penn (1895-1931)
Wm. A. Stuart (1922-1976)
G.R.C. Stuart (1952-1991)

Wm. W. Eskridge
Stephen M. Hodges
W. Challen Walling III
Wade W. Massie II, III
Michael F. Blair III
William M. Moffet III
Mark L. Esposito III
Timothy W. Gresham III
H. Ashby Dickerson
Byrum L. Geisler III
Richard E. Ladd, Jr. III
W. Bradford Stallard
Ramesh Murthy III
Mark E. Frye III
Lisa M. Frisina
Andrew M. Hanson III
John A. Martin III
Timothy K. Lowe I, III, •

# PENNSTUART

Since 1890

## ATTORNEYS AT LAW

804 Anderson Street
Bristol, Tennessee 37620

Post Office Box 2009
Bristol, Virginia 24203

Telephone 423/793-4800
Facsimile 423/793-4900

Offices in Abingdon and Richmond, Virginia and
Bristol, Tennessee

All Attorneys Licensed in Virginia, Except as Noted with •

Additional Bar Memberships:
I KY; II WV; III TN; IV IL; V MN; VI PA; VII NC

Jesse F. Narron
Cameron S. Bell III
Kari Lou Frank
John R. Sigmond III
Patricia C. Arrighi
Wendy E. Warren
Wesley B. Boggs III, •
Richard E. Ladd, Sr. of counsel III, •
Elizabeth R. Walters of counsel III
Holly N. Mancl III, IV, V
John S. Honeycutt III
Seth M. Land
P. Danielle Stone
Nathaniel D. Moore III
Jonas A. Callis
Alexis I. Snyder III, VI
M. Shaun Lundy II, III, VII
Matthew J. Moynihan
Michelle Thomas Castle I

E-mail: nmoore@pennstuart.com     Direct Dial: 423-793-4804     Direct Fax: 423-793-4844

October 15, 2014

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
Thomas O. Shepherd, Jr., Esq.
Clerk of the Board
Benefits Review Board
P. O. Box 37601
Washington, DC 20013-7601

> RE:   Joseph Fleming v. Aberry Coal, Inc.
>       OWCP No.:   XXX-XX-0560
>       BRB No.:  2014-0329 BLA
>       PS&E File No.: 40-756

Dear Mr. Shepherd:

Please accept this letter as the Employer's Reply to Claimant's Response Brief.

In his Brief, the claimant alleges that the employer "obviously believes" that the ALJ is required to accept a method of calculating coal mine employment that is based solely upon the claimant's Social Security Earnings Record. See claimant's Response Brief at 13. To the contrary, the employer does not argue that the ALJ cannot consider evidence outside of the claimant's Social Security Earnings Record. Rather, the employer argues that the ALJ in this instance failed to consider numerous portions of the record in calculating the length of the claimant's coal mine employment. See Employer's Brief, pages 9 thru 18. In fact, some of the portions of the record that the ALJ failed to consider include the claimant's testimony. Specifically, the ALJ refused to consider the claimant's testimony that he spent over a year living in Florida and Mississippi doing non-coal mine related work in the years 1970 through 1974.

In summary, the claimant's Response Brief does not address the employer's contentions that the ALJ failed to consider all evidence relevant to the issue of the length of the claimant's coal mine employment. Rather, the claimant falsely describes to the employer the argument that

A845

THOMAS O. SHEPHERD, JR., ESQ.
RE:   Joseph Fleming
Page: 2

the ALJ must rely solely upon the SSER in calculating coal mine employment.  This slightly misstates the employer's argument.  Accordingly, the employer again respectfully requests the BRB vacate the ALJ's finding regarding the length of the claimant's coal mine employment and remand this claim to the ALJ.

Yours truly,
PENN, STUART & ESKRIDGE

Nate D. Moore

NDM/amf
cc:    Joseph E. Wolfe, Esq. (Cert. Mail/RRR)
       Rae Ellen Frank James, Esq. (Solicitor) (Cert. Mail/RRR)
       Ms. Teia Buell (81062144)

Bristol: 488278-1

A846

# CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that all of the documents in the

appendix are properly part of the record, as required by 6th Cir. R. 30(b)(4)(E).


/s/  Nathaniel D. Moore
Nathaniel D. Moore


John R. Sigmond
Nathaniel D. Moore
PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA 24203
Phone: 423-793-4804
Fax: 423-793-4844
jsigmond@pennstuart.com
nmoore@pennstuart.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the Appendix of Petitioners Aberry Coal, Inc. and Arrowpoint Capital Inc. c/o Underwriters Safety & Claims with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on February 24, 2016.

I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system or, if they are not, by serving a true and correct copy at the following addresses: Joseph E. Wolfe, Esq.,Wolfe, Williams & Reynolds, P.O. Box 625, Norton, VA 24273;U.S. Department of Labor, Office of the Solicitor, 618 Church Street, Suite 230, Nashville, TN 37219; Barry Joyner, Esquire, U.S. Department of Labor, 200 Constitution Avenue, NW N-2119, Washington, DC  20210.


/s/  Nathaniel D. Moore
Nathaniel D. Moore

John R. Sigmond
Nathaniel D. Moore
PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA 24203
Phone: 423-793-4804
Fax: 423-793-4844
jsigmond@pennstuart.com
nmoore@pennstuart.com